ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 1 5 2005

at ____ o'clock and ____ min. ____ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH, | ) CIVIL NO. 04-00108 SOM/KSC |
| Plaintiff, | ) ORDER GRANTING DEFENDANT CITY |
| | ) AND COUNTY OF HONOLULU'S MOTION |
| vs. | ) FOR JUDGMENT ON THE PLEADINGS; |
| | ) ORDER GRANTING IN PART AND |
| CITY AND COUNTY OF HONOLULU; | ) DENYING IN PART THE INDIVIDUAL |
| GARY T. KUROKAWA; ROBERT O. | ) DEFENDANTS' MOTION FOR JUDGMENT |
| MAGOTA; ANN C. GIMA; and GK | ) ON THE PLEADINGS; ORDER |
| APPRAISALS, INC.; et al., | ) GRANTING IN PART AND DENYING IN |
| | ) PART THE MOTION FOR SUMMARY |
| Defendants. | ) JUDGMENT FILED BY DEFENDANT GK |
| | ) APPRAISALS, INC. |

ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR
JUDGMENT ON THE PLEADINGS; ORDER GRANTING IN PART AND DENYING IN
PART THE INDIVIDUAL DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS; ORDER GRANTING IN PART AND DENYING IN PART THE MOTION
FOR SUMMARY JUDGMENT FILED BY DEFENDANT GK APPRAISALS, INC.

I.      INTRODUCTION AND BACKGROUND FACTS.

        Plaintiff Philip E. English worked as an appraiser for

the Real Property Assessment Division of Defendant City and

County of Honolulu ("City"). Verified Complaint (Feb. 13, 2004)

¶ 5.  English says that he complained about his superiors doing

work for Defendant GK Appraisals, Inc., during work hours.

Id. ¶¶ 37-42, 72.  English says that, after those complaints, his

superiors started retaliating against him.  Id. 55-60, 62-67, 69,

74, 76-79, 81.  Accordingly, on February 13, 2004, English filed

a lengthy Verified Complaint, alleging causes of action for:

violations of 42 U.S.C. §§ 1983 (Count I), 1985 (Count II), and

1986 (Count III); a violation of Haw. Rev. Stat. § 378-62

(Count IV); willful, wanton, and reckless conduct (Count V); intentional and negligent infliction of emotional distress ("IIED" and "NIED," respectively) (Counts VI and VII, respectively); defamation (Count VIII); interference with contractual relations and prospective economic advantage (Counts IX and X, respectively); violations of his due process, equal protection, and free speech rights under the Hawaii constitution (Count XI); and punitive damages (Count XII).[1]

There are now three motions before the court. First, the City moves to dismiss or, in the alternative, for summary judgment. The City's motion, which the court treats as a Rule 12(c) motion, is granted, and the City is entitled to judgment on the pleadings on Counts I, II, III, V, VII, and XII of the Verified Complaint. Count I (§ 1983) is deficient because the Verified Complaint does not sufficiently allege the ground on which the City is sued under § 1983. Count II (§ 1985(2)) is deficient because the Verified Complaint does not allege a conspiracy to obstruct justice in federal court or class-based invidious discrimination. Count III (§ 1986) fails because it requires a viable § 1985 claim as a prerequisite, and no § 1985 claim exists. Count V (willful, wanton, and reckless conduct) fails because workers' compensation is English's exclusive remedy

---

[1]At the hearing on the present motions, English withdrew Count XI (violation of his rights under the Hawaii Constitution) with respect to all Defendants.

for the alleged tort.  Count VII (NIED) is also barred by the exclusive remedy provisions of Hawaii's workers' compensation statutes.  Finally, Count XII (punitive damages) fails because punitive damages are not available from the City.

In the second motion, the individual Defendants in this case, Gary T. Kurokawa, Robert O. Magota, and Ann C. Gima (collectively, "individual Defendants"), also move to dismiss or, in the alternative, for summary judgment.  The court treats this as a Rule 12(c) motion.  The individual Defendants argue that Count VII (NIED) is barred by the exclusivity provisions of Hawaii's workers' compensation statutes.  To the extent Count VII (NIED) is asserted against the individual Defendants for actions they took in their capacities as employees of the City, the individual Defendants' motion is granted.  However, to the extent Count VII (NIED) is asserted against Kurokawa for actions he may have taken in his capacity as an officer or shareholder of GK, the motion is denied.  Additionally, because the Verified Complaint fails to allege viable causes of action under §§ 1985(2) and 1986, to the extent Counts II and III are alleged against the individual Defendants, those counts are dismissed.

In the third motion, GK moves for summary judgment. That motion is granted in part and denied in part.  Because English fails to establish a sufficient nexus between GK's and the City's conduct, summary judgment is granted in favor of GK on

English's § 1983 claim (Count I).  Because English has no viable
§ 1985(2) or § 1986 claim (Counts II and III, respectively),
summary judgment is granted in favor of GK on those claims.
Because GK is not English's "employer" for purposes of Haw. Rev.
Stat. 378-62, summary judgment is granted in favor of it on Count
IV.  Because there is no cognizable claim against GK under
Iddings v. Mee Lee, 82 Haw. 1, 919 P.2d 263 (1996), summary
judgment is granted in GK's favor on Count V.  Finally, because
English identifies no defamatory statement made by GK, summary
judgment is granted in favor of GK on Count VIII.  However, an
issue of fact does exist as to whether Kurokawa was acting on
GK's behalf when he allegedly committed the acts underlying
English's various state law claims.  Summary judgment is
therefore denied with respect to English's IIED, NIED,
interference with contractual relations, interference with
prospective economic advantage, and punitive damage claims
(Counts VI, VII, IX, X, and XII) against GK.

