MOSELEY BIEHL TSUGAWA LAU & MUZZI
a Hawaii limited liability law company

| | |
|---|---|
| ROGER S. MOSELEY | 2060 |
| ALAN K. LAU | 3981 |
| RENEE M. FURUTA | 7593 |
| JOANNA B.K. FONG | 7764 |

Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, Hawaii 96813
Telephone: (808) 531-0490
Facsimile: (808) 534-0202
Email:  rmoseley@hilaw.us
        alau@hilaw.us
        rfuruta@hilaw.us
        jfong@hilaw.us

Attorneys for Plaintiff
PHILIP E. ENGLISH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>     Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1–10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE | Civil No. 04-00108 SOM/KSC<br><br>PLAINTIFF PHILIP E. ENGLISH'S MEMORANDUM IN OPPOSITION TO DEFENDANTS GARY T. KUROKAWA, ROBERT O. MAGOTA, AND ANN C. GIMA'S MOTION FOR PARTIAL DISMISSAL, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT; CERTIFICATE OF SERVICE |

10010/3/56185

| | |
|---|---|
| ENTITIES 1-10,<br><br>         Defendants. | HEARING:<br>DATE:  June 15, 2006<br>TIME:  9:30 a.m.<br>JUDGE: The Honorable Kevin S.C.<br>              Chang |

PLAINTIFF PHILIP E. ENGLISH'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS GARY T. KUROKAWA, ROBERT O. MAGOTA, AND
ANN C. GIMA'S MOTION FOR PARTIAL DISMISSAL, OR IN THE
ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff PHILIP E. ENGLISH (hereinafter referred to as "Plaintiff"), by and through his attorneys, Moseley Biehl Tsugawa Lau & Muzzi, a Hawaii Limited Liability Law Company, hereby opposes Defendants Gary T. Kurokawa, Robert O. Magota, and Ann C. Gima's Motion for Partial Dismissal, or in the alternative, Motion for Partial Summary Judgment filed herein on May 3, 2006.

I.   FACTUAL BACKGROUND

As set forth and supported in the Concise Statement of Material Facts filed concurrently herewith, there exists material facts in controversy. The Concise Statement of Material Facts set forth by Plaintiff in this case shall serve to controvert the material facts presented in Defendants Kurokawa, Magota, and Gima's motion for partial dismissal or in the alternative for summary judgment.

II.  STANDARD OF REVIEW

In considering a 12(b)(6) motion to dismiss, the general rule is that a complaint should not be dismissed on the pleadings "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99; 2 L. Ed. 2d 80 (1957). In evaluating a complaint, any doubts should be construed in the favor of the pleader. Nagano v. Ledbetter, No. 85-0211, 1987 U.S. Dist. LEXIS 15836, at *7 (D. Haw. Sept. 22, 1987) (citing) Ernest W. Hahn, Inc. v. Codding, 615 F.2d 830, 834-36 (9th Cir. 1980). The complaint must be liberally construed, giving the plaintiff the benefit of all proper inferences. Id. (citing) Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Caltrett, 477 U.S. 317. 323, 106 S. Ct. 2548; 91 L. Ed. 2d 265 (1986). In determining whether summary judgment is proper, a court ordinarily must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party. Harlow v. Fitzgerald, 457 U.S. 800; 102 S. Ct. 2727; 73 L. Ed. 2d 396 (1982).

III. ARGUMENT

    A. PLAINTIFF HAS STATED A COGNIZABLE CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

In their motion for partial dismissal or in the alternative for partial summary

judgment, Defendants Kurokawa, Magota, and Gima (collectively "Defendants") argued that Plaintiff has failed to state a cognizable claim for intentional interference with contractual relations because there is no such claim under Hawaii law.  See Defendant Gary T. Kurokawa, Robert O. Magota, and Ann C. Gima's Motion for Partial Dismissal, or in the alternative, Motion for Partial Summary Judgment ("Defendants' Motion") at 7.  Defendants noted that Hawaii courts, however, recognize a claim for tortious interference with contractual relations but assert that this Court should dismiss Count IX of Plaintiff's Amended Complaint because Plaintiffs have not alleged a claim for tortious interference with contractual relations.

