CONFIDENTIAL WORKPLACE VIOLENCE INCIDENT REPORT - Page 1

15 / 1/17/03  1/22/03 Chg

To: _____
Date of Incident: ~~1/3/03~~ AND ~~1/8/03~~
Location of Incident: GRILLA'S RESTAURANT AND Telephone conversation (1/8/03)
Time of Incident: 1:00 (GRILLA'S RESTAURANT) AM/~~PM~~
Day of the week: _____
From: _____
Phone: _____

Number of persons affected: MYSELF (CHRIS GRAFF)

(Name of the victim(s)/affected person(s))
Position: CHRIS GRAFF     Bargaining Unit: 13
Supervisor: ANN GIMA     Supervisor notified? Yes X   No ___
Family Notified? Yes X   No ___

Was there third party/non-employee involvement? Yes ___ No X

Lost work time? Yes X  No ___  Anticipated return to work date: LOST only A couple of hours

Alleged Assailant/Perpetrator Information:
(CHRIS GRAFF)
Violence was directed towards: Staff X   Customer/Client ___
  Visitor ___   Other ___

Assailant(s) is/were: Staff X   Customer/Client ___   Visitor ___
  Other ___
  Name of Assailant(s) or Alleged Perpetrator(s), if known

Position or Job Title of the Assailant(s): REAL PROPERTY APPRAISER IV

Was the assailant ARMED?   Yes ___ No X
If assailant was ARMED, describe the weapon: _____

Have there been previous incidents of this type in the workplace?   Yes ___   No X

Have there been previous incidents of this type by this person?   Yes ___   No X

Incident Information:

Type of incident: PHYSICAL Abuse ___   VERBAL Abuse ___
   OTHER (describe) VERBAL INTIMIDATION, THREATS

Injuries? Yes ___ No X

IF YES, what were extent of the injuries? _____

Risk factors applicable to the incident:

___ Working with money         ___ Working alone
___ Working early morning      ___ Working at night
___ Dissatisfied with customer service   ___ Domestic
X  Prior history of violence   ___ Gang related
___ Work in a high crime area  ___ Intoxicants/drugs
X  Other (describe): ASSAILANT has thrown TEMPER TANTRUMS IN PAST. THREW boxes Around etc...

Exhibit 14

ATCH 12

CONFIDENTIAL WORKPLACE VIOLENCE INCIDENT REPORT - Page 2

Description of the incident

(SEE ATTACHED)

Present at the time of the incident: POLICE __N__   SECURITY __NO__

Police notified?   YES ___   NO ___

Did anyone leave the area because of the incident?
YES ___   NO _X_   Not determined ___

The status of the incident:

Incident diffused: YES ___   NO ___
Explain outcome

Assailant/perpetrator: __PHIL ENGLISH__

Arrested?   YES ___   NO _X_   Escorted off premises? YES ___   NO _X_

Remained on premises? YES ___   NO ___   Left on own?   YES ___   NO ___

Other (describe)

Recommendations that would prevent a similar incident:

Report completed by: __Chris GRAFF__   Title: __REAL Property Appraiser II__

Witnesses: ___   Date: ___

Supervisor notified by: __Chris GRAFF__   Time: __TUESDAY 1/7/03 & FRIDAY 1/10/03__

RENEAU KENNEDY RE PHILIP ENGLISH                                364

To Whom It May Concern:

On or about January 10th to 12th 2003, Mr. Phil English left several telephone messages on my cell phone asking me to call him. He stated, "There is something I need to talk to you about". I did not return the calls. Upon returning to work on Friday January 17th, I asked Mr. English what he wanted to speak with me about. Mr. English indicated that we should talk outside of the office.

We met for lunch at Grilla's Restaurant. During lunch Mr. English told me that the Real Property Assessment Office (RPA) has been under investigation for a long time by the F.B.I. and the City and County of Honolulu, Corp Counsel Ethics Commission. Mr. English further stated that the F.B.I. had a list of people from RPA, which was called the "bad list". I was shocked when Mr. English claimed that my name was on this so called "bad list", along with Gary Kurokawa, head of RPA, Steve Yee, an RPA supervisor, and others I can not remember.

Mr. English also stated that the City and County Department of Information Technology (DIT) had been helping with the alleged investigation and had accessed my computer records at the request of Charles Totto, head of the Ethics Commission, and the F.B.I. He also said that two other people from RPA had already gone forward to Ethics and are "of record" saying that I had been doing private appraisal work with Gary Kurokawa's approval while on City time. Mr. English also claimed that DIT had "hard evidence" to support these allegations.

Mr. English warned me that the Ethics Commission was "nobody to mess around with" because by the time they got around to questioning me about this "they would already know the answers". If I lied to them, they would know and "hang me out to dry"
At this point in our conversation, because I knew I had done nothing wrong, I felt Mr. English was attempting to intimidate me.

To intimidate me further, Mr. English related a tale to me about some guy who worked for the State of Hawaii who was put in jail for doing private work on State time. But this person was a mechanic doing "outside" work on State time with State equipment.

Mr. English further claimed that the Ethics Commission investigation had progressed so far that Charles Totto said "the best thing Gary Kurokawa could do right now was resign" because in addition to the allegations of private work being done on City time, they had allegedly found some irregularities with other properties held by Gary and his family.

Mr. English then told me that if I went forward to the Ethics Commission right now, i.e. prior to a complaint being filed, that I would be "moved off of the bad list" and placed into "whistle blower" status and therefore I could not be fired. Mr. English claimed that if I did not got to the Ethics Commission I would be fired and go to jail.

Mr. English contended that he was already protected as a so-called "whistle blower"

and that he wanted the same for me. Mr. English claimed that Robert Magota, RPA Assessor, said to him that "Chris is going down" for doing private appraisal work on City time, and insinuated that Mr. Magota was working with DIT and Ethics Commission.

When I informed Mr. English that the accusations alleged against me were false, Mr. English shouted, while slamming his fists into the tabletop, "Oh come on Chris, that's a lie!"

On Wednesday January 22, 2003 I received a phone call around 12:30 pm from Mr. English. He said that he had copy of an "official complaint" from Ethics and that my name was "all over it man." He then told me again that if I was to "save myself" that I needed to speak with Charles Totto at Ethics and "tell him everything" because they already knew and were going to "get me."

After meeting with the Ethics Commission, at the request of Charles Totto, I have since learned that the office is currently not under investigation by the F.B.I or the Ethics Commission, that there is no "bad list", that DIT has no "hard evidence" of wrongdoing, and most of Mr. English's statements were false.

Mr. English's lies amount to verbal intimidation. Mr. English has lodged several complaints against RPA and the Hawaii Government Employee's Association (HGEA). I believe his motivation was to intimidate me and scare me coming forth to the Ethics Commission with any information, which might in some way substantiate his complaints.

Sincerely,

*Chris Graff*
Chris Graff

RENEAU KENNEDY RE PHILIP ENGLISH                                    366