MOSELEY BIEHL TSUGAWA LAU & MUZZI
a Hawaii limited liability law company
ROGER S. MOSELEY          2060
CHRISTOPHER J. MUZZI      6939
RENEE M. FURUTA           7593
Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, Hawaii 96813
Telephone: (808) 531-0490
Facsimile: (808) 534-0202
Email: rmoseley@hilaw.us
       cmuzzi@hilaw.us
       rfuruta@hilaw.us

Attorneys for Plaintiff
PHILIP E. ENGLISH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1–10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,<br><br>　　　　　Defendants. | Civil No. 04-00108 SOM/KSC<br><br>PLAINTIFF PHILIP E. ENGLISH'S MEMORANDUM IN OPPOSITION TO DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA AND ANN C. GIMA'S MOTION FOR PROTECTIVE ORDER; DECLARATION OF COUNSEL; EXHIBIT A –G; CERTIFICATE OF SERVICE<br><br>HEARING<br>DATE:　6/26/06<br>TIME:　1:30 P.M.<br>JUDGE:　Hon. Kevin S. Chang |

# TABLE OF CONTENTS

|  | Page No. |
|---|---|
| Table of Authorities | 3 |
| Plaintiff Philip E. English's Memorandum in Opposition to Defendants City and County of Honolulu, Gary T. Kuroklawa, Robert O. Magota and Ann C. Gima's Motion for Protective Order | 4 |
| I. Statement of Facts | 4 |
| II. The Deposition of Michael A. Lorusso is relevant and necessary | 10 |
| III. Disparate Treatment | 15 |
| IV. Policy of the City | 17 |
| V. Conclusion | 19 |

# TABLE OF AUTHORITIES

                                                      Page No.

**CASES**

Hac v. University of Hawaii, 102 Haw. 92,          13
    73 P.2d 46 (2003)

**ADVISORY OPINIONS**

Ethics Commission, City and County of Honolulu      18
    Opinion number 127 (November 8, 1983)

Ethics Commission, City and County of Honolulu      18
    Opinion number 128 (August 25, 1983)

Ethics Commission, City and County of Honolulu      17, 18
    Opinion number 129 (December 13, 1983)

**RULES**

Federal Rules of Civil Procedure                  10
    Rule 26(b)(1)

## PLAINTIFF PHILIP E. ENGLISH'S MEMORANDUM IN OPPOSITION TO DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA AND ANN C. GIMA'S MOTION FOR PROTECTIVE ORDER

Plaintiff Philip E. English (hereinafter Plaintiff "English"), by and through his attorneys, MOSELEY BIEHL TSUGAWA LAU & MUZZI, hereby submit his Memorandum in Opposition to Defendants City and County of Honolulu, Gary T. Kurokawa, Robert O. Magota and Ann C. Gima's (hereinafter Defendants "City") Motion for Protective Order filed on June 15, 2006.

I.      Statement of Facts

The essence of this case is that Plaintiff ENGLISH, is a whistleblower who was subjected to retaliation because he complained about certain practices, which were occurring at the Assessment Division of the Department of Budget and Fiscal Services of the City and County of Honolulu.

The City, its employees and GK Appraisals retaliated against Plaintiff English in all of the traditional ways that whistleblowers are punished. Plaintiff English has, for example been called a "troublemaker", accused of being a "back stabber", and accused of having preexisting mental and emotional problems – even to the extent of likening him to the Xerox murderer Byron Uesugi. Plaintiff English's employment reviews were excellent prior to his whistleblowing and thereafter, his reviews deteriorated quickly to the point that his performance was called unsatisfactory. After his whistleblowing there were a series of workplace

violence reports filed against him and there was a substantial investigation of him, in which his co-workers were encouraged to report negative things about Plaintiff English. One of his superiors told him not even to think about filing lawsuit because it was his word against theirs and others have tried it and failed.

The retaliation was so vigorous and pervasive that Plaintiff English required medical assistance. Plaintiff English originally went to the doctor for a respiratory illness (or some like illness), but while there the doctor questioned him about the rest of his health and Phil described his problems at work. Within approximately two months his doctors had advised him not to go to work again, because of the state of his physical and emotional health. Phil's last day actually at work was February 27, 2003.

Subsequently, even after the City had received notice of Plaintiff English's condition, and Plaintiff was no longer going to work, the City continued to issue negative employment reviews and harass him, even though they had received advice from their own consulting psychologist that they should not issue the specific further employment review in question. Furthermore, when Plaintiff applied for worker's compensation benefits, they conditioned his receipt of a lump sum benefit on his resignation from employment. Apparently they agreed that Plaintiff was entitled under the law to benefits, and determined that even though he

was entitled to the benefits, they would force him to resign as part consideration of the payment.

