69.    On or about January 17, 2003, Plaintiff applied for a supervisory position and went through the interview process.  Much earlier, Plaintiff had been encouraged by Defendant MAGOTA to apply for the position and was told that there was a need for supervisors and that Plaintiff was qualified.  After the interview process, Plaintiff was informed, by a Deputy Corporation Counsel assigned to the Assessment Division, that no other applicant even came close to Plaintiff's qualifications for the supervisor job.  However, another applicant was selected for the job.

70.    On or about January 17, 2003 Plaintiff spoke with the City appraiser who had been doing the private work for Defendant KUROKAWA and advised him of Plaintiff's visit with the Executive Director of the Ethics Commission and advised the employee to go talk to the Ethics Commission and to tell the truth.

71.    On or about January 21, 2003 Plaintiff was advised by a Deputy Corporation Counsel that the "word is out" not to talk to Plaintiff because he might be "wearing a wire".

72.    On or about January 22, 2003, Plaintiff caused a formal complaint to be filed with the Ethics Commission.  This formal complaint included, inter alia, allegations regarding:

      (a)    the use of City employees, on City time, with City equipment, for outside private business;

(b)   the granting of improper property tax exemptions to the Assessment Division Administrator;

(c)   the rewarding of a high level supervisor for his role in keeping the theft of City time and services quiet;

(d)   the retaliation against Plaintiff and the tarnishing of Plaintiff's reputation in the community, because of his questioning the improper use of City personnel and equipment and because of his questioning the propriety and reliability of the methodology and systems used by the Assessment Division; and

(e)   the mailing out of assessment notices, which are known to be false, and which result in the collection of taxes that taxpayers do not owe, in violation of Federal mail fraud and racketeering laws.

73.    On or about February 5, 2003, the Executive Director and Legal Counsel for the Ethics Commission informed Defendant KUROKAWA, by email, that Plaintiff had made a complaint against Defendant KUROKAWA, as well as against the City employee doing the work for Defendant KUROKAWA, that than investigation was being conducted, and that Plaintiff should be removed from any cases upon which Plaintiff's counsel represented taxpayers (this included the Waikiki Shore litigation).

74.    On or about February 5, 2003, Defendant MAGOTA requested a meeting with Plaintiff and, at that meeting, Plaintiff was informed by Defendant MAGOTA that there was a pending disciplinary action against Plaintiff for taking "unauthorized leave" in October of 2002.

75.    On or about February 6, 2003, Defendant GIMA requested that Plaintiff write a letter to taxpayers making it appear that the Assessment Division had done nothing wrong, in an instance where the Assessment Division had used a faulty basis for establishing fee simple valuations in certain condominiums. Plaintiff refused to write the letter in such a misleading fashion.

76.    On or about February 7, 2003, Defendant KUROKAWA emailed Plaintiff with questions about his "serious allegations of ethical misconduct". Plaintiff viewed this email as hostile and as a threat.   Plaintiff felt extremely threatened and intimidated and did not respond to this email.

77.    On or about February 10, 2003, a co-worker of Plaintiff filed a "Confidential Workplace Violence Report" against Plaintiff, alleging that Plaintiff was "back stabbing" the appraiser who was the subject of Plaintiff's complaint of illegal activities and that Plaintiff's co-workers were "scared" of him.

78.    On or about February 12, 2003, the employee who had been doing the private work for Defendant KUROKAWA filed a "Confidential Workplace Violence Report" against Plaintiff, alleging that Plaintiff verbally threatened him and intimidated him on January 17, 2003 and January 22, 2003.

79.    On or about mid-February, 2003, Defendant GIMA, to the best of Plaintiff's information and belief, also filed "Confidential Workplace Violence Report" against Plaintiff.

80.    To Plaintiff's knowledge the complaint to the Ethics Commission is still being investigated, but the City has not provided enough funding or resources for the Ethics Commission to actually conduct a through and complete investigation of this and other matters.  The funding to the Ethics Commission is intentionally calculated by the City to make it ineffective in the execution of its duties of investigating complaints, reporting its findings, and recommending appropriate disciplinary actions.

