CARRIE K.S. OKINAGA, 5958
Corporation Counsel
GORDON D. NELSON, 1819
Deputy Corporation Counsel
530 S. King Street, Room 110
City and County of Honolulu
Honolulu, Hawaii 96813
Telephone: (808) 523-4832
Facsimile: (808) 523-4583
Email:      gnelson1@honolulu.gov

Attorneys for Charles W. Totto

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 1 8 2006

at 4 o'clock and 18 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>              Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10,<br><br>              Defendants. | ) CIVIL NO. 04-00108 SOM/KSC<br>)<br>) MEMORANDUM IN OPPOSITION<br>) TO PLAINTIFF PHILIP E.<br>) ENGLISH'S MOTION TO COMPEL<br>) COMPLIANCE WITH SUBPOENA<br>) ISSUED JUNE 2, 2006;<br>) DECLARATION OF CHARLES W.<br>) TOTTO; DECLARATION OF<br>) GORDON D. NELSON;<br>) EXHIBITS "A" AND "B";<br>) CERTIFICATE OF SERVICE<br>)<br>)<br>) DATE:  August 3, 2006<br>) TIME:   9:30 a.m.<br>) JUDGE: Hon. Kevin S. Chang<br>) |

## SUBJECT INDEX

Page

TABLE OF CASES AND AUTHORITIES ................................................... ii-iv

I.      BACKGROUND ................................................................... 2

II.     MR. TOTTO HAS EFFECTIVELY ASSERTED PRIVILEGES
        AGAINST DISCLOSURE AND HAS NOT WAIVED THOSE
        ASSERTIONS OF PRIVILEGE ............................................. 9

III.    PRIVILEGE AGAINST DISCLOSURE OF ETHICS COMMISSION
        FILES     ........................................................................... 10

IV.     ATTORNEY-CLIENT PRIVILEGE...................................... 13

V.      WORK-PRODUCT DOCTRINE............................................ 14

VI.     DELIBERATIVE PROCESS PRIVILEGE ............................ 17

VII.    CONCLUSION...................................................................... 19

## TABLE OF CASES AND AUTHORITIES

Page

Cases

Admiral Insurance Co. v. U.S. District Court
881 F.2d 1486 (9th Cir. 1989) ................................................................ 13

Assembly of California v. United States Department of Commerce
968 F.2d 916 (9th Cir. 1992) .................................................................... 17

Carter v. United States Department of Commerce
307 F.3d 1084 (9th Cir. 2002) .................................................................. 17

Department of the Interior and Bureal of Indian Affairs v.
Klamath Water Users Protective Association
532 U.S. 1 (2001) .................................................................................... 17

Farnsworth v. Procter & Gamble Co.
758 F.2d 1545 (11th Cir. 1985) ............................................................. 12

Garmong v. Stephanini
802 A.2d 1264 (Pa. Cmwlth., 2002) ................................................... 10, 13

Hickman v. Taylor
329 U.S. 495 (1947) ............................................................................... 15

Holland v. Island Creek Corp.
885 F. Supp. 4 (1995) .............................................................................. 15

In re Grand Jury Proceedings
33 F.3d 342 (4th Cir. 1994) .................................................................... 15

In re Sealed Case
676 F.2d 793 (D.C. Cir. 1982) ............................................................ 15, 16

In re Snyder
115 F.R.D. 211 (D.C. Ariz 1987) ............................................................ 12

Page

Natta v. Zletz
      418 F.2d 633 (7th Cir. 1969) ................................................................... 14

Schwimmer v. U.S.
      232 F.2d 855 (8th Cir.), *cert. denied*, 352 U.S. 833 (1956) .................... 13

SEC v. World-Wide Coin
      92 F.R.D. 65 (N.D. Ga. 1981) ................................................................. 14

Upjohn Co. v. U.S.
      449 U.S. 383 (1981) ............................................................................... 13

Statutes

Revised Charter of the City & County of Honolulu 1973 (2000 Ed.)

