IN THE UNITED STATES DISTRICT CIRCUIT

FOR THE DISTRICT OF HAWAII

PHILIP E. ENGLISH,                ) CIVIL NO. 04-00108
                                  )
         Plaintiff,               )
                                  )
vs.                               )
                                  )
CITY AND COUNTY OF                )
HONOLULU; GARY T.                 )
KUROKAWA; ROBERT O.               )
MAGOTA; ANN C. GIMA; and          )
GK APPRAISALS, INC.; JOHN         )
DOES 1-10; JANE DOES 1-10;        )
DOE PARTNERSHIPS; DOE             )
CORPORATIONS 1-10; AND DOE        )
ENTITIES 1-10,                    )
                                  )
         Defendants.              )
_____)


DEPOSITION OF CHARLES TOTTO


Taken on June 23, 2006, commencing at 9:15 a.m. at the Law Offices of Moseley Biehl Tsugawa Lau & Muzzi, Alakea Corporate Tower, 1100 Alakea Street, 23rd Floor, Honolulu, Hawaii, before Rita King, a Certified Court Reporter in the State of Hawaii.

Ralph Rosenberg Court Reporters, Inc.
Ofc: 808.524.2090   Fax: 808.524.2596

**ATTACHMENT "1"**

AO88 (Rev. 1/94) Subpoena in a Civil Case

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 0 6 2006

at 2 o'clock and 310 ＿M
SUE BEITIA, CLERK

Issued by the
# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

PHILIP E. ENGLISH

V.

CITY AND COUNTY OF HONOLULU ET AL.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 04-00108

6/5/06 @ 10:00am

TO: CHARLES W. TOTTO
Executive Director/Legal Counsel
715 South King Street, Suite 211
Honolulu, Hawaii 96813

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| MOSELEY BIEHL TSUGAWA LAU & MUZZI, 1100 ALAKEA STREET, 23RD FLOOR, HONOLULU, HAWAII 96813 | JUNE 23, 2006 @ 9:00 A.M. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Any and all original records, files or documents, notes, e-mails and or other material including computerized storage material and any and all documents of every nature pertaining to: (i) Philip E. English, (ii) Gary Kurokawa, (iii) Christopher Graff, (iv) Robert Magota, (v) Ann Gima or (vi) the Assessment Division of the City and County of Honolulu

| PLACE | DATE AND TIME |
| --- | --- |
| MOSELEY BIEHL TSUGAWA LAU & MUZZI, 1100 ALAKEA STREET, 23RD FLOOR, HONOLULU, HAWAII 96813 | JUNE 23, 2006 @9:00 A.M. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| /s/ Moseley  Atty for Plaintiff | June 2, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
ROGER S. MOSELEY, MOSELEY BIEHL TSUGAWA LAU & MUZZI, 1100 ALAKEA STREET, 23RD FLOOR, HONOLULU, HAWAII 96813. TEL NO. 808-531-0490

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.


EXHIBIT NO. 82
TOTTO
6-23-06
RITA KING,    RPR, CSR

AO88 (Rev. 1/94) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | June 5, 2006 at 10:00am | 715 So. King Street #211 Honolulu, HI 96813 |
| SERVED ON (PRINT NAME) CHARLES W. TOTTO Executive Director/Legal Counsel | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) Hamilton C. Pieper 1050 Bishop St. #521 Hon. HI 96813 Ph. 808-282-6730 | | TITLE HAMILTON C. PIEPER Authorized Civil Process Server By the Dept. of Public Safety |
| DECLARATION OF SERVER  State of Hawaii | | |

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on   June 5, 2006
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER   Hamilton C. Pieper
1050 Bishop St. #521
Hon. HI 96813
Ph. 808-282-6730

DEPARTMENT OF THE CORPORATION COUNSEL
# CITY AND COUNTY OF HONOLULU

530 SOUTH KING STREET, ROOM 110 • HONOLULU, HAWAII 96813
TELEPHONE: (808) 523-4859 • FAX: (808) 523-4583 • INTERNET: www.honolulu.gov



