IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1 –10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,<br><br>　　　　　Defendants. | Civil No. 04-00108 SOM/KSC<br><br>MEMORANDUM IN SUPPORT OF MOTION |

## **MEMORANDUM IN SUPPORT OF MOTION**

Plaintiff Philip E. English (hereinafter "Plaintiff"), by and through is counsel, Moseley Biehl Tsugawa Lau & Muzzi, submits this memorandum in support of his Motion to Compel the Testimony of Suzanne Foumai.

I.　　Statement of Relevant Facts

On July 28, 2006, Plaintiff noticed the oral deposition of Suzanne Foumai for August 14, 2006, See Exhibit A. Thereafter, on August 1, 2006, Plaintiff English served an Amended Notice of Taking Oral Deposition regarding Suzanne Foumai, rescheduling Ms. Foumai's oral deposition for August 4, 2006. See

Exhibit B. On August 1, 2006, Ms. Foumai was served with a subpoena requesting her appearance at the scheduled oral deposition on August 4, 2006. See Exhibit C. Said document was thereafter filed with the court on August 3, 2006. See Exhibit C.

Ms. Foumai appeared for her oral deposition on August 4, 2006, which commenced at 1:48 p.m. See Exhibit D. Present at the oral deposition was Roger S. Moseley, counsel for Plaintiff, Anthony L. Wong, counsel for GK Appraisals, Inc. and Michael L. Lorusso, counsel for the City and County of Honolulu, Gary T. Kurokawa, Robert O. Magota and Ann C. Gima. See Exhibit D.

II.  Argument

   A. Ms. Foumai Should be Compelled to Testify Regarding her Fee Arrangement with Michael Lorusso and/or Kawashima Lorusso & Tom, LLP and her Conversation with Mr. Lorusso

At the beginning of the oral deposition, questions were posed to Ms. Foumai regarding her legal representation.

> Q: Is Mr. Lorusso your attorney today?
> A: Yes.
> Q: Have you retained Mr. Lorusso as your attorney?
> A: The day I was served.
> Q: And you have an attorney- client relationship with Mr. Lorusso?
> A: Yes.
> Q: And that was formed on the day you were served with the subpoena?
> A: Yes.
> Q: Have you met with Mr. Lorusso before your deposition today?
> A: Yes, today.

> Q: You met today?
> A: Uh-huh.
> Q: Is that the only time that you've met with him?
> A: Today was the only day.
> Q: The only time you've met with him?
> A: Yeah.
> Q: And how long did you meet with him today?
> A: About half an hour.
> Q: About half an hour. Immediately before the deposition today?
> A: Yes.
> Q: And did you discuss your testimony with Mr. Lorusso?
> MR. LORUSSO: Let me object to the extent that it calls for attorney-client privilege. Any communications or things that we talked about, I'll instruct you not to answer.
> Q: Okay, I'm asking you if you talked about your testimony, not what you talked about, not the specifics of the conversation.
> MR. LORUSSO: Same objection. You can answer if you understand the question.

See Exhibit D – pages 8-9.

> Q: Did you discuss your testimony today with Mr. Lorusso?
> A: Yes.
> Q: And did you spend the whole half an hour discussing your testimony?
> MR. LORUSSO: I'm going to object. Vague and ambiguous, and to the extent that it calls for attorney-client privilege. Go ahead. You can answer if you understand. If you understand the question.
> . . .
> THE WITNESS: Yes.

See Exhibit D – pages 10-11.

At the conclusion of the oral deposition, Ms. Foumai was asked about the payment of legal services to Mr. Lorusso to which Mr. Lorusso instructed Ms. Foumai not to answer.

> Q: Are you paying for Mr. Lorusso's services as your attorney?
> MR. LORUSSO: Objection. Not relevant. Instruct you not to answer. It's not relevant. The terms, of my employment.
>
> MR. MOSELEY: Are you saying that's privileged and instructing her not to answer?
>
> MR. LORUSSO: Yes.
>
> MR. MOSELEY: That's privileged?
>
> MR. LORUSSO: Yes, and I'll take the risk, counsel, if I'm wrong.

Federal common law recognizes a privilege for communications between client and attorney for the purpose of obtaining legal advice, provided such communications were intended to be confidential." Gomez v. Vernon, 255 F.3d 1118, 1131 (9th Cir. 2001) (citing Weinstein's Federal Evidence, Chp. 503)). "The privilege, however, is not absolute. The privilege may be waived by the client either implicitly, by placing privileged matters in controversy, or explicitly, by turning over privileged documents." Id. **"The burden of proof is on the party seeking to establish that the privilege applies**." Clarke v. American Commerce National Bank, 974 F.2d 127, 129 (9th Cir. 1992) (emphasis added). The attorney-client privilege will not conceal everything said and done in connection with an attorney's legal representation of a client in a matter. See Fischel v. Margolis, 557 F.2d 209 (9th Cir. 1977).

