ETHICS COMMISSION
# CITY AND COUNTY OF HONOLULU

715 SOUTH KING STREET, SUITE 211, HONOLULU, HAWAII 96813-3091
Phone: (808) 527-5573 • Fax: (808) 527-6936 • EMAIL: ethics@honolulu.gov
Internet: www.honolulu.gov/ethics



MUFI HANNEMANN
MAYOR

CHARLES W. TOTTO
EXECUTIVE DIRECTOR & LEGAL COUNSEL

## MINUTES
## ETHICS COMMISSION
## CITY AND COUNTY OF HONOLULU

| | |
|---|---|
| Date and Place: | February 16, 2006<br>Standard Financial Plaza<br>Conference Room, Suite 211 |
| Present: | Lex R. Smith<br>Raymond H. Fujii<br>Susan S. Heitzman<br>Matthew H. Kobayashi<br>Wayne T. Hikida<br>Charles W. Totto, Executive Director and Legal Counsel (EDLC) |
| Stenographer: | Norm Fisher |
| Also Present: | Phil English, Roger Moseley, Esq. and Deputy Corporation Counsel Marie Gavigan only for Agenda Item V.E., EC No. 05-159(w) |

### I. CALL TO ORDER

The 393rd meeting of the Ethics Commission (Commission or EC) was called to order at 11:35 a.m. by the Chair.

### II. APPROVAL OF THE MINUTES OF THE OPEN SESSION OF THE JANUARY 24, 2006 OPEN MEETING

The minutes of the open meeting of January 24, 2006, were unanimously approved.

### III. OLD BUSINESS

A. <u>Confirming the date and time of the March 14, 2006 meeting and setting the date and time for the April, 2006 meeting</u>

EXHIBIT "C"

2238

The EC confirmed the March 14, 2006 at 11:30 a.m. meeting, and set the date and time for the April 18, 2006 at 11:30 a.m. meeting in the Standard Financial Plaza Conference Room, Suite 211.

IV.  NEW BUSINESS

   A.  <u>Administrative news</u>

The Executive Director and Legal Counsel (EDLC) referred to his memorandum dated February 10, 2006, outlining the ethics training conducted to date in fiscal year 2006.

   B.  <u>Election of officers</u>

The Commissioners unanimously elected Commissioner Lex Smith as the Chair, and Raymond Fujii as the Vice-Chair.

   C.  <u>Report on proposed Charter amendment regarding ethics matters heard by the Charter Commission</u>

The EDLC stated that he opposed Proposal No. 75, which prohibits political activities and political management by EC members, on the grounds that it duplicates Article XIV of the state constitution and ROH Section 3-6.9. He reported that Proposal No. 75 was passed by the Charter Commission.

   D.  <u>Report regarding memorandum of understanding between Corporation Counsel and Commission to clarify Commission's budget and personnel decision independence</u>

The EDLC reported that he is working with COR, Budget and Fiscal Services (BFS) and Human Resources (DHR) on a proposed memorandum that would allow COR to continue its due diligence review of proposed budget and personnel requests to determine if they comply with the polices of BFS and DHR. The EDLC stated that the purpose of this memorandum is to prevent COR from substituting its judgment for that of the Commission as long as the Commission decision complies with the general requirements imposed by BFS and DHR. The EDLC stated that, should this be

acceptable to the other agencies, the proposal should go a long way to ensuring budget and personnel decision independence for the Commission.

    E.    <u>Report regarding Resolution No. 05-349, a policy for the process by which City agencies may accept and use gifts.</u>

The EDLC reported that the Council is still discussing some minor points, however, it looks like the Commission's proposed changes will be incorporated into the final policy.

The EC moved, seconded, and unanimously carried to go to the executive session.

## V. EXECUTIVE SESSION SUMMARY

    A.    <u>Approval of the minutes of the executive session of the January 24, 2006 meeting</u>

The minutes of the executive session of January 26, 2006 were unanimously approved, as amended.

