**ORIGINAL**

MOSELEY BIEHL TSUGAWA LAU & MUZZI
A Hawaii Limited Liability Law Company

| | |
|---|---|
| ROGER S. MOSELEY | 2060 |
| CHRISTOPHER J. MUZZI | 6939 |
| RENEE M. FURUTA | 7593 |

Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, Hawaii 96813
Tel: (808) 531-0490, Fax: (808) 534-0202
Email: rmoseley@hilaw.us
       cmuzzi@hilaw.us
       rfuruta@hilaw.us

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 0 6 2006

at __ o'clock and __ min. __ M
SUE BEITIA, CLERK

Attorneys for Plaintiff
PHILIP E. ENGLISH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>                    Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1–10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,<br><br>                    Defendants. | Civil No. 04-00108 SOM/KSC<br><br>PLAINTIFF PHILIP E. ENGLISH'S MEMORANDUM IN OPPOSITION TO DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, AND ANN C. GIMA'S MOTION TO EXTEND TIME TO FILE SUBSTANTIVE MOTIONS; DECLARATION OF CHRISTOPHER J. MUZZI; EXHBITS "A" – "S"; CERTIFICATE OF SERVICE<br><br>Hearing:<br>Dates: September 8, 2006<br>Time: 11:00 a.m.<br>Judge: Honorable Kevin S. Chang |

10010/3/57662

**PLAINTIFF PHILIP E. ENGLISH'S MEMORANDUM IN OPPOSITION TO DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, AND ANN C. GIMA'S MOTION TO EXTEND TIME TO FILE SUBSTANTIVE MOTIONS**

Plaintiff Philip E. English ("Plaintiff"), by and through his counsel, Moseley Biehl Tsugawa Lau & Muzzi, submits this memorandum in opposition to Defendants City and County of Honolulu, Gary T. Kurokawa, Robert O. Magota, and Ann C. Gima's Motion To Extend Time To File Substantive Motions (the "Motion to Extend").

**I.  ARGUMENT**

**A.  Good Cause Does Not Exists to Extend Time to File Substantive Motions**

Defendants do not allege good cause in their Motion to Extend. Instead, Defendants claim that certain cases decided at the end of May and end of June 2006, two and one-half months ago, justify them to now file substantive motions on the eve of trial. In addition, Defendants seek to have their Motion to Extend granted based on their unsupported general statement that "areas of fact that were once in dispute have now been clarified through the deposition and discovery process . . . ." Memorandum in Support of Motion to Extend at p. 7. These reasons simply do not establish good cause, especially in light of the impending trial date.

Specifically, Defendants argue, without substantive explanation, that Garcetti v. Ceballos, 126 S.Ct. 1951 (2006) and Wittig v. Allianz, 2006 WL

10010/3/57662

1731142 (Haw. App. 2006) "have called into question Plaintiff's § 1983 and retaliatory discharge[1] claims."  Memorandum in Support of Motion to Extend at p.7.

### 1. Garcetti Does Not Establish Good Cause

While Garcetti may generally be relevant to § 1983 claims regarding violation of a whistleblower employee's First Amendment Rights, it is inapposite here. Garcetti held "that when public employees make statements <u>pursuant to their official duties</u>, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 1960 (emphasis added). In Garcetti, the Plaintiff admitted that his statements were made pursuant to his official duties, and that fact was dispositive. Here, Plaintiff's statements that form the basis of his § 1983 claim <u>were not made</u> pursuant to his official duties as an appraiser for the City and County of Honolulu, Department of Budget and Finance, Real Property Tax Assessment Division.[2] Thus, Garcetti does not apply and should not form the basis

---

[1] Plaintiff did not file a claim limited to retaliatory discharge as misstated by Defendants. Plaintiff filed a claim for "Unlawful Discrimination and Retaliation." See Plaintiff's First Amended Complaint, Count IV filed January 12, 2006. The First Amended Complaint alleges and notices Defendants that that Plaintiff's discharge was only one of a myriad of events constituting the unlawful discrimination and retaliation. Id.

[2] At a minimum, this material fact is disputed and would preclude the entry of summary judgment.

for a finding of good cause to allow for a substantive motion to be heard on the eve of trial.

