50.  Sometime on or after August 14, 2002, Plaintiff contacted an FBI Agent to complain of the illegal activities occurring at the Assessment Division.  At this contact, Plaintiff was informed that unless there was some evidence of illegal campaign contributions, Plaintiff would have to go to the City Prosecutor with his complaint, and that the FBI was essentially too busy with illegal campaign contribution investigations to investigate Plaintiff's complaints.

51.  On August 15, 2002 at 5:57 P.M., Plaintiff was notified by Defendant Kurokawa that Plaintiff's "probationary period" was being extended three months.  Plaintiff contacted the union about this development but there was essentially no action until a November of 2002.

52.  In or about August or September of 2002, Defendant Magota, in a meeting of some of the staff of the Assessment Division, told the attendees, that Plaintiff was "Wacko".

53.  In approximately the same time period, Defendant Magota in a lunch meeting with an outside private appraiser, advised that appraiser that Plaintiff was causing all kinds of trouble at the Assessment Division.

54.  In or about October 2002 Defendant Gima denied Plaintiff leave for scheduled appointments with physicians for a broken foot and for kidney cancer follow-up.  While Plaintiff was forced to reschedule the follow-up appointment for his kidney cancer, he did keep the appointment for the

broken foot, as he understood that this appointment should not be changed and he misunderstood Defendant Gima's directions. This was the incident for which disciplinary action was threatened in February of 2003, after Defendants learned of Plaintiff's contact with the Ethics Commission.

55. On or about November 22, 2002, a meeting was held in which Defendant Kurokawa, Defendant Gima, the union agent, and Plaintiff were in attendance. At this meeting Defendant Kurokawa stated that that the negative actions in Plaintiff's file could have been much worse, that Plaintiff owed his job to Defendant Kurokawa, that everyone should just "forget about" the whole situation, that he could have Plaintiff transferred to another jurisdiction (Big Island), and that Plaintiff may be assigned to work directly for Defendant Magota, or transferred to the Kapolei office (which Defendant Kurokawa knew would be a substantial hardship because Plaintiff bicycled to work). Plaintiff regarded these comments as intimidating and exceedingly threatening and as intended to be a display of Defendant Kurokawa's power over Plaintiff, not just in the sense of his employment, but also in a more general "political" sense. At this meeting Plaintiff was not allowed to inquire about the reason for and motivation behind the retaliatory actions against him, despite repeated attempts to do so.

56.    Immediately after this November 2002, meeting, the union agent met with Plaintiff and advised Plaintiff that he was a friend of Defendant Kurokawa's and that he would testify against Plaintiff if the matter were litigated.

57.    On January 3, 2003, Plaintiff met with the Executive Director and Legal Counsel for the Ethics Commission of the City and described many of the activities set forth in this complaint, including, but not limited to, the fact that a City employee was doing work for Defendant Kurokawa's private appraisal firm, on City time and with City equipment.

58.    On or about January 17, 2003, Plaintiff applied for a supervisory position and went through the interview process. Much earlier, Plaintiff had been encouraged by Defendant Magota to apply for the position and was told that there was a need for supervisors and that Plaintiff was qualified. After the interview process, Plaintiff was informed, by a Deputy Corporation Counsel assigned to the Assessment Division that no other applicant even came close to Plaintiff's qualifications for the supervisor job. However, another applicant was selected for the job.

59.    On or about January 7 and 10, 2003 Plaintiff spoke with the City appraiser who had been doing the private work for Defendant Kurokawa and advised him of Plaintiff' s visit with the Executive Director of

the Ethics Commission and advised the employee to go talk to the Ethics Commission and to tell the truth.

60.    On or about January 21, 2003 Plaintiff was advised by a Deputy Corporation Counsel that the "word is out" not to talk to Plaintiff because he might be "wearing a wire".

