IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH, | ) CIVIL NO. 04-00108 SOM/KSC |
| Plaintiff, | ) DECLARATION OF<br>) CHARLES W. TOTTO |
| v. | ) |
| CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10, | ) |
| Defendants. | ) |

DECLARATION OF CHARLES W. TOTTO

CHARLES W. TOTTO hereby declares that:

1. I am the Executive Director and Legal Counsel of the Honolulu Ethics Commission (the "Commission").

2. I make this declaration in support of the Memorandum in Opposition to Plaintiff's Motion to Compel Compliance with Subpoena Issued June 2, 2006. This declaration is made upon personal knowledge and I am competent to testify to the matters stated herein.

EXHIBIT "B"

3. When an ethics complaint is filed against a City officer or employee, the officer or employee is entitled to a contested case hearing under Commission Rule 6, Rules of Procedure. Therefore, we investigate and research complaints with the understanding that they may result in a contested case hearing.

4. On January 22, 2003, Philip English filed a complaint with the Commission alleging violations of the City standards of conduct by City employees, EC No. 03-002(w). In my capacity as Legal Counsel to the Commission, I interviewed witnesses and parties to the complaint, reviewed documents, drafted correspondence, conducted legal research and generally analyzed and evaluated the case.

5. I have reviewed each complaint and request submitted by Mr. English or his attorney, Roger Moseley. These cases include: EC No. 03-063(w) alleging that certain members of the Real Property Assessment Division ("RPAD") mailed tax assessments they knew to be inaccurate; EC No. 05-059(w) alleging that RPAD failed to give proper notice of rule making; EC No. 05-159(w) requesting advice regarding whether a former city employee may reveal otherwise confidential City information in another court proceeding; EC No. 06-015(w) a complaint against the City's alleged practice of requiring employees to resign before the City

2

will settle employment cases; EC No. 06-070(w) contending that it was an ethics violation for a City employee to be represented by an attorney involved in this federal court proceeding. Except for EC No. 05-159(w), all the foregoing cases are still open and being investigated by the Commission. In addition, I reviewed and opined on two other matters indirectly related to Mr. English's complaint in EC No. 03-002(w).

6. Until approximately May 2003, I was the sole attorney and investigator working on the complaint, EC No. 03-002(w). At that time, on behalf of the Commission I retained attorney Matthew J. Viola to render legal services in connection with that complaint. Since then, I have retained Mr. Viola on each of the matters described in paragraph 5. Each of these matters fall within the broad scope of the subject subpoena. The services contemplated by Mr. Viola's retainer included conducting witness interviews and documents analysis; researching case law and ethics opinions; drafting correspondence and other communications on behalf of the Commission; providing advice on how to proceed with the investigations; analyzing complaints and requests in light of the applicable facts and the law; and making recommendations on disposition. Mr. Viola was retained in contemplation of taking these matters to hearings before the Commission, if necessary.

7. Mr. Viola and I have had numerous discussions about the cases listed in paragraph 5, including discovery strategy, application of the facts to the relevant law and policy, legal research, witness interviews, draft correspondence and memoranda and recommendations to the Commission.

8. The ethics laws require that City officials exemplify the highest standards of conduct in order to justify the public's trust in the officials. The Commission promotes the public trust by rendering advice to City officers and employees, as well as recommending appropriate discipline of public officials when a violation occurs. The precedent set by disclosing the investigative files, legal research, correspondence, and deliberations of the Commission will undercut the Commission's ability to render opinions and, therefore, weaken public trust.

9. Confidentiality of the Commission's investigative materials (*i.e.*, discovered facts, witness interviews, documents, legal research, recommendations, correspondence, and similar information) is fundamental to ensuring that the Commission can render advice. Without the protection of confidentiality, those requesting advice, complainants, and witnesses will be far less likely to seek advice or cooperate with a Commission investigation because of a fear of

retaliation or retribution by other employees or their agency. This critical need for confidentiality has been recognized by the Hawaii State Office of Information Practices "OIP") in Opinion Letter Nos. 98-1 and 96-2 to the Commission. OIP restricts disclosure of the identities of those requesting opinions, complainants and witnesses in Commission opinions so that the Commission is able to perform its legitimate government function of rendering opinions. Such disclosures would discourage City personnel from requesting opinions and providing information so that the Commission can offer guidance to prevent or correct unethical conduct.

10. Confidentiality of the Commission's investigative files is also important to prevent the disclosure of Commission action involving City officers and employees before the Commission examines the facts and renders an opinion. Premature disclosure would be unfair and could subject a public official to unwarranted censure.

11. As a practical matter, if the Commission's investigative files were disclosed, the Commission would be forced to halt investigations in each case where a party to the Commission's case is also involved in a related civil action. To do otherwise would risk discovery by the parties to the civil action of the Commission's investigative record and/or decision-making process. Under these circumstances, the Commission would have

to wait until the conclusion of the civil case before it could conduct its investigation and render an opinion. Furthermore, the Commission would always run the risk that any case it is investigating would become the basis of a civil suit in which disclosure of the investigative record and decision-making process would be allowed.

I, CHARLES W. TOTTO, declare under penalty of law that the foregoing is true and correct.

DATED: Honolulu, Hawaii, _____July 18, 2006_____.

_____
CHARLES W. TOTTO