IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,<br><br>Defendants. | CIVIL NO. CV04 00108 KSC<br><br>MEMORANDUM IN SUPPORT OF MOTION |

MEMORANDUM IN SUPPORT OF MOTION

Plaintiff has retained Thomas Ueno. to testify at trial concerning issues related to plaintiff's claim for damages. However, Mr. Ueno's opinions are not proper expert opinion.

The leading cases on admissibility of expert opinion pursuant to Rules 701 and 702 of the Federal Rules of Evidence are <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct 2786 (1993) and <u>Kumho Tire Company, Ltd v Carmichael</u>, 526 U.S. 137, 119 S.Ct. 1167 (1999),

In Daubert, the court held that the courts have a "gate keeping" obligation with respect to the admission of so-called "expert opinion." The trial court must determine at the outset whether the proposed expert opinion is based upon sound reasoning and methodology, and whether that reasoning and methodology can be applied to the facts at issue. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 592, 113 S.Ct 2786, 2796 (1993).

The overreaching subject of the inquiry is the evidentiary relevance and reliability of the principles that underlie the proposed expert opinion. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 594, 113 S.Ct 2786, 2797 (1993).

Here, although Mr. Ueno has prognosticated plaintiff's future lost earnings as in excess of $900,000.00 [See generally Exhibits B and C], this prediction was not properly based upon the applicable facts, not based upon sound methodology, and amounts to nothing more than speculation cloaked in the guise of science.

I.   Relevance

First, the proposed expert opinion must be relevant. One aspect of relevance is whether the proffered expert testimony is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. <u>Daubert v.</u>

Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 113 S.Ct 2786, 2796 (1993).

Here, the opinion presented by Thomas Ueno is not sufficiently grounded in the facts of the present litigation to be applicable, or relevant.

First, while Mr. Ueno took plaintiff's claimed occupational skill levels into account, he did not make any assessment of his occupational skill level, or application to those skills to alternative employment. [Exhibit A, deposition of Thomas Ueno, page 19; lines 14-15, page 20, lines 3-10, page 21, lines 2-3].

A. We do not make any assessment as to his skill levels.

Q. None whatsoever?

A. We do not do an independent assessment, no.

[Exhibit A, deposition of Thomas Ueno, page 20, lines 3-10]

Mr. Ueno assumed for the purposes of his calculations that the plaintiff will never earn more than he did in the year 2005, a year during which he worked as a security guard off-and-on part to full time.[1] [Exhibit A, deposition of Thomas Ueno, page 36, line 21 – page 37, line 7]

---

[1] According to employment records, the plaintiff actually worked a 36-40 hour week from April 9, 2005 to July 2, 2005. Then, his employer cut his hours, so the subsequent reduction was not due to the plaintiff's medical/psychiatric condition. Therefore, Mr. Ueno's assumption should be that the plaintiff is capable of working full-time at some kind of employment. [See Exhibit F]

This assumption by Mr. Ueno was based upon a statement by Dr. Reneau Kennedy. [Exhibit A, deposition of Thomas Ueno, page 36, lines 1-23]

However, Mr. Ueno later admitted that Dr. Kennedy said that the plaintiff should not return to his usual and customary duties *at the same workplace*, not that he could not return to work as an appraiser someplace else. [Exhibit A, deposition of Thomas Ueno, page 107, lines 7-20] Indeed, there do not seem to be any medical or psychiatric experts who opine that the plaintiff will never be able to work as an appraiser again. [See Exhibit D Report by Dr. Sordone page 47; and Exhibit E (excerpt of transcript of Dr. Mathews' deposition testimony – page marked 90, lines 4-23)[2]] Nonetheless, Mr. Ueno considered the plaintiff's return to work as an appraiser nothing more than a hypothetical. [Exhibit A, deposition of Thomas Ueno, page 38, line 10 to page 39, line 17]

Mr. Ueno admitted that he was not qualified to determine which, if any, of the medical/psychiatric opinions regarding the plaintiff were correct. [Exhibit A, deposition of Thomas Ueno, page 46, lines 2-17]

Mr. Ueno's opinion incorporates an assumption that the plaintiff would be promoted every few years, and eventually reach the top position in the Real Property Assessment Division. [Exhibit A, deposition of Thomas Ueno, page 51, line 13 to page ] However, Mr. Ueno did not research how promotions are

---

[2] Dr. Mathews is plaintiff's retained psychiatric expert.

