# MOSELEY BIEHL TSUGAWA LAU & MUZZI
A Hawaii Limited Liability Law Company

Michael L. Biehl
Alan K. Lau
Roger S. Moseley
Christopher J. Muzzi
Eric H. Tsugawa

ALAKEA CORPORATE TOWER
1100 ALAKEA STREET, 23RD FLOOR
HONOLULU, HAWAII 96813

TELEPHONE: (808) 531-0490
FACSIMILE: (808) 534-0202

Joanna B. K. Fong
Renee M. Furuta

September 2, 2006

**BY FAX AND HAND DELIVERY**

Michael A. Lorusso, Esq.
Fort Street Tower
745 Fort Street, 5th Floor
Honolulu, Hawaii 96813

Anthony L. Wong, Esq.
Dillingham Transportation Building
735 Bishop Street, Ste. 411
Honolulu, Hawaii 96813

Re:   Philip E. English v. City and County of Honolulu et al.
      Civil No.: 04-00108

Mike and Tony,

We respectfully suggest that Mike's client Suzanne Foumai has violated the law and may now be subjected to criminal penalties under HRS§92F-17(b), by the theft of the personal records of Phil English. As you well know, Ms. Foumai, had no authority to make copies of the Assessment Division's records relating to Phil English and then take them home for her own "protection", or for any other reason.

Mike and Ms. Foumai both asserted that she is Mike's client. The City and County of Honolulu, is also Mike's client. Mike has permitted, without objection, Ms. Foumai's testimony that she took these records home. Presumably Mike advised Ms. Foumai, prior to the deposition, about her right to assert her protection under the Fifth Amendment, and to refuse to testify to these matters or to produce the documents. Also presumably Mike advised his City client that Ms. Foumai may have committed acts in violation of the law and in violations of the rules and regulations of the City, and that a conflict may now have arisen which would prevent Mike from representing either Ms. Foumai or the City. Presumably, if Mike fully disclosed these potential issues and conflicts, he received a full waiver from both of his clients (Foumai and the City). These issues do not, of course, directly affect my client, regardless of whether or not they affect Mike's ability to continue to represent the alleged wrongdoers, the City itself, and all of the City employees who are witnesses in this case.

10010\3\57648

# EXHIBIT B

Michael A. Lorusso, Esq.
Anthony L. Wong, Esq.
September 2, 2006
Page 2

However, you are on notice that we will oppose any effort to continue the trial date based upon any withdrawal of counsel for the City in this case. We have communicated with you on a substantial number of occasions with respect to potential conflict issues raised by Mike's representation of the City and the three individual defendants. We have also questioned the propriety of Mike's representing the lower level employees of the City as their counsel. Whether or not it has been resolved by a full disclosure and waiver, a clear conflict has arisen, not just a potential or speculative conflict, between the City and Ms. Foumai.

We will also vigorously oppose any assertion of the Fifth Amendment by Ms. Foumai at trial. Our position is that she was represented by counsel and that she knowingly waived any Fifth Amendment rights by testifying at the deposition.

You are advised that HRS §92F-17(b) states:

*"A person who intentionally gains access to or obtains a copy of a government record by false pretense, bribery, or theft, with actual knowledge that access is prohibited, or who intentionally obtains any confidential information by false pretense, bribery, or theft, with actual knowledge that it is prohibited [by]a confidentiality statute, shall be guilty of a misdemeanor."*

Ms. Foumai had to know that the taking of the records she took was a prohibited act. HRS §92F-18 requires:

*(a) Each agency shall:*
*(1) Issue instructions and guidelines necessary to effectuate this chapter; and*
*(2) Take steps to assure that all its employees and officers responsible for the collection, maintenance, use, and dissemination of government records are informed of the requirements of this chapter.*

The City, therefore, had the responsibility to, and presumptively did, assure that Ms. Foumai was informed of the requirements of HRS Chapter 92F. Further, we believe that Ms. Foumai presumptively knew of the requirements of the law.

The City also had the authority to: "adopt rules, pursuant to chapter 91, to protect its records from theft...." HRS §92F-11(e). The City, of course, has promulgated rules with respect to the type of records now in question:

*CONFIDENTIAL RECORDS DEFINED*

*a. Records which if made accessible to the public would invade the right of privacy of an individual, shall be considered confidential records. An invasion of*

10010\3\57648

Michael A. Lorusso, Esq.
Anthony L. Wong, Esq.
September 2, 2006
Page 3

*the right of privacy of an individual shall be deemed to result from, but shall not be limited to the granting of access to:*

....

*3. Personnel and employment records, employment examinations and personal references*

....

