IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,<br><br>Defendants. | ) CIVIL NO. CV04-00108 KSC<br>)<br>) MEMORANDUM IN SUPPORT OF<br>) MOTION FOR PARTIAL SUMMARY<br>) JUDGMENT ON QUALIFIED<br>) IMMUNITY<br>)<br>)<br>)<br>)<br>)<br>)<br>) Trial Date:   10/03/06<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT ON QUALIFIED IMMUNITY

I.        SUMMARY OF ARGUMENT

This is a "wrongful-retaliation" case brought pursuant to 42 U.S.C. §

1983. The Plaintiff claims that the City, acting by and through its officials,

retaliated against him after he complained about the way the City did things and

about the conduct of other City employees.  In addition to the City, the Plaintiff

named his supervisors as individual defendants, claiming that their actions

violated his constitutionally protected rights.  In his deposition, the Plaintiff

identified three types of alleged retaliation which followed his airing of

complaints:  1) being told that he had a "bad attitude"; 2) being informed that his

"work performance isn't good"; and 3) being informed that he was "maybe not

mentally stable".  The Plaintiff stated that "those are the types - that's the

retaliation that occurred."  <u>See</u> Plaintiff's Depo at 543-544.

Despite the alleged retaliation, the Plaintiff admitted that prior to his

taking a medical leave, he was not terminated, his salary was not decreased, his

benefits were not reduced, and his position had not changed.  <u>See</u> Plaintiff's Depo

at 337, 338.

The qualified immunity doctrine protects government officials who

are performing discretionary functions such as evaluating, criticizing, demoting,

and disciplining employees.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S.Ct. 2727,

73 L.Ed.2d 396 (1982).  Government officials are granted wide discretion and

control over the management of personnel and internal affairs.  <u>Moran v. State of

Washington</u>, 147 F.3d 839 (9th Cir. 1998).  It is respectfully submitted that the

retaliatory conduct identified by the Plaintiff does not demonstrate, as a threshold

matter, that he suffered an adverse employment action.   <u>Huskey v. City of San

Jose</u>, 204 F.3d 893 (2000); <u>Nunez v. City of Los Angeles</u>, 147 F.3d 867 (9th Cir.

1998). Moreover, the conduct identified by the Plaintiff is clearly the type of conduct that falls within the normal prerogative of management, and as a matter of law, was lawful and therefore, entitles the defendants to immunity. <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868 (1993); <u>B.C v. Plumas Unified School District</u>, 192 F.3d 1260 (1999).

II.    <u>THE DETERMINATION REQUESTED IS ONE OF LAW</u>

Qualified immunity is an entitlement to immunity from suit, not merely a defense. <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The purpose of qualified immunity is, therefore, undermined if it must wait until after a case has proceeded to trial. As the U.S. Supreme Court stated:

> <u>Harlow</u> thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essential legal question whether the conduct of which the plaintiff complains violated clearly established law. <u>The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost is a case is erroneously permitted to go to trial.</u>

<u>Mitchell</u>, 472 U.S. 511, at 526. (Emphasis added)

In the instant case, each of the individual defendants is asking this Court to decide that, assuming any disputed facts are in favor of the Plaintiff, the

Plaintiff did not suffer an adverse employment action, that the individual

defendants' alleged retaliatory conduct  did not violate a "clearly established" law,

and that the alleged conduct met the standard of "objective legal reasonableness".

III.      NO ADVERSE EMPLOYMENT ACTION

        To succeed in a wrongful-retaliation claim, the Plaintiff must first

show that he suffered an adverse employment action.  The claim here does not

survive that threshold inquiry.  An adverse employment action must be materially

adverse, not merely an inconvenience or a change in job responsibilities.   Hilt-

Dyson v. City of Chicago, 282 F.3d 456, (7th Cir. 2002).  An adverse employment

action is one that significantly alters the terms and conditions of the employee's

job, Stutler v. Ill. Dep't of Corr., 263 F.3d698 (7th Cir. 2001), and none of the

following was deemed to be an adverse employment action: Grube v. Lau, 257

F.3d 723 (7th Cir. 2001)(altered work hours, negative performance evaluation,

unfair reprimands); Griffin v. Potter, 356 F.3d 824 (2004) (comments that plaintiff

was a "bad influence on the office" and that "she thought she knew everything")

Johnson v. Cambridge, 325 F.3d 892 (7th Cir. 2003) (harder work assignments);

Stutler, 263 F.3d 698 (7th Cir. 2001) (lateral transfer without loss of benefits,

increased commute); Haugerud v. Amery, 259 F.3d 678 (7th Cir. 2001) (additional

job responsibilities); <u>Brooks v. City of San Mateo</u>, 229 F.3d 917 (9th Cir.

