ORIGINAL

KAWASHIMA LORUSSO & TOM LLP

JAMES KAWASHIMA      #1145-0
RANDALL Y. YAMAMOTO  #3274-0
BRIAN Y. HIYANE      #6045-0
CARTER K. SIU        #7313-0
Topa Financial Center
Fort Street Tower
745 Fort Street, Suite 500
Honolulu, Hawaii 96813
Telephone:   (808)275-0371
Facsimile:   (808)275-0399
Email Address: ryamamoto@kltlaw.com

Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA, ROBERT O. MAGOTA,
and ANN C. GIMA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 1 2 2006

at 3 o'clock and ___ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH, | ) CIVIL NO. CV04-00108 KSC<br>)<br>) CONCISE STATEMENT OF FACTS IN<br>) SUPPORT OF DEFENDANTS CITY &<br>) COUNTYU OF HONOLULU, GARY T.<br>) KUROKAWA, ROBERT O. MAGOTA, and<br>) ANN C. GIMA'S MOTION FOR<br>) PARTIAL SUMMARY JUDGMENT;<br>) DECLARATION OF SUSAN A. BENDER;<br>) DECLARATION OF RANDALL Y.<br>) YAMAMOTO; EXHIBITS "A" – "F;"<br>) CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiff, | |
| vs. | |
| CITY AND COUNTY OF HONOLULU;<br>GARY T. KUROKAWA; ROBERT O.<br>MAGOTA; ANN C. GIMA; and GK<br>APPRAISALS, INC.; JOHN DOES<br>1-10; JANE DOES 1-10; DOE<br>PARTNERSHIPS; DOE CORPORATIONS<br>1-10; AND DOE ENTITIES 1-10, | |
| Defendants. | |

**CONCISE STATEMENT OF FACTS IN SUPPORT OF DEFENDANTS
CITY & COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O.
<u>MAGOTA, and ANN C. GIMA'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Pursuant to Rule L.R. 56.1 fo the Local Rules of

Practice for the United States District Court for the District of

Hawaii, Defendants CITY & COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA hereby submit their separate concise statement of material facts in support of their Motion for Partial Summary Judgment, which is being filed contemporaneously.

| FACTS | EVIDENTIARY SUPPORT |
|---|---|
| Plaintiff <u>voluntarily</u> resigned from his position with Defendant CITY as part of his Workers' Compensation settlement with Defendant CITY. | <u>See</u> Exhibit "A," Compromise, Settlement and Release Agreement; Approval and Order. |
| Plaintiff <u>voluntarily</u> resigned from his position with Defendant CITY as part of his Workers Compensation settlement with Defendant CITY, and did not sign the Workers' Compensation settlement under duress and/or coercion. | <u>See</u> Exhibit "B," Deposition Transcript of Philip English, Volume I, dated 9/30/05, pg. 64 line 8 - pg. 65 line 11. |
| Plaintiff signed a Workers' Compensation Settlement Agreement, the terms and conditions of which were negotiated by his counsel Roger Moseley, Esq. | <u>See</u> Exhibit "A," Exhibit "B" at pg. 61, and Exhibit "F" |
| Plaintiff testified that he did not sign the Workers' Compensation Settlement Agreement under duress | <u>See</u> Exhibit "B" at pg. 64-65 |
| Plaintiff agreed that the Workers' Compensation Settlement was entered into "<u>voluntarily and without duress or undue influence</u>" | <u>See</u> Exhibit "A" |
| Plaintiff agreed that the Workers' Compensation Settlement was "made and entered into upon the free will of and in good faith by the parties" | <u>See</u> Exhibit "A" |
| Plaintiff agreed to waive "any re-employment and priority placement rights" as part of the Workers' Compensation Settlement | <u>See</u> Exhibit "A" |

| | |
|---|---|
| The basis for Plaintiff's § 1983 claim is that he was retaliated against for making statements regarding internal policies and procedures, including: | |
| • the application of Uniform Standards of Professional Appraisal Practice ("USAP") Standards | See ¶ 29 of the First Amended Complaint |
| • the number of properties assigned to appraisers far exceeded the recommendations of professional associations (¶ 29 of the First Amended Complaint); | See ¶ 29 of the First Amended Complaint |
| • the Assessment Division appraisers were accepting assignments which could not properly be done with the resources at hand, which, at minimum should have required public disclosure that the assessments produced by the Assessment Division may not be reliable | See ¶ 29 of the First Amended Complaint |
| • the almost complete lack of any comprehensive training program, especially with respect to internal policies and procedures | See ¶ 29 of the First Amended Complaint |
| • classifications at the Waikiki Shore condominium in various forums, from meetings to individual encounters | See ¶ 31 of the First Amended Complaint |
| • project groupings were not appropriate and the valuations were inconsistent | See ¶ 32 of the First Amended Complaint |
| • leasehold sales were being used for some valuations | See ¶ 32 of the First Amended Complaint |
| • there were multiple instances of questionable classification | See ¶ 32 of the First Amended Complaint |
| • the sales 'validation' system was questionable on a widespread basis | See ¶ 32 of the First Amended Complaint |

