IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT STATE OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH, | ) CIVIL NO. CV04-00108 KSC |
| Plaintiff, | ) **MEMORANDUM IN SUPPORT OF MOTION** |
| vs. | ) |
| CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10, | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF MOTION

I.  **INTRODUCTION**

This case arises out of an employment action in which the Plaintiff claims that as a result of reporting alleged outside work performed on City time that he was retaliated against. Plaintiff claims that he is entitled to lost wages and benefits and has retained Thomas T. Ueno, CPA to make a calculation with regard to the alleged lost wages and benefits. The expert reports of Ueno are attached hereto as Exhibit "A".

The opinions of Ueno, however, fail to meet the requirements for expert testimony set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993), and its progeny. Ueno testified that he is not rendering an

opinion as to the ultimate conclusion in this matter as to whether the Plaintiff had been allegedly retaliated against for reporting outside work on City time. Nevertheless, the Ueno report states that Plaintiff has incurred loss of earnings as a result of "his bringing to light alleged wrongdoings by the City and County of Honolulu". Ueno further opines in his report that the Plaintiff was forced to leave his employment with the City. See, Exhibit "A". However, in his deposition, he testified that he is not making any opinions with regard to causation.

> Q. In terms of using the word that he was "forced" to resign from the City, again, you're not making any kind or rendering any opinion with regard to the reasons why Mr. English left the City; is that correct?
>
> A. We're not rendering any opinions as to causation; right.

(Deposition of Thomas T. Ueno, CPA, page 119, lines 23-25; page 120, lines 1-3).

Ueno should be precluded from testifying as to the ultimate issue which is to be decided by the jury.

Further, in rendering his opinions, Ueno has stated facts that are not correct and has made certain assumptions that are not accurate nor reliable. Because of the unreliable basis for his opinions, his testimony is of questionable probative value, and highly prejudicial. Accordingly, Thomas Ueno should be stricken as an expert witness in this matter.

In Ueno's opinion, he calculates the Plaintiff's alleged loss from the last day of Plaintiff's departure from the City. The date he uses is February 28, 2003. However, the Compromise, Settlement and Release Agreement; Approval and Order states that Plaintiff continued to receive pay and benefits through January 31, 2004. <u>See</u>, Exhibit "B". Although Ueno had the Release Agreement in his possession, he did not use the correct date in making his calculations.

Ueno assumes that Plaintiff would receive advances in position and increases in salary and benefits based upon a set rate of time. However, Ueno has no basis for his assumption. He admitted in his deposition that in order for Plaintiff to advance in his position, there would have to be opening for that position; that Plaintiff would have to apply for the position; and, that Plaintiff would have to be selected from all the candidates that applied for the position. These assumptions are speculative and unreliable, as Mr. Ueno did no study, investigation nor assessment of whether his assumptions had any basis:

> Q. Under back pay, at the bottom of the page and continuing on to the top of the next page, page 3, you assumed certain incremental promotions and accompanying increases in pay; is that correct?
>
> A. That's correct.

> Q. How did you arrive at your assumptions regarding the date of promotion for each of these increments and the level of promotion?
>
> A. What we did was we looked at what he – what had happened historically and basically projected the historical pattern.
>
> Q. Do you know how the promotion system works at the City and County Real Property Assessment Division?
>
> A. Well, I was gonna complete my answer before you asked your question, if I could; and that is that we looked at historical promotion pattern, and then we basically took a little bit more conservative estimate, and we added in a year.
>
> Q. What do you know about when promotions become available at the Real Property Assessment Division of the city and County of Honolulu?
>
> A. I don't.
>
> Q. Do you know whether the promotions become available based on some kind of timetable or schedule or whether it's based on vacancies as they appear?
>
> A. I don't know.
>
> Q. Did you do any kind of study of the persons holding the jobs to which you're anticipating that Mr. English will be promoted, their age, their expected retirement date, and when their positions might be vacated?
>
> A. No study of the assessment division was made.

(Deposition of Thomas T. Ueno, CPA, page 51, lines 13-25; page 52, lines 1-18).

- 4 -

Ueno further opines that Plaintiff has searched for comparable alternative employment. However, has no basis for his opinion.

    Q.    Now what comparable alternative employment did he search for?

    A.    I don't know who he talked to or potential employers he contacted.

    Q.    Do you know how many companies or potential employers he contacted?

    A.    No, I don't.

    Q.    Do you know what potential employers or companies he contacted?

    A.    No, I don't.

    Q.    Do you know what fields he looked in searching for comparable alternative employment?

    A.    I do not know.

    Q.    Do you know whether he searched in the private sector or the public sector for comparable alternative employment?

    A.    I do not know.

    Q.    Where did you derive the information upon which you base this statement that Mr. English has searched for comparable alternative employment but with little success?

