1

```
 1              IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

 2                           STATE OF HAWAII

 3   PHILIP E. ENGLISH,                )
                                       )
 4                  Plaintiff,         )
                                       )
 5             vs.                     ) Civil No. 04-00108 JMS/KSC
                                       )
 6   CITY AND COUNTY OF HONOLULU;      )
     GARY T. KUROKAWA; ROBERT O.       )
 7   MAGOTA; ANN C. GIMA; and GK       )
     APPRAISALS, INC.; JOHN DOES       )
 8   1-10; JANE DOES 1-10; DOE         )
     PARTNERSHIPS; DOE CORPORATIONS    )
 9   1-10; and DOE ENTITIES 1-10       )
                                       )
10                  Defendants.        )
     _____)

11

12

13

14

15

16

17

18                   DEPOSITION OF DAVID MATSUNAMI

19        Taken on behalf of the Plaintiff at the offices of

20   Moseley Biehl Tsugawa Lau & Muzzi, 1100 Alakea Street, 23rd

21   Floor, Honolulu, Hawaii, commencing at 9:37 a.m. on November

22   9, 2005, pursuant to Notice.

23

24   BEFORE:    JESSICA R. PERRY, CSR NO. 404

25             Certified Shorthand Reporter
```

Ralph Rosenberg Court Reporters
OFC: (808) 524-2090    FAX: (808) 524-2596

**EXHIBIT "C1"**

1  between this date and this date, which would probably be --
2  in this case wouldn't be applicable because the appraisal
3  date was also another date of death on the Palekoki Ranch.
4  So those dates probably are not going to line up.  So if I
5  put down 2000 or 2001, that would be the date of death of --
6  I think it was Mr. Ramos on Palekoki Ranch.
7       Q.   But you don't know whether the computer run itself
8  would have a separate date saying it was run on this date?
9       A.   I'm pretty sure it doesn't.  What's going to come
10 out is just the sales, and it's going to be, you know,
11 individually pieced out.  That's the way the Big Island one
12 works.
13      Q.   On what service did you run this?
14      A.   Hawaii TMK.
15      Q.   And do you remember whether you used GK Appraisals'
16 pass code to do that run or whether that was your own?
17      A.   No, that was GK Appraisals'.
18      Q.   During the course of the time when you were doing
19 work for GK Appraisals and you were contacting Gary
20 apparently 70 percent of the contacting, were you calling him
21 at the office at the assessment division?
22      A.   Yes.
23      Q.   Do you remember what his secretary's name or
24 whoever the gal was that answered the phone?
25      A.   I think they have two, Dottie and Debbie.

1  Q.  Dottie and Debbie?

2  A.  Yes.

3  Q.  Did you generally talk to them first?

4  A.  Usually, yeah.

5  Q.  Did you ever leave messages for him saying, you
6  know, David called, call me back?

7  A.  Yes.

8  Q.  Do you know -- I mean, you worked at the assessment
9  division.  Do you know if there was a system where they
10 logged the messages in like a message book or something like
11 that?

12 A.  I don't know how they were doing it at that time,
13 but when I worked there it was just those pink papers and
14 then they would just put it on that, and you would do
15 whatever and throw it away.  So I don't think there was
16 something that -- but that's when I was there, and they
17 weren't the head secretary back then when I worked there.

18 Q.  But there were times when you called, you weren't
19 able to talk to Gary, and you left messages for him to call
20 back?

