Of Counsel:
SUMIDA & TSUCHIYAMA
A Limited Liability Law Company

KEVIN P. H. SUMIDA        2544-0
ANTHONY L. WONG           6018-0
Dillingham Transportation Building
735 Bishop Street, Suite 411
Honolulu, Hawaii  96813
Telephone No. (808) 356-2600
Fax No. (808) 587-6197
E-Mail:  info@sthawaii.com
awong@sthawaii.com;
ksumida@sthawaii.com
Attorneys for Defendant
GK APPRAISALS, INC.

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH, | ) CIVIL NO. CV04 00108 KSC |
| Plaintiff, | ) DEFENDANT GK APPRAISALS, |
| | ) INC.'S MEMORANDUM IN |
| vs. | ) OPPOSITION TO PLAINTIFF PHILIP |
| | ) E. ENGLISH'S MOTION IN LIMINE |
| CITY AND COUNTY OF | ) NO. 8 RE: EXCLUDING EVIDENCE |
| HONOLULU; GARY T. | ) AND OR TESTIMONY SUGGESTING |
| KUROKAWA; ROBERT O. | ) OR IMPLICATING PLAINTIFF |
| MAGOTA; ANN C. GIMA; and GK | ) PHILIP E. ENGLISH AND ROGER S. |
| APPRAISALS, INC.; JOHN DOES 1- | ) MOSELEY IF ANY WRONGDOING; |
| 10; JANE DOES 1-10; DOE | ) CERTIFICATE OF SERVICE |
| PARTNERSHIPS; DOE | ) |
| CORPORATIONS 1-10; AND DOE | ) |
| ENTITIES 1-10, | ) |
| | ) TRIAL: October 3, 2006 |
| Defendants. | ) |

}
_____ }
_____ )

### DEFENDANT GK APPRAISALS, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF PHILIP E. ENGLISH'S MOTION IN LIMINE NO. 8 RE: EXCLUDING EVIDENCE AND OR TESTIMONY SUGGESTING OR IMPLICATING PLAINTIFF PHILIP E. ENGLISH AND ROGER S. MOSELEY IF ANY WRONGDOING

Comes now defendant GK APPRAISALS, INC. (hereinafter "this Defendant") by its attorneys, and, subject to and without waiver of any defense or objection to which they are entitled, hereby respectfully provides its opposition to plaintiff's motion in limine No. 8.

Plaintiff argues that his contacts and dealings with attorney Roger Moseley are not admissible evidence, and that the two did nothing wrong.

However, before examining the dealings between plaintiff and his attorney, let us first examine the plaintiff's own claims.

In a nutshell, plaintiff claims that he was retaliated against for making a complaint of unethical conduct by a co-worker and the head of his division, Gary Kurokawa. The evidence for retaliation is limited to certain time and event sequences.

The plaintiff first made his e-mail complaint to Robert Magota on or about February 14, 2002. Then, on his first Job Performance Review ("JPR") thereafter on April 12, 2002, some two months later, his ratings diminished from

-2-

"exceeds requirements" in all categories to "meets requirements" in all categories.
Again, on May 13, 2002, some 3 months after his e-mail report, his next JPR was
again marked "meets requirements" in all categories. Subsequently, on his third
JPR signed on August 14, 2002, some 6 months after his e-mail complaint, his JPR
was marked "meets requirements" on all categories except Attitude, which was
marked "below requirements." Following this August 14, 2002 JPR, conflicts with
his co-workers and supervisor became more and more pronounced, and on January
22, 2003, he filed a written ethics complaint with the Ethics Commission of the
City and County of Honolulu.

It is this decline in JPR ratings, after plaintiff made his e-mail
complaint of unethical behavior, that plaintiff claims is circumstantial evidence of
retaliation. However, there is more circumstantial evidence that must be added to
plaintiff's version of events.

First, on March 6, 2002, a little less than one month after his made his
e-mail allegations, plaintiff was promoted from Appraiser III to Appraiser IV.
Thus, he was arguably "rewarded" for making his initial complaint with a
promotion. Next, his JPR ratings did not decrease from "exceeds requirements" to
"meets requirements" until after he was promoted to a position with higher
requirements. This easily explains the initial change in JPR ratings.

Next, the *very first* JPR in which *any* category is marked "below requirements" is that on August 14, 2002 that was marked "below" in the Attitude category. This is *six months* after his e-mail complaint to Robert Magota, yet falls on the *same day* that plaintiff's attorney claims he was first contacted by plaintiff, asking for contact information for the FBI. [See Exhibit A to plaintiff's motion, page 1, under paragraph numbered "1"]

Oddly, the characterized limited representation of plaintiff by Mr. Moseley at that time was not reported to plaintiff's supervisors, even though Mr. English continued to work as an "expert witness" on tax cases adverse to Mr. Mosley.

Following this August 14, 2002 "limited retention", plaintiff's job performance and attitude dropped sharply. Clearly, to the extent that the plaintiff can infer that there was some kind of retaliation going on because of the time-sequence described herein, the defendants should be allowed to argue and infer that the drop in attitude ratings was not retaliation, but reflected a genuine change in attitude when plaintiff first decided he was going to sue his employer.

