00002329.WPD
KAWASHIMA LORUSSO & TOM LLP

JAMES KAWASHIMA      #1145-0
RANDALL Y. YAMAMOTO  #3274-0
BRIAN Y. HIYANE      #6045-0
CARTER K. SIU        #7313-0
Topa Financial Center
Fort Street Tower
745 Fort Street, Suite 500
Honolulu, Hawaii 96813
Telephone:    (808)275-0325
Facsimile:    (808)275-0399
Email Address: ryamamoto@kltlaw.com

Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA, ROBERT O. MAGOTA,
and ANN C. GIMA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT STATE OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,<br><br>    Defendants. | CIVIL NO. CV04-00108 KSC<br><br>**DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA'S MEMORANDUM IN OPPOSITION TO PLAINTIFF PHILIP E. ENGLISH'S MOTION IN LIMINE NO. 2 RE: EXCLUDING TESTIMONY OF CORLIS CHANG; DECLARATION OF CARTER K. SIU; EXHIBITS "A" - "K;" CERTIFICATE OF SERVICE**<br><br>**HEARING:**<br><br>DATE: September 28, 2006<br>TIME: 10:00 a.m.<br>JUDGE: Hon. Kevin S.C. Chang<br>Trial Date: October 3, 2006 |

**DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA'S MEMORANDUM IN OPPOSITION TO PLAINTIFF PHILIP E. ENGLISH'S MOTION IN LIMINE NO. 2 RE: EXCLUDING TESTIMONY OF CORLIS CHANG**

Defendants CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA, (collectively "Defendants City") by and through their attorneys, KAWASHIMA LORUSSO & TOM, LLP, and hereby submits their memorandum in opposition to Plaintiff's Motion In Limine No. 2 regarding the exclusion of Ms. Corlis Chang's testimony at trial for this Court's review and consideration.

## I.  RELEVANT PROCEDURAL BACKGROUND

Plaintiff has claimed in the foregoing lawsuit that he was retaliated against for certain whistleblowing activities (i.e., reporting that a City worker was performing outside/private appraisal work on City time). As a result of the retaliation, he had doubts about his continued employment with the City which Plaintiff claims led to the termination of his marriage, emotional distress, depression, and other alleged damages.

## II. RELEVANT FACTUAL BACKGROUND

Ms. Corlis Chang was married to Plaintiff for approximately fifteen (15) years; ultimately, however, they divorced in 1999, with Plaintiff being awarded an amount in excess of $100,000.00.

On June 1, 2000, Plaintiff started work at the Real Property Assessment Division.

Shortly thereafter, on June 6, 2000, Plaintiff married Sathiporn "Pim" Songsorn. Apparently, Pim worked for Plaintiff's import/export business as his "contact person" in Thailand.

Two (2) months after he began work and entered into his third marriage, he filed for bankruptcy on August 1, 2000 claiming that his debts exceeded $193,000. **See Exhibit "A."** On Schedule "I", he reported that his current marital status was divorced (not withstanding his marriage to Pim two (2) months earlier) and that he "was not earning money for a long time - used retirement then used all of divorce settlement to live on." **See Exhibit "B."**

A few days later, on or about August 8, 2000, during a time that Plaintiff was "happily married" to Pim, he wrote a letter to his ex-wife Ms. Chang confessing his continued love for her as well as the pain and anguish of the divorce:

> Everyday when I wake the very first thing that comes to my mind is you. It has been that way from the moment I fell in love with you and it will be that way for the rest of my life. I gave you my heart and that is not something that can be taken back. And every night my last thought before I sleep is of you and I say a prayer for you.
>
> As it is with these [Byran Uyesugi] victims you never get over it, it never goes away. For me it is as intense today as it was the very moment you told me that it was over between us. The only thing that I can do is to try and cope. But it will not go away or even diminish.

\*             \*             \*

>   I look to the world that keeps spinning around day after day going on and going forward whether it seems all wrong to me or no, whether it is up or down or inside out, there is always one constant that I know with out doubt or hesitation, and that is my love for you. It will always be, forever.

See **Exhibit "C."**

Although Ms. Chang retained custody over their child Sean, Plaintiff was granted visitation rights. Because of Ms. Chang's busy schedule (she was away on depositions), she would often e-mail and/or otherwise communicate with Plaintiff about who would pick up their son, attending meetings, and whether he could stay with Plaintiff (and presumably with Pim as well). See **Exhibit "D."** She would also discuss with Plaintiff strategy on how to settle his (and her) outstanding debt with the Internal Revenue Service. Id.

