00002369.WPD
KAWASHIMA LORUSSO & TOM LLP

JAMES KAWASHIMA      #1145-0
RANDALL Y. YAMAMOTO #3274-0
BRIAN Y. HIYANE      #6045-0
CARTER K. SIU        #7313-0
Topa Financial Center
Fort Street Tower
745 Fort Street, Suite 500
Honolulu, Hawaii 96813
Telephone:     (808)275-0325
Facsimile:     (808)275-0399
Email Address: ryamamoto@kltlaw.com

Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA, ROBERT O. MAGOTA,
and ANN C. GIMA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT STATE OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>   Plaintiff,<br><br>  vs.<br><br>CITY AND COUNTY OF HONOLULU;<br>GARY T. KUROKAWA; ROBERT O.<br>MAGOTA; ANN C. GIMA; and GK<br>APPRAISALS, INC.; JOHN DOES<br>1-10; JANE DOES 1-10; DOE<br>PARTNERSHIPS; DOE<br>CORPORATIONS 1-10; AND DOE<br>ENTITIES 1-10,<br><br>   Defendants. | CIVIL NO. CV04-00108 KSC<br><br>**DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA'S MEMORANDUM IN OPPOSITION TO PLAINTIFF PHILIP E. ENGLISH'S MOTION IN LIMINE NO. 6 RE: EXCLUDING TESTIMONY OR EVIDENCE REGARDING ALLEGED OMISSIONS AND/OR MISSTATEMENTS PERTAINING TO PLAINTIFF PHILIP E. ENGLISH'S EMPLOYMENT APPLICATION TO THE CITY AND COUNTY OF HONOLULU; DECLARATION OF CARTER K. SIU; EXHIBITS "A"-"C"; CERTIFICATE OF SERVICE**<br>**HEARING:**<br>DATE:  September 28, 2006<br>TIME:  10:00 a.m.<br>JUDGE: Hon. Kevin S.C. Chang<br>Trial Date: October 3, 2006 |

**DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA'S MEMORANDUM IN OPPOSITION TO PLAINTIFF PHILIP E. ENGLISH'S MOTION IN LIMINE NO. 6 RE: EXCLUDING TESTIMONY OR EVIDENCE REGARDING ALLEGED OMISSIONS AND/OR MISSTATEMENTS PERTAINING TO PLAINTIFF PHILIP E. ENGLISH'S** <u>**EMPLOYMENT APPLICATION TO THE CITY AND COUNTY OF HONOLULU**</u>

Defendants CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA, (collectively "Defendants City") by and through their attorneys, KAWASHIMA LORUSSO & TOM, LLP, and hereby submits their memorandum in opposition to Plaintiff's Motion In Limine No. 6 regarding the exclusion of testimony or evidence of the omissions and/or misstatements pertaining to Plaintiff PHILIP E. ENGLISH (hereinafter "Plaintiff") employment application to the City and County of Honolulu at trial for this Court's review and consideration.

I.  <u>PROCEDURAL BACKGROUND</u>

Plaintiff has claimed in the foregoing lawsuit that he was retaliated against for certain alleged "whistle blowing" activities (i.e., reporting that a City worker was performing outside/private appraisal work on City time).  One part of the alleged retaliation that Plaintiff is claiming is that he received performance evaluations that did not accurately reflect his capabilities and job performance.  It is anticipated that Plaintiff will testify as to his prior employment history before working for the City emphasizing his appraisal experience.

Plaintiff has claimed that he was the most "qualified" person at the Real Property Assessment Division, including those of his supervisors.  Plaintiff has repeatedly testified that he was told that the City wanted individuals with his background and experience and that, while no guarantees, there would be opportunities for him to seek promotions.  However, Plaintiff did not fully disclose his employment history and background when he initially applied to the City or when he was already employed by the City and was seeking an Administrator's position, despite applications that he certified were true and correct.

