00002387.WPD
KAWASHIMA LORUSSO & TOM LLP

JAMES KAWASHIMA      #1145-0
RANDALL Y. YAMAMOTO  #3274-0
BRIAN Y. HIYANE      #6045-0
CARTER K. SIU        #7313-0
Topa Financial Center
Fort Street Tower
745 Fort Street, Suite 500
Honolulu, Hawaii 96813
Telephone:      (808)275-0325
Facsimile:      (808)275-0399
Email Address: ryamamoto@kltlaw.com

Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA, ROBERT O. MAGOTA,
and ANN C. GIMA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT STATE OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>    Plaintiff,<br><br>  vs.<br><br>CITY AND COUNTY OF HONOLULU;<br>GARY T. KUROKAWA; ROBERT O.<br>MAGOTA; ANN C. GIMA; and GK<br>APPRAISALS, INC.; JOHN DOES<br>1-10; JANE DOES 1-10; DOE<br>PARTNERSHIPS; DOE<br>CORPORATIONS 1-10; AND DOE<br>ENTITIES 1-10,<br><br>    Defendants.<br>_____ | CIVIL NO. CV04-00108 KSC<br><br>DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA'S MEMORANDUM IN OPPOSITION TO PLAINTIFF PHILIP E. ENGLISH'S MOTION IN LIMINE NO. 8 RE: EXCLUDING EVIDENCE AND TESTIMONY SUGGESTING OR IMPLICATING PLAINTIFF PHILIP E. ENGLISH AND ROGER S. MOSELEY IF ANY WRONGDOING, FILED ON 9/12/06; DECLARATION OF RANDALL Y. YAMAMOTO; EXHIBITS "1" - "4" CERTIFICATE OF SERVICE<br><br><u>HEARING</u>:<br>DATE: September 28, 2006<br>TIME: 10:00 a.m.<br>JUDGE: Hon. Kevin S.C. Chang<br><br>Trial Date: October 3, 2006 |

**DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA'S MEMORANDUM IN OPPOSITION TO PLAINTIFF PHILIP E. ENGLISH'S MOTION IN LIMINE NO. 8 RE: EXCLUDING EVIDENCE AND TESTIMONY SUGGESTING OR IMPLICATING PLAINTIFF PHILIP E. ENGLISH AND ROGER S. MOSELEY IF ANY WRONGDOING, FILED ON 9/12/06**

Comes now Defendants CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGATO and ANN C. GIMA, (hereinafter the "City Defendants"), by and through their attorneys, KAWASHIMA LORUSSO & TOM LLP, hereby submits their memorandum in opposition to Plaintiff Philip E. English's Motion in Limine No. 8 re: Excluding Evidence and Testimony Suggesting or Implicating Plaintiff Philip E. English and Roger S. Moseley if any Wrongdoing.

I.   INTRODUCTION

Plaintiff's Motion in Limine No. 8 seeks to exclude "evidence and testimony suggesting or implicating Plaintiff Philip E. English and Roger S. Moseley if [sic] any wrongdoing." By its own title, this motion cannot be granted as Defendants clearly must be allowed to introduce evidence and testimony of Plaintiff's wrongdoing. Moreover, his relationship (and the timing of that relationship) with his Attorney Roger Moseley is relevant to the issues in this case. Plaintiff's remaining claims or causes of actions against the City Defendants also includes tort claims; those remaining claims are as follows:

2

>    Count I - §1983
>
>    Count IV - H.R.S. §378-62
>
>    Count V - Wilful, wanton and reckless conduct (<u>Iddings</u> claim)
>
>    Count VI - Intentional Infliction of Emotional Distress
>
>    Count VII - Negligent Infliction of Emotional Distress
>
>    Count VIII - Defamation
>
>    Count XII - Punitive Damages

<u>See</u> Plaintiff Philip E. English's First Amended Pretrial Statement, filed herein, at p. 41-45 (except Plaintiff listed claims/counts that were dismissed by Order Granting Defendant City's Motion for Summary Judgment and Granting Defendant Kurokawa, Magota and Gima's Motion for Summary Judgment, dated June 30, 2006, dismissing Counts IX and X.

