COPY

243

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF HAWAII

3

4    PHILIP E. ENGLISH,              ) CIVIL NO. CV04-00108 JMS/KSC
                                     )
5              Plaintiff,            )
                                     )
6         vs.                        )
                                     )
7    CITY AND COUNTY OF HONOLULU;    ) VOLUME III
     GARY T. KUROKAWA; ROBERT        ) PAGES 243 THROUGH 403
8    MAGAOTA; ANN C. GIMA; and       )
     GK APPRAISALS, INC.; et al.,    )
9                                    )
               Defendants.           )
10                                   )
     _____)

11

12

13

14

15          DEPOSITION OF PHILIP E. ENGLISH

16   Taken on behalf of Defendants City & County of Honolulu,

17   Gary T. Kurokawa, Robert O. Magota and Ann C. Gima, at the

18   law offices of Watanabe Ing Kawashima & Komeiji, 5th Floor

19   Hawaii Tower, 745 Fort Street, Honolulu, Hawaii 96813,

20   commencing at 9:51 a.m., on Wednesday, October 5, 2005,

21   pursuant to Notice.

22

23

     BEFORE:
24
         Donna Kohls, CSR 146
25       Notary Public, State of Hawaii

EXHIBIT "1"

CARNAZZO COURT-REPORTING CO., LTD.
532-0222

1  prepared and those were all things that I worked on.

2  Q    With regard to how assessments were being made or not

3  made, did you have conversations with Mr. Moseley about

4  that, not during the course of a deposition?

5          MR. MOSELEY:  Are you talking about in the

6  context of our attorney/client relationship?

7          MR. LORUSSO:  That would actually be the

8  question as to whether or not just having conversations

9  and when you were retained or not retained.

10          MR. MOSELEY:  I'm not sure I understand your

11  question.  I'm going to instruct the witness not to answer

12  any questions with respect to conversations you may have

13  had with me after your retention of me.  And I believe the

14  date on which you first retained me for anything was

15  August 14th of 2002.

16          THE WITNESS:  That I retained you?

17          MR. MOSELEY:  Well, the issue there was-- what

18  came out of that was the phone number and the name of the

19  FBI agent.  It wasn't a general retention.

20          THE WITNESS:  Maybe I don't understand what that

21  means.

22  Q    (By Mr. Lorusso)  Let me go back, Mr. English.  Let's

23  say before August 14th of 2002, had you had any

24  conversations with Mr. Moseley in terms of any of the

25  activities that you are alleging here in the complaint

1    that were occurring here at the City?

2    A    No.

3    Q    On or about August 14, 2002 would have been the

4    period of time when you had any discussions with Mr.

5    Moseley about the allegations that are set forth in the

6    complaint, correct?

7    A    At that time, I'm not sure to what extent I told

8    Roger.  I did tell him that there were some issues, some

9    problems.  Maybe I'm not--

10             MR. MOSELEY:  I don't want you to divulge your

11   communications with me.

12             THE WITNESS:  All right.  I guess, by the advice

13   my counsel, I can't answer that question.

14             MR. LORUSSO:  Just to be clear, are you

15   instructing him not to answer that question?

16             MR. MOSELEY:  Yes.

17   Q    (By Mr. Lorusso)  Are you going to follow the advice

18   of counsel?

19   A    Yes, I am.

20   Q    I say this simply for the record.  If necessary, and

21   if appropriate, if there is a need to go to court, file a

22   motion and ask the court to compel you to answer the last

23   question that I just had as well as a series of follow up

24   questions that I would have, as I understand it, based

25   upon the attorney/client privilege, your attorney is

1  instructing you not to answer the question and that you

2  are following the advice of your attorney, is that

3  correct?

4  A    I am.  Would it be possible to take a moment for me

5  to talk to my lawyer?

6  Q    Sure.  As I told you at the beginning, any time you

7  want to take a break, just take a break.

8        (Recess)

9        MR. MOSELEY:  I would like to make a

10  representation to you guys.  There was a telephone call.

11  The initial contact was, I believe it was, on August 14th,

12  2002.  And during that conversation, I was essentially

13  retained by Mr. English for a very, very limited purpose.

14  But there was no conversation that I ever had with Mr.

15  English from and after August 14th, 2002 which was not

16  privileged in every instance and there were

17  representations with respect to different aspects.  And

18  there were at least three different purposes and issues

19  for by which I have been retained by Mr. English as

20  counsel, actually four.

