ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 0 9 2000

at 9 o'clock and 50 min. A M
WALTER A. Y. H. CHINN, CLERK

McCORRISTON MILLER MUKAI MacKINNON LLP

MARK J. BENNETT      2672
CLARISSA A. KANG     7266
Five Waterfront Plaza, Suite 400
500 Ala Moana Boulevard
Honolulu, Hawaii  96813
Telephone No.: (808) 529-7300

Attorney for Plaintiff
KENNETH KAMAKANA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KENNETH KAMAKANA, | ) | CIVIL NO. CV00-00729 SOM LEK |
| Plaintiff, | ) | COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |
| vs. | ) | |
| CITY & COUNTY OF HONOLULU, HONOLULU POLICE DEPARTMENT, LEE DONOHUE, both in his official capacity, and individually, MILTON OLMOS, both in his official capacity, and individually, JOHN DOES 1-50, JANE DOES 1-50, DOE PARTNERSHIPS 1-50, DOE CORPORATIONS 1-50, DOE GOVERNMENTAL AGENCIES 1-50, AND DOE ENTITIES 1-50, | ) | |
| Defendants. | ) | |

COMPLAINT

Plaintiff, KENNETH KAMAKANA, by and through his undersigned attorneys, as and for his Complaint against the Defendants in this matter, states and avers as follows:

ATTEST: A True Copy
SUE BEITIA
Clerk, United States District
Court, District of Hawaii
By _____ Deputy

EXHIBIT  B

1.    Plaintiff Kenneth Kamakana ("Kamakana" or "Plaintiff") is a Detective Sergeant in the Honolulu Police Department, and a citizen and resident of the State of Hawaii.

2.    Defendant City & County of Honolulu ("City & County") is a municipal corporation, which has the power to sue and be sued, and is a political subdivision of the State of Hawaii, located on the Island of Oahu.

3.    Defendant Honolulu Police Department ("HPD") is an agency and entity of Defendant City & County of Honolulu, located on the Island of Oahu.

4.    Defendant Lee Donohue ("Chief Donohue") is a citizen and resident of the State of Hawaii, and the Chief of Police of the Honolulu Police Department.

5.    Defendant Milton Olmos ("Olmos") is a citizen and resident of the State of Hawaii, a Lieutenant in the Honolulu Police Department, and an Acting Captain of the HPD Criminal Intelligence Unit ("CIU").

6.    John Does 1-50, Jane Does 1-50, Doe Partnerships 1-50, Doe Corporations 1-50, Doe Governmental Agencies 1-50, and Doe Entities 1-50 are persons or entities whose names, identities, and capacities are presently unknown to Plaintiff and who are or may be liable to Plaintiff for actions alleged in the Complaint and may be responsible for the damages to Plaintiff alleged herein.  Plaintiff has undertaken a diligent and good faith effort to ascertain the names and identities of such Defendants.

7.    All actions of Defendants Chief Donohue and Lieutenant Olmos were within the course and scope of their employment with the City & County and Honolulu.  All allegations against Chief Donohue and Lieutenant Olmos in this Complaint are asserted against them in both their official and individual capacities.

8.    All matters set forth in this Complaint arose in the State of Hawaii, City & County of Honolulu, Island of Oahu.

9.    This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331 & 1343, 42 U.S.C. §§ 1983, 1985, & 1988, as well as the First Amendment of the Constitution of the United States.  This Court has jurisdiction over what would otherwise be state law claims pursuant to 28 U.S.C. § 1367.  Those state law claims are so related to the claims in the action within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III of the United States Constitution.

10.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because this is the judicial district in which the Plaintiff resides, in which all Defendants reside, and in which the events and/or omissions giving rise to the claim occurred.

11.   Kamakana has been employed by HPD for approximately 27 years.  He has been predominantly assigned to investigative units.  In 1986, Kamakana was selected to be an

3

investigator/officer in the Intelligence and Enforcement Unit ("IEU") of HPD. This was the predecessor of the CIU. This unit consisted of personnel skilled in areas of organized crime investigations, whose Captain and Lieutenant reported directly to the Chief of Police, to whom they were responsible.

12. In 1987 Kamakana was promoted to Detective Sergeant.

13. After a short time in CIU, Kamakana was asked by the then Chief of Police to participate in a federal-state undercover investigation for a period of approximately four years. As a result of this assignment, Kamakana received a special award. Following the conclusion of Kamakana's service in the federal-state project, he was transferred back to CIU in 1991, and until September 2000 worked in CIU, with a specific assignment in the Narcotics Organized Crime Section.

