MOSELEY BIEHL TSUGAWA LAU & MUZZI
A Hawaii Limited Liability Law Company
ROGER S. MOSELEY          2060
CHRISTOPHER J. MUZZI      6939
RENEE M. FURUTA           7593
Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, Hawaii 96813
Telephone: (808) 531-0490
Facsimile: (808) 534-0202
Email: rmoseley@hilaw.us
       cmuzzi@hilaw.us
       rfuruta@hilaw.us

Attorneys for Plaintiff
PHILIP E. ENGLISH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH, <br><br> Plaintiff, <br><br> vs. <br><br> CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1–10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10, <br><br> Defendants. | Civil No. 04-00108 SOM/KSC <br><br> PLAINTIFF PHILIP E. ENGLISH'S TRIAL BRIEF; CERTIFICATE OF SERVICE <br><br><br><br><br><br> Trial: October 3, 2006 <br> Judge: Honorable Kevin S. Chang |

10010/3/57580

# PLAINTIFF PHILIP E. ENGLISH'S TRIAL BRIEF

Plaintiff Philip E. English ("Plaintiff"), by and through his counsel, Moseley Biehl Tsugawa Lau & Muzzi, submits his Trial Brief pursuant to ¶29 of the December 28, 2005 Second Amended Scheduling Order.

I. **Significant Disputed Issues of Law**

A. **Municipal Liability Under § 1983**

Defendants have repeatedly overlooked that municipal liability with respect to Plaintiff's § 1983 claim against Defendant City can be established in at least three ways: (1) by demonstrating a municipal "policy" or "custom" that caused the plaintiff's injury, Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978); Pembaur v. Cincinnati, 475 U.S. 469, 480-81, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986); Canton v. Harris, 489 U.S. 378, 389, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989); (2) where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered, Pembaur, 475 U.S. at 480-481; and (3) by way of an "inadequate training" claim, Canton, 489 U.S. at 390 ; Long v. County of Los Angeles, 442 F.3d 1178, 1186-87 (9th Cir. 2006).

**Practice and custom**. "A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when

execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell , 436 U.S. at 694.

**Policy set by a decisionmaker with final authority to establish policy**. "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body -- whether or not that body had taken similar action in the past or intended to do so in the future -- because even a single decision by such a body unquestionably constitutes an act of official government policy. . . . . But the power to establish  policy is no more the exclusive province of the legislature at the local level than at the state or national level. Monell's language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy,' Monell, supra, at 694, and whose decisions therefore may give rise to municipal liability under § 1983." Pembaur, 475 U.S. at 480-81.

Inadequate training can be proved in several ways,

> The first is a deficient training program, "intended to apply over time to multiple employees." [Brown, 520 U.S.] at 407 (citation omitted). The continued adherence by policymakers "to an approach that they know or should know has failed to prevent tortious conduct by employees may

establish the conscious disregard for the consequences of their action -- the 'deliberate indifference' -- necessary to trigger municipal liability." Id. (citation omitted). Further, "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." Id. at 407-08 (citation omitted).

A plaintiff also might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Id. at 409. The Brown Court explained:

> The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policy-makers' choice -- namely, a violation of a specific constitutional or statutory right.

Id.

Long, 442 F.3d at 1186-87

## B. Effect of Garcetti v. Ceballos

Defendants have previously cited Garcetti v. Ceballos, 126 S.Ct. 1951 (2006) and cases from other circuits citing Garcetti for the proposition that a government employee is acting within his job duties when speech contributes to the formation and execution of official policy. This, however, is not what Garcetti held. Garcetti held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from

employer discipline." Id. at 1960 (emphasis added). Thus, the relevant determination focuses on what Plaintiff's official duties were. This is inherently a factual determination.

Defendants attempt to pigeon-hole much of Plaintiff's speech as complaints over internal office affairs, which they claim are encompassed by Plaintiff's duties as an employee and, therefore, not matters of public concern. As a matter of law, Defendants' arguments must fail. Pursuant to Revised Ordinances of Honolulu, § 8-1.14, "All maps and records compiled, made, obtained or received by the director or any of the director's subordinates, shall be public records. . . . . The information and all maps and records connected with the assessment and collection of taxes under this chapter shall, during business hours, be open to the inspection of the public." Further, ROH § 8-7.1(a) requires that, "the director of finance shall cause the fair market value of all taxable real property to be determined and annually assessed by the market data and cost approaches to value using appropriate systematic methods suitable for mass valuation of properties for taxation purposes, so selected and applied to obtain, as far as possible, uniform and equalized assessments throughout the county. . . ." ROH § 8-7.1(b) further provides that, "So far as practicable, records shall be compiled and kept which shall show the methods established by or under the authority of the director, for the determination of values." Thus, Plaintiff's speech is a matter of public concern as

all taxpayers have a vested interest in the fair and equitable assessment and collection of real property taxes.

