ORIGINAL

MOSELEY BIEHL TSUGAWA LAU & MUZZI
a Hawaii limited liability law company
ROGER S. MOSELEY          2060
ALAN K. LAU               3981
CHRISTOPHER J. MUZZI      6939
Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, Hawaii  96813
Telephone:  (808) 531-0490
Facsimile:  (808) 534-0202
Email:   rmoseley@hilaw.us
         alau@hilaw.us
         cmuzzi@hilaw.us

Attorneys for Plaintiff
PHILIP E. ENGLISH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>            Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1 -10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,<br><br>            Defendants. | Civil No.  04-00108 SOM/KSC<br><br><br>PLAINTIFF PHILIP E. ENGLISH'S ANSWERS TO DEFENDANT CITY AND COUNTY OF HONOLULU'S FIRST REQUEST FOR ANSWERS TO INTERROGATORIES TO PLAINTIFF PHILIP E. ENGLISH; EXHIBIT A |

Case No.   04-00108 SOM/KSC
Defs' Exhibit No.      2536

**PLAINTIFF PHILIP E. ENGLISH'S ANSWERS TO
DEFENDANT CITY AND COUNTY OF HONOLULU'S
FIRST REQUEST FOR ANSWERS TO INTERROGATORIES
<u>TO PLAINTIFF PHILIP E. ENGLISH</u>**

COMES NOW Plaintiff PHILIP E. ENGLISH, by and through his attorneys, ROGER S. MOSELEY, ALAN K. LAU, and CHRISTOPHER J. MUZZI, of MOSELEY BIEHL TSUGAWA LAU & MUZZI, a Hawaii limited liability law company, and answers Defendant City and County of Honolulu's First Request for Answers to Interrogatories, served upon it as follows:

<u>INTERROGATORIES TO PLAINTIFF PHILIP E. ENGLISH</u>

1.  List the names and addresses of all witnesses for any of the incidents or events alleged in your Complaint which was filed in this matter, and provide a brief description of the facts to which each witness may testify.

<u>ANSWER:</u>

<u>OBJECTION:</u> This interrogatory is overly broad and unduly burdensome and would essentially require a narrative of the entire case of Plaintiff.

Not withstanding the above objection, without waiver thereof, and without limitation, Plaintiff identifies such witnesses presently thought to be able to provide evidence which may be material to Plaintiff's claims, to the best of his present ability. Plaintiff has also provided all Defendants with extensive initial disclosure and the names of additional witnesses may be contained in that disclosure. Further discovery will

also be conducted, which may reveal additional witnesses.

> PHILIP E. ENGLISH Plaintiff
> c/o Roger S. Moseley
> MOSELEY BIEHL TSUGAWA LAU & MUZZI
> 1100 Alakea Street, 23rd Floor
> Honolulu, Hawaii 96813

Plaintiff is expected to be able to testify with respect to most facts, as observed by him, concerning liability and damages

> GARY KUROKAWA          Defendant
> ROBERT O. MAGOTA          Defendant
> ANN C. GIMA          Defendant
> c/o Michael Lorusso
> Watanabe Ing Kawashima & Komeiji
> 999 Bishop Street, Ste. 2300
> Honolulu, Hawaii 96813

Defendants are expected to be able to testify as to most facts concerning their acts and omissions giving rise to liability as well as evidencing damage to Plaintiff

C.    SATHIPORN ("Pim") SONGSORN
      (Plaintiff's former wife)
      932 Maunakea Street #R
      Honolulu, Hawaii

Expected to be able to testify as to facts concerning Plaintiff's damages.

D.    CHRIS GRAFF
      Address unknown

Former employee of Defendant City

Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability, as well as evidencing damage to Plaintiff

E.   DAVID MATSUNAMI
     Address unknown

     Former employee of Defendant City

     Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability

F.   MICHAEL GOLOJUCH
     Address unknown

     Employee of Defendant City

     Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability, as well as evidencing damage to Plaintiff

G.   JULI ANNE TAMAYORI
     Address unknown

     Employee of Defendant City

     Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability

H.   DWIGHT ISHIGURO
     Address unknown

     Employee of Defendant City

     Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability

I.   WAYLEN TOMA
     Address unknown

     Employee of Defendant City

     Expected to be able to testify as to facts
concerning acts and omissions of Defendants giving rise
to liability, as well as evidencing damage to Plaintiff

J.   SUSAN A. BENDER
     Address unknown

     Employee of Defendant City

     Expected to be able to testify as to facts
concerning acts and omissions of Defendants giving rise
to liability, as well as evidencing damage to Plaintiff

K.   KEVIN MULLIGAN
     Address unknown

     Expected to be able to testify as to facts
concerning acts and omissions of Defendants giving rise
to liability, as well as evidencing damage to Plaintiff

