00002502.WPD

KAWASHIMA LORUSSO & TOM LLP

JAMES KAWASHIMA      #1145-0
RANDALL Y. YAMAMOTO  #3274-0
BRIAN Y. HIYANE      #6045-0
CARTER K. SIU        #7313-0
Topa Financial Center
Fort Street Tower
745 Fort Street, Suite 500
Honolulu, Hawaii 96813
Telephone:    (808)275-0371
Facsimile:    (808)275-0399
Email Address: ryamamoto@kltlaw.com

Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA, ROBERT O. MAGOTA,
and ANN C. GIMA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT STATE OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>        Plaintiff,<br><br>   vs.<br><br>CITY AND COUNTY OF HONOLULU;<br>GARY T. KUROKAWA; ROBERT O.<br>MAGOTA; ANN C. GIMA; and GK<br>APPRAISALS, INC.; JOHN DOES<br>1-10; JANE DOES 1-10; DOE<br>PARTNERSHIPS; DOE<br>CORPORATIONS 1-10; AND DOE<br>ENTITIES 1-10,<br><br>        Defendants. | CIVIL NO. CV04-00108 KSC<br><br>DEFENDANTS CITY AND COUNTY OF<br>HONOLULU, GARY T. KUROKAWA,<br>ROBERT O. MAGOTA, and ANN C.<br>GIMA'S **REPLY MEMORANDUM** IN<br>SUPPORT OF DEFENDANTS CITY AND<br>COUNTY OF HONOLULU, GARY T.<br>KUROKAWA, ROBERT O. MAGOTA, and<br>ANN C. GIMA'S MOTION FOR PARTIAL<br>SUMMARY JUDGMENT; LOCAL RULE<br>7.5(e) CERTIFICATION;<br>DECLARATION OF CARTER K. SIU;<br>EXHIBITS "G" - "I"; CERTIFICATE<br>OF SERVICE<br><br><u>HEARING:</u><br><br>DATE:  September 27, 2006<br><br>TIME:  9:00 A.M.<br><br>JUDGE: Hon. Kevin S.C. Chang<br><br>Trial Date: October 3, 2006 |

**DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA,
ROBERT O. MAGOTA, and ANN C. GIMA'S REPLY MEMORANDUM
IN SUPPORT OF DEFENDANTS CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C.
GIMA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants CITY & COUNTY OF HONOLULU, GARY T. KUROKAWA,
ROBERT O. MAGOTA, and ANN C. GIMA (collectively "CITY
Defendants"), by and through their attorneys, KAWASHIMA LORUSSO &
TOM LLP, and hereby submit the following reply memorandum in
support of their motion for partial summary judgment on Counts I
and VIII of the First Amended Complaint for this Court's review
and consideration.

I.   **Discussion**

A.   **Evidence Submitted in Support of Plaintiff's
     Memorandum in Opposition Is Inadmissible for
     Summary Judgment Purposes**

In ruling on a motion for summary judgment, a trial
court can only consider admissible evidence. <u>Orr v. Bank of
America</u>, 285 F.3d 764, 773 (9th Cir 2002).  A condition precedent
to admissibility is <u>authentication</u>, which is satisfied by
"evidence sufficient to support a finding that the matter in
question is what its proponent claims." <u>Id.</u>  Documents
purportedly authenticated through personal knowledge must be
"attached to an affidavit that meets the requirements of [Rule
56(e), Federal Rules of Civil Procedure] and the affiant must be
a person through whom the exhibits could be admitted into
evidence." <u>Id.</u> at pg. 774.  Rule 56(e) requires that affidavits

-2-

be made on "personal knowledge" and that the "affiant [be] competent to testify as to the matters stated therein."

Moreover, hearsay evidence is inadmissible and may not be considered by a court on review of a motion for summary judgment. <u>Harkins Amusement Enterprises, Inc. V. General Cinema Corporation</u>, 850 F.2d 477, 490 (9th Cir. 1988).

Here, the individual offering evidence in opposition to CITY Defendants' Motion for Summary Judgment is Plaintiff's attorney, Chris Muzzi, Esq., by way of declaration. Mr. Muzzi, however, cannot testify as to the authenticity of many of the exhibits, including Exhibits "M,[1]" "N,[2]" "O,[3]" "P," "Q," "R," and "S."[4] Mr. Muzzi does not have the requisite personal knowledge

---

[1]   Plaintiff's Exhibit "M" is seven (7) pages of the same document, an e-mail bate stamped PE 00494. It is not known whether this is the intended exhibit, but if it is not, then CITY Defendants reserve the right to amend its response with regard to the omitted pages.

