COPY

85

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PHILIP E. ENGLISH,              ) CIVIL NO. CV04-00108 JMS/KSC
                                )
        Plaintiff,              )
                                )
    vs.                         )
                                )
CITY AND COUNTY OF HONOLULU;    ) VOLUME II
GARY T. KUROKAWA; ROBERT        ) PAGES 85 THROUGH 242
MAGAOTA; ANN C. GIMA; and       )
GK APPRAISALS, INC.; et al.,    )
                                )
        Defendants.             )
                                )

DEPOSITION OF PHILIP E. ENGLISH

Taken on behalf of Defendants City & County of Honolulu, Gary T. Kurokawa, Robert Magota and Ann C. Gima, at the law offices of Watanabe Ing Kawashima & Komeiji, 5th Floor, Hawaii Tower, 745 Fort Street, Honolulu, Hawaii 96813, commencing at 10:29 a.m., on Tuesday, October 4, 2005, pursuant to Notice.

BEFORE:

Donna Kohls, CSR 146
Notary Public, State of Hawaii

EXHIBIT "I"

CARNAZZO COURT-REPORTING CO., LTD.
532-0222

1  they would-- they wrote down all of the requirements of an
2  appraiser IV and they said I have to be able to do all of
3  these things.
4      One of the things that Gary said I should be able to
5  do is that I should have initiative. That was peculiar to
6  me because I had a meeting with him in January before
7  where he said I was taking too much initiative.
8      I was also told that Ann Gima did not like my emails
9  to her because I signed off my emails as, "Is there
10 anything else that you would like me to do?" And she felt
11 that was obnoxious.  And I asked them, "How should I do
12 it?  How would you want me to?"  And they said, "We don't
13 know.  That is your problem.  You got to figure that out
14 on your own."
15      There was some discussion about the fact that they
16 had changed the JPR after I had signed it.  They gave me
17 the JPR, I reviewed it, I responded.  It came back to me,
18 I signed it.  Then the next day I got a different JPR with
19 Ann Gima and Gary Kurokawa's signature on it.  There was a
20 discussion about removing portions of the language, which
21 I didn't really follow what they were talking about or
22 understand what they were getting at about that.
23      And they told me that this whole discussion of what
24 is going to happen next is up to me.  And Waylen repeated
25 that a number of times, "Phil, it's up to what is going to

1  happen in the future." And I pretty much got all of the
2  signals and knew what they were talking about at that
3  point, which was essentially not to bring up anything
4  about any kind of retaliation, not to bring up anything
5  about Gary and Chris's activities at the office, and that
6  would be the possibility for a fresh start.
7      They also talked about, which I perceived as threats,
8  about they could move me to Kapolei. They knew I was
9  taking the bus, or actually I was riding my bike to work
10 at the time, and they were going to move me to Kapolei.
11     They said they could put me under Bob Magota, which
12 everyone else in the room agreed would be a really bad
13 thing, although I didn't really understand that exactly
14 myself.
15     And the other thing they talked about, actually this
16 was a meeting between Waylen and I after the meeting, that
17 Gary would be willing to move me to another jurisdiction,
18 which I though was rather bizarre because I don't know how
19 he would have the authority to do that. But that was
20 discussed.
21     Actually what happened was, once the meeting
22 concluded, I asked Waylen if he could please stay back.
23 This was only my second meeting with Waylen. And because
24 of the way the meeting went, I simply asked him, "What is
25 your relationship with these folks here?" And he told me

1  that I might be interested in moving to another
2  jurisdiction and that he could make the arrangements so
3  that that can happen.
4  Q    And that point in time is when you had been making
5  inquiries on the Big Island as to whether or not you were
6  considering the potential of moving over there, correct?
7  A    I had gone and met with Stan in June and I was making
8  inquiries about that.
9  Q    And in terms of any type of accommodation, did you
10 take that as a threat, that Gary Kurokawa was threatening
11 you in some way by moving you?
12 A    I took it as-- well, I took the other issues as a
13 threat, certainly.  I took that issue as this is your
14 opportunity to get out of here if you want.  That is how I
15 took it.  In other words, if you want out of here, we'll
16 see if we can make a way for you to get out.
17 Q    In other words, that is an end result but not in and
18 of itself a threat, is that correct?
19 A    That was a way out for me that was being offered.
20 Q    But it was not a threat, correct?
21 A    If they are offering you a way out of something,
22 Mike, then indirectly that is a threat.  You know, in
23 other words, that there is some issue, there is some
24 problem.  There is some trouble if they are saying, "We'll
25 give you a way out if you want to take it."

1  Q    My question to you is, when Waylen Toma, not Gary
2  Kurokawa, but when Waylen Toma said that accommodations
3  could be made for you to move to a different jurisdiction,
4  did you take that as a threat? Again, yes or no?
5  A    In context of the whole thing that was happening, it
6  was part of a threat.
7  Q    When you say it was part of a threat, those
8  particular words or the ability to accommodate you, you
9  took that as part of a threat?
10 A    In context of everything else that was said and
11 everything else that was going on, yes.
12 Q    In terms of the other part, what is the other part of
13 the threat?
14 A    The other part was they would move me to Kapolei.
15 The other part was they would put me under Bob Magota,
16 which I mentioned everybody in the room agreed that would
17 be a really terrible thing. I don't know why. And
18 really, at the end of the meeting, I recognized that
19 basically I was in trouble. They essentially said, you
20 have to be a perfect appraiser IV, and if you fall short
21 of that, then you are not going to pass your probation.
22 Actually, at that point, they were saying they were going
23 to pass the probation. But subsequently now I know
24 something I didn't know then, which they were already
25 planning on putting me on a special probation, which under

242

```
 1  STATE OF HAWAII           )
                              )
 2       I, DONNA KOHLS, C.S.R., a Notary Public in and for
 3  the State of Hawaii, do hereby certify:
 4       That on October 4, 2005, at 10:29 a.m., appeared
 5  before me PHILIP E. ENGLISH, the witness whose testimony
 6  is contained herein, that prior to being examined, the
 7  witness was by me duly sworn; that the proceedings were
 8  taken in computerized machine shorthand by me and were
 9  reduced to print; that the foregoing represents to the
10  best of my ability, a correct transcript of the
11  proceedings had in the foregoing matter;
12       That the witness, if applicable, was notified through
13  counsel, by mail or by telephone to appear and sign; that
14  if the transcript is not signed, either the reading and
15  signing were waived by the witness and all parties, or the
16  witness failed to appear and the original is therefore
17  kept on file without signature pursuant to Court Rules.
18       I further certify that I am not counsel for any of
19  the parties hereto, nor in any way interested in the
20  outcome of the cause named in the caption.
21       Dated:    OCT 17 2005
22
23           _____
             Donna Kohls, C.S.R., No. 146
24           Notary Public, State of Hawaii
             My commission expires: 7-21-2010
25
```