ORIGINAL

MOSELEY BIEHL TSUGAWA LAU & MUZZI
A Hawaii Limited Liability Law Company
ROGER S. MOSELEY        2060
CHRISTOPHER J. MUZZI    6939
TEDSON H. KOJA          4793
Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, Hawaii 96813
Telephone: (808) 531-0490
Facsimile: (808) 534-0202
Email: rmoseley@hilaw.us
       cmuzzi@hilaw.us
       tkoja@hilaw.us

Attorneys for Plaintiff
PHILIP E. ENGLISH

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 22 2006

at 4 o'clock and 04 min P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1–10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,<br><br>Defendants. | Civil No. 04-00108 KSC/KSC<br><br>PLAINTIFF PHILIP E. ENGLISH'S MEMORANDUM IN OPPOSITION TO GK APPRAISAL, INC.'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF PHILIP E. ENGLISH; CERTIFICATE OF SERVICE<br><br><br><br>TRIAL: OCTOBER 3, 2006 |

10010\3\57929.1

# MEMORANDUM IN OPPOSITION TO GK APPRAISAL, INC.'S MOTION FOR SUMMARY JUDGMENT

I.  INTRODUCTION

Defendant GK (hereinafter "GK") is seeking summary judgment on the following counts: Count I (Violation of Civil Rights); Count VII (Negligent Infliction of Emotional Distress); Count IX (Intentional Interference with Contractual Relations); Count X (Intentional Interference with Prospective Economic Advantage); as well as, all claims for temporary disability, future disability and wrongful discharge.

Plaintiff does not oppose GK's request for dismissal of Count I (Violation of Civil Rights).

However, Plaintiff opposes GK's request for dismissals of Count VII (Negligent Infliction of Emotional Distress); Count IX (Intentional Interference with Contractual Relations) and Count X (Intentional Interference with Prospective Economic Advantage) as well as, all claims for temporary disability, future disability and wrongful discharge. [1]

II.  ARGUMENT

---

[1] Count I (Violation of Civil Rights) was dismissed against GK by Court Order dated December 15, 2005. dismissal.

A.  GK HAS NOT STATED A SUFFICIENT BASIS TO DISMISS COUNTS IX AND X IS NOT WARRANTED.

GK requests a dismissal of Counts IX (Intentional Interference with Contractual Relations) and Count X (Intentional Interference with Prospective Economic Advantage) "based on the Order filed on July 6, 2006, dismissing these counts against all City defendants arguing that "those Counts should be dismissed against [GK] as well because the only connection that [GK] has to the underlying fats is through claims of vicarious liability based upon conduct by Kurokawa, who has been found to be liability-free on those Counts.  Therefore, where Kurokawa is not liable, GK cannot be held liable based upon vicarious liability."

GK's assertion that "where Kurokawa is not liable, GK cannot be held liable based upon vicarious liability," without further explanation, is not sufficient to meet its initial burden of production to prove the absence of a genuine issue of material fact and that it is entitled to summary judgment as a matter of law.  <u>Nissan Fire & Marine Insurance Company, Ltd. v. Fritz Companies Inc.</u> (9th Cir. 2000) and <u>Rodriguez v. Nishiki</u> 65 Haw. 430, 653 P.2d 1145 (1982)

In <u>Nissan Fire & Marine Insurance Co.</u> *supra*, the court stated:

> In order to carry its **burden of production**, the **moving party must produce** either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial *(citations omitted)*. . .

