ORIGINAL

MOSELEY BIEHL TSUGAWA LAU & MUZZI
A Hawaii Limited Liability Law Company
ROGER S. MOSELEY          2060
CHRISTOPHER J. MUZZI      6939
RENEE M. FURUTA           7593
Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, Hawaii 96813
Tel: (808) 531-0490  Fax: (808) 534-0202
Email: rmoseley@hilaw.us, cmuzzi@hilaw.us
       rfuruta@hilaw.us

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 22 2006

at 4 o'clock and 04 min P M
SUE BEITIA, CLERK

Attorneys for Plaintiff
PHILIP E. ENGLISH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>          Plaintiff,<br><br>     vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1–10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,<br><br>          Defendants. | Civil No. 04-00108 KSC/KSC<br><br>MEMORANDUM IN OPPOSITION TO DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KURKAWA, ROBERT O. MAGOTA, and ANN C. GIMA'S MOTION FOR PARTIAL DISMISSAL, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT; CERTIFICATE OF SERVICE<br><br>HEARING:<br>DATE:  September 27, 2006<br>TIME:  9:00 a.m.<br>JUDGE: The Honorable Kevin S.C. Chang |

10010/3/57988

**MEMORANDUM IN OPPOSITION TO DEFENDANTS
CITY AND COUNTY OF HONOLULU, GARY T. KURKAWA,
ROBERT O. MAGOTA, and ANN C. GIMA'S MOTION FOR
PARTIAL DISMISSAL, OR IN THE ALTERNATIVE, MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Philip E. English ("Plaintiff"), by and through his counsel, Moseley Biehl Tsugawa Lau & Muzzi, submits this memorandum in opposition to Defendants City and County of Honolulu ("City"), Gary T. Kurokawa ("Kurokawa"), Robert O. Magota ("Magota"), and Ann C. Gima's Motion For Partial Dismissal, Or In The Alternative, Motion For Partial Summary Judgment ("Motion for Partial Dismissal or Summary Judgment").

## I.    LEGAL STANDARD

In considering a 12(b)(6) motion to dismiss, the general rule is that a complaint should not be dismissed on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99; 2 L. Ed. 2d 80 (1957). In evaluating a complaint, any doubts should be construed in the favor of the pleader. Ernest W. Hahn, Inc. v. Codding, 615 F.2d 830, 834-36 (9th Cir. 1980). The complaint must be liberally construed, giving the plaintiff the benefit of all proper inferences. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

10010/3/57988

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317. 323, 106 S. Ct. 2548; 91 L. Ed. 2d 265 (1986). In determining whether summary judgment is proper, a court ordinarily must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800; 102 S. Ct. 2727; 73 L. Ed. 2d 396 (1982).

## II.    ARGUMENT

### A.    There is Significant Evidence Establishing Municipal Liability

Municipal liability with respect to Plaintiff's § 1983 claim against Defendant City can be established in at least three ways: (1) by demonstrating a municipal "policy" or "custom" that caused the plaintiff's injury, <u>Bd. of the County Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997) (citing <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978); <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 480-81, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986); <u>Canton v. Harris</u>, 489 U.S. 378, 389, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989); (2) where the decisionmaker possesses final authority to establish municipal policy with

respect to the action ordered,  Pembaur, 475 U.S. at 480-481; and (3) by way

of an "inadequate training" claim, Canton, 489 U.S. at 390; Long v. County

of Los Angeles, 442 F.3d 1178, 1186-87 (9th Cir. 2006).

> **1.    There is Strong Evidence of a Policy and Custom So as to Establish Municipal Liability**

"A local government may not be sued under § 1983 for an injury

inflicted solely by its employees or agents. Instead, it is when execution of a

government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts

the injury that the government as an entity is responsible under § 1983."

Monell , 436 U.S. at 694.

> With respect to custom, the Court in Monell asserted that
> "although the touchstone of the § 1983 action against a government
> body is an allegation that official policy is responsible for a
> deprivation of rights protected by the Constitution, local governments
> . . . by the very terms of the statute, may be sued for constitutional
> deprivations visited pursuant to governmental 'custom' even though
> such a custom has not received formal approval through the body's
> official decision-making channels." Monell, 436 U.S. at 690-91.
> Consistent with the commonly understood meaning of custom, proof
> of random acts or isolated events are insufficient to establish custom.
> Palmer v. City of San Antonio, 810 F.2d 514, 516 (5th Cir. 1987);
> Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986).
> Only if a plaintiff shows that his injury resulted from a "permanent
> and well-settled" practice may liability attach for injury resulting from
> a local government custom. See Praprotnik, 108 S. Ct. at 926 (quoting
> Adickes v. S.H. Kress & Co., 398 U.S. 144, 168, 26 L. Ed. 2d 142, 90
> S. Ct. 1598 (1970) ("a plaintiff may be able to prove the existence of a
> widespread practice that, although not authorized by written law or

express municipal policy, is 'so permanent and well-settled as to constitute a custom or usage with the force of law'").

