Effective Date: 05/17/02

| Subject | Page |
|---|---|
| 15.1 | 1 |
| | MD |

Subject
**FRAUD REPORTING**

Reference
Revised Charter of the City and County of Honolulu (RCH) §11-101.

Purpose
To provide guidance to City personnel on reporting suspected fraud in order to safeguard and preserve City assets and resources against theft, loss, and misuse.

I. TERMINOLOGY

   A. **Fraud** – Illegal acts characterized by deceit, concealment, or violation of trust. Includes theft, embezzlement, bribery and illegal gratuity.

   B. **Occupational Fraud** – The use of one's occupation for personal enrichment through the deliberate misuse or misapplication of the employing organization's resources or assets. Encompasses a wide variety of conduct by employees ranging from theft to sophisticated investment schemes. Common violations include asset misappropriation, corruption, false statements, theft, and use of City property for personal benefit.

II. BASIC BUSINESS CONDUCT

   A. All City revenues and expenditures must be recorded and accounted for in the City's Financial Accounting and Reporting System.

   B. No false or erroneous entries are to be knowingly made in the accounting records of the City for any reason. Moreover, no payment made on behalf of the City is to be approved or initiated with the understanding that any part of such a payment will be used for any purpose other than that described by the documents supporting the payment.

   C. The use of City funds or assets for any personal, unlawful, or improper purpose is prohibited.

   D. The use of City equipment, supplies, or facilities for individual gain is prohibited.

   E. No person in a supervisory or management position shall use the authority of that position to assign an employee to perform non-employment related tasks.

III. <u>POLICIES</u>

    A. Each City employee is encouraged to report, in good faith, any suspected fraudulent activity in a timely manner.

    B. Suspected fraudulent activity should be reported to the Department Director, Managing Director, or Mayor.

    C. Reports of suspected fraudulent activity will not be disclosed, except as required for administrative and investigative purposes.

    D. HRS 378-61 "Whistle Blowers Protection Act" prevents retaliation by the City for reporting fraudulent activity.

    E. The City will pursue available legal remedies against person(s) or entities involved in fraudulent acts against the City.

IV. <u>PROCEDURES</u>

    A. Employee Responsibilities

        1. Supervisors, Managers, and Directors shall develop and implement controls to minimize opportunities for the occurrence of fraudulent activities.

        2. When an employee observes suspected fraudulent activity, the employee is encouraged to report the pertinent facts; i.e. who, what, where, when, and how, as soon as he/she becomes aware of the activity.

        3. Employees who report suspected fraudulent activity are encouraged to identify themselves to facilitate timely follow-up and review.

        4. The employee should notify his/her Supervisor and/or Department Director, Managing Director, and Mayor, as appropriate.

        5. Supervisors and Managers shall report suspected fraud to their Department Director, Managing Director and/or Mayor, as appropriate.

        6. Department Directors are to inform the Managing Director or Mayor of suspected fraudulent activity.

        7. Department Directors may consult with the Director of the Department of Budget and Fiscal Services, regarding suspected fraudulent activity.

CD 000146



LINDA LINGLE
GOVERNOR

JAMES R. AIONA, JR.
LIEUTENANT GOVERNOR

**STATE OF HAWAII
OFFICE OF THE LIEUTENANT GOVERNOR
OFFICE OF INFORMATION PRACTICES**
NO. 1 CAPITOL DISTRICT BUILDING
250 SOUTH HOTEL STREET, SUITE 107
HONOLULU, HAWAI'I 96813
Telephone: (808) 586-1400   FAX: (808) 586-1412
E-MAIL: oip@hawaii.gov
www.hawaii.gov/oip

LESLIE H. KONDO
DIRECTOR

## DECLARATION OF LESLIE H. KONDO

I, LESLIE H. KONDO, hereby declare as follows:

1. I am the Director of the Office of Information Practices ("OIP"), State of Hawaii. I am competent to testify to the matters stated herein and make this declaration based upon records of which I am custodian.

2. Attached as Exhibit 1 to this Declaration is a true and correct copy of OIP Opinion Letter Number 98-1 issued by this office.

