MOSELEY BIEHL TSUGAWA LAU & MUZZI
A Hawaii Limited Liability Law Company

| | |
|---|---|
| ROGER S. MOSELEY | 2060 |
| CHRISTOPHER J. MUZZI | 6939 |
| RENEE M. FURUTA | 7593 |
| JOANNA B.K. FONG | 7764 |

Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, Hawaii 96813
Tel: (808) 531-0490 Fax: (808) 534-0202
Email: rmoseley@hilaw.us, cmuzzi@hilaw.us
rfuruta@hilaw.us, jfong@hilaw.us

Attorneys for Plaintiff
PHILIP E. ENGLISH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PHILIP E. ENGLISH,

    Plaintiff,

vs.

CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1–10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,

    Defendants.

Civil No. 04-00108 KSC/KSC

PLAINTIFF PHILIP E. ENGLISH'S MEMORANDUM IN OPPOSITION TO DEFENDANTS GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON QUALIFIED IMMUNITY; CERTIFICATE OF SERVICE

Trial Date: October 3, 2006

10010/3/57996

## PLAINTIFF PHILIP E. ENGLISH'S MEMORANDUM IN OPPOSITION TO DEFENDANTS GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON QUALIFIED IMMUNITY

Plaintiff Philip E. English ("Plaintiff") respectfully submits this memorandum in opposition to Defendants Gary T. Kurokawa, Robert O. Magota, and Ann C. Gima's ("City Defendants") Motion for Partial Summary Judgment on Qualified Immunity ("Motion for Partial Summary Judgment"), filed herein on September 12, 2006.

I.   INTRODUCTION

City Defendants argued in their Motion for Partial Summary Judgment that Counts I and XII of Plaintiff's First Amended Complaint should be dismissed against them on the basis of qualified immunity. City Defendants Motion for Partial Summary Judgment must be denied for the following reasons:

   A.   City Defendants have failed to meet their burden of proving that they were acting within their discretionary authority at the time of that unconstitutional and illegal acts occurred.

   B.   In the event that this Court finds that City Defendants met their burden of proving that they were acting within their discretionary authority in performing their unconstitutional and illegal acts, Plaintiff has demonstrated and alleged facts to prove that he was deprived of a constitutional right by City Defendants by suffering adverse employment action a result of exercising his First Amendment right to free speech.

   C.   City Defendants are not entitled to a defense of qualified immunity as

1) City Defendants' conduct violated a clearly established statutory or constitutional right, and 2) a reasonable person in the position of the official would have known of the violation.

D. City Defendants are liable for punitive damages as they are not entitled to qualified immunity and the City Defendants acted wantonly and oppressively.

## II. DISPUTED FACTS

Plaintiff disputes all of the facts presented by the City Defendants in their Motion for Partial Summary Judgment as they are inaccurate, taken out of context, and unjustly trivializes Plaintiff's claims. Plaintiff's objections are duly noted in his Concise Statement of Facts, filed concurrently with this Memorandum in Opposition to the City Defendants' Motion for Partial Summary Judgment. Plaintiff submits his own facts, to dispute City Defendants' Concise Statement of Facts.

## III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548; 91 L. Ed. 2d 265 (1986). In determining whether summary judgment is proper, a court ordinarily must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable

to that party. Harlow v. Fitzgerald, 457 U.S. 800; 102 S. Ct. 2727; 73 L. Ed. 2d 396 (1982).

IV.  ARGUMENT

    A.  CITY DEFENDANTS FAILED TO MEET THEIR BURDEN THAT THEY WERE ACTING WITHIN THEIR DISCRETIONARY AUTHORITY

City Defendants urged this Court in their Motion for Partial Summary that Counts I and XII of Plaintiff's First Amended Complaint should be dismissed pursuant to the doctrine of qualified immunity.

