MOSELEY BIEHL TSUGAWA LAU & MUZZI
A Hawaii Limited Liability Law Company

ROGER S. MOSELEY          2060
CHRISTOPHER J. MUZZI      6939
RENEE M. FURUTA           7593
JOANNA B.K. FONG          7764
Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, Hawaii  96813
Tel:  (808) 531-0490 Fax:  (808) 534-0202
Email:  rmoseley@hilaw.us, cmuzzi@hilaw.us
          rfuruta@hilaw.us, jfong@hilaw.us

Attorneys for Plaintiff
PHILIP E. ENGLISH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1 –10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,<br><br>　　　　　Defendants. | Civil No.  04-00108 KSC/KSC<br><br>PLAINTIFF PHILIP E. ENGLISH'S MEMORANDUM IN OPPOSITION TO DEFENDANTS GARY T. KUROKAWA, ROBERT O. MAGOTA, and ANN C. GIMA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON QUALIFIED IMMUNITY; CERTIFICATE OF SERVICE<br><br><br>Trial Date:  October 3, 2006 |

10010/3/57996

**PLAINTIFF PHILIP E. ENGLISH'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS GARY T. KUROKAWA, ROBERT O. MAGOTA, and
ANN C. GIMA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
QUALIFIED IMMUNITY**

Plaintiff Philip E. English ("Plaintiff") respectfully submits this memorandum in opposition to Defendants Gary T. Kurokawa, Robert O. Magota, and Ann C. Gima's ("City Defendants") Motion for Partial Summary Judgment on Qualified Immunity ("Motion for Partial Summary Judgment"), filed herein on September 12, 2006.

I.    INTRODUCTION

City Defendants argued in their Motion for Partial Summary Judgment that Counts I and XII of Plaintiff's First Amended Complaint should be dismissed against them on the basis of qualified immunity. City Defendants Motion for Partial Summary Judgment must be denied for the following reasons:

A.    City Defendants have failed to meet their burden of proving that they were acting within their discretionary authority at the time of that unconstitutional and illegal acts occurred.

B.    In the event that this Court finds that City Defendants met their burden of proving that they were acting within their discretionary authority in performing their unconstitutional and illegal acts, Plaintiff has demonstrated and alleged facts to prove that he was deprived of a constitutional right by City Defendants by suffering adverse employment action a result of exercising his First Amendment right to free speech.

C.    City Defendants are not entitled to a defense of qualified immunity as

1) City Defendants' conduct violated a clearly established statutory or constitutional right, and 2) a reasonable person in the position of the official would have known of the violation.

D.     City Defendants are liable for punitive damages as they are not entitled to qualified immunity and the City Defendants acted wantonly and oppressively.

## II.     DISPUTED FACTS

Plaintiff disputes all of the facts presented by the City Defendants in their Motion for Partial Summary Judgment as they are inaccurate, taken out of context, and unjustly trivializes Plaintiff's claims. Plaintiff's objections are duly noted in his Concise Statement of Facts, filed concurrently with this Memorandum in Opposition to the City Defendants' Motion for Partial Summary Judgment. Plaintiff submits his own facts, to dispute City Defendants' Concise Statement of Facts.

## III.     STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317. 323, 106 S. Ct. 2548; 91 L. Ed. 2d 265 (1986). In determining whether summary judgment is proper, a court ordinarily must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable

to that party.  Harlow v. Fitzgerald, 457 U.S. 800; 102 S. Ct. 2727; 73 L. Ed. 2d

396 (1982).

IV.   ARGUMENT

    A.   CITY DEFENDANTS FAILED TO MEET THEIR BURDEN THAT
       THEY WERE ACTING WITHIN THEIR DISCRETIONARY
       AUTHORITY

City Defendants urged this Court in their Motion for Partial Summary that

Counts I and XII of Plaintiff's First Amended Complaint should be dismissed

pursuant to the doctrine of qualified immunity.

The doctrine of qualified immunity generally shields government officials

performing discretionary functions from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S.

