IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1–10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10,<br><br>        Defendants. | Civil No.  04-00108 KSC/KSC<br><br>DECLARATION OF PHILIP E. ENGLISH<br><br><br><br>Trial Date: October 3, 2006 |

### DECLARATION OF PHILIP E. ENGLISH

I, PHILIP E. ENGLISH., declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief, and that this declaration is based upon my personal observation and/or information personally obtained by me, including through my employment with Defendant City and County of Honolulu, and further, that I would be competent to testify to the matters contained herein at the trial of this case:

10010/3/57785.2

1.  On or about June 1, 2000, I became an employee of the Assessment Division of the Department of Budget and Fiscal Services of the City and County of Honolulu (herein the "Defendant City") as an Real Property Appraiser II.

2.  Defendant Kurokawa is and was at all relevant times the Administrator of the Assessment Division and an employee of Defendant City. Defendant Kurokawa had, at all times herein relevant, supervisory authority over me, Defendant Magota and Defendant Gima.

3.  Defendant Magota was at all relevant times the City Assessor in the Assessment Division and an employee of Defendant City. Defendant Magota had at all times herein relevant, supervisory authority over me and Defendant Gima.

4.  Defendant Gima is, and at all times herein relevant was an Appraiser Supervisor of the Assessment Division, and an employee of the City. Defendant Gima had, at all relevant times herein, direct supervisory authority over me. Defendant Gima was commonly called Annie by the other employees of the Assessment Division.

5.  Beginning about January of 2001, I began observing one of my co-workers, Christopher Graff ("Graff"), performing private appraisal work for Defendant GK on City equipment during City time. I also observed Graff receiving calls from Defendant Kurokawa and others regarding Graff's performance of work for Defendant GK.

6.  On February 1, 2001, I was promoted to Real Property Appraiser III.

7. I also observed a former City employee that was performing work for Defendant GK have access to nonpublic areas of the Assessment Division to deal with Graff.

8. I verbally reported the misconduct involving Defendant Kurokawa and Defendant GK (the "Kurokawa-GK Misconduct") to Defendant Gima in August 2001.

9. Sometime between August and November 2001, Defendant Gima told me to stop calling her "Annie" because only her friends called her Annie; he could call her "Ann."

10. After observing that the Kurokawa-GK Misconduct failed to diminish, I verbally reported the Kurokawa-GK Misconduct to Defendant Magota on or about October 2, 2001.

11. When the Kurokawa-GK Misconduct continued apparently undiminished, on February 15, 2002, I sent an email to Defendant Magota, complaining that Defendant Kurokawa and Graff were engaged in the unlawful and unethical conducting of Defendant Kurokawa's private business on City time and with City equipment.

12. Prior to reporting the Kurokawa-GK Misconduct to Defendants Magota and Gima in August and October of 2001, I received satisfactory Performance Evaluation Reports in 2000.

13. Prior to reporting the Kurokawa-GK Misconduct to Defendants Magota and Gima in August and October of 2001, I received Performance Evaluation Reports in 2001 where I was rated as exceeding expectations in all categories.

14. On April 22, 2002, I received an annual Performance Evaluation Report for his position as Appraiser III.

15. On or after August 14, 2002, I contacted the Federal Bureau of Investigation to report the Kurokawa-GK Misconduct.

16. I was not notified that I was apparently not been placed on extended probation as set forth in the Performance Evaluation Report signed by Defendant Kurokawa on August 15, 2002, and I continued to believe that I was on extended probation.

17. On or about October 21, 2002, I sought leave to see his medical doctors for a cancer follow-up and for an orthopedic matter.

18. After returning from my doctor appointment on October 25, 2002, Defendant Gima accused me of taking unauthorized leave.

19. On January 3, 2003, I met with Charles Totto, Executive Director and Chief Legal Counsel to the City and County of Honolulu Ethics Commission to report, among other things, the continuing Kurokawa-GK Misconduct and other matters.

20. On January 7 and 10, 2003, I spoke with Graff about my contact with the Ethics Commission and the Federal Bureau of Investigation regarding the Kurokawa-GK Misconduct and other matters.

21. On January 22, 2003, I filed a written complaint with the City and County of Honolulu Ethics Commission regarding, *inter alia*, the Kurokawa-GK Misconduct.

22. On January 30, 2003, I went to see a doctor regarding the workplace stress that resulted from Defendants' conduct.

23. On February 5, 2003, I was accused of insubordination for attending my October 25, 2002 medical doctor appointment.

24. On February 10, 2003, Defendant Magota and Gima met with me and reprimanded me regarding an act of insubordination, hostility toward my supervisor, and failure to follow instructions regarding the incident on October 25, 2002 regarding my medical doctor appointment.

25. My union steward Dwight Ishiguro later informed me that the Defendant Magota and Gima's action of reprimanding me on February 10, 2003 could have resulted in a break in service. A break in service had the potential of adversely affecting my step movement, income, and could have resulted in me losing all protections pursuant to the civil service code.

26. On February 20, 2003, someone placed a draft of the Workplace Violence Checklist of Julie Tamayori on My work chair. I was unaware that a

workplace violence report had been filed against me or that an investigation was pending. The contents of Ms. Tamayori Workplace Violence Checklist disturbed me greatly.

