**CONFIDENTIAL WORKPLACE VIOLENCE INCIDENT REPORT - Page 1**

To: _____  Date of Incident: ~~1/3/03~~ 1/7/03 AND 1/22/03
Location of Incident: GRILLA'S RESTAURANT AND Telephone Conversation (1/8/03)
Time of Incident: 1:00 (GRILLA'S RESTAURANT) AM/PM  Day of the week: _____
From: _____  Phone: _____

Number of persons affected: MYSELF (CHRIS GRAFF)

(Name of the victim(s)/affected person(s))
Position: CHRIS GRAFF   Bargaining Unit: 13

Supervisor: ANN GIMA   Supervisor notified? Yes X  No ___

Family Notified? Yes X  No ___

Was there third party/non-employee involvement? Yes ___  No X

Lost work time? Yes X  No ___  Anticipated return to work date: LOST only A COUPLE OF HOURS

Alleged Assailant/Perpetrator Information:

Violence was directed towards: Staff X (CHRIS GRAFF)  Customer/Client ___
Visitor ___  Other ___

Assailant(s) is/were: Staff X  Customer/Client ___  Visitor ___
Other ___
Name of Assailant(s) or Alleged Perpetrator(s), if known

Position or Job Title of the Assailant(s): REAL PROPERTY APPRAISER IV

Was the assailant ARMED?  Yes ___  No X
If assailant was ARMED, describe the weapon: _____

Have there been previous incidents of this type in the workplace?  Yes ___  No X

Have there been previous incidents of this type by this person?  Yes ___  No X

Incident Information:

Type of incident: PHYSICAL Abuse ___  VERBAL Abuse ___

OTHER (describe) Verbal intimidation, THREATS

Injuries? Yes ___  No X

IF YES, what were extent of the injuries? _____

Risk factors applicable to the incident

___ Working with money          ___ Working alone
___ Working early morning       ___ Working at night
___ Dissatisfied with customer service   ___ Domestic
X   Prior history of violence   ___ Gang related
___ Work in a high crime area   ___ Intoxicants/drugs
X   Other (describe): ASSAILANT has thrown Temper Tantrums in past. Threw boxes Around etc...

ATC 1412

**EXHIBIT "Q"**

RENEAU KENNEDY RE PHILIP ENGLISH

CONFIDENTIAL WORKPLACE VIOLENCE INCIDENT REPORT - Page 2

Description of the incident:

(SEE ATTACHED)

Present at the time of the incident: POLICE __N¹__ SECURITY __NO__

Police notified? YES ____ NO ____

Did anyone leave the area because of the incident?
YES ____ NO __X__ Not determined ____

The status of the incident:

Incident diffused: YES ____ NO ____
Explain outcome
_____
_____
_____

Assailant/perpetrator: __PHIL ENGLISH__

Arrested? YES ____ NO __X__   Escorted off premises? YES ____ NO __X__

Remained on premises? YES ____ NO ____ Left on own? YES ____ NO ____

Other (describe)
_____
_____

Recommendations that would prevent a similar incident:
_____
_____
_____

Report completed by: __Chris GRAFF__  Title: __REAL Property Appraiser II__

Witnesses: __—__  Date: __—__

Supervisor notified by: __Chris GRAFF__  Time: __TUESDAY 1/7/03 & FRIDAY 1/10/03__

RENEAU KENNEDY RE PHILIP ENGLISH

To Whom It May Concern:

On or about January 10th to 12th 2003, Mr. Phil English left several telephone messages on my cell phone asking me to call him. He stated, "There is something I need to talk to you about". I did not return the calls. Upon returning to work on Friday January 17th, I asked Mr. English what he wanted to speak with me about. Mr. English indicated that we should talk outside of the office.

We met for lunch at Grilla's Restaurant. During lunch Mr. English told me that the Real Property Assessment Office (RPA) has been under investigation for a long time by the F.B.I. and the City and County of Honolulu, Corp Counsel Ethics Commission. Mr. English further stated that the F.B.I. had a list of people from RPA, which was called the "bad list". I was shocked when Mr. English claimed that my name was on this so called "bad list", along with Gary Kurokawa, head of RPA, Steve Yee, an RPA supervisor, and others I can not remember.