II.    LEGAL STANDARD.

A.    Motions for Judgment on the Pleadings Standard.

Although the City and the individual defendants filed
their motions under Rule 12(b)(6) of the Federal Rules of Civil
Procedure, the motions are actually motions under Rule 12(c), as
they were filed after Defendants answered the Verified Complaint.
See Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 954 (9th

Cir. 2004) ("A Rule 12(b)(6) motion must be made before the responsive pleading. Fed.R.Civ.P. 12(b)(6). Here, the Defendants filed their motion to dismiss after filing their answer. Thus, the motion should have been treated as a motion for judgment on the pleadings, pursuant to Rule 12(c) or 12(h)(2)."); see also Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980) (noting that Rule 12(h)(2) of the Federal Rules of Civil Procedure specifically allows a Rule 12(c) motion based on an alleged failure to state a claim upon which relief can be granted); George C. Frey Ready-Mixed Con. v. Pine Hill C.M., 554 F.2d 551, 553 n.2 (2d Cir. 1977) ("Pursuant to Rule 12(h)(2), a Rule 12(c) motion may be used to raise the defense of failure to state a claim upon which relief can be granted, a defense ordinarily raised under Rule 12(b)(6) before the pleadings are closed." (quotation marks omitted)).

In any event, the standard governing Rule 12(b)(6) and Rule 12(c) motions is essentially the same. See Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l Planning Agency, 24 F. Supp. 2d 1062, 1066 (E.D Cal. 1998). Rule 12(c) motions for judgment on the pleadings should be granted when, taking all material allegations in a complaint as true and construing them in the light most favorable to the nonmoving party, the moving party demonstrates that it is entitled to judgment as a matter of law. Geraci v. Homestreet Bank, 347 F.3d 749, 751 (9th Cir.

2003) ("A motion for judgment on the pleadings should be granted
where it appears the moving party is entitled to judgment as a
matter of law."); Honey v. Distelrath, 195 F.3d 531, 532 (9th
Cir. 1999) ("Judgment on the pleadings is proper when, taking all
the allegations in the pleadings as true, the moving party is
entitled to judgment as a matter of law."); Hoeft v. Tucson
Unified Sch. Dist., 967 F.2d 1298, 1301 n.2 (9th Cir. 1992) ("In
reviewing the defendants' motions under Fed.R.Civ.P. 12(c), the
district court views the facts as presented in the pleadings in
the light most favorable to the plaintiffs, accepting as true all
the allegations in their complaint and treating as false those
allegations in the answer that contradict the plaintiffs'
allegations.").

     Under Rule 12(c), when matters outside the pleadings
are considered, the motions are treated as motions for summary
judgment.  Fed. R. Civ. P. 12(c) ("If, on a motion for judgment
on the pleadings, matters outside the pleadings are presented to
and not excluded by the court, the motion shall be treated as one
for summary judgment and disposed of as provided in Rule 56, and
all parties shall be given reasonable opportunity to present all
material made pertinent to such a motion by Rule 56."); Grimmett
v. Brown, 75 F.3d 506, 510 (9th Cir. 1996) (converting a Rule
12(c) motion to a motion for summary judgment under Rule 56
because matters outside the pleadings were considered).  Even

though English has submitted voluminous evidence, that evidence does not remedy the problems with the pleadings, or address statutory limitations or claims.  It is such matters that this court addresses.  Those matters involve examination of only the four corners of the Verified Complaint, and that examination is determinative.  The court therefore treats the motions as brought under Rule 12(c).

      B.   Summary Judgment Standard.

      GK's motion was filed as a motion for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, which provides that summary judgment shall be granted when

> the pleadings, depositions, answers to
> interrogatories, and admissions on file,
> together with the affidavits, if any, show
> that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

      Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always,

the defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
(9th Cir. 2000).  The burden initially falls upon the moving
party to identify for the court "those portions of the materials
on file that it believes demonstrate the absence of any genuine
issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing
Celotex Corp., 477 U.S. at 323).

    "When the moving party has carried its burden under
Rule 56(c), its opponent must do more than simply show that there
is some metaphysical doubt as to the material facts."  Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)
(footnote omitted).  The nonmoving party may not rely on the mere
allegations in the pleadings and instead "must set forth specific
facts showing that there is a genuine issue for trial."  Porter,
419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party."  California v. Campbell, 319 F.3d 1161, 1166
(9th Cir. 2003); Addisu, 198 F.3d at 1134 ("There must be enough
doubt for a 'reasonable trier of fact' to find for plaintiffs in
order to defeat the summary judgment motion.").

In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion merely by citing to general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence tending to support the complaint'" must be produced. T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the

evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

III.    ANALYSIS.

    A.    The City's Motion is Granted.

        1.    Judgment on the Pleadings is Granted in Favor of the City on English's Claim Under 42 U.S.C. § 1983 (Count I).

Section 1983 provides, in relevant part:

> [E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party in an action at law, suit in equity or other proper proceeding to redress.