Plaintiff has pleaded with sufficient factual averments to put Defendants on notice that Plaintiff alleged a claim of tortious interference with contractual relations.  The "deficiency" decried by Defendants in their Motion is merely one of semantics.  Pursuant to the Federal Rules of Civil Procedure (FRCP) Rule 8(e)(1), "each averment of a pleading shall be simple, concise, and direct.  No technical forms of pleading or motions are required."  As noted by the Court of Appeals of the 9th Circuit, "pleadings need suffice only to put the opposing party on notice of the claim…. Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief.  Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001)(internal citations omitted).

Pursuant to Hawaii case law, the requisite elements of a claim for tortious interference with contractual relations are as follows: 1) a contract between the plaintiff and a third party; 2) the defendant's knowledge of the contract, 3) the defendant's intentional inducement of the third party to breach the contract; 4) the absence of justification on the defendant's part; 5) the subsequent breach of the contract by the third party; and 6) damages to the plaintiff. <u>Weinberg v. Mauch</u>, 78 Haw. 40, 50, 890 P.2d 277, 287 (Haw. 1995). Plaintiff has presented sufficient facts to demonstrate that it has met all of the elements of a claim for tortious interference with contractual relations.

First and foremost, Plaintiff began employment as a Real Property Appraiser II with a third party, the Defendant City and County of Honolulu's ("Defendant City") Real Property Assessment Division, in June 2000. It cannot be disputed that Plaintiff had an employment contract with Defendant City. <u>See</u> Exhibit "23"[1].

Second, Defendants were all employees of the Defendant City's Real Property Assessment Division and all had some degree of supervisory capacity over Plaintiff. It cannot be disputed that Defendants possessed knowledge that Plaintiff had an employment contract with Defendant City.

Third, Defendants, by and through their scheme of retaliation against Plaintiff, induced the Defendant City to breach its employment contract with

---

[1] The terms "Exhibit" or "Exhibits", as cited in this Memorandum in Opposition, refers to the Exhibits attached to Plaintiff's Concise Statement of Material Facts filed concurrently herewith.

10010/3/56185                                   5

Plaintiff. Defendants began to retaliate against Plaintiff after he reported to Defendant Magota, in an email on February 15, 2002 that outlined his concerns that Defendant Kurokawa was instructing City employees to perform work for his private appraisal firm during City time and using City resources. See Exhibit "8". Prior to February 15, 2002, Plaintiff received performance reviews that rated him as meeting or exceeding the requirements of various performance factors. After Plaintiff reported his concerns regarding Defendant Kurokawa's improper and illegal exploitation of Defendant City resources for his own gain, Defendants retaliated against Plaintiff by reprimanding him for, amongst a number of things, "coming and going" as he pleased, for placing leave papers on Defendant Gima's desk at inappropriate times, and for asking questions that he already knew the answers to. Exhibit "2" at 172-75. Plaintiff was also treated differently from other appraisers in the Real Property Assessment Division, held to a different standard, not afforded the same degree of flexibility in his schedule that was provided to other appraisers and denied leave for medical appointments. Exhibit "2" at 192-97; [Exhibit A to Exhibit "1" at 11]; Exhibit "13". In the period immediately following Plaintiff's report to Defendant Magota about Defendant Kurokawa's illegal use of City resources, Plaintiff began to receive poor and substandard performance reviews. See Exhibit "9"; Exhibit "10"; Exhibit "11"; Exhibit "2" at at 198; 385-89. Following his February 15, 2002 email to Defendant Magota, Defendant Kurokawa attempted to place Plaintiff under

extended probation, threatened to transfer Plaintiff to another jurisdiction. Exhibit "11"; Exhibit "12"; Exhibit "2" at 199-206; 222-23.  Defendants caused multiple "Confidential Workplace Violence" checklists to be filed against Plaintiff and caused Christopher Graff to file a "Confidential Workplace Violence Incidence Report".  See Exhibit "14" and Exhibit "15".  These actions, in culmination, eventually lead to Plaintiff being placed on leave without pay and on "special probation", a status that had the potential of leading to Plaintiff's eventual discharge.  The totality of Defendants actions caused or induced the Defendant City to breach its employment contract with Plaintiff by eventually forcing Plaintiff to leave his employment with Defendant City.