Throughout this whole affair there has been little, if anything, done to investigate or take action with respect to any of Plaintiff English's allegations, or with respect to any of the other practices about which Plaintiff complained, or for the complicity of the Defendants in the improper activities, or for the Defendants' retaliation against Plaintiff English.

The staff of the Ethics Commission has very few resources with which to investigate and only has advisory power.  To our best knowledge, learned only recently through an "expert" report proffered by the Defendants, one of the Defendants has received a notice, in March of this year, more than two years after the conduct was reported on January 22, 2003 – that there may be reason to believe that ethics provisions had been violated.

Plaintiff English's complaints about the activity in the Assessment Division were of two basic kinds.  The first was a series of complaints, questions, and suggestions about the "professional" conduct and methodology of the Assessment Division in appraising real property.  The second, was something that even the most uninformed layman could understand:  Plaintiff English complained that another of the employees of the Assessment Division was doing private appraisal work on City time and with City equipment.  This private work was being done for

Defendant GK Appraisals, a private appraisal firm based in Hilo and partially owned (90,000 shares) by Defendant Gary Kurokawa. Defendant Gary Kurokawa also was an officer (vice president) of Defendant GK from the date of its incorporation to the present date. Defendant Gary Kurokawa was and is the head of the Assessment Division.

The first complaint was made to the employee doing the work, Christopher Graff. Mr. Graff said that there was no problem because it had all been worked out as he explained that he technically worked for another appraiser, David Matsunami, who, in turn, worked for GK Appraisals. David Matsunami testified that 70% of his contacts with Defendant GK Appraisals were through Defendant Gary Kurokawa. Mr. Graff refused to stop the activities about which Plaintiff was complaining.

Plaintiff next complained to Defendant Ann Gima, whose response was essentially that she did not know anything about it and that Plaintiff should mind his own business. Next Plaintiff complained to Defendant Robert Magota, who was the number two man at the Assessment Division. Defendant Magota essentially responded that, if Chris was doing anything like that he would be dealt with severely. Plaintiff English expressed his concern stating that it was not Chris who was the problem, but that it was Defendant Gary Kurokawa, who needed to be dealt with. Defendant Magota responded that in any dispute it would be Plaintiff

English's word against theirs and not even to think about suing because others had tried it and failed. Defendant Magota apparently did talk to Mr. Graff, who later reported to Plaintiff that he could continue, as long as he was "more discrete". Plaintiff English understood this to mean that Mr. Graff was told that he could continue to steal from the City as long as he hid his activities and did not get caught.

Plaintiff English continued to observe Chris Graff doing private work for GK Appraisers. Plaintiff English put his complaint in writing to Defendant Magota in February of 2002. Plaintiff English's work environment deteriorated thereafter very rapidly from February 2002 on. In April of 2002 Plaintiff English received a performance review which had substantially declined from his earlier reviews. All further performance reviews continued to decline. At one point Plaintiff English was put on "extended probation", which was allegedly rescinded, after the additional probationary period had passed.

Between February of 2002 and June of 2002, partially because of Plaintiff English's complaints about Mr. Graff, David Matsunami told Defendant Gary Kurokawa that he would no longer be doing work for GK Appraisals. He expressed that he did not want to be in the middle and that out of "respect" for Plaintiff English and Mr. Graff, he could not continue. Thus because of Plaintiff English's complaints Defendant GK Appraisals lost the services of David

Matsunami. This occurred at exactly the same time period in which Phil's work environment at the City was deteriorating so rapidly.

By August of 2002 Phil was experiencing further and further retaliation, and the outside work being done by Mr. Graff did not end, so Plaintiff English contacted the FBI. By the end of 2002 several documents was transmitted to Charles Totto at the Ethics Commission. After reviewing the documents, Mr. Totto requested to meet with Plaintiff English on January 3, 2003 and on January 22, 2003 a formal complaint with the Ethics Commission was filed by Plaintiff.

On January 7 and 10, 2003 Plaintiff English met with Mr. Graff and advised him that he had reported everything to the FBI and to the Ethics Commission. Plaintiff English told Mr. Graff to contact Chuck Totto and to tell the truth about everything. Mr. Graff apparently immediately (also on January 7 and 10) told his supervisors about the contents of his meetings with Plaintiff English.