81.    The personal and official treatment accorded Plaintiff after he made the written complaint on February 15, 2002, was harsh and substantially different from the treatment accorded others in the Assessment Division.  For example, some appraisers were allowed to take vacation leave during the height of the busy season, some appraisers were apparently not disciplined for activities such as leaving work during business hours to watch sporting events on television at a neighboring bar, or not disciplined for hit and run auto accidents with City vehicles, or not disciplined for failing to appear for Board of Review hearings due to hangover, or not disciplined for having a second, outside job, during City work hours.  Plaintiff was shunned by supervisors and other employees in the

Assessment Division; physically threatening remarks were made, such as "I hope you have an escape plan if your boat sinks". Some supervisors and others refused to help Plaintiff with any problems or questions and refused to provide information and direction. Defendant GIMA instructed Plaintiff not to call her by her nickname, as only her friends were allowed to do that, even though Defendant GIMA appeared to be commonly addressed by her nickname by all others in the Assessment Division.

82.   As a direct result of the harassment/retaliation, and the other actions of Defendants described herein, to which Plaintiff was subjected, Plaintiff suffered actual physical injury, such as the inability to sleep, lack of energy, and weight loss, and Plaintiff first sought medical treatment for this injury on January 30, 2003.

83.   On or about February 27, 2003, Plaintiff was advised by a City official of an investigation of Plaintiff concerning reported violation of the City workplace violence policy.

84.   As a direct result of the harassment/retaliation, and the other actions of Defendants described herein, to which Plaintiff was subjected, Plaintiff suffered severe emotional and mental distress and injury, and Plaintiff first sought medical treatment for this injury on February 27, 2003.

85.    On February 27, 2003, Plaintiff was advised by his physician not to go back to work and Plaintiff has not worked since that time.

86.    On February 28, 2003, the City was notified as to Plaintiff's condition, through a workers' compensation claim, and on March 18, 2003 Plaintiff was notified that the City had arranged an independent examination of Plaintiff on Friday, April 18, 2003.

87.    On or about March 12, 2003, the City official investigating the workplace violence claims, issued a report, which compared Plaintiff to Byron Uyesugi (Xerox case) and concluded that Plaintiff's "work performance may be less than satisfactory and his behavior inappropriate and/or insubordinate requiring administrative action." This report caused substantial additional injury to Plaintiff.

88.    On or about April 16, 2003, Plaintiff received notification (dated April 9, 2003) from Defendant MAGOTA that there would be a meeting on April 17, 2003 for the purpose of discussing Plaintiff's annual performance review.

89.    On April 16, 2003, the City was notified that such a meeting and performance review were inappropriate and a senseless exacerbation of the damage being done to Plaintiff.

90.    On April 17, 2003, Plaintiff was advised that the performance review would be put "on hold until after [Plaintiff's] workers' compensation matter is addressed".

91.    On April 30, 2003, the City workers' compensation administrator wrote that "both Dr. Kennedy and I are concerned with Mr. English's mental state, especially considering his past history of multiple suicide attempts or ideation.    His stress has reached a crisis level and only seems to be getting worse."    On the very same day, Plaintiff received an "Annual Performance Evaluation Report", dated April 22, 2003.    This report rated Plaintiff "substandard" in all but two categories and gave Plaintiff an "overall evaluation" of "substandard".    Further, the report contained an extensive narrative, which substantially misrepresented Plaintiff's work performance and abilities.    The preparation and sending of this report, signed by both Defendant GIMA and Defendant MAGOTA was intentional and knowingly calculated to cause further substantial injury to Plaintiff.

92.    The acts of Defendants complained of herein have resulted in substantial injury and damage to Plaintiff, including, but not limited to: actual physical pain and suffering, severe emotional and mental distress, loss of personal, professional and financial reputation, loss of employment, loss of his professional career, and termination of Plaintiff's marriage.