      Section 11-102      ................................................................................ 5
      Section 11-106      ................................................................................ 7

Revised Ordinances of Honolulu (1990)

      Section 3-6.1 to 3-6.10.......................................................................... 5
      Section 3-6.3(g).................................................................................... 7
      Section 3-6.5(c).................................................................................... 6, 7
      Section 3-6.7(e).................................................................................... 6

Rules

City Ethics Commission's Rules of Procedure (1984)

      Section 4.13        ................................................................................ 5
      Section 4.13(a)     ................................................................................ 6
      Section 4.13(b)     ................................................................................ 6
      Section 4.13c       ................................................................................ 7

Federal Rules of Civil Procedure

Rule 26(c) ................................................................................ 19
Rule 45(c)(2)(B) ................................................................. 2, 3, 9
Rule 45(d)(2) ....................................................................... 10

MEMORANDUM IN OPPOSITION TO PLAINTIFF
PHILIP E. ENGLISH'S MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA ISSUED JUNE 2, 2006

Charles W. Totto, by and through his counsel, CARRIE K. S. OKINAGA,

Corporation Counsel, and GORDON D. NELSON, Deputy Corporation Counsel,

submits this memorandum in opposition to Plaintiff Philip E. English's Motion to

Compel Compliance With Subpoena issued June 2, 2006.

## I.     BACKGROUND

Plaintiff in this case issued and served a subpoena duces tecum on

Charles W. Totto, Executive Director and Legal Counsel of the Honolulu City

Ethics Commission ("Ethics Commission" or "Commission") to appear and testify

at a deposition on June 23, 2006.  The subpoena commanded production of:

> Any and all original records, files or documents, notes, emails and or
> other material including computerized storage material and any and
> all documents of every nature pertaining to:  (i) Philip E. English,
> (ii) Gary Kurokawa, (iii) Christopher Graff; (iv) Robert Magota,
> (v) Ann Gima or (vi) the Assessment Division of the City and County
> of Honolulu.

By letter dated June 15, 2006 addressed to Roger Moseley, Esq. counsel for

Plaintiff, the undersigned objected on Mr. Totto's behalf pursuant to Fed. R. Civ.

P. 45(c)(2)(B) to the production of documents, asserting the deliberative process

privilege, the attorney-client privilege, and the attorney work product doctrine, as

well as prohibitions on disclosure of the records of the Ethics Commission

contained in Honolulu's ordinances and in the Ethic's Commission Rules, as reinforced by the City Charter. The letter also raised the issue of whether questions to be propounded to Mr. Totto at the deposition would be similarly objectionable, and stated that the undersigned would call Mr. Moseley to discuss the deposition. A true copy of that letter is attached hereto as Exhibit A.

Calls to Mr. Moseley went unreturned until June 18, 2006, when Mr. Moseley called the undersigned at home at 6:30 a.m. In that conversation, which lasted perhaps three minutes, Mr. Moseley stated that he expected the Ethics Commission to resist production of documents, but intended to proceed with deposition testimony of Mr. Totto on June 23, 2006 without first having the benefit of any ruling on the objection to production of documents. Mr. Moseley indicated that there were "numerous areas of inquiry" that he wished to explore with Mr. Totto which did not relate to, nor need await production of, the requested documents. When asked to provide specifics as to these areas of inquiry, Mr. Moseley declined. See Declaration of Gordon D. Nelson, ¶¶ 4-5.

Mr. Totto appeared and testified on June 23, 2006 without producing the documents to which the Rule 45(c)(2)(B) objection had been interposed. His deposition commenced at 9:15 a.m. and adjourned at 4:30 p.m., and taking into account breaks ran approximately five hours. Many of the questions posed, to which the undersigned objected and instructed Mr. Totto not to answer, related to

the substance and detail of confidential investigations still pending before the Commission. A copy of Mr. Totto's deposition transcript is attached to Plaintiff's motion.