MUFI HANNEMANN
MAYOR

CARRIE K.S. OKINAGA
CORPORATION COUNSEL

DONNA M. WOO
FIRST DEPUTY CORPORATION COUNSEL

June 15, 2006

Via Hand Delivery

Roger S. Moseley, Esq.
Moseley Biehl Tsugawa Lau & Muzzi
1100 Alakea Street, 23rd Floor
Honolulu, Hawaii 96813

Dear Mr. Moseley:

    Re:   Subpoena Duces Tecum Served Upon Charles W. Totto in
Philip E. English v. City, Civil No. 04-00108, in the United
States District Court

    I have been asked to represent Mr. Charles Totto in connection with the above subpoena duces tecum.

    Pursuant to FRCP Rule 45(c)(2)(B), Mr. Totto objects to the production of any documents at his deposition.

    Inspection or copying of the specified documents is objectionable on a number of grounds, including but not limited to, the attorney-client privilege, the attorney work-product doctrine, and the deliberative process privilege. Release of the subpoenaed documents is further objectionable as violative of applicable provisions of the City Charter, of City ordinances and of the Rules of the City Ethics Commission, all of which require Mr. Totto to maintain the confidentiality of the documents.



EXHIBIT NO. 83
TOTTO
6-23-06
RITA KING,   RPR, CSR

Roger S. Moseley, Esq.
Page 2
June 15, 2006

      With regard to Mr. Totto's deposition, I anticipate that most questions that might be posed would be similarly objectionable. However, I will call you to discuss further.

                                     Very truly yours,

                                     GORDON D. NELSON
                                     Deputy Corporation Counsel

GDN:li

cc: Charles Totto

MIS-TOTTO SDT.GDN

ETHICS COMMISSION
# CITY AND COUNTY OF HONOLULU
715 SOUTH KING STREET, SUITE 211, HONOLULU, HAWAII 96813-3091
Phone: (808) 527-5573 • Fax: (808) 527-6936 • EMAIL: ethics@co.honolulu.hi.us
Internet: www.co.honolulu.hi.us/ethics



JEREMY HARRIS
MAYOR

CHARLES W. TOTTO
EXECUTIVE DIRECTOR & LEGAL COUNSEL

May 5, 2006

TO:       Roger S. Moseley, Esq.
          Alakea Corp. Tower
          1100 Alakea St., 23rd Fl.
          Honolulu, HI 96813

FROM:     CHARLES W. TOTTO, EXECUTIVE DIRECTOR AND LEGAL COUNSEL

RE:       ADVISORY OPINION NO. 2006-2.

---

TRANSMITTED HEREWITH:

1.    Advisory Opinion No. 2006-2.

| | | | |
|---|---|---|---|
| [ ] | Per your request | [ ] | For Necessary Action |
| [X] | **For your records and files** | [ ] | Forwarding |
| [ ] | Per our Conversation | [ ] | For Payment |
| [ ] | For Signature and Return | [ ] | See Remarks Below |

---

REMARKS:

EXHIBIT NO. 84
TOTTO
6-23-06
RITA KING,    RPR, CSR

The information contained in this message is intended only for the use of the designated recipient(s) named above and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or an agent for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this transmission is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail at our expense. Thank you.

Government | Kama'aina | Business | Visitors | Kids World | Seniors World | On-Line Services | Economic Development

Quick Find: Select One:                              Search: _____  GO

You are here: Main / Ethics Commission / Advisory Opinions / Advisory Opinion 2006-2

## Advisory Opinion No. 2006-2

A former city employee ("Employee"), [name], intends to disclose information he obtained as a result of his city position to a court in connection with litigation to which he is not a party. In general, the information which Employee intends to submit to the court in the form of an affidavit, concerns allegations of wrongful conduct by city employees committed in the course of the litigation. Employee has requested advice as to whether his disclosures "would violate any standards of conduct or code of ethics of the City[.]"

Based on the facts presented in this specific case, the Commission has decided that it will not take any action against Employee resulting from his disclosure of the affidavit to the court and will not claim that such disclosure violates any City standards of conduct or ethics applicable to Employee.