Courts are clear that fee information generally is not privileged. See <u>Tornay v. United States of America</u>, 840 F.2d 1424 (9th Cir. 1988); <u>Lefcourt v. United States</u>, 125 F.3d 79 (1997);. The identity of a client, the amount of the fee, the identification of payment and general purpose of the work performed is usually not protected from disclosure by the attorney-client privilege. See <u>United States of America v. Amlani</u>, 169 F.3d 1189 (9th Cir. 1999); <u>United States of America v. Sherman</u>, 627 F.2d 189 (9th Cir. 1980)(the identity of an attorney's clients and the nature of his fee arrangements with his clients are not confidential communications protected by the attorney-client privilege). Again, the attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice.

There is a limited exception where disclosure of a client's fee arrangements would convey the substance of a confidential professional communication between the attorney and the client. See <u>United States of America v. Hirsch</u>, 803 F.2d 493 (9th Cir. 1986). This exception has been narrowly applied. Many times it is asserted to protect the identity of the client, however here, we know the presumed client is Ms. Foumai being represented by Mr. Lorusso. Here, the question did not probe into any areas of specific communications between the attorney and client but merely asked what the fee arrangement between Ms. Foumai and Mr. Lorusso is.

It is quite apparent that what is actually happening in this case by the instruction of Mr. Lorusso to Ms. Foumai not to answer the above questions is an attempt to employ the attorney-client privilege to shield the ongoing and participants of illegal activity. There was no proper basis for Mr. Lorusso's assertion of the privilege and instructing Ms. Foumai not to answer the questions. Accordingly, as the assertion of the attorney-client privilege is unfounded, Plaintiff respectfully requests this Court compel the testimony of Ms. Foumai.

Moreover, the information sought is completely relevant to the matters herein. In this matter, Mr. Lorusso is counsel for both Ms. Foumai and the City and County of Honolulu, and Mr. Lorusso permitted testimony of Ms. Foumai in this matter (without objection) that she took City and County of Honolulu personnel records of Plaintiff to her personal home. It appears that yet again, another conflict may have arisen based upon Mr. Lorusso's representation of both the City and County of Honolulu and Ms. Foumai since Ms. Foumai has taken personnel records from the City and County of Honolulu for her personal keeping in her home in violation of the city's own rules regarding confidentiality of records (and HRS Chapter 92). See Exhibit E.

> B. Information is Not Protected under the Attorney-Client Privilege pursuant to the Crime Fraud Exception

Courts have stated that the attorney-client privilege is not to be used as a

"cloak for illegal or fraudulent behavior." United States of America v. Lawson, 600 F.2d 215, 218 (9th Cir. 1979). The protection afforded by the attorney-client privilege does not extend to any communication in furtherance of intended, or present, continuing illegality.

Here, it is clear that the instruction to Ms. Foumai not to answer questions about conversations between Ms. Foumai and Mr. Lorusso and payment for Mr. Lorusso's services and their conversations are part of the ongoing policy and practice of retaliation of whistleblowers. The City is presumably providing legal services (something of value) to a witness (Ms. Foumai) who is scheduled to testify in this matter against the City. The impropriety of providing (presumably free) services to a witness scheduled to testify, should be obvious interest to this Court and the jury. Arguably, this is part of the City's continuing illegal activity against Plaintiff.

Moreover, Mr. Lorusso is representing Ms. Foumai, a witness in this case, while also continuing to represent the City when there is an apparent conflict of interest because of Ms. Foumai's violation of both the rule and regulations of the city and/or the criminal laws of the State of Hawaii and the opposite interest of the City. Also important to remember is that this arrangement may color Ms. Foumai's testimony insofar as she may not want to risk having to pay for legal services on her own and/or suffer repercussions of her violations. This

arrangement also raises the question of whether there is some agreement or arrangement between the City and Ms. Foumai regarding her unauthorized taking of City personnel records, her violation of HRS Chapter 92 and City rules and the City's failure to take action against Ms. Foumai for these violations.

III.   Conclusion

For all the foregoing reasons, Plaintiff English respectfully requests this Court grant his Motion to Compel the Testimony of Suzanne Foumai with respect to questioning surrounding her fee arrangement with Mr. Lorusso and/or Kawashima Lorusso & Tom, LLP and with respect to her conversation with Mr. Lorusso occurring on August 4, 2006.

Dated:  Honolulu, Hawaii, September 6, 2006.

_____
ROGER S. MOSELEY
CHRISTOPHER J. MUZZI
RENEE M. FURUTA
Attorney for Plaintiff
PHILIP E. ENGLISH