    B.    <u>Report and recommendation regarding possible violation of RCH Sec. 11-104 (misuse of official position) by a city employee; EC No. 05-122(w)</u>

The EDLC reported that this case involved an altercation at the Honolulu Municipal Building (HMB) between a private citizen and a city employee. According to both parties, the citizen would not comply with the requirement that she leave her personal identification with the security desk before entering the HMB. Because of her refusal, she was escorted into the building to conduct her business. After a short period, the citizen began to raise her voice at her escort, demanding that she be allowed to conduct her business alone. When that was not permitted, she left the HMB.

The EDLC stated that the city employee sent an email to the citizen's employer, informing it of the citizen's unprofessional conduct. The citizen claimed that, partly as a result of the city employee's email and an affidavit signed by the city employee, the citizen was discharged from her employment.

2240

The EDLC stated that the EC was requested to investigate whether the city employee had exceeded his authority by using his official position to initiate his complaint with the citizen's employer, in violation RCH Section 11-104, which prohibits a city officer or employee from using his or her official position to obtain special treatment for any person.

The EDLC stated that after reviewing the city employee's job description and speaking with his supervisors, it was evident that the city employee was and is authorized to follow up on security issues that come to his attention. In his interview, the city employee stated that he felt the citizen's behavior constituted a security concern. Also, shortly after the incident, the city employee informed his immediate supervisor of his belief that he should report the citizen's conduct to the citizen's employer and was permitted to do so.

Based on the information gathered, the EDLC does not believe that there was probable cause to find the city employee violated RCH Section 11-104 and recommended that, if the EC determined that probable cause does not exist, the EC instruct staff to draft a letter to the citizen explaining the EC's position.

Action: After discussing the matter, the EC moved, seconded, and unanimously carried to adopt the staff's recommendation.

C. Report and recommendation regarding possible violation of RCH Section 11-104 (use of official position to endorse private product) by city employees; EC No. 05-124(w)

The EDLC reported that during the investigation of the complaint against the city employee (Agenda item V.B., above, EC No. 05-122(w)), the citizen brought to his attention a user profile for a city department's use of a vendor's services. The EDLC stated that after the employees of the city department used the vendor's product, they were contacted by the vendor and spoke on the telephone with the vendor's representative for about 30 to 40 minutes. The vendor then put a user profile, which contained very positive

2241

comments made by the city employees regarding the vendor's product, on its web site. As a result of the employees' actions, the EC was requested to investigate whether the employees violated RCH Section 11-104 by endorsing the vendor's product through the user profile.

The EDLC informed the EC that, during their interviews, the three city employees admitted that they made the statements included in the user profile. However, they thought the telephone discussion with the vendor was simply a way for the vendor to determine whether they were satisfied with the product. They stated that they did not intend to endorse the product.

The EDLC noted that upon being informed by Commission staff that the user profile may constitute an endorsement in violation of RCH Sec. 11-104, the city employees immediately requested that the user profile be removed from the vendor's web site and the vendor complied. The EDLC attempted to contact the vendor's representative who had the phone conversation with the city employees. However, through its attorney, the vendor refused to comply with his request.

The EDLC stated that, based on the lack of information showing that any of the employees knew or should have known that the information they provided the vendor would be used to endorse the product, staff recommends that the EC find that there is no probable cause that the City employees violated RCH Sec. 11-104. The EDLC recommended that the parties be informed by letter of the EC's decision.

Action: After discussing the matter, the EC moved, seconded, and unanimously carried to adopt the staff's recommendation.

    D.    <u>Report and recommendation regarding stipulation to resolve issues related to the possible violations of RCH Section 11-104 (prohibiting the use of city resources for an employee's private business) by a city employee; EC No. 05-147(o)</u>

The EDLC reported that the city employee has agreed to sign the stipulation, which states that the city employee will no longer solicit or sell Avon products on city premises,

2242

during city work time or using city resources. As a result of the city employee's acceptance of the stipulation, the Commission has agreed not to recommend that the city employee's appointing authority impose any discipline on her.

Action: After discussing the matter, the EC accepted the proposed stipulation and requested the EDLC to prepare an advisory opinion.