### 2. <u>Wittig Does Not Establish Good Cause</u>

Defendants attempt to establish good cause for extending the substantive motions deadline with respect to Plaintiff's Unlawful Discrimination and Retaliation claim based on the ambiguous and unexplained statement that, "In light of <u>Wittig</u>, CITY Defendants believe that the issue can be dealt with by way of a substantive motion." In the <u>Wittig</u> case, the Hawaii Intermediate Court of Appeals held that a worker's compensation insurer's mere tender of a settlement offer containing a resignation term, which a worker is free to reject, did not constitute an unlawful retaliatory discharge or suspension prohibited by Haw. Rev. Stat. § 386-142. Wittig, 2006 Haw. App. LEXIS 288, *24-*25. The court specifically <u>did not consider</u> whether such conduct was lawful under the broader provisions of HRS § 378-32(2), which additionally prohibits an employer from <u>discriminating</u> against an employee solely because he has suffered a work-related injury compensable under chapter 386, unless certain enumerated circumstances exist,[3] <u>id.</u>, or whether

---

[3] Pursuant to the relevant provisions of Haw. Rev. Stat. § 378-32(2), it is unlawful for an employer to:

> suspend, discharge, or <u>discriminate</u> against any of the employer's employees    ...
>
>> (2) Solely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of

such conduct was lawful under Haw. Rev. Stat. § 378-62, which is one of the specific bases for Plaintiff's claim of unlawful discrimination and retaliation in this matter. Again, while <u>Wittig</u> may be relevant to retaliatory discharge cases under Hawaii's Worker's Compensation statutes, <u>e.g.</u>, Haw. Rev. Stat. 386-142, it is not controlling here where Plaintiff has alleged unlawful discrimination and retaliation pursuant to, <u>inter alia</u>, the Hawaii Whistleblower Protection Act, <u>i.e.</u>, Haw. Rev. Stat. §378-62[4].

---

performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing. Any employee who is discharged because of the work injury shall be given first preference of reemployment by the employer in any position which the employee is capable of performing and which becomes available after the discharge and during the period thereafter until the employee secures new employment. This paragraph shall not apply to any employer in whose employment there are less than three employees at the time of the work injury or who is a party to a collective bargaining agreement which prevents the continued employment or reemployment of   the injured employee....

(Emphasis added.)

[4] Haw. Rev. Stat. § 378-62 provides as follows:

**Discharge of, threats to, or discrimination against employee for reporting violations of law.**

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

(A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or

The fact that Plaintiff signed a Compromise, Settlement and Release Agreement dated January 20, 2004 (the "Worker's Compensation Settlement) to settle only those claims against Defendant City and County of Honolulu under Haw. Rev. Stat. chapter 386 does not make Wittig relevant. While the mandatory resignation term in the Worker's Compensation Settlement forms part of the basis for Plaintiff's Unlawful Discrimination and Retaliation Claim, there are a multitude of other wrongful acts committed by Defendants that also establish the Unlawful Discrimination and Retaliation claim. Thus, the mere existence of the Wittig decision fails to satisfy Defendants' burden of establishing good cause to allow for the filing of a substantive motion relating to Plaintiff's Unlawful Discrimination and Retaliation claim.

B.    **Summary Judgment Is Futile Because of Disputed Facts**

Even were the Court inclined to find good cause exists to amend the scheduling order, the Defendants' contemplated motion for summary judgment would be futile because (a) the undisputed material facts support Plaintiff's claims or (b) certain material facts are in dispute.

1.    **The Section 1983 Claim**

---

(B) A contract executed by the State, a political subdivision of the State, or the United States,

unless the employee knows that the report is false; or

(2) An employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

In order for Garcetti to have any specific relevance to this case, Defendants would have to prove that the statements made by Plaintiff that form the basis of his Section 1983 Claim were made pursuant to his official duties. Here, the protected statements were made in, at least, four separate contexts: (a) statements made by Plaintiff to the Federal Bureau of Investigation regarding unethical and illegal conduct by Defendant Kurokawa and others; (b) statements made by Plaintiff to the City and County of Honolulu Ethics Commission regarding unethical and illegal conduct by Defendant Kurokawa and another employee, and other unethical matters within the Real Property Assessment Division; (c) statements made by Plaintiff to his supervisors relating to irregularities or illegalities in the assessment of real property taxes; and (d) statements made by Plaintiff to his supervisors regarding unethical and illegal conduct by Defendant Kurokawa and another employee.