61.    On or about January 22, 2003, Plaintiff caused a formal complaint to be filed with the Ethics Commission.  This formal complaint included, inter alia, allegations regarding:

(a)    the use of City employees, on City time, with City equipment, for outside private business;

(b)    the granting of improper property tax exemptions to the Assessment Division Administrator;

(c)    the rewarding of a high level supervisor for his role in keeping the theft of City time and services quiet;

(d)    the retaliation against Plaintiff and the tarnishing of Plaintiff's reputation in the community, because of his questioning the improper use of City personnel and equipment and because of his questioning the propriety and reliability of the methodology and systems used by the Assessment Division; and

(e)    the mailing out of assessment notices, which are known to be false, and which result in the collection of taxes that taxpayers do not owe, in violation of Federal mail fraud and racketeering laws.

62.    On or about February 5, 2003, the Executive Director and Legal Counsel for the Ethics Commission informed Defendant Kurokawa, by

email, that Plaintiff had made a complaint against Defendant Kurokawa, as well as against the City employee doing the work for Defendant Kurokawa, that than investigation was being conducted, and that Plaintiff should be removed from any cases upon which Plaintiff's counsel represented taxpayers (this included the Waikiki Shore litigation).

63.    On or about February 5, 2003, Defendant Magota requested a meeting with Plaintiff and, at that meeting, Plaintiff was informed by Defendant Magota that there was a pending disciplinary action against Plaintiff for taking "unauthorized leave" in October of 2002.

64.    On or about February 6, 2003, Defendant Gima requested that Plaintiff write a letter to taxpayers making it appear that the Assessment Division had done nothing wrong, in an instance where the Assessment Division had used a faulty basis for establishing fee simple valuations in certain condominiums.   Plaintiff refused to write the letter in such a misleading fashion.

65.    On or about February 7, 2003, Defendant Kurokawa emailed Plaintiff with questions about his "serious allegations of ethical misconduct". Plaintiff viewed this email as hostile and as a threat.  Plaintiff felt extremely threatened and intimidated and did not respond to this email.

66.    On or about February 10, 2003, a co-worker of Plaintiff filed a "Confidential Workplace Violence Report" against Plaintiff, alleging that

Plaintiff was "back stabbing" the appraiser who was the subject of Plaintiff's complaint of illegal activities and that Plaintiff's co-workers were "scared" of him.

67.   On or about February 12, 2003, the employee who had been doing the private work for Defendant Kurokawa filed a "Confidential Workplace Violence Report" against Plaintiff, alleging that Plaintiff verbally threatened him and intimidated him on January 17, 2003 and January 22, 2003.

68.   On or about mid-February, 2003, Defendant Gima, to the best of Plaintiff's information and belief, also filed "Confidential Workplace Violence Report" against Plaintiff.

69.   To Plaintiff's knowledge the complaint to the Ethics Commission is still being investigated, but the City has not provided enough funding or resources for the Ethics Commission to actually conduct a through and complete investigation of this and other matters.   The funding to the Ethics Commission is intentionally calculated by the City to make it ineffective in the execution of its duties of investigating complaints, reporting its findings, and recommending appropriate disciplinary actions.

70.   The personal and official treatment accorded Plaintiff after he made the written complaint on February 15, 2002, was harsh and substantially   different   from   the   treatment   accorded   others   in   the

Assessment Division.  For example, some appraisers were allowed to take vacation leave during the height of the busy season, some appraisers were apparently not disciplined for activities such as leaving work during business hours to watch sporting events on television at a neighboring bar, or not disciplined for hit and run auto accidents with City vehicles, or not disciplined for failing to appear for Board of Review hearings due to hangover, or not disciplined for having a second, outside job, during City work hours.  Plaintiff was shunned by supervisors and other employees in the Assessment Division; physically threatening remarks were made, such as "I hope you have an escape plan if your boat sinks".  Some supervisors and others refused to help Plaintiff with any problems or questions and refused to provide information and direction.  Defendant Gima instructed Plaintiff not to call her by her nickname, as only her friends were allowed to do that, even though Defendant Gima appeared to be commonly addressed by her nickname by all others in the Assessment Division.