-6-

determined at that office. He did not know whether promotions become available based upon some timetable or schedule, whether promotions are based upon positions being vacated, or other promotion criteria that might make plaintiff's reaching the top position unlikely. [Exhibit A, deposition of Thomas Ueno, page 51, line 24 – page 52, line 18]

Adding to the list of speculative assumptions upon which Mr. Ueno's opinion is based, he assumed that the plaintiff eventually would have received a retirement package from the City and County of Honolulu. [Exhibit A, deposition of Thomas Ueno, page 52, lines 19-21] However, Mr. Ueno does not know how long the plaintiff would have to work for the City to qualify for a retirement package. [Exhibit A, deposition of Thomas Ueno, page 52, line 22- page 53, line 3] Moreover, Mr. Ueno did not do any evaluation of the plaintiff's work history to determine whether he had ever held any job for a period of time long enough to qualify for the City's retirement program. [Exhibit A, deposition of Thomas Ueno, page 53, lines 4-8]

Perhaps the crowning glory of Mr. Ueno's speculative assumptions was his assumption concerning the plaintiff's anticipated work-life expectancy and life expectancy in arriving at his opinion. Mr. Ueno assumed a 16.3 year remaining work-life expectancy for the plaintiff based upon tables published by the Bureau of Labor Statistics. [Exhibit A, deposition of Thomas Ueno, page 20, lines

3-10] However, Mr. Ueno did not take into account the plaintiff's history of cancer, history of two suicide attempts, history of depression, or any other risk factors which were likely to make published averages inapplicable. [Exhibit A, deposition of Thomas Ueno, page 56, line 19 – page 57, line 3] Nor did Mr. Ueno seek any opinions from any doctors about the plaintiff's life expectancy or work life expectancy. [Exhibit A, deposition of Thomas Ueno, page 60, lines 4- page 61 line 22]

In United States v. Saya, 961 F.Supp 1395 (D Hawaii 1996), the Court faced an expert whose opinions, like those of Mr. Ueno, were not properly based upon the facts of the case at bar. In Saya, the defendant offered the testimony of Dr. Bussey to the effect that prolonged drug abuse would have impaired the memory of the prosecution's key witness, Alfredo Bunag. However, Dr. Bussy did not conduct any testing of Mr. Bunag, did not observe Mr. Bunag's testimony, did not review recordings of Mr. Bunag's interviews with police. The sole factual basis for Dr. Bussy's proposed testimony was affidavits by two unknown "witnesses" containing hearsay accounts of Mr. Bunag's drug use. The affidavit did not even suggest the amount of substance abuse other than with respect to ice. Id. 1396.

In excluding Dr. Bussy's testimony, the court commented,

Here, Dr. Bussey knows nothing about Bunag's individual characteristics. Accordingly, without some

> consideration of Bunag's characteristics, Dr. Bussey's opinion would be unreliable.

Id. 1397.

In order to be admissible, expert testimony must be based upon facts applicable to the case at bar. In <u>Robinson v. G.D. Searle & Company</u>, 286 F. Supp2d 1216 (N.D. Cal. 2003), the plaintiff's expert opined that the defendant's product had caused certain symptoms in the plaintiff. However, the key factual premise upon which he based his opinions was contradicted by the plaintiff herself. Accordingly, the Court found his testimony and opinion did not have sufficient factual basis. Id. 1221.

Like the opinion excluded in the <u>Saya</u> and <u>Robinson</u> cases, Mr. Ueno's opinion is not sufficiently tied to the applicable and known facts to be either reliable or relevant. Perhaps most startling, Mr. Ueno did not make any effort to obtain a medical or psychiatric opinion about the plaintiffs particular work life expectancy or life expectancy absent the alleged injury. Instead, he based his calculations upon averages, without taking into account the plaintiff's history of kidney cancer, the fact that he has only one kidney, his history of depression, and two suicide attempts.

The District Court for the Eastern District of Louisiana commented on application of published averages when the subject is far from average in <u>Muller v.</u>

Lynes Bros. Steamship Company, Inc. 337 F. Supp 700 (E.D. La. 1972). In factual and legal findings, the court stated:

> Plaintiff has submitted to the Court the 1960 United States Department of Labor mortality tables which indicate that a normal person of plaintiff's age would have a life expectancy of 27.7 years and a work-life expectancy of 20.6 years. These tables have no relevancy whatsoever to the case at bar. Plaintiff, when examined by Dr. Goldman, was found to have the condition of constitutional obesity. Plaintiff's blood pressure was recorded at 260/140 and noted as "grossly abnormal". Dr. Goldman further found that plaintiff smoked excessively (three packs of cigarettes per day) and maintained an excessive intake of beer and alcohol. In consideration of plaintiff's physical condition and the general state of his health (apart from his knee injury), the Court concludes that the Department of Labor mortality tables are of no assistance, and therefore inapplicable, to a determination of plaintiff's life expectancy or work-life expectancy.

Id. 707.

Similarly, the mortality tables relied upon by Mr. Ueno cannot be of any assistance to any reasonable determination of the plaintiff's life or work life expectancy, and Mr. Ueno's opinion is not sufficiently based upon applicable facts to be relevant to the case at bar.

In a pre-Daubert decision, the Court of Appeals for the Third Circuit addressed admissibility of an economist's projection of lost future earning capacity in Benjamin v. Peter's Farm Condominium Owners Association, 820 F.2d 640 (3d Cir. 1987). In Benjamin, the plaintiff's economic expert testified that he did not

have the training in vocational rehabilitation, nor professional knowledge regarding the plaintiff's ability to continue working at a particular job. Accordingly, his testimony was found to be inadmissible.