*6. Information of a personal nature when disclosure would result in economic or personal hardship to the subject party which outweighs the public's fundamental right of access to information concerning the conduct of City agencies. (RULES AND REGULATIONS OF THE MANAGING DIRECTOR, CITY AND COUNTY OF HONOLULU, STATE OF HAWAII, RULES AND REGULATIONS GOVERNING THE ACCESSIBILITY, MAINTENANCE AND STORAGE OF PUBLIC AND CONFIDENTIAL RECORDS OF ALL CITY AGENCIES, Rule 3-1)*

The City's rules go on to provide for certification of confidential records and for the maintenance and security of confidential records.

Under the provisions of HRS Chapter 92F, a "Personal record" (of which the City was charged with assuring that Ms. Foumai was informed) *"means any item, collection, or grouping of information about an individual that is maintained by an agency. It includes, but is not limited to, the individual's education, financial, medical, or employment history, or items that contain or make reference to the individual's name, identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph."* While Mike objected to the question of whether or not Ms. Foumai was aware that the information she had taken was a "personal record", **the law is quite clear that the City had an affirmative duty to inform Ms. Foumai that the records in question were "personal records" of Phil English**.

In addition to the potential conflict posed by the potential of criminal sanctions against Ms. Foumai, there is also clearly a conflict between the City and Ms. Foumai, with respect to her apparent violation of the City's own rules relating to the confidentiality of personnel records. Again, for all we know, that issue (for attorney-client purposes) may have been properly disposed of by a full disclosure to both of Mike's clients and the receipt of a waiver from both. We regard the City's support of this malfeasance, however, as being further evidence of the City's ongoing policy and practice of retaliation against whistleblowers.

In a related issue, Ms. Foumai was asked if she were paying for her legal representation by Mike. Mike instructed Ms. Foumai not to answer on the basis of attorney-client privilege. While you both can do your own research to determine that there was no proper basis for asserting the privilege and instructing Ms. Foumai not to answer, the real issue here is a larger one. It is patently improper for the City to be providing something of value to a witness scheduled to testify in a case against it.

10010\3\57648

Providing Ms. Foumai with free legal service, which we now presume is related to her apparent theft of City personnel records of Phil English, is clearly something of value and arguably may color her testimony. Further, is there some agreement between the City and Ms. Foumai that the City will take no action against her for her violation of the City's rules?

Because of the circumstances set forth above, we would respectfully request that Mike reconsider his instruction to Ms. Foumai not to answer questions about his conversations with her and whether or not she is paying his bill. (Such questioning may also be outside the privilege under the crime-fraud exception, HRE Rule 503(d)(1)) We would respectfully suggest that, at the very least, Ms. Foumai should be fully informed of this letter and given the opportunity to obtain separate counsel and/or to waive any attorney-client privilege which may arguably have existed with Mike.

We wish to depose Ms. Foumai further with respect to this issue. Please advise us of your decision on this issue at your earliest opportunity.

On an additional and related issue, it was apparent from the workplace violence interview reports that Phil's confidential personnel information was a matter of common discussion among the staff of the Assessment Division. You are reminded that Robert Magota made a commitment to follow-up on how Phil's personnel information became common knowledge among the staff. (Ms. Foumai testified, in essence, that she was not the source of that information.) During the deposition of Mr. Magota on June 16, 2006 (pages 470-472) Mr. Magota testified as follows:

> Q. Did you act to determine how Linda Knowles would have found out that Phil had been reprimanded by anybody?
> A. No.
> ....
> Q. Now that you've read this statement, are you planning to investigate how Linda Knowles might have found out that Phil English had been reprimanded by his bosses?
> ....
> A. I think it's something we would look into.
> ....
> Q. Just in case there's any confusion, Bob, there's a question on the table.
> A. Yes, it's something to be looked into.
>
> Q. The question was, Are you now planning to do it?
> ....
> Q. Did you say you are going to look into it?
> A. Yes

10010\3\57648

Michael A. Lorusso, Esq.
Anthony L. Wong, Esq.
September 2, 2006
Page 5

    In his follow-up deposition, several weeks later, Mr. Magota stated that he had done nothing to investigate and actually seemed to forget the commitment he had made to investigate. Apparently the disparate treatment of Phil extends to permitting an "open season" on Phil's personnel information with no investigation or repercussions whatsoever? Phil was entitled to the preservation of the confidentiality of his personnel information and this was plainly violated in the defendants' haste to "make a case" against Phil for whatever they could. Is or is not Mr. Magota planning to follow up on this issue?

    Thank you very much.

Very truly yours,

Roger S. Moseley

RSM\vsy
Enclosure
(records produced by Ms. Foumai at deposition)

10010\3\57648