2000)(refused preferred vacation schedule).

      In the instant case, the Plaintiff was asked in his deposition to identify

the "type" of "retaliation" that he claims he suffered at the hands of the

defendants.  The Plaintiff testified as follows:

> Q:    What I'd like to do now is, with regard to each instance of retaliation that you are claiming, I want to talk about each instance and I want to take them one by one by one.  You understand?
>
> A:    No.
>
> Q:    Okay.  You indicated that you were retaliated against, correct?
>
> A:    Correct.
>
> Q:    I want to find out what was the retaliation, who did the retaliation, and when it occurred.
>
> A:    Okay, that's different from what you said before.
>
> Q:    I want to take it one by one by one.  Let's start.  With regarding to –
>
> A:    I think the first time, you said each instance, the second time, you said each type.  They're different questions.
>
> Q:    Okay, Let me go back.
>
> A:    So I understand.

Q:    That's fine.  I want to talk about each time, not type, each time you were retaliated against, who did it and what it was, which would be the type of retaliation, okay?

A:    Okay.

Q:    All right.  Please, if you can list them for me.

A:    <u>It's one type of retaliation.  There's not an instant here, an instant there.  The retaliation began after I wrote the e-mail to Bob Magota and the retaliation first consisted of you have a bad attitude, secondly, your work performance isn't good and, thirdly, and, finally, you're maybe not mentally stable.  Those are the types – that's the retaliation that occurred.</u>

So there's one – retaliation had occurred over a period of time.

Q:    And the retaliation does not begin until you write the e-mail to Bob Magota, is that what you just said?

A:    If there was retaliation before that, I was unaware of it and, in fact, I probably wasn't certain about it until a couple months after that.

(Emphasis Added) Plaintiffs Depo at 543, 544. (Exh. "A")

It is clear that such alleged retaliation, (you have a bad attitude, your work performance isn't good, and you may not be mentally stable), even if assumed to have occurred for purposes of this motion, does not constitute "adverse employment action" pursuant to the authorities cited.  None of these alleged acts materially altered the "terms and conditions" of the Plaintiffs' job.  The Plaintiff essentially, admitted as much in his deposition:

Q:     Before you were advised to take medical leave, had anyone at
       the City terminated your position?

A:     No.

Q:     And again, salary not decreased, correct?

A:     No.

Q:     That is correct?

A:     That is correct.

Q:     And benefits not reduced, correct?

A:     That is correct.

Q:     And position not changed, correct?

A:     That's correct.  However, I was called in for insubordination.
       Somebody left a workplace violence report on my desk, which
       I didn't even know if I should have, but somebody placed it on
       my desk.  There were a multitude of other things going on, not
       to mention the fact that I just had a matter of a couple months
       before that had this meeting with Gary and Waylen and Ann,
       which was very threatening to me.  And so when you put it in
       context, Mike, by the time I got to Dr. Coffee, believe me, I
       was a mess.  And I'm thankful that he suggested that.

Plaintiff's Depo at 337, 338. (Exh. "B")

       Moreover, the "ultimate employment decision" in this case, was

"voluntarily" made by the Plaintiff.  The Plaintiff, who admits that he had the

advice of counsel at the time, signed an agreement that he "voluntarily quits,

resigns and terminates his employment". <u>See</u> Exhibit "C". When there has been

no material change to a person's job, and that person, on his own, with the advice

of counsel, "voluntarily and without duress or undue influence", "quits", it is

submitted that the Plaintiff can show no "adverse employment action" pursuant to

Section 1983.