| | |
|---|---|
| Defendant MAGOTA was a former whistleblower within the Real Property Assessment Division and was not retaliated against for doing so. | **Exhibit "D,"** Selected Portions of the Oral Deposition Transcript of Robert Magota, Volume IV, dated 08/01/06 at pg. 21, line 12 - pg. 22, line 24; pg. 41, lines 9 - 24. |
| There is no evidence that Defendant KUROKAWA was a "final policymaker" regarding personnel decisions | |
| Defendant KUROKAWA neither interviewed nor hired Plaintiff; this was done by other assessor(s). | See **Exhibit "E,"** Selected Portions of Oral Deposition Transcript of Gary Kurokawa, dated 08/22/06, at pg. 22, line 2 - pg. 23, line 10. |
| After being hired, Plaintiff's supervisor assigned Plaintiff to a specific group, based on need. | Id. at pg. 23, lines 19 - 25. |
| Any personnel problems within the division were primarily handled by Defendant MAGOTA. | Id. at pg. 52, line 21 - pg. 53, line 10. |
| Defendant KUROKAWA would, however, get involved from time to time when a supervisor advises him that an employee is not performing as expected. | Id. at pg. 53, line 11 - pg. 54, line 1. |
| Defendant KUROKAWA was also not responsible for evaluating the employees like Plaintiff; that responsibility was left to the supervisors (i.e., Defendant GIMA). | Id. at pg. 60, line 19 - pg. 61, line 13. |
| Defendant KUROKAWA would review and sign the evaluations before sending it off to personnel department. | Id. at pg. 61, line 14 - 23. |

- 3 -

| | |
|---|---|
| If there are questions about an employee not performing up to standard, Defendant KUROKAWA would then raise questions with the supervisor. | Id. at pg. 61, line 241 - pg. 62, line 11. |
| Nor was Defendant KUROKAWA involved in Plaintiff's advancement within the department as that is handled through civil service requirements, which Defendant KUROKAWA had no control over. | Id. at pg. 20, lines 5 - 20. |
| Defendant GIMA was responsible for and did recommend Plaintiff for promotion from an Appraiser III position to an Appraiser IV position. | Id. at pg. 160, line 11 - pg. 161, line 6; pg. 162, line 7 - 18. |
| Although he does not specifically recall whether he signed off on Plaintiff's recommendation, Defendant KUROKAWA testified that he would typically rely on Defendant GIMA's recommendation and sign-off on it. | Id. at pg. 164, lines 8 - 18. |
| Plaintiff agreed that he would "be solely and personally responsible to pay for all medical care, services, and supplies provided by any provider after January 31, 2004, which are due to the nature of the January 30, 2003 claim of injury." | See Exhibit "A" |
| There are no allegations or evidence that either Defendant MAGOTA, Defendant GIMA, or any other Real Property Assessment Division employee was a "final policymaker" | See Plaintiff's First Amended Complaint |
| Plaintiff has not alleged that Defendant KUROKAWA ratified the conduct of others, including but not limited to Defendant GIMA and Defendant MAGOTA. | See Plaintiff's First Amended Complaint |

| | |
|---|---|
| The basis for Plaintiff's defamation claims are that:<br><br>1. Susan Bender, Esq. told him that Defendant MAGOTA call Plaintiff a "wacko;"<br><br>2. Chris Graff told Plaintiff that Defendant MAGOTA told an unnamed MAI Appraiser that Plaintiff was a troublemaker; and<br><br>3. Someone referred to Plaintiff as being similar to Brian (sic) Uesugi in connection with a workplace violence investigation. | See **Exhibit "C,"** Selected Portions of Transcript of Oral Deposition of Philip English, Volume III, dated 10/05/05 at pg. 368, lines 1 - 25. |
| Susan Bender never communicated to Plaintiff that Robert Magota called Plaintiff a "wacko." | See Declaration of Susan Bender |
| Susan Bender did not attend a meeting that Robert Magota had with some of the staff of the Real Property Assessment Division, as alleged in Paragraph 63 of Plaintiff's First Amended Complaint, because she was not a staff member of the Real Property Assessment Division. | See Declaration of Susan Bender |
| Susan Bender has never heard Robert Magota refer to Plaintiff as a "wacko." | See Declaration of Susan Bender |

DATED: Honolulu, Hawaii, _____SEP 1 2 2006_____.

_____
JAMES KAWASHIMA
RANDALL Y. YAMAMOTO
BRIAN Y. HIYANE
CARTER K. SIU
Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA,
ROBERT O. MAGOTA, and
ANN C. GIMA

- 5 -