    A.    I guess the discussions with Mr. English.

    Q.    From Mr. English himself? He told you he searched for comparable alternative employment but with little success?

    A.    I believe so.

>   Q.  Can you tell me what he told you?
>
>   A.  Right what we have stated here.
>
>   Q.  Do you recall anything more detailed about his statements to you in this regard?
>
>   A.  No.
>
>   Q.  Your entire recollection of your conversation with Mr. English about searching for comparable alternative employment is embodied in this paragraph here, that he searched with little success?
>
>   A.  I believe it is.

(Deposition of Thomas T. Ueno, CPA, page 50, lines 5-25; page 51, lines 1-12).

>   Q.  Did you ask Mr. English, can you be an appraiser?
>
>   A.  No, we didn't ask that question.

(Deposition of Thomas T. Ueno, CPA, page 106, lines 1-2;).

>   Q.  Okay.  An my question is, you did not ask Mr. English or anyone else whether Mr. English could do a job as an appraiser; is that correct?
>
>   A.  That's correct.

(Deposition of Thomas T. Ueno, CPA, page 106, lines 15-18).

Significantly, Plaintiff has testified that he has allowed his appraiser license to lapse and that he has not applied for an appraiser's position and he has not attempted to open his own appraisal company.

In addition, Ueno assumes that Plaintiff will only work part-time as a security guard at 12 hours per week for the

remainder of his working life. However, Ueno concedes that he has no basis to state that Plaintiff can only be employed as a security guard or that Plaintiff is limited to 12 hours per week. The assumptions of Ueno are inaccurate, speculative and therefore unreliable.

II.     **DISCUSSION**

The opinions of Plaintiff's expert Thomas Ueno are not valid or reliable under the criteria enunciated by the U.S. Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). They also are not based upon reliable sources as required by Fed. R. Evid. 703. Accordingly, the testimony of Ueno must be excluded.

The U.S. Supreme Court in <u>Daubert</u> stated that the district courts are "gatekeepers" regarding expert opinion testimony, and are to admit such testimony only if it is both reliable and relevant. <u>Daubert</u>, at 589. The Court held that a trial judge faced with a proffer of expert scientific testimony must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." <u>Daubert</u>, at 592. The Court noted that factors that may be considered by courts in determining whether to admit expert testimony include whether the theory or technique employed by the expert is generally accepted in the scientific community, whether it has been subject to peer

review and publication, whether it can be and has been tested, and whether the known or potential rate of error is acceptable. Id., at 593-95.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995) (hereinafter "Daubert II"), the Ninth Circuit Court of Appeals interpreted the U.S. Supreme Court's opinion in Daubert, and stated that the task of the trial court "is to analyze not what the experts say, but what basis they have for saying it." Daubert II, 43 F.3d at 1316.

In Daubert II, the court noted that the factors provided in Daubert were merely illustrative of factors which should be considered by the courts in determining whether to admit expert testimony. Specifically, the Ninth Circuit Court of Appeals stated, "One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." Daubert II, at 1317.

Recently, the U.S. Supreme Court in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167 (1999), held that a district court's "gatekeeping" obligation regarding expert testimony applies not only to "scientific" testimony, but to all expert testimony. The Court stated:

> We conclude that Daubert's general principles apply to the expert matters described in Rule 702. The Rule, in respect to all such matters, "establishes a standard of evidentiary reliability." 509 U.S., at 590, 113 S.Ct. 2786. It "requires a valid ... connection to the pertinent inquiry as a precondition to admissibility." Id., at 592, 113 S.Ct. 2786. And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, see Part III, infra, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." 509 U.S., at 592, 113 S.Ct. 2786.

Kumho, 526 U.S. at 149.

Rule 702 of the Federal Rules of Evidence was amended in response to Daubert and Kumho, and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

It is clear, therefore, that the testimony of Plaintiff's expert Ueno in this case is subject to the requirements of FRE 702 and Daubert. When the basis for Ueno's opinions are examined, it becomes equally obvious that his

opinions do not meet the reliability requirement for expert testimony under FRE 702 and Daubert.

For example, Ueno cannot testify as to the ultimate conclusion for the jury to determine; he has made assumptions that are speculative with no basis and therefore the reliability of his opinions is highly suspect.