21 A.  Yes.

22 Q.  And you don't know whether or not there is some
23 physical record that was kept of those calls?

24 A.  I have no idea.

25 Q.  So you, then, I presume wouldn't know whether we

```
 1  could determine whether some of these dates -- what some of
 2  these dates were by message books and things like that?
 3       A.   I have no idea.
 4       Q.   Okay.  Did you ever email Gary any information with
 5  respect to your work for GK?
 6       A.   I may have.  I may have for him to have -- to
 7  review.  I'm pretty sure that that was done using his regular
 8  hawaii.rr. whatever address, that GK Appraisals one, but I'm
 9  not sure.
10       Q.   Is your testimony kind of similar to the testimony
11  about Chris, that you might -- I mean you're not sure --
12       A.   Yeah, I'm not sure.  I'm not sure.
13       Q.   There might be some emails there in his city
14  account from you?
15       A.   There may.  I'm not sure.
16       Q.   Did you ever speak with Robert Magota at any time
17  with respect to your work for GK Appraisals?
18       A.   No.
19       Q.   On no subject whatsoever --
20       A.   No.
21       Q.   -- dealing with that?
22       A.   No.
23       Q.   How about with same question with respect to Ann
24  Gima?
25       A.   No.
```

1   questions.

2                       EXAMINATION

3   BY MR. MOSELEY:

4        Q.   Mike Lorusso asked you if the times that you

5   visited the assessment division before 9/11 were social

6   occasions, and you said to the best of your knowledge; is

7   that right?

8        A.   Uh-huh.

9        Q.   Yes?

10       A.   Yes.  I'm sorry.  Yes.

11       Q.   Is it also possible that you conducted some

12  business for GK Appraisals on those occasions?

13       A.   No.

14            MR. LORUSSO:  Objection, calls for

15  speculation.

16            THE WITNESS:  No, because it was -- all the GK

17  Appraisal things were on the Big Island.  So if anything,

18  that I would go over there would be to go downstairs to the

19  basement to see the field sheets of the properties over here

20  on properties that were hard to figure out from my inspection

21  or that I wanted the old sketch that they had.

22       Q.   Okay, so there would be -- it would be no

23  possibility that you could have run into Gary and talked to

24  him about an assignment for GK or no possibility that you

25  could have run into Chris and talked to him about an

```
 1   assignment for GK?
 2              MR. LORUSSO:  Object to the form of the
 3   question with regard to the word possibility as being
 4   ambiguous and calls for speculation.  Anything is possible.
 5              MR. WONG:  Join.
 6              THE WITNESS:  Yeah, that's -- I agree that it
 7   was -- you know, anything is possible on that one.
 8        Q.   Well, why did you use the term to the best of your
 9   knowledge that they were social occasions before 9/11?
10        A.   Because when the question was originally asked I --
11   it's like I guess it's tough for me to be over here, you guys
12   asking me all these questions, and my brain is starting to
13   get tired too, so, I mean, to the best of my knowledge,
14   that's what I said.  I meant what I said, you know, and after
15   I thought about it, yeah, you know, I go there and get field
16   sheets and things every once in a while.
17        Q.   Mr. Lorusso asked you questions about the
18   complaints of pay.  And you did testify that Chris sort of
19   poormouthed you, like I really need the money and that kind
20   of stuff, so you ended up over paying him, right?
21              MR. LORUSSO:  Objection, misstates his
22   testimony that it was poormouthing.
23              THE WITNESS:  Yeah, I said that I knew that
24   Chris was having hard times financially.
25        Q.   But he would actually tell you he needed the money
```

```
 1  STATE OF HAWAII                    )
 2                                     ) ss:
 3  CITY & COUNTY OF HONOLULU          )
 4
 5              I, JESSICA R. PERRY, do hereby certify:
 6              That on November 9, 2005, at 9:37 a.m.
 7  appeared before me DAVID MATSUNAMI, the witness whose
 8  deposition is contained herein; that prior to being examined
 9  he was by me duly sworn;
10              That the deposition was taken down by me in
11  machine shorthand and was thereafter reduced to typewritten
12  form by computer-aided transcription; that the foregoing
13  represents, to the best of my ability, a full, true and
14  correct transcript of said deposition.
15              I further certify that I am not attorney for
16  any of the parties hereto, nor in any way concerned with the
17  cause.
18
19              DATED this 16th day of November 2005, in
20  Honolulu, Hawaii.
21
22  [signature]
23  Jessica R. Perry, CSR 404
    Notary Public, State of Hawaii
24  My commission expires: 5/11/06
25
```