According to Exhibit A to the present motion, there was no further attorney-client relationship between plaintiff and Mr. Mosley until December 2, 2002, when the two conferred regarding the subject of filing a formal ethics complaint with the Ethics Commission. [Exhibit A, paragraph No. 2]

Nobody at the Real Property Assessment Division was informed of this now admitted relationship until about two months later, February 5, 2003, when Charles Totto of the Ethics Commission informed Gary Kurokawa that plaintiff had retained Mr. Mosley, and further informed Mr. Kurokawa that plaintiff should be taken off of testifying in any litigation in which Mr. Mosley was involved.

During the 5 ½ months following plaintiff's contact and consultation with Mr. Moseley in which they discussed making a complaint against plaintiff's co-workers and supervisors to the FBI, nobody was told of this relationship. Meanwhile, at the Real Property Assessment Division plaintiff continued to work on litigation matters adverse to Mr. Moseley, and was in a position to temper his opinions, and make recommendations to Corporation Counsel which would favor Mr. Moseley and his clients. During at least 2 months of this period the plaintiff and Mr. Moseley had an now admitted attorney-client relationship.

Mr. Moseley did much more than "arrange for documents to be transmitted to the Ethics Commission for Plaintiff" as describe on page 2 of the memorandum in support of the present motion. The Complaint was on Mr. Moseley's firm letterhead and bore his signature at the bottom of the Complaint, along with that of plaintiff. Examination of the text of the Complaint reveals that it

contains "lawyerly" language and appears to have been composed by an attorney and not a layperson inferring that Mr. Mosley himself prepared the Complaint.

Clearly, a multitude of inferences, including bias, motive, plan, and collusion, can reasonably be drawn from this chain of events, and from plaintiff's close association with Mr. Moseley during this time period.

First, one can infer that on August 14, 2002, Mr. Mosley was providing free legal services on a "nod, wink, nod, wink" basis, hoping that some kind of *quid pro quo* would be provided. These services were admittedly "pro bono."[1] [Exhibit A, paragraph No. 1] Clearly, the easiest return plaintiff could have provided for this favor was issuance of opinions more favorable to Mr. Mosley's side in the litigation they were working on. E-mail documentation will support that on October 24, 2002, plaintiff's supervisor e-mailed him discussion Stipulations regarding some of Mr. Moseley's tax appeal cases. This is evidence of opportunity for plaintiff to return the favor he was earlier given. If this is untrue, the plaintiff is free to deny it just as the defendants deny that the chain of events described by plaintiff was motivated by a retaliatory motive.

Next, this chain of events, where plaintiff's job performance deteriorated more rapidly *after* he first consulted with Mr. Mosley. On can infer

---

[1] It should be noted that *pro bono* legal services are usually provided as a public service to some community service organization, to the indigent, or other charitable purpose. This particular *pro bono* legal service does not seem to meet the charitable objectives for which free legal services are usually provided.

that he was told that he was a "whistle blower" and disciplinary action against him would only strengthen a civil suit. Indeed, HGEA Waylon Toma will testify that plaintiff was reluctant to change certain comments (to be more favorable) in the August 14, 2002 JPR because plaintiff was concerned that it would weaken a subsequent civil suit. Clearly, the fact that plaintiff had already contacted Mr. Mosley at this time, and inferences drawn from this contact, in conjunction with Mr. Toma's testimony, are admissible to the existence of motive, plan, and bias.

In addition, one can infer that plaintiff's failure to perform at his job, contact with the FBI, and contact with the Ethics Commission were all designed to fabricate a civil suit for financial gain of both plaintiff and his counsel.

Generally, the case law supports the proposition that evidence of consultation with counsel in anticipation of a civil suit is proper impeachment to show bias, motive, to shade the truth or testify in favor of one side or another.

In <u>State v. White</u>, 286 N.C. 395, 211 S.E.2d 445 (1975), the Supreme Court of North Carolina commented, "Indisputably, the fact that a witness had employed private counsel to prosecute a case against the defendant has a logical tendency to show the witness' bias against him. <u>Id.</u> at 286 N.C. 395, 405, 211 S.E.2d 445, 451. Other cases, including the 9th Circuit, generally support that a witnesses bias or motive may be shown by questioning about a contemplated civil

-7-

suit and/or consultation with an attorney for that purpose. United States v. Harris, 185 F.3d 999, 1008 (Headnote 21) (9th Cir. 1999).

In the present case, the evidence of plaintiffs involvement with his attorney is even more crucial than an instance where a witness *later* considers a civil suit and consults with counsel. Here, the contemplation of a civil suit, and consultation with counsel regarding this, was occurring *as these events upon which the suit is now based were actually unfolding.* Thus, not is it only evidence of biased testimony, it is evidence that the plaintiff's own actions at the time were motivated by his plan to eventually file a civil suit. This is more than mere impeachment; this is defendants' response to, and explanation of, the very events that plaintiff now claims were retaliatory. To exclude evidence of the relationship between plaintiff and his attorney would be akin to excluding evidence of strings where the defendants are trying to show the puppet was not reacting to their actions, but to the actions at the other end of its strings.

DATED:  HONOLULU, HAWAII,    September 19, 2006

KEVIN P. H. SUMIDA
ANTHONY L. WONG
Attorneys for Defendant
GK APPRAISALS, INC

-8-