In an e-mail that Plaintiff received from his father on or about August 6, 2001, Plaintiff's father wrote:

>   Marriage is a complicated endeavor. You have a very young wife, from a very different background. She may have another agenda, and then maybe not. It seem to be logical that she has. None the less, even if things change in your marriage, you should be pleased that you helped a person in need, and she also you. Hopefully you will always be very good friends. And a friend of Sean.

See **Exhibit "E."**

- 4 -

The following month, on or about September 26, 2001, the issue arose whether Plaintiff would reconcile with Ms. Chang:

> As far as getting back together with Corlis, I do not see how that would be good. It would have been good had you been able to work things through, and stay together, but you didn't. Sean did not benefit from your adversity with each other, and that has not changed. You two have a lot of issues now. Way more than before. The most serious for Sean is the way the two of you view his rearing. You see different things for Sean in his growing years. You have not even come close to working that through. Then there is why you were having problems to begin with. Then the money issue. And of course Pim. Corlis and her work! Do you really believe you two could live together without hurting Sean?
>
> As far as your relationship with Pim goes, it it (sic) good that your are OK no matter how it works out. You are a good person and CAN MAKE IT OK BY YOUR SELF. I wonder if you were single, if that wouldn't really be the best of all possible choices, were it to come to choices. You'd be your own boss and manager. Not a bad thing.

See **Exhibit "F."**

Approximately two (2) years after getting married, Plaintiff drafted two (2) affidavits attesting to his marriage to Pim, presumably as a condition of Pim's immigration and naturalization application (i.e., "green card"). One affidavit dated August 20, 2002, to be signed by Christopher Hans Graff, stated:

> I have personal knowledge that in June 2,000 (sic) Phil and Pim were married and I have known them to be a happily married couple since that time. Both Pim and Phil have made a life together and have a bright future ahead.

See **Exhibit "G."**

Another affidavit (which contained near identical language to that stated above and dated August 22, 2002) was for a Peyason Rimsinth to sign.  See **Exhibit "H."**

Plaintiff separated from Pim two (2) months later on October 16, 2002.  See **Exhibit "I,"** Affidavit of Philip English.  He later filed for divorce on August 18, 2002, citing the basis as being irretrievably broken.  See **Exhibit "J."**

The basis for the divorce was alleged to have been financially driven:

> Q    You separated from Pim approximately when?
>
> A    The end of 2002.
>
> Q    Was it in October of 2002?
>
> A    I believe it was the end of October 2002.
>
> Q    And in terms of the divorce being finalized, and I apologize if this was asked of you already, do you recall approximately when it was finalized?
>
> A    I don't remember.
>
> Q    In terms -- strike that.  Before you separated from Pim, did you ever go to counseling with her?
>
> A    No.
>
> Q    After you separated from Pim, did you ever go to counseling with her?
>
> A    No.
>
> Q    And from the time of your divorce until the present time, have you ever gone to any type of counseling with Pim?
>
> A    No.

- 6 -

Q   In terms of your separation from Pim, that would have been before you had made a formal complaint to the Ethics Commission, is that correct?

A   Yes.

Q   Is it your testimony that the reason you were separated from Pim and eventually divorced from her was - was what? What is your testimony?

A   There was great concern over my situation at the City and County, I was -- already had become aware that I was being retaliated against and my future employment was - seemed in jeopardy.

Q   And you had discussed that with her, correct?

A   Yes.

Q   And when did you start discussing with her that your future employment with the City was in jeopardy?

A   I became aware of that in May of 2002 and so I'm sure I just started to discuss it with her shortly after that.

Q   And in October of 2002 or by the end of October 2002 when you were separated from Pim, you were still employed by the City, correct?

A   Yes, I was.

Q   And by that time, no one had told you you were going to lose your job, is that correct?

A   No, they didn't.

Q   **And by the end of October 2002, based on conversations that you had with Pim and that your future employment was in jeopardy, she made a determination to leave you, as far as you know?**

A   **Yes, that's right.**

Q   And was that the only reason why she left you?

> A   Yes.
>
> MR. LAU:  Objection, calls for speculation.
>
> Q   (By Mr. Lorusso)  To your knowledge, is that the only reason why she left you?
>
> A   Because of my employment situation?
>
> Q   Yes.
>
> A   To my knowledge, that's the only reason she left.
>
> Q   And she's never given you any other reason, correct?
>
> A   Unrelated to those issues?
>
> Q   Correct.
>
> A   That's correct.

See Exhibit "K," Deposition Transcript of Philip E. English taken August 7, 2006, Vol. IV, pg. 497, line 23 - pg. 500, line 6 (emphasis added).

## III. DISCUSSION

Ms. Chang, as the former wife and business partner of Plaintiff, has intimate knowledge regarding Plaintiff's spending habits, his financial irresponsibility, his relationship with Pim (from the time when she was a business associate in Thailand to the time of their divorce), and his emotional and/or psychological state from the time of her marriage to the present.