Plaintiff has retained an alleged expert, Thomas Ueno, CPA who has expressed opinions with regard to Plaintiff's alleged damage claims, in part based upon Plaintiff's prior work history. (A Motion to Strike Mr. Ueno is the subject of a separate Motion).  If Mr. Ueno is permitted to testify, it should be noted that he did not consider all of Plaintiff's prior work history. In order for a jury to fairly and accurately assess Plaintiff's capabilities and his alleged claims, all of Plaintiff's prior work history, including those that Plaintiff failed to disclose in his employment application before being hired by the City and after being hired when he sought a promotion, are relevant to the present proceedings.  Further, his prior work history is relevant to types of employment that Plaintiff is capable of doing since he voluntarily resigned from the City.

- 3 -

In addition, the Plaintiff is characterizing as an element of damage that he went from being an Appraiser to working as a security guard as a "negative" reflection of his employment. (It should be noted that Defendants City are not making any such characterizations with regard to any job title or employment). Given Plaintiff's characterization, it is important for the jury to consider that Plaintiff has worked at jobs other than as an appraiser prior to his employment with the City which included a failed import/export business; working as a paint clerk at City Mill and cleaning carpets for a friend who worked for Electrolux vacuums.

Finally, Plaintiff makes assertions as to the interview process with the City as to the discussion held without submitting any declarations in support as well as speculates as to the interpretation of the application. Such unsubstantiated allegations should not be considered.

## II.  FACTUAL BACKGROUND

Plaintiff submitted an Employment Application to the City on May 18, 1999. See, Exhibit "A". The Employment Application signed by Plaintiff states in relevant part:

> 9.  Certificate of Applicant:
>
> I HEREBY CERTIFY that all statements made on or in connection with this application including those regarding my education and employment record are true and correct to the best of my knowledge. I agree and understand that any misstatements or omissions of material facts may cause forfeiture

- 4 -

on my part of all rights to any employment in the
service of the City and County of Honolulu. . .

Among other relevant information, the Employment
Application required the Plaintiff to set forth **all previous work
experience**.  Specifically, the Employment Application states:

> **EMPLOYMENT RECORD** - Include all previous work
> experience: Full time, part-time, volunteer and
> military experience.  Begin with your present or
> last job held.  Describe in detail nature of work
> personally performed by you.  Also, give dates and
> explain unemployed periods.  If your duties and
> responsibilities changed while working for the
> same employer, list each separately.

Plaintiff certified his employment history as:

Philip English & Associates; 12 appraisers and staff as
the number of employees he supervised; his title as
Owner/Appraiser; and his duties as Manage company, personell
(sic), review appraisals, train employees, perform appraisals.
He also represented his salary as $40k-40k.  He further certified
that he was employed by Philip English & Associates from 1989 to
1999 (the year of his application).

The other employment history certified by the Plaintiff
is First Nationwide Bank from 1987-1989; Appraisal Resources from
1986-1987; and First Interstate Bank from 1979-1986.

Despite certifications to the contrary, the Plaintiff
did not disclose that he was not working as an appraiser for the
10 year period of time until he applied to the City, supervising
12 employees.  Rather, Plaintiff had stopped working as an

- 5 -

appraiser from 1996-1997 and had terminated all of the appraisers
that had been working for Philip English & Associates.  Not set
forth in the Employment Application is that from 1996-1997, the
Plaintiff along with his second wife, Corlis Chang, operated an
import/export business of personal care products such as shampoos
and soaps.  The only employee of the company was Sathiporn
Songsorn, aka "Pim" who would become Plaintiff's third wife.

    Q.    How long did you have Philip English &
           Associates?

    A.    As an entity, it changed.  It was a sole
           proprietorship, then it became a corporation,
           then the corporation was dissolved and then
           it became a sole proprietorship again.  We
           engaged in different activities under the
           name of Philip English & Associates, real
           appraisal as well as engaged in other
           activities under that title.

    Q.    What was the other activity?

    A.    We got involved in an import/export type
           business.  It was something that Corlis and I
           both got involved in and we just used the
           Philip English & Associates sole
           proprietorship at that time to operate it.
           That was maybe 1996 and '97.  So about a year
           between '96 and '97.

    Q.    What was '96, '97?

    A.    That would be where we were involved in this
           other activity.

    Q.    The import/export business?

    A.    Right.  I think the real estate market had
           kind of slowed down and we were looking for
           other opportunities and that is what we did.