Plaintiff has testified, and his counsel Roger Moseley, has confirmed that Plaintiff retained Attorney Roger Moseley on August 14, 2002:

>    Q.   With regard to how assessments were being made or not made, did you have conversations with Mr. Moseley about that, not during the course of a deposition?
>
>    MR. MOSELEY: Are you talking about in the context of our attorney/client relationship?
>
>    MR. LORUSSO: That would actually be the question as to whether or not just having conversations and when you were retained or not retained.
>
>    MR. MOSELEY: I'm not sure I understand your question. I'm going to instruct the witness not to answer any questions with respect to conversations you may have had with me after your retention of me. And I believe the date on which you first retained me for anything was August 14th of 2002.

> THE WITNESS: That I retained you?
>
> MR. MOSELEY: Well, the issue there was - - what came out of that was the phone number and the name of the FBI agent. It wasn't a general retention.
>
> THE WITNESS: Maybe I don't understand what that means.
>
> Q. (By Mr. Lorusso) Let me go back, Mr. English. Let's say before August 14th of 2002, had you had any conversations with Mr. Moseley in terms of any of the activities that you are alleging here in the complaint that were occurring here at the City?
>
> A. No.
>
> Q. On or about August 14, 2002, would have been the period of time when you had any discussions with Mr. Moseley about the allegations that are set forth in the complaint, correct?
>
> A. At that time, I'm not sure to what extent I told Roger. I did tell him that there were some issues, some problems. Maybe I'm not - -
>
> MR. MOSELEY: I don't want you to divulge your communications with me.
>
> THE WITNESS: All right. I guess, by the advice my counsel, I can't answer that question.
>
> MR. MOSELEY: Yes.
>
> Q. (By Mr. Lorusso) Are you going to follow the advice of counsel?
>
> A. Yes, I am.

See Exhibit "1", Transcript of the Testimony of Philip English, Volume III, p. 267-268, lines 2-19.

Clearly, Plaintiff and his counsel asserted that the relationship began on August 14, 2002 and continued on thereafter; thus, his counsel instructed his client not to "answer any questions with

4

respect to conversations you may have had with me after your retention of me."

        Then his counsel confirmed the retention again:

> MR. MOSELEY: I would like to a make a representation to you guys. There was a telephone call. The initial contact was, I believe it was, on August 14th, 2002. And during that conversation, I was essentially retained by Mr. English for a very, very limited purpose. But there was no conversation that I ever had with Mr. English from and after August 14th, 2002 which was not privileged in every instance and there were representations with respect to different aspects. And there were at least three different purposes and issues for by which I have been retained by Mr. English as counsel, actually four.
>
> But there has been no conversation with him since then that wasn't privileged. And there was no conversation with him that was ever conducted in my capacity as an attorney for Waikiki Shore after that period of time.
>
> MR. LORUSSO: Mr. Moseley, if I can inquire, and obviously, depending on what my question is, I'm sure that will depend on your response. When you say that there were four areas, may I ask just the four areas, as I know you are not or, for the record, I know you are not waiving the attorney/client privilege. But may I ask what those four areas were?
>
> MR. MOSELEY: I think the four areas are actually obvious for the record. The first being the FBI contact, the second being the contact with the Ethics Commission, the third being the workers' comp matter and the fourth being this case. And that is actually the chronological order in which they occurred, as well. And that is not to be construed as a waiver of any privilege information.

5

>       Anyway, you may also ask Mr. English with - I
> think that is enough. **I think Mr. English would
> also represent that from and after August 14th, he
> never worked on any case of any material or
> substantive nature on which I was on the other
> side.** And actually the truth is that it was
> sometime prior to that that he was essentially
> devoid of authority for doing that.
>
> Q.    (By Mr. Lorusso) Mr. English, you have heard the
>       representations that your counsel has made. Do
>       you agree with those representations?
>
> A.    Yes, I do.

Id. at p. 270-271, lines 23-1 [emphasis added.]

Plaintiff never disclosed this attorney-client relationship to the City nor to any of his supervisors; instead, he claims that "So from August 14th on, I didn't perform any work that I'm aware of that had anything substantially to do with the Waikiki Shore Condominiums. [represented by Moseley]". Id. at p. 273, lines 5-7 [correction inserted by Plaintiff thereafter]. Plaintiff however confirmed that Waikiki Shores was part of his caseload and that Roger Moseley represented owners at Waikiki Shores. Id. at. 274-275, lines 10-2.

Nevertheless, there was no disclosure of the attorney-client relationship between Plaintiff and Attorney Moseley until February 2003. Id. at p. 275-277. Yet it is clear that Plaintiff was involved with Waikiki Shores after August 14, 2002, despite his statements to the contrary. See Exhibit "2" attached hereto.