21        But there has been no conversation with him since

22  then that wasn't privileged.  And there was no

23  conversation with him that was ever conducted in my

24  capacity as an attorney for Waikiki Shore after that

25  period of time.

1          MR. LORUSSO:  Mr. Moseley, if I can inquire, and

2    obviously, depending on what my question is, I'm sure that

3    will depend on your response.  When you say that there

4    were four areas, may I ask just the four areas, as I know

5    you are not or, for the record, I know you are not waiving

6    the attorney/client privilege.  But may I ask what those

7    four areas were?

8          MR. MOSELEY:  I think the four areas are

9    actually obvious for the record.  The first being the FBI

10   contact, the second being the contact with the Ethics

11   Commission, the third being the worker's comp matter and

12   the fourth being this case.  And that is actually the

13   chronological order in which they occurred, as well.  And

14   that is not to be construed as a waiver of any privileged

15   information.

16        Anyway, you may also ask Mr. English with-- I think

17   that is enough.  I think Mr. English would also represent

18   that from and after August 14th, he never worked on any

19   case of any material or substantive nature on which I was

20   on the other side.  And actually the truth is that it was

21   sometime prior to that that he was essentially devoid of

22   authority for doing that.

23   Q    (By Mr. Lorusso)  Mr. English, you have heard the

24   representations that your counsel has made.  Do you agree

25   with those representations?

1  A    Yes, I do.

2  Q    Just to be clear, from August 14, 2002, moving

3  forward while you were still with the City & County of

4  Honolulu, were there in fact cases that you had or that

5  you were responsible for or worked on in any way, shape or

6  form, whether it was material or substantive, in which

7  they were cases where Mr. Moseley was representing

8  taxpayers on the opposite side of the City?

9  A    Prior to August 14th-- let me put it in context.

10 Q    That is not my question.  It's a simple question.

11 A    If you let me put it in context, I can answer it for

12 you completely.  But if you want to do it that way, we can

13 do it that way.

14 Q    Mr. English, please, the process will go faster.

15 After August 14th, 2002, any cases that you had where Mr.

16 Moseley was on the opposite side?

17 A    Mike, it seems to me the process would go more

18 quickly if I can answer the question.

19 Q    Mr. English, when you get your law degree and when

20 you have the opportunity to ask someone questions, I

21 welcome you to do it.  In the meantime, very respectfully,

22 sir, this is my deposition and I'm going to conduct it the

23 way that I believe is the proper process whether you agree

24 or disagree with me.  Okay?

25 A    Okay.

1   Condominiums.  However, the activities that were happening

2   at the tax office related to those at some point in time

3   were actually being taken away from me.  And I didn't know

4   why, frankly, at the time.  But they were being taken away

5   from me.  So from August 14th on, I didn't perform any

6   work that I'm aware of that had anything substantially to

7   do with the Waikiki Shore Condominiums. *represented by Moseley.*

8   Q     When you say substantially, please define that.

9   A     I think, at one point, I wrote an email to one of the

10  clerical who had a question about Waikiki Shore units and

11  I told her I don't know what is going on.  Those are the

12  kinds of activities that I was involved in.  So that is

13  the extent.  I don't know how to say substantially or to

14  do it coming from that direction or the other direction.

15  But it wasn't any more than that that I recall.

16  Q     I'm just trying to find out, since it's your word,

17  Mr. English.  When you said you didn't do any substantial

18  work, I just want to do know, in your mind, what that

19  means to perform substantial work, since that is your term

20  not mine.

21  A     I guess it would be something involving valuations *for case's use*

22  and something other than very minor administrative *appeal*

23  internal correspondence types of things, that sort of

24  thing.

25  Q     At least from after August 14th, 2002 and moving

1  forward up until-- strike that.  From August 14, 2002, you

2  were still responsible for the Waikiki Shores.  But what

3  you are stating is that you just did minor administrative

4  type of correspondence on it, is that correct?

5        MR. MOSELEY:  I object to the form of that

6  question, as well.  It's vague and ambiguous to the term

7  responsible.  You made the statement you were responsible

8  for the Waikiki Shore.  I don't think that's the word

9  being used.

10  Q    (By Mr. Lorusso)  Let me ask you this.  Did you have

11  a certain caseload with regard to certain types of real

12  estate, be it commercial or residential properties?

13  A    Yes.

14  Q    And was Waikiki Shores part of your caseload?

15  A    Officially, yes.

16  Q    Was it still part of your caseload after August 14,

17  2002?

18  A    Officially, yes. But as I mentioned earlier, as a

19  practical matter, the decisions that were being made on

20  those cases were being made by other people, not by me.