14. During his tenure with CIU, Kamakana received numerous awards and commendations, and participated with at least three Organized Crime and Drug Enforcement Task Forces ("OCDETF") which were primarily sponsored by the United States Federal Bureau of Investigation ("FBI"). Kamakana, in CIU, has been involved in a significant number of government and police corruption investigations, both internally, and on the state and federal levels. In February 2000, Kamakana was nominated and received an OCDETF special award with regard to a successful joint investigation with the Internal Revenue Service.

15.  In approximately 1998, Kamakana learned that a
CIU officer, Officer A.B.,[1] while on duty with HPD, and drawing
an HPD salary, had also been working and drawing a salary as a
part-time security guard.  If true, this conduct would have
constituted improper and/or criminal activity on the part of
Officer A.B.  Kamakana briefly investigated the claim, and
determined that it appeared to have merit, i.e., that Officer
A.B. did appear to have engaged in improper and/or criminal
conduct, that is, being on duty with HPD and drawing a salary, at
the same time he was on duty in a private position, and drawing a
salary.

16.  Kamakana reported his findings with regard to
Officer A.B. to the Captain and Lieutenant in charge of CIU,
Captain C.D. and Lieutenant E.F.  Captain C.D., Officer A.B.'s
Captain, undertook his own investigation and made a determination
that the allegations were true, and that Officer A.B. had, in
fact, on several occasions, while on official duty, drawing a
salary as an HPD officer, also worked as a security guard,
drawing salary as a security guard.

17.  Upon completion of his investigation, Captain C.D.
informed Officer A.B., and Officer A.B.'s immediate supervisor,
Detective G.H., that Officer A.B. would be transferred out of the

---

[1]     The names of certain individuals will be identified
only in "John Doe" fashion.  A "key" regarding the names of those
identified in "John Doe" fashion will be supplied to the
attorneys for each of the Defendants upon request.  In addition,
at an appropriate time, Plaintiff will seek to file the "key"
under seal and/or amend the complaint.

CIU unit, with possible other actions to be taken.

18. Officer A.B.'s father, deceased, had been a very good friend of Chief Donohue for many years.

19. As was required, Captain C.D. met with Chief Donohue to inform him of Captain C.D.'s proposal to transfer Officer A.B. out of CIU. Captain C.D. was surprised to learn, when he talked to Chief Donohue, that Officer A.B. had already talked to Chief Donohue about the matter. Chief Donohue informed Captain C.D. that Officer A.B. would not in fact be transferred out of CIU, despite the clear evidence of Officer A.B.'s misconduct, and that instead Chief Donohue was going to transfer out of CIU both Captain C.D. and Lieutenant E.F. In fact, Chief Donohue did forthwith transfer out of CIU both Captain C.D. and Lieutenant E.F. He replaced them with Captain I.J. and Defendant Lieutenant Milton Olmos. There are no allegations made by Plaintiff against Captain I.J. in this Complaint.

20. The simultaneous transferring of Captain C.D. and Lieutenant E.F. was extremely unusual. CIU is a very specialized unit and the work involved is highly sensitive with a detailed history attached to every ongoing investigation. In almost every previous case, and perhaps in every previous case, only one commander of the unit, that is, either the Captain or Lieutenant, had been transferred or promoted out at the same time. The two new commanders of the unit, Captain I.J. and Lieutenant Olmos, did not have any experience in CIU, or in any organized crime investigations.

21.   Almost immediately after he was transferred into the unit, Lieutenant Olmos announced his association with Chief Donohue, that he and Chief Donohue were very good friends, and that his association with Chief Donohue had lasted for more than thirty years.  He also specifically informed the members of CIU that their number one duty as officers of that unit was to be "absolutely loyal to Chief Donohue as he, Lieutenant Olmos, was."

22.   In approximately January 1999, the Inter County Criminal Intelligence Unit ("ICCIU") conference was hosted by CIU, and was held at the Hawaiian Regent Hotel, with the participation of County, State, and Federal law enforcement agencies.  Captain I.J. was on vacation and off-island.  During a reception at the conference, Lieutenant Olmos and Detective K.L. invited two individuals, M.N. and O.P., to the hospitality room at the conference.  The two individuals, M.N. and O.P., were individuals with either prior criminal records, suspected organized crime ties, under active investigation, or individuals who could be potentially investigated by the CIU unit.  At the time of the conference, there were fifteen to twenty law enforcement officers present, including an undercover officer then currently assigned to CIU.  The presence of the individuals M.N. and O.P., at the conference, was entirely inappropriate, and had the potential of compromising investigations.