### C. The Wittig Case and the Effect of the Worker's Compensation Settlement.

1. The Wittig Case.

In the Wittig case, the Hawaii Intermediate Court of Appeals held that a worker's compensation insurer's mere tender of a settlement offer containing a resignation term, which a worker is free to reject, did not constitute an unlawful retaliatory discharge or suspension prohibited by Haw. Rev. Stat. § 386-142. Wittig, 2006 Haw. App. LEXIS 288, *24-*25. The court specifically did not consider whether such conduct was lawful under the broader provisions of HRS § 378-32(2), which additionally prohibits an employer from discriminating against an employee solely because he has suffered a work-related injury compensable under chapter 386, unless certain enumerated circumstances exist,[1] id., or whether

---

[1] Pursuant to the relevant provisions of Haw. Rev. Stat. § 378-32(2), it is unlawful for an employer to:

> suspend, discharge, or discriminate against any of the employer's employees     …
>
> (2) Solely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing. Any employee who is discharged because of the work injury shall be given first preference of reemployment by the employer in any position which the employee is capable of performing and which becomes available after the discharge and

such conduct was lawful under Haw. Rev. Stat. § 378-62, which is one of the specific bases for Plaintiff's claim of unlawful discrimination and retaliation in this matter. Again, while Wittig may be relevant to retaliatory discharge cases under Hawaii's Worker's Compensation statutes, e.g., Haw. Rev. Stat. 386-142, it is not controlling here where Plaintiff has alleged unlawful discrimination and retaliation pursuant to, inter alia, the Hawaii Whistleblower Protection Act, i.e., Haw. Rev. Stat. §378-62[2].

---

       during the period thereafter until the employee secures new employment. This paragraph shall not apply to any employer in whose employment there are less than three employees at the time of the work injury or who is a party to a collective bargaining agreement which prevents the continued employment or reemployment of    the injured employee....

(Emphasis added.)

[2] Haw. Rev. Stat. § 378-62 provides as follows:

> **Discharge of, threats to, or discrimination against employee for reporting violations of law.**
>
> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>
>     (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or
>
>     (B) A contract executed by the State, a political subdivision of the State, or the United States,
>
>     unless the employee knows that the report is false; or

2.  The Worker's Compensation Settlement

The fact that Plaintiff signed a Compromise, Settlement and Release Agreement dated January 20, 2004 (the "Worker's Compensation Settlement") to settle only those claims against Defendant City and County of Honolulu under Haw. Rev. Stat. chapter 386 does not prevent Plaintiff from establishing the severity of his injury or from recovering damages.

According to its express terms, the Worker's Compensation Settlement settled only those claims under Haw. Rev. Stat. chapter 386. Plaintiff specifically reserved his right to bring other non-worker's compensation claims against the Defendant City and County. Further, according to the terms of the Worker's Compensation Settlement, the parties were not bound by the factual stipulations in the clearly contemplated future litigation as to other non-worker's compensation claims, like those in this action:

> It is expressly agreed by the parties that the determination herein that Claimant sustained a stress-related psychic injury on or about January 30, 2003 by accident arising out of and in the course of his employment with Employer <u>is without prejudice to either party with respect to any future non-worker's compensation proceedings and the parties are not precluded from litigating issues regarding the nature, scope and cause of Claimant's stress and/or psychic injuries in any non-workers' compensation proceeding</u>.

Id. (emphasis added).

---

(2) An employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

The City may seek to have this Court interpret the Worker's Compensation Settlement. If the language of a contract is unambiguous, the interpretation of the Worker's Compensation Settlement presents a question of law to be decided by the court. Found. Int'l, Inc. v. E.T. Ige Construction, Inc., 102 Hawai'i 487, 497, 78 P.3d 23, 33 (2003). However, where the terms of a contract are ambiguous, the ambiguity raises the question of the parties' intent, which is a question of fact for a jury. Id.

## II.   CONCLUSION

Plaintiff seeks leave to file additional briefs or memorandum as needed by the Court to address any additional issues of law that may arise, including procedural and evidentiary issues.

Dated: Honolulu, Hawaii, September 19, 2006.

/s/Roger S. Moseley
ROGER S. MOSELEY
CHRISTOPHER J. MUZZI
RENEE M. FURUTA
Attorney for Plaintiff
PHILIP E. ENGLISH