L.   WILFRED MARTIN
     Address unknown

     Employee of Defendant City

     Expected to be able to testify as to facts
concerning acts and omissions of Defendants giving rise
to liability

M.   CHRISTINE KURASHIGE
     Address unknown

     Employee of Defendant City

Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability

N.  LEE M. AGSALUD
    Address unknown

    Employee of Defendant City

    Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability

O.  STEVEN YEE
    Address unknown

    Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability

P.  KAISER SERVICES:
    JAMES E. LOVE, MD
    GERALD COFFEE
    JOAN H. KOFF, PhD
    LILLIE MUNDON, LSW
    Kaiser Permanente

    Providers of medical services and treatment

    Expected to be able to testify as to facts evidencing damage to Plaintiff

Q.  THOMAS RIDDLE
    Address unknown

    Employee of Defendant City

    Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability, as well as evidencing damage to Plaintiff

R.    RENEAU KENNEDY
      3001 Diamond Head Road
      Honolulu, Hawaii 96825

      Retained by Defendant City to examine Plaintiff

      Expected   to   be   able   to   testify   as   to   facts
concerning acts and omissions of Defendants giving rise
to liability, as well as evidencing damage to Plaintiff

S.    ROY K. AMEMIYA, JR.
      Address unknown

      Former employee of Defendant City

      Expected   to   be   able   to   testify   as   to   facts
concerning acts and omissions of Defendants giving rise
to liability, as well as evidencing damage to Plaintiff

T.    SUZANNE M. FOUMAI
      Address unknown

      Employee of Defendant City

      Expected   to   be   able   to   testify   as   to   facts
concerning acts and omissions of Defendants giving rise
to liability, as well as evidencing damage to Plaintiff

U.    CHARLES TOTTO
      Address unknown

      Employee of Defendant City

      Expected   to   be   able   to   testify   as   to   facts
concerning acts and omissions of Defendants giving rise
to liability

V.    FRANK RAMIL
      P.O. Box 30193
      Honolulu, Hawaii 96820-0193

Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability, as well as evidencing damage to Plaintiff

W.    NORMAN YOSHIDA
      Address unknown

      Employee of Defendant City

      Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability, as well as evidencing damage to Plaintiff

X.    PAULINE IWAMOTO
      Address unknown

      Employee of Defendant City

      Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability, as well as evidencing damage to Plaintiff

Y.    MICHELLE MURAOKA
      Address unknown

      Employee of Defendant City

      Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability, as well as evidencing damage to Plaintiff

Z.    MARVIN ABING
      Address unknown

      Employee of Defendant City

      Expected to be able to testify as to facts concerning acts and omissions of Defendants giving rise to liability, as well as evidencing damage to Plaintiff

AA.  RANDALL HIRAKI
     Address unknown

     Employee of Defendant City

     Expected  to  be  able  to  testify  as  to  facts
concerning acts and omissions of Defendants giving rise
to liability, as well as evidencing damage to Plaintiff

BB.  GARY KUBOTA
     Address unknown

     Employee of Defendant City

     Expected  to  be  able  to  testify  as  to  facts
concerning acts and omissions of Defendants giving rise
to liability, as well as evidencing damage to Plaintiff

CC.  CAROL KAMISATO
     Address unknown

     Employee of Defendant City

     Expected  to  be  able  to  testify  as  to  facts
concerning acts and omissions of Defendants giving rise
to liability, as well as evidencing damage to Plaintiff

DD.  VIKI PUOU
     Address unknown

     Employee of Defendant City

     Expected  to  be  able  to  testify  as  to  facts
concerning acts and omissions of Defendants giving rise
to liability, as well as evidencing damage to Plaintiff

2.   State all facts with specificity which you contend
     support the allegation contained in Paragraphs 93 through
     97 and 104 through 108 of your Complaint that your civil
     rights were violated, and as to each fact, state its
     source, identify each person who you know to have any
     information or knowledge concerning such fact or the

aforesaid allegation, identify each document which
supports, embodies, refers or relates to such fact or the
aforesaid allegation, and the date(s) on which each
fact occurred.

**ANSWER:**

**OBJECTION:** This interrogatory is overly broad and
unduly burdensome and, in combination with the other
contention interrogatories contained in this request,
would essentially require a narrative of the entire case
of Plaintiff.

Not withstanding the above objection, without
waiver thereof, and without limitation, Plaintiff
states the following facts, which may be material to
Plaintiff's claims, to the best of his present ability.
Plaintiff has also provided all Defendants with
extensive initial disclosure and substantial additional
facts may be contained in that disclosure.  Further
discovery will also be conducted, which may reveal
additional facts material to this claim.