[2]   Plaintiff's Exhibit "N" is seven (7) pages of the same document, a performance evaluation report bate stamped PE 01680. It is not known whether this is the intended exhibit, but if it is not, then CITY Defendants reserve the right to amend its response with regard to the omitted pages.

[3]   Plaintiff's Exhibit "O" is seven (7) pages of the same document, a performance evaluation report bate stamped PE 01636. It is not known whether this is the intended exhibit, but if it is not, then CITY Defendants reserve the right to amend its response with regard to the omitted pages.

[4]   Although "S" has already been authenticated by Paul Au, Esq., the copy of the Compromise, Settlement and Release Agreement; Approval and Order attached as Plaintiff's Exhibit "S" is an incomplete copy, does not include the signatory pages, and contains markings that were not present on the original.

to authenticate the 5/17/02 memorandum, Philip English's
performance evaluation reports, position description, and
letters/e-mails received by and/or sent by Philip English.  CITY
Defendants note that Exhibit "P" is unsigned and cannot be a copy
of the original letter sent to Plaintiff.

     Furthermore, many of the exhibits contain inadmissible
hearsay that cannot be considered on a motion for summary
judgment.  Exhibit "B", contains a letter from Carolyn Stapleton
dated July 15, 1996.  Although presumably authenticated by Ms.
Leslie Kondo, the letter itself is nonetheless inadmissible as it
constitutes inadmissible hearsay.  The letter is an out of court
statement being used to prove the truth of the matter asserted,
to wit, that there were several phone calls received by her
office regarding individuals who were afraid to report various
campaign spending violations out of fear of being retaliated
against.  Moreover, the letter contains statements attributed by
other people, which makes the letter double hearsay.  Clearly,
the July 15, 1996 letter is inadmissible.

     Exhibit "J," which is a newspaper article, is
inadmissible for the same reasons; it is being admitted for
purposes of proving that the public is afraid to become
whistleblowers for fear of retaliation.  The newspaper article,
which is hearsay, contains additional hearsay statements, which
makes it double-hearsay.

-4-

Exhibits "C" - "I," are copies of lawsuits filed against the City and County and do not involve the Plaintiff.  To the extent that they are admitted to prove the truth of the allegations of each complaint, such exhibits are hearsay and are inadmissible.

The impact of these inadmissible documents/evidence will be discussed below.

B.    **There Is No Evidence Establishing Municipal Liability**

1.    **Policy, Custom, Practice**

Plaintiff has presented no admissible evidence of an official Citywide policy, custom, or practice of retaliating against individuals who exercise their First Amendment rights.

First, there is no testimony that such an official policy exists.  The out-of-context deposition testimony of Denise Tsukayama regarding whistleblower claims cited by Plaintiff does not and cannot establish a Citywide policy of retaliation against individuals who exercise their First Amendment right to free speech.

The July 1996 letter from Carolyn Stapleton and the newspaper article do not establish "policy" as they constitute double hearsay and cannot be used to oppose a motion for summary judgment.  Likewise, she does not discuss retaliation against individuals who have exercised their First Amendment rights.

Copies of the complaints filed in other lawsuits also do not establish a policy. As CITY Defendants cited to earlier, the fact that other whistleblower lawsuits exist is not relevant in determining whether a policy of retaliation exists.[5]  Anyone can file a lawsuit, but the only relevance is the outcome of each lawsuit. Here, no evidence was presented that the City was actually found liable for retaliation. Absent such evidence, summary judgment must enter in CITY Defendant's favor.

### 2.  Defendant Kurokawa is not an Official Policymaker

Plaintiff erroneously cites to several Revised Charter provisions in order to make an argument that Defendant KUROKAWA is a final policymaker of an executive agency. His argument, however, directly contradicts various other provisions within the Charter and the Revised Ordinances of Honolulu.

The index to the Revised Charter of Honolulu, lists under Article V ("Executive Branch – Mayor and Agencies Directly Under the Mayor") and Article VI ("Executive Branch – Managing Director and Agencies Directly Under the Managing Director) the following departments and agencies:

---

[5]    For purposes of establishing "policy" under § 1983, Plaintiff must establish a "practice" or "custom" of retaliating against employees in violation of a constitutional right (i.e., First Amendment rights).  In some of the lawsuits cited by Plaintiff, violation of the claimants First Amendment Rights were not alleged and therefore cannot form the basis for Plaintiff's claim of "practice" or "custom."