> If a moving party fails to carry its **initial burden** of production, the **nonmoving party** has **no obligation to product anything**, even if the nonmoving party would have the ultimate burden of persuasion *(citations omitted)*

In this case, Plaintiff has alleged that Defendant Kurokawa was an officer, director and shareholder of GK and acted as GK's agent. And, liability against GK is based upon the theory that "a principal is liable for the tortuous acts of an agent which are done within the scope of the agent's employment." §264 <u>3 Am Jur</u> 2d

While there may be circumstances where a finding of non-liability of the agent will also relieve the principal from liability, there is no absolute rule. <u>Restatement 2d, Agency</u> §217, entitled *Where Principal or Agent has Immunity or Privilege*, states:

> In an action against a principal based on the conduct of a servant in the course of employment:
>
> (a) the principal has a defense if:
>
>     (i) he had an immunity from liability to the person harmed, or
>     (ii) he had a delegable privilege so to act, or
>     (iii) the agent had a privilege which he properly exercised on his principal's behalf, or
>     (iv) the agent did not fall below the duty of care owed by the principal to the third person.
>
> (b) The principal has no defense because of the fact that:
>
>     (i) He had a non-delegable privilege to do the act;

>   (ii)   The agent had an immunity from civil liability as to the act.

But for a general conclusory statement that "GK cannot be held liable where Kurokawa is not liable" GK does not explain the specific basis for their conclusion. Nor does GK explain why a dismissal of Kurokawa, as GK's agent, **necessarily** warrants a dismissal against GK, the principal. Without more information, it cannot determined whether GK is relying upon §217(a) or whether Plaintiff can rely upon the principles stated in §217(b) to defeat dismissal by summary judgment. At minimum, fairness demands that Plaintiff be given reasonable notice of the grounds for dismissal.

And, to the extent that the July 6, 2006 dismissal was based, in part, on insufficiency of evidence, the parties have engaged in further discovery since that time and additional relevant evidence may have been adduced that time which would create a genuine issue of material fact. However, because the basis for GK's motion is so vague and generalized, this cannot be determined. Consequently, under Nissan Fire & Marine Insurance Co., Plaintiff, "as the **nonmoving party** has **no obligation to product anything**" since GK has not met its initial burden of production.

What can be said for now is that a corporation acts through its officers and agents. Kurokawa was an officer, director and shareholder of GK. Kurokawa Kurokawa was Plaintiff's supervisor and was aware that Plaintiff was employed by

the City. Plaintiff's complaints jeopardized GK's business. Kurokawa approved Plaintiff's work performance evaluation which recommended that he be placed on extended probation. But, because Kurokawa failed to submit the recommendation in a timely fashion, Plaintiff's probation was not, in fact, extended; a fact which he never informed Plaintiff Consequently, Plaintiff continued to believed that he was on probation for an additional three months. This had an impact upon Plaintiff because he was in the process of applying for a job on the Big Island, but had to inform his prospective employer that he was still on probation.[2]

    B.    THE DOCTRINE OF COLLATERAL ESTOPPEL DOES NOT PRECLUDE PLAINTIFF'S CLAIMS OF WRONGFUL DISCHARGE, TEMPORARY DISABILITY, OR PERMANENT DISABILITY.

    1.    **The Doctrine of Collateral Estoppel Is Inapplicable.**

GK argues that the Plaintiff should be collaterally estopped from asserting claims of wrongful discharge, temporary disability or permanent disability based upon a Compromise, Settlement, and Release Agreement ("Settlement Agreement") executed in connection with a settlement of his workers' compensation claim.

---

[2] Plaintiff requests additional time to supplement the instant opposition with declarations and deposition transcripts should the basis for GK's motion be clarified.

In support, GK cites to the Hawaii Supreme Court case, <u>Dorrance v. Lee</u> 90 Haw. 143, 148, 976 P.2d 904, 909 (1999), which outlined the following four elements necessary to establish collateral estoppel.

> (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a **final judgment on the merits**; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.

GK is wrong for the simple reason that the Settlement Agreement is not by any legally accepted definition a "final judgment on the merits."