If such a showing is made, however, a local government may be liable for its custom irrespective of whether official policymakers had actual knowledge of the practice at issue. The existence of custom as a basis for liability under § 1983 thus serves a critical role in insuring that local government entities are held responsible for widespread abuses or practices that cannot be affirmatively attributed to the decisions or ratification of an official government policymaker but are so pervasive as to have the force of law. See id.

Thompson v. Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989).

Here, the evidence of a policy or custom of retaliation against whistleblower's exercising their First Amendment rights is significant:

a.    Testimony of Denise Tsukayama, 30(b)(6) witness of Defendant City with respect to, among other things, whistleblower and training matters:

- The City does not have one centralized place to make whistleblower complaints. (14:11 – 15:6)

- Ms. Tsukayama is in charge of investigating complaints made to her office, but has no investigators (18:7)

- Ms. Tsukuyama asked to discuss training that a department might do to prevent retaliation after case is decided (27:22-24)

- In training set up for department of enterprise services to prevent retaliation, there is no specific training for whistleblowers issues. (28:10-17)
- Training set up in several other departments at the conclusion of litigation involving retaliation. (29:6-24 – 30: 5, 30:14 – 23, 31:3-11)

4

- There is no component of City training that specifically speaks about the Hawaii Whistleblower Protection Act (33:21-23)

- The HWPA is not even referred to in City training. (34:4-6)

- All retaliation training programs were put in place as a result of litigation filed by employees (34:19-23)

- All retaliation programs initiated after employee litigation was resolved. (35:17-21)

- Ms. Tsukuyama believes that the retaliation training should be a city-wide program. (36:3-6)

- None of the training programs focus on the HWPA (36:9-12)

- Not familiar with the Shannon whistleblower case against the City liquor commission (43:3-37)

- Not familiar with Whang whistleblower case against City prosecutor's office (44:7-20)

- Retaliation against whistleblowers is a serious problem. (54:8-10)

- The City's complaint line where employees can report misconduct is really the City's customer service department, the same number where people call to report potholes. (63:19-64:1)

- When a supervisor learns of a potential violation of a law, the supervisor has a responsibility to do something. (69:2-18)

- When a supervisor learns of retaliation they have a responsibility to do something (69:19-70:1)

- Most City employees have a fear of complaining, of retaliation or repercussions. (75:9-15)

- The statements in the July 15, 1996 letter of Carolyn Stapleton corresponds to her experience with some City employees. (77:3-6) (See Exhibit B)

- The City has not done anything to address the problems identified by Ms. Stapleton. (77:11-13)

- None of the City's departments have done anything to address the problems identified by Ms. Stapleton. (77:14-16)

- Ms. Tsukuyama's opinion is that the City's current training programs are inadequate to deal with complaints of retaliation. (82:19-24).

- She has had discussions with three heads of the Department of Human Resources about the opinion that the City's current training programs are inadequate to deal with complaints of retaliation (83:6-10)

- The City's response to Ms. Tsukuyama's opinion, has been that the city does not dispute there is a need for training, but its doesn't know where to start or who's going to do it. (84:1-8)

- The retaliation training in place has an immaterial prevention aspect, but provides a foundation for management to do something about retaliation when it does occur (86:7-12)

- The current lack of training may fail to prevent retaliation (86:17-25 – 87:2)

- When managers report that an employee's performance declined after a complaint is made, it is a text book red flag with regards to retaliation. (93:20-25 – 94:1-8)

- The City has lots of situations where workplace violence reports are filed against a whistleblower (94:14-17)

6

- The filing of workplace violence reports after a whistleblower complains would probably be on the list of red flags for retaliation.

- Approximately a dozen times, workplace violence reports were filed after a whistleblower complains. (98:13-12)

b.     In July of 1996, the Executive Director and Legal Counsel for the City and County of Honolulu Ethics Commission made the following statements regarding widespread fear of retaliation for whistle blowing at the City and County of Honolulu (Exhibit "B") (1001):

> . . . .
>
> [S]everal times per year I receive anonymous phone calls, usually from City employees, inquiring whether some action is a violation of the ethics laws. In these cases, they have observed an action taken by a City officer or employee that they believe is wrong. If I need to do some research before I can answer their question, these persons are often unwilling to give me even their first name and phone number. Because of their fear of repercussions, I have had people only willing to call me back at a specified time, rather than have me contact them.
>
> Related to this concern, let me share a particularly shocking conversation I had several years ago. An appointed City employee complained to me about pressure that was being put on her by her superiors to support the campaign of a person running for City office. When I asked her to file a complaint so that the Ethics Commission could investigate it, she responded, "No way! I'm not going to put my pension in jeopardy." I told her that the Ethics Commission has subpoena power and could compel her to testify. Her answer to that was, "Go ahead. I'll lie under oath before I'll risk my job." That incident is indicative of the level of fear that I have observed over the years on the part of some City Employees.