3. Attached as Exhibit 2 to this Declaration is a true and exact copy of the letter dated September 9, 1993, received by OIP on September 9, 1993, from Carolyn L. Stapleton, legal counsel, Ethics Commission, as the same appears on file and of record in this office.

4. Attached as Exhibit 3 to this Declaration is a true and exact copy of the letter dated July 15, 1996, received by OIP on July 15, 1996, from Carolyn L.



PLAINTIFF'S EXHIBIT
100

Stapleton, legal counsel, Ethics Commission, as the same appears on file and of record in this office.

DATED:   Honolulu, Hawaii, August 11, 2006.

_____
LESLIE H. KONDO
Director

**ETHICS COMMISSION**
# CITY AND COUNTY OF HONOLULU
715 SOUTH KING STREET, SUITE 211
HONOLULU, HAWAII 96813-3091



JEREMY HARRIS
MAYOR

CAROLYN L. STAPLETON
EXECUTIVE DIRECTOR AND LEGAL COUNSEL

July 15, 1996        RECEIVED
                     OFC INFORM PRACTICES

Moya T. Davenport Gray, Director
Office of Information Practices
235 S. Beretania Street, Room 304        '96 JUL 15 P3:34
Honolulu, HI  96813-2437

Dear Moya:

As a result of our recent meeting in regard to the Ethics Commission's pending request for an opinion, you asked that I provide you with evidence as to what effect the disclosure of unedited advisory opinions by the Commission would have on the filing of requests for opinions. As I told you, my experience working in this field for over seven years indicates that such a practice would have a chilling effect.

Let me share with you some of the responses I have encountered on the part of employees of the City and County of Honolulu in regard to requests for opinions. First, well over half of our opinions deal with questions being raised prospectively by persons who, prior to taking action, want to be sure that they will not violate the ethics laws. A number of those have asked me before formally requesting an opinion whether the process is confidential. They have wanted to be reassured that no one else will know that they are considering doing something that they might decide not to pursue. They also have wanted assurance that if the Commission decided that a certain course of action would violate the Standards of Conduct, no one else will know that they had considered doing it.

Second, several times per year I receive anonymous phone calls, usually from City employees, inquiring whether some action is a violation of the ethics laws. In these cases, they have observed an action taken by a City officer or employee that they believe is wrong. If I need to do some research before I can answer their question, these persons are often unwilling to give me even their first name and phone number. Because of their fear of repercussions, I have had people only willing to call me back at a specified time, rather than have me contact them.

Related to this concern, let me share a particularly shocking conversation I had several years ago. An appointed City employee

Exhibit 3

MOYA T. DAVENPORT GRAY            -2-                    July 15, 1996

complained to me about pressure that was being put on her by her superiors to support the campaign of a person running for City office. When I asked her to file a complaint so that the Ethics Commission could investigate it, she responded, "No way! I'm not going to put my pension in jeopardy." I told her that the Ethics Commission has subpoena powers and could compel her to testify. Her answer to that was, "Go ahead! I'll lie under oath before I'll risk my job." That incident is indicative of the level of fear that I have observed over the years on the part of some City employees.

Third, during some phone conversations with anonymous persons, I have listened to allegations such as, "If I put this in writing, I know how things work in the City. I know people will find out that I'm the one who's filed a complaint." At that point, I have gone to great lengths to try to reassure the person by citing the precautions we take to insure confidentiality, such as keeping our file cabinets locked, shredding even envelopes, requiring all Commissioners and staff to sign a confidentiality affirmation when they begin, etc. Sometimes, that information has been sufficient to convince them that they can trust the Commission, but it has required serious advocacy on my part.

One further aspect of this issue which I feel compelled to address is that the present practice of complete confidentiality allows the Ethics Commission to fulfill its duties as set forth by the Charter and Ordinances. Without assurances of confidentiality, it is likely that the flow of necessary information will be impeded and the effectiveness of the Commission will be compromised.

I hope this information will be helpful to you.

                                        Sincerely,

                                        *Carolyn L. Stapleton*
                                        CAROLYN L. STAPLETON
                                        Legal Counsel
                                        Ethics Commission