The doctrine of qualified immunity generally shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). An official or defendant asserting the defense of qualified immunity bears the burden of first demonstrating that the alleged unconstitutional conduct occurred when he/she was acting within his/her discretionary authority. See Corcoran v. Fletcher, 160 F. Supp. 2d 1085, 1088 (C.D. Ca. 2001); Harbert Int'l v. James, 157 F.3d 1271, 1281 (11th Cir. 1998); Saldana v. Garza, 684 F.2d 1159, 1163 (5th Cir. 1982)(court stating "qualified" or "good-faith" immunity is an affirmative defense. Thus, it is the defendant who bears the burden of pleading his good faith and establishing that he was acting

within the scope of his discretionary authority when the allegedly wrongful acts occurred."); Better Gov't Bureau v. McGraw (In re Allen), 106 F.3d 582, 593 (4th Cir. 1997)(court, relying on statements made by the U.S. Supreme Court, held "an official who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity under § 1983."); 15 Am Jur 2d, Civil Rights §122.

In this case, City Defendants provided a nebulous assertion that the conduct of the City Defendants were "within the normal prerogative of management". City Defendants failed to state what type of discretionary authority they possessed at the time that the unconstitutional conduct, the scope of such discretionary authority, and whether the acts complained of were indeed within their discretionary authority. In addition, the City Defendant failed to prove that they were acting in good faith pursuant to their discretionary authority.

Based on the City Defendants' clear failure to provide any indication that their illegal and unconstitutional acts were performed in good faith and within the scope of their discretionary authority or functions, this Court must deny City Defendants' Motion for Partial Summary Judgment as City Defendants have not met their initial burden.

  B. ASSUMING *ARGUENDO* THAT CITY DEFENDANTS HAD APPROPRIATELY ASSERTED A DEFENSE OF QUALIFIED IMMUNITY, PLAINTIFF ESTABLISHED THAT HE SUFFERED ADVERSE EMPLOYMENT ACTION

In the event that this Court finds that City Defendants were acting within their discretionary authority and appropriately asserted the defense of qualified immunity, Plaintiff has alleged facts to prove that the City Defendants deprived of a constitutional right and that he suffered adverse employment action a result of exercising his First Amendment right to free speech.

Plaintiff in this case was exercising his First Amendment right to free speech. The speech that Plaintiff engaged in, whistle blowing, was regarding a matter of legitimate public concern and constitutionally protected. Plaintiff reported the illegal use of City & County of Honolulu ("City") resources and equipment by Defendant Kurokawa for the benefit of Defendant G.K. Appraisals, Inc. (a company in which he was a shareholder and officer) ("Kurokawa-GK Misconduct").

After reporting and exposing Defendant Kurokawa's illegal use of City equipment and resources to advance his personal interest and to benefit the company in which he was a shareholder and officer, Plaintiff suffered repeated and severe adverse employment actions. With respect to Plaintiff's verbal report of Kurokawa-GK Misconduct to Defendant Gima in August 2001, Plaintiff was retaliated/discriminated against when Defendant Gima told Plaintiff to stop calling her "Annie" because only her friends called her Annie; he could call her "Ann."

With respect to the verbal report of Kurokawa-GK Misconduct to Defendant Magota in October 2001 and the written report of Kurokawa-GK Misconduct to Defendant Magota in February 2002, Plaintiff was retaliated/discriminated against as follows:

- On April 22, 2002, Plaintiff received an annual Performance evaluation Report with negative comments.

- Plaintiff received the August 14, 2002 Substandard Evaluation.

- On August 15, 2002, Plaintiff purportedly had his probation extended for three months by Defendant Kurokawa.

- On October 25, 2002, Plaintiff was accused by Defendant Gima of insubordination for allegedly taking leave without authorization to see his medical doctor.

With respect to the written report of Kurokawa-GK Misconduct to the Federal Bureau of Investigation in August 2002; the January 3, 2003 verbal report of Kurokawa-GK Misconduct to Ethics Commission; and the January 22, 2003 written complaint and request for an opinion to the Ethics Commission regarding Kurokawa-GK Misconduct, Plaintiff was subject to the following adverse employment action:

- Defendant Gima filed a workplace violence report against Plaintiff on January 29, 2003, which triggers a workplace violence investigation against Plaintiff.