800, 818, 102 S.Ct. 2727, 2738 (1982).  An official or defendant asserting the

defense of qualified immunity bears the burden of first demonstrating that the

alleged unconstitutional conduct occurred when he/she was acting within his/her

discretionary authority.  See Corcoran v. Fletcher, 160 F. Supp. 2d 1085, 1088

(C.D. Ca. 2001); Harbert Int'l v. James, 157 F.3d 1271, 1281 (11th Cir. 1998);

Saldana v. Garza, 684 F.2d 1159, 1163 (5th Cir. 1982)(court stating "qualified" or

"good-faith" immunity is an affirmative defense. Thus, it is the defendant who

bears the burden of pleading his good faith and establishing that he was acting

within the scope of his discretionary authority when the allegedly wrongful acts

occurred."); <u>Better Gov't Bureau v. McGraw</u> (<u>In re Allen</u>), 106 F.3d 582, 593 (4th

Cir. 1997)(court, relying on statements made by the U.S. Supreme Court, held "an

official who performs an act clearly established to be beyond the scope of his

discretionary authority is not entitled to claim qualified immunity under § 1983.");

15 Am Jur 2d, Civil Rights §122.

     In this case, City Defendants provided a nebulous assertion that the conduct

of the City Defendants were "within the normal prerogative of management".  City

Defendants failed to state what type of discretionary authority they possessed at the

time that the unconstitutional conduct, the scope of such discretionary authority,

and whether the acts complained of were indeed within their discretionary

authority.   In addition, the City Defendant failed to prove that they were acting in

good faith pursuant to their discretionary authority.

     Based on the City Defendants' clear failure to provide any indication that

their illegal and unconstitutional acts were performed in good faith and within the

scope of their discretionary authority or functions, this Court must deny City

Defendants' Motion for Partial Summary Judgment as City Defendants have not

met their initial burden.

    B.    ASSUMING *ARGUENDO* THAT CITY DEFENDANTS HAD
         APPROPRIATELY ASSERTED A DEFENSE OF QUALIFIED
         IMMUNITY, PLAINTIFF ESTABLISHED THAT HE SUFFERED
         ADVERSE EMPLOYMENT ACTION

In the event that this Court finds that City Defendants were acting within their discretionary authority and appropriately asserted the defense of qualified immunity, Plaintiff has alleged facts to prove that the City Defendants deprived of a constitutional right and that he suffered adverse employment action a result of exercising his First Amendment right to free speech.

Plaintiff in this case was exercising his First Amendment right to free speech. The speech that Plaintiff engaged in, whistle blowing, was regarding a matter of legitimate public concern and constitutionally protected. Plaintiff reported the illegal use of City & County of Honolulu ("City") resources and equipment by Defendant Kurokawa for the benefit of Defendant G.K. Appraisals, Inc. (a company in which he was a shareholder and officer) ("Kurokawa-GK Misconduct").

After reporting and exposing Defendant Kurokawa's illegal use of City equipment and resources to advance his personal interest and to benefit the company in which he was a shareholder and officer, Plaintiff suffered repeated and severe adverse employment actions. With respect to Plaintiff's verbal report of Kurokawa-GK Misconduct to Defendant Gima in August 2001, Plaintiff was retaliated/discriminated against when Defendant Gima told Plaintiff to stop calling her "Annie" because only her friends called her Annie; he could call her "Ann."

With respect to the verbal report of Kurokawa-GK Misconduct to Defendant Magota in October 2001 and the written report of Kurokawa-GK Misconduct to Defendant Magota in February 2002, Plaintiff was retaliated/discriminated against as follows:

- On April 22, 2002, Plaintiff received an annual Performance evaluation Report with negative comments.

- Plaintiff received the August 14, 2002 Substandard Evaluation.

- On August 15, 2002, Plaintiff purportedly had his probation extended for three months by Defendant Kurokawa.

- On October 25, 2002, Plaintiff was accused by Defendant Gima of insubordination for allegedly taking leave without authorization to see his medical doctor.