27. On February 21, 2003, Plaintiff attended a mandatory training session for all Assessment Division employees conducted by Defendant City. At the mandatory training, the training coordinator showed a Dilbert cartoon mocking ethics. Additionally, jokes were made about whistleblowers. At the seminar Assessment Division employees were told that they are not bad persons because bad stuff goes on around them; that they did not have to report bad things; that going to the Ethics Commission is not practical; and that the Ethics Commission cannot do anything anyway.

28. Beginning in May of 2002, I began suffering stress from Defendants' conduct, and, in January and February 2003, I felt ostracized and isolated at work.

29. On February 27, 2003, Defendant City sought to interview me regarding the Workplace Violence Complaints filed against me.

30. February 28, 2003 is the last day I reported to work on advice of my treating physician because of work related stress. On that day, I filed a claim for worker's compensation.

31. February 28, 2003 though November 7, 2003, Defendant City denied me worker's compensation benefits.

32. From February 28, 2003 through January 24, 2004, I took leave due medical reasons.

33. On January 24, 2004, Defendant City required me to resign in order to receive worker's compensation benefits through a settlement agreement.

34. Attached hereto as Exhibit "A" is a true and correct copy of a Notification of Personnel Action dated June 5, 2000 that was signed and received by me.

35. Attached hereto as Exhibit "C" is a true and correct copy of a Notification of Personnel Action dated January 25, 2001 that was sent to and received by me.

36. Attached hereto as Exhibit "C1" is a true and correct copy of excerpts from the Deposition of David Matsunami taken on November 9, 2005.

37. Attached hereto as Exhibit "D" is a true and correct copy of an email that I drafted and sent to R. Magota dated February 15, 2002 re: COMPLAINT AGAINST THE ADMINISTRATOR.

38. Attached hereto as Exhibit "E" is a true and correct copy of a Probationary Performance Evaluation Report for P. English dated 8/9/2000 that was signed and received by me.

39. Attached hereto as Exhibit "F" is a true and correct copy of a Probationary Performance Evaluation Report for P. English dated 11/3/2000 that was signed and received by me.

40. Attached hereto as Exhibit "G" is a true and correct copy of a Probationary Performance Evaluation Report for P. English that was signed and received by me.

41. Attached hereto as Exhibit "H" is a true and correct copy of a Performance Evaluation Report for P. English dated 4/23/01 that was signed and received by me.

42. Attached hereto as Exhibit "I" is a true and correct copy of a Probationary Performance Evaluation Report for P. English that was signed and received by me.

43. Attached hereto as Exhibit "J" is a true and correct copy of a Performance Evaluation Report for P. English that was signed and received by me.

44. Attached hereto as Exhibit "K" is a true and correct copy of a Probationary Performance Evaluation Report for P. English that was signed and received by me.

45. Attached hereto as Exhibit "L" is a true and correct copy of a Probationary Performance Evaluation Report for P. English that was signed and received by me.

46. Attached hereto as Exhibit "M" is a true and correct copy of a Probationary Performance Evaluation Report for P. English that was signed and received by me.

47. Attached hereto as Exhibit "N" is a true and correct copy of a Notification of Personnel Action dated 8/15/2001 that was delivered to and received by me.

48. Attached hereto as Exhibit "O" is a true and correct copy of an email dated October 21, 2005 that I drafted and sent to Defendant Ann Gima..

49. Attached hereto as Exhibit "P" is a true and correct copy of Kaiser Permanente Report dated 10/25/02 on visit with Philip English with Mark Santi, M.D. that is part of my medical records that I have requested and received.

50. Attached hereto as Exhibit "AA" is a true and correct copy of my handwritten notes dated 2/21/03.

51. Attached hereto as Exhibit "AA1" is a true and correct copy of the Dilbert cartoon dated January 20, 2003 that was displayed at the Assessment Division training seminar on February 21, 2003.

52. Attached hereto as Exhibit "CC" is a true and correct copy of my handwritten notes dated February 27, 2003

53. Attached hereto as Exhibit "EE" is a true and correct copy of Letter dated 4/9/03 from Robert Magota to Philip English re: Annual Performance Evaluation Review that was sent to and received by me.

54. Attached hereto as Exhibit "HH" is a true and correct copy of Letter dated April 17, 2003 from Ivan Lui-Kwan to Philip E. English – Re: Notice of Substandard Performance Evaluation that was sent to and received by me.

55. Attached hereto as Exhibit "II" is a true and correct copy of excerpts from the Deposition of Charles Totto taken on June 23, 2006.

56. Attached hereto as Exhibit "OO" is a true and correct copy of the Patient Chart for Philip E. English printed April 28, 2003 and received by me.

57. Attached hereto as Exhibit "PP" is a true and correct copy of Joan Koff, PhD's summary of visit on April 21, 2005 received by me.

I DECLARE UNDER PENALTY OF PERJURY under the laws of the State of Hawaii and the United States, that the foregoing is true and correct.

Executed this 22nd day of September 2006, at Honolulu, Hawaii.

*[signature]*
PHILIP E. ENGLISH