Mr. English also stated that the City and County Department of Information Technology (DIT) had been helping with the alleged investigation and had accessed my computer records at the request of Charles Totto, head of the Ethics Commission, and the F.B.I. He also said that two other people from RPA had already gone forward to Ethics and are "of record" saying that I had been doing private appraisal work with Gary Kurokawa's approval while on City time. Mr. English also claimed that DIT had "hard evidence" to support these allegations.

Mr. English warned me that the Ethics Commission was "nobody to mess around with" because by the time they got around to questioning me about this "they would already know the answers". If I lied to them, they would know and "hang me out to dry" At this point in our conversation, because I knew I had done nothing wrong, I felt Mr. English was attempting to intimidate me.

To intimidate me further, Mr. English related a tale to me about some guy who worked for the State of Hawaii who was put in jail for doing private work on State time. But this person was a mechanic doing "outside" work on State time with State equipment.

Mr. English further claimed that the Ethics Commission investigation had progressed so far that Charles Totto said "the best thing Gary Kurokawa could do right now was resign" because in addition to the allegations of private work being done on City time, they had allegedly found some irregularities with other properties held by Gary and his family.

Mr. English then told me that if I went forward to the Ethics Commission right now, i.e. prior to a complaint being filed, that I would be "moved off of the bad list" and placed into "whistle blower" status and therefore I could not be fired. Mr. English claimed that if I did not got to the Ethics Commission I would be fired and go to jail.

Mr. English contended that he was already protected as a so-called "whistle blower"

RENEAU KENNEDY RE PHILIP ENGLISH                                365

and that he wanted the same for me. Mr. English claimed that Robert Magota, RPA Assessor, said to him that "Chris is going down" for doing private appraisal work on City time, and insinuated that Mr. Magota was working with DIT and Ethics Commission.

When I informed Mr. English that the accusations alleged against me were false, Mr. English shouted, while slamming his fists into the tabletop, "Oh come on Chris, that's a lie!"

On Wednesday January 22, 2003 I received a phone call around 12:30 pm from Mr. English. He said that he had copy of an "official complaint" from Ethics and that my name was "all over it man." He then told me again that if I was to "save myself" that I needed to speak with Charles Totto at Ethics and "tell him everything" because they already knew and were going to "get me."

After meeting with the Ethics Commission, at the request of Charles Totto, I have since learned that the office is currently not under investigation by the F.B.I or the Ethics Commission, that there is no "bad list", that DIT has no "hard evidence" of wrongdoing, and most of Mr. English's statements were false.

Mr. English's lies amount to verbal intimidation. Mr. English has lodged several complaints against RPA and the Hawaii Government Employee's Association (HGEA). I believe his motivation was to intimidate me and scare me coming forth to the Ethics Commission with any information, which might in some way substantiate his complaints.

Sincerely,

*Chris Graff*

Chris Graff

RENEAU KENNEDY RE PHILIP ENGLISH

STATE OF HAWAII              )
                             ) SS.
CITY & COUNTY OF HONOLULU    )

    I, KATHERINE Y. CHOO, a Notary Public in and for the State of Hawaii, do hereby certify:

    That on **June 3, 2005**, at **12:45 PM**, personally appeared before me **Robert L. K. Yoshimura**, the witness whose deposition is contained herein; that prior to being examined, the witness was by me duly sworn; that the deposition was taken upon written interrogatories, a copy of which was served upon opposing counsel pursuant to Court rules; that the interrogatories were propounded to the witness by me as hereinbefore noted, and that the witness made the answers as contained herein.

    That the witness was notified by the notary either verbally, through counsel, by mail, or by telephone to appear and sign; that if the deposition is not signed, either the reading and signing of the deposition were waived by the witness, by stipulation of all parties, or the deponent has failed to appear and the original deposition is therefore retained by noticing counsel without signature pursuant to Court rules.

    I further certify that I am not attorney for any of the parties hereto, and that I am in no way interested in the event of said action.

    DATED: **June 3, 2005**

            _/s/ Katherine Y. Choo_
            KATHERINE Y. CHOO
            NOTARY PUBLIC, State of Hawaii
            My Commission Expires: February 15, 2008

**C E R T I F I C A T E**  7

I, LOUIS A. CARNAZZO, a Certified Shorthand Reporter in and for the State of Hawaii, do hereby certify:

That the deposition upon written interrogatories contained herein was prepared under my direction and control.

I further certify that I am not attorney for any of the parties hereto, and that I am in no way interested in the event of said action.

_____
LOUIS A. CARNAZZO, C.S.R. #110
Certified Shorthand Reporter