42 U.S.C. § 1983.

Local governmental bodies such as counties and municipalities are considered "persons" under § 1983 and may by sued under that statute.  See Monell v. Dept. of Social Servs., 436 U.S. 658, 690 (1978).  However, counties

are only liable for injuries that arise from an official policy
or custom.  Id. at 694 (no respondeat superior liability).
Accordingly, to establish the City's liability under § 1983,
English "must demonstrate that action pursuant to official
municipal policy of some nature caused a constitutional tort."
Berry v. Baca, 379 F.3d 764, 767 (9th Cir. 2004).  In other
words, the City is liable under § 1983 only when the City "itself
causes the constitutional violation through 'execution of a
government's policy or custom, whether made by its lawmakers or
by those whose edicts or acts may fairly be said to represent
official policy.'"  See Ulrich v. City & County of San Francisco,
308 F.3d 968, 984 (9th Cir. 2002).  The City's liability under
§ 1983 may be premised on three theories: (1) that a City
employee was acting pursuant to an expressly adopted policy;
(2) that a City employee was acting pursuant to a long-standing
custom or practice; and (3) that a City employee was acting as a
"final policy maker."  See Lytle v. Carl, 382 F.3d 978, 982 (9th
Cir. 2004).

     The City argues that, for purposes of English's § 1983
claim against it, the Verified Complaint lacks any allegation
that the City acted pursuant to an official policy in causing the
constitutional violation.  In his Opposition to the City's
motion, English argues that the actions of Defendant Kurokawa,
the administrator and head of the Real Property Assessment

Division of the City, see Verified Complaint ¶ 7, constitute the
official policy of the City.[2]  However, even under the liberal
notice pleading standards of Rule 8(a), the Verified Complaint
does not allege that Kurokawa was acting as a "final policymaker"
who created liability for the City under § 1983.  At most, the
Verified Complaint alleges only that Kurokawa was the
"Administrator" of the Real Property Assessment Division of the
City.  That allegation, by itself, is insufficient to put the
City on notice that English is claiming City liability under
§ 1983 based on Kurokawa's status as a "final policymaker,"
especially given the length of the Verified Complaint.

      The court is not here dictating new heightened pleading
requirements for claims against the City.  Rather, the court is
requiring English to provide proper notice to the City of its
alleged wrongdoing.  The present allegations leave the City to
wonder exactly what is being alleged.  English's Verified
Complaint is 43 pages long and pled in a manner that makes it
very difficult to discern what allegations are being made against

---

[2]English is not arguing that he was retaliated against based
on an expressly adopted policy.

    In his opposition, English claims that the "City has
demonstrated a custom of retaliating against employees who have
exercised their rights to free speech by reporting illegal
activities . . . ."  See Opposition at 11.  If English desires to
proceed on this theory of liability under § 1983, he should
clearly make such an allegation in the amended complaint, which
he has leave to file, as described below.

the various Defendants.  It is doubtful that English's § 1983
claim against the City complies with Rule 8(a)'s requirement of a
"a short and plain statement of the claim."  <u>See</u> <u>Bertucelli v.</u>
<u>Carreras</u>, 467 F.2d 214, 215 (9th Cir. 1972) ("prolix and
unintelligible" complaint may be dismissed as a violation of Rule
8(a)); <u>Agnew v. Moody</u>, 330 F.2d 868, 870 (9th Cir. 1964) (55-page
complaint based on Civil Rights Act (excluding prayer and
exhibits) did not comply with Rule 8(a)); <u>accord</u> <u>Salahuddin v.</u>
<u>Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988) ("unnecessary prolixity in
a pleading places an unjustified burden on the court and the
party who must respond to it because they are forced to select
the relevant material from a mass of verbiage." (internal
quotation marks omitted)).

The City argued that the Verified Complaint lacked any
allegation that the City acted pursuant to an official policy,
and the court's independent examination of the Verified Complaint
failed to discover any such allegation.  The court, in its usual
prehearing inclination process, therefore asked English to come
to the hearing prepared to identify the allegations in the
lengthy Verified Complaint in which the City was alleged to have
acted pursuant to an official policy.  Rather than holding
English to a heightened pleading standard, the court is merely
attempting to help English focus the issues for pretrial and
trial purposes.

English's § 1983 claim (Count I) is dismissed pursuant to Rule 12(c).[3]  However, because it may well be that Kurokawa is a "final policymaker" for purposes of municipal liability under § 1983, English is granted leave to file an amended complaint making such an allegation.  Any such amended complaint must be filed no later than January 12, 2006.  The parties may contact the Magistrate Judge assigned to this case to request a continuance of applicable dates and deadlines in light of any amended complaint English may file.[4]

---

[3]At the hearing on the present motions, English argued for the first time that ¶ 80 of the Verified Complaint also alleges that the City was acting under an official policy for purposes of his § 1983 claim.  Paragraph 80, however, merely alleges that the City has insufficiently funded its Ethics Commission.  When pressed to articulate how paragraph 80 relates to his § 1983 claim, English could not respond clearly.  Because English's poorly articulated assertion of a lack of funding for the City's Ethics Commission was not raised as a basis of liability in his opposition memorandum, it would be unfair to allow English to defeat the City's motion on that basis.  Nevertheless, because English is being granted leave to amend his Verified Complaint, he may also amend his § 1983 claim to identify that lack of funding as a basis of his § 1983 claim.  English's failure to cite ¶ 80 earlier only highlights the need for more clarity in his § 1983 claim.  In so stating, this court is by no means suggesting that inadequate funding is indeed a proper basis for a § 1983 claim against the City, a matter left for future adjudication.

[4]The court, of course, expresses no opinion as to whether the trial date or any deadline should be continued.