Fourth, there was certainly an absence of justification on the part of the Defendants.  Defendants induced the Defendant City to breach its employment contract with Plaintiff in order to retaliate against Plaintiff for vocalizing and reporting the illegal use of Defendant City resources by Defendant Kurokawa.  The retaliatory acts committed by Defendants began immediately after Plaintiff wrote an email to Defendant Magota on February 15, 2002 noting his concerns that Defendant City employees were performing work for Defendant Kurokawa's private appraisal firm, G.K. Appraisals, Inc. during City time and that Defendant Kurokawa was sanctioning and orchestrating such work.  See Exhibits "2", "8", [Exhibit "A" to Exhibit "1"], "9","10-15".  Prior to Plaintiff submitting this email, Plaintiff's work performance was rated as meeting or exceeding expectations.  See

Exhibits "1"-"3". Immediately following his email to Defendant Magota, Plaintiff's working performance began to decline and eventually resulted in Plaintiff receiving substandard work performance ratings. Exhibits "9", "11", "19"-"20". Defendants induced the Defendant City to breach its employment contract with Plaintiff for the sole purpose of retaliating against him for reporting the illegal use of City resources by Defendant Kurokawa.

Fifth, Defendants, through their actions, Defendant City breached its employment contract with Plaintiff. Defendants argued that Plaintiff voluntarily resigned from his position as part of his Workers Compensation settlement with Defendant City. Plaintiff's act of entering into such a settlement was anything but voluntary. Plaintiff entered into the Compromise, Settlement, and Release Agreement under duress because he was experiencing extreme financial strains and needed the Workers' Compensation settlement money to pay for his daily living expenses and medical care and expenses related to his work place injury. See Declaration of Philip E. English ("English Declaration") at ¶18. Plaintiff also felt that there was no other option as he needed the money and he felt that he was not able to return to work for Defendant City due to the physical, emotional, and psychological injuries and trauma that he suffered and the hostile work environment that he was subjected to at Defendant City's Real Property Assessment Division. See id. The Compromise, Settlement, and Release Agreement contained a provision that required Plaintiff to terminate his

employment with Defendant City in order to receive Workers Compensation. <u>See</u> Exhibit "24". This provision is illegal. Pursuant to H.R.S. § 378-32, it is unlawful for an employer to

> suspend, discharge, or discriminate against any of the employer's employees …
>
> (2) Solely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing. Any employee who is discharged because of the work injury shall be given first preference of reemployment by the employer in any position which the employee is capable of performing and which becomes available after the discharge and during the period thereafter until the employee secures new employment. This paragraph shall not apply to any employer in whose employment there are less than three employees at the time of the work injury or who is a party to a collective bargaining agreement which prevents the continued employment or reemployment of the injured employee….

In the Compromise, Settlement, and Release, Defendant City agreed that Plaintiff suffered a stress-related psychic injury out of the course of his employment and that he was entitled to receive workers compensation benefits. Therefore, Plaintiff was entitled to workers compensation benefits pursuant to chapter 386. Yet the Defendant City would not provide the benefits that Plaintiff was entitled to without a provision requiring Plaintiff to terminate his employment. <u>See</u> Exhibit "24: at ¶¶ 11-12. Rather than forcing him to terminate his employment, Defendant City should have assessed the Plaintiff and offered him other available work in which he was capable of performing, then and in the future. Defendant City did not do

this. Moreover, Reneau Kennedy, Ed.D. ("Dr. Kennedy"), the psychologist hired by the Defendant City to assess and evaluate Plaintiff after his stress-related injury, stated in a April 20, 2003 letter to Thomas Riddle, Defendant City's Workers' Compensation Administrator, that "Mr. English is totally unable to work at this time. His psychiatric needs override alternate temporary work relocation at this juncture." See Exhibit "26". As such, the Defendant City breached its employment contract with Plaintiff, due to Defendants' collective and cumulative conduct, by forcing him to involuntarily terminate his employment in exchange for the receipt of workers compensation, a benefit to which he was entitled to.