By early February 2003, Plaintiff English was being required to answer a complaint of "insubordination" allegedly for an incident in October of the prior year, in which he had gone to his doctor for a follow-up visit. Near the end of February 2003, Plaintiff English was advised by an investigator from the City that he was investigating "workplace violence complaints" about Plaintiff English. This incident could fairly be considered as the last straw and the incident which caused Plaintiff English to again seek medical help and which resulted in the doctor's

advice for him not to return to work.

II.   <u>The deposition of Michael A. Lorusso is relevant and necessary.</u>

Discovery permissible pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure is broad in scope. Rule 26(b)(1) states, in relevant part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admisible evidence.

Mr. Lorusso is the attorney for Defendants City and County of Honolulu, Gary T. Kurokawa, Ann C. Gima and Robert O. Magota in the present case **and Mr. Lorusso is also apparently involved in the related ethics investigation wherein he is "assisting" with the representation of Gary T. Kurokawa against the City and County of Honolulu before the Ethics Commission**.

> Q:   Are you aware of any negotiation going on between Gary Kurokawa an the ethics commission with respect to - - I don't know how to I would describe it, except it sounded like similar to a plea agreement to me, it's some sort of an admission of wrongdoing.
> MR. LORUSSO:  Object to the form, lacks foundation,assumes facts not in evidence, argumentative.
> THE WITNESS:  As far as a settlement or negotiation, you said?
> Q:   BY MR. MOSELEY:  Between Gary Kurokawa and the ethics commission.
> MR. LORUSSO:  Same objection.

THE WITNESS: As far as Gary Kurokawa and the ethics commission, I'm not sure what's going on with the status.
Q: BY MR. MOSELEY: Have you heard that there is something going on?
MR. LORUSSO: Objection, vague and ambiguous.
THE WITNESS: The only thing I heard was Gary has an attorney.
Q: BY MR. MOSELEY: Who is Gary's attorney?
A: I'm not sure.
MR. LORUSSO: Herbert Takahashi.
Q: BY MR. MOSELEY: Have you ever been told that your attorney here is somehow involved with that proceeding?
A: I think Gary may have mentioned it.
Q: So you've spoken to Gary about that proceeding?
A: Not very much.
Q: But you have spoken with him.
A: As far as just ethics in general, this particular proceeding.
Q: Proceeding with the ethics commission.
A: You know, I don't think we've had much discussion about it. He did mention Mike Lorusso's name at one point.
Q: That Mike Lorusso was assisting him in that proceeding?
A: I don't know about assisting or involvement.
Q: But somehow Mike Lorusso was involved?
MR. LORUSSO: Objection, lacks foundation, calls for speculation.
THE WITNESS: He did mention Mike's name.
Q: BY MR. MOSELEY: In what context did he mention Mike's name, what did he say about what Mike was doing?
A: He didn't say what Mike was doing.

Q: What did he say about Mike when you mentioned Mike's name?
A: That he accompanied Gary, I believe, to meet with the ethics commission or something.
Q: When did he tell you that?
A: Gee, I don't recall, it's been awhile.
Q: Have you consulted outside counsel about this at all?
A: No.
Q: Not even afer that revelation you didn't consult outside counsel?
MR. LORUSSO: Objection, argumentative.

THE WITNESS: Regarding the ethics.
Q: BY MR. MOSELEY: Do you know who Mike Lorusso represents in this case? Do you know who Mike Lorusso represents in the present litigation?
A: Gary, Ann Gima and myself and the city.
Q: And the city.
A: Yes.
Q: So when Gary told you that Mike Lorusso had accompanied him to some sort of proceeding with the ethics commission, you didn't consult outside counsel about whether that was proper for Mike Lorusso to be representing the city and then representing another defendant ina proceeding that was bineg had by the city investigating the very underlying parts of this complaint, that didn't bother you?
MR. LORUSSO: Objection, relevancy, lacks foundation, argumentative.
THE WITNESS: I didn't give it much thought at the time.
See Exhibit A – pages 131 – 135.

Q: BY MR. MOSELEY: That's a little bit of an unfair question, Bob, because, actually, the last time you testified that Gary Kurokawa told you tha the had had Mike Lorusso help him somewhere, although I'm not sure at this point what the extent of that was, with respect to the ethics commission. Remember, you told me that Gary said something like that?
A: I'm trying to think.
Q: Well, presuming that that is what you said in the transcript last time, did that raise a question in your mind that was being paid by city resources to defend him with an ethics commission proceeding?
MR. LORUSSO: Objection, lacks foundation, calls for speculation, also, a legal conclusion.
THE WITNESS: I'm not really sure if it's proper or not.
Q: BY MR. MOSELEY: But, I mean, would you be concerned enough if - - okay, again, that's not fair. I believe your testimony was that that information came to you and you actually didn't do anything about it, so I guess I wasn't really asking you to speculate since you didn't do anything about it. Have you done anything about it since the last deposition, have you raised it with anybody, for example, have you sought

>       an ethics opinion?
> A:    Regarding?
> Q:    Regarding whether or not Gary could use Mike Lorusso to
>       help in his proceeding with the ethics commission?
> MR. LORUSSO:   Objection, lacks foundation.
> THE WITNESS:   No, I did not raise any question about that.
> See Exhibit B – pages 180 – 182.