92A.  Defendant City has a pervasive history and pattern of conduct retaliating against whistleblowers and employees who have engaged in protected activity, including, but not limited to, free speech by expressing concerns about illegal activities, government waste, corruption, hazardous activites, and matters of public concern occurring at the City.  In at least three recent whistleblower lawsuits, other than Plaintiff's present suit, the City has supported and defended the actions of City officers and employees who retaliated against whistleblowers and others exercising their rights to free speech and by failing to protect whistleblowers and others from retaliation.  While in each of the referenced lawsuits the City either settled the case or has had a jury verdict rendered against it, the City has taken no action to protect histlebloswers or others exercising their rights to free speech.  In July 2003, the City settled a whistleblower lawsuit filed by a former City Liquor Inspector.  In December 2003, the City again settled another whistleblower lawsuit filed by a Honolulu Police Department veteran officer.  In August 2005, a jury verdict was rendered in favor of a former City painter for damages in the amount of $1.5 million dollars.  Despite the obvious pervasive nature of retaliation against whistleblowers and others exercising their rights to free speech, the City has not enacted any ordinance, promulgated any regulation, or instituted any policy or proceedure designed to protect whistleblowers or others exercising their rights to free speech.  Nor has the City instituted any program of training for whistleblowers

or officers and managers in the City regarding the rights of employees to blow the whistle and regarding the duty not to retaliate.  Nor has the City taken any actions to discipline those who have retaliated against whistleblowers.  By failing to act in the face of a plainly pervasive problem, the City has evidenced a policy of encouraging retaliation against whistleblowers and has evidenced at least a deliberate indifference to Plaintiff's constitutional rights and those of other whistleblowers.

## COUNT I - VIOLATION OF CIVIL RIGHTS

93.    Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

94.    Defendants, under color of statutes, ordinances, regulations, customs, or usages of the State of Hawaii, or the City & County of Hawaii, subjected Plaintiff, a citizen of the United States, or caused Plaintiff to be subjected to, the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States, including, but not limited to, violation of Plaintiff's rights to free speech, and the enjoyment of his civil rights.

94A. Defendant City has, as evidenced by the multiple whistleblower cases filed against it, among other actions, had a longstanding pervasive history, custom, practice, and pattern of retaliating against whistleblowers and employees who have engaged in protected speech by expressing concerns about illegal

activities, government waste, corruption, hazardous activites, and matters of public concern occurring at the City.

94B.  Defendant City caused Plaintiff to be subjected to the deprivation of his rights, privileges, or immunities secured by the Constitution and laws of the United States, including, but not limited to, violation of Plaintiff's rights to free speech and the enjoyment of his civil rights, by and through the final policymaking authority vested in Defendant KUROKAWA.  Defendant KUROKAWA is, and at all times herein relevant, an officer and the Administrator of the Assessment Division, an agency of the executive branch of the City. Defendant KUROKAWA displayed and exercised his power over personnel actions as they related to City employees.  The actions taken by Defendant KUROKAWA regarding personnel functions were supported, sanctioned and ratified by other City executives and attributable to Defendant City as direct acts of Defendant City.

95.    The unconstitutional deprivation of his rights by Defendants as set forth herein, directly and proximately caused Plaintiff to suffer monetary damages, physical injury, and severe mental and emotional distress.

96.    The actions of Defendants herein were callous and recklessly disregarded the civil rights of Plaintiff.  As such, Plaintiff is entitled to recover punitive damages against Defendants GK, KUROKAWA, MAGOTA, and GIMA.

97.    Defendants are liable to Plaintiff for special and general damages that he suffered as a result of the above-described unlawful acts, which were committed in violation of, inter alia, 42 U.S.C. §1983.