The subpoenaed materials comprise in excess of two thousand pages, in addition to original tape recordings of witness interviews and Ethics Commission meetings. A true copy of a privilege log describing the materials is attached hereto as Exhibit B.[1]

It is important to note that Mr. Totto retained attorney Matthew Viola to provide legal services in connection with the matters that are the subject of the subpoena, including: conducting witness interviews and documents analysis; researching case law and ethics opinions; drafting correspondence and other communications on behalf of the Commission; providing advice on how to proceed with the investigations; analyzing complaints and requests in light of the applicable facts and the law; and making recommendations on disposition. See Declaration of Charles W. Totto, ¶ 6. Mr. Viola was retained in contemplation of taking these matters to hearings before the Commission, if necessary. See Declaration of Charles W. Totto, ¶ 3. Many of the documents in the Commission's files are

---

[1] Since Mr. Totto's June 23, 2006 deposition, the undersigned has worked as diligently as his other duties would permit to assemble a privilege log to with descriptions of documents meaningful enough to be useful to Plaintiff's counsel and the Court, which at the same time do not compromise the asserted privileges. The undersigned has frankly underestimated the difficulty of this task and the time required to complete it, and regrets that that he has been unable to produce the log within a week of the deposition, as he initially (over-optimistically) estimated. See Declaration of Gordon D. Nelson, ¶6.

therefore work product generated by Mr. Viola in the course of his retention and/or communications between Mr. Viola in his capacity as the Commission's retained outside counsel and Mr. Totto, in his dual capacities as both Executive Director of the Commission and internal Legal Counsel to the Commission.

It is also important to understand the ordinances and rules under which Mr. Totto is constrained to operate.  The following brief summary of the framework for Ethics Commission confidentiality is therefore provided.

The confidentiality of the activities of the Ethics Commission is mandated by law, in provisions of both the Revised Ordinances of Honolulu (1990) ("ROH")[2] and the City Ethics Commission's Rules of Procedure (1984) ("Rules").[3] These provisions address confidentiality in the areas of hearings held by the Commission, documents and reports received by the Commission, and disclosure of information concerning allegations before the Ethics Commission. They are reinforced by the general provision of the City's Charter regarding use of confidential information.[4]

---

[2] ROH §§ 3-6.1 to 3-6.10.

[3] Rules § 4.13.

[4][3]The Revised Charter Of The City & County Of Honolulu 1973 ("RCH"), § 11-102 (2000 Edition) provides in pertinent part:

    Section 11-102. Conflicts of Interest –

        No elected or appointed officer or employee shall:

        ....

ROH § 3-6.7(e)[5] and Rules § 4.13(b)[6] provide that all hearings before the City Ethics Commission be held in executive session, closed to the public. An exception is made for a hearing to be opened to the public if the person against whom the allegation so requests or consents.[7]

In addition, ROH § 3-6.5(c)[8] and Rules § 4.13(a),[9] require that all records, reports, or documents received by the Commission remain confidential. The public has access to only to those writings received by the Commission at a

---

        (b) Disclose confidential information gained by reason of such person's office or position or use
such information for the personal gain or benefit of anyone. ...

[5] ROH § 3-6.7(e) reads:

    (e)    All hearings before the commission involving an alleged conflict of interest of any employee or officer shall be held in executive session, provided that a public hearing may be held where such officer or employee, alleged to have a conflict of interest, consents thereto.

[6] Rules § 4.13(b) reads:

    (b)    All hearings before the Commission shall be held in executive session; provided that a public hearing may be held where the officer or employee alleged to have the conflict of interest requests or consents to a public hearing.

[7] ROH § 3-6.7(e); Rules § 4.13(b).

[8] ROH § 3-6.5(c) reads:

    (c)    All records, reports, writings, documents, exhibits, and other evidence received by the Commission shall be held in confidence and no information as to the contents thereof shall be disclosed unless such items are presented and received by the commission at a hearing or meeting that is open to the public.

[9] Rules § 4.13(a) reads:

    (a)    All records, reports, documents, exhibits, and other evidence received by the Commission shall be held in confidence and no information as to the contents thereof shall be disclosed unless such items are presented and received by the Commission at a hearing or meeting that is open to the public.

hearing open to the public.[10] ROH § 3-6.3(g)[11] provides that if the Commission determines that an advisory opinion will not be issued, the initial allegation and any contents of the allegation are to remain confidential permanently.

Finally, ROH § 3-6.3(g) further provides for punishment for improper disclosure: "any [C]ommission member or [C]ommission staff, who divulges information concerning the allegation" is subject to penalties and disciplinary action as provided by the Revised Charter of the City.[12]

A number of public interests are served by Ethics Commission confidentiality:

Confidentiality encourages the willing participation of relevant witnesses by providing protection against retaliation or recrimination. Without confidentiality,

---

[10] ROH § 3-6.5(c); Rules § 4.13(c).