We wish, however, to be very clear about the limits of our opinion. First, our opinion does not mean that we necessarily believe that Employee's allegations of wrongdoing are true. For the purposes of our analysis, and in the absence of information that the allegations are knowingly false, we have simply taken them at face value.

Second, our opinion is limited only to the city's ethics laws. Employee should understand that the disclosure of the information in his affidavit might be prohibited by other laws. Finally, Employee should also understand that the Commission's opinion addresses only the disclosure of the specific information contained in the affidavit he proposes to submit to court and that the disclosure of additional information or in other contexts is not necessarily permitted under the ethics laws.

DATED: May 1, 2006

LEX R. SMITH, CHAIR
Honolulu Ethics Commission

Thursday, May 25, 2006

© Copyright 2002-2006 City and County of Honolulu, Hawaii
Privacy Statement | Technical Support | Customer Service | Policy | Accessibility | Diversity Statement

# ETHICS COMMISSION
# CITY AND COUNTY OF HONOLULU

715 SOUTH KING STREET, SUITE 211, HONOLULU, HAWAII 96813-3091
Phone: (808) 527-5573 • Fax: (808) 527-6936 • EMAIL: ethics@honolulu.gov
Internet: www.honolulu.gov/ethics



MUFI HANNEMANN
MAYOR

CHARLES W. TOTTO
EXECUTIVE DIRECTOR & LEGAL COUNSEL

January 25, 2006

<u>Via Facsimile No. 527-5631</u>

Carrie K.S. Okinaga
Corporation Counsel
530 S. King St., Room 110
Honolulu, HI 96813

<u>Via Facsimile No. 534-0202</u>

Roger S. Moseley, Esq.
Alakea Corporate Tower
1100 Alakea St., 23rd Fl.
Honolulu, HI 96813

Re: <u>Comments on Ethics Commission's draft advisory opinion in EC No. 05-159(w)</u>

Dear Ms. Okinaga and Mr. Moseley:

This informs you that the Honolulu Ethics Commission will accept written comments from your offices to the draft opinion. The submission must be filed by February 7, 2006. You may also submit oral comments to the Commission at its February 16, 2006 meeting. I have enclosed a copy of the draft opinion.

Because the draft opinion deals with facts that may be considered confidential, the Commission requests that your comments be kept confidential until the Commission renders its formal advisory opinion in this matter.

Should you have any questions, please contact me.

Sincerely,

CHARLES W. TOTTO
Executive Director and Legal Counsel

CWT:nnf

Enclosure

cc: Matthew J. Viola, Esq. (w/encl.)

EXHIBIT NO. 85
TOTTO
6-23-06
RITA KING, RPR, CSR

DRAFT

CONFIDENTIAL

Advisory Opinion No. 2006-___

## I. Summary

A former city employee intends to disclose confidential information, which he obtained as a result of his city position, to a court in connection with litigation that he has no direct personal interest in. While the city's ethics laws, specifically Revised Charter of Honolulu (RCH) § 11-102(b), ordinarily prohibit city employees from disclosing confidential information, the disclosure in this case might be constitutionally and statutorily protected. Accordingly, the Commission analyzes whether the proposed disclosure would violate city's ethics laws in light of these protections. It adopts an approach to analyzing potential violations of RCH § 11-102(b) that takes into account public employees' constitutional and statutory free speech protections, which requires the consideration of specific factors, including the subject matter and context of the speech. In this instance, because the intended disclosures: (1) address a matter of public concern; (2) arguably reveal a violation of law or court rules; and (3) are not knowingly false, the disclosures would not constitute a violation of RCH § 11-102(b).

## II. Background Facts

Attorney Roger Moseley represents a number of apartment owners who have been involved in long-standing litigation with the city regarding how the city classified their property for tax purposes (the Litigation). Mr. Moseley also represents Phil English, a former appraiser in the city's Real Property Assessment Division (RPAD), in other unrelated matters.