E. Report and recommendation regarding whether a former city employee would violate RCH Section 11-102(b) (prohibition against disclosing confidential information) by disclosing confidential information obtained in the course of employment; EC No. 05-159(w)

The EDLC reported that an attorney represents a former city employee in a lawsuit that the former city employee filed against the city and several of his former city supervisors. The former city employee also filed a complaint with the Commission against his former supervisor, which substantially overlaps with his federal lawsuit. In addition to representing the former city employee, the attorney also represents a number of individuals who have been involved in long-standing litigation with the city (the "other litigation").

The EDLC stated that the attorney requested, on behalf of the former city employee, advice as to whether the former city employee would violate any standards of conduct, if his testimony (by written document, affidavit or otherwise) were used in the other litigation. In his letters to the Commission requesting advice on behalf of the former city employee, the attorney states that the former employee was a percipient witness as well as an expert witness in many of the matters of the other litigation and may have information that is relevant to the cases.

After reviewing the issues involved, the Commission determined to allow Corporation Counsel (COR) and the attorney for the former employee to comment on the proposed advisory opinion. Written comments were received from COR and the attorney on February 7, 2006.

2243

The attorney noted that he and his client were discussing the various types of things that the former city employee had observed during the course of his employment with the city. The former city employee told the attorney that at one point he was sitting at his desk and his supervisor, who sat a few feet away from him, was going through some of the files and removing them. The former employee asked the supervisor "what are you doing?" The supervisor replied that she was going to produce the documents to the attorney in the other litigation, and that she was "sanitizing" the files. The supervisor stated that she was taking out things that were apparently duplicate, and was also taking things out that they did not want the attorney to have. The former city employee then told the supervisor that her actions were improper, and she should not be doing that. The supervisor then replied that they had a meeting with a deputy corporation counsel, who had instructed them to do this.

Commissioner Hikida asked whether the former city employee is responsible to keep the information confidential now that he is no longer a city employee.

The deputy corporation counsel responded that, although the Charter has enforcement provisions for a violation of the ethics law, because the former city employee is no longer employed there was no way to enforce the ethics law. The deputy stated that clearly the former city employee has a responsibility to act in an ethical fashion, but it is not clear what the Commission can do to enforce this. Therefore, the attorney's request for an opinion on the issue is moot. The deputy corporation counsel also stated that COR is concerned about getting an opinion from the Commission, as it is possible that the attorney would use this opinion against the city and city employees, in the former city employee's pending lawsuit against the city and against 3 city employees.

The attorney responded to COR's position that the confidentiality issue is moot. The attorney stated that this argument is like a lawyer instructing his client: "If you do that, that's breaking the law, but nobody is going to catch you." The attorney stated that this would be ethically improper to do, and believed that it was an improper argument for

2244

COR to be making. The attorney stated that the former city employee believes that it does not matter if you cannot enforce it – if its against the law, he should not do it. This is why the attorney is requesting an opinion from the Commission.

Chair Smith asked the attorney if his purpose was to ask the Commission for an opinion that the ethics laws do not apply to ex-city employees who obtained confidential information while he was a city employee.

In response to this question, the attorney stated that he is asking the Commission to rule that, when it comes to an issue of public concern, the city's ethics laws do not circumscribe his client's right to free speech so that he is prevented from disclosing confidential information. The attorney stated that the former city employee wants to exercise his free speech rights to comment on a matter of public concern, to comment on wrong doing that was going on in the division.

Chair Smith asked the deputy whether COR's position is that the Commission should not render an opinion because the question is moot since the person in question no long works for the city.

The deputy corporation counsel answered yes.

Action: After deliberating the issue, the Commission instructed the parties that it will render its disposition at the March 14, 2006 meeting.

F.  Report and recommendation regarding whether a city employee violated RCH Section 11-102(c) (conflict of financial interest that is incompatible with or may tend to impair officer's discharge of duties); EC No. 03-002(w)

The EDLC reported that the parties are still discussing settlement terms. The Commission staff has proposed a stipulation that requires an admission of wrongdoing, and a possible suspension without pay of 1 to 3 days.

The EC moved, seconded, and unanimously carried to return to the open session.

VI.  ADJOURNMENT

8

2245

2246

The EC moved, seconded, and unanimously carried to adjourn the meeting. The meeting was adjourned at 1:00 p.m.