It cannot in good faith be disputed that Plaintiff did not have any official duty that required him to make the statements identified in (a) and (b) above. In law and fact, Defendant City and County of Honolulu has a charter provision that would ostensibly prohibit such conduct. See City and County of Honolulu Charter § 11-102(b), a true and correct copy of which is attached hereto as Exhibit A; see also Draft Advisory Opinion of the City and County of Honolulu Ethics Commission, a true and correct copy of which is attached hereto as Exhibit

B.[5]   In a mandatory training seminar for employees of the Real Property Assessment Division conducted by Defendant City and County of Honolulu and held in February of 2003, the Real Property Assessment Division employees were instructed that they were not required to report unethical or illegal conduct to the Ethics Commission. See Exhibit D, which is a true and correct copy of Plaintiff's notes from the mandatory training seminar.

The statements made by Plaintiff identified in items (c) and (d) above, were also not made pursuant to Plaintiff's official duties. See Exhibit E, which is a true and correct copy of the Job Description for the Appraiser IV position in which Plaintiff was employed; and see Exhibit F, which is a true and correct copy of the City and County of Honolulu's Administrative Directive to Employees regarding reporting of suspected fraud, effective 5/17/02 ("When an employee observes suspected fraudulent activity, the employee is <u>encouraged to report</u> the pertinent facts . . . as soon as he/she becomes aware of the activity." (emphasis added)). As evidenced by Defendant City and County's own admissions, Plaintiff's duties did not include (i) monitoring, overseeing, reviewing or determining whether the tax assessment practices of the Assessment Division were legal and ethical, or (ii) reviewing, developing, or creating policy for the Assessment Division. Because

---

[5] Note that the Ethics Commission draft opinion, despite its self-identified significance, was not adopted as the official opinion of the Ethics Commission at the request of the Defendant City and County of Honolulu by its Corporation Counsel, specifically because of concern that it would be used by Plaintiff in this case. See Exhibit C, which is a true and correct copy of the Minutes of the Ethics Commission's February 16, 2006 session.

Plaintiff's statements were in no way part of Plaintiff's official duties, Garcetti is inapposite.

With respect to the myriad of statements Plaintiff made privately to Defendants regarding the incorrect, unethical or illegal appraisal practices of the Real Property Assessment Division, Plaintiff is similarly situated to the plaintiff in Givhan v. Western Line Consolidated Sch. Dist., 439 U.S. 410 (1979). In Givhan, the plaintiff, a public school teacher, made statements in private to the principal that were critical of school policies and practices, in particular, to the school that she was assigned to teach. Id. at 411. After expressing her views, plaintiff's contract was not renewed by the school district. Plaintiff brought suit against the school district for, *inter alia*, violating her First Amendment rights. The district court found in favor of plaintiff. However, the court of appeals reversed on the erroneous belief that "because petitioner had privately expressed her complaints and opinions to the principal, her expression was not protected under the First Amendment." Id at. 413. The United States Supreme Court reversed the court of appeals and held that the First Amendment forbids the abridgment of a public employee's freedom of speech to communicate privately with his/her employer.[6] Id. at 415-16 ("Neither the [First] Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately

---

[6] The Supreme Court reversed the court of appeals and remanded the case for further proceedings consistent with its opinion.

with his employer rather than to spread his views before the public."). The continued validity of Givhan was recognized in Garcetti. Garcetti, 126 S. Ct. at 1959.

Like in Givhan and Garcetti, Plaintiff here had no official duty to make his statements. Plaintiff's official duties did not require him to (i) review, develop or ensure that the Assessment Division's practices were ethical or in compliance with law, or (ii) to review, develop or implement tax or tax assessment policy. Unlike in Garcetti, where plaintiff's statements were admittedly part of plaintiff's official duties, Plaintiff's statements here were those of a concerned citizen about the fairness and integrity of the tax assessment process, and about preventing fraud on the government and its citizens.

The record demonstrates that none of the categories of Plaintiff's statements that form the basis of his § 1983 claim were made pursuant to an official duty of Plaintiff. To the extent that Defendants seek to establish otherwise, there is clearly a genuine issue of material fact that must be decided by the jury.

2. **The Unlawful Discrimination and Retaliation Claim.**

Again, it is not clear from Defendants' motion how Wittig has any material significance to Plaintiff's Unlawful Discrimination and Retaliation claim as such claim was not brought under to Haw. Rev. Stat. chapter 386. The primary basis for Plaintiff's Unlawful Discrimination and Retaliation claim is a violation of a

provision of the Hawaii Whistle Blower's Protection Act, i.e., Haw. Rev. Stat. § 376-62. Wittig was not a whistleblower case, and, therefore, not controlling.