71.    As a direct result of the harassment/retaliation, and the other actions of Defendants described herein, to which Plaintiff was subjected, Plaintiff  suffered actual physical injury, such as the inability to sleep, lack of energy, and weight loss, and Plaintiff first sought medical treatment for this injury on January 30, 2003.

72.   On or about February 27, 2003, Plaintiff was advised by a City official of an investigation of Plaintiff concerning reported violation of the City workplace violence policy.

73.   As a direct result of the harassment/retaliation, and the other actions of Defendants described herein, to which Plaintiff was subjected, Plaintiff suffered severe emotional and mental distress and injury, and Plaintiff first sought medical treatment for this injury on February 27, 2003.

74.   On February 27, 2003, Plaintiff was advised by his physician not to go back to work and Plaintiff has not worked since that time.

75.   On February 28, 2003, the City was notified as to Plaintiff's condition, through a workers' compensation claim, and on March 18, 2003 Plaintiff was notified that the City had arranged an independent examination of Plaintiff on Friday, April 18, 2003.

76.   On or about March 12, 2003, the City official investigating the workplace violence claims, issued a report, which compared Plaintiff to Byron Uyesugi (Xerox case) and concluded that Plaintiff's "work performance may be less than satisfactory and his behavior inappropriate and/or insubordinate requiring administrative action." This report caused substantial additional injury to Plaintiff.

77.   On or about April 16, 2003, Plaintiff received notification (dated April 9, 2003) from Defendant Magota that there would be a meeting on

April 17, 2003 for the purpose of discussing Plaintiff's annual performance review.

78.    On April 16, 2003, the City was notified that such a meeting and performance review were inappropriate and a senseless exacerbation of the damage being done to Plaintiff.

79.    On April 17, 2003, Plaintiff was advised that the performance review would be put "on hold until after [Plaintiff's] workers' compensation matter is addressed".

80.    On April 30, 2003, the City workers' compensation administrator wrote that "both Dr. Kennedy and I are concerned with Mr. English's mental state, especially considering his past history of multiple suicide attempts or ideation.  His stress has reached a crisis level and only seems to be getting worse."  On the very same day, Plaintiff received an " Annual Performance Evaluation Report", dated April 22, 2003.  This report rated Plaintiff "substandard" in all but two categories and gave Plaintiff an "overall evaluation" of "substandard".   Further, the report contained an extensive narrative, which substantially misrepresented Plaintiff's work performance and abilities.   The preparation and sending of this report, signed by both Defendant Gima and Defendant Magota was intentional and knowingly calculated to cause further substantial injury to Plaintiff.

81.    The acts of Defendants complained of herein have resulted in substantial injury and damage to Plaintiff, including, but not limited to: actual physical pain and suffering, severe emotional and mental distress, loss of personal, professional and financial reputation, loss of employment, loss of his professional career, and termination of Plaintiff's marriage.

82.    Defendant City has a pervasive history and pattern of conduct retaliating against whistleblowers and employees who have engaged in protected activity, including, but not limited to, free speech by expressing concerns about illegal activities, government waste, corruption, hazardous activities, and matters of public concern occurring at the City.  In at least six recent whistleblower lawsuits, other than Plaintiff's present suit, the City has supported and defended the actions of City officers and employees who retaliated against whistleblowers and others exercising their rights to free speech and by failing to protect whistleblowers and others from retaliation.  While in each of the referenced lawsuits the City either settled the case or has had a jury verdict rendered against it, the City has taken no action to protect whistleblowers or others exercising their rights to free speech.  In July 2003, the City settled a whistleblower lawsuit filed by a former City Liquor Inspector.  In December 2003, the City again settled another whistleblower lawsuit filed by a Honolulu Police Department veteran officer.  In August 2005, a jury verdict was rendered in favor of a

former City painter for damages in the amount of $1.5 million dollars.