In this case, deposition testimony reveals that Mr. Ueno's foundational knowledge is similarly lacking:

> Q. And did you ask Mr. English, can you be an appraiser?
>
> A. No, we didn't ask that question.
>
> Q. Why not?
>
> A. We just didn't ask the question. Basically the question I was asking is -- and this is not only of Mr. English, but also of Mr. Moseley -- you know, what -- what is he doing? What is he capable of doing? Basically said he's -- you know, he's doing what he's doing, and that's it.
>
> Q. Certainly Mr. Moseley wasn't rendering a medical opinion as to whether -- or what type of employment Mr. English could do or could not do; correct?
>
> A. He was not rendering -- I don't think he was rendering a medical opinion.
>
> Q. Okay. And my question is, you did not ask Mr. English or anyone else whether Mr. English could do a job as an appraiser; is that correct?
>
> A. That's correct.
>
> Q. And did you ask Mr. English or anyone else whether Mr. English could perform any other job other than as a security guard?
>
> A. Did I ask other people? No.

> Q. Did you ask -- did you review or see anything in any documents that could indicate Mr. English could do something other than as a security guard?
>
> A. What he could do?
>
> Q. Yes.
>
> A. I guess there's suggestions in Sbordone -- Dr. Sbordone's report that he could do other things.
>
> Q. And you do quote from Dr. Kennedy; correct?
>
> A. Correct.
>
> Q. And with regard to Dr. Kennedy's report, it indicates from the part that you quoted that he would not return to his usual and customary duties in the same workplace; correct?
>
> A. That's correct.
>
> Q. But it didn't say that he could not return to those type of duties someplace else other than the City; is that correct?
>
> A. That's correct.

[Exhibit A, deposition of Thomas Ueno, page 106, line 1- page 107 line 15]

Therefore, the predicate for Mr. Ueno's opinion on future lost earnings is that plaintiff cannot work as an appraiser does not have a proper factual relationship to actual facts. Therefore, it is lacking in foundation, is unreliable, and is not relevant to the facts of the case, and therefore, should not be allowed.

II.     Reliability

With respect to reliability, the court enunciated a non-exclusive list of factors to be used in assessing the reliability of the scientific method in question. That list includes: 1) Has the method gained general acceptance in the scientific community; 2) Has the method been subject to peer review and publication; 3) Can it and has the method been tested; 4) Is there any known or potential rate of error – are their standards maintained for controlling the technique. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 593  113 S.Ct 2786, 2796 (1993).

While these four factors are non-exclusive, Mr. Ueno's analysis does not meet any objective tests of reliability. During his deposition, Mr. Ueno testified that he does not know of any tests of the methodology he used:

> *I don't know of any tests, specific tests that have been done on the methodology.* The methodology incorporates, you know, sound specific methods, okay, such as present valuing, such as looking at historical information, okay, and using -- and again, on the assumptions, all the sources that we mentioned. Okay. It incorporates all of that. I don't know of any specific tests that have been made on this methodology. It's commonly used. It's accepted by the courts. You know, we've testified using this methodology many, many times. It's published.

[Exhibit A, deposition of Thomas Ueno, page 29, lines 8-18 (emphasis added)]

-13-

Although Mr. Ueno initially claimed that the methodology he followed had been published, he backed away from this contention:

> Q. How many times has the method -- how many times has the method that you're using been published?
>
> A. Probably thousands and thousands of times.
>
> Q. You say "probably." But how about insofar as your personal knowledge goes, how many times has it been published?
>
> A. All I remember -- well, I don't know. All I can say is thousands and thousands of times because it's been in existence for years and years and years. And it's something that is widely used by CPAs all over the country. So that's all I can tell you. I don't know what their -- you know, the number of their sales are.
>
>    \*  \*  \*
>
> Q. Do you know the date of publication for the peer review that you refer to?
>
> A. No, I don't.
>
>    \*  \*  \*
>
> Q. Let me rephrase my question. Do you know what publication the peer review you're referring to was published in?
>
> A. No, I don't.
>
> Q. Do you know how many pages it was?
>
> A. No, I don't.
>
> Q. Do you know what the conclusion of the peer review you're referring to was?

> A. I know that the -- I have not read the peer reviews. Okay.
>
> Q. Okay. So any conclusion or understanding you might have isn't firsthand as far as what the conclusion of the peer review was?
>
> A. That's correct.

[Exhibit A, deposition of Thomas Ueno, page 30 lines 10-21 and page 33, line 2 (emphasis added)]

Therefore, insofar as Mr. Ueno's methodology does not appear to have been subjected to peer review, has not been tested, and does not have any known or ascertainable rate of error, it fails all objective criteria of reliability and should not be allowed.

DATED: HONOLULU, HAWAII,  Sept. 12, 2006

_____
KEVIN P. H. SUMIDA
ANTHONY L. WONG
Attorneys for Defendant
GK APPRAISALS, INC