III.        THE QUALIFIED IMMUNITY DOCTRINE

        The qualified immunity doctrine holds that individual government

officials are immune from personal liability under § 1983 unless their conduct

violates "clearly established statutory or constitutional rights of which a

reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102

S.Ct. 2727, 73 L.Ed.2d 396 (1982); <u>Branch v. Tunnell</u>, 14 F.3d 499 (9th Cir. 1996).

The doctrine protects government officials performing discretionary functions,

such as evaluating and disciplining employees. Id.

        The U.S. Supreme Court has made clear that qualified immunity

provides a protection to government officers that is far-reaching. Indeed, it

safeguards "all but the plainly incompetent or those who knowingly violate the

law . . . . [If] officers of reasonable competence could disagree on th[e] issue

[whether a chosen course of action is constitutional], immunity should be

recognized." <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d

271 (1986). When a public official asserts qualified immunity, the Court applies a two-part test. The first prong is whether the plaintiff has presented facts to support a violation of a right that is clearly established and is stated with particularity. Anderson v. Creighton, 483, U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 253 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Alexander v. County of Los Angeles, 64 F.3d 1315, 1019 (9th Cir. 1995), quoting Anderson v. Creighton, 483 U.S. at 640. In other words, before being charged with monetary liability, public officials must be given clear notice that their conduct is unlawful. Brewster v. Bd. of Educ. of Lynwood Unified School Dist., 149 F.3d 971 (9th Cir. 1998); Moran v. State of Washington, 147 F.3d 839 (9th Cir. 1998).

If the plaintiff provides sufficient evidence to meet the first prong, then the court must consider the second prong, whether, in light of clearly established principles governing the conduct in question, a reasonable official would have believed that his or her conduct was lawful. Marks v. Clarke, 102 F.3d 1012 (9th Cir. 1996). If public officials of reasonable competence could disagree on whether or not a chosen course of action is lawful, immunity must be granted. Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271

(1986); <u>Brewster v. Bd. of Educ. of Lynwood Unified School Dist.</u>, 149 F.3d 971

(9th Cir. 1998).

> In the instant case, the Plaintiff has the burden to show that the
defendant's alleged type of retaliatory conduct (comments about attitude,
performance evaluations, and recommendations to seek mental health counseling)
was so clearly unlawful, that no reasonable public official would have engaged in
such activity. <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d
271 (1986); <u>Brewster v. Bd. of Educ. of Lynwood Unified School Dist.</u>, 149 F.3d
971 (9th Cir. 1998). As a matter of law, these activities are not unlawful. They
are, in fact, a normal part of the responsibilities of supervisors within the
department, and, as a matter of law, it cannot be said that no reasonable public
official would have engaged in such activity. Given the Plaintiff's own
description of the alleged retaliatory acts, the Plaintiff cannot meet his burden of
proof, and the individual defendants are entitled to qualified immunity from suit.

V.     <u>QUALIFIED IMMUNITY PREVENTS ANY AWARD OF
PUNITIVE DAMAGES</u>

> The qualified immunity that each of the individual defendants is
entitled to under the circumstances of this case, would also prevent the imposition
of any award of punitive damages against them, arising out of the alleged

10

constitutional violations.

Moreover, even if qualified immunity were not considered, given the Plaintiff's own testimony concerning the "type" of alleged retaliatory conduct, it is submitted that, as a matter of law, there can be no "clear and convincing" showing that the defendants in this case acted "wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations." Masaki v. General Motors Corp., 71 Haw. 1, 780 P.2d 566 (1989). It is well established that much more than the mere commission of a tort is always required to justify the imposition of punitive damages. Punitive damages are not awarded for a mistake, or for errors of judgment. Id.

Even when the evidence is viewed in the light most favorable to the Plaintiff, there is simply no basis for an award of punitive damages.

VI.        CONCLUSION

For the foregoing reasons and authorities, it is respectfully submitted that this Court find that each of the individual defendants is entitled to qualified immunity, and therefore, summary judgment is granted in their favor on Count I, and to the extent any punitive claim is based on the alleged violation of constitutional rights, on Count XII.

DATED: Honolulu, Hawaii, _____ SEP 1 2 2006 _____ .

JAMES KAWASHIMA
RANDALL Y. YAMAMOTO
Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA,
ROBERT O. MAGOTA, and
ANN C. GIMA

12