In Daubert, the Supreme Court further noted that in evaluating the admissibility of expert testimony, a court must also consider the requirements of Rules 703 and 403 of the Federal Rules of Evidence. The Court stated, in pertinent part, as follows:

> Throughout, a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules. Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." ... Finally, Rule 703 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Judge Weinstein has explained: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Weinstein, 138 F.R.D., at 632.

Daubert, at 595.

In this case, the opinions of Plaintiff's expert not only fails to satisfy the requirements for expert testimony as provided in <u>Daubert</u>, they also fail to meet the requirement of Fed. R. Evid. 703 that expert opinions be based upon facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." While FRE 703 allows an expert to rely upon inadmissible facts or data in rendering his or her opinion, such "facts or data" must be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Ueno made assumptions as to Plaintiff's employment if he remained with the City without any question or basis as to the accuracy of the assumptions.

In this respect, the opinions of Plaintiff's expert are similar to the opinion of an expert held to be inadmissible in the case of <u>In re "Agent Orange" Product Liability Litigation</u>, 611 F.Supp. 1223 (E.D.N.Y. 1985). In that case, an expert physician's opined that Agent Orange caused a number of medical ailments to Vietnam veterans exposed to the chemical. The expert's opinion was based in large part upon affidavits of individual veterans and attached "checklist" forms providing a description of alleged Agent Orange-related symptoms which allowed the individual to identify any or all of a number of symptoms which they attributed to their exposure of Agent Orange

in Vietnam. Id., at 1235. The expert based his opinion on his medical background, a review of the literature on the biomedical effects of Agent Orange, and an examination of the affidavits of the individual veterans. However, he did not examine any medical records or any of the veterans. Id., at 1236.

In holding that the expert physician's opinion was inadmissible, the court noted, "Stripped of its verbiage, Dr. Singer summarizes his overall conclusion by stating that if the affiants are telling the truth and if there is no cause for their complaints other than Agent Orange, then Agent Orange must have caused their problems." In re "Agent Orange", at 1237. The court noted that the expert's opinion "relied almost wholly upon the specific anecdotal written information supplied by the plaintiffs and upon general studies and literature." Id., at 1243. Therefore, the court held that the expert's opinion was not based upon reliable sources as required by Rule 703.

Similarly, in this case, Ueno relies upon the Complaint without making any independent evaluation of the validity of the assertions contained therein. The opinions of Ueno should also be excluded under FRE 403. The probative value, if any, of the opinions of Ueno is minimal at best, particularly since he arrived at these opinions merely from reading the Complaint and speaking with the Plaintiff, and the validity of his opinion rests or falls upon the accuracy of the Complaint and

conversation with the Plaintiff. As noted by the court in Viterbo v. Dow Chemical Co., 826 F.2d 420, 422 (5th Cir. 1987), "If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury. Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible under Fed. R. Evid. 403." (citations omitted). Such testimony does not provide any assistance to the trier of fact, and merely tells the Court what conclusion to reach.

Ueno's opinions regarding Plaintiff being terminated and inability to obtain similar employment is the very sort of expert opinion that courts have found to be insufficient to meet the Daubert test of scientific validity. In General Electric Co. v. Joiner, 522 U.S. 136, 118 S.Ct. 512 (1997), the United States Supreme Court, in affirming the district court's exclusion of an expert's opinion on causation, stated that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." On the district court level, the United States District Court for the District of Hawaii similarly held that an expert's own testimony concerning the reliability of his opinion is an insufficient indicia of reliability, and concluded that such "bold assurances of validity" does not satisfy Daubert. United States v. Saya, 961

F.Supp. 1395, 1397 (D. Haw. 1996)(quoting Daubert II, 43 F.3d at 1315).

In short, the opinions of Plaintiff's expert Ueno is nothing more than Plaintiff's claims "dressed up and sanctified as the opinion of an expert." Viterbo, 826 F.2d at 424. "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." Id. As seen, the opinions of Ueno fail to meet the requirements of admissible expert testimony under Daubert, and are not based upon reliable sources as required by Fed. R. Evid. 703. His testimony is therefore more prejudicial than probative. Accordingly, Thomas Ueno should be stricken as an expert witness at trial.

### III.   CONCLUSION

Based upon the foregoing, Defendants City respectfully request that this Court grant the present Motion In Limine and strike Thomas Ueno as Plaintiff's expert witness in this case.

DATED: Honolulu, Hawaii, SEP 1 2 2006      .

_____
JAMES KAWASHIMA
RANDALL Y. YAMAMOTO
BRIAN Y. HIYANE
CARTER K. SIU
Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA,
ROBERT O. MAGOTA, and
ANN C. GIMA