She can testify as to matters within her direct personal knowledge, including her observations and interactions with Plaintiff.  More importantly she can testify as to matters that Plaintiff told her, as these qualify as being non-hearsay

statements (i.e., admission by party opponent) pursuant to Rule 801(d)(2), Federal Rules of Evidence.

Because Plaintiff has placed his financial condition and relationship with his third wife Pim at issue, CITY Defendants can produce witnesses, like Ms. Chang, to contradict those claims.

First, Plaintiff, at the time of his divorce from Ms. Chang, and through his failed business ventures, incurred substantial debt. This culminated in him filing for personal bankruptcy in 2000, a year after receiving over $100,000 from his divorce agreement and shortly after marrying Pim.[1]

Further, the debt continued to plague Plaintiff notwithstanding his petition for bankruptcy as evidenced by his e-mail exchange with Ms. Chang regarding his outstanding debt with the I.R.S. Ms. Chang has personal knowledge of Plaintiff's debt and can testify as to its origin, amount, and resolution, if any.

Ms. Chang's testimony is also relevant with regard to the substance of Pim's marriage to Plaintiff. She can testify as to the letters that Plaintiff wrote to her after Plaintiff's marriage to Pim, her conversations, if any, with Plaintiff about a possible reconciliation (at a time when he was married to Pim),

---

[1] If debt and financial instability was a concern of Pim, then she would never have married Plaintiff who was saddled with $193,000 in debt at the time of their marriage.

- 9 -

her observations of the relationship between Plaintiff and Pim, and the reasons for Plaintiff's and Pim's marriage/divorce. If Pim left Plaintiff for reasons other than financial reasons, then that evidence is relevant to rebut Plaintiff's claim that she left him because his job was in jeopardy.

Also, and to the extent that Plaintiff may have discussed these things with her, Ms. Chang can testify as to her knowledge about his job, his claim of retaliation, his workers' compensation claim, his ability to work after his voluntary resignation, and damages. Plaintiff has no basis to prevent Ms. Chang from testifying as to these matters, especially when she may have first-hand knowledge of these matters. This testimony is reliable, relevant, and probative and should be allowed.

Because Plaintiff is claiming depression arising from his employment with the City, his pre-whistleblower history of depression is also relevant. Ms. Chang has intimate knowledge of his history of depression including his two (2) previous attempts at suicide. She can also testify as to his emotional state following his divorce, his battle with cancer, issues with their son, and financial troubles.

Testimony by Ms. Chang about Plaintiff's prior work history is also relevant to this case. Any material misrepresentation that Plaintiff may have made on his application

that would have affected the decision to hire him in the first place is a defense that would bar this lawsuit.

Based on her fifteen (15) years of marriage and continued communication with Plaintiff, Ms. Chang can testify as a character witness and can rebut any misrepresentations Plaintiff may make on the witness stand (to the extent that she has personal knowledge).

The fact that Plaintiff alleges that Ms. Chang may harbor ill-will towards Plaintiff does not preclude her from testifying; this is an issue that goes to the weight of the testimony, and not its admissibility.

With regard to Ms. Chang's representation of the City & County or clients insured by State Farm Insurance Company and/or AIG, it is not disputed that such questioning may be made pursuant to Rule 411, Federal Rules of Evidence.  Before being able to do so, however, CITY Defendants request that limitations be implemented to minimize whatever prejudice may arise from the introduction of such evidence.  Therefore, Plaintiff should be required to, as a threshold matter, question Ms. Chang <u>outside</u> the presence of the jury whether she previously/presently represented the City and County and/or State Farm/AIG insureds. If the answer to that question is "no," then there would be no need to raise the issue before the jury.  If Ms Chang answers in the affirmative, the CITY Defendants request that Plaintiff's

"complete cross-examination" be limited to general statistical information (e.g., number of cases, years, etc...), and to not include privileged/confidential matters, specific facts about particular cases, and other irrelevant information.

III. **CONCLUSION**

Based on the foregoing, CITY Defendants submit that Plaintiff's Motion in Limine No. 2 Re: Excluding Testimony of Corlis Chang be denied and that measures be taken to limit Plaintiff's cross-examination of Ms. Chang with regard to any possible bias she may have based on her past representation and/or retention by any of the insurance companies and/or parties involved in this case.

DATED: Honolulu, Hawaii, Sept. 19, 2006.

_____
JAMES KAWASHIMA
RANDALL Y. YAMAMOTO
BRIAN Y. HIYANE
CARTER K. SIU
Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA,
ROBERT O. MAGOTA, and
ANN C. GIMA