(Deposition of Plaintiff, Vol. 1, page 33, lines 10-25; page 34, lines 1-5)

Q.  In terms of Philip English & Associates in any form with regard to doing real estate appraisals versus doing the import/export business, was there a point in time when you were no longer doing real estate appraisals but were only operating the import/export portion of Philip English & Associates?

A.  During 1996 and '97, again, the real estate market had really slowed down and we were trying to see if we could generate something.

Q.  In 1996, 1997 during that period of time, had you let go any appraisers that had been working for Philip English & Associates?

A.  Yes.  All of them were—we found jobs for everybody and made sure everybody got going again.  Some of them are still real estate appraisers on their own and some of them have gone into other things.

Q.  As far as the import/export business, what type of products were you importing/exporting?

A.  They were personal care products, which would be shampoos and soaps, that sort of thing.

(Deposition of Plaintiff, Vol. 1, page 35, lines 9-25; page 36, lines 1-3)

Q.  In terms of the import/export portion of Philip English & Associates, did that have any employees working either when it was a sole proprietorship or when it was a corporation?

A.  In Thailand, we employed Pim, actually, as I don't know, an assistant.  I didn't speak Thai, so it was very helpful to have somebody over there.

- 7 -

Q.     And Pim being your third wife, correct?

A.     That's correct.

(Deposition of Plaintiff, Vol. 1, page 36, lines 14-22)

Thereafter, at the end of 1997 or the beginning of 1998 after the import/export business failed, the Plaintiff returned to appraisal work on his own (without employees). According to the Plaintiff, in 1998, on the day that Plaintiff was told by Ms. Chang that she wanted a divorce, he was diagnosed with kidney cancer. Plaintiff then testified that he was unable to work for approximately a six month period of time. The Plaintiff's inability to work is not reflected in his Employment Application. Plaintiff's psychological background, depression from his divorce and health problems and history of his inability to work are clearly relevant to his omissions and misstatements in his Employment Application and assertions that the City wanted individuals with his background and experience.

When he returned to the work force, he worked for City Mill in the paint department in 1999 which was not on the Employment Application. Further, Plaintiff worked part-time helping a friend that performed carpet cleaning for Electrolux and was paid in cash. Again, the Electrolux job is not on the Employment Application.

Q.     As far as the import/export business, I know
       you indicated it's from 1996 to 1997. After
       1997, whatever point in time in 1997, did it
       cease its operations?

- 8 -

A.    Yes. Actually it would be right in the
      beginning of 1998.  The reason was simply
      there was an Asian economic crisis and the
      exchange rates went completely the wrong way
      for us.

Q.    And then after 1997, as you indicated, at the
      very beginning of 1998, you go back to doing
      the real estate appraisals, correct?

A.    That's right.

Q.    And then from 1998 until when are you still
      operating as Philip English & Associates
      where the focus is on real estate appraisals?

A.    Right until about 1999.

Q.    And what happens in 1999?

A.    In 1999, my - well, in 1998, my life changed
      quite a bit.  I had kidney cancer and my wife
      wanted to divorce me.

Q.    Going back, you had indicated that, at the
      time that you were making a change again from
      working for Philip English & Associates to
      going to working with the City - by the way,
      were there any other jobs in that interim
      period?

A.    Yes.

Q.    What other jobs were there?

A.    I worked at City Mill.

Q.    And what did you do at City Mill?

A.    I worked in the paint department.

Q.    And from aproximately when to when did you
      work for City Mill?

A.    I'm not sure of the dates.  It would have
      been in 1999.  And that was a matter of
      months.  I'm not sure of the dates.

                    - 9 -

Q.    And in terms of working in the paint
      department, was your job title a clerk?

A.    Yes.

(Deposition of Plaintiff, Vol. 1, page 36, lines 23-25; page
37, lines 1-4; page 37, lines 24-25; page 38, lines 1-10;
page 40, lines 4-21)

Q.    When did you file for bankruptcy?  I don't
      mean the specific date, but in the time
      period.

A.    I think it must have been in 1999 or 2000.

Q.    And was this while you were still operating
      Philip English & Associates, were you at City
      Mill, were you not employed or something
      else?