6

But the inference(s) is clear: either Plaintiff did work on behalf of the City with his Attorney Moseley on the other side (and without any disclosure), or without telling his supervisor of the relationship, he did not do substantive work on those cases although he was the assigned/responsible person. Those cases were not reassigned until after the "disclosure" in February of 2003.

II. <u>DISCUSSION/ARGUMENT</u>

  Evidence of Plaintiff's Wrongdoing is <u>Clearly Relevant.</u>

Testimony and evidence of the relationship between Plaintiff and Attorney Roger Moseley is clearly relevant in this case, pursuant to Rule 401, FRE.

One of the Plaintiff's claims of retaliation is that his performance evaluations were "negative" due to his complaints and not because of his work performance. <u>See</u> Exhibit "1" at p. 544, lines 4-17. His work performance is thus at issue. The City Defendants maintain that Plaintiff for some reason chose not to do the work; thus his performance evaluation noted that and he was counseled for that.

City Defendants, of course, were not aware that Plaintiff had retained Roger Moseley on August 14, 2002; and, Roger Moseley was an attorney for a number of taxpayers and therefore adverse to the City. (Arguably, that was the reason Attorney Moseley was chosen by Plaintiff.) But Plaintiff

apparently concedes that he did not perform "anything substantially to do with Waikiki Shore Condominiums" after that retention, despite the fact that he was the appraiser assigned to it and met with the Deputy Corporation Counsel assigned to it.

This testimony and the inferences to be reasonably drawn support the City Defendants' position that there were work performance issues that supported the counseling and evaluations.

It also goes to Plaintiffs' motivation, or lack thereof, and whether his actions, and/or inactions, were due to his "setting up" of his claims.

Obviously, the non-disclosure of the retention and attorney-client relationship was meant to conceal it from the City.

In his September 11, 2006, Attorney Christopher J. Muzzi, a partner of Roger Moseley, claimed that there was no attorney-client privilege as to "the dates of representation and the general nature of the representation of Mr. English." In that letter [Exhibit "A" to Plaintiff's Motion], Attorney Muzzi represented that "[o]n or about August 14, 2002 Phil English contacted Roger Moseley for the general purpose of obtaining contact information for the Federal Bureau of Investigation and/or the U.S. Attorney."

Yet in Attorney Moseley's letter to Judge J. Michael Seabright on September 19, 2005, Attorney Moseley confirms that

there were substantive discussions: "In that telephone call [to then U.S. Attorney Seabright] I outlined briefly <u>some of the allegations made in the present complaint</u>, although I do not believe that I disclosed the client's name, or provided any significant detail."  <u>See</u> Exhibit "3" attached hereto, [emphasis added].  Obviously in August of 2002, there were discussions of the substantive allegations of the "present complaint."

Moreover, Attorney Moseley asserted the attorney-client privilege from August 14, 2002 to the present, and continuously: "... I'm going to instruct the witness not to answer <u>any questions</u> with respect to conversations you may have had with me after your retention of me.  And I believe the date on which you first retained me for anything was August 14th of 2002." p. 267, at lines 11-15.

Therefore, to now say (in Muzzi's September 11, 2006 letter) that "[b]etween August 14, 2002 and early December 2002 there was no attorney-client relationship, or contemplated attorney-client relationship, between Roger Moseley and Mr. English", is just self-serving and revisionist history.

Likewise, that September 11, 2006 letter claims that"[o]n or about August 25, 2003 Roger Moseley agreed to represent Mr. English generally with respect to his worker's compensation claim . . . "[<u>See</u> Exhibit "A" to Plaintiff's Motion in Limine], but Attorney Moseley was involved in Plaintiff's

9

worker's compensation claim in <u>April</u> of 2003. <u>See</u> Exhibit "4" attached hereto.

That letter is obviously meant to mislead the reader, as is the Plaintiff's motion.

III. <u>CONCLUSION</u>

The testimony and evidence of the attorney-client relationship and of Plaintiff's wrongdoing is relevant; although it maybe detrimental to Plaintiff's case, it is <u>not</u> overly prejudicial under Rule 403, FRE.

DATED: Honolulu, Hawaii, __SEP 1 9 2006__.

_____
JAMES KAWASHIMA
RANDALL Y. YAMAMOTO
BRIAN Y. HIYANE
CARTER K. SIU
Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA,
ROBERT O. MAGOTA, and
ANN C. GIMA