21  They were-- and I don't know why that was happening.  But

22  other than I know there was some concern about some board

23  member that I was taking the side of the taxpayer as

24  opposed to what they thought I should be doing, something

25  to that effect.  But something was happening where they

1   were taking the responsibility away from me.  And it was

2   particularly on the Waikiki Shore condos. *appeals.*

3   Q    Based on your earlier testimony, and please correct

4   me if I'm wrong, it was in and around either February 5th

5   or 10th, 2003 that you informed the City for the first

6   time that Mr. Moseley was your counsel, correct?

7   A    I don't think I testified to that, did I?

8   Q    That is why I said correct me if I'm wrong.  You had

9   indicated that at the February 10th, 2003 meeting, you

10  wanted counsel to be present.

11          MR. MOSELEY:  I have to object.  I think that

12  you are misstating the testimony if you are talking about

13  that, because Chuck Tatto is an employee and officer of

14  the City.  The testimony is very clear that Chuck Tatto

15  was informed that I was his counsel as of January 3rd.

16  Q    (By Mr. Lorusso)  I didn't mean to misrepresent that

17  way.  When I said with regard to the City, other than

18  Chuck Tatto as part of the Ethics Commission, with regard

19  to either Ann Gima, Gary Kurokawa, Bob Magota, people

20  within the real estate appraisal division, was it in

21  February of 2003 that that was the first time that you had

22  informed anyone in that division that Mr. Moseley was your

23  counsel?

24  A    I believe that it must have been, that must have been

25  the time.  I don't know that I informed them that he was

1   my counsel, but that I wanted somebody else in the

2   meetings.  And I guess they can conclude that.

3   Q    Let me be clear about that, too, because I wasn't

4   trying to imply or mischaracterize in my question that you

5   actually had informed anyone in the appraisal division

6   that it was specifically Mr. Moseley.  So let me clarify

7   that.

8        You had indicated in the February 2003 meeting that

9   you wanted counsel present?

10  A    Correct.

11  Q    As you sit here today, did you inform anyone in the

12  appraisal division that it was Mr. Moseley as opposed to

13  just I want counsel?

14  A    Yes, I believe I did.  I told Robert Magota.

15  Q    And before that time, before the February 2003

16  meeting, had you told anyone in the real estate appraisal

17  division that Mr. Moseley was your attorney?

18  A    I don't recall telling anybody else.

19  Q    And are there any documents or anything else to help

20  refresh your memory if you did tell anyone before February

21  2003 that Mr. Moseley was your attorney in the appraisal

22  division?

23  A    I don't believe there would be any documents to that

24  effect.  I'm not aware of any.

25        MR. MOSELEY:  As a matter of clarity, he did

1    testify earlier about emails sent basically stating I'm

2    not supposed to work on cases in which Mr. Moseley-- I

3    honestly know the dates of those.  But there was earlier

4    testimony about that.

5    Q    (By Mr. Lorusso)  You did send an email, correct?

6    A    I did.

7    Q    And when was that?

8    A    That was after that February 10th meeting.  I believe

9    it was around February 5th that Chuck Tatto contacted Gary

10   Kurokawa and advised him that-- I think maybe Chuck Tatto

11   advised in that email that Roger Moseley was my counsel.

12   So they may have known before I mentioned it to them.  I'm

13   not sure.

14   Q    You don't know one way or the other, correct?

15   A    I'm not sure.  The dates of the emails are in there.

16   Q    But you don't know one way or the other if Mr. Tatto

17   had informed anyone in the real estate appraisal division

18   before February 5th, 2003 that Mr. Moseley was your

19   attorney, correct?

20   A    I'm not sure of the date.  I know in his email that

21   is what he represents, but I'm not sure of the date of

22   that email.