23.  Lieutenant Olmos made the statement that the presence of the two individuals had been approved by him and approved by a high-ranking official in a CIU unit on a Neighbor Island, because that official had wanted to talk to M.N.

24.  Kamakana, and another Detective, because of their grave concerns, investigated this claim, spoke with the CIU Neighbor Island official, and determined that it was untrue that he had known of the invitation to M.N. and O.P., untrue that he had wanted to meet with M.N., and untrue that he approved any such invitation.  He also stated that he would inform his Chief of Police of the situation.

25.  During the time in question, M.N. was in fact being investigated by law enforcement officials, and was later indicted by a federal grand jury on May 16, 2000.

26.  Lieutenant Olmos on a number of occasions described his friendship with an affluent businessman, Q.R. Lieutenant Olmos described how he had taken a 1998 trip to China, and described how Q.R. had paid for almost everything.  According to Lieutenant Olmos, the trip included first class airfare, five-star hotel accommodations, and limousine service.

27.  Q.R. had, in the presence of a number of HPD officers, including Lieutenant Olmos, indicated that he wanted to "buy-out" Khanh Thuong Huu Le ("Le")'s interest in the local shark fin sale business.  Le was generally known as being involved in or associated with Vietnamese organized crime groups. On information and belief, Le was unwilling to either sell out or

8

become a partner with Q.R.  Apparently (and on information and
belief) at Lieutenant Olmos's direction, Le was arrested for
robbery for robbing an associate of Q.R., in connection with the
shark fin trade.  Le was eventually convicted of robbery.
Because of significant concerns regarding this "robbery" case,
and the involvement of CIU officers, and their associations with
Q.R., the FBI initiated an investigation of this matter.

      28.  In a related incident, CIU Detective S.T.
approached another CIU Detective, Detective U.V.  Detective S.T.
explained to Detective U.V. that W.X. (an individual known to
Detective S.T. to be a confidential source who had provided
information to Detective U.V. and known to be associated with a
local Korean Organized Crime group) allegedly owed Q.R. $30,000.
Detective S.T. told Detective U.V. that he wanted to get in touch
with W.X. to collect the $30,000 owed to Q.R.  Detective S.T. had
been assigned this task by Lieutenant Olmos.  Allegedly Q.R. had
fronted the money to W.X., in an attempt to establish a shark fin
partnership.  Detective S.T. also asked Detective U.V. to inform
W.X. that if he did not pay back the money, CIU was going to
arrest W.X. for theft.  Detective U.V. told Detective S.T. that
it seemed clear that whatever was at issue was a civil matter;
that HPD should not get involved in it; that threatening someone
that, unless they paid back money, they would be arrested, would
be inappropriate and possibly worse; and that he would not do it.
Detective S.T. responded that it was a theft and that CIU could
arrest W.X.  On several occasions Detective S.T. asked Detective

U.V. to contact W.X. to try to collect the money.  Detective U.V. declined all of these requests.

     29.   Detective U.V. was extraordinarily concerned about the requests that had been made to him and reported what had occurred to Kamakana.  He reported this to Kamakana because Kamakana was known throughout CIU and HPD as an honest officer who cut no corners in any way.  Detective U.V. and Kamakana thereupon met with an agent of the Federal Bureau of Investigation to report this activity.  The matter is under investigation.

     30.   In approximately November 1999, Kamakana learned from someone within HPD, that Detective K.L. had submitted improper expense reports, which had been reported to Lieutenant Olmos, but that no action had been taken.  The individual at HPD further informed Kamakana that there were other improper expense reports submitted by Detective K.L.  Kamakana brought these improprieties to the attention of Lieutenant Olmos in a meeting with him in December 1999, after having verified the improprieties.  Lieutenant Olmos indicated that he would take no action and was unhappy that Kamakana had reported the improprieties.  In addition, Kamakana warned Lieutenant Olmos that there were close non-professional associations that were inappropriate between M.N. (who had not yet been indicted) and Detective K.L.  Lieutenant Olmos again indicated that nothing would be done about it.