To answer as best I understand is required:

In late 2001 or early 2002, Defendant MAGOTA
advised me that he would talk with Defendant KUROKAWA
about the matter of City employees doing work for
Defendant KUROKAWA's appraisal company on City time,
but that I should not continue to pursue the issue
because, in any dispute, it would be my word against
the word of the appraiser and Defendant KUROKAWA.
Defendant MAGOTA also admonished me that other former
employees had tried to file lawsuits against the
Assessment Division and that those suits had failed,
and that any suit by me would also fail.  I regarded
these statements of Defendant MAGOTA as threatening and
intimidating and intended to prevent me from exercising
my right generally to speak out against, and invoke
proper process against, improper activities in the
Assessment Division, and specifically my right to speak

out against, and invoke proper process against the use
of City employees to work for Defendant KUROKAWA's
business on City time and with City equipment, and
further that I would be denied my rights to
administrative and judicial review of any and all
issues involved.

My interpretation of this statement of Defendant
MAGOTA was further borne out when I set forth my
concerns about Defendant KUROKAWA's activities in
writing via email and further when I brought the matter
to the attention of the Ethics Commission in January of
2003.

The bottom line was and is that I was made to
understand that if I did anything against the Assessment
Division or the head of it, Defendant KUROKAWA, that I
would suffer consequences.  I felt compelled to speak
out and take what I viewed as appropriate action and I
have suffered severe consequences as a result.   I
believe that I had and have the right to speak out and
to take legitimate actions with respect to these issues,
without either fear of or actual consequences resulting
from exercising my rights.  The Defendants individually
and in a coordinated effort with each other deprived me
of those rights.

Although I had the right to speak and act as I did
it became apparent that the individual Defendants and
the Defendants collectively were acting to deprive me of
those rights.  Furthermore, none of the Defendants
appeared to me to do anything to prevent the other
Defendants from depriving me of those rights.  To my
knowledge and belief all of these Defendants were
officers and/or employees of the City and were duty
bound to uphold the law and to prevent the sort of
retaliation being administered to and taken against me.
They continue to the present time to use the resources
of the City to defend against my claims, under the guise
of their authority as government officers and/or

employees.  To my knowledge, there has been no
comprehensive investigation of, among other things, the
claims I have made that City employees were doing work
on city time and with City equipment for the private
business of the head of the assessment division,
Defendant KUROKAWA.

Although, by at least March 6, 2003, a City
representative from the Personnel Division (I
believe)apparently did discover that City employees were
working for Defendant KUROKAWA's private business, there
was no detailed follow-up investigation, because the
allegation was made that the activity on City time was
only an occasional telephone call.

Furthermore, another City officer and/or employee,
as early as February 28, 2003, concluded that "there is
an element of truth to what English is alleging."
However, again, the resources and official activity of
the City, apparently under the cloak of the authority to
act on behalf of the City, were focused upon defending
against my legitimate claims against the City and those
involved and not on addressing the wrongdoings of which
I had complained.

To my knowledge the only City agency which has
evidenced any inclination at all to investigate these
matters fairly is the Ethics Commission, and they appear
to lack the funding or staff resources to do any such
investigation.

A further and more complete description of the facts
surrounding the referenced claims is set forth in the
verified complaint, which I have filed in this case,
which is attached to these answers as Exhibit A.  I have
filed a verified complaint to address, as directly and
as comprehensively as I could, the factual background of
my complaints, under oath.

3.   State all facts with specificity which you contend
     support the allegation contained in Paragraphs 98 through
     101 of your Complaint that Defendants unlawfully conspired
     against you, and as to each fact, state its source,
     identify each person who you know to have any information
     or knowledge concerning such fact or the aforesaid
     allegation, identify each document which supports,
     embodies, refers or relates to such fact or the aforesaid
     allegation, and the date(s) on which each fact
     occurred.

**ANSWER:**

**OBJECTION:** This interrogatory is overly broad and
unduly burdensome and, in combination with the other
contention interrogatories contained in this request,
would essentially require a narrative of the entire case
of Plaintiff.

     Not withstanding the above objection, without waiver
thereof, and without limitation, Plaintiff states the
following facts, which may be material to Plaintiff's
claims, to the best of his present ability.  Plaintiff
has also provided all Defendants with extensive initial
disclosure and substantial additional facts may be
contained in that disclosure.  Further discovery will
also be conducted, which may reveal additional facts
material to this claim.

     To answer as best I understand is required:

     In addition to the facts set forth and referred to
in the answer to number 2 above, there were numerous
communications of which I was informed or discovered at
or about the time, which indicated to me that the
Defendants were acting in concert against me, such as
the spate of "workplace violence" complaints against me
Apparently in late January and February of 2003,
immediately after I complained to the Ethics
Commission.