- Mayor
- Corporation Counsel
- Managing Director
- Department of Budget and Fiscal Services
- Department of Community Services
- Department of Customer Services
- Department of Emergency Services
- Department of Enterprise Services
- Department of Environmental Services
- Department of Facility Maintenance
- Fire Department
- Department of Human Resources
- Department of Information Technology
- Department of the Medical Examiner
- Department of Parks and Recreation
- Department of Planning and Permitting
- Police Department
- Department of Transportation Services

See Exhibit "G," Revised Charter of Honolulu 2000 Edition, 2003 Supplement Index.

Likewise, Chapter 2[6] Article 28 of the Revised

Ordinances of Honolulu, entitled "Prohibition on Take-home Use of

City Motor Vehicle by <u>Executive Agency Head</u> or Deputy Head,"

defined "executive agency" as:

> (1)  Office of the managing director, department of the prosecuting attorney, department of the corporation counsel, department of the budget, planning department, department of finance, department of personnel, department of public works, fire department, police department, department of the medical examiner, department of health, department of land utilization, department of housing and community development, department of transportation services, department of parks and recreation, department of data systems, building department, department of auditoriums, department of wastewater management, and department of community and social resources; and

---

[6]    Entitled "Executive Agencies – Additional Powers, Duties and Functions."

(2)  Office of information and complaint, municipal reference and records center, civil defense agency, Royal Hawaiian Band, and any other agency administratively attached to or placed within the mayor's or managing director's office.

No where is the Real Property Assessment Division listed as an executive agency; nor is it a part of either the mayor's or managing director's office as it is part of the executive agency entitled Department of Budget and Fiscal Services.  See also Exhibit "G," Agencies and Departments.

Additionally, the evidence that Plaintiff has cited to in opposition to the motion are inadmissible.  Exhibit "M," "N," "O," "P" have not been properly authenticated and cannot be considered in making this determination.

If this Court were to consider such evidence, CITY Defendants submit that Plaintiff's Exhibit "P" (which is unsigned) supports CITY Defendants' point that Defendant KUROKAWA was not in charge of any personnel action.  The "Notice of Substandard Performance Evaluation" was drafted and sent by the Director of the Budget & Fiscal Services department, Ivan Lui-Kwan, and notes and that Plaintiff's supervisor (who was not Defendant KUROKAWA) evaluated Plaintiff.  Nothing in Exhibit "P" indicates that Defendant KUROKAWA had a hand in Plaintiff's performance rating.

-8-

3.   **Deliberate Indifference**

Plaintiff has never alleged that "deliberate indifference" and/or "failure to train" were components of Count I of the First Amended Complaint; at no time was there any allegations that the CITY failed to train its employees with regard to retaliating against individuals who exercise their First Amendment rights.  As Plaintiff is aware, his § 1983 claim must be premised on a violation of Plaintiff's First Amendment rights and cannot be based on a violation of the State Whistleblower Statute.  The Whistleblower statute is encompasses a specific type of speech, and certainly does not include all speech protected by the First Amendment.

Thus, in order for Plaintiff to establish a claim of deliberate indifference based on a failure to train against the City, he must, at a minimum produce evidence of a <u>policy</u>[7]:

---

[7]   The U.S. Supreme Court emphasized that a plaintiff alleging deliberate indifference must establish the existence of a program:

> We concluded in *Canton* that an "inadequate training" claim could be the basis for <u>§ 1983</u> liability in "limited circumstances." <u>*Id.*, at 387, 109 S.Ct., at 1204.</u>  We spoke, however, of a deficient training "program," necessarily intended to apply over time to multiple employees. <u>*Id.*, at 390, 109 S.Ct., at 1205.</u> Existence of a "program" makes proof of fault and causation at least possible in an inadequate training case.  If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for.  Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by

Under *City of Canton,* before a local government entity may be held liable for failing to act to preserve a constitutional right, plaintiff must demonstrate that the official policy "evidences a 'deliberate indifference' " to his constitutional rights.  This occurs when the need for more or different action "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need."

*            *            *            *

Finally, plaintiff must demonstrate that defendants' policy was "closely related to the ultimate injury."

Oviatt v. Pearce, 954 F.2d 1470, 1477-78 (9th Cir. 1992)(citing Oklahoma City v. Tuttle, 471 U.S. 808 (1985) and City of Canton v. Harris, 489 U.S. 378 (1989).