A "judgment" is defined as:

> The official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination. The final decision of the court resolving the dispute and determining the rights and obligations of the parties. The law's last word in a judicial controversy, it being the final determination by a court of the rights of the parties upon matters submitted to it in an action or proceedings. <u>Black's Law Dictionary Black's Law Dictionary</u> 5th Ed. (1979) <u>Black's Law</u>

"Final Judgment" is defined as:

> One which puts an end to an action at law by declaring that the plaintiff either has or has not entitled himself to recover the remedy he sues for. <u>Dictionary Black's Law Dictionary</u> 5th Ed. (1979)

Given these definitions, it is clear that GK's argument should be rejected out of hand.

## C. THE DOCTRINE OF JUDICIAL ESTOPPEL DOES NOT PRECLUDE PLAINTIFF'S CLAIMS OF WRONGFUL DISCHARGE, TEMPORARY DISABILITY, OR PERMANENT DISABILITY.

GK alternatively argues that the doctrine of judicial estoppel bars Plaintiff from asserting claims of wrongful discharge, temporary disability or permanent disability.

The concept of judicial estoppel is discussed in §74 28 AmJur 2d (2000), which states:

> Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent, conflicts with, or is contrary to one that she has previously asserted in the same or in a previous proceeding, it is designed to prevent litigants and their counsel from playing fast and loose with the court and to protect the integrity of the judicial process. Judicial estoppel doctrine is equitable and is intended to protect the courts from being **manipulated by chameleonic litigants** who seek to **prevail, twice, on opposite theories**. The purpose of the doctrine of judicial estoppel is to reduce fraud in the legal process by forcing a modicum of consistency on the repeated litigant.
>
> The following five circumstances are often required in order for the doctrine of judicial estoppel to apply: (1) the two **inconsistent *positions*** must be taken by the same party or parties in privity with each other . . .(2) the *positions* must be taken in the same or related proceedings involving the same parties or parties in privity with each other; (3) the party taking the *positions* must have been **successful in maintaining the first *position*** and must have received some **benefit or unfair advantage**; or the **opposing party is prejudiced** by the changed argument, although there is also authority holding that no benefit need be obtained; (4) the inconsistency must be part of an **intentional effort to mislead the court** that courts should not tolerate, although the doctrine of judicial estoppel does not apply when the prior position was taken because of inadvertence, mistake, or is an innocent inconsistency or apparent inconsistency that is actually reconcilable; and (5) the two *positions* must be **inconsistent** – that is, the **truth of one position must necessarily preclude the truth of the other**

*position*, at least where the party had, or was chargeable with, full knowledge of the facts.

Furthermore,

Judicial estoppel is an equitable concept with some vagueness in its application and its application is within the sound discretion of the court. Judicial estoppel must be applied with **caution** and in the **narrowest circumstances** so as to avoid impinging upon the **truth-seeking** function of the court . . . Judicial estoppel is a concept to be applied with **restraint** in egregious cases only and with clear regard for the facts of the particular case.

Defendant cites to the Hawaii Supreme Court case Roxas v. Marcos 89 Haw. 81, 969 P.2d 1209 (1999), where the Court for good reason applied the doctrine of judicial estoppel. In that case, Imelda Marcos, surviving wife of former Phillipine President Marcos stipulated to her substitution as Defendant for the former President following his death. Although the stipulation was accepted by the Court and following an adverse verdict, Imelda argued the she did not have the authority to enter into the stipulation. The Court characterized Imelda's tactic as follows:

By means of her stipulation in this case, Imelda accepted the benefit of maintaining full control over the defense of the Marcos Estate, in which she had a substantial interest. Now that the plaintiffs-appellees have prevailed against the estate, Imelda argues that she was without authority to act as she did in offering and entering into the stipulation. In other words, she now claims that because of *her* wrongful act of holding herself out as a proper party for substitution, the plaintiffs-appellees should now be stripped entirely of their judgment." Id. Haw. at 124.

Under those facts, the Court's ruling that Imelda was estopped from asserting a contrary position was completely justifiable.