Third, during some phone conversations with anonymous person, I have listened to allegations such as, "If I put this in writing, I know how things work in the City. I know people will find out that I'm the one who's filed a complaint." . . . .

C.    Further evidence of Defendant City's policy and custom is evidenced by the seven other whistleblower complaints filed against City:

- Complaint; Demand For Jury Trial; Summons in CV00-0039 HG BMK – Sun v. City and County of Honolulu, et al; (See Exhibit "C")
- Complaint; Demand For Jury Trial; Summons in.CV00-00729 SOM LEK – Kamakana v. City and County of Honolulu, et al; (See Exhibit "D")
- Demand For Jury Trial; Summons in Civ. No. 02-1-1394-06 – Mersburgh v. Salas, et al; (See Exhibit "E")
- Complaint; Demand For Jury Trial; Summons in CV02-00622 DAE KSC – Wiggins v. City and County of Honolulu, et al.; (See Exhibit "F")
- Complaint; Demand For Jury Trial; Summons in CV04-00086 SPK LEK – Shannon v. City and County of Honolulu, et al; (See Exhibit "G")
- Complaint; Demand For Jury Trial; Summons in Civ. No. 04-4-0910-05 (DDD) – Whang v. City and County of Honolulu, et al; (See Exhibit "H")
- Complaint; Demand For Jury Trial; Summons in Civ. No. 05-1-1721-09 BIA – Olipares v. City and County of Honolulu. (See Exhibit "I")

D.    The article regarding City Whistleblower Complaints. "Ethics Commission Clears Whistleblower of Complaints" dated August 2, 2006 provides evidence of Defendant City's pattern and practice of retaliation against whistleblowers. (See Exhibit "J")

8

For these reasons, there is significant evidence supporting municipal liability based on policy and custom[1]; the Motion for Partial Judgment on the Pleadings or Summary Judgment should be denied; and the matter should be submitted to the jury.

### 2. There is Evidence that Defendant Kurokawa was a Final Policymaker.

"[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body -- whether or not that body had taken similar action in the past or intended to do so in the future -- because even a single decision by such a body unquestionably constitutes an act of official government policy. . . . . But the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level. Monell's language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy,' Monell, supra, at 694, and whose decisions therefore may give rise to municipal liability under § 1983." Pembaur, 475 U.S. at 480-81.

---

[1] Defendant argue Magota was whistleblower and wasn't retaliated against. Magota, however, was fearful of retaliation appeared on television with his face and voice obscured because of the repercussions and retaliation that he expected. See Exhibit "K")

Defendant Gary Kurokawa is and was at all times herein relevant, the
Administrator of the Real Property Assessment Division of the City and
reported directly to the Department of Budget and Finance of the City
(Exhibit "L" at 8.) Defendant Kurokawa serves as the head of the division.
As the Administrator of the Real Property Assessment Division, Defendant
Kurokawa is an officer of the Defendant City.[2]   As the Administrator of the
Real Property Assessment Division of the City, Defendant Kurokawa had
the duty and authority to manage all of the employees within his division.
As head of this City agency, an executive agency, Defendant Kurokawa also
had the power to take personnel actions.[3,4]  In this case, Defendant

_____

[2] Pursuant to section 13-101(4) of the Revised Charter of the City and County, an
"officer" of the City is as follows:

(a) Members of the council, the mayor, the prosecuting attorney and the managing
director.
(b) Any person appointed as administrative head of any agency of the city or as a member
of any board or commission.
(c) Any person appointed by a board or commission as the administrative head of such
agency
(d) The first deputy, any other deputy, or a division chief appointed by
the administrative head of any agency of the city.
(e) Deputies of the corporation counsel and the prosecuting attorney.

[3] According to Section 13-101 of the Revised Charter of the City and County of Honolulu
an "executive agency" its defined as "any agency of the executive branch of the city
government, excluding the board of water supply."  An "agency" is defined as "any
office, department, board, commission or other governmental unit of the city, excluding
the council and its office and any commission excluding the council and its offices and
any commission excluded by the provisions of this charter."