- On or about January 29, 2003, Defendant Gima advises coworkers of the "option of individually filing [workplace violence] reports" against Plaintiff.

- At least nine of Plaintiff's coworkers are interviewed as part of the workplace violence investigation, and, are thus made aware of the allegations of workplace violence against Plaintiff.

- On February 10, 2006, Plaintiff was verbally reprimanded by Defendants Magota and Gima for alleged failure to follow Defendant Gima's instructions, insubordination, and conduct towards Defendant Gima, all of which allegedly occurred on October 15, 2002.

- On February 12, 2006, Graff files a workplace violence report relating to contact Plaintiff had with Graff in January of 2003.

- On February 20, 2003, a draft of Julie Tamayori's workplace violence checklist to be completed in Defendant City's workplace violence investigation is left on Plaintiff's work chair.

- On February 21, 2003, Plaintiff was publicly ridiculed at a mandatory training seminar for Assessment Division employees put on by Defendant City.

- Thereafter, Defendant Gima states that Plaintiff is under investigation for alleged acts of insubordination occurring on February 19 and 25, 2003.

- On April 9, 2003, Defendant City notifies Plaintiff that they want to meet with him to discuss a substandard Performance Evaluation Report.

- By letter April 17, 2003, Defendant City sent Plaintiff the Notice of Substandard Performance Evaluation.  The Notice of Substandard Performance Evaluation indicated that Plaintiff was being placed on a special three month performance evaluation, and that "if [Plaintiff] is unable to satisfactorily meet the performance expectations of [his] position, [it] may result in removal or discharge from [his] position."

- On April 22, 2003, Defendant City sent Plaintiff a Performance Evaluation Report rating Plaintiff's performance as substandard in most categories.

- January 24, 2004, Defendant City requires Plaintiff to resign in order to receive worker's compensation benefits through a settlement agreement.

It cannot be disputed that there was a sufficient nexus between Plaintiff's protected speech of reporting the Kurokawa-GK Misconduct and adverse employment actions taken against him. With respect to the retaliation/discrimination arising from Defendant Gima filing of a workplace violence report on January 29, 2003, a causal connection with the protected activity has been admitted and cannot now be denied: "The most recent occurrence that precipitated my [workplace violence] complaint was the threatening phone calls and ethics complaint [Plaintiff] initiated against Chris Graff." See Exhibit U.

With respect to all the other acts of discrimination/retaliation, causation can be inferred from the timing of such events alone. Lopes v. Kapiolani Med. Ctr., 410 F. Supp. 2d 939, 956 (D. Haw. 2005). The adverse employment actions taken against Plaintiff began after Plaintiff reported to Defendant Magota, in writing, of the Kurokawa-GK Misconduct on February 15, 2002. Thereafter, Plaintiff received negative comments on his performance evaluations and reports, substandard reports, and reprimanded and accused of insubordination. Additionally most of the retaliatory/discriminatory events within two months of Plaintiff's filing of a written Ethics Complaint on January 22, 2003. Id. (citing Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)(sufficient evidence existed where adverse actions occurred less than three months after complaint

filed, two weeks after charge first investigated, and less than two months after the investigation ended)). Further, all the retaliation/discrimination occurred during the time that the Ethics Complaint was being investigated. Id.

Thus, there cannot be disputed that there is a causal connection between the Plaintiff's protected activity of filing an Ethics Complaint and Defendant Gima workplace violence report against Plaintiff and its consequences. It also cannot be disputed that the timing the adverse employment action is sufficient close to the various protect activities that a causal connection can be inferred.