With respect to the written report of Kurokawa-GK Misconduct to the Federal Bureau of Investigation in August 2002; the January 3, 2003 verbal report of Kurokawa-GK Misconduct to Ethics Commission; and the January 22, 2003 written complaint and request for an opinion to the Ethics Commission regarding Kurokawa-GK Misconduct, Plaintiff was subject to the following adverse employment action:

- Defendant Gima filed a workplace violence report against Plaintiff on January 29, 2003, which triggers a workplace violence investigation against Plaintiff.

- On or about January 29, 2003, Defendant Gima advises coworkers of the "option of individually filing [workplace violence] reports" against Plaintiff.

- At least nine of Plaintiff's coworkers are interviewed as part of the workplace violence investigation, and, are thus made aware of the allegations of workplace violence against Plaintiff.

- On February 10, 2006, Plaintiff was verbally reprimanded by Defendants Magota and Gima for alleged failure to follow Defendant Gima's instructions, insubordination, and conduct towards Defendant Gima, all of which allegedly occurred on October 15, 2002.

- On February 12, 2006, Graff files a workplace violence report relating to contact Plaintiff had with Graff in January of 2003.

- On February 20, 2003, a draft of Julie Tamayori's workplace violence checklist to be completed in Defendant City's workplace violence investigation is left on Plaintiff's work chair.

- On February 21, 2003, Plaintiff was publicly ridiculed at a mandatory training seminar for Assessment Division employees put on by Defendant City.

- Thereafter, Defendant Gima states that Plaintiff is under investigation for alleged acts of insubordination occurring on February 19 and 25, 2003.

- On April 9, 2003, Defendant City notifies Plaintiff that they want to meet with him to discuss a substandard Performance Evaluation Report.

- By letter April 17, 2003, Defendant City sent Plaintiff the Notice of Substandard Performance Evaluation. The Notice of Substandard Performance Evaluation indicated that Plaintiff was being placed on a special three month performance evaluation, and that "if [Plaintiff] is unable to satisfactorily meet the performance expectations of [his] position, [it] may result in removal or discharge from [his] position."

- On April 22, 2003, Defendant City sent Plaintiff a Performance Evaluation Report rating Plaintiff's performance as substandard in most categories.

- January 24, 2004, Defendant City requires Plaintiff to resign in order to receive worker's compensation benefits through a settlement agreement.

It cannot be disputed that there was a sufficient nexus between Plaintiff's protected speech of reporting the Kurokawa-GK Misconduct and adverse employment actions taken against him.  With respect to the retaliation/discrimination arising from Defendant Gima filing of a workplace violence report on January 29, 2003, a causal connection with the protected activity has been admitted and cannot now be denied:  "The most recent occurrence that precipitated my [workplace violence] complaint was the threatening phone calls and ethics complaint [Plaintiff] initiated against Chris Graff."  See Exhibit U.

With respect to all the other acts of discrimination/retaliation, causation can be inferred from the timing of such events alone.  Lopes v. Kapiolani Med. Ctr., 410 F. Supp. 2d 939, 956 (D. Haw. 2005).  The adverse employment actions taken against Plaintiff began after Plaintiff reported to Defendant Magota, in writing, of the Kurokawa-GK Misconduct on February 15, 2002.  Thereafter, Plaintiff received negative comments on his performance evaluations and reports, substandard reports, and reprimanded and accused of insubordination. Additionally most of the retaliatory/discriminatory events within two months of Plaintiff's filing of a written Ethics Complaint on January 22, 2003.  Id. (citing Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)(sufficient evidence existed where adverse actions occurred less than three months after complaint

filed, two weeks after charge first investigated, and less than two months after the investigation ended)). Further, all the retaliation/discrimination occurred during the time that the Ethics Complaint was being investigated. Id.

Thus, there cannot be disputed that there is a causal connection between the Plaintiff's protected activity of filing an Ethics Complaint and Defendant Gima workplace violence report against Plaintiff and its consequences. It also cannot be disputed that the timing the adverse employment action is sufficient close to the various protect activities that a causal connection can be inferred.