14

> 2. Judgment on the Pleadings is Granted in Favor
>    of the City on English's Claim Under 42
>    U.S.C. § 1985 (Count II).

Count II of the Verified Complaint alleges a violation
of § 1985. In his opposition to the City's motion, English
clarifies that Count II is based on a violation fo § 1985(2).
See Opposition at 12 ("Plaintiff is alleging that the City
violated 42 U.S.C. § 1985, specifically section two of the
statute.").

Section 1985(2) is violated when:

> two or more persons in any State or Territory
> conspire to deter, by force, intimidation, or
> threat, any party or witness in any court of
> the United States from attending such court,
> or from testifying to any matter pending
> therein, freely, fully, and truthfully, or to
> injure such party or witness in his person or
> property on account of his having so attended
> or testified, or to influence the verdict,
> presentment, or indictment of any grand or
> petit juror in any such court, or to injure
> such juror in his person or property on
> account of any verdict, presentment, or
> indictment lawfully assented to by him, or of
> his being or having been such juror; or if
> two or more persons conspire for the purpose
> of impeding, hindering, obstructing, or
> defeating, in any manner, the due course of
> justice in any State or Territory, with
> intent to deny to any citizen the equal
> protection of the laws, or to injure him or
> his property for lawfully enforcing, or
> attempting to enforce, the right of any
> person, or class of persons, to the equal
> protection of the laws.

42 U.S.C. § 1985(2). To state a claim under § 1985(2), a
plaintiff must therefore show either (1) the existence of a

15

conspiracy to use threat, force, or intimidation of a witness or party to obstruct justice in federal court, <u>Dooley v. Reiss</u>, 736 F.2d 1392, 1395-96 (9th Cir. 1984), or (2) a conspiracy to affect the due course of justice in a state court based on racial or class-based invidious discrimination. <u>Id.</u> ("the second [part of § 1985(2)] applies to conspiracies to obstruct justice in state courts"); <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987) (for a conspiracy to deprive a person of equal protection of the laws under the second part of § 1982(2), "a properly pleaded claim must include an allegation of racial or class based animus"); <u>Bretz v. Kelman</u>, 773 F.2d 1026, 1028 (9th Cir. 1985) (en banc) ("The question remains, then, whether Bretz has stated a claim under the second clause of § 1985(2). We hold that he has not, because we conclude that an allegation of class-based animus is required for a claim under that clause as well.").

This case does not involve a conspiracy to obstruct justice in federal or state court. Nor does the Verified Complaint contain any allegation of class-based invidious discrimination. English therefore does not allege a viable claim under § 1985(2).

16

>    3.    Judgment on the Pleadings is Granted in Favor
>          of the City on English's Claim Under 42
>          U.S.C. § 1986 (Count III).

Count III of the Verified Complaint alleges a violation

of 42 U.S.C. § 1986.  Section 1986 imposes liability on every

person who knows of an impending violation of § 1985 but neglects

or refuses to prevent the violation.  Accordingly, a violation of

§ 1986 depends on the existence of a valid § 1985 claim.  Sanchez

v. City of Santa Ana, 936 F.2d 1027, 1040 (9th Cir. 1991).

As English has not alleged a valid § 1985 claim, he fails to

allege a valid § 1986 claim.

>    4.    Judgment on the Pleadings is Granted in Favor
>          of the City on English's NIED Claim
>          (Count VI).

Under Haw. Rev. Stat. § 386-5, worker's compensation

benefits are an employee's exclusive remedy against an employer

for a work injury unrelated to sexual harrassment or sexual

assault:

>    The rights and remedies herein granted to an
>    employee or the employee's dependents on
>    account of a work injury suffered by the
>    employee shall exclude all other liability of
>    the employer to the employee, the employee's
>    legal representative, spouse, dependents,
>    next of kin, or anyone else entitled to
>    recover damages from the employer, at common
>    law or otherwise, on account of the injury,
>    except for sexual harassment or sexual
>    assault and infliction of emotional distress
>    or invasion of privacy related thereto, in
>    which case a civil action may also be
>    brought.

As the Hawaii Supreme Court has stated, "[T]he Hawaii State
Legislature, by enacting the exclusivity provision, intended that
our Workers' Compensation system be the exclusive remedy for
work-related injuries and deaths." Estate of Coates v. Pac.
Eng'g, 71 Haw. 358, 362, 791 P.2d 1257, 1259 (1990). "As a
general rule in Hawai`i, workers' compensation is an injured
employee's exclusive remedy for an injury arising out of and in
the course of employment." Iddings v. Mee Lee, 82 Haw. 1, 5, 919
P.2d 263, 267 (1996).

Any injury to English resulting from the City's alleged
NIED necessarily arose out of and occurred in the course of
English's employment by the City. As there is no allegation
suggesting sexual harassment or sexual assault, which would allow
English to avoid the exclusivity bar, English's NIED claim is
barred by section 386-5. See Iddings, 82 Haw. at 8-9, 919 P.2d
at 269-70 (noting that "one of the primary purposes underlying
the implementation of a workers' compensation scheme in Hawai`i
was to eliminate suits based on negligence in the workplace . . .
."); accord Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d
1261, 1263 (D. Haw. 2003) ("Under Hawaii law, claims for
negligent infliction of emotional distress are barred by Haw.
Rev. Stat. § 386-5, unless the claims relate to sexual harassment
or assault."); Beaulieu v. Northrop Grumman Corp., 161 F. Supp.
2d 1135, 1148 (D. Haw. 2000) ("Under Hawaii law, Worker's

18

Compensation is the exclusive remedy against an employer for employee injuries outside of those related to sexual harassment or sexual assault.").