Sixth, Plaintiff suffered damages as a result of Defendants actions and the breach of Plaintiff's employment contract by Defendant City. Plaintiff was damaged in the sense that he was no longer had employment with Defendant City and was unable to receive a steady income and the benefits associated with working for Defendant City, including health benefits . Due to this lack of employment, Plaintiff suffered severe financial difficulties and distress. See Exhibit "22". Due to Defendants' actions of retaliating against Plaintiff, as well as the Defendant City's subsequent breach of Plaintiff's employment contract, Plaintiff has sustained, as of August 15, 2005, lost wages and benefits in the amount of $834,706 due to his action of reporting the illegal use of City resources by Defendant Kurokawa lost wages. See Exhibit "25".

Plaintiff has stated a cognizable claim of tortious interference with contractual relations against the Defendants. As such, Defendants' motion for partial dismissal or in the alternative for summary judgment on this claim must be denied.

B. PLAINTIFF STATED A COGNIZABLE CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

In their Motion Defendants argued that Plaintiff has failed to state a cognizable claim for intentional interference with contractual relations because there is no such claim under Hawaii law. See Defendants' Motion at 11. Defendants noted that Hawaii courts, however, recognize a claim for tortious interference with prospective business advantage but assert that this Court should dismiss Count X of Plaintiff's Amended Complaint because Plaintiffs have not alleged a claim for tortious interference with prospective business advantage.

Plaintiff has pleaded with sufficient factual averments to put Defendants on notice that Plaintiff alleged a claim of tortious interference with prospective business advantage or prospective economic advantage. As previously stated in section A of this Memorandum in Opposition, the "deficiency" decried by Defendants in their Motion is again, merely one of semantics. Pursuant to the Federal FRCP Rule 8(e)(1), "each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." As noted by the Court of Appeals of the 9th Circuit, "pleadings need suffice only to put the

opposing party on notice of the claim.... Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief.   Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001)(internal citations omitted).

Pursuant to Hawaii case law, the requisite elements of a claim for tortious interference with prospective business advantage are as follows:  (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages. Meridian Mortgage v. First Hawaiian Bank, 109 Haw. 35, 40, 122 P.3d 1133, 1145-46 (Haw. 2005)(citing Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Co., 91 Haw, 224, 258, 982 P.2d 853, 887 (Haw. 1999).

First and foremost, Plaintiff had a prospective economic advantage both within the Defendant City and in the private appraisal business.  Plaintiff had an opportunity to advance within the Real Property Assessment Division and has advanced in the past with promotions, prior to Plaintiff's email report to Defendant

Magota regarding Defendant Kurokawa's illegal use of City resources. Plaintiff was also in the real estate appraisal business for twenty five years and had a prospective advantage of continuing in the private real estate appraisal profession. See Plaintiff's Verified Complaint at ¶¶131-135 and Exhibit "25".

Second, Defendants had knowledge of Plaintiff's prospective economic advantage that Plaintiff had within the City as they were employees of the Real Property Assessment Division and had supervisory capacity over Plaintiff. They had knowledge as they were the ones who provided Plaintiff with his performance reviews and assisted Plaintiff in securing his promotions. See Exhibits "4" and "5". Defendants were also aware of Plaintiff's extensive experience as a private real estate appraiser and acknowledged that his experience and foundational knowledge in the real estate profession has been extremely helpful with his position. See Plaintiff's Verified Complaint at ¶21-23 and Exhibit "5".