Courts have held that the question of relevancy is to be more loosly construed at the discovery stage than at the trial, where the question of relevancy for purposes of admissibility is goverened by the rules of evidence. See Hac v. University of Hawaii, 102 Haw. 92, 101, 73 P.2d 46, 55 (2003), quoting C. Wright, A. Miller, and R. Marcus, 8 Federal Practice and Procedure: Civil § 2008, at 99-100 (1994). "To limit an examination to matters relevant to only the precise issues presented by the pleadings would not only be contrary to the express purposes of rule 26, but also might result in a complete failure to afford plaintiff an adequate opportunity to obtain information that would be useful at trial." See id.

First, this is an unusual situation. Mr. Lorusso represents the City and County of Honolulu and Gary T. Kurokawa in the litigation here and Mr. Lorusso is also apprently involved with the representation of Gary T. Kurokawa against the City and County of Honolulu, in a directly related investigation with the Ethics Commission involving the very allegations against Defendant Kurokawa by Plaintiff English. These are possibly, if not most likely, the very activity of Gary Kurokawa about which Plaintiff English complained and for which Plaintiff

English suffered retaliation.

While Plaintiff and his counsel have no intent of questioning Mr. Lorusso on privileged matters, should Mr. Lorusso feel that a question posed to him invades privileged matters, he or his attorney can readily assert the privilege if such a question shold be propounded. Thereafter, should Plaintiff not agree with the assertion of the privilege, the matter can be determined by the court. Additionally, considering Defendants denying the legitimacy of Plaintiff English's claims, discovery into the Ethics Commission investigation and proceeding is absolutely relevant and clearly may lead to the discovery of admissible evidence. As it is an agency of the City that is conducting the investigation of a matter directly related to Plaintiff and this lawsuit, Mr. Lorusso is a witness to the investigation with respect to his involvement. It is obvious that Mr. Lorusso is involved in some direct manner with the ethics investigation and with the representation of Gary Kurokawa against his own client, the City, and that Mr. Lorusso may have valuable and relevant knowledge to the issues raised herein. Discovery is necessary and warranted to determine his interaction and involvement with the ethics commission and the corresponding investigation.

Additionally, as notice was provided to Defendants herein, Plaintiff noticed the oral deposition of Charles W. Totto for June 23, 2006 (see Exhibit C) and has served Mr. Totto with a Subpoena Duces Tecum requesting that he also

produce records relating to Plaintiff English and the investigation. See Exhibit D. Plaintiff's counsel received correspondence dated June 15, 2006 from Gordon D. Nelson, Esq., Deputy Corporation Counsel, that Mr. Totto is objecting to the production of any documents at his deposition. See Exhibit E. Plaintiff English is attempting to obtain information and documents from Mr. Totto, however, considering the lack of cooperation, Plaintiff seeks alternative sources of necessity. Plainly, considering Mr. Lorusso's direct involvement and the apparent conflict present, the deposition of Michael A. Lorusso will or may assist with this discovery.

III. Disparate Treatment

Defendants constructively discharged, threatened, retaliated and/or otherwise discriminated against Plaintiff English with respect to his compensation, and the terms, conditions, location, or privileges of employment because of Plaitiff English's unwillingness to condone improper and/or criminal activities and because he brought these activities to the attention of supervisory personnel and the city Ethics Commission, and the FBI among other individuals and agencies.