## COUNT II - CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

**(Pursuant to Judge Mollway's Order dated December 15, 2005, judgment on the pleadings was granted in favor of the City on this count/claim and summary judgment was granted in favor of GK on this count/claim.  Pursuant to the Order, this count/claim against Defendants KUROKAWA, MAGOTA, and GIMA was dismissed.)**

98.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

99.    Defendants conspired together for the purpose of:

(a)    deterring Plaintiff, directly or indirectly, by force, intimidation, or threat from attending federal court or testifying in a matter pending therein, freely, fully, and truthfully, and/or of injuring Plaintiff in his person or property on account of his having so attended or testified;

(b)    impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in the State of Hawaii, with intent to deny to Plaintiff the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; and

(c)    depriving Plaintiff, directly or indirectly, the equal protection of the laws, and/or the equal privileges and immunities under the laws; and/or of preventing or hindering the constituted authorities of

the State of Hawaii from giving or securing Plaintiff the equal protection of the laws.

100.   Defendants, who were engaged in the conspiracy, did, or caused to be done, acts in furtherance of the object of such conspiracy, whereby Plaintiff has suffered injuries and damages.

101.   The Defendants' wrongful acts as set forth herein, directly and proximately caused Plaintiff to suffer monetary damages, physical injury, and severe mental and emotional distress.

102.   The actions of Defendants herein were willful, wanton, malicious, and in such callous and reckless disregard of the civil rights of Plaintiff as to entitle Plaintiff to recover punitive damages therefor.

103.   Defendants are liable to Plaintiff for special and general damages that he suffered as a result of the above-described wrongful acts of Defendants, which were committed in violation of, inter alia, 42 U.S.C. § 1985.

## COUNT III - NEGLECT TO PREVENT INTERFERENCE WITH CIVIL RIGHTS

(Pursuant to Judge Mollway's Order dated December 15, 2005, judgment on the pleadings was granted in favor of the City on this count/claim and summary judgment was granted in favor of GK on this count/claim.  Pursuant to the Order, this count/claim was dismissed against Defendants KUROKAWA, MAGOTA, and GIMA.)

104.  Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

105.  Defendants collectively and individually had a duty to protect Plaintiff's civil rights and/or to prevent or aid in preventing the commission of wrongs conspired to be done.

106.  Defendants breached this duty.

107.  The Defendants' wrongful acts, as set forth herein, directly and proximately caused Plaintiff to suffer monetary damages, physical injury, and severe mental and emotional distress.

108.  The actions of Defendants herein were willful, wanton, malicious, and in such callous and reckless disregard of the civil rights of Plaintiff as to entitle Plaintiff to recover punitive damages therefore.

109.  Defendants are liable to Plaintiff for special and general damages that he suffered as a result of the above-described wrongful acts of Defendants, which were committed in violation of, inter alia, 42 U.S.C. § 1986.

## COUNT IV - UNLAWFUL DISCRIMINATION AND RETALIATION

**(Pursuant to Judge Mollway's Order dated December 15, 2005, summary judgment was granted in favor of GK on this count/claim.)**

110.  Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

111. Defendants constructively discharged, threatened, retaliated and/or otherwise discriminated against Plaintiff regarding Plaintiff's compensation, terms, conditions, location, or privileges of employment because of Plaintiff's unwillingness to condone improper and/or criminal activities, and because Plaintiff brought some or all of these activities to the attention of the City's supervisory personnel, the City Ethics Commission, and other individuals and entities and agencies.

112. Defendants' wrongful acts as set forth herein, directly and proximately caused Plaintiff to suffer monetary damages, actual physical injury, and actual severe mental and emotional distress.

113. The actions of Defendants herein were willful, wanton, malicious, and in such callous and reckless disregard of the civil rights of Plaintiff as to entitle Plaintiff to recover punitive damages therefor.

114. Defendants are liable to Plaintiff for special and general damages that he suffered as a result of the above-described acts of Defendants, which were committed in violation of, inter alia, H.R.S. §378-62.