[11] ROH § 3-6.3(g) reads:

> (g)     Any commission member or commission staff, who divulges information concerning the allegation prior to the issuance of an advisory opinion by the commission, or if the investigation discloses that the advisory opinion should not be issued by the commission, any commission member or commission staff who, at any time, divulges any information concerning the original allegation, or divulges the contents of disclosures except as permitted by this article, shall, if found guilty, be subject to the applicable provisions of Section 11-106 of the revised charter.

[12] Revised Charter Of The City & County Of Honolulu 1973, § 11-106 (2000 Edition) reads:

> The failure to comply with or any violation of standards of conduct established by this article of the charter or by ordinance shall be grounds for impeachment of elected officers and for the removal from office or from employment of all other officers and employees. The appointing authority may, upon the recommendation of the ethics commission, reprimand, put on probation, demote, suspend or discharge an employee found to have violated the standards of conduct established by this article of the charter or by ordinance.

potential complainants and witnesses would be reluctant to come forward.[13] See Declaration of Charles W. Totto, ¶ 9.

The commission's confidentiality requirements also reflect a concern for the reputations of public officials and employees who may be the targets of unfounded complaints filed for the sole purpose of damaging their reputation.[14] See Declaration of Charles W. Totto, ¶ 10. Confidentiality minimizes the injury to the reputation of a public official that would otherwise be caused by adverse publicity from an unfounded complaint, a matter not only of fundamental fairness, but of good public policy: a way of reducing one potential downside to entering into public service.

Maintaining confidentiality forestalls attempts by some to enhance the credibility of weak or unfounded or overblown complaints by invoking the name of the Ethics Commission before the Commission has taken final action.

Confidentiality is also important to the Commission's efficiency. The maintenance of confidentiality often provides an additional incentive to settle to

---

[13] The State Office of Information Practices ("OIP") has recognized the Commission's need for confidentiality in this regard: "Disclosure would have a chilling effect on the Commission's ability to perform its duties in the future because informants and complainants will be reluctant to provide information to the Commission for fear of reprisal if their identities became known. Although the Commission takes steps to ensure the confidentiality of informants, the fear of possible disclosure is enough to obstruct the Commission's work. Therefore, the Commission is not required to disclose the advisory opinion about an identified subject because disclosure would cause the frustration of a legitimate government function." OIP Op. Ltr. No. 98-1 (January 16, 1998).

[14] The OIP has also recognized that since subjects of the Commission advisory opinions have a significant privacy interest in the information identifying them in the opinions, that the subjects' identities generally are exempt from disclosure pursuant to the exception for "[g]overnment records, which if disclosed, would constitute a clearly unwarranted invasion of personal privacy." OIP Op. Ltr. No. 96-2 (July 16, 1996).

some accused persons, and is therefore an important tool for the Commission to utilize in handling its caseload.  Maintaining confidentiality of the Commission proceedings also discourages the filing of more unfounded complaints motivated by the publicity impact of filing.  Confidentiality also enables the staff to focus its energies and on the process of investigating and resolving of complaints. As a practical matter making Commission files subject to disclosure in civil actions would force the Commission to halt investigations until the civil case is resolved in order to avoid become involved in discovery or in the very lawsuit itself. See Declaration of Charles W. Totto, ¶ 11.

Finally, preventing the premature disclosure of information regarding unfounded complaints also serves a public purpose in maintaining the public's confidence in its elected and appointed officials.

## II.  MR. TOTTO HAS EFFECTIVELY ASSERTED PRIVELEGES AGAINST DISCLOSURE AND HAS NOT WAIVED THOSE ASSERTIONS OF PRIVILEGE

As indicated above, Mr. Totto timely asserted privileges against disclosing Commission documents in accordance with Fed. R. Civ. P. 45(c)(2)(B).  Under the rule, once a witness objects to the production of documents, the party serving the subpoena is not entitled to the documents except pursuant to a court order. Plaintiff does not dispute that Mr. Totto timely asserted his claims to privilege, did not produce a privilege log argue that the assertions of privilege have been waived,

because Mr. Totto "prior to the date and time for responding to the subpoena".
Plaintiff's Memorandum, page 6.