Mr. Moseley has requested advice from the Ethics Commission on behalf of Mr. English related to the disclosure of information that Mr. English obtained in connection with his city employment. According to Mr. Moseley, Mr. English "was a percipient witness as well as an expert witness" in many of the matters that comprised the Litigation and may have information that he believes is relevant to the cases. Specifically, Mr. Moseley states that: (1) Mr. English observed one of his former supervisors "sanitizing files" (including removing relevant documents) that were to be produced in the course of the Litigation; and (2) his former supervisor told Mr. English that she was doing so at the direction of a Corporation Counsel deputy attorney. Mr. Moseley has provided us with an affidavit in which Mr. English attests to these basic facts.

Mr. Moseley intends, as long as it does not cause Mr. English to be in violation of the city's ethics laws, to submit Mr. English's affidavit to the tax appeals court, apparently in support of a post-judgment motion he intends to file.

III. **Specific Request for Advice**

On behalf of Mr. English, Mr. Moseley has requested advice "as to whether Mr. English would violate any standards of conduct or code of ethics of the City, if his testimony (by written document/affidavit or otherwise) were used."[1]

IV. **Analysis**

A. <u>Applicable Ethics Provision</u>

Our analysis starts with RCH § 11-102(b), which prohibits the "[d]isclos[ure of] confidential information gained by reason of [an elected or appointed officer or employee]'s office or position or [the] use [of] such information for the personal gain or benefit of anyone."

The critical inquiry under RCH § 11-102(b) is whether the information Mr. English wants to disclose – essentially his personal observations of his supervisor's alleged activities and her verbal statements to him – is "confidential." In our past advisory opinions, we have employed a broad definition of the term, deeming any information that is not generally available to the public to be confidential. *See, e.g.,* Ad. Op. No. 2001-2 ("confidential information is information which is not readily available to the public"); Ad. Op. No. 127 (reports to a council committee chair are confidential until they become part of the public record); Ad. Op. 68.

The information contained in Mr. English's affidavit, which we assume to be true for purposes of our analysis, falls within our broad definition of confidential. He made his observations in a setting that the general public does not have access to, and his supervisor allegedly made statements about ongoing litigation that she presumably would not have made to the general public. *Cf.* Ad. Op. No. 129 (describing as "confidential" a councilmember's non-public "reaction" to a proposed bill).

In addition to the information being confidential, the other elements of RCH § 11-102(b) are present. First, Mr. English was in a position to gain access to the information he intends to disclose as a result of his city position. Further, Mr. English intends to disclose the information to the tax appeals court, where it will presumably be used by Mr. Moseley to attempt to benefit his other clients in the Litigation.

Therefore, if we were to analyze this matter without reference to any other laws, our precedent and the plain language of RCH § 11-102(b) would lead us to conclude that Mr. English would be in violation of RCH § 11-102(b) were he to disclose the information in his affidavit.

---

[1] Mr. English no longer works for the city. Nevertheless, because Mr. English requested an opinion before he left the city and because his request raises an important issue that the Commission has not addressed, the Commission will respond to his request as if he were still a city employee.

We cannot apply our ethics laws, however, with blinders on. Rather, we must be mindful of the fact that our ethics laws often intersect with other laws, and we are obliged to avoid, where possible, interpretations and applications of our ethics laws that conflict with other laws. As we discuss below, we believe that finding a violation of RCH § 11-102(b) under the facts before us might conflict with Mr. English's constitutional and statutory rights.

B. Constitutional and Statutory Issues

1. First Amendment

City employees such as Mr. English clearly have First Amendment free speech rights, and the city's ability to impose discipline against employees who have legitimately exercised those rights is therefore limited. As we recently stated:

> The United States Supreme Court has long-recognized that an employee does not abandon his or her First Amendment rights simply by agreeing to work for a public entity. A city therefore may not discipline an "employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896 (1987)[.]

Advisory Opinion No. 2004-4 (other citations omitted). While the government may impose restrictions on the free speech rights of public employees, those restrictions must be limited when the speech involves matters of public concern.

> In general, the government's restrictions on a public employee's freedom of speech are subject to a balancing test: the employee's interest in commenting on matters of public concern is weighed against the interest of the government as an employer in promoting the efficiency of the public service it performs through its employees. *Pickering v. Board of Education, supra*. "The balancing test differs depending upon the type of expression, the nature of the agency, and the context in which the expression is made." Advisory Op. 2002-5 (Dec. 17, 2002) (quoting *Martin v. Lauer*, 686 F.2d 24, 31 (D.C. Cir. 1982)).