To the extent that Defendants mistakenly believe that Plaintiff's Unlawful Discrimination and Retaliation Claim is based entirely on the mandatory resignation provision in the Worker's Compensation Settlement, they are incorrect. As previously stated, the mandatory resignation provision in the Worker's Compensation Settlement is only one of many factual bases supporting the claim. Further, the Wittig case did not examine whether such a mandatory resignation provision violates Haw. Rev. Stat. § 378-62. In addition, there exist factual issues as to whether Plaintiff was free to reject Defendant City and County's offer that Plaintiff resign, as the evidence indicates that Defendant City and County had already determined that Plaintiff would not return to work at the Assessment Division and Defendant City and County did not make any efforts to find Plaintiff other suitable employment with the City.

To the extent that Defendants argue that Plaintiff voluntarily[7] resigned pursuant to the Worker's Compensation Settlement, which was signed on January

---

[7] Defendants were well aware that their illegal denial of worker's compensation benefits to Mr. English was creating a significant hardship that was financially devastating to Plaintiff. See, for example, Exhibit G, which is a true and correct copy of a letter from Roger S. Moseley to Thomas Riddle dated April 25, 2003, and Exhibit H, which is a letter from Thomas Riddle to Roger S. Moseley dated April 29, 2003. By depriving Plaintiff of the ability to maintain even a basic existence, Defendant City and County left Plaintiff with no choice but to agree to resign from employment with the City. Plaintiff's alleged resignation came eleven months after Defendants forced him out of his job. Thus, the voluntariness of Plaintiff's resignation is a factual issue for determination by a jury.

20, 2004, and, therefore, was not constructively discharged, Defendants could have and should have made this argument prior to the May 2006 substantive motions deadline. Furthermore, Defendants now appear to be raising certain affirmative defenses for the first time on the eve off trial. Rule 8(c) of the Federal Rules of Civil Procedure requires that a responsive pleading must set forth certain enumerated affirmative defenses and/or any other matter constituting an avoidance or affirmative defense. Failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case. Tancredi v. Dive Makai Charters, 823 F. Supp. 778 (D. Haw. 1993). Here, Defendants' failure to plead certain affirmative defenses relating to the Worker's Compensation Settlement preclude them from now raising them. Thus, good cause would not exist to extend the deadline to file substantive motions.

Further, the Worker's Compensation Settlement settled only those claims under Haw. Rev. Stat. chapter 386. See Exhibit I, ¶¶6, 8 and 10. Plaintiff specifically reserved his right to bring other non-worker's compensation claims against the Defendant City and County. Id. at ¶12. Further, according to the terms of the Worker's Compensation Settlement, the parties were not bound by the

factual stipulations[8] in the clearly contemplated future litigation as to other non-worker's compensation claims, like those in this action:

> It is expressly agreed by the parties that the determination herein that Claimant sustained a stress-related psychic injury on or about January 30, 2003 by accident arising out of and in the course of his employment with Employer <u>is without prejudice to either party with respect to any future non-worker's compensation proceedings and the parties are not precluded from litigating issues regarding the nature, scope and cause of Claimant's stress and/or psychic injuries in any non-workers' compensation proceeding</u>.

<u>Id</u>. (emphasis added).

As previously mentioned, the Worker's Compensation Settlement's requirement that Plaintiff resign is only one event of many that form the basis of Plaintiff's Unlawful Discrimination and Retaliation claim. Defendants engaged in numerous acts of discrimination and retaliation against Plaintiff. Defendant City and County's longstanding practice and policies of discriminating against whistleblowers like Plaintiff are well-known and well-documented. For example, in July of 1996, the Executive Director and Legal Counsel for the City and County of Honolulu Ethics Commission made the following statements regarding widespread fear of retaliation for whistle blowing at the City and County of Honolulu:

---

[8] For example, in order to effectuate the parties' agreement that Mr. English retain all amounts of temporary disability insurance and worker's compensation proceeds received to at the time of the agreement, Defendant City and County of Honolulu stated that the Worker's Compensation Agreement would have to contain a recitation that Plaintiff did not sustain any temporary disability under HRS 386-31(b) as a result of the January 30, 2003 claim of injury. <u>See</u> Exhibit J, which is a true and correct copy of a letter from Paul Au to Roger S. Moseley dated December 23, 2003.