83.    As earlier as July 15, 1996 the legal counsel for the Ethics Commission wrote to the State Office of Information Practices describing the generalized fear of retaliation which existed in the City, in the most graphic terms:

> ("Because of their fear of repercussions, I have had people only willing to call me back at a specified time, rather than have me contact them.
> Related to this concern, let me share a particularly shocking conversation I had several years ago.   An appointed city employee complained to me about pressure that was being put on her by her superiors to support the campaign of a person running for City office.  When I asked her to file a complaint so that the Ethics Commission could investigate it, she responded, "No way!  I'm not going to put my pension in jeopardy."  I told her that the Ethics Commission has subpoena powers and could compel her to testify.  Her answer to that was, "Go ahead! I'll lie under oath before I'll risk my job."  That incident is indicative of the level of fear that I have observed over the years on the part of some City employees.)  Plaintiff proposed Exhibit 1001, letter dated July 15, 1996 from Carolyn L. Stapleton, legal counsel, Ethics Commission to Moya T. Davenport Gray, Director, Office of Information Practices.

84.    Despite the obvious pervasive nature of retaliation against whistleblowers and others exercising their rights to free speech, the City has not enacted any ordinance, promulgated any regulation, or instituted any policy or procedure designed to protect whistleblowers or others exercising their rights to free speech.   Nor has the City instituted any program of training for whistleblowers or officers and managers in the City

regarding the rights of employees to blow the whistle and regarding the duty not to retaliate. Nor has the City taken any actions to discipline those who have retaliated against whistleblowers. By failing to act in the face of a plainly pervasive problem, the City has evidenced a policy of encouraging retaliation against whistleblowers and has evidenced at least a deliberate indifference to Plaintiff's constitutional rights and those of other whistleblowers.

VI.    Relief Prayed

1.    General and special damages in amounts to be proven at trial.

2.    Punitive damages as to Defendants GK Appraisals, Inc., Ann Gima, Gary Kurokawa and Robert Magota.

3.    Attorneys' fees, costs of suit, pre-judgment and post judgment interest.

VII.    Points of Law

1.    Count I – Violation of Civil Rights, 42 U.S.C. § 1983. See also Monell v. Dept. of Social Services, 436 U.S. 658 (1978)(local governmental bodies such as counties and municipalities are considered "persons" under §1983 and may be sued under that statute); Lytle v. Carl, 382 F.3d 978 (9th Cir. 2004)(city's liability under §1983 may be premised on three theories (1) that a City employee was acting pursuant to an expressly adopted policy; (2) that a City employee was acting pursuant to a long-standing custom or

practice; and 93) that a City employee was acting as a "final policy maker").

Defendants, under color of statutes, ordinances, regulation, customs, or usages of the State of Hawaii, or the City and County of Honolulu, subjected Plaintiff to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States, including but not limited to, violation of Plaintiff's right to free speech, due process of the law, equal protection of the law, and the enjoyment of his civil rights.

Defendant City and County has recently raised <u>Garcetti v. Ceballos</u> 126 S.Ct. 1951 (2006). It is respectfully pointed out that Garcetti is not applicable as City can demonstrate no official "duty" arising out of Plaintiff English's employment, to report the wrongdoings which he reported. Plaintiff English was clearly acting on a moral imperative to exercise his first amendment rights.

2.    Count IV – Unlawful Discrimination and Retaliation, Hawaii Revised Statutes §378-62.    Defendants constructively discharged, threatened, retaliated and/or otherwise discriminated against Plaintiff, in violation of Hawaii Revised Statutes §378-62 regarding Plaintiff's compensation, terms, conditions, location, or privileges of employment because of Plaintiff's unwillingness to condone improper and/or criminal activities and because Plaintiff came forward and brought these activities to

the attention of the City's personnel, the Ethics Commission and other individuals, entities and agencies.

3.      Count V – Willful, Wanton and Reckless Conduct.   Plaintiff suffered injuries and damages and Defendants' wrongful conduct was a direct and proximate cause of Plaintiff's injuries and damages pursuant to Iddings v. Mee-Lee, 82 Haw. 1 (1996).