A.    I was not operating Philip English &
      Associates at that time.  And I don't know if
      I was at City Mill or not.  I don't really
      recall.

(Deposition of Plaintiff, Vol. 1, page 46, lines 8-16).

Q.    Your depression back in 1998, when you first
      began seeing Kay Wong, did it affect your
      ability to obtain or function in an
      employment situation?

A.    Well, it was in the beginning part of 1998
      that Corlis told me she wanted the divorce.
      And that was a severe time for me as far as
      emotional upset.  We separated.  And while I
      was living somewhere else, that is when I
      started doing real estate appraising.  But I
      continued to see Dr. Wong, as well.

Q.    And in terms of earning a living, was that
      when you had applied with the City or was
      there a period of time when it did affect
      your ability to earn a living?

- 10 -

A.     Initially, at the very beginning when the
       emotional upset was so severe, absolutely I
       could not work.

Q.     When you say initially, from when to
       approximately when was your ability to
       function in an employment capacity affected?

A.     I think I would say approximately six months.
       But it's not that it's over.  There were
       things that continued.  At the end of 1998 -
       you see, in the beginning, Corlis, in 1998,
       she tells me I want a divorce.  During that
       time, we are maybe trying to reconcile.  We
       are trying to - we are separated, but I
       continue to come over to the house and do the
       yard work.  You understand what I'm saying.
       Things aren't coming apart.  You still have
       to make a living and you are still trying to
       do whatever you can do.
       At the end of '98, actually all in one day,
       Corlis gave me divorce papers that were very
       severe and an hour later my doctor called me
       and told me you have kidney cancer and you
       might not live for more then five years.
       That was a pretty tough day.
       So I don't want to imply that this is - there
       is an ongoing certain condition/event that is
       happening in life.  So you understand maybe
       more clearly.

(Deposition of Plaintiff, Vol. 1, page 50, lines 13-21; page
51, lines 1-25; page 52, line 1).

Q.     (By Mr. Lorusso) Looking at Exhibit 3, this
       employment application, is this in fact an
       employment application that you had submitted
       to the City as of May 18, 1999?

A.     It appears to be, yes.

Q.     Is that your signature that appears on this
       application?

A.     Yes.

Q.     And that is both on the first page as well as
       the fourth page of this document, correct?

A.     Yes.

Q.     And with regard to the position or positions
       that you were applying for, it would be real
       property appraiser II, III and IV, is that
       correct?

A.     That's correct.

Q.     And with regard to Question No. 9 on page one
       of this four-page document, it indicates, "I
       hereby certify that all statements made on or
       in connection with this application,
       including those regarding my education and
       employment record, are true and correct to
       the best of my knowledge." Did I read that
       correctly?

A.     Yes.

Q.     And you then signed the document on page one,
       correct?

A.     That's correct.

Q.     And then there is also a question with regard
       to your employment record, correct?

A.     Yes.

Q.     And it states, "include all previous work
       experience full time, part time, volunteer
       and military experience. Begin with your
       present or last job held. Describe in detail
       nature of work personally performed by you.
       Also give dates and explain unemployed
       periods. If your duties and responsibilities
       changed while working for the same employer,
       list each separately." First of all, did I
       read that correctly?

A.     Yes, you did.

Q.     With regards to the jobs you have listed, you
       list Philip English & Associates, correct?

A.     Yes.

- 12 -

Q.   First Nationwide Bank, correct?

A.   Correct.

Q.   Appraisal Resource?

A.   Yes.

Q.   And First Interstate Mortgage, correct?

A.   Yes.

Q.   What is not on the application is your job
     with City Mill, is that correct?

A.   No, it's not.

Q.   When you say no, it's not, with regard to my
     question, the position that you held with
     City Mill is not on the application, correct?

A.   Correct, it is not on the application.

Q.   And in addition to City Mill, before you
     began your work with the City, you had also
     worked at Electrolux, is that correct?

A.   I worked at – I'm not even sure if I was an
     employee.  That was actually an issue.  I had
     a friend who worked there.  I went to help
     them and there was an issue with how they –
     you know, what kind of employment status it
     was.  But essentially I was helping a friend
     of mine there.