23   Q    After your February 10, 2003 meeting, any other

24   discussions, meetings with anyone in the real estate

25   appraisal division with regard to your concerns about

403

```
 1   STATE OF HAWAII              )
                                  )
 2       I, DONNA KOHLS, C.S.R., a Notary Public in and for

 3   the State of Hawaii, do hereby certify:

 4       That on October 5, 2005, at 9:51 a.m., appeared

 5   before me PHILIP E. ENGLISH, the witness whose testimony

 6   is contained herein, that prior to being examined, the

 7   witness was by me duly sworn; that the proceedings were

 8   taken in computerized machine shorthand by me and were

 9   reduced to print; that the foregoing represents to the

10   best of my ability, a correct transcript of the

11   proceedings had in the foregoing matter;

12       That the witness, if applicable, was notified through

13   counsel, by mail or by telephone to appear and sign; that

14   if the transcript is not signed, either the reading and

15   signing were waived by the witness and all parties, or the

16   witness failed to appear and the original is therefore

17   kept on file without signature pursuant to Court Rules.

18       I further certify that I am not counsel for any of

19   the parties hereto, nor in any way interested in the

20   outcome of the cause named in the caption.

21       Dated:_____OCT 1 7 2005_____

22

23       _____
         Donna Kohls, C.S.R., No. 146
24       Notary Public, State of Hawaii
         My commission expires: 7-21-2010

25
```

COPY

404

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

---:---

PHILIP E. ENGLISH,               )   CIVIL NO. CV04-00108 SOM KSC
                                 )
            Plaintiff,           )
                                 )
       vs.                       )          Volume IV
                                 )
CITY AND COUNTY OF HONOLULU;     )
GARY T. KUROKAWA; ROBERT O.      )
MAGOTA; ANN C. GIMA; and GK      )
APPRAISALS, INC.; JOHN DOES      )
1-10; JANE DOES 1-10; DOE        )
PARTNERSHIPS; DOE                )
CORPORATIONS 1-10; AND DOE       )
ENTITIES 1-10,                   )
                                 )
            Defendants.          )
_____  )


                    CONTINUATION OF

              DEPOSITION OF PHILIP E. ENGLISH

Taken on behalf of the Defendants City and County of

Honolulu, Gary T. Kurokawa, Robert O. Magota, and Ann C.

Gima, at the law offices of Kawashima Lorusso & Tom LLP, Topa

Financial Center, Fort Street Tower, 745 Fort Street,

Suite 500, Honolulu, Hawaii, commencing at 9:05 a.m., on

Monday, August 7, 2006, pursuant to Notice.



BEFORE:

        Amy Muroshige, CSR 166
        Notary Public, State of Hawaii

544

1   questions.

2   Q     Okay.  Let me go back.

3   A     So I understand.

4   Q     That's fine.  I want to talk about each time, not

5   type, each time you were retaliated against, who did it and

6   what it was, which would be the type of retaliation, okay?

7   A     Okay.

8   Q     All right.  Please, if you can list them for me.

9   A     It's one type of retaliation.  There's not an instant

10  here, an instant there.  The retaliation began after I wrote

11  the e-mail to Bob Magota and the retaliation first consisted

12  of you have a bad attitude, secondly, your work performance

13  isn't good and, thirdly, and, finally, you're maybe not

14  mentally stable.  Those are the types -- that's the

15  retaliation that occurred.

16        So there's one -- retaliation had occurred over a

17  period of time.

18  Q     And the retaliation does not begin until you write the

19  e-mail to Bob Magota, is that what you just said?

20  A     If there was retaliation before that, I was unaware of

21  it and, in fact, I probably wasn't certain about it until a

22  couple months after that.

23  Q     And the e-mail that you're referring to from Bob

24  Magota was when?

25  A     February 15th, 2002.

624

```
 1    STATE OF HAWAII              )
                                   )SS.
 2                                 )

 3

 4         I, AMY MUROSHIGE, C.S.R., a Notary Public in and for the
      State of Hawaii, do hereby certify:
 5

 6         That on August 7, 2006, at 9:05 a.m., appeared before me
      PHILIP E. ENGLISH, the witness whose testimony is contained
 7    herein, that prior to being examined, the witness was by me
      duly sworn or affirmed; that the proceedings were taken in
 8    computerized machine shorthand by me and were thereafter
      reduced to print under my supervision; that the foregoing
 9    represents, to the best of my ability, a correct transcript
      of the proceedings had in the foregoing matter;
10

11         That the witness, if applicable, was notified through
      counsel, by mail or by telephone to appear and sign; that if
12    the transcript is not signed, either the reading and signing
      were waived by the witness and all parties, or the witness
13    has failed to appear and the original is therefore kept on
      file without signature pursuant to Court rules.
14

15         I further certify that I am not counsel for any of the
      parties hereto, nor in any way interested in the outcome of
16    the cause named in the caption.

17

18

19    Dated: _____AUG 16 2006_____

20

21    _____
      Amy Muroshige, C.S.R. #186
22    Notary Public, State of Hawaii
      My Commission Expires: November 5, 2007
23

24

25
```

CARNAZZO COURT-REPORTING CO., LTD., 532-0222