31.  On May 16, 2000, M.N. was named in a federal
gambling indictment.  A number of other individuals were also
indicted at or about that time, pursuant to a joint federal-state
investigation.  One of those individuals was a female, Y.Z (named
in a separate indictment).  Lieutenant Olmos, Detective K.L.,
Officer S.T., and possibly others, including possibly Chief
Donohue, made a decision on or about July 25, 2000, to interview
and tape a conversation with Y.Z., about various subjects,
including the subject matter of the charges for which she had
been indicted as a result of a joint federal-state investigation.
It is unknown the precise reason why the individuals decided to
contact and interview Y.Z., but among the possible reasons was
their concern that Y.Z. could possibly enter into a plea
agreement to testify against M.N., who had a close relationship
with Detective K.L., and possibly Lieutenant Olmos.  The meeting
took place on July 25, 2000 and was recorded.

32.  In a conversation on or about July 25, 2000, but
before the meeting, Detective K.L. had been informed in no
uncertain terms by FBI Special Agent A.C. that such an interview
was impermissible and illegal.  In fact, such an interview would
have been both impermissible and illegal, and in violation of the
constitutional rights of the indicted Y.Z., who had an attorney.

33.  Kamakana did not know initially about the phone
conversation between Special Agent A.C. and Detective K.L.
However, he was informed by someone at HPD about the scheduled
meeting with Y.Z., and Kamakana was very concerned about it,

because he knew it was illegal and could jeopardize the federal indictment.  Thereupon, he called Special Agent A.C., to inform him that he had learned of this proposed meeting with Y.Z. Special Agent A.C. informed Kamakana that he, Special Agent A.C., had had a telephone conversation on the subject with Detective K.L., and that the meeting likely would not go forward, because the FBI had said that the meeting could not go forward.

34.  The next day, July 26, 2000, there was a weekly CIU meeting.  At the meeting, Lieutenant Olmos talked to CIU detectives and other HPD personnel about the fact that they could not meet with defendants currently awaiting trial if those defendants were represented by attorneys.  Following this meeting, Kamakana called Special Agent A.C., reported this conversation, and told Special Agent A.C. that given the statement by Lieutenant Olmos, the meeting between the officers and Y.Z. likely did not take place.

35.  Later that day, Kamakana learned from an HPD Officer that Sergeant B.D. was in the recording room downloading an "Eagle" tape.  An Eagle tape is a recording made by means of an electronic recording device, that records electronically, in digital format, such that it can be downloaded on a compact disc, or by other means, and then transferred to a cassette tape if necessary.  Because the tape was labeled with the actual first name of Y.Z., Kamakana was concerned that the meeting with Y.Z. had actually taken place illegally, and without the consent of, and contrary to the request of the FBI.

36.    Kamakana conveyed this information to Special
Agent A.C., who immediately contacted Detective K.L.  Detective
K.L. confirmed to Special Agent A.C. that a meeting with Y.Z. in
fact had taken place, and that it had been recorded.  Special
Agent A.C. requested Detective K.L. furnish him a copy of the
tape recording.

37.    The HPD officers and detectives involved in
making the recording, including but not limited to Lieutenant
Olmos, Detective K.L., and Officer S.T., and their superiors,
refused to turn over to the FBI a copy of the tape recording.
Following that refusal, the Office of the United States Attorney
for the District of Hawaii wrote letters to and had conversations
with Lieutenant Olmos and Detective K.L., requesting the Office
of the United States Attorney be provided copies of the tape.
These requests were refused, and contrary to accepted policy and
procedure, the FBI and the Office of the United States Attorney
were told that no such tape recording would be provided without a
subpoena.

38.    On or about August 3, 2000, an Assistant United
States Attorney for the District of Hawaii wrote a letter to
Chief Donohue, with copies to Lieutenant Olmos and Detective K.L.
The letter stated that a copy of the tape recording had been
requested from HPD.  The letter stated that on August 2, 2000,
Detective K.L. had stated he would provide a copy of the tape.
The letter stated that shortly thereafter, Detective K.L. left a
message with the Assistant United States Attorney stating "he had

13

spoken to Lieutenant Olmos and the legal advisor and that the tape would not be released because it was obtained for purposes of gathering intelligence.  I was also advised that if we wanted the tape, we should subpoena it."  The letter further requested that a complete copy of the recording with no redactions be provided; that serving HPD with a subpoena was inconsistent with jointly conducted investigations; that the recording was necessary to resolve a very serious issue which was raised by indicted defendant Y.Z.'s attorney who was not present nor advised of the meeting; that the issue had the potential of causing serious problems for the government in connection with the ongoing case; that the actions of HPD officers in meeting with Y.Z. without notice to or permission from her attorney may have unfortunate consequences; that the FBI was advised by Detective K.L. of CIU's intent to meet with Y.Z. prior to the meeting; that Detective K.L. was asked by the Office of the United States Attorney not to go forward with the meeting; and that despite the request, the meeting took place.