     Additionally, there were other specific instances

10010\3\50231.1                    13

of coordinated efforts, of which I had not learned
until the present lawsuit.  For example, on or about
October 18, 2002 Defendant GIMA communicated with
Defendant KUROKAWA with respect to proceeding with
"action" suggested by a union representative named
"Waylon" and suggested a further meeting with Waylon.

I cannot yet put together a comprehensive
chronology of the activities, which evidence the
conspiracy of the Defendants against me

A further and more complete description of the facts
surrounding the referenced claims is set forth in the
verified complaint, which I have filed in this case,
which is attached to these answers as Exhibit A.  I have
filed a verified complaint to address, as directly and
as comprehensively as I could, the factual background of
my complaints, under oath.

4.    State all facts with specificity which you contend
      support the allegation contained in Paragraphs 110 through
      113 of your Complaint that Defendants unlawfully
      discriminated and retaliated against you, and as to each
      fact, state its source, identify each person who you know
      to have any information or knowledge concerning such fact
      or the aforesaid allegation, identify each document which
      supports, embodies, refers or relates to such fact or the
      aforesaid allegation, and the date(s) on which each fact
      occurred.

ANSWER:

OBJECTION: This interrogatory is overly broad and
unduly burdensome and, in combination with the other
contention interrogatories contained in this request,
would essentially require a narrative of the entire case
of Plaintiff.

Not withstanding the above objection, without waiver
thereof, and without limitation, Plaintiff states the
following facts, which may be material to Plaintiff's
claims, to the best of his present ability.  Plaintiff

has also provided all Defendants with extensive initial
disclosure and substantial additional facts may be
contained in that disclosure.  Further discovery will
also be conducted, which may reveal additional facts
material to this claim.

        To answer as best I understand is required:

        In late 2001 or early 2002, Defendant MAGOTA
advised me that he would talk with Defendant KUROKAWA
about the matter of City employees doing work for
Defendant KUROKAWA's appraisal company on City time,
but that I should not continue to pursue the issue
because, in any dispute, it would be my word against
the word of the appraiser and Defendant KUROKAWA.
Defendant MAGOTA also admonished me that other former
employees had tried to file lawsuits against the
Assessment Division and that those suits had failed,
and that any suit by me would also fail.  I regarded
these statements of Defendant MAGOTA as threatening and
intimidating and intended to prevent me from exercising
my right generally to speak out against, and invoke
proper process against, improper activities in the
Assessment Division, and specifically my right to speak
out against, and invoke proper process against the use
of City employees to work for Defendant KUROKAWA's
business on City time and with City equipment, and
further that I would be denied my rights to
administrative and judicial review of any and all
issues involved.

        My interpretation of this statement of Defendant
MAGOTA was further borne out when I set forth my
concerns about Defendant KUROKAWA's activities in
writing via email and further when I brought the matter
to the attention of the Ethics Commission in January of
2003.

        After speaking out to Defendant MOGOTA and putting
these issues in writing to him and then taking my

complaints to the City Ethics Commission, I was
effectively shunned by many, if not most, of the other
employees of the Assessment Division and my job was made
much more difficult by imposing even further unrealistic
deadlines and even further withholding of direction and
assistance.  The employment conditions became so onerous
and unsettling that I eventually could no longer go to
work, on medical advice, as of approximately February
28, 2003.  By making my employment life so miserable, I
was effectively fired from my job and lost my
livelihood.

The occurrence of these acts was daily and I cannot
at present give you a time and date of each act.

A further and more complete description of the facts
surrounding the referenced claims is set forth in the
verified complaint, which I have filed in this case,
which is attached to these answers as Exhibit A.  I have
filed a verified complaint to address, as directly and
as comprehensively as I could, the factual background of
my complaints, under oath.

5.   State all facts with specificity which you contend
     support the allegation contained in Paragraphs 41 through
     42 of your Complaint that Defendants wilfully, wantonly
     and/or recklessly caused injury to you, and as to each
     fact, state its source, identify each person who you know
     to have any information or knowledge concerning such fact
     or the aforesaid allegation, identify each document which
     supports, embodies, refers or relates to such fact or the
     aforesaid allegation, and the date(s) on which each fact
     occurred.

<u>ANSWER:</u>

<u>OBJECTION:</u> This interrogatory is overly broad and
unduly burdensome and, in combination with the other
contention interrogatories contained in this request,
would essentially require a narrative of the entire case
of Plaintiff.

Not withstanding the above objection, without waiver

thereof, and without limitation, Plaintiff states the following facts, which may be material to Plaintiff's claims, to the best of his present ability. Plaintiff has also provided all Defendants with extensive initial disclosure and substantial additional facts may be contained in that disclosure. Further discovery will also be conducted, which may reveal additional facts material to this claim.