In this case, Plaintiff has produced as Exhibit "Q" an unauthenticated copy of what is purported to be a directive of the City to report fraud.  This alleged "policy" has nothing to do with the ultimate injury under § 1983, which is allegedly a violation of Plaintiff's First Amendment Rights.  Violation of a State statute (i.e., the State Whistleblower Protection Act) does not form the basis of a § 1983 claim.  Plaintiff has no other evidence of a City policy regarding retaliation against an

---

employees may establish the conscious disregard for the consequences of their action--the "deliberate indifference"--necessary to trigger municipal liability

Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 407 (1997)

-10-

employee who exercises his First Amendment Rights; therefore, Plaintiff's claim of deliberate indifference must fail.

Even if this Court were to consider the City Directive about reporting fraud as a City policy to deal with retaliation against whistleblowers (which Plaintiff would like this Court to believe), it nonetheless cannot form the basis of a § 1983 claim. As decided by this Court in Wong v. City and County of Honolulu, 333 F.Supp.2d 942, 951 (D.Hawaii 2004), "mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability."   The explanation for this is simple:

> The Ordinance merely reflects a declaration of policy by the City and County to enforce state law (and thus the policy of the state government), which bears only a severely attenuated causal connection to the asserted violations of Plaintiff's federal rights.   It does not constitute an express incorporation and adoption of state law and policy.

> Id. (Internal citations omitted).

Thus, evidence that the City has a policy to enforce the State Whistleblowers statute cannot, as a matter of law, form the basis for a § 1983 claim against the City.

Based on the foregoing, Plaintiff has failed to present any evidence that could establish a claim under § 1983; therefore, there are no genuine issues of material fact and summary judgment should enter in CITY Defendant's favor.

C.    **Plaintiff Has No Claim for Violation of his First Amendment Rights**

Plaintiff's speech (except for statements made to the Ethics Commission) fall squarely within the purview of <u>Garcetti</u>. All matters for which Plaintiff commented on were matters concerning his job as a Real Property Appraiser.  His job description provides some insight into his job duties, which include the responsibility to "[a]djust valuations to insure equity and fairness in assessing all types of properties" and "[d]efend and explain assessments to superiors, taxpayers, and the general public."

Plaintiff's speech which forms the basis of his First Amendment claim clearly falls within the scope of his job duties, as he was required to discuss the valuation of properties, the methodology, and concomitant matters with his supervisors in order to arrive at a fair and equitable result.

This Court, in <u>Kohl v. Smythe</u>, 25 F.Supp2d. 1124 (D.Haw. 1998), analyzed what constituted matters of public concern.  In <u>Kohl</u>, the plaintiff worked at Halawa prison and was allegedly terminated after complaining about various safety issues, including his own safety.  In ruling that his speech did not concern public concern, this Court ruled:

> The decisions of *Pickering, Connick* and *McKinley* are particularly instructive in determining whether the speech at issue is of public concern.  The Court finds that Plaintiff's repeated grievances and complaints regarding his lack of safety at Halawa, i.e., his

requests for a personal security guard, do not
substantially involve matters of public concern.
Therefore, Plaintiff was not entitled to First
Amendment protection. First, although the safety of
Halawa could be a matter of public concern in assessing
the functioning of correctional facilities in Hawaii,
at no time did Plaintiff attempt to disseminate this
information to the public for its benefit.  Rather,
Plaintiff's complaints and requests for a personal
security guard may be categorized as a personal
"grievance concerning internal office policy."  Second,
in the realm of public employment, the Court notes its
obligation to thoroughly critique the object of the
speech at issue for if courts were "[t]o presume that
all matters which transpire within a government office
are of public concern would mean that virtually every
criticism" of a public employer or official "would
plant the seed of a constitutional case."  Where, as
here, the employee's speech cannot be said to be
reasonably related to "any matter of political, social
or other concern to the community, government officials
should enjoy wide latitude in managing their offices,
without intrusive oversight by the judiciary."

      <u>Kohl</u>, 25 F.Supp2d. At 1129-1130.

Here, Plaintiff's complaints are matters of personal concern

(i.e., personal grievances) and do not rise to the level of

"public concern."  Although it can be generally argued that his

complaints touch upon matters of public concern, it is clear from

reading Plaintiff's complaints, that Plaintiff was dissatisfied

with his job.  Most telling are his complaints that he was

assigned too many properties and that he did not have enough

resources to handle it.  If this matter truly touched upon

matters of public concern, Plaintiff would have complained that

the methodology used resulted in inflated values that were passed
onto the public to their detriment.[8]

### D.   Judicial Estoppel Applies to Plaintiff's Workers' Compensation Settlement Agreement

Plaintiff does not and cannot dispute that
Risetto applies; he only disputes its application to the present
case.