However, for reasons explained in the following sections, the doctrine of judicial estoppel is applicable under the facts of the instant case. In effect, GK is requesting that this Court invoke a rarely utilized doctrine in the broadest and most inappropriate circumstances when doing so would obstruct justice and hinder the goal of truth-seeking.

1.   **The Settlement Agreement**

GK argues that Plaintiff if forever bound by the recitals in the Settlement Agreement which state:

> Claimant did not sustain any temporary disability under HRS 386-1(b) as a result of the January 30, 2003 claim of injury. (Release Agreement, at p.2 ¶2)

> Claimant did not sustain any permanent disability as a result of the January 20, 2003 claim of injury. (Release Agreement, at p.3, ¶3)

The doctrine of judicial estoppel, if applied under the circumstances of this case, would not further the goal of truth-seeking. In fact, it would have the opposite result of prohibiting Plaintiff from seeking compensation for injuries suffered for wrongs committed by the Defendants, in effect, providing a protective shield to wrongdoers who were not misled and who have not relied to their detriment upon recitals in the Settlement Agreement to determine their future conduct.

The City understood that by entering into the Settlement Agreement, Plaintiff was only releasing the City from liability pursuant to the workers'

compensation statute and that future litigation based upon the same factual allegations was a possibility.

Paragraph 8 of the Settlement Agreement states, in relevant part:

> This Agreement is a compromise settlement entered into by the parties hereto in good faith . . . this Agreement shall be a complete bar to any and all claims or re-openings for compensation, injuries, disabilities, disfigurement, death or damages to Claimant under the Hawaii Workers' Compensation Law (especially as contemplated in Section 386-89, HRS)."

Furthermore, paragraph 12 of the Settlement Agreement expressly contemplated the possibility of further litigation. It states:

> It is expressly agreed by the parties that the determination herein that Claimant sustained a stress-related psychic injury on or about January 30, 2003 by accident arising out of and in the course of his employment with Employer is **without prejudice to either party with respect to *non-workers' compensation proceeding*** and the parties are **not precluded** from **litigating issues** regarding the **nature, scope and cause of Claimant's stress and/or psychic injuries in any *nonworkers' compensation proceeding*.**

Because the provision makes clear that future litigation was possible, the City could not have been misled meaning that application of the doctrine of judicial estoppel would not serve to sanction a litigant for intentionally misleading the opposing party or the Court.

And, if the City was not misled, then GK cannot reasonably allege that it was misled since GK was not a party or in privity with a party to the Settlement Agreement.

Furthermore, that GK was not a party or in privity with a party to the Settlement Agreement is another reason that it is not entitled to the protections afforded by judicial estoppel.[3]

### 2. Plaintiff's Deposition Testimony

Finally, GK argues that Plaintiff's deposition testimony that he "voluntarily resigned" bars him from asserting a claim of wrongful discharge. or from seeking damages for past and future disability and/or wage and earnings loss.

GK phrases the cause of action as one for "wrongful discharge." Presumably, this refers to Count IV of the Complaint, entitled "Unlawful Discrimination and Retaliation" which is alleged to be a violation of H.R.S. §378-62. This section states:

> An employer shall not **discharge, threaten,** or **otherwise discriminate** against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because: 91) The employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of a law or rule adopted pursuant to law of this State, a political subdivision of this State, or the United States, unless the employee knows that the report is false . . .

GK has not moved for summary judgment based upon an argument that there is no genuine issue of material fact that Plaintiff was not discharged based upon his deposition testimony that he "voluntarily resigned." Instead, GK moves

---

[3] (2) "The positions must be taken in the same or related proceedings involving the **same parties or parties in privity with each other.**" §74 28 AmJur 2d (2000).

for summary judgment based upon the doctrine of judicial estoppel, which under the circumstances of this case are not applicable for the following reasons.

First, Plaintiff has not received any "benefit or unfair advantage," nor has Defendant been "prejudiced."