[4] Section 4-105 (1) of the Revised Charter of the City and County of Honolulu states
"subject to the provisions of this charter and applicable regulations adopted thereunder,

Kurokawa clearly displayed his authority to exert control over personnel matters by expressing to Plaintiff, in a meeting with supervisors within his agency and a union representative, that Plaintiff would not have his position as an appraiser if it were not for the influence of Defendant Kurokawa. Defendant Kurokawa also exerted his management and personnel powers by attempting to extend Plaintiff's probation period.   (Exhibit "M".) Moreover, it is Defendant Kurokawa who signs off on performance evaluations of employees within his agency, including Plaintiff's Probationary Performance Evaluation Reports.  (See Exhibits "N" and "O".) This display of authority over personnel matters by Administrator/Defendant Kurokawa was conspicuous, accepted, sanctioned, and supported by other executives within the City. (Exhibit "P".) As the head and the Administrator of the Assessment Division, it can be reasonably concluded that Defendant Kurokawa's conduct and decisions regarding personnel matters and the manner in which they are managed clearly  represented the official policy of the City as he is an officer of the City and the head of the Assessment Division.  As such, the Defendant City cannot escape liability for violating

---

the heads of executive agencies of city government shall have the power and duty to take all personnel actions."  Section 4-105(3) states "each head of an executive agency of city government may assign and reassign duties to employees and supervise the performance thereof."

Plaintiff's constitutional right by punishing him for exercising his right to

free speech pursuant to 42 U.S.C. §1983.

### 3. There Exists Significant Facts Regarding Inadequate Training to Support Municipal Liability.

Inadequate training is sufficient to establish municipal liability.

Canton, 489 U.S. at 390.  An inadequate training claim can be proved in

several ways,

> The first is a deficient training program, "intended to apply over time to multiple employees." [Brown, 520 U.S.] at 407 (citation omitted). The continued adherence by policymakers "to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action -- the 'deliberate indifference' -- necessary to trigger municipal liability." Id. (citation omitted). Further, "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." Id. at 407-08 (citation omitted).

> A plaintiff also might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Id. at 409. The Brown Court explained:

>> The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could  justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policy-makers' choice -- namely, a violation of a specific constitutional or statutory right.

Id.

Long, 442 F.3d at 1186-87.

Here, the City has an Administrative directive encouraging employees to report fraud, including occupational fraud,[5] and requiring supervisors and managers to report fraud to the Department Director, Managing director or Mayor. (See Exhibit "Q")  That same administrative directive informs employees that their reports will be protected by the Hawaii Whistleblower Protection Act, which protects, among other things, an employee's First Amendment rights with respect to the reporting of suspected violations of state law.   Thus, the City knew with reasonable certainty that its administrative directive would encourage the exercise of its employees' first amendment rights. Yet, the City failed to provide necessary training to ensure that its employees' first amendment rights were not infringed upon through retaliation.

According to the City, its current training program is inadequate.  See Section A.1.a., supra, which is incorporated herein by reference.  In fact, training is only offered in certain specific City departments and only after a whistleblower suit is brought, and, then, only after that suit has been

---

[5] Occupation fraud has been defined by the City as "the use of one's occupation for personal enrichment through the deliberate misuse or misapplication of the employing organizations resources or assets."

resolved, and such training is not geared towards prevention. No City-wide training program has been instituted. See §A.1.a., supra.

Thus, there are sufficient facts to allow a jury to find that municipal liability exists based on inadequate training, and the Motion for Partial Judgment on the Pleadings and Summary Judgment should be denied.

**B.    None of Plaintiff's Statements were made Pursuant to his Official Job Duties.**

Plaintiff agrees with City Defendants that he must prove that he, as a government employee, "spoke as a citizen on a matter of public concern." Garcetti v. Ceballos, 126 S.Ct. 1951, 1958 (2006). According to Garcetti, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 1960 (emphasis added).

Plaintiff also agrees that a matter of "public concern" includes "information about wasteful misuse of public funds," "the inept administration of a governmental entity," and "a breach of public trust." Weeks v. Bayer, 246 F.3d 1231, 1235 (9th Cir. 2001). Plaintiff, however, disagrees as to the application of these principles.

Thus, the relevant inquiries focus on (a) whether Plaintiff's speech was part of his official duties; and (b) whether Plaintiff was speaking on a matter of public concern. These are inherently factual determinations.

The only district court in the Ninth Circuit to have opined on <u>Garcetti</u> rejected an expansive view of defining an employees official job duties. <u>Walters v. County of Maricopa</u>, 2006 U.S. Dist. LEXIS 60272 (D. Ariz August 22, 2006) (rejecting expansive interpretation of an employee's official duty and rejecting the holding in <u>Mills v. City of Evansvil</u>le, 452 F.3d 646, 648 (7th Cir. 2006)).