City Defendants seemingly trivialize the severe stream of retaliation suffered by Plaintiff (as described above) by arguing that the alleged retaliation by Plaintiff (you have a bad attitude, your work performance isn't good, and you may not be mentally stable) does not constitute adverse employment action. However, as the facts show, Plaintiff was subjected to a multitude of adverse employment actions, including being the target of Workplace Violence reports filed by his supervisor, Defendant Gima and his other co-workers, suffering disparate treatment from City Defendants, being reprimanded for taking medical leave (leave in which he had secured prior authorization from his supervisor, Defendant Gima), and receiving substandard performance reports immediately after he reported the Kurokawa-GK Misconduct. City Defendants also erroneously argued that the terms and conditions of Plaintiff's job were not altered when in fact the terms and conditions

had been altered constantly. In addition to being reprimanded for taking medical leave (which he had prior authorization to do from Defendant Gima) and being the target and subject of ridicule. City Defendants also threatened to transfer Plaintiff to the Big Island. Due to the substandard performance reports, Plaintiff was placed on a special three month probation which had he potential to lead to termination of employment. Lastly, City Defendants argued that the ultimate employment decision was voluntarily made by Plaintiff. However, Plaintiff had no choice but to resign in order to receive workers' compensation benefits, benefits to which he was entitled to by law due to his work place injury. Plaintiff did so under extreme constructive duress as he had been out of work, due to the psychiatric and emotional stress injuries caused by City Defendants, and needed the compensation to pay for daily living expenses and for medical treatments for the psychiatric and emotional stress injuries caused by City Defendants. Due to the illegal acts of City Defendants, Plaintiff was placed on special probation and ultimately lost his employment with Defendant City, a valuable benefit and privilege.

  C. CITY DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

City Defendants in this case are not entitled to a claim of qualified immunity City Defendants, acting under color of state law and in the course of their employment as officials with the City, violated Plaintiff's constitutional right to free speech, a right that was clearly established. Additionally, any reasonable

official in the positions of City Defendants would have known that the conduct engaged in by the City Defendants were a violation of Plaintiff's constitutional rights.

1. **City Defendants' Conduct Violated a Clearly Established Statutory or Constitutional Right**

    a. **City Defendants Violated Plaintiff's Constitutional Right[1]**

In examining and evaluating an assertion of qualified immunity by officials, the Court must first consider the question of whether the facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001).

In this case, Plaintiff is asserting in his §1983 claim that City Defendants violated his right to free speech when they retaliated against him for reporting the GK-Kurokawa Misconduct.

In order to state a claim against the government employer for violation of the First Amendment right, the employee must show (1) that he or she engaged in

---

[1] Though Plaintiff believes that these issues should be presented and tried before the jury as City Defendants are not moving in their motion for summary judgment on this claim in particular. However, because the issue of qualified immunity requires a presentation by Plaintiff that his constitutional rights had been violated, for purposes of this opposition to City Defendants' Motion for Partial Summary Judgment on Qualified Immunity, Plaintiff will now address the issues.

protected speech; and (2) that the employer took adverse action;[2] and (3) that his or her speech was a substantial or motivating factor for the adverse employment action. Coszalter v. City of Salem, 320 F.3d 968, 973 (2003).

1.   Plaintiff's Speech Was a Matter of Public Concern

An employee's speech is protected under the First Amendment if it addresses a matter of legitimate public concern. Id. (citing Pickering v. Bd. of Education, 391 U.S. 563, 571, 88 S.Ct. 1731 (1968); Connick v. Meyers, 461 U.S. 138, 149-50, 103 S.Ct. 1684 (1983)). Speech that concerns issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government merits the highest degree of first amendment protection. Id. The scope of the public concern element is defined broadly in recognition that one of the fundamental purposes of the First Amendment is to permit the public to decide for itself which issues and viewpoints merit concern. Ulrich v. City and County of San Francisco, 308 F.3d 968, 978 (9th Cir. 2002)(citing McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983). It is only when it is clear that the information would be of *no relevance* to the public's evaluation of the performance of governmental agencies that speech of government employees receives no protection under the First Amendment. Id.

---

[2] Plaintiff has already discussed the adverse action portion in section B of this memorandum in opposition.