City Defendants seemingly trivialize the severe stream of retaliation suffered by Plaintiff (as described above) by arguing that the alleged retaliation by Plaintiff (you have a bad attitude, your work performance isn't good, and you may not be mentally stable) does not constitute adverse employment action. However, as the facts show, Plaintiff was subjected to a multitude of adverse employment actions, including being the target of Workplace Violence reports filed by his supervisor, Defendant Gima and his other co-workers, suffering disparate treatment from City Defendants, being reprimanded for taking medical leave (leave in which he had secured prior authorization from his supervisor, Defendant Gima), and receiving substandard performance reports immediately after he reported the Kurokawa-GK Misconduct. City Defendants also erroneously argued that the terms and conditions of Plaintiff's job were not altered when in fact the terms and conditions

had been altered constantly. In addition to being reprimanded for taking medical leave (which he had prior authorization to do from Defendant Gima) and being the target and subject of ridicule. City Defendants also threatened to transfer Plaintiff to the Big Island. Due to the substandard performance reports, Plaintiff was placed on a special three month probation which had he potential to lead to termination of employment. Lastly, City Defendants argued that the ultimate employment decision was voluntarily made by Plaintiff. However, Plaintiff had no choice but to resign in order to receive workers' compensation benefits, benefits to which he was entitled to by law due to his work place injury. Plaintiff did so under extreme constructive duress as he had been out of work, due to the psychiatric and emotional stress injuries caused by City Defendants, and needed the compensation to pay for daily living expenses and for medical treatments for the psychiatric and emotional stress injuries caused by City Defendants. Due to the illegal acts of City Defendants, Plaintiff was placed on special probation and ultimately lost his employment with Defendant City, a valuable benefit and privilege.

C.    CITY DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

City Defendants in this case are not entitled to a claim of qualified immunity City Defendants, acting under color of state law and in the course of their employment as officials with the City, violated Plaintiff's constitutional right to free speech, a right that was clearly established. Additionally, any reasonable

official in the positions of City Defendants would have known that the conduct engaged in by the City Defendants were a violation of Plaintiff's constitutional rights.

      1.    <u>City Defendants' Conduct Violated a Clearly Established Statutory or Constitutional Right</u>

      a.    <u>City Defendants Violated Plaintiff's Constitutional Right</u>[1]

In examining and evaluating an assertion of qualified immunity by officials, the Court must first consider the question of whether the facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001).

In this case, Plaintiff is asserting in his §1983 claim that City Defendants violated his right to free speech when they retaliated against him for reporting the GK-Kurokawa Misconduct.

In order to state a claim against the government employer for violation of the First Amendment right, the employee must show (1) that he or she engaged in

---

[1] Though Plaintiff believes that these issues should be presented and tried before the jury as City Defendants are not moving in their motion for summary judgment on this claim in particular. However, because the issue of qualified immunity requires a presentation by Plaintiff that his constitutional rights had been violated, for purposes of this opposition to City Defendants' Motion for Partial Summary Judgment on Qualified Immunity, Plaintiff will now address the issues.

protected speech; and (2) that the employer took adverse action;[2] and (3) that his or her speech was a substantial or motivating factor for the adverse employment action. Coszalter v. City of Salem, 320 F.3d 968, 973 (2003).

1.    Plaintiff's Speech Was a Matter of Public Concern

An employee's speech is protected under the First Amendment if it addresses a matter of legitimate public concern. Id. (citing Pickering v. Bd. of Education, 391 U.S. 563, 571, 88 S.Ct. 1731 (1968); Connick v. Meyers, 461 U.S. 138, 149-50, 103 S.Ct. 1684 (1983)).  Speech that concerns issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government merits the highest degree of first amendment protection. Id.  The scope of the public concern element is defined broadly in recognition that one of the fundamental purposes of the First Amendment is to permit the public to decide for itself which issues and viewpoints merit concern. Ulrich v. City and County of San Francisco, 308 F.3d 968, 978 (9th Cir. 2002)(citing McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983).  It is only when it is clear that the information would be of *no relevance* to the public's evaluation of the performance of governmental agencies that speech of government employees receives no protection under the First Amendment. Id.

---

[2] Plaintiff has already discussed the adverse action portion in section B of this memorandum in opposition.