In an attempt to escape this clear bar to his NIED claim against the City, English argues that the City was GK's agent and that the injury therefore did not arise out of or occur in the course of his employment. That the City was GK's agent was not pled in the Verified Complaint.[5] It is also contrary to the allegation in the Verified Complaint that the "City is directly liable for the acts herein described and is also liable for the acts of the individual Defendants' actions under the doctrine of respondeat superior." See Verified Complaint ¶ 6. Because the Verified Complaint does not allege that the City was a private company's agent, and because the only fair reading of the Verified Complaint is that it alleges that English's NIED claim against the City arose out of and was in the course of English's employment, section 386-5 bars English's NIED claim against the City.

---

[5]At the hearing, English argued that paragraph 16 of the Verified Complaint alleged that the City was GK's agent. The court disagrees. Paragraph 16 states, in relevant part: "The acts of Defendants herein, related to retaliation against Plaintiff, for his complaint that work was being done for GK, were done by officers and/or directors and/or agents of GK, or at the direction of such individuals, for the purpose of advancing or preserving the economic benefit to GK . . . ." Contrary to English's assertions, Paragraph 16 does not allege that the City was GK's agent.

In any event, English's argument lacks merit, as no facts alleged even suggest that such an agency relationship existed. It would be unreasonable to infer that, because Kurokawa worked for the City and was also an officer and shareholder of GK, the City was GK's agent. To the extent Kurokawa was acting on behalf of GK when he allegedly caused English emotional distress, it could not be said that he was acting on behalf of the City. To the extent Kurokawa was acting on behalf of the City when he allegedly caused English emotional distress, that injury would have arisen out of and occurred during the course of English's employment.

> 5.    Judgment on the Pleadings is Granted in Favor
>        of the City on English's "Wilful, Wanton, and
>        Reckless" Conduct Claim (Count V).

Count V charges the City with "wilful, wanton, and reckless" conduct. The charge appears to be based on <u>Iddings v. Mee Lee</u>, 82 Haw. 1, 919 P.2d 263 (1996), which involved an exception to the workers' compensation exclusive remedy provision under Haw. Rev. Stat. 368-8. That exception allowed claims against only co-employees for wilful, wanton, and reckless conduct. The holding in <u>Iddings</u> does not extend to employers such as the City. Accordingly, judgment on the pleadings is granted in favor of the City on Count V of the Verified Complaint.

6.    Judgment on the Pleadings is Granted in Favor
of the City on English's Punitive Damages
Claim (Count XII).

In <u>Lauer v. Young Men's Christian Association of
Honolulu</u>, 57 Haw. 390, 402, 557 P.2d 1334, 1342 (1976), the
Hawaii Supreme Court held that the City is not liable for
punitive damages:

> Public policy dictates the conclusion that
> the City, as a municipal corporation, should
> not be held liable for punitive damages. The
> innocent taxpayers, the intended beneficiary
> from the public example which the punishment
> makes of the wrongdoer, should not be made to
> suffer.  The deterrent or retributive effect
> of punitive damages must be placed squarely
> on the shoulders of the wrongdoer.

<u>Id.</u>

Rather than discuss <u>Lauer</u>, English, in his opposition,
merely states that the Hawaii Whistleblowers Protection Act, upon
which Count IV is based, "allows for remedies to be ordered by
the court in an action brought pursuant to the statute."
Opposition at 17.  English argues that, because Haw. Rev. Stat.
§ 378-64 does not expressly preclude punitive damages against the
City, such damages may be awarded.  That argument is meritless.

Section 378-64 was enacted in 1987, eleven years after
the Hawaii Supreme Court decided <u>Lauer</u>.  Had the legislature
intended for the City to be liable for punitive damages under
section 378-64, it could have expressly stated so to abrogate
<u>Lauer</u> with respect to whistleblower claims.  <u>See</u>, <u>e.g.</u>, <u>City of</u>

21

Newport v. Fact Concerts, Inc., 453 U.S. 247, 263-64 (1981) (noting that municipal immunity from punitive damages was well established at common law by the time the Civil Rights Act of 1871 was passed, and that, "had [Congress] wished to abolish" that immunity for purposes of that act, it would have specifically provided for punitive damages).

Moreover, section 378-64 states that the court may award "reinstatement of the employee, payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, or any combination of these remedies."  Section 378-65 then states that a civil fine between $500 and $5,000 may be imposed.  Neither of these sections indicates that punitive damages may also be awarded under section 378-64, and English cites no authority standing for that proposition.

Judgment on the pleadings is therefore granted in favor of the City on English's punitive damages claim (Count XII).

> B.   The Individual Defendants' Motion is Granted in
>      Part and Denied in Part.

The individual Defendants' motion seeks dismissal of only the NIED claim asserted in Count VII of the Verified Complaint.  The individual Defendants argue that, to the extent Count VII is asserted against them, it is barred by the exclusive remedy provisions of Hawaii's workers' compensation statutes. The motion is granted in part and denied in part.