Third, Defendants had a purposeful intent to interfere with Plaintiff's prospective economic advantage. Defendants interfered with Plaintiff's prospective economic advantage for the sole purpose of retaliating against Plaintiff for reporting Defendant Kurokawa's illegal use of City resources. As discussed in the section above, Plaintiff's performance reviews prior to February 15, 2002, rated him as meeting or exceeding the requirements of various performance factors. After Plaintiff reported his concerns regarding Defendant Kurokawa's improper and illegal exploitation of Defendant City resources for his own gain,

Defendants retaliated against Plaintiff by reprimanding him for, amongst a number of things, "coming and going" as he pleased, for placing leave papers on Defendant Gima's desk at inappropriate times, and for asking questions that he already knew the answers to. Plaintiff was also treated differently from other appraisers in the Real Property Assessment Division, held to a different standard, not afforded the same degree of flexibility in his schedule that was provided to other appraisers and denied leave for medical appointments. In the period immediately following Plaintiff's report to Defendant Magota about Defendant Kurokawa's illegal use of City resources, Plaintiff began to receive poor and substandard performance reviews. Defendant Kurokawa attempted to place Plaintiff under extended probation and threatened to transfer Plaintiff to another jurisdiction. Defendants caused multiple "Confidential Workplace Violence" reports to be filed against Plaintiff. These actions, in culmination, eventually lead to Plaintiff being placed on leave without pay and on "special probation", a status that had the potential of leading to Plaintiff's eventual discharge. The totality of Defendants actions were without any justification except to retaliate against Plaintiff for reporting Defendant Kurokawa's illegal activities.

  Fourth, there exists legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy. Plaintiff was forced to terminate his employment with the City due to Defendants' conduct and retaliation. As a result, Plaintiff suffered economic distress and a loss of an

economic advantage and future advancement within Defendant City. Plaintiff also suffered a loss of economic advantage as a result of the physical, psychological, and emotional trauma and injury that he suffered as a result of Defendants' retaliatory actions. Due to Defendants' conduct, Plaintiff is no longer able to work as an appraiser either with the City or in the private appraisal business. English Declaration at ¶19; see also Exhibit "26", Exhibit "27". Plaintiff also cannot apply for a private appraiser position without feeling physically ill. English Declaration at ¶21.

In addition to the physical, psychological, and emotional injuries, Defendants have also interfered with Plaintiff's prospective economic advantage in the private appraisal business and other third party potential employers by defaming and damaging his reputation within the Defendant City and in the appraisal community. In a meeting with some of the staff of the Real Property Assessment Division, Defendant Magota referred to Plaintiff as a "whacko". See Exhibit "2" at 368 and Plaintiff's Verified Complaint at ¶63. Defendant Magota, in a conversation with an outside private real estate appraiser on or about August or September 2002, indicated that Plaintiff was causing trouble in the Real Property Assessment Division. See Exhibit "2" at 368 and Plaintiff's Verified Complaint at ¶64. This characterization of Plaintiff by Defendant Magota is certainly an obstruction and encumbrance to Plaintiff's prospective economic

advantage to securing employment either within the Defendant City or in the private appraisal business.

Moreover, due to Defendants' conduct, Plaintiff has difficulty applying apply for new jobs because he must now disclose to potential employers as why I left my position at the City.  See English Declaration at ¶22.  Plaintiff is extremely concerned and worried that new employers would not hire him if they knew that he was a whistleblower and was forced to leave because he made reports about the illegal use of City resources by Defendant Kurokawa.  See id.; see also Exhibit "27" at 6. In addition, since suffering the physical, psychological, and emotional trauma and injuries due to the retaliatory actions of Defendants Kurokawa, Magota, and Gima, Plaintiff now has a difficult time trusting himself and others.  Plaintiff no longer feels confident around people, especially in a work setting and feels constant anxiety when he is around people.  See English Declaration at ¶23.  Defendants' actions have interfered and seriously impaired Plaintiff's prospective economic advantage with others in the private appraisal business and with other third parties.

Defendants attempt to argue that Plaintiff admitted that he has not applied for another position as an appraiser and that Plaintiff's claim for damages is purely speculative.  Defendants cited to a portion of the transcript of Plaintiff's deposition for support.  However, the portion cited by Defendants provides only a partial testimony regarding this subject.  In an earlier portion of Plaintiff's deposition,