The most plain of all of the claims being made by Plaintiff English was that **Defendant GK Appraisals was benefiting from City employees doing work for Defendant GK Appraisals at the direction of Defendant Gary**

**Kurokawa, who was simultaneously an officer of the City and of Defendant GK Appraisals.** See Exhibit F.

Discovery into the ethics investigation and Mr. Lorusso's deposition is relevant to the claims herein insofar as the City is treating Plaintiff English in a different manner than it treated and is treating Defendant Gary Kurokawa. The City took immediate action against Plaintiff English when it was alleged that Plaintiff English committed actions requiring discipline, i.e. verbal warnings, additional probation time, getting Michael Golojuch involved. Yet, when allegations against Gary Kurokawa arose about his misusing city resources, city employees and city time, the city has dragged its feet to investigate and no immediate action has been taken. It has been approximately 3 ½ years since the formal complaint was made to the Ethics Commission with no resolution and now it appears the city has even provided and paid for an attorney to defend Gary Kurokawa against these very claims. If the city is now paying for an attorney to represent Gary Kurokawa against its own process with the Ethics Commission, it would appear that Gary Kurokawa continues to exert control over city resources to make the retaliation against Plaintiff English stick. (Also, it is apparent that G.K. Appraisals, through its officer, director and shareholder, Gary Kurokawa, continues to use the city's resources for its private economic benefit). It is clear that the city is doing a whole lot more for Gary Kurokawa, who allegedly stole

city resources, misused city employees and conducted his private business on city time, than for Plaintiff English who complained about these violations and reported them to the Ethics Commission. This is just another example of the lengths the city will go to to cover its tracks and protect those who go along with the city, despite it being wrong or unethical.

IV.     Policy of City

The testimony of Michael A. Lorusso is relevant to the allegations asserted by Plaintiff and the deposition will show that the City acting in concert to protect its employees has a custom and persistent practice of retaliation against whistleblowers, including Plaintiff and a practice of failure to investigate the complaints of whistleblowers, and of violation of the statutory and constitutional rights of whistleblowers. See Exhibit F. The testimony pertaining to the Ethics Commission proceedings are significant and related to Plaintiff's claims proving the liability of the Defendants. It is patently clear that the city is doing all that it can to ensure Plaintiff English does not obtain the evidence necessray to illuminate the long-standing improper practices of the city.

From the very beginning Plaintiff English's complaints were about the Administrator, Gary Kurokawa, having city employees do work for his private company, while on City time and using City equipment. The Ethics Commission in advisory opinion number 129 states that there may be a conflict of interest if a

person uses City time, equiment, or material for his business purposes because if a person uses City time, equipment, or material for his business purposes, then his business would be incompatible with the proper discharge of his duties, or his business is seen as an impairment of the independence of his judgment as a City employee.[1]  See Ethics Commission, City and County of Honolulu, advisory opinion no. 129 (December 13, 1983).

Similarly, in advisory opinion number 127, the Ethics commission reviewed the question of whether there is a conflict or an apppearance of a conflict of interest existing between the duties of an advisor to a City Council committee concerned with land use issues and his outside interest as a consultant and lecturer in the same field.  See Ethics Commission, City and County of Honolulu, advisory opinion no. 127 (November 8, 1983).  The Ethics Commission stated that the individual's activities as a consultant or lecturer would become incompatible with the proper discharge of his duties as an advisor, or impair the independence of his judgment as an advisor, if he used City time, equipment, or material while acting in his capacity as a consultant or lecturer and cautioned indiviudals about such uses.

The Ethics Commission finds that although the use of City time, equiment, or material is not expressly forbidden by the Revised Charter of the City and

---

[1] The Ethics Commission cites to Revised Charter of the City and County of Honolulu section 11-102.3 which is now Section 11-102(c) which states:
    No elected or appointed officer of employee shall:
    (c) Engage in any business transaction or activity or have a financial interest, direct or indirect, which is

County of Honolulu, it is implied and any time an employee uses City time, equipment, or material for his personal business or financial interests, it is such that the employee has not properly discharged his public duties or that his independence of judgment has been impaired to the detriment of his public duties. See Ethics Commission, City and County of Honolulu, advisory opinion no. 128 (August 25, 1983).

Additionally, according to David Matsunami's testmony, GK Appraisals orderd appraisal assignments through Gary Kurokawa and stated that 70% of his communications were with Gary while on City and County time. See Exhibit G – pages 102, 125.

Now Mr. Lorusso is representing the City and Gary Kurokawa in this lawsuit and Mr. Lorusso is involved in the City's ethics investigation of Gary Kurokawa. The city by using the same attorney creates a tight circle of information making it difficult for discovery and for the truth to be revealed.

V.   Conclusion

For all the foregoing, Plaintiff English respectfully requests this Court deny Defendants' Motion for Protective Order.

---

incompatible with the proer discharge of his official duties or which may tend to impair his independence of judgment in the performance of his official duties.

DATED: Honolulu, Hawaii,    JUN 2 3 2006   .

                                                */s/Roger S. Moseley*
                                              ROGER S. MOSELEY
                                              CHRISTOPHER J. MUZZI
                                              RENEE M. FURUTA
                                              Attorneys for Plaintiff
                                              PHILIP E. ENGLISH