## COUNT V - WILLFUL, WANTON, AND RECKLESS CONDUCT

**(Pursuant to Judge Mollway's Order dated December 15, 2005, judgment on the pleadings was granted in favor of the City on this**

**count/claim and summary judgment was granted in favor of GK on this
count/claim.)**

115.   Plaintiff repeats and realleges each and every allegation set forth
above as if fully set forth herein.

116.   Defendants' wrongful conduct above-described was willful and/or
wanton, and/or reckless in nature and was with specific intent to cause injury to
Plaintiff.

117.   Plaintiff suffered injuries and damages and Defendants' wrongful
conduct above-described was a direct and proximate cause of Plaintiff's injuries
and damages.

118.   Pursuant to <u>Iddings v. Mee-Lee</u>, 82 Haw. 1 (1996), Defendants are
liable for Plaintiff's injuries, and damages.

## COUNT VI - INTENTIONAL INFLICTION OF SEVERE MENTAL OR EMOTIONAL DISTRESS

119.   Plaintiff repeats and realleges each and every allegation set forth
above as if fully set forth herein.

120.   By engaging in the above-described wrongful conduct, Defendants
knowingly and intentionally caused severe emotional or mental distress to
Plaintiff.

121. Plaintiff suffered injuries and damages and Defendants' wrongful conduct above-described was a direct and proximate cause of Plaintiff's injuries and damages.

122. Defendants are liable to Plaintiff for damages that he suffered as a result of their wrongful conduct described above.

## COUNT VII - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**(Pursuant to Judge Mollway's Order dated December 15, 2005, judgment on the pleadings was granted in favor of the City on this claim/count and judgment on the pleadings is granted in favor of Defendants KUROKAWA, MAGOTA, and GIMA, only to the extent that this count/claim is asserted against the individual Defendants for actions they took in their capacities as employees of the City. Judgment on the pleadings is denied to the extent that this count/claim is asserted against Defendant KUROKAWA for actions that he may have taken in this capacity as an officer or shareholder of GK.)**

123. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

124. By engaging in the above-described wrongful conduct, Defendants negligently caused emotional distress to Plaintiff.

125. Plaintiff suffered injuries and damages, including actual physical injury and pain, and Defendants' wrongful conduct above-described was a direct and proximate cause of Plaintiff's injuries and damages.

126. Defendants are liable to Plaintiff for damages that he suffered as a result of their wrongful conduct described above.

## COUNT VIII– DEFAMATION

**(Pursuant to Judge Mollway's Order dated December 15, 2005, summary judgment in favor of GK on this count/claim.)**

127. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

128. By engaging in the above-described conduct, Defendants intentionally and knowingly published and made false statements, to third-parties, which were intended to and did harm the reputation of Plaintiff in the community and/or deter others from associating with him.

129. Plaintiff suffered injuries and damages and Defendants' wrongful conduct above-described was a direct and proximate cause of Plaintiff's injuries and damages.

130. Defendants are liable to Plaintiff for damages that he suffered as a result of their wrongful conduct described above.

## COUNT IX – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

131. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

132. At all times herein relevant, Plaintiff had a contractual employment relationship with the City.

133. By engaging in the above-described conduct, Defendants, other than the Defendant City, intentionally and knowingly interfered with, and eventually damaged and destroyed, all of Plaintiff's rights under his employment contract with the City.

134. Plaintiff suffered injuries and damages and Defendants', other than Defendant City, and the wrongful conduct above-described was a direct and proximate cause of Plaintiff's injuries and damages in the loss of those contract rights.

135. Defendants are liable to Plaintiff for damages that he suffered as a result of their wrongful conduct described above.

## COUNT X – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

136. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

137. At all times herein relevant, Plaintiff had a contractual employment relationship with the City, as well as the prospects for future advancement at the City and/or other additional economic advantage to be gained in the private real estate appraisal profession.

138. By engaging in the above-described conduct, Defendants, intentionally and knowingly interfered with, and eventually damaged and destroyed, all of Plaintiff's rights and prospects for future advancement and/or other additional economic advantage to be gained in the private real estate appraisal profession.