Mr. Totto has produced the privilege log required by Fed. R. Civ. P.
45(d)(2). (See Exhibit B attached hereto). That rule does not state that the log
must be produced "prior to the date and time for responding to the subpoena". Nor
do the cases cited by Plaintiff support that proposition. Each involved situations
where the party called upon to produce documents had been afforded multiple
opportunities by the court to substantiate claims of privilege, but failed to do so.
That is simply not the case here. While Mr. Totto has been unable to produce a log
as expeditiously as counsel had hoped (i.e. within a week of the deposition), his
counsel has been diligent in his efforts to assemble one, with the result that it is
being produced herewith. See Declaration of Gordon D. Nelson, ¶ 6.

Under the circumstances, it cannot be maintained that Mr. Totto has waived
his assertion of privileges.

III.    PRIVILEGE AGAINST DISCLOSURE OF ETHICS COMMISSION
        FILES

A privilege against disclosing subpoenaed ethics commission files made
confidential by statute has been recognized in a Pennsylvania civil case. Garmong
v. Stephanini, 802 A.2d 1264, (Pa.Cmwlth., 2002) involved claims for defamation,
civil conspiracy, intentional infliction of emotional distress, and wrongful use of
the Pennsylvania Public Official and Employee Ethics Act (Act). Board member

Victor Garmong subpoenaed the Pennsylvania State Ethics Commission for all files of its earlier investigation of him. The Court of Common Pleas denied Commission's motion to quash, and ordered Commission to make files available to parties. On appeal, the Commission contended that the Act,[15] specifically provided that the investigative files and records of the Commission were confidential, the Commission was not required to the release confidential investigative files and records to litigants in a private civil action. The Commonwealth Court ruled in favor of the Commission.

Though the present case involves a complainant rather than the subject of an investigation seeking to subpoena Commission files, it is still a matter of a private litigant attempting to piggyback on the Commission's investigative process.

---

[15] The Pennsylvania statute was similar to Honolulu's ordinance and the provisions of many other entities administering ethics laws in providing for the confidentiality of its records and files. 65 Pa.C.S. § 1108(k), provided in pertinent part:

> **(k) Confidentiality.**-As a general rule, no person shall disclose or acknowledge to any other person any information relating to a complaint, preliminary inquiry, investigation, hearing or petition for reconsideration which is before the commission. However, a person may disclose or acknowledge to another person matters held confidential in accordance with this subsection when the matters pertain to any of the following:
>
> > (1) final orders of the commission as provided in subsection (h);
> > (2) hearings conducted in public pursuant to subsection (g);
> > (3) for the purpose of seeking advice of legal counsel;
> > (4) filing an appeal from a commission order;
> > (5) communicating with the commission or its staff, in the course of a preliminary inquiry, investigation, hearing or petition for reconsideration by the commission;
> > (6) consulting with a law enforcement official or agency for the purpose of initiating, participating in or responding to an investigation or prosecution by the law enforcement official or agency;
> > (7) testifying under oath before a governmental body or a similar body of the United States of America;
> > (8) any information, records or proceedings relating to a complaint, preliminary inquiry, investigation, hearing or petition for reconsideration which the person is the subject of; or
> > (9) such other exceptions as the commission by regulation may direct.

Plaintiff has alternative means of obtaining information concerning the matters complained of by directly deposing and seeking documents from his former supervisors and co-workers and from the City's Real Property Assessment Division.

Even short of formally recognizing a privilege in this regard, this Court has the power to, and should as a matter of comity, take into account the policies sought to be implemented by Ethics Commission confidentiality, and should deny Plaintiff's motion to compel. Civil Rule 26(c) gives a trial court a power to deny disclosure of confidential information of a governmental agency that does not depend upon a legal privilege. Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1548 (11th Cir. 1985). Keeping names of participants in a CDC study of toxic shock syndrome confidential outweighed discovery interests of tampon manufacturer, where disclosure could damage Center's ability to conduct research). Similarly, in In re Snyder, D.C.Ariz.1987, 115 F.R.D. 211, 214, the court protected information not privileged under State law in an action brought for personal injuries sustained in motor vehicle accident against the vehicle manufacturer. The court quashed a subpoena seeking deposition testimony and documents about data underlying conclusions of the researcher on auto safety who was stranger to events and parties involved in action, finding the subpoena to be excessively burdensome).