*Id.* (footnote omitted). A public employee therefore has a constitutional right to speak out on matters of public concern -- as opposed to matters of private concern, which are generally not constitutionally protected -- as long as his/her interest outweighs the government's interest in the efficient conduct of its operations. This right to speak about matters of public concern may even extend to the disclosure of otherwise confidential information.

Whether a matter is of "public" or "private" concern depends on the particular facts. The courts, however, have established certain criteria to distinguish the two. In general, the distinction between public and private speech can be characterized as "the difference between an employee complaining about matters private to himself, such as whether he was

3

being paid enough or given deserved promotions, as compared to an employee who is engaged in whistle blowing or otherwise going public with matters in which the public might be expected to take an interest." *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1349 (7th Cir.1995) (citing *Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir.1994)). The phrase "public concern," does "not mean matters of trancendent importance, such as the origins of the universe or the merits of constitutional monarchy; [it] mean[s] matters in which the public might be interested, as distinct from wholly personal grievances ··· and casual chit-chat." *Dishnow v. Sch. Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir.1996).

Thus, matters of public concern include speech that "relat[es] to any matter of political, social, or other concern to the community[,]" *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684 (1983), and involve "'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983)). It includes speech informing the public that a governmental entity failed to "discharg[e] its governmental responsibilities" or "bring[ing] to light actual or potential wrongdoing or breach of public trust" by government officials. *Connick*, 461 U.S. at 148, 103 S.Ct. 1684. For example, the potential violation of the law by government and public organizations is a matter of public concern. *See, e.g.*, *Charvat v. Eastern Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 617-18 (6th Cir.2001); *Perry v. McGinnis*, 209 F.3d 597, 605 (6th Cir.2000).

On the other hand, "internal personnel disputes or complaints about an employer's performance" do not touch upon a matter of public concern and therefore generally fall outside the scope of First Amendment-protected speech. *Brandenburg*, 253 F.3d at 898. For example, a state hospital employee's argument "that a letter be sent to the Board of Trustees declaring the lack of confidence with [the administrator] was nothing more than an example of the 'quintessential employee beef' of incompetent management." *Jackson v. Leighton*, 168 F.3d 903, 910-11 (6th Cir.1999)) (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir.1988) (internal citation in *Barnes* omitted)).

In our view, the information that Mr. English wants to disclose constitutes a matter of public concern, insofar as it involves alleged wrongdoing by city officials. Although his affidavit centers on alleged misconduct in a particular case, it could be fairly read to make the larger point about dishonesty in the RPAD and therefore the quality of tax assessments, which would involve an issue of general concern to the community. *See Finn v. New Mexico*, 249 F.3d 1241, 1247 (10th Cir. 2001) (quoting *Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir.1988)) (A government employee's "[s]peech that seeks to expose improper operations of the government or questions the integrity of government officials clearly concerns vital public interests."); *see also Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir. 1998) (internal citations omitted) (holding that "speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials ··· clearly concerns matters of public import.").

In addition, we seriously doubt that the city's interest in the efficient conduct of its operations necessarily outweighs Mr. English's interest in disclosing his observations. His

4

affidavit addresses alleged misconduct in connection with litigation, which arguably falls outside of the RPAD's core functions. Thus, we question whether Mr. English's disclosures would negatively affect or be disruptive to RPAD's ability to efficiently achieve its goals.[2]

Accordingly, there is a strong possibility that Mr. English's proposed disclosure of the information in his affidavit is constitutionally protected. To be clear, we are not making a definitive determination on that point; the fact, however, that Mr. English's speech *might* be protected is a sufficient basis for us to avoid a reflexive finding of a RCH § 11-102(b) violation. Stated otherwise, we are hesitant to conclude that Mr. English's submission of his affidavit to the tax appeals court constitutes a violation of RCH § 11-102(b) solely because it contained confidential (*i.e.*, non-public) information, because of our concerns that such a rigid interpretation might violate Mr. English's constitutional free speech rights.