. . . .

> [S]everal times per year I receive anonymous phone calls, usually from City employees, inquiring whether some action is a violation of the ethics laws. In these cases, they have observed an action taken by a City officer or employee that they believe is wrong. If I need to do some research before I can answer their question, these persons are often unwilling to give me even their first name and phone number. <u>Because of their fear of repercussions, I have had people only willing to call me back at a specified time, rather than have me contact them</u>.
>
> Related to this concern, let me share a particularly shocking conversation I had several years ago. An appointed City employee complained to me about pressure that was being put on her by her superiors to support the campaign of a person running for City office. When I asked her to file a complaint so that the Ethics Commission could investigate it, she responded, "<u>No way! I'm not going to put my pension in jeopardy</u>." I told her that the Ethics Commission has subpoena power and could compel her to testify. Her answer to that was, "<u>Go ahead. I'll lie under oath before I'll risk my job</u>." <u>That incident is indicative of the level of fear that I have observed over the years on the part of some City Employees</u>.
>
> Third, during some phone conversations with anonymous person, I have listened to allegations such as, "<u>If I put this in writing, I know how things work in the City</u>. I know people will find out that I'm the one who's filed a complaint." . . . .
>
> . . . .

See Exhibit K, Declaration of Leslie H. Kondo, Exhibit 3 (Emphases added.)

Plaintiff's Unlawful Discrimination and Retaliation claim is at least the eighth whistleblower case against Defendant City and County of Honolulu since 2000. See Exhibit L - Complaint; Demand For Jury Trial; Summons in CV00-0039 HG BMK – <u>Sun v. City and County of Honolulu, et al</u>; see Exhibit M - Complaint; Demand For Jury Trial; Summons in.CV00-00729 SOM LEK –

Kamakana v. City and County of Honolulu, et al; see Exhibit N - Complaint; Demand For Jury Trial; Summons in Civ. No. 02-1-1394-06 – Mersburgh v. Salas, et al; see Exhibit O - Complaint; Demand For Jury Trial; Summons in CV02-00622 DAE KSC – Wiggins v. City and County of Honolulu, et al.; see Exhibit P - Complaint; Demand For Jury Trial; Summons in CV04-00086 SPK LEK – Shannon v. City and County of Honolulu, et al; and see Exhibit Q - Complaint; Demand For Jury Trial; Summons in Civ. No. 04-4-0910-05 (DDD) – Whang v. City and County of Honolulu, et al; and see Exhibit R - Complaint; Demand For Jury Trial; Summons in Civ. No. 05-1-1721-09 BIA – Olipares v. City and County of Honolulu. In addition, cases not yet filed further evidence Defendant City's patterns and practices of maligning and discrediting whistle blowers, similar to what happened to Mr. English. See Exhibit S, Article – "Ethics Commission Clears Whistleblower of Complaints" dated August 2, 2006.

For these reasons, Wittig fails to provide any justification to allow for extending the dispositive motions deadline. Legally and factually, a motion for summary judgment based on Wittig cannot be granted.

### C.   Plaintiff Will Be Prejudiced If the Substantive Motions Deadline is Extended.

Defendants seek an extension of the substantive motions deadline to allow for the filing of such motion up to and including September 12, 2006. Defendants also seek to have such motions heard on the same schedule as the motions in

limine, which means that the substantive motion will not be heard until the Thursday before trial. To allow such an extension would substantially prejudice Plaintiff. Pursuant to the Amended Rule 16 Order there are a significant number of pretrial deadlines that must be met in the month leading up to trial. To require Plaintiff to prepare for trial, while at the same time having to defend against one or more substantive motions, which would be heard on an expedited basis where Plaintiff would only have seven days to respond instead of the usual eighteen, creates substantial prejudice, detrimentally affecting not only the Plaintiff, but the Court itself, as Plaintiff is unable to devote its full attention to trial preparation. Further, the filing of such a motion during the pendency of court-ordered mediation evidences bad faith, as it is unlikely that Defendants will continue to mediate with the possibility that such substantive motions could be granted.

### III.  CONCLUSION

Based on the foregoing, Defendants Motion to Extend should be denied.

Dated: Honolulu, Hawaii, September 6, 2006.

                                            ROGER S. MOSELEY
                                            CHRISTOPHER J. MUZZI
                                            RENEE M. FURUTA
                                            Attorney for Plaintiff
                                            PHILIP E. ENGLISH