4.      Count VI – Intentional Infliction of Emotional Distress. Defendants knowingly and intentionally caused severe emotional or mental distress to Plaintiff and Defendants are liable for damages suffered as a result of the wrongful conduct.

5.      Count VII – Negligent Infliction of Emotional Distress.   See Iddings v. Mee-Lee, 82 Haw. 1 (1996), Calleon v. Miyagi, 76 Haw. 310, 976 P2d. 1278 (1994), Hun v. Center Properties, 63 Haw. 273, 626 P2d, 182 (1981).  Defendants negligently caused emotional distress to Plaintiff and he suffered injuries, including actual physical injury and pain.

6.      Count VIII – Defamation.   See Gold v. Harrison, 88 Haw. 94, 962 P.2d 353 (1998).  Defendants intentionally and knowingly published and made false statements, to third-parties, which were intended to and did harm the reputation of Plaintiff English in the community and/or deter others from associating with him.

7.    Count IX – Interference with Contractual Relations.  See <u>Lee v. Aiu</u>, 936 P.2d 655 (Haw. 1997).  Defendants, intentionally and knowingly interfered with, and eventually damaged and destroyed, all of Plaintiff's rights under his employment contract with the City.

8.    Count X – Interference with Prospective Business Advantage.  See <u>Robert's Hawaii School Bus, Inc. v. Laupahoehoe, Transp. Co., Inc.</u>, 91 Haw. 224, 982 P.2d 853 (1999).  Plaintiff English had a contractual employment relationship with the City, as well as the prospects for future advancement at the city and/or other additional economic advantage to be gained and Defendants, intentionally and knowingly interfered with, and eventually damaged and destroyed, all of Plaintiff's rights and prospects for future advancement and/or other additional economic advantage to be gained.

9.    Count XI – Violation of Rights under the Hawaii Constitution.  Defendants violated Plaintiff's rights secured to him by the Constitution of the State of Hawaii, including, but not limited to, due process of law, freedom of speech, equal protection of the law and enjoyment of his civil rights and Plaintiff suffered injuries and damages.

10.    Count XII – Punitive Damages.  <u>Masaki v. General Motors Corp.</u>, 71 Haw. 7, 780 P.2d 566 (1989).  Defendants acted intentionally, wantonly, willfully, and oppressively, with such malice as implies a spirit of

mischief, and with conscious indifference to the consequences of their acts and the Defendants' acts are characterized by aggravating circumstance sufficient to justify imposition of punitive or exemplary damages.

VIII.    Previous Motions

1.    Defendant GK Appraisals, Inc.'s Motion for Summary Judgment filed on September 13, 2005.  By Order of the Court on December 15, 2005, Defendant GK Appraisals, Inc.'s Motion is granted as to Count I, Count II, Count III, Count IV, Count V and Count VIII of Plaintiff's Complaint.  Defendant GK Appraisals, Inc.'s Motion is denied as to Count VI, VII, IX, X and XII of Plaintiff's Complaint.  Defendant GK Appraisals, Inc. withdrew its motion as to Count XI of Plaintiff's Complaint.

2.    Defendant City and County of Honolulu's Motion for Partial Dismissal, or in the alternative, Motion for Partial Summary Judgment filed on September 14, 2005.  By Order of the Court on December 15, 2005, Defendant City and County of Honolulu's Motion is granted as to Count I, Count II, Count III, Count V, Count VII and Count XII of Plaintiff's Complaint.

3.    Defendants Gary Kurokawa, Ann Gima and Robert Magota's Motion for Partial Dismissal, or in the alternative, Motion for Partial Summary Judgment filed on September 14, 2005.  By order of the Court on December 15, 2005, Defendants Gary Kurokawa, Ann Gima and Robert

Magota's Motion is granted as to Count II, Count III, Count VII (granted to the extent the NIED claim is asserted against individual Defendants for actions they took in their capacities as employees of the City but denied to the extent the NIED claim is asserted against Defendant Kurokawa for actions he may have taken in his capacity as an officer or shareholder of GK Appraisals, Inc.