Q.   And Electrolux, what type of job is that?

A.   What I was doing?

Q.   Yes, what were you doing?

A.   I was helping my friend who you had a carpet
     cleaning business.

Q.   Did you ever receive any monies from helping
     or assisting your friend at Electrolux?

- 13 -

A.    He paid me out of his money.  But I don't know that I received payment from Electrolux. I'm unclear about that.  Maybe they did something where I got some kind of commission or something from one of the jobs they were doing and they decided to pay me somehow through that.  But it was awkward and something was wrong with it and ultimately I did not stay there because of those issues, frankly.

Q.    Were you paid in cash?

A.    I was paid in cash.  Again, I was helping my friend.  It was an extremely part-time type of work.  Yes.

(Deposition of Plaintiff, Vol. 2, page 98, lines 6-25; page 99, lines 1-5; page 99, lines 12-25; page 100, lines 1-25; page 101, lines 1-15).

Q.    After the interview for the appraiser II position, was there anything else along the lines of the employment process that occurred before your being told you have the job?

A.    No.  I just want to say, during the interview, it was an unusual interview.  The interview process simply was primarily them asking me why did I want to work at the division and why would someone of my experience take the appraiser II position.  I think they were curious themselves about that.
But other than that, there was no other communication.  Other then I got the job – I guess I had some kind of orientation that they have for all City employees coming on line.  And it was a very general, broad kind of thing where they hand out material about being a City employee.  And it was a real extraordinarily broad orientation for City employees in general.

(Deposition of Plaintiff, Vol. 2, page 124, lines 6-22).

Contrary to the unsubstantiated assertions in Plaintiff's Motion, Plaintiff testified that it was an unusual interview process with few questions asked.

In addition to Plaintiff's omissions and misrepresentations in the 1999 Employment Application, the Plaintiff made similar misrepresentations and omissions that he certified in his January 17, 2003 application for the Administrator's position.  In that application he again failed to indicate that he stopped appraisal work in 1996; that he had a failed import/export business; that he worked for City Mill and that he worked as a carpet cleaner.  He also increased his range of salary from $40,000 to $45,000.  See, Exhibit "B".

II.  **DISCUSSION**

A.  **Plaintiff's Employment History, Omissions and Misstatements are Admissible**

Plaintiff has placed his employment capabilities at issue with regard to his alleged claims for retaliation. Further, the credibility of a witness is always at issue.  In this case, Plaintiff has certified his employment history and experience and by his own admission, has "omitted and/or misstated" information contained in the Employment Application. Such omissions and misstatements are clearly relevant and probative and should be allowed pursuant to Federal Rules of Evidence 401 and 402.  Further, it is relevant as to Plaintiff's

- 15 -

prior psychological history before working with the City which includes a failed appraisal business; a failed import/export company; his inability to work as a result of a divorce and health problems; working for City Mill and performing carpet cleaning part-time for cash.

While Plaintiff will try to assert that he was the type of individual that the City wanted based on his "experience", Plaintiff should not be allowed to selectively state what his prior employment or life experience was before being employed by the City.

Plaintiff's citation to Aguilera-Cota v. U.S. Immigration and Naturalization Service, 914 F.2d 1375 (9th Cir.) (a copy of which is attached as Exhibit "C") as to the admissibility of the Plaintiff's omissions/misstatements in the Employment Application, is disingenuous at best. Aguilera-Cota is not an employment action. Rather, it is a review of an Order by the Board of Immigration Appeals denying Aguilera-Cota asylum based on the standards under the Immigration and Nationality Act (where an individual is seeking asylum due to fear of his life if returned to his native country) and is not relevant to the issues presented in this case and should be disregarded.

As set forth above, the admitted omissions and misrepresentations by Plaintiff in his employment application are

relevant, probative and outweigh any alleged prejudice to Plaintiff and should be admitted.

Based on the above, Defendants City respectfully request that Plaintiff's Motion be denied.

DATED:  Honolulu, Hawaii, _____SEP 1 9 2006_____.


_____
JAMES KAWASHIMA
RANDALL Y. YAMAMOTO
BRIAN Y. HIYANE
CARTER K. SIU
Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA,
ROBERT O. MAGOTA, and
ANN C. GIMA