39.  At or about that time, Lieutenant Olmos, Detective K.L., Sergeant B.D., and possibly others, and on information and belief, with the knowledge of Chief Donohue, edited the tape recording of the meeting, possibly at the direction of Chief Donohue, removing from the tape recording portions of the tape which some or all officers, and/or Chief Donohue, felt would be damaging to them, or which they otherwise, for other reasons, did not want to produce to the FBI or the United States Attorney's

14

Office.  They turned the edited and redacted version of the tape over to the United States Attorney's Office and the FBI, representing that what was being turned over to the FBI and the United States Attorney's Office was the complete recording.

40.  Kamakana reported to Special Agent A.C. the fact that the recording that had been turned over to the FBI was not the complete recording, and was in fact an edited and redacted recording.  He also reported who was involved in the editing, including facts relating to Chief Donohue's possible involvement in and knowledge with regard to the editing.

41.  On or about August 15, 2000, Lieutenant Olmos told Kamakana that he was going to be transferred out of the CIU unit. Kamakana was transferred effective September 17, 2000.  This transfer was directed by Chief Donohue, with the knowledge, assistance, and direction of Lieutenant Olmos.  This transfer was direct retaliation against Kamakana for reporting the violations of federal and state law, and reporting the misconduct involving officers and men of the HPD, both to his superior officers, and to the United States Department of Justice, through the FBI and the Office of the United States Attorney, as described above.

<u>COUNT I</u>

(Federal Civil Rights Violations)

42.  Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 41, inclusive, as if set forth in full herein.

43.  Kamakana's actions in reporting misconduct and violations of the law to his superiors, to the FBI, and to the Office of the United States Attorney for the District Hawaii, constituted his exercise of his constitutionally protected interest in freedom of speech, constitutionally protected by the First Amendment to the Constitution of the United States.  This protected speech was on a matter or matters of public concern within the meaning of Rankin v. McPherson, 483 U.S. 378 (1987), and other cases.  Thus, the speech was constitutionally protected.

44.  That protected speech was a substantial and/or motivating factor in the decision made by Chief Donohue and Lieutenant Olmos to transfer Kamakana out of the CIU unit.

45.  The transfer of Kamakana in retaliation for reporting instances of misconduct and illegal action was taken pursuant to governmental custom, in that the decisions were taken and caused by Chief Donohue, an official whose actions represent official policy, that is, an official who had final policymaking authority in the area involved.

46.  That authority of Chief Donohue is established, inter alia, by Section 6-1604 of the Revised Charter of the City & County of Honolulu, which vests the Chief of Police with vast duties and powers, including being responsible for:  (1) the preservation of the public peace; (2) the protection of the rights of persons and properties; (3) the prevention of crime; (4) the detection and arrest of offenders against the law; (5)

the enforcement and prevention of violations of all laws of the State and City, and all rules made in accordance therewith; (6) the training, equipping, maintaining, and supervising the force of police officers; (7) the promulgation of rules and regulations necessary for the organization and internal administration of the Police Department; and (8) such other duties as may be required by the Charter or by law.  In addition, Section 6-1601 of the Charter provides that the Chief of Police shall be the administrative head of the police department.

47.  For the purposes of 42 U.S.C. § 1983 & 1985, Defendants City & County of Honolulu, Honolulu Police Department, Chief Donohue, and Lieutenant Olmos are persons.

48.  Each of those persons, under color of statute, ordinance, regulation, custom, and usage of the State of Hawaii, and its municipal subdivisions, did subject, and cause to be subjected, Plaintiff, a citizen of the United States, to the deprivation of rights, privileges, and immunities secured to him by the Constitution and laws of the United States.

49.  Those rights are the rights to exercise protected speech under the First Amendment to the Constitution of the United States described above, as well as the right to equal protection of the laws, and to due process of law.