To answer as best I understand is required:

Although I do not understand paragraphs 41 and 42 of the Complaint to be the portions of the Complaint alleging that the Defendants "willfully, wantonly and/or recklessly caused injury to" me, it is my belief that they did do so.

In late 2001 or early 2002, Defendant MAGOTA advised me that he would talk with Defendant KUROKAWA about the matter of City employees doing work for Defendant KUROKAWA's appraisal company on City time, but that I should not continue to pursue the issue because, in any dispute, it would be my word against the word of the appraiser and Defendant KUROKAWA. Defendant MAGOTA also admonished me that other former employees had tried to file lawsuits against the Assessment Division and that those suits had failed, and that any suit by me would also fail. I regarded these statements of Defendant MAGOTA as threatening and intimidating and intended to prevent me from doing anything about my complaints of various improper activities.

My interpretation of this statement of Defendant MAGOTA was further borne out when I set forth my concerns about Defendant KUROKAWA's activities in writing via email and further when I brought the matter to the attention of the Ethics Commission in January of 2003.

The bottom line was and is that I was made to understand that if I did anything against the Assessment Division or the head of it, Defendant KUROKAWA, that I would suffer consequences. I felt compelled to speak out and take what I viewed as appropriate action and I have suffered severe consequences as a result. In light of the initial threat, the subsequent actions taken against me could be nothing less than intentional willful, wanton and/or reckless to my understanding of those terms.

Although, by at least March 6, 2003, a City representative from the Personnel Division (I believe) apparently did discover that City employees were working for Defendant KUROKAWA's private business, there was no detailed follow-up investigation, because the allegation was made that the activity on City time was only an occasional telephone call. When officers/employees of the City have such confirmation, their failure to act must be nothing less than intentional willful, wanton and/or reckless to my understanding of those terms.

Furthermore, another City officer and/or employee, as early as February 28, 2003, concluded that "there is an element of truth to what English is alleging." However, again, the resources and official activity of the City, apparently under the cloak of the authority to act on behalf of the City, were focused upon defending against my legitimate claims against the City and those involved and not on addressing the wrongdoings of which I had complained. When officers/employees of the City have such confirmation, their failure to act must be nothing less than intentional willful, wanton and/or reckless to my understanding of those terms.

To my knowledge the only City agency which has evidenced any inclination at all to investigate these matters fairly is the Ethics Commission, and they appear to lack the funding or staff resources to do any such

investigation.  When the City has a complaint of such
activities and then receives some confirmation of those
activities, their failure to act, in the case of the
Ethics Commission by failure to provide adequate funding
for the agency to properly act, must be nothing less
than intentional willful, wanton and/or reckless to my
understanding of those terms.

A further and more complete description of the facts
surrounding the referenced claims is set forth in the
verified complaint, which I have filed in this case,
which is attached to these answers as Exhibit A.  I have
filed a verified complaint to address, as directly and
as comprehensively as I could, the factual background of
my complaints, under oath.

6.  State all facts with specificity which you contend
    support the allegation contained in Paragraph 44 of your
    Complaint that you were forced to resign, and as to each
    fact, state its source, identify each person who you know
    to have any information or knowledge concerning such fact
    or the aforesaid allegation, identify each document which
    supports, embodies, refers or relates to such fact or the
    aforesaid allegation, and the date(s) on which each fact
    occurred.

**ANSWER:**

**OBJECTION:** This interrogatory is overly broad and
unduly burdensome and, in combination with the other
contention interrogatories contained in this request,
would essentially require a narrative of the entire case
of Plaintiff.

Not withstanding the above objection, without waiver
thereof, and without limitation, Plaintiff states the
following facts, which may be material to Plaintiff's
claims, to the best of his present ability.  Plaintiff
has also provided all Defendants with extensive initial
disclosure and substantial additional facts may be
contained in that disclosure.  Further discovery will
also be conducted, which may reveal additional facts

material to this claim.

To answer as best I understand is required:

Although I do not understand paragraph 44 of the Complaint to be the portions of the Complaint alleging that the Defendants "forced" me to "resign", it is my belief that they did do so.

After speaking out to Defendant MOGOTA and putting these issues in writing to him and then taking my complaints to the City Ethics Commission, I was effectively shunned by many, if not most, of the other employees of the Assessment Division and my job was made much more difficult by imposing even further unrealistic deadlines and even further withholding of direction and assistance.  The employment conditions became so onerous and unsettling that I eventually could no longer go to work, on medical advice, as of approximately February 28, 2003.  By making my employment life so miserable, I was effectively fired from my job and lost my livelihood.

The occurrence of these acts was daily and I cannot at present give you a time and date of each act.

A further and more complete description of the facts surrounding the referenced claims is set forth in the verified complaint, which I have filed in this case, which is attached to these answers as Exhibit A.  I have filed a verified complaint to address, as directly and as comprehensively as I could, the factual background of my complaints, under oath.