Plaintiff claims not to be playing "fast and loose" but
his argument clearly shows why it is necessary for judicial
estoppel to apply.  He continues to maintain that his resignation
was involuntary and a product of duress, despite his explicit
agreement (with the advice of counsel) that it was voluntarily
entered into without duress.  If Plaintiff was not satisfied with
the terms and conditions of his settlement, then he should never
have signed it.  Presumably his counsel would have and did
explain the ramifications of his voluntary resignation as well as
the various stipulations that he made; this is especially true as
his memorandum in opposition makes clear that Plaintiff and his
counsel were already contemplating filing a lawsuit at the time
that the Settlement Agreement was negotiated and signed.  He

---

[8]   One of Plaintiff's complaints was that the assessment
division did not change the land valuations is years despite
significant moves in the market.  This would seem contrary to
Plaintiff's argument of "public concern" as the land values
(which are assumed to have been lower than they are now) would
benefit the public.

cannot now claim "duress" and/or that there was no "meeting of the minds" for purposes of secondary gain.

Plaintiff is not entitled to any damages for lost wages because he has no injury or damage. Specifically, Plaintiff could not have suffered any wage loss damage because he chose to retire instead of working at another City position. The undisputed evidence is that Plaintiff was offered continued employment within the City, and was even given an opportunity to transfer to the Kapolei division, work for another supervisor (Bob Magota) or transfer to the Big Island division (which he had previously applied for). See Exhibit "I," Philip E. English's Deposition Transcript at pgs. 204-205, pgs. 213-214. He turned down every opportunity presented to him to continue to work (because he though that they were threats) and voluntarily resigned and agreed never to seek re-employment with the City. This was all done under advice of counsel. He cannot now claim that his lack of employment was due to the City when it was he who voluntarily resigned.

Another example of Plaintiff playing "fast and loose" is his claim that the offer of the Settlement Agreement with the term "voluntary resignation" was retaliatory in nature and forms another basis for his Whistleblower Claim. The Wittig case, and the cases cited therein, apply specifically to these type of cases as it declares that such a practice is not contrary to

-15-

public policy and does not amount to retaliatory discharge. Plaintiff clams that it has no application to this case because the Court was only faced with § 386-142 which was written more narrowly than other statutes.  Such as assertion fails to appreciate the differences between § 386-142 (the statute discussed in <u>Wittig</u>) and § 378-32(2) and § 378-62; which is the term **"discrimination."**   It also fails to appreciate the similarities as all three (3) statutes share the terminology **"discharge;"** and to the extent that Plaintiff claims that the Settlement Agreement was tantamount to a retaliatory <u>discharge</u>, <u>Wittig</u> applies.

On point is <u>Joliet v. Pitoniak</u>, 475 Mich. 30, 715 N.W.2d 60 (Mich.Sup.Ct. 2006), wherein the Michigan Supreme Court ruled that an employee's resignation did not constitute a violation of the Whistleblowers Protection Act:

> Where the resignation is not itself an unlawful act perpetrated by the employer, it simply is not a "violation" of the WPA under the plain language of MCL 15.362, which prohibits discharge, threats, or other discrimination by the *employer*.
>
> <u>Id.</u>, 475 Mich. at 42, 715 N.W.2d at 68.

Again, Plaintiff cannot play "fast and loose" in his theories of the case.  Judicial estoppel should therefore apply to bar and limit his claims for damages.

### E.    There Is No Evidence to Support Plaintiff's Defamation Claim

Plaintiff misunderstands the rule of hearsay.  He is intending to prove through Susan Bender that Robert Magota called Plaintiff a Wacko.  This is a basic and classic example of hearsay.

Moreover, none of the individual CITY Defendants were ever attributed with making such statements about Byran Uyesugi. There is no evidence that anyone compared his or said that he was Mr. Uyesugi.  Regardless, those statements are privileged as being part of a work place investigation.

Given the foregoing, summary judgment should enter in CITY Defendant's favor on Plaintiff's defamation claim.

## II.  Conclusion

Based on the foregoing facts and authorities cited above, Defendants DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA submit that Counts I and VIII of the First Amended Complaint must be dismissed.

DATED: Honolulu, Hawaii, September 25, 2006

JAMES KAWASHIMA
RANDALL Y. YAMAMOTO
MICHAEL A. LORUSSO
BRIAN Y. HIYANE
CARTER K. SIU
Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
GARY T. KUROKAWA,
ROBERT O. MAGOTA, and
ANN C. GIMA