Second, the alleged "inconsistency" was not an intentional effort to mislead the court.

Third, there is no inconsistency in the sense that "the truth of one position must necessarily preclude the other position." While Plaintiff may have "voluntarily resigned" in the sense that no threats or physical force was used to compel him to sign the Settlement Agreement, he was **constructively discharged** long before his formal resignation in the sense that he was medically not able to work since February 27, 2003, over eleven months before he signed the Settlement Agreement on January 20, 2004. And, because the fact of wrongful constructive discharge constitutes the gravamen of the claim, "the truth of one position [does not] necessarily preclude the truth of the other position." In other words, there is no contradiction in the fact that Plaintiff was wrongfully and constructively discharged as of February 27, 2003, but voluntarily resigned on January 20, 2004.

Lastly, it is unclear whether GK is moving to dismiss Count IV in its entirety or simply arguing that Plaintiff cannot pursue a theory of wrongful discharge to prove Count IV. To the extent that GK may be attempting to dismiss

Count IV in its entirety, there is no legal basis to do so because even if application of the doctrine of judicial estoppel precludes Plaintiff from arguing "wrongful termination," he is still free to pursue the claim by proof that that he was threatened or otherwise discriminated against.

### D.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

GK alleges that Count VII, Negligent Infliction of Emotional Distress, should be dismissed pursuant to John and Jane Roes v. FHP, Inc. 91 Haw. 470, 474, 985 P.2d 661, 665-666 (1999), which discussed the generally recognized principle that "recovery for negligent infliction of emotional distress by one not physically injured is generally permitted only where there is some physical injury to property or [another] person resulting from defendant's conduct." *citing* Ross v. Stouffer Hotel C. Ltd.

However, in this case, Plaintiff has suffered from "physical injury" in that he has experienced physical problems, such as physical problems such as headaches, stomach pain, and nausea. Plaintiff also has problems sleeping and feels lethargic. [Declaration of Phillip E. English] The manifestation of these physical problems constitute "physical injury" which can serve as a basis for recovery.

Moreover, in Roes *supra*, the Court ruled that the facts of the case justified an exception to the "physical injury" requirement. Roes involved a claim filed by

Plaintiffs baggage handlers who were exposed to HIV-tainted blood while unloading baggage. They subsequently filed suit alleging negligent infliction of emotional distress arising out of a fear of developing AIDS. After discussing past decisions which dispensed with the physical injury requirement, the Court held that "damages may be based solely upon serious emotional distress, even absent proof of a predicate physical injury." Id. Haw. at 22. [4]

Plaintiff contends that the exception to the physical injury requirement should apply under the circumstances of this case since Plaintiff has experienced physical symptoms which were the consequence of emotional trauma. While it is true that the Hawaii Supreme Court has not departed from the general rule requiring physical injury in other employment cases, there was no evidence presented by Plaintiffs in those cases that Plaintiffs that they exhibited physical symptoms of emotional trauma, unlike Plaintiff in this case who has so alleged.

---

[4] *See generally* Doe Parents No. 1 v. State of Hawaii, Department of Education 100 Haw. 34, 58 P.3d 545 (2002) (child molestation) Guth v. Freeland 96 Haw. 147 (2001) (mishandling of corpse) and Brown v. Bannister 14 Haw. 34 (1902) (breach of promise to marry).

See <u>Calleon v. Myagi and MTL Inc.</u> 76 Haw. 310, 876 P.2d 1278 (1994) and <u>Ross v. Stouffer Hotel Co. Ltd., Inc.</u> 76 Haw. 454, 879 P.2d 10376 (1994).

DATED: Honolulu, Hawaii, September 22, 2006.

                                    _____
                                    ROGER S. MOSELEY
                                    CHRISTOPHER J. MUZZI
                                    TEDSON H. KOJA
                                    Attorneys for Plaintiff
                                    PHILIP E. ENGLISH