Plaintiff's official job duties did not include the formation and execution of official policy. <u>See</u> Exhibit S. To adopt an expansive reading of Plaintiff's official job duties would wipe out all First Amendment Protection for most whistleblowers. With respect to the myriad of statements Plaintiff made privately to Defendants regarding the incorrect, unethical or illegal appraisal practices of the Real Property Assessment Division, Plaintiff is similarly situated to the plaintiff in <u>Givhan v. Western Line Consolidated Sch. Dist.</u>, 439 U.S. 410 (1979). In <u>Givhan</u>, the plaintiff, a public school teacher, made statements in private to the principal that were critical of school policies and practices, in particular, to the school that she was assigned to teach. <u>Id</u>. at 411. After expressing her views, plaintiff's

contract was not renewed by the school district. Plaintiff brought suit against the school district for, *inter alia*, violating her First Amendment rights. The district court found in favor of plaintiff. However, the court of appeals reversed on the erroneous belief that "because petitioner had privately expressed her complaints and opinions to the principal, her expression was not protected under the First Amendment." Id at. 413. The United States Supreme Court reversed the court of appeals and held that the First Amendment forbids the abridgment of a public employee's freedom of speech to communicate privately with his/her employer.[6] Id. at 415-16 ("Neither the [First] Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public."). The continued validity of Givhan was recognized in Garcetti. Garcetti, 126 S. Ct. at 1959.

Like in Givhan and Garcetti, Plaintiff here had no official duty to make his statements. Plaintiff's official duties did not require him to (i) review, develop or ensure that the Assessment Division's practices were ethical or in compliance with law, or (ii) to review, develop or implement tax or tax assessment policy. Unlike in Garcetti, where plaintiff's statements

---

[6] The Supreme Court reversed the court of appeals and remanded the case for further proceedings consistent with its opinion.

were admittedly part of plaintiff's official duties, Plaintiff's statements here were those of a concerned citizen about the fairness and integrity of the tax assessment process, and about preventing fraud on the government and its citizens.

The record demonstrates that none of the categories of Plaintiff's statements that form the basis of his § 1983 claim were made pursuant to an official duty of Plaintiff. To the extent that Defendants seek to establish otherwise, there is clearly a genuine issue of material fact that must be decided by the jury.

With respect to whether Plaintiff's speech was on a matter of public concern, a factual issue clearly exists.

Here, City Defendants allege that the following speech is not a matter of public concern:

> (a)  the application of Uniform Standards of Professional Appraisal Practice ("USPAP") standards, to which he was told, by Defendant KUROKAWA that there was a "blanket" exception and that the Assessment Division did not have to follow USPAP standards;

> (b)  the number of properties assigned to appraisers far exceeded the recommendations of professional associations;

> (c)  the Assessment Division appraisers were accepting assignments which could not properly be done with the resources at hand, which, at minimum should have required public disclosure that the assessments produced by the Assessment Division may not be reliable;

(d)    the Assessment Division used methodology which was not generally recognized by the appraisal profession to be proper, for example the depreciation methodology, which was introduced to the system by Defendant MAGOTA, and produced large and improper fluctuations in valuations, and which was not consistent with the vendor recommendations of the new Computer Automated Mass Appraisal System ("CAMA") system; and

(e)    the almost complete lack of any comprehensive training program, especially with respect to internal policies and procedures.

(f)    Classifications at the Waikiki Shore condominiums as "Hotel and resort", and that apparently such classifications had been done differently by different appraisers and supervisors.  Plaintiff began to realize that this and many other important decisions and determinations were being done on an ad hoc basis with no consistency and not necessarily with any relationship to proper appraisal practice.

(g)    project groupings were not appropriate and the valuations were inconsistent;

(h)    leasehold sales were being used for some valuations;

(i)    there were multiple instances of questionable classification;

(j)    the sales "validation" system was questionable on a widespread basis;

(k)    land valuations had not changed in years, despite significant moves in the market;

(l)    when the new computer system and mass appraisal system was put in place, no provision had been made to clean up the database before the conversion took place, and in fact there were numerous and serious actual discrepancies in the

database. This was against the specific advice and instruction of the vendor of the new system.;

(m)    there were numerous problems with the appeal process, including but not limited to: instances in which the Board of Review did not act in an impartial manner, including, but not limited to, ex parte communications with the Assessment Division, requesting that the decisions be prepared before the hearings so that the BoR could sign them immediately after the hearings, and requesting that Plaintiff act more as an advocate for the Assessment Division's position, rather than trying to achieve the proper assessment; and appraisers actively and improperly discouraging taxpayers from filing appeals and refusing to assist taxpayers in obtaining information relevant to their appeals; and

(n)    general confusion and lack of understanding in the Assessment Division as to basic appraisal concepts, such as "as of" a specific date, as opposed to "on" a specific date.

Defendants attempt to pigeon-hole much of Plaintiff's speech as complaints over internal office affairs, and, therefore, not matters of public concern. As a matter of law, Defendants' arguments must fail.