In this case, Plaintiff's speech was protected speech as he was reporting the illegal and unlawful use of City equipment and City resources by Defendant Kurokawa. Defendant Kurokawa abused his position by using City equipment and City resources to further his own private interest and for the use and benefit of a company in which he was an officer and shareholder, G.K. Appraisals, Inc. Plaintiff reported this abuse by Defendant Kurokawa. The abuse and misuse of government funds has long been touted as a public concern as it is information that would allow members of the public to evaluate and make informed decisions about the operation of their government and use of taxpayer monies by the government. See Johnson v. Multnomah County, 48 F.3d 420, 425 (9th Cir. 1995)("Therefore, we have stated that misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern.")

To the extent that this Court is considering the interplay of Garcetti v. Ceballos, 126 S.Ct. 1951 (2006), the holding in that case is not applicable in this case. Plaintiff was not making the statement about the abuse and misuse of City resources and equipment pursuant to his official duty as a real property appraiser but rather as a citizen addressing a matter of public concern. The existence of this fact takes the matter outside Garcetti.

2.   Plaintiff's Speech was a Substantial and
Motivating Fact in Adverse Employment

In this case, Plaintiff's report of the Kurokawa-GK Misconduct was a

substantial and motivating factor to the adverse employment suffered by Plaintiff.

First, Defendant Gima admitted that she filed a workplace violence report on

January 29, 2003 as a result of Plaintiff's ethics complaint regarding one of his co-

workers, Chris Graff.  This statement cannot be denied:  "The most recent

occurrence that precipitated my [workplace violence] complaint was the

threatening phone calls and ethics complaint [Plaintiff] initiated against Chris

Graff."  See Exhibit U.

With respect to all the other acts of discrimination/retaliation, this element of

First Amendment retaliation may be met with either direct or circumstantial

evidence.  Ulrich, 308 F.3d at 980.  The proximity of time of the occurrence of

these events is evidence that Plaintiff's speech is a motivating factor behind the

adverse employment action.

Plaintiff initially reported the Kurokawa-GK Misconduct to Defendant

Magota in an email dated February 22, 2002.  See Exhibit D.  Prior to his written

report of this misconduct to Defendant Magota, Plaintiff received satisfactory

marks on his performance reports.  See Exhibits E, F, G, H, I.  However, in the

performance report following Plaintiff's email to Defendant Magota, Plaintiff

began receiving negative comments on his performance reports.  See Exhibit J.

Plaintiff's performance reports and evaluations following the February 22, 2002

email continued to plummet with every report. <u>See</u> Exhibit K, L. Thereafter,

Plaintiff was reprimanded and informed that he would be placed on probation. <u>See</u>

Exhibits M, M1.

This is also particularly true where a great portion of the

retaliatory/discriminatory events within two months of Plaintiff's filing of a written

Ethics Complaint on January 22, 2003. Further, all the retaliation/discrimination

occurred during the time that the Ethics Complaint was being investigated. Thus,

there cannot be disputed that there is a causal connection between the Plaintiff's

protected activity of filing an Ethics Complaint and Defendant Gima workplace

violence report against Plaintiff and its consequences. It also cannot be disputed

that the timing the adverse employment action is sufficient close to the various

protect activities that the motivating factor behind the adverse employment action

was Plaintiff's report.

        b.    <u>Plaintiff's Constitutional Right was Clearly Established</u>

Once it is determine that plaintiff has demonstrated that it defendants have

violated his/her constitutional right, the Court must then proceed to the next

portion of its evaluation of qualified immunity. The next step requires the Court

must determine whether the right that the official was alleged to have violated was

clearly established. The relevant, dispositive inquiry in determining whether a

right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. 194, 202, 121 S.Ct. 2151, 2156 (2001).

A public official is not entitled to qualified immunity when the contours of the allegedly violated right were sufficiently clear that a reasonable official would understand that what he [was] doing violated that right. Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996).