22

The exclusivity provision of Hawaii's workers'
compensation law extends immunity from claims to both the
employer and co-employees acting within the scope of their
employment.  Haw. Rev. Stat. §§ 386-5 (employer) and 386-8 (co-
employee); Iddings, 82 Haw. at 6, 919 P.2d at 268 ("HRS § 386-8 .
. . extends immunity from suit to an injured worker's co-
employees."); accord Morishige v. Spencecliff Corp., 720 F. Supp.
829, 837 (D. Haw. 1989).  Under Haw. Rev. Stat. § 386-8, however,
co-employees are not relieved of liability to the extent a fellow
employee's injury is caused by "wilful and wanton" misconduct.

In Iddings, the Hawaii Supreme Court clarified that the
"wilful and wanton" misconduct exception includes suits based on
recklessness.  As used in Haw. Rev. Stat. § 368-8, "wilful and
wanton" refers to conduct that was

> (1) motivated by an actual intent to cause
> injury; or (2) committed in circumstances
> indicating that the injuring employee (a) has
> knowledge of the peril to be apprehended,
> (b) has knowledge that injury is probable, as
> opposed to a possible result of the danger,
> and (c) consciously fails to avoid the peril.

82 Haw. at 12, 919 P.2d at 274.  Because NIED claims involve
negligent conduct, see Calleon v. Miyagi, 76 Haw. 310, 320, 876
P.2d 1278, 1288 (1994) (as amended by grant of reconsideration on
July 15, 1994) (discussing elements of NIED claim), the conduct
underlying NIED claims does not rise to the level of culpability
necessary for purposes of the "wilful and wanton" misconduct

23

exception in section 368-8.  Accordingly, to the extent Count VII
(NIED) is asserted against the individual Defendants for actions
they took in their capacities as English's co-employees acting
within the scope of their employment, the individual Defendants'
motion is granted.

However, to the extent that Count VII (NIED) is
asserted against Kurokawa for actions he may have taken outside
of his capacity as an employee of the City (i.e., in his capacity
as an officer or shareholder of GK), section 386-5 does not bar
English's NIED claim.[6]  See Hun v. Center Properties, 63 Haw.
273, 277, 626 P.2d 182, 186 (1981) ("plaintiffs have the right to
sue in negligence or other torts against a third party, in
addition to the remedies under the worker's compensation laws");
accord Bator v. Hawaii, 1992 WL 690295, *9 (D. Haw. May 20, 1992)
("The Workers' Compensation Law preserves an injured employee's
causes of action against third persons."), aff'd on other
grounds, 39 F.3d 1021 (9th Cir. 1994).[7]

---

[6]English is not asserting that Magota or Gima took action in
any capacity on behalf of GK.

[7]Although the individual Defendants did not seek judgment on
the pleadings with respect to English's §§ 1985(2) and 1986
claims, because this court has already determined that English
fails to allege viable §§ 1985(2) and 1986 claims, Counts II and
III are dismissed to the extent they are asserted against the
individual Defendants.

24

C.   GK's Motion is Granted in Part and Denied in Part.

1.   Summary Judgment is Granted in Favor of GK on
English's § 1983 Claim (Count I).

To prevail on a § 1983 claim against GK, English must show that GK acted under color of law. See Melara v. Kennedy, 541 F.2d 802, 804 (9th Cir. 1976) ("Since only those actions taken under color of law state a claim under s 1983, the challenged action must have been taken 'under color of state law'"). Whether GK acted under color of law calls for an inquiry equivalent to that of whether "state action" has occurred under the Fourteenth Amendment: "is the alleged infringement of federal rights fairly attributable to the government?" See Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999).

Because GK is a private entity, the court "start[s] with the presumption that private conduct does not constitute governmental action." Sutton, 192 F.3d at 835. Before the court can conclude that GK's conduct constitutes governmental action, "'something more' must be present." Id. Courts have used the following four tests to determine whether "something more" is present: "(1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus." Id. at 835-36. While those four tests are helpful, "there is no specific formula for defining state action." Id. at 836. Rather, the determination of whether § 1983 liability

25

attaches to private conduct is based on the circumstances of each
case.  See id.  Although there is no mechanical test for
determining whether private action can be said to be governmental
action for purposes of § 1983, at a minimum, there must be a
"close nexus" between the government's conduct and the private
party's conduct to find that the private party was acting "under
color of law."   Id.  English says that he satisfies the "joint
action" test because Kurokawa "jointly acted" or "conspired" with
himself by acting while wearing one hat as a City administrator
and another as an officer, director, and shareholder of GK.  Even
assuming Kurokawa's actions may be said to be that of GK's, the
court is unpersuaded that he could jointly act or conspire with
himself.

     English contends that such a "close nexus" exists
because Kurokawa was an officer, director, and a 30% shareholder
of GK.  See Exhibits 6 and 7 (Articles of Incorporation and
Business Registration for GK indicating that Kurokawa was the
vice president and a director of GK and that Kurokawa had 90 of
the 300 shares of GK's stock).  English then says that Kurokawa,
who was also a City administrator, "used his power and influence"
to cause English's immediate supervisors to decrease job
performance ratings, attempt to extend English's probationary
period, deny English's request for medical leave, and attempt to
discipline English for taking unauthorized leave.  English also

says that Kurokawa threatened to transfer English to Kapolei. See Opposition at 10. English, however, submits no evidence or authority indicating that any of the alleged disciplinary conduct could have been done by a private party, rather than by his supervisors. To act under color of law, it "is enough that [a private party] is a willful participant in joint activity with the State or its agents." Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970). English, however, submits no facts from which the trier of fact could reasonably infer that GK willfully participated in the alleged retaliation. English's argument is akin to an attempt to hold a private person liable under § 1983 merely because that person tells a government supervisor that a certain employee should be fired. Even if that employee is fired, it is the government supervisor who actually fires the employee. Without more, it cannot be said that the private person's mere encouragement of the firing supports a ruling that the private person acted as or in concert with the government in the termination of the employee.[8]