Plaintiff indicated that he was in therapy and was informed by his therapist that he could no longer work as a real estate appraiser for the City and County. See Exhibit "2" at 55-56. Plaintiff also noted that in therapy, he is seeking employment gradually and noted: "I don't want to experience similar things that I experienced at the City. I mean, there is no guarantee that an employee won't behave in a way that causes someone to hurt them in a way." See Exhibit "2" at 55. Defendants view is quite simplistic in the sense that they point out that Plaintiff did not sustain any damages because he has not applied for another appraiser position. However, Defendants failed to note that due to their retaliation against Plaintiff, Plaintiff has not been able to apply for another position as appraiser because of the psychological and emotional injuries they caused him, the harm that Defendant Magota has caused to Plaintiff's reputation in the appraisal business, and the fear and anxiety that he experiences when he applies for a new job (due to Defendants' retaliatory actions). The thought of applying for another appraiser position causes Plaintiff to be physically ill. English Declaration at ¶21.

There is a fifth element to claim for tortious interference with prospective economic advantage that was not cited by Defendants. Plaintiff cited the fifth element of the claim for the Court's information. Though Defendants do not cite to it, Plaintiff has demonstrated that he suffered damages as a result of Defendants' retaliatory actions. First and foremost, Plaintiff lost employment with the City, which in turn caused him emotional distress. Exhibit "22". As a result of this loss

of employment with Defendant City, Plaintiff also lost any prospective economic advantage of advancing within the Defendant City and the Real Property Assessment Division. In addition, Plaintiff has also lost the ability to obtain prospective economic advantage in the private appraisal business. Plaintiff's reputation in the real estate appraisal business has been damaged due to the defamatory remarks that Defendant Magota has made about Plaintiff, both within the City and outside the City. Plaintiff now faces an additional employment barrier such that he is now forced to explain to potential employers why he left employment with the City. English Declaration at ¶22. As of August 15, 2005, Plaintiff was assessed as to have lost wages and benefits in the amount of $834,706. In addition to the lost wages and benefits, Defendants have also caused Plaintiff to sustain serious physical, psychological, and emotional trauma and has caused Plaintiff to lose trust in himself, to lose confidence and trust in other people in a work setting, and to suffer constant anxiety. English Declaration at ¶23. Plaintiff has certainly demonstrated the damages caused by Defendants.

    C.    **DEFENDANTS KUROKAWA, MAGOTA, AND GIMA'S MOTION FOR PARTIAL DISMISSAL OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT MUST FAIL AS THEY HAVE NOT MET THE REQUIREMENTS FOR SUCH RELIEF**

Defendants Kurokawa, Magota, and Gima have moved for partial dismissal or partial summary judgment in this case. However, Defendants' motion must fail as there are disputes of material facts that must be determined by a jury or fact-finder.

Partial dismissal and summary judgment is not proper in this case because the evidence set forth in Plaintiff's verified complaint, pleadings, depositions, answers to interrogatories, admissions on file, have demonstrated that there are issues of material facts and that Plaintiff is entitled to the relief sought. The evidence on record, viewed in the light most favorable to the nonmoving party, demonstrates that Plaintiff has met all of the required elements to sustain a claim against Defendants for tortious interference with contractual relations and tortious interference with prospective business or economic advantage. In viewing the evidence, facts, and inferences in the light most favorable to the Plaintiff, Defendants Kurokawa, Magota, and Gima's motion must fail.

III.   CONCLUSION

For all the foregoing reasons and based upon the documents and evidence herein, Plaintiff respectfully requests that this Court deny Defendants Kurokawa, Magota, and Gima's current Motion for Partial Dismissal or in the alternataive Motion for Partial Summary Judgment.

The discovery process in this case has not yet been completed. Defendants Kurokawa, Magota, and Gima are currently in the process of completing depositions and the production of documents. As such, if there is any inclination of the Court to grant the instant motion, Plaintiff would request that this Court, pursuant to FRCP Rule 56(f) postpone the adjudication on Defendants Kurokawa, Magota, and Gima's motion until the discovery process has been completed.

DATED:   Honolulu, Hawaii, __May 26,__ , 2006.

/s/ Joanna B.K. Fong
_____
**ROGER S. MOSELEY**
**ALAN K. LAU**
**RENEE M. FURUTA**
**JOANNA B.K. FONG**

Attorneys for Plaintiff
PHILIP E. ENGLISH