139. Plaintiff suffered injuries and damages and Defendants' wrongful conduct above-described was a direct and proximate cause of Plaintiff's injuries and damages in the loss of prospective economic advantage.

140. Defendants are liable to Plaintiff for damages that he suffered as a result of their wrongful conduct described above.

## COUNT XI – VIOLATION OF RIGHTS UNDER HAWAII CONSTITUTION

**(Pursuant to Judge Mollway's Order dated December 15, 2005, this count/claim against all Defendants was withdrawn.)**

141. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

142. The above-described wrongful conduct of Defendants violated Plaintiff's rights secured to him by the Constitution of the State of Hawaii, including, but not limited to, due process of law, freedom of speech, equal protection of the law, and enjoyment of his civil rights.

143. Plaintiff suffered injuries and damages, including actual physical injury and pain, and Defendants' wrongful conduct above-described, was a direct and proximate cause of Plaintiff's injuries and damages.

144. Defendants are liable to Plaintiff for damages that he suffered as a result of their wrongful conduct described above.

## COUNT XII - PUNITIVE DAMAGES

**(Pursuant to Judge Mollway's Order dated December 15, 2005, judgment on the pleadings was granted in favor of the City on this count/claim.)**

145. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

146. Defendants acted intentionally, wantonly, willfully, and oppressively, with such malice as implies a spirit of mischief, and with conscious indifference to the consequences of their acts and the Defendants' acts are characterized by aggravating circumstances sufficient to justify imposition of punitive or exemplary damages.

147.  Such willful misconduct warrants an award of punitive damages against Defendant GK and in favor of Plaintiff.

148.  Defendant City has evidenced a persistent and pervasive pattern of retaliation against whistleblowers and others who act to prevent illegal or improper behavior of City agencies, officers and employees.  The award of very substantial punitive damages against the City is necessary to discourage this pattern of retaliation.  Recent settlements of such claims are in amounts too small to focus the City's attention on the severity of the problem involved.  The award of substantial punitive damages against the individuals involved is necessary to deter other from committing such acts, since the City does not seem interested in providing such deterrence in their disciplinary practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendants on all causes of action and grant relief as follows:

A.     General and special damages in amounts to be proven at trial;

B.     Punitive damages as to Defendants GK, KUROKAWA, MAGOTA, and GIMA; and

C.     Attorneys' fees, costs of suit, and both pre-judgment and post judgment interest to the extent allowed by law; and circumstances.

D.    Such other and further relief as the Court deems just and proper under the circumstances.

DATED:  Honolulu, Hawaii, January 12, 2006.


ROGER S. MOSELEY
ALAN K. LAU
RENEE M. FURUTA
JOANNA B.K. FONG
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH, | Civil No.  04-00108 SOM/KSC |
| Plaintiff, | CERTIFICATE OF SERVICE |
| vs. | |
| CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1 –10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was duly served upon the

following persons, by way of U.S. mail, postage prepaid to their last known

address, on January 12, 2006.

MICHAEL L. LARUSSO, ESQ.
Kawashima Lorusso & Tom, LLP
Fort Street Tower
745 Fort Street, 5th Floor
Honolulu, Hawaii  96813

Attorneys for Defendants
City & County of Honolulu,
Gary T. Kurokawa, Robert O. Magota,
and Ann C. Gima

KEVIN P. H. SUMIDA, ESQ.
ANTHONY L. WONG, ESQ.
Suite 1400, Mauka Tower
737 Bishop Street
Honolulu, Hawaii  96813

     Attorneys for Defendant
     GK APPRAISALS, INC.

     DATED:  Honolulu, Hawaii, January 12, 2006.

     ROGER S. MOSELEY
     ALAN K. LAU
     RENEE M. FURUTA
     JOANNA B.K. FONG
     Attorneys for Plaintiff
     PHILIP E. ENGLISH