Even if this Court declines to follow the <u>Garmong</u> court in finding a formal privilege here based on the ordinance and rule, it nevertheless should exercise its Rule 26(c) authority to prevent disclosure, in furtherance of the policies that underlie the ordinance and rule.

IV.    ATTORNEY-CLIENT PRIVILEGE

Many of the documents sought by Plaintiff are communications between Mr. Totto and Mr. Viola, attorneys for the Commission, and are protected by the attorney-client privilege.  The purpose of the attorney-client privilege is "to encourage full and frank communications between attorneys and their clients," and it exists to protect" not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." <u>Upjohn Co. v. U.S.</u>, 449 U.S. 383 (1981) at 389-91.

The privilege applies in both directions:  to communications from the client to the attorney, and to communications from the attorney to the client. <u>Schwimmer v. U.S.</u>, 232 F.2d 855 (8th Cir.), *cert. denied*, 352 U.S. 833 (1956).

The attorney-client privilege affords absolute protection to privileged communications.  As the Ninth Circuit stated in <u>Admiral Insurance Co. v. U.S. District Court</u>, 881 F.2d 1486, at 1495 (9th Cir. 1989):  "The attorney-client privilege cannot be vitiated by a claim that the information sought is unavailable from any other source.  Such an exception would either destroy the privilege or

render it so tenuous and uncertain that it would be little better than no privilege at all."

The privilege applies with equal force to conversations and correspondence among a client's attorneys, whether or not the client is present during the conversation or receives a copy of the correspondence. *See, e.g.*, Natta v. Zletz, 418 F.2d 633, 637 (7th Cir. 1969) (correspondence between house and outside counsel fall within the  privilege), and it extends to confidential communications between government attorneys and their clients. SEC v. World-Wide Coin, 92 F.R.D. 65, 67 (N.D. Ga. 1981) (privilege applied to communications between SEC lawyers and staff).

A number of the emails, memoranda and other documents exchanged between Mr. Totto and Mr. Viola are clearly protected attorney-client communications, and should not be the subject of compelled disclosure.

V.    WORK-PRODUCT DOCTRINE

In addition, interviews conducted by Mr. Viola and Mr. Totto, their interview notes, other witness statements, memoranda, correspondence and other documents containing their mental impressions all constitute protected work

-14-

product. These materials were generated in the process of investigating matters before the Commission in contemplation of presenting a case to the Commission.[16]

While it is correct that the work-product doctrine "protects the work of the attorney done in preparation for litigation...." In re Grand Jury Proceedings, 33 F.3d 342, 348 (4th Cir. 1994), litigation need only be contemplated at the time the work is performed for the doctrine to apply, *see* Holland v. Island Creek Corp., 885 F. Supp. 4 at 7 (1995), and the term "litigation" is defined broadly to encompass the defense of administrative and other federal investigations. In re Sealed Case, 676 F.2d 793 (D.C. Cir. 1982) (applying doctrine to documents created by counsel rendering legal advice in connection with SEC and IRS investigations).

As the Supreme Court observed in Hickman v. Taylor, 329 U.S. 495 (1947), the work-product doctrine is critical to a lawyer's ability to render professional services to his client:

> "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation It of a client's case demands that he assemble information, sift what he considers to be the relevant go from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... This work is reflected of course, be in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways...."

---

[16] In this regard, it is not the Commission's position, as Plaintiff seems to suppose, that this work-product is protected because it was prepared in anticipation of this lawsuit in which the City itself is otherwise represented by counsel; it is protected because it was prepared in anticipation of proceedings before the Commission.

The protection afforded to "opinion" work product reflecting counsel's subjective beliefs, impressions, and strategies regarding a case is nearly absolute. In re Sealed Case, 676 F.2d 793 (D.C. Cir. 1982), ("to the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification). Many of the documents sought are such "opinion" work product.

With regard to "fact" work product Plaintiff has failed to meet his burden of showing of substantial need and inability to obtain the information elsewhere without undue hardship. Indeed, "fact" work product developed by Mr. Totto and Mr. Viola from interviews of witnesses and requests for documents is precisely facts the kind of material that Plaintiff himself can generate through discovery requests to the other parties in the case and depositions of percipient witnesses whose identities are well-known to Plaintiff.