2.  <u>Whistleblowers' Protection Act</u>

We are also concerned that finding that Mr. English violated RCH § 11-102(b) might run counter to the State Whistleblowers' Protection Act, Hawaii Revised Statutes (HRS) § 368-61 *et seq.*, which generally protects employees (including public employees) who make reports of actual or suspected wrongdoing to their employers or government agencies. HRS § 378-62 provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>
> (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or
>
> (B) A contract executed by the State, a political subdivision of the State, or the United States,

---

[2] Factors that courts generally consider to be relevant to evaluating the strength of the government's interest in limiting an employee's speech include whether the speech would "meaningfully interfere with the performance of [the employee's] duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Williams v. Kentucky*, 24 F.3d 1526, 1536 (6th Cir.1994). In weighing the competing interests, courts have "given substantial weight to government employers' reasonable predictions of disruption." *Waters v. Churchill*, 511 U.S. 661, 673, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994).

5

unless the employee knows that the report is false; or

(2) An employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Mr. English's disclosure of the information in his affidavit is arguably protected activity under the Whistleblowers' Protection Act. First, Mr. English would be making his disclosure to a public body (the tax appeals court) and he would be reporting conduct that -- if it were true – is arguably a violation of court rules and perhaps could even be characterized as fraud. In addition, we have no information that Mr. English knows his report is false.

Thus, if we were to find that Mr. English's disclosure to the tax appeals court of the information in his affidavit constituted a violation of RCH § 11-102(b), which would ordinarily subject him to discipline, he might have a claim under the Whistleblowers' Protection Act. Again, we are not making a definitive determination that he would have such a claim. The possibility that he *might*, however, persuades us that we need to take that possibility into account in analyzing whether Mr. English would be violating RCH § 11-102(b) by his disclosures.

C. Approach to Analyzing Possible Violations of RCH § 11-102(b)

In order to avoid the potential conflicts outlined above, we adopt an approach to analyzing potential violations of RCH § 11-102(b) that takes into account public employees' constitutional and statutory free speech protections. Specifically, when considering whether an employee has violated RCH § 11-102(b) by disclosing confidential information (*i.e.*, information that is not generally available to the public), we will consider the following factors:

1. Does the disclosure address a matter of public concern? If it does not, then finding a violation of RCH § 11-102(b) would very likely not be inconsistent with the employee's constitutional or statutory rights. If, however, the speech does address a matter of public concern, this factor should weigh heavily against finding a RCH § 11-102(b) violation.

2. Does the information relate to a violation or a suspected violation of a "law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or . . . [a] contract executed by the State, a political subdivision of the State, or the United States"? HRS § 378-62. Again, the disclosure of this sort of information is likely to be constitutionally and statutorily protected.

3. Did the employee making the disclosure know the information was false? Disclosing information known to be false is probably not a protected activity, and thus finding a violation of RCH § 11-102(b) would not be problematic.

6

4. **Does the employee's appointing authority consider the information to be confidential, or would it be required to be disclosed under applicable law?** As noted above, the Commission's definition of confidential is broad. Some city departments may have their own policies defining what sort of information is confidential and their definitions can be narrower than the Commission's. It would be anomalous for the Commission to find that an employee has violated RCH § 11-102(b) by disclosing information that his/her own appointing authority does not consider confidential. In addition, the Uniform Information Practices Act (Modified), HRS chapter 92F (the "UIPA") requires that many government records and other information be made generally available for public inspection and duplication, unless certain specified exceptions apply. Information that ordinarily would have been required to be disclosed under the UIPA would ordinarily not be deemed confidential under RCH § 11-102(b).

The consideration of the foregoing factors, of course, must be done on a case-by-case basis, and it may not be apt in certain cases (for example, cases in which the allegation is that a city employee has used, but not disclosed, confidential information). We recognize that the case-by-case approach may have drawbacks (e.g., a lack of certainty). However, we do not believe that there is an acceptable alternative that adequately takes into account the constitutional and statutory concerns the Commission needs to consider.