4.    Defendant City and County of Honolulu's Motion for Partial Dismissal, or in the alternative, Motion for Partial Summary Judgment filed on May 3, 2006.    Defendant City and County of Honolulu's Motion is granted as to Count X of Plaintiff's First Amended Complaint.

5.    Defendants Gary Kurokawa, Ann Gima and Robert Magota's Motion for Partial Dismissal, or in the alternative, Motion for Partial Summary Judgment filed on May 3, 2006.    Defendants Gary Kurokawa, Ann Gima and Robert Magota's Motion is granted as to Count IX and Count X of Plaintiff's First Amended Complaint.

6.    Defendant City and County of Honolulu's Motion for Protective Order filed on June 15, 2006.    Court grants Defendant's Motion on July 20, 2006.

7.    Defendant City and County of Honolulu's Motion for Rule 11 Sanctions filed on July 5, 2006.    Defendant City and County of Honolulu withdrew its Motion.

8.    Plaintiff Philip E. English's Motion to Compel Compliance with Subpoena issued June 2, 2006 filed on July 5, 2006.  At this time, no decision is issued as matter has been taken under advisement by this Court on August 10, 2006.

IX.    <u>Witnesses to be Called</u>

1.    Plaintiff Philip E. English, said witness is expected to testify regarding liability and damages.

2.    Representative(s), Defendant City and County of Honolulu, said witness is/are expected to testify regarding liability and damages.

3.    Defendant Gary Kurokawa, said witness is expected to testify regarding liability and damages.

4.    Defendant Ann Gima, said witness is expected to testify regarding liability and damages.

5.    Defendant Robert Magota, said witness is expected to testify regarding liability and damages.

6.    Representative(s), Defendant GK Appraisals, Inc., said witness is/are expected to testify regarding liability and damages.

7.    Susan Bender, said witness is expected to testify regarding liability and damages.

8.    Suzanne Foumai, said witness is expected to testify regarding liability and damages.

9.    Michael Golojuch, said witness is expected to testify regarding liability.

10.    Christopher Graff, said witness is expected to testify regarding liability.

11.    Randal Hiraki, said witness is expected to testify regarding liability and damages.

12.    Anne Horne, said witness is expected to testify regarding liability and damages.

13.    Dwight Ishiguro, said witness is expected to testify regarding liability.

14.    Pauline Iwamoto, said witness is expected to testify regarding working with Plaintiff and observations and interactions with Plaintiff, liability, damages and other relevant matters.

15.    Annette Kabasawa, said witness is expected to testify regarding liability and damages.

16.    Carole Kamisato, said witness is expected to testify regarding liability and damages.

17.    Linda Knowles, said witness is expected to testify regarding liability and damages.

18.    Violet Lee, said witness is expected to testify regarding liability and damages.

19.  Wilfred Martin, said witness is expected to testify regarding liability.

20.  David Matsunami, said witness is expected to testify regarding liability.

21.  Kevin Mulligan, said witness is expected to testify regarding liability and damages.

22.  Lillie Mundon, said witness is expected to testify regarding liability and damages.

23.  Mike Okamoto, said witness is expected to testify regarding liability and damages.

24.  Frank Ramil, said witness is expected to testify regarding liability and damages.

25.  Thomas Riddle, said witness is expected to testify regarding liability and damages.

26.  Sathiporn Songsorn, said witness is expected to testify regarding damages.

27.  Julie Tamayori, said witness is expected to testify regarding liability.

28.  Walen Toma, said witness is expected to testify regarding liability and damages.

29.    Charles Totto, said witness is expected to testify regarding liability.

30.    Steven Yee, said witness is expected to testify regarding liability.

31.    Norman Yoshida, said witness is expected to testify regarding working with Plaintiff and observations and interactions with Plaintiff, liability, damages and other relevant matters.