50.  The violations herein described were committed by Chief Donohue and Lieutenant Olmos, and the City & County and HPD are liable to Plaintiff because Chief Donohue directly committed and commanded the violation of Plaintiff's rights, and because

Chief Donohue indirectly caused the misconduct by Lieutenant Olmos by direction, and by reason of his acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the Honolulu Police Department under Chief Donohue.

51.   As a result of the unconstitutional deprivation of his rights by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

52.   The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

53.   Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## COUNT II

### (Conspiracy to Violate Civil Rights)

54.   Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 53, inclusive, as if set forth in full herein.

55.   Defendants, and others, conspired to violate the civil rights of Plaintiff described more fully above, in violation of 42 U.S.C. § 1985.

56.   As a result of the unconstitutional deprivation of his rights by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

18

57.   The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

58.   Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

<u>COUNT III</u>

(Whistleblower's Protection Act)

59.   Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 58, inclusive, as if set forth in full herein.

60.   Pursuant to Haw. Rev. Stat. § 378-61, Kamakana is an employee of the City & County and HPD.

61.   Pursuant to Haw. Rev. Stat. § 378-61, the City & County and HPD are employers of Kamakana.  In addition, Chief Donohue and Lieutenant Olmos, acting as agents of the City & County and HPD, were employers of Kamakana.

62.   Defendants -- all employers of Kamakana  -- discriminated against Kamakana regarding his terms and conditions, location, and privileges of employment, because Kamakana reported to a public body, as that term is defined in Haw. Rev. Stat. § 378-61, verbally, and in writing, violations and suspected violations of laws and rules adopted pursuant to laws of the State of Hawaii, the City & County of Honolulu, and the United States.

63.   As a result of these actions by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

64.   As a result thereof, Kamakana suffered actual damages and is entitled to relief pursuant to Haw. Rev. Stat. § 378-61, et seq.

### COUNT IV

(Wrongful Conduct in Violation of the Common Law)

65.   Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 64, inclusive, as if set forth in full herein.

66.   The actions of Defendants were wrongful under the common law and in violation of public policy.

67.   As a result of these actions by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

68.   The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

69.   Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

### COUNT V

(Intentional Infliction of Emotional Distress)

70.   Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 69, inclusive, as if set forth in full herein.

20

71. The actions of Defendants were intentional, malicious, and reckless, beyond the bounds of conduct recognized as appropriate by society, and extreme and outrageous, so as to render Defendants liable for the tort of intentional infliction of emotional distress.

72. As a result of these actions by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

73. The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

74. Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

<u>COUNT VI</u>

(Violation of Rights Secured to Plaintiff Pursuant to the Constitution of the State of Hawaii)

75. Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 74, inclusive, as if set forth in full herein.

76. The actions of Defendants as set forth above, violated Plaintiff's rights secured to him by the Constitution of the State of Hawaii, including, but not limited to, rights to freedom of speech, due process of law, equal protection of the law, and the enjoyment of his civil rights.

77.  As a result of the unconstitutional deprivation of his rights by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

78.  The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

79.  Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests that judgment be entered as follows:

(1)  Pursuant to 28 U.S.C. § 1343, and 42 U.S.C. §§ 1983, 1985 & 1988, declaratory and injunctive relief restoring Plaintiff to his previous position, for an injunction against Defendants barring them from continuing their illegal activities, and their continuing deprivation of Plaintiff's civil rights, for an injunction barring Defendants from retaliating against Plaintiff, for general, special, and punitive damages in an amount to be proven at trial, for costs and attorneys' fees, and for such other and further relief as the Court deems just and proper;

(2)  Pursuant to Haw. Rev. Stat. §§ 378-63 & 378-64, appropriate injunctive relief and actual damages as therein defined, including injunctive relief requiring the reinstatement of Plaintiff to his previous position, and the other injunctive relief requested above, and such other and further relief as the Court deems just and proper;

22

(3)   Pursuant to all other claims and causes of action, appropriate injunctive and declaratory relief, including the injunctive and declaratory relief described above, general, special, and punitive damages in an amount to be proven at trial, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

DATED: Honolulu, Hawaii _____ NOV 0 9 2000 _____ .