7.  State all facts with specificity which you contend support the allegation contained in Paragraphs 119 through 126 of your Complaint that Defendants intentionally or negligently inflicted emotional distress upon you, and as to each fact, state its source, identify each person who you know to have any information or knowledge concerning such fact or the aforesaid allegation, identify each document which supports, embodies, refers or relates to

such fact or the aforesaid allegation, and the date(s) on which each fact occurred.

**ANSWER:**

OBJECTION: This interrogatory is overly broad and unduly burdensome and, in combination with the other contention interrogatories contained in this request, would essentially require a narrative of the entire case of Plaintiff.

Not withstanding the above objection, without waiver thereof, and without limitation, Plaintiff states the following facts, which may be material to Plaintiff's claims, to the best of his present ability.  Plaintiff has also provided all Defendants with extensive initial disclosure and substantial additional facts may be contained in that disclosure.  Further discovery will also be conducted, which may reveal additional facts material to this claim.

To answer as best I understand is required:

In late 2001 or early 2002, Defendant MAGOTA advised me that he would talk with Defendant KUROKAWA about the matter of City employees doing work for Defendant KUROKAWA's appraisal company on City time, but that I should not continue to pursue the issue because, in any dispute, it would be my word against the word of the appraiser and Defendant KUROKAWA. Defendant MAGOTA also admonished me that other former employees had tried to file lawsuits against the Assessment Division and that those suits had failed, and that any suit by me would also fail.  I regarded these statements of Defendant MAGOTA as threatening and intimidating and intended to prevent me from doing anything about my complaints of various improper activities.

My interpretation of this statement of Defendant MAGOTA was further borne out when I set forth my

concerns about Defendant KUROKAWA's activities in
writing via email and further when I brought the matter
to the attention of the Ethics Commission in January of
2003.

The bottom line was and is that I was made to
understand that if I did anything against the Assessment
Division or the head of it, Defendant KUROKAWA, that I
would suffer consequences.  I felt compelled to speak
out and take what I viewed as appropriate action and I
have suffered severe consequences as a result. In light
of the initial threat, the subsequent actions taken
against me could be nothing less than intentionally or
negligently inflicted emotional distress upon me, by my
understanding of those terms.

Although, by at least March 6, 2003, a City
representative from the Personnel Division (I
believe) apparently did discover that City employees were
working for Defendant KUROKAWA's private business, there
was no detailed follow-up investigation, because the
allegation was made that the activity on City time was
only an occasional telephone call.  When
officers/employees of the City have such confirmation,
their failure to act must be nothing less than
intentionally or negligently inflicted emotional distress upon
me, by my understanding of those terms.

Furthermore, another City officer and/or employee,
as early as February 28, 2003, concluded that "there is
an element of truth to what English is alleging."
However, again, the resources and official activity of
the City, apparently under the cloak of the authority to
act on behalf of the City, were focused upon defending
against my legitimate claims against the City and those
involved and not on addressing the wrongdoings of which
I had complained. When officers/employees of the City
have such confirmation, their failure to act must be
nothing less than intentionally or negligently inflicted
emotional distress upon me, by my understanding of those

terms.

To my knowledge the only City agency which has evidenced any inclination at all to investigate these matters fairly is the Ethics Commission, and they appear to lack the funding or staff resources to do any such investigation. When the City has a complaint of such activities and then receives some confirmation of those activities, their failure to act, in the case of the Ethics Commission by failure to provide adequate funding for the agency to properly act, must be nothing less than intentionally or negligently inflicted emotional distress upon me, by my understanding of those terms.

It is also true that many, if not all, of the Defendants had specific knowledge of earlier emotional traumas suffered by me, as well as, of specific issues which troubled me still, even at the time of my employment with the City. I believe that the Defendants purposefully took advantage of my particular emotional vulnerabilities and sensitivities in their acts against me.

A further and more complete description of the facts surrounding the referenced claims is set forth in the verified complaint, which I have filed in this case, which is attached to these answers as Exhibit A. I have filed a verified complaint to address, as directly and as comprehensively as I could, the factual background of my complaints, under oath.

8.  State all facts with specificity which you contend support the allegation contained in Paragraphs 127 through 130 of your Complaint that Defendants defamed you, and as to each fact, state its source, identify each person who you know to have any information or knowledge concerning such fact or the aforesaid allegation, identify each document which supports, embodies, refers or relates to such fact or the aforesaid allegation, and the date(s) on which each fact occurred.

<u>ANSWER:</u>

<u>OBJECTION:</u> This interrogatory is overly broad and unduly burdensome and, in combination with the other contention interrogatories contained in this request, would essentially require a narrative of the entire case of Plaintiff.