The public has a keen interest in every aspect of the taxation. The key to the success of any tax system that relies on voluntary payment of assessed taxes is fairness and equality, i.e., that each person is paying their fair share. In order to achieve fairness and equity in the assessment and collection of taxes, the City has adopted ordinances that require full disclosure of the County's tax records and that require tax be assessed in a particular manner and that it be fair and uniform throughout the County:  Pursuant to Revised

Ordinances of Honolulu, § 8-1.14, "All maps and records compiled, made, obtained or received by the director or any of the director's subordinates, shall be public records. . . . . The information and all maps and records connected with the assessment and collection of taxes under this chapter shall, during business hours, be open to the inspection of the public." Further, ROH § 8-7.1(a) requires that, "the director of finance shall cause the fair market value of all taxable real property to be determined and annually assessed by the market data and cost approaches to value using appropriate systematic methods suitable for mass valuation of properties for taxation purposes, so selected and applied to obtain, as far as possible, uniform and equalized assessments throughout the county. . . ." ROH § 8-7.1(b) further provides that, "So far as practicable, records shall be compiled and kept which shall show the methods established by or under the authority of the director, for the determination of values." Thus, Plaintiff's speech is a matter of public concern as all taxpayers have a vested interest in the fair and equitable assessment and collection of real property taxes.

## C.    Judicial Estoppel Does Not Apply

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by

taking an incompatible position." <u>Risetto v. Plumbers and Steamfitters Local 343</u>, 94 F.3d 597, 600 (9th Cir. 1996). "The policies underlying preclusion of inconsistent positions are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings. . . . Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts. . . . Because it is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a court at its discretion." <u>Id</u>. (internal quotation marks and citation omitted). Thus, judicial estoppel does not automatically apply in every case. Instead, the Court must look to see if the party sought to be estopped is seeking to take a second advantage by an inconsistent position; whether the party sought to be estopped is playing fast and loose with the court; and whether the party sought to be estopped would offend the dignity of the judicial process were it not to be estopped.

Here, Plaintiff is not trying to take a second advantage. Plaintiff and Defendant City acknowledged that subsequent non-workers compensation litigation was contemplated; that Plaintiff was only settling his workers compensation claims and reserving all non-workers compensation claims; and that, according to the terms of the Workers Compensation Settlement, the parties were not bound by the factual stipulations in the clearly

contemplated future litigation as to other non-workers compensation claims,

like those in this action:

> It is expressly agreed by the parties that the determination
> herein that Claimant sustained a stress-related psychic injury on or
> about January 30, 2003 by accident arising out of and in the course of
> his employment with Employer is without prejudice to either party
> with respect to any future non-workers compensation proceedings and
> the parties are not precluded from litigating issues regarding the
> nature, scope and cause of Claimant's stress and/or psychic injuries in
> any non-workers ' compensation proceeding.

Workers Compensation Settlement Agreement at ¶___. (emphasis added).

Since the Hawaii Supreme Court's decision in Furukawa v. Honolulu

Zoological Society, 85 Hawai'i 7, 18, 936 P.2d 643, 654 (1997) it has been

the law in Hawaii that the worker's compensation statutes do not bar a

Plaintiff from recovering for physical and emotional damages arising from

Defendants' intentional conduct at the workplace:

> the workers' compensation scheme serves to bar a civil action for
> physical and emotional damages resulting from work-related injuries
> and accidents. However, Furukawa's claims are not based on any
> such "accident," but rather on the alleged intentional conduct of
> members of the Society. Cf. Wharton v. Hawaiian Elec. Co., Inc., 80
> Haw. 120, 123 n.2, 906 P.2d 127, 130 n.2 (1995) (affirming denial of
> workers compensation stress claim because injury arose out of
> worker's suspension for misconduct, but noting that "if an employer's
> actions constitute unlawful discrimination . . ., an injured employee
> may invoke rights in other forums. See, e.g., HRS §§ 378-2 and 378-
> 32."). Most states recognize that "all or virtually all intentionally
> tortious acts committed by an employer against an employee in the
> course of employment are excluded from the workers' compensation
> system." Fermino v. Fedco, Inc., 7 Cal. 4th 701, 872 P.2d 559, 562
> (Cal. 1994); see also Van Biene v. ERA Helicopters, Inc., 779 P.2d

315, 318 (Alaska 1989); <u>Medina v. Herrera</u>, 927 S.W.2d 597, 600 (Tex. 1996).

(Emphasis added.)  The Hawaii Whistleblower Protection Act allows Plaintiff to recover his "actual damages."  Plaintiff's actual damages include all his lost earning and all his future special medicals.  The HWPA is a remedial statute and should be construed liberally to accomplish the purpose for which it was enacted. <u>See</u> <u>Flores v. United Airlines, Inc.</u>, 70 Haw. 1, 12 n.8, 757 P.2d 641, 647 n.8 (1988).  Further, under 42 U.S.C. § 1983 the County is liable to "the person injured") as a result of their infringement on the plaintiff's constitutional rights.  Thus, similar to the claim under the HWPA, Plaintiff may recover for his lost future earnings and lost medical specials without offending Hawaii's workers compensation laws.