A reasonably competent official in the positions of City Defendants would have understood that the First Amendment protection of public employee expression recognized by the United States Supreme Court in Connick v. Meyers, not only protects public employees who engage in protected First Amendment expression from being discharged for such expression, but also protects such employees from being subjected to conduct of harassment in retaliation for such expression. See Soltani v. Smith, 812 F. Supp. 1280, 1301 (D.N.H. 1993)(citing the Second Circuit's opinion in Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54 (1987) and commenting that even in the absence of Donahue, a reasonable public official would understand that the First Amendment protections recognized in Connick also provides protection against a superior's conduct of harassment, since such conduct is likely to constitute a constructive discharge of the employee).

Absent complete ineptitude, any reasonably competent official in the positions held by City Defendants must have some basic understanding that retaliating against an employee who engages in protected speech by reporting the illegal use of City equipment and City resources is a violation of that employee's First Amendment rights. As high-ranking officials employed within the City, City Defendants must have had gained some knowledge or have had some notice through the various lawsuits that were filed by whistleblowers against the City and newspaper articles published regarding whistleblower suits, that any conduct relating to retaliation against employees who engaged in protected speech is unlawful and a constitutional violation.

Any reasonable person/official in the position of the City Defendants would not have believed that conduct such as - treating Plaintiff in a disparate manner, giving Plaintiff substandard performance reports/reviews when he had received good performance reports/reviews prior to reporting the Kurokawa-GK Misconduct, reprimanding Plaintiff for taking leave when they had previously authorized such leave, threatening to move him to another position on the Big Island, and consistently giving Plaintiff substandard performance reports/reviews such that it caused Plaintiff to be placed on special probation – in light of clearly established principles and law, that retaliating against a Plaintiff who is reporting

the illegal use of City resources and equipment is unlawful, would believe that such conduct is lawful.

It is quite clear given the facts that a reasonable official in the City Defendants' position would have and should have known that retaliating against an employee who was exercising his right to protected speech is illegal and violation of his constitutional right. However, when there are facts in dispute regarding the reasonableness of the official's conduct, this is a question that must be left for the jury to decide. Corcoran, 160 F. Supp. 2d at 1090 (court stating "that is, where essential historical facts concerning what an official knew or did are in dispute, 'it is clear that these are questions of fact for the jury to determine.'" *citing* Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1207 (9th Cir. 2001)). To the extent there are facts in dispute in this case with respect to the reasonableness of the City Defendants', Plaintiff would request that this Court deny City Defendants' request for protection pursuant to qualified immunity and allow the jury to make that determination.

D.    CITY DEFENDANTS LIABLE FOR PUNITIVE DAMAGES

City Defendants are clearly not entitled to protection under qualified immunity. They have not established that the acts complained of were performed within their discretionary functions. As such, they must be subject to punitive damages for their conduct.

City Defendants also argued that there can be no clear and convincing evidence that City Defendants' conduct amounted to wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. However, this issue is clearly question of fact and certainly one that is reserved for the jury to determine. In <u>Masaki v. General Motors Corp.</u>, 71 Haw. 1, 6, 780 P.2d 566, 570 (1989), the Hawaii Supreme Court noted:

> Since the purpose of punitive damages is not compensation of the plaintiff but rather punishment and deterrence, such damages are awarded only when the egregious nature of the defendant's conduct makes such a remedy appropriate. Thus, "[w]here the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime, all but a few courts have permitted the jury to award … [punitive damages.]"(*citing* Prosser & Keeton).

However, in viewing the evidence in a light most favorable to the Plaintiff, there is more than sufficient evidence to show that the City Defendants' actions in retaliating against Plaintiff for reporting the Kurokawa-GK Misconduct amounted to wanton, oppressive, and malicious behavior. City Defendants' retaliatory acts towards Plaintiff severely injured him and cannot be deemed as anything but egregious and with malice. City Defendants' actions towards Plaintiff clearly demonstrated that they sought revenge upon Plaintiff and sought to punish him for reporting Defendant Kurokawa's illegal activities.

E.     CITY DEFENDANTS NOT ENTITLED TO A STAY OF THE PROCEEDINGS IN THE EVENT OF AN IMMEDIATE APPEAL

In the event that this Court is inclined to deny City Defendants' Motion for Partial Summary Judgment and the City Defendants attempt to immediately appeal this Court's Order, City Defendants should not be entitled to a stay of the proceedings pending appeal.