---

[8]Moreover, the court notes that English has submitted only meager evidence indicating that, when Kurokawa was allegedly attempting to use his influence to have English disciplined, Kurokawa was acting on GK's behalf. At most, English shows that Kurokawa was an officer, director, and 30% shareholder of GK. English then asks the court to infer that GK should be liable for Kurokawa's actions because Kurokawa may have been acting on GK's behalf. English's argument would make corporations liable for every act by an officer, director, or shareholder.

On the present record, English fails to raise an issue of fact of a sufficiently close nexus between GK's and the City's alleged conduct to overcome the presumption that private conduct does not constitute government action.[9]

---

[9]In his opposition, English requests a Rule 56(f) continuance to allow him to conduct discovery into the nexus between GK's and the City's conduct. That request is denied. Rule 56(f) permits a district court to continue a summary judgment motion "upon a good faith showing by affidavit that the continuance is needed to preclude summary judgment." California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998). English has submitted no such affidavit. Nor has he shown that there is any basis for believing that some relevant information exists that would justify a continuance. See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Company, 353 F.3d 1125, 1130 (9th Cir. 2004); Campbell, 138 F.3d at 779. Finally, English has had ample time to conduct discovery, as he filed his Verified Complaint approximately 22 months ago. See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1997) (no abuse of discretion when district court denied Rule 56(f) continuance for lack of diligence in taking discovery); Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995) ("the district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past"); Richardson v. City & County of Honolulu, 759 F. Supp. 1477, 1485-86 (D. Haw. 1991) ("[i]f the non-movants have had ample time to conduct discovery, a continuance is not appropriate").

> 2.  Summary Judgment is Granted in Favor of GK on
>     English's Claims Under 42 U.S.C. §§ 1985 and
>     <u>1986 (Counts II and III).</u>

As described above, English has no viable § 1985 or

1986 claim.  Accordingly, for the reasons set forth above,

summary judgment is granted in favor of GK on English's Claims

Under 42 U.S.C. §§ 1985 and 1986 (Counts II and III).

> 3.  Summary Judgment is Granted in Favor of GK on
>     English's Claim Under Haw. Rev. Stat. § 378-
>     <u>62 (Count IV).</u>

Count IV of the Verified Complaint alleges that GK

violated Haw. Rev. Stat. 378-62, which prohibits "employers" from

discharging, threatening, or otherwise discriminating against an

"employee" because the employee reported or was about to report a

violation of a law, rule, ordinance, or regulation.  GK moves for

summary judgment, arguing that it was a private party that did

not employ English and therefore could not be liable under Haw.

Rev. Stat. 378-62.  English's entire opposition to this part of

GK's motion is that "GK has participated in the claimed acts of

retaliation."  <u>See</u> Opposition at 15.  Participation in

retaliation, by itself, is insufficient to state a claim under

Haw. Rev. Stat. 378-62.  As it is undisputed that GK did not

employ English, and as English has not shown that GK was an agent

of the City as described in Haw. Rev. Stat. 378-61,[10] GK cannot

_____

[10]Under Haw. Rev. Stat. 378-61, an "employer" is "a person
who has one or more employees.  Employer includes an agent of an
employer or of the State or a political subdivision of the
State."

be liable for a violation of Haw. Rev. Stat. 378-62. Summary

judgment is therefore granted in favor of GK on English's Haw.

Rev. Stat. 378-62 claim (Count IV).

> 4.    Summary Judgment is Granted in Favor of GK on
> English's "Wilful, Wanton, and Reckless
> Conduct" Claim (Count V).

Count V of the Verified Complaint is based on <u>Iddings</u>

<u>v. Mee Lee</u>, 82 Haw. 1, 919 P.2d 263 (1996). As described above

with respect to the City's motion, <u>Iddings</u> involved the co-

employee exception to the workers' compensation exclusivity

provision under Haw. Rev. Stat. 368-8. As the holding in <u>Iddings</u>

does not extend to private parties such as GK, summary judgment

is granted in favor of GK on Count V of the Verified Complaint.

> 5.    Summary Judgment is Granted in Favor of GK <u>on
> English's Defamation Claim (Count VIII).</u>

To sustain a claim for defamation under Hawaii law,

English must establish the following four elements: (a) a false

and defamatory statement; (b) an unprivileged publication to a

third party; (c) fault amounting at least to negligence on the

part of the publisher; and (d) either actionability of the

statement irrespective of special harm or the existence of

special harm caused by the publication. <u>Gold v. Harrison</u>, 88

Haw. 94, 100, 962 P.2d 353, 359 (1998).

GK correctly argues that it is entitled to summary

judgment on English's defamation claim because English identifies

no defamatory statement made by GK. In his opposition, English

identifies the people who allegedly made the defamatory

statements as Michael Golojuch, Carole Kamisato, and Defendant

Magota.  See Opposition at 21.  However, English does not contend

that any of these people made the allegedly defamatory statements

on behalf of GK.  Because English fails to submit any facts even

suggesting that GK made a defamatory statement about him, summary

judgment is granted in favor of GK on English's defamation claim

(Count VIII).