Plaintiff should not be permitted to appropriate the Commission's "fact" work-product to serve his mere convenience. Plaintiff's convenience is not the standard. The standard is substantial need for the information and hardship in obtaining the information from other sources, and is judged in light of the competing interest of the Commission to maintain confidentiality, where disclosure of materials relating ongoing investigations will compromise the Commission's work.

Consequently, the Court should not complete disclosure of either "opinion" work-product or "fact" work-product generated by Mr. Viola and Mr. Totto in the course of their investigations.

## VI.    DELIBERATIVE PROCESS PRIVILEGE

Many of the records sought by Plaintiff are protected by the deliberative process privilege.  The governmental deliberative process privilege generally protects testimony "reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."  See Department of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Association, 532 U.S. 1, 8 (2001).

As noted by Plaintiff in his moving papers, Mr. Totto testified in his deposition that the Commission has not concluded proceedings on the relevant complaints.  Totto Dep., page 155. Many of the documents Plaintiff seeks have been prepared precisely to assist Mr. Totto and the Commission in arriving at decisions, and thus are "predecisional" under the holdings of Carter v. United States Department of Commerce, 307 F.3d 1084 at 1089 (9th Cir. 2002) and Assembly of California v. United States Department of Commerce, 968 F.2d 916, 920 (9th Cir. 1992).

While the privilege does not operate indiscriminately to shield all decision-making by public officials, in this situation, it cannot be seriously contended that

-17-

an Ethics Commission investigation, in which serious public concerns and personal reputations are at stake and in which outside counsel has been retained, involves routine decision-making.

To overcome the privilege, Plaintiff must make a sufficient showing of need. Plaintiff's bare assertion that "Mr. Totto's Ethics Commission's documents and things are likely to show government misconduct on several levels" falls far short of the requisite showing. For example, as against the City, the Amended Complaint makes claims of unlawful discrimination and retaliation, intentional infliction of emotional distress, defamation, interference with contractual relations and prospective advantage – all matters said to have resulted from, but which are outside of, the ethics proceeding indicated by the January 2003 complaint and related complaints.

Further, counsel for Plaintiff fully participated in the Commission's process leading up to its issuance of its advisory Opinion 2006-2, submitting comments both in writing and orally to the Commission and seeing and hearing the comments provided by the City. In his deposition, Mr. Totto expressly denied any undue influence by anyone in connection with the issuance of the Advisory Opinion. No showing has been made of manipulation and interference with Mr. Totto and the Commission, which claims in any case, are not fairly within the allegations contained in the Amended Complaint.

As with "fact" work product, to overcome the deliberative process privilege Plaintiff must demonstrate that he is unable to obtain the information sought from other sources and by other means. And as with "fact" work product in assessing whether the deliberative process privilege must yield to a demonstrated substantial need for the information and a showing of hardship in obtaining the information from other sources, the Court should consider more than Plaintiff's mere convenience, but should judged Plaintiff's need in light of the competing interest of the Commission not to have its ongoing work compromised by disclosure...

Plaintiff has not made a sufficient showing to justify such a compelled disclosure.

VII.    <u>CONCLUSION</u>

For the reasons given above, the Court should deny Plaintiff's motion in entirety. Even in the event that the Court determines that all of the materials sought are not protected by one or another of the asserted privileges, the Court should exercise its discretion under Fed R. Civ. P. 26(c) to protect Mr. Totto from having to further respond to Plaintiff's subpoena, by terminating his deposition or limiting the scope of Plaintiff's further inquiries, and by limiting those documents that the Court determines should be produced.. The exercise of discretion in this manner is appropriate given the high need of the Commission to preserve the confidentiality

of its records and proceedings, which significantly outweighs Plaintiff's

countervailing need for information from the source that is most convenient to him.

DATED:  Honolulu, Hawaii, _____July 18, 2006_____.

Respectfully submitted,

CARRIE K. S. OKINAGA
Corporation Counsel


By _____

GORDON D. NELSON
Deputy Corporation Counsel
Attorneys for Charles W. Totto