V. **Conclusion and Recommendation**

In applying the approach set forth above to the disclosures that Mr. English wants to make, we find that he would not be in violation of RCH § 11-102(b). As noted above, his disclosures, which are intended to be made to a public body: (1) address a matter of public concern; (2) arguably reveal a violation of law or court rules; and (3) are not knowingly false.[3]

Accordingly, we conclude that the disclosure of Mr. English's affidavit to the tax appeals court would not constitute a violation of RCH § 11-102(b). We wish, however, to be very clear about the limits of our opinion. First, our opinion does not mean that we necessarily believe that the allegations in Mr. English's affidavit are in fact true, nor does it mean that we believe that the subjects of his affidavit (his supervisor and the Corporation Counsel deputy attorney) have actually engaged in any wrongdoing. For the purposes of our analysis, and in the absence of information that the allegations are knowingly false, we have simply taken them at face value. As far as we are concerned, however, at this point they remain allegations.

Second, our opinion is limited only to the city's ethics laws. Mr. English should understand that the disclosure of the information in his affidavit might be prohibited by other

---

[3] We do not have any information that the RPAD has a confidentiality policy that would classify the information that Mr. English wants to disclose as confidential. Even if it did, however, that fact would not matter; we have assumed that the information is confidential.

7

1  laws. Finally, Mr. English should also understand that the Commission's opinion addresses
2  only the disclosure of the specific information contained in the affidavit and that the
3  disclosure of additional information or in other contexts is not necessarily permitted under
4  the ethics laws.
5
6  Dated: \_\_\_\_, 2006
7
8  _____, CHAIRPERSON
9  Ethics Commission

8

Article 6. Ethics Commission

Sections:
- 3-6.1    Membership, term and appointment.
- 3-6.2    Rules--Meetings.
- 3-6.3    Powers, duties and functions.
- 3-6.4    Commission staff.
- 3-6.5    Requirements applicable to the rendering of opinions.
- 3-6.6    Request for opinions by officers or employees.
- 3-6.7    Requests by third parties.
- 3-6.8    Applicability.
- 3-6.9    Prohibiting political management or activity or candidacy to an elective political office.
- 3-6.10   Training of management or supervisory officer or employee on standards of conduct.

Sec. 3-6.1    Membership, term and appointment.
The number, term, and appointment of members of the ethics commission shall be subject to Section 11-107 of the charter. (Sec. 3-2.1, R.O. 1978 (1983 Ed.); Am. Ord. 01-51)

Sec. 3-6.2    Rules--Meetings.
Meetings of the commission shall be held at the call of the chair and the affirmative vote of a majority of the entire membership shall be necessary to take any action. (Sec. 3-2.2, R.O. 1978 (1983 Ed.))

Sec. 3-6.3    Powers, duties and functions.
(a) The commission shall render advisory opinions at any time at the request of an officer or employee of the city involving the possible conflict of interest or unethical conduct on the part of or the solicitation, acceptance, or receipt of a gift by such officer or employee.
(b) The commission shall also render advisory opinions in circumstances where there is alleged to be a conflict of interest or unethical conduct on the part of any employee or officer of the city within the scope of the revised charter and Article 8 of this chapter.
(c) The commission may submit to the mayor and council recommendations and reports which it deems advisable and which pertain to the standards of conduct contained in Article XI of the revised charter, to the administration of said Article XI or to any other matter relating to the fostering and maintenance of ethical conduct.
(d) The commission may initiate or make investigations and hold hearings.
(e) The commission may subpoena witnesses, administer oaths and take testimony relating to matters before the commission and issue subpoenas for the production for examination of any books, papers or other documents relative to any matter under investigation or in question before the commission. Before the commission shall exercise any of the powers authorized herein with respect to any investigation or hearings it shall be by formal resolution, supported by a vote of the majority of the members of the commission, defining the nature and scope of its inquiry.
(f) The commission may, from time to time adopt, amend and repeal such rules and regulations, not inconsistent with the provisions herein and of Article 8 of this chapter, as in the judgment of the commission seem appropriate for the carrying out of the provisions herein and of Article 8 of this chapter and for the efficient administration thereof, including every matter or thing required to be done or which may be done with the approval or consent or by order or under the direction or supervision of or as prescribed by the commission. The rules and regulations, when approved, promulgated and filed as provided in HRS Chapter 91 shall have the force and effect of law.
(g) Any commission member or commission staff, who divulges information concerning the allegation prior to the issuance of an advisory opinion by the commission, or if the investigation discloses that the advisory opinion should not be issued by the commission, any commission member or commission staff who, at any time, divulges any information concerning the original allegation, or divulges the contents of disclosures except as permitted by this article, shall, if found guilty, be subject to the applicable provisions of Section 11-106 of the revised charter.