32.    Marvin Abing, said witness is expected to testify regarding liability and damages.

33.    Michelle Muraoka, said witness is expected to testify regarding working with Plaintiff and observations and interactions with Plaintiff, liability, damages and other relevant matters.

34.    Joan Koff, Kaiser Permanente, said witness is expected to testify regarding liability and damages.

35.    James Love, Kaiser Permanente, said witness is expected to testify regarding liability and damages.

36.    Susan Siu, said witness is expected to testify regarding practice of City with respect to the filing of workplace violence reports against whistleblowers.

37.   Thelma Kurokawa, will testify concerning the absence of culpable acts by defendant GK Appraisals, inc. and other matters relating to liability and damages.

38.   Dr. Gerald L. Coffee, Jr., 4068 Round Top Drive, Honolulu, Hawaii 96822; said witness is expected to testify regarding liability and damages.

39.   Representative, City and County of Honolulu, said witness is expected to authenticate documents from and with respect to the City and County of Honolulu.

40.   Gordon Kurokawa, will testify concerning the absence of culpable acts by defendant GK Appraisals, inc. and other matters relating to liability and damages.

41.   Dr. Reneau Kennedy, 3001 Diamond Head Road, Honolulu, Hawaii 96813; said witness is expected to testify regarding examination, diagnosis, liability, causation, damages and other relevant matters.

42.   Darryl Matthews, M.D., Ph.D., Hawaii Forensic Associates, LLC, 345 Queen Street, Suite 900, Honolulu, Hawaii 96813; said witness is expected to testify regarding his examination of Plaintiff, diagnosis, liability, causation, damages and other relevant matters.

43.  Paul Au, Deputy Corporation Counsel will testify regarding settlement negotiations pertaining to Plaintiff English's workers' compensation claim and other matters regarding liability and damage.

44.  Roy Amemiya, Jr., said witness is expected to testify regarding working with Plaintiff and observations and interactions with Plaintiff, liability, damages and other relevant matters.

45.  Ryan Fujitani, said witness is expected to testify regarding working with Plaintiff and observations and interactions with Plaintiff, liability, damages and other relevant matters.

46.  Gary Kubota, said witness is expected to testify regarding working with Plaintiff and observations and interactions with Plaintiff, liability, damages and other relevant matters.

47.  Bruce Palenske, said witness is expected to testify regarding working with Plaintiff and observations and interactions with Plaintiff, liability, damages and other relevant matters.

48.  Thomas Ueno, CPA, 844 Queen Street, Honolulu, Hawaii 96813; said witness is expected to testify as a financial and economic expert regarding his analysis of Plaintiff's financial affairs and records and other matters relating to liability and damages.

49.  Thai Translator – to be identified.

50.   Georgette Wong, said witness is expected to testify regarding working with Plaintiff and observations and interactions with Plaintiff, liability, damages and other relevant matters.

51.   Michael Kim, said witness is expected to testify regarding working with Plaintiff and observations and interactions with Plaintiff, liability, damages and other relevant matters.

52.   Eugene Shito-Leong, said witness is expected to testify regarding working with Plaintiff and observations and interactions with Plaintiff, liability, damages and other relevant matters.

53.   Keith Yamashita, said witness is expected to testify regarding working with Plaintiff and observations and interactions with Plaintiff, liability, damages and other relevant matters.

54.   Witnesses to authenticate documents from and with respect to various entities.

55.   Gordon Nelson, said witness is expected to authenticate documents.

56.   Leslie Kondo, said witness is expected to authenticate documents

X.    Exhibits, Schedules and Summaries

See Exhibit A.

XI.    Further Discovery or Motions

Plaintiff English will notice or has noticed the following oral depositions:

1.    Ann Gima

2.    Mike Golojuch

3.    Thomas Riddle

4.    Walen Toma

5.    Susan Bender

6.    Charles Totto (continued deposition)

7.    Violet Lee

8.    Randall Hiraki

9.    Anna Horne

10.    30(b)(6) Representative of the City & County of Honolulu.