_____
MARK J. BENNETT
CLARISSA A. KANG
Attorneys for Plaintiff
KENNETH KAMAKANA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KENNETH KAMAKANA, | CIVIL NO. _____ |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| vs. | |
| CITY & COUNTY OF HONOLULU, HONOLULU POLICE DEPARTMENT, LEE DONOHUE, both in his official capacity, and individually, MILTON OLMOS, both in his official capacity, and individually, JOHN DOES 1-50, JANE DOES 1-50, DOE PARTNERSHIPS 1-50, DOE CORPORATIONS 1-50, DOE GOVERNMENTAL AGENCIES 1-50, AND DOE ENTITIES 1-50, | |
| Defendants. | |

## DEMAND FOR JURY TRIAL

Plaintiff, by and through his attorneys, McCorriston Miller Mukai MacKinnon LLP, hereby demand trial by jury on all issues triable herein.

DATED: Honolulu, Hawaii    NOV 0 9 2000    _____.

_____
MARK J. BENNETT
CLARISSA A. KANG
Attorneys for Plaintiff
KENNETH KAMAKANA

AO 440 (Rev. 5/85)   Summons in a Civil Action

# United States District Court

DISTRICT OF <u>Honolulu</u>

KENNETH KAMAKANA

## SUMMONS IN A CIVIL ACTION

V.

CASE NUMBER:

CITY & COUNTY OF HONOLULU, HONOLULU POLICE
DEPARTMENT, LEE DONOHUE, both in his
official capacity, and individually,
MILTON OLMOS, both in his official
capacity, and individually, et al.

TO: (Name and Address of Defendant)

ALL NAMED DEFENDANTS

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)
McCorriston Miller Mukai MacKinnon LLP
Mark J. Bennett      2672
Clarissa A. Kang     7266
Five Waterfront Plaza, Suite 400
500 Ala Moana Boulevard
Honolulu, Hawaii  96813
Telephone No.: (808) 529-7300

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

WALTER A.Y.H. CHINN

NOV 0 9 2000

CLERK

DATE

BY DEPUTY CLERK

JS 44
(Rev. 07/89)

CIVIL COVER SHEET

CV00-00729 SO
LE

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

† (a) PLAINTIFFS

KENNETH KAMAKANA

DEFENDANTS

CITY & COUNTY OF HONOLULU, HONOLULU POLICE DEPARTMENT, LEE DONOHUE, both is his official capacity, and individually, MILTON OLMOS, both in his official capacity and individually, et al

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Honolulu
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Honolulu
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mark J. Bennett    2672
Clarissa A. Kang   7266
Five Waterfront Plaza, Suite 400
500 Ala Moana Boulevard, Honolulu, HI 96813

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 U.S.C. §§ 1983, 1985 & 1988 -- Civil Rights lawsuit related to retaliatory firing.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | SOCIAL SECURITY | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $  None

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

RELATED CASE(S) IF ANY (See instructions):

JUDGE _____  DOCKET NUMBER _____

SIGNATURE OF ATTORNEY OF RECORD

NOV 0 9 2000

D STATES DISTRICT COURT

JS·44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS·44 civil cover sheet and the information contained ...m neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**† (a) PLAINTIFFS**

KENNETH KAMAKANA

**DEFENDANTS**

CITY & COUNTY OF HONOLULU, HONOLULU POLICE DEPARTMENT, LEE DONOHUE, both is his official capacity, and individually, MILTON OLMOS, both in his official capacity and individually, et a

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Honolulu___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___Honolulu___
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mark J. Bennett    2672
Clarissa A. Kang   7266
Five Waterfront Plaza, Suite 400
500 Ala Moana Boulevard, Honolulu, HI 96813

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.

42 U.S.C. §§ 1983, 1985 & 1988 -- Civil Rights lawsuit related to retaliatory firing.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury— Med Malpractice
☐ 365 Personal Injury— Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☒ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Other

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

DEMAND $ None

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY
JUDGE _____    DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD

NOV 0 9 2000

UNITED STATES DISTRICT COURT

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## †(a) PLAINTIFFS

KENNETH KAMAKANA

## DEFENDANTS

CITY & COUNTY OF HONOLULU, HONOLULU POLICE DEPARTMENT, LEE DONOHUE, both is his official capacity, and individually, MILTON OLMOS, both in his official capacity and individually, et al

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Honolulu
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Honolulu
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mark J. Bennett    2672
Clarissa A. Kang   7266
Five Waterfront Plaza, Suite 400
500 Ala Moana Boulevard, Honolulu, HI 96813

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE an x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 U.S.C. §§ 1983, 1985 & 1988 -- Civil Rights lawsuit related to retaliatory firing.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $  None

Check YES only if demanded in complaint
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____  DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD

NOV 0 9 2000

UNITED STATES DISTRICT COURT