Not withstanding the above objection, without waiver thereof, and without limitation, Plaintiff states the following facts, which may be material to Plaintiff's claims, to the best of his present ability. Plaintiff has also provided all Defendants with extensive initial disclosure and substantial additional facts may be contained in that disclosure. Further discovery will also be conducted, which may reveal additional facts material to this claim.

To answer as best I understand is required:

In or about August or september of 2002 Defendant MAGOTA stated to an aoutside appraiser that I was causing all sorts of trouble at the Assessment Division. Defendant MAGOTA, during the same period of time told Assessment Division staff that I was "Wako". I do not know who were in attendance at the staff meeting, except for Susan Bender, but the outside appraiser was a friend of Chris Graff's whose name I do not presently recall.

A further and more complete description of the facts surrounding the referenced claims is set forth in the verified complaint, which I have filed in this case, which is attached to these answers as Exhibit A. I have filed a verified complaint to address, as directly and as comprehensively as I could, the factual background of my complaints, under oath.

9.    State all facts with specificity which you contend support the allegation contained in Paragraphs 131 through 138 of your Complaint that Defendants interfered with contractual relations or prospective business advantage, and as to each fact, state its source, identify each person who you know to have any information or knowledge concerning such fact or the aforesaid allegation, identify each document which supports, embodies, refers or relates to such fact or the aforesaid allegation, and the date(s) on which each fact occurred.

<u>**ANSWER:**</u>

<u>**OBJECTION:**</u> This interrogatory is overly broad and unduly burdensome and, in combination with the other contention interrogatories contained in this request, would essentially require a narrative of the entire case of Plaintiff.

Not withstanding the above objection, without waiver thereof, and without limitation, Plaintiff states the following facts, which may be material to Plaintiff's claims, to the best of his present ability.  Plaintiff has also provided all Defendants with extensive initial disclosure and substantial additional facts may be contained in that disclosure.  Further discovery will also be conducted, which may reveal additional facts material to this claim.

To answer as best I understand is required:

In late 2001 or early 2002, Defendant MAGOTA advised me that he would talk with Defendant KUROKAWA about the matter of City employees doing work for Defendant KUROKAWA's appraisal company on City time, but that I should not continue to pursue the issue because, in any dispute, it would be my word against the word of the appraiser and Defendant KUROKAWA. Defendant MAGOTA also admonished me that other former employees had tried to file lawsuits against the Assessment Division and that those suits had failed, and that any suit by me would also fail.  I regarded these statements of Defendant MAGOTA as threatening and

intimidating and intended to prevent me from exercising
my right generally to speak out against, and invoke
proper process against, improper activities in the
Assessment Division, and specifically my right to speak
out against, and invoke proper process against the use
of City employees to work for Defendant KUROKAWA's
business on City time and with City equipment, and
further that I would be denied my rights to
administrative and judicial review of any and all
issues involved.

My interpretation of this statement of Defendant
MAGOTA was further borne out when I set forth my
concerns about Defendant KUROKAWA's activities in
writing via email and further when I brought the matter
to the attention of the Ethics Commission in January of
2003.

After speaking out to Defendant MOGOTA and putting
these issues in writing to him and then taking my
complaints to the City Ethics Commission, I was
effectively shunned by many, if not most, of the other
employees of the Assessment Division and my job was made
much more difficult by imposing even further unrealistic
deadlines and even further withholding of direction and
assistance.  The employment conditions became so onerous
and unsettling that I eventually could no longer go to
work, on medical advice, as of approximately February
28, 2003.  By making my employment life so miserable, I
was effectively fired from my job and lost my job.  In
causing me to lose my job, the Defendants other than the
City itself, interfered with my contract with the City
and additionally destroyed any future economic
relationship I could have had with the City.

A further and more complete description of the facts
surrounding the referenced claims is set forth in the
verified complaint, which I have filed in this case,
which is attached to these answers as Exhibit A.  I have
filed a verified complaint to address, as directly and
as comprehensively as I could, the factual background of

my complaints, under oath.

10. State all facts with specificity which you contend
support the allegation contained in Paragraphs 141 through
144 of your Complaint that Defendants violated you state
constitutional rights, and as to each fact, state its
source, identify each person who you know to have any
information or knowledge concerning such fact or the
aforesaid allegation, identify each document which
supports, embodies, refers or relates to such fact or the
aforesaid allegation, and the date(s) on which each fact
occurred.

ANSWER:

OBJECTION: This interrogatory is overly broad and
unduly burdensome and, in combination with the other
contention interrogatories contained in this request,
would essentially require a narrative of the entire case
of Plaintiff.

Not withstanding the above objection, without waiver
thereof, and without limitation, Plaintiff states the
following facts, which may be material to Plaintiff's
claims, to the best of his present ability.  Plaintiff
has also provided all Defendants with extensive initial
disclosure and substantial additional facts may be
contained in that disclosure.  Further discovery will
also be conducted, which may reveal additional facts
material to this claim.