It is precisely these rights and claims that Plaintiff did not release and clearly and unequivocally carved out of the Workers Compensation Settlement.  Pursuit of these reserved claims necessarily includes damages for lost wages and future medical special damages, among other things. Thus, Plaintiff is not trying to take a second advantage. Plaintiff is simply engaging in the litigation that the parties acknowledged was likely to occur. It is the City that is trying to now take an inconsistent position with the Workers Compensation Settlement Agreement.

Additionally, Plaintiff is not playing fast and loose. Plaintiff's current counsel negotiated the Workers Compensation Settlement Agreement with a Deputy Corporation Counsel, clearly reserving all his rights to pursue non-workers compensation claims. Now, the City's outside counsel is seeking to deprive Plaintiff of a significant portion of the value of the Workers Compensation Settlement Agreement with their argument for the application of the doctrine of judicial estoppel. Assuming the Court would agree with the City, then there would have been no meeting of the minds with respect to the Workers Compensation Settlement, and the agreement should be cancelled.

Allowing Plaintiff to proceed with his claims for lost earnings after January 31, 2004 and future medical specials would not offend the dignity of the Court because the Workers Compensation Settlement Agreement clearly reserved such rights to the Plaintiff and carved out such rights from the claim being settled.

In addition, Plaintiff is not precluded from arguing that the Workers Compensation Settlement Agreement was entered into under duress, if Defendants are now able to change the terms of the Workers Compensation Settlement.

D.     **_Wittig_ Does Give the City Unlimited Authority to Force Resignations**

24

Defendants argue that "Hawaii courts have recognized voluntary resignation as a common and well accepted practice that does not amount to retaliatory discharge." This statement is not accurate. First, only one Hawaii court, the intermediate court of appeals, has addressed this issue. See Wittig v. Allianz. Further, Wittig's holding was not with respect to a claim of retaliatory discharge.

In the Wittig case, the Hawaii Intermediate Court of Appeals held that a workers compensation insurer's mere tender of a settlement offer containing a resignation term, which a worker is free to reject, did not constitute an unlawful retaliatory discharge or suspension prohibited by Haw. Rev. Stat. § 386-142. Wittig, 2006 Haw. App. LEXIS 288, *24-*25. Haw. Rev. Stat. § 368-142 provides, in relevant part:

> It shall be unlawful for any employer to suspend or discharge any employee solely because the employee suffers any work injury which is compensable under this chapter and which arises out of and in the course of employment with the employer unless it is shown to the satisfaction of the director that the employee will no longer be capable of performing the employee's work as a result of the work injury and that the employer has no other available work which the employee is capable of performing.

(Emphasis added.)

The court specifically did not consider whether such conduct was lawful under the broader provisions of HRS § 378-32(2), which additionally

prohibits an employer from <u>discriminating</u> against an employee solely because he has suffered a work-related injury compensable under chapter 386, unless certain enumerated circumstances exist,[7] <u>id.</u>, or whether such conduct was lawful under Haw. Rev. Stat. § 378-62, which is one of the specific bases for Plaintiff's claim of unlawful discrimination and retaliation in this matter. Again, while <u>Wittig</u> may be relevant to retaliatory discharge cases under Hawaii's Workers Compensation statutes, <u>e.g.</u>, Haw. Rev. Stat. 386-142, it is not controlling here where Plaintiff has alleged unlawful discrimination and retaliation pursuant to, <u>inter alia</u>, the Hawaii

---

[7] Pursuant to the relevant provisions of Haw. Rev. Stat. § 378-32(2), it is unlawful for an employer to:

> suspend, discharge, or <u>discriminate</u> against any of the employer's employees
> …
>
> > (2) Solely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing. Any employee who is discharged because of the work injury shall be given first preference of reemployment by the employer in any position which the employee is capable of performing and which becomes available after the discharge and during the period thereafter until the employee secures new employment. This paragraph shall not apply to any employer in whose employment there are less than three employees at the time of the work injury or who is a party to a collective bargaining agreement which prevents the continued employment or reemployment of    the injured employee….

(Emphasis added.)

Whistleblower Protection Act, i.e., Haw. Rev. Stat. §378-62[8] .    Thus,

Defendants are not entitled to judgment as a matter of law on Plaintiff's

claim that the Workers Compensation Settlement was an adverse

employment action for his First Amendment and HWPA claims.

> **E.     There is Enough Evidence to Go to the Jury on the Defamation Claims.**
>
> > **1.     Evidence Susan Bender's statement to Plaintiff is Not Hearsay.**

Susan Bender's statement to Plaintiff regarding Defendant Magota's

defamatory comment is not hearsay.  Plaintiff does not seek to offer Ms.