Claims on the basis of qualified immunity should be "made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2155-56 (2001). City Defendants in this case have had ample opportunities to raise the qualified immunity defense, including in their two previous motions for partial dismissal or in the alternative motion for summary judgment, but yet failed to do so.  In their Motion to Extend the Substantive Motions deadline, the City Defendants argued that they are requesting the extension due to the recent ruling by the U.S Supreme Court in the Garcetti case.  See Plaintiff Philip E. English's Motion for Reconsideration of the Court's Granting of Defendants City and County of Honolulu, Gary T. Kurokawa, Robert O. Magota and Ann C. Gima's Motion to Extend Time to File Substantive Motions and Defendant GK Appraisals, Inc.'s Joinder to Defendants City and County of Honolulu, Gary T. Kurokawa, Robert O. Magota and Ann C. Gima's Motion to Extend Time to File Substantive Motions. City Defendants did not make any mention to this Court that they would be filing motions for summary judgment on the basis of qualified immunity.

City Defendants' Motion for Partial Summary Judgment based on qualified immunity, filed at this juncture, is nothing short of a dilatory tactic, used in a manipulative manner to delay proceedings, and must be deemed frivolous. If there was any merit to their Motion for Partial Summary Judgment, one would imagine that they would have raised it earlier, rather than on the eve of trial. In the event that this Court denies the City Defendants' Motion for Partial Summary Judgment, and the City Defendants make any attempts to appeal the Court's Order, the City Defendants must be denied any request for a stay of the proceedings pending appeal. Courts have refused appellants' request for a stay of proceedings pending appeals of orders denying a defense of qualified immunity for appeals that were frivolous or forfeited by appellants due to untimeliness of the claim. See Marks v. Spokane County, 102 F.3d 1012, 1018 (1996)(9th Circuit Court recognizing that district court's have the power to certify a defendant's interlocutory appeal as frivolous and forfeited, citing Apostol v. Gallion, 870 F.2d 1335 (7th Cir. 1989).

In Apostal, 870 F.2d 1335, 1338-39, the 7th Circuit concluded

> Although this approach [Forsyth appeal] protects the interests of the defendants claiming qualified immunity, it may injure the legitimate interests of other litigants and the judicial system. During the appeal memories fade, attorneys' meters tick, judges' schedules become chaotic (to the detriment of litigants in other cases). Plaintiffs' entitlements may be lost or undermined. Most deferments will be unnecessary. The majority of Forsyth appeals-like the bulk of all appeals-end in affirmance. Defendants may seek to stall because they gain from delay at plaintiffs' expense, an incentive yielding unjustified appeals. Defendants may take Forsyth appeals for tactical as well as

strategic reasons: disappointed by the denial of a continuance, they may help themselves to a postponement by lodging a notice of appeal. Proceedings masquerading as Forsyth appeals but in fact not presenting genuine claims of immunity create still further problems.

Courts are not helpless in the face of manipulation. District judges lose power to proceed with trial because the defendants' entitlement to block the trial is the focus of the appeal. If the claim of immunity is a sham, however, the notice of appeal does not transfer jurisdiction to the court of appeals, and so does not stop the district court in its tracks.

*   *   *

Frivolousness is not the only reason a notice of appeal may be ineffectual. Defendants may waive or forfeit their right not to be tried. If they wait too long after the denial of summary judgment, or if they use claims of immunity in a manipulative fashion, they surrender any entitlement to obtain an appellate decision before trial.

In this case, any appeal by City Defendants and any requests for a stay pending appeal of a denial of a defense of qualified immunity must be denied due to City Defendants' manipulation of the judicial system and their game-playing.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny City Defendants Motion for Partial Summary Judgment.

DATED:     Honolulu, Hawaii, _September 22, 2006_____.

_____

ROGER S. MOSELEY
CHRISTOPHER J. MUZZI
RENEE M. FURUTA
JOANNA B.K. FONG
Attorneys for Plaintiff
Philip E. English