> 6.  Summary Judgment is Denied With Respect to
>     English's IIED, NIED, Interference with
>     Contractual Relations, Interference with
>     Prospective Economic Advantage, and Punitive
>     Damage claims (Counts VI, VII, IX, X and XI).

The essence of GK's motion with respect to English's

remaining state law claims is that GK did nothing to cause the

alleged damages at issue in those claims.  Kurokawa—GK's vice

president, director, and 30% shareholder (see Exhibits 6 and 7)--

was the person who allegedly retaliated against English because

English reported that City employees were doing work for GK on

City time.  Yet GK submits no evidence on this motion indicating

that Kurokawa was not acting on GK's behalf at the time those

retaliatory actions were taken.  On the present record, an issue

of fact exists as to whether Kurokawa's alleged bad acts are

attributable to GK for purposes of English's remaining state law

claims.  Accordingly, summary judgment is denied with respect to

English's IIED, NIED, interference with contractual relations,

interference with prospective economic advantage, and punitive damage claims (Counts VI, VII, IX, X and XI).

IV.    CONCLUSION.

For the reasons stated above, and as summarized in the table below, the City's motion is granted, the individual Defendants' motion is granted in part and denied in part, and GK's motion is granted in part and denied in part.

| | City | Individual Defendants | GK |
|---|---|---|---|
| Count I (§ 1983) | Judgment on the pleadings granted because Verified Complaint does not allege that the City acted pursuant to an official policy | Did not move on | Summary judgment granted because English failed to establish that GK acted "under color of law" |
| Count II (§ 1985(2)) | Judgment on the pleadings granted because this case does not involve a conspiracy to obstruct justice in federal court or class-based invidious discrimination | Dismissed because this case does not involve a conspiracy to obstruct justice in federal court or class-based invidious discrimination | Summary Judgment granted because this case does not involve a conspiracy to obstruct justice in federal court or class-based invidious discrimination |
| Count III (§ 1986) | Judgment on the pleadings granted because no valid § 1985 claim | Dismissed because no valid § 1985 claim | Summary judgment granted because no valid § 1985 claim |
| Count IV (Haw. Rev. Stat. § 378-62) | Did not move on | Did not move on | Summary judgment granted because GK not English's "employer" |

| Count V (Wilful, Wanton, and Reckless Conduct) | Judgment on the pleadings granted because <u>Iddings v. Mee Lee</u>, 82 Haw. 1, 919 P.2d 263 (1996), does not apply to employers, but instead involves the co-employee exception to the workers' compensation exclusivity provision | Did not move on | Summary judgment granted because <u>Iddings v. Mee Lee</u>, 82 Haw. 1, 919 P.2d 263 (1996), does not apply to GK |
| --- | --- | --- | --- |
| Count VI (IIED) | Did not move on | Did not move on | Summary judgment denied because an issue of fact exists on this record as to whether Kurokawa's actions are attributable to GK |
| Count VII (NIED) | Judgment on the pleadings granted because the NIED claim barred by Haw. Rev. Stat. § 386-5 | Judgment on the pleadings granted to the extent the NIED claim is asserted against individual Defendants for actions they took in their capacities as employees of the City

Judgment on the pleadings denied to the extent the NIED claim is asserted against Kurokawa for actions he may have taken in his capacity as an officer or shareholders of GK | Summary judgment denied because an issue of fact exists on this record as to whether Kurokawa's actions are attributable to GK |

| | | | |
|---|---|---|---|
| Count VIII (Defamation) | Did not move on | Did not move on | Summary judgment granted because English does not contend that GK made a defamatory statement |
| Count IX (Interference with Contractual Relations) | Did not move on | Did not move on | Summary judgment denied because an issue of fact exists on this record as to whether Kurokawa's actions are attributable to GK |
| Count X (Interference with Prospective Business Advantage) | Did not move on | Did not move on | Summary judgment denied because an issue of fact exists as to whether Kurokawa's actions are attributable to GK |
| Count XI (Violation of Rights under the Hawaii Constitution) | Withdrawn | Withdrawn | Withdrawn |
| Count XII (Punitive Damages) | Judgment on the pleadings granted because City not liable for punitive damages under Lauer v. Young Men's Christian Association of Honolulu, 57 Haw. 390, 557 P.2d 1334 (1976) | Did not move on | Summary judgment denied because an issue of fact exists on this record as to whether Kurokawa's actions are attributable to GK |

English is given leave to file an amended complaint
no later than January 12, 2006.  English may reallege his
§ 1983 claim against the City.  If he realleges his § 1983

claim against GK, he must allege more than he presently does with respect to GK's "close nexus" with the City.  English may not reallege any claim under § 1985(2).  Unless English can state a claim under some other subsection of § 1985, English may not reallege a claim under § 1986.  Count IV may not be realleged against GK.  Count V (wilful, wanton, and reckless conduct) may not be realleged against the City or GK.  Count VII may not be realleged against the City or against individual Defendants other than Kurokawa.  Count XII may not be realleged against the City.  In all other respects, English may reallage claims, subject to the present order, or add claims.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 14, 2005.

SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

English v. City and County of Honolulu, et al., Civil No. 04-00108 SOM/KSC; ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR JUDGMENT ON THE PLEADINGS; ORDER GRANTING IN PART AND DENYING IN PART THE INDIVIDUAL DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS; ORDER GRANTING IN PART AND DENYING IN PART THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT GK APPRAISALS, INC.