(h) The commission may disclose the name of any officer or employee who has been determined by the commission, following investigation and a hearing or opportunity for a hearing, to have violated any of the provisions of Article 8 of this chapter or of Article XI of the revised charter in accordance with HRS Chapter 92F.

(i) The commission may submit information or records to another agency, an agency of the State of Hawaii, an agency of another state, or to an agency of the federal government, or a foreign law enforcement agency or authority as permitted under HRS Chapter 92F.

(Sec. 3-2.3, R.O. 1978 (1983 Ed.); Am. Ord. 92-17, 93-113, 94-49, 02-15)

**Sec. 3-6.4  Commission staff.**

(a) There shall be an executive director of the ethics commission who shall be an attorney licensed to practice law in the State of Hawaii. The executive director shall be referred to as the legal counsel to the commission. The salary of the legal counsel shall be set by the ethics commission, within the EM-7 range applicable to city and county civil service employees, payable semi-monthly out of the city treasury; provided, that the salary may fall below the EM-7 range if the position of legal counsel is less than a full-time position.

(b) The commission may appoint such additional staff and engage consultants as is necessary to assist it in the performance of its duties.

(c) The position of legal counsel and any other staff shall be exempt from the provisions of Chapter 11 of Article VI of the Revised Charter of Honolulu, as amended, but all positions except that of the legal counsel shall be included in the position classification plan.

(Sec. 3-2.4, R.O. 1978 (1987 Supp. to 1983 Ed.))

**Sec. 3-6.5  Requirements applicable to the rendering of opinions.**

(a) Except in the case of a written request by the elected or appointed officer or employee concerned, the commission may for good cause refuse to entertain a request for an advisory opinion. Without limiting the generality of the foregoing, the commission may refuse to entertain a request where: (1) the request is speculative or purely hypothetical and does not involve an actual situation or (2) the request is frivolous. In no case, however, shall the commission entertain a request that is not in writing and not signed by the person making the request.

(b) The commission shall acknowledge the receipt of the request in writing to the person submitting the request. If the request involves an employee or officer and the request is made by a person other than such employee or officer, a copy of the request shall be sent to the employee or officer so involved with the name of the person making the request deleted so that such person's name will not be disclosed.

(c) All records, reports, writings, documents, exhibits and other evidence received by the commission shall be held in confidence and no information as to the contents thereof shall be disclosed unless such items are presented and received by the commission at a hearing or meeting that is open to the public.

(d) Within 30 days after a request for an opinion, or within 30 days after a hearing on any request shall have been concluded, whichever is later, the commission shall render its opinion in writing. All opinions rendered by the commission shall be published and shall be in such form and with such deletions as may be necessary to prevent the disclosure of the identity of the persons involved.

(e) After an opinion has been rendered, the commission shall notify the appointing authority of the officer or employee involved or the council in the case of elected officials, of its decision and shall recommend appropriate disciplinary action against officers and employees found to have violated standards of conduct established by the revised charter or by ordinance. The appointing authority or the council shall take whatever action is deemed necessary, and report the action taken to the commission within 15 days after receiving the decision and recommendation of the commission. The disclosures of conflicts of interests as provided in Revised Charter Section 11-103 shall be made matters of public record at any time that such conflict becomes apparent.

(Sec. 3-2.5, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 96-58)

**Sec. 3-6.6  Request for opinions by officers or employees.**

(a) Any officer or employee may request an opinion from the commission relating to any situation involving such officer or employee which may give rise to the possibility of a conflict of interest under Revised Charter, Article XI. Any officer or employee also may request an opinion from the commission on a situation which