II.    Stipulations

1.    Parties have informally agreed to exceed ten depositions under Rule 30 of the Federal Rules of Civil Procedure pursuant to Rule 29 of the Federal Rules of Civil Procedure.

2.    Parties have stipulated to extend the discovery cut off deadline to September 1, 2006, and have agreed to further deposition beyond that date because of necessity.    Presently the latest deposition is set for September 25, 2006.

XIII.    Amendments, Dismissals

A.    Pleadings

1.      Plaintiff English filed his First Amended Complaint on January 12, 2006.

2.      Defendant City and County of Honolulu filed its Answer to Plaintiff's First Amended Complaint on January 27, 2006.

3.      Defendant Gary Kurokawa, Ann Gima and Robert Magota filed their Answer to Plaintiff's First Amended Complaint on January 27, 2006.

4.      Defendant GK Appraisals, Inc. filed its Answer to Plaintiff's First Amended Complaint on April 6, 2006.

B.      Claims – see section VII above regarding claims disposed of by motion.

XIV.  Settlement Discussion

Plaintiff has offered to settle separately with Defendant GK Appraisals, Inc. for its policy limit believed to be $1 million. This offer was rejected and countered with a $5,000 offer. Plaintiff rejected the counteroffer.

Defendant City and County apparently has an applicable policy with limits of $20,000,000.

Defendant Gary Kurokawa apparently has a $300,000 policy which may be applicable.

None of the other Defendants have offered any amount to settle this matter with them.

Plaintiff English has offered to settle separately with Defendant City for $5 million plus an investigation into his allegations with the Ethics Commission. This offer expired and is no longer available.

Plaintiff English offered to settle separately with Defendant Magota for $500,000 plus his cooperation with any investigation. This offer has expired and is no longer available.

Plaintiff English offered to settle separately with Defendants Ann Gima and Gary Kurokawa for $1 million each. This offer has expired and is no longer available.

Plaintiff English, through the mediator, Gerald Sekiya, transmitted an offer to settle all claims with all parties for $1,700,000. This offer continues to be outstanding but will be immediately withdrawn if and when the mediation is terminated.

Parties have participated and are continuing to participate in mediation before court appointed Mediator Gerald Y. Sekiya. While Plaintiff continues to negotiate in good faith, the possible settlement of this matter has been greatly reduced as a result of the litigation tactics of the Defendants.

XV.   Agreed Statement

Based upon the discovery conducted to date and the various motions that has been filed by all the parties herein and the positions of the Defendants, an agreed statement of facts does not appear to be feasible.

XVI.  Bifurcation, Separate Trial of Issues

Based upon the discovery conducted to date and the various motions that has been filed by all the parties and the connection of the facts and issues herein, bifurcation does not appear to be feasible or agreeable.

XVII. Reference to Master or Magistrate Judge

Parties have agreed that the entire matter, including trial, will proceed before U.S. Magistrate Judge Kevin S.C. Chang.

XVIII. Appointment and Limitation of Experts

Plaintiff does not see a need at this time for the court to appoint an impartial expert witness.   Also, the parties have disclosed their expert witnesses and it does not appear that any limitation is necessary.

XIX.  Trial

Jury trial of this matter is scheduled to commence on October 3, 2006.

XX.   Estimated Trial Time

Plaintiff estimates he will require at least 14 days for the presentation of his case.

XXI.  Claims of Privilege or Work Product

While not technically claims of privileged work product, there are unresolved issues outstanding with respect to the availability of submissions to the Ethics Commission.

XXII.  Miscellaneous

None at this time, except that discovery is continuing and amendments to this Pretrial Statement may be necessary.

Dated:  Honolulu, Hawaii, September 6, 2006.

ROGER S. MOSELEY
CHRISTOPHER J. MUZZI
RENEE M. FURUTA
Attorney for Plaintiff
PHILIP E. ENGLISH