To answer as best I understand is required:

In late 2001 or early 2002, Defendant MAGOTA
advised me that he would talk with Defendant KUROKAWA
about the matter of City employees doing work for
Defendant KUROKAWA's appraisal company on City time,
but that I should not continue to pursue the issue
because, in any dispute, it would be my word against
the word of the appraiser and Defendant KUROKAWA.
Defendant MAGOTA also admonished me that other former
employees had tried to file lawsuits against the
Assessment Division and that those suits had failed,

and that any suit by me would also fail.  I regarded
these statements of Defendant MAGOTA as threatening and
intimidating and intended to prevent me from exercising
my right generally to speak out against, and invoke
proper process against, improper activities in the
Assessment Division, and specifically my right to speak
out against, and invoke proper process against the use
of City employees to work for Defendant KUROKAWA's
business on City time and with City equipment, and
further that I would be denied my rights to
administrative and judicial review of any and all
issues involved.

My interpretation of this statement of Defendant
MAGOTA was further borne out when I set forth my
concerns about Defendant KUROKAWA's activities in
writing via email and further when I brought the matter
to the attention of the Ethics Commission in January of
2003.

The bottom line was and is that I was made to
understand that if I did anything against the Assessment
Division or the head of it, Defendant KUROKAWA, that I
would suffer consequences.  I felt compelled to speak
out and take what I viewed as appropriate action and I
have suffered severe consequences as a result.  I
believe that I had and have the right to speak out and
to take legitimate actions with respect to these issues,
without either fear of or actual consequences resulting
from exercising my rights.  The Defendants individually
and in a coordinated effort with each other deprived me
of those rights.

Although I had the right to speak and act as I did
it became apparent that the individual Defendants and
the Defendants collectively were acting to deprive me of
those rights.  Furthermore, none of the Defendants
appeared to me to do anything to prevent the other
Defendants from depriving me of those rights.  To my
knowledge and belief all of these Defendants were

officers and/or employees of the City and were duty
bound to uphold the law and to prevent the sort of
retaliation being administered to and taken against me.
They continue to the present time to use the resources
of the City to defend against my claims, under the guise
of their authority as government officers and/or
employees.  To my knowledge, there has been no
comprehensive investigation of, among other things, the
claims I have made that City employees were doing work
on city time and with City equipment for the private
business of the head of the Assessment Division,
Defendant KUROKAWA.

Although, by at least March 6, 2003, a City
representative from the Personnel Division (I
believe) apparently did discover that City employees were
working for Defendant KUROKAWA's private business, there
was no detailed follow-up investigation, because the
allegation was made that the activity on City time was
only an occasional telephone call.

Furthermore, another City officer and/or employee,
as early as February 28, 2003, concluded that "there is
an element of truth to what English is alleging."
However, again, the resources and official activity of
the City, apparently under the cloak of the authority to
act on behalf of the City, were focused upon defending
against my legitimate claims against the City and those
involved and not on addressing the wrongdoings of which
I had complained.

To my knowledge the only City agency which has
evidenced any inclination at all to investigate these
matters fairly is the Ethics Commission, and they appear
to lack the funding or staff resources to do any such
investigation.

A further and more complete description of the facts
surrounding the referenced claims is set forth in the
verified complaint, which I have filed in this case,

which is attached to these answers as Exhibit A.  I have
filed a verified complaint to address, as directly and
as comprehensively as I could, the factual background of
my complaints, under oath.

11.  Identify all treatment sought or received as a result of
     your emotional distress referred to in your Complaint,
     including the full name, complete address, and telephone
     number of any physician, psychiatrist, psychologist,
     therapist, mental health counselor, or other health care
     provider by whom you were examined, treated or whom you
     consulted at any time, past and present, for any purpose
     relating to the allegations in the Complaint.

     **ANSWER:**

     All treatment received at Kaiser:

     JAMES E. LOVE, MD
     Initial treatment with primary care physician
     GERALD COFFEE
     Therapist?, referred by Dr. Love
     JOAN H. KOFF, PhD
     Psychologist - followed up after Dr. Love and
     Gerald Coffee - continues to treat when Kaiser
     services are available to me
     LILLIE MUNDON, LSW
     Therapist in conjunction with Dr. Koff treatment

     Additional examination conducted, at Defendant
City's request for Worker's compensation purposes:

     RENEAU KENNEDY
     3001 Diamond Head Road
     Honolulu, Hawaii 96825
     ph. 923 2266

12.  With respect to each person listed in the preceding answer,
     state each disorder or condition for which each person
     treated or examined you and the approximate dates of
     treatment or examination.