Bender's statement to prove that Plaintiff is "Wacko."  Pursuant to Federal

---

[8] Haw. Rev. Stat. § 378-62 provides as follows:

> **Discharge of, threats to, or discrimination against employee for reporting violations of law**.
>
> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>
> (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or
>
> (B) A contract executed by the State, a political subdivision of the State, or the United States,
>
> unless the employee knows that the report is false; or
>
> (2) An employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Rules of Evidence Rule 801(c), such statement is not hearsay. Further, the statement is not hearsay because it is a statement made by Defendants' agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship. Fed. R. Evid. 801(d)(2)(D). It is undisputed that Ms. Bender is a deputy corporation counsel and agent of the Defendant City. Because the statements by Defendant Magota's coworker concerned a matter within the scope of their employment by Defendant City.

### 2.     Wacko" is  Reasonably Susceptible of A Defamatory Meaning

The term "Wacko" is not mere hyperbole in this case. Mr. Magota's comments were demeaning to Plaintiff, and likely had the real effect of causing Plaintiff to be compared to Byron Uyesugi by other co-workers when a retaliatory workplace violence report was filed against Plaintiff for making a complaint to the Ethic's commission. <u>See</u> Exhibits "T" – "U".

### 3.     The Statements Made in the Workplace Violence Report Were Defamatory.

Defendants Gima and City initiated a workplace violence report against Plaintiff as a result of his filing of an complaint with the Ethics Commission. <u>See</u> Exhibit U. Such action was a clear violation of the HWPA. Thus, the horrific comments comparing Plaintiff to local mass

murderer, Byron Uyesugi, were generated through Defendants' workplace violence report initiated in violation of the HWPA. Thus, Defendants exceeded any privilege that may have been applicable. See, e.g., Dillard Dep't Stores, Inc. v. Felton, 276 Ark. 304, 310 (1982) ("Where the party exceeds his privilege and the communication complained of goes beyond what the occasion demands that he should publish, and is unnecessarily defamatory of plaintiff, he will not be protected, and the fact that a duty, a common interest, or a confidential relation existed to a limited degree is not a defense, even though he acted in good faith."); Woodward v. South Carolina Farm Bureau Ins. Co., 277 S.C. 29, 32 (1981)(same); Crawford & Co. v. Graves, 199 Va. 495, 498 (1957)(same). Here, the motive in initiating the workplace violence report was retaliation in contravention of the HWPA. Here Defendants caused a bogus workplace violence investigation to occur, and, in that context, caused Plaintiff to be severely defamed. Thus, Defendants have exceeded any privilege that may have existed. Thus, as a matter of law, Defendants motion for summary judgment should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Dismissal

or Summary Judgment should be denied.

Dated:  Honolulu, Hawaii, _____9/22/06_____.

ROGER S. MOSELEY
CHRISTOPHER J. MUZZI
RENEE M. FURUTA
Attorney for Plaintiff
PHILIP E. ENGLISH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CITY AND COUNTY OF<br>HONOLULU; GARY T.<br>KUROKAWA; ROBERT O.<br>MAGOTA; ANN C. GIMA; and GK<br>APPRAISALS, INC.; JOHN DOES 1<br>–10; JANE DOES 1-10; DOE<br>PARTNERSHIPS; DOE<br>CORPORATIONS 1-10; AND DOE<br>ENTITIES 1-10,<br><br>　　　　　Defendants. | Civil No.  04-00108 KCS/KSC<br><br><br>CERTIFICATE OF SERVICE |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned herby certifies that a true and correct copy of the foregoing

was duly served upon the party listed below at their respective address by way of

hand-delivery, on September 22, 2006.

10010\3\53092.12

MICHAEL A. LORUSSO, ESQ.
RANDALL Y. YAMAMOTO, ESQ.
Kawashima Lorusso & Tom, LLP
Fort Street Tower
745 Fort Street, 5th Floor
Honolulu, Hawaii 96813

      Attorneys for Defendants
      City & County of Honolulu,
      Gary T. Kurokawa, Robert O. Magota,
      and Ann C. Gima

KEVIN P. H. SUMIDA, ESQ.
ANTHONY L. WONG, ESQ.
Sumida & Tsuchiyama
Dillingham Transportation Building
735 Bishop St., Suite 411
Honolulu, Hawaii 96813

      Attorneys for Defendant
      GK APPRAISALS, INC.

DATED:  Honolulu, Hawaii, September 22, 2006.


                    _____
                    ROGER S. MOSELEY
                    CHRISTOPHER J. MUZZI
                    TEDSON H. KOJA
                    RENEE M. FURUTA
                    Attorneys for Plaintiff
                    PHILIP E. ENGLISH