ORIGINAL

MOSELEY BIEHL TSUGAWA LAU & MUZZI
A Hawaii Limited Liability Law Company
ROGER S. MOSELEY          2060
CHRISTOPHER J. MUZZI      6939
Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, Hawaii 96813
Tel: (808) 531-0490  Fax: (808) 534-0202
Email: rmoseley@hilaw.us, cmuzzi@hilaw.us;

Attorneys for Plaintiff
PHILIP E. ENGLISH

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 25 2006

at ___ o'clock and ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH, <br><br> Plaintiff, <br><br> vs. <br><br> CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT O. MAGOTA; ANN C. GIMA; and GK APPRAISALS, INC.; JOHN DOES 1–10; JANE DOES 1-10; DOE PARTNERSHIPS; DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10, <br><br> Defendants. | Civil No. 04-00108 KSC/KSC <br><br> REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF PHILIP E. ENGLISH'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT IV UNLAWFUL DISCRIMINATION AND RETALIATION AGAINST DEFENDANTS CITY AND COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA, AND ANN C. GIMA AS TO LIABILITY ONLY; DECLARATION OF COUNSEL; DECLARATION OF P. ENGLISH; EXHIBITS "TT" – "AAA"; CERTIFICATE OF SERVICE <br><br> Hearing: <br> Date:  September 27, 2006 <br> Time:  9:00 a.m. <br> Judge: Honorable Kevin S. Chang |

10010/3/58026

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF
PHILIP E. ENGLISH'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON COUNT IV UNLAWFUL DISCRIMINATION
AND RETALIATION AGAINST DEFENDANTS CITY AND COUNTY
OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA,
AND ANN C. GIMA AS TO LIABILITY ONLY

Defendants' opposition does not appear to dispute any of the facts establishing Plaintiff's prima facie case of Defendants' violation of the Hawaii Whistleblower's Protection Act, Haw. Rev. Stat. §§ 378-61 et seq. (the "HWPA") that are set forth in support Plaintiff's Motion For Summary Judgment. Plaintiff set forth numerous instances of protected conduct and numerous instances of adverse employment action. The element of causation could be inferred from the timing of the adverse employment action, or directly by admission in the case of Defendant Gima's Workplace Violence Report. Defendants appear to limit their challenge to the assertion that an issue of material fact exists as a result of their assertion of an affirmative defense.

I.   **ARGUMENT.**

Defendants summarize their defense by citing Crosby v. State Dep't of Budget & Fin., 76 Haw. 332, 876 P.2d 1300 (1994) for the proposition that, "an employer 'must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with

10010/3/58026

dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.'" 76 Haw. at 345, 876 P.2d 1313. This, however, is not the applicable standard for an affirmative defense to a claimed violation of the HWPA, which is the claim that Plaintiff sought summary judgment on (as to liability only). The above-quoted language from Crosby, sets forth a potential defense relating to a claim for a violation of 42 U.S.C. § 1983 based on an infringement of a plaintiff's First Amendment Rights.

Even if the above-quoted language from Crosby was applicable to this motion, it is not a proper defense here, where Plaintiff's protected activity involves allegations of illegal and/or unethical conduct against not only a fellow employee, but the head of the Assessment Division. Where the alleged disruption to the work environment is caused because of whistleblowing against supervisors, the government does not have a legitimate interest in taking adverse employment actions against the whistleblower to avoid such disruption. This principle was explained in

detail by the Ninth Circuit Court of Appeals in <u>Johnson v. Multnomah County, Oregon</u>, 48 F.3d 420, 427 (9th Cir. 1995):

> The County next argues that even if Johnson's statements were of public concern and Johnson possessed proof of wrongdoing, her speech interest would still be outweighed by the County's interest in avoiding disruption in the workplace. The County's showing of disruption consists in evidence that Johnson's statements interfered with the close working relationship between herself and McKinley and undermined McKinley's relationship with co-workers, subordinates and private vendors. But the County must do more than show mere disruption. Instead, it must show actual injury to its legitimate interests. As the Third Circuit has recognized:
>
> the First Amendment balancing test [of Pickering] can hardly be controlled by a finding that disruption did occur. An employee who accurately exposes rampant corruption in her office no doubt may disrupt and demoralize much of the office. But it would be absurd to hold that the First Amendment generally authorizes corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office.
>
> <u>O'Donnell v. Yanchulis</u>, 875 F.2d 1059, 1062 (3d Cir. 1989) (citations omitted) (emphasis omitted). In other words, the County does not have a legitimate interest in covering up mismanagement or corruption and cannot justify retaliation against whistleblowers as a legitimate means of avoiding the disruption that necessarily accompanies such exposure. Nor are the County's legitimate interests injured if McKinley was undermined by truthful statements exposing his own wrongdoing. If we were to hold otherwise, "some of the most important public employee speech - exposing government corruption, wrongdoing, or incompetence - would be left out-side the First Amendment's aegis." <u>Hyland v. Wonder</u>, 972 F.2d at 1138. Because we presume for the purposes of summary judgment that Johnson's allegations were true, we hold that the County's showing of disruption is insufficient to entitle it to summary judgment on the ground that its legitimate administrative interests outweigh the First Amendment interest in Johnson's freedom of speech.

Here, with respect to an affirmative defense to a claim of violation of the HWPA, the Defendants have the burden of proving by a preponderance of the evidence that the adverse employment action would have occurred regardless of the protected conduct. Crosby, 76 Haw. at 342, 876 P.2d 1310. Here, the adverse employment actions against Plaintiff include[1]:

- On April 22, 2002, Plaintiff received an annual Performance evaluation Report with negative comments.

- Plaintiff received the August 14, 2002 Substandard Evaluation.

- On August 15, 2002, Plaintiff purportedly had his probation extended for three months by Defendant Kurokawa.

- On October 25, 2002, Plaintiff was accused by Defendant Gima of insubordination for allegedly taking leave without authorization to see his medical doctor.

- Failure to notify Plaintiff that he was not on probation in September through November 2002

- Plaintiff being shunned and ostracized in January and February 2003.

- Defendant Gima filed a workplace violence report against Plaintiff on January 29, 2003, which triggers a workplace violence investigation against Plaintiff.

---

[1] Defendants argue that "Plaintiff has admitted in his deposition that he was not terminated, his salary was not decreased, his benefits were not reduced, and his position was in no way changed." Memorandum in Opposition at p.3. Defendants, however, failed to attach Plaintiff's deposition testimony in support of their allegations. Further, Defendants ignore that adverse employment actions can occur by means other than those set forth above.

10010/3/58026                                4

- On or about January 29, 2003, Defendant Gima advises coworkers of the "option of individually filing [workplace violence] reports" against Plaintiff.

- At least nine of Plaintiff's coworkers are interviewed as part of the workplace violence investigation, and, are thus made aware of the allegations of workplace violence against Plaintiff.

- On February 10, 2006, Plaintiff was verbally reprimanded by Defendants Magaota and Gima for alleged failure to follow Defendant Gima's instructions, insubordination, and conduct towards Defendant GIMA, all of which allegedly occurred on October 15, 2002.

- On February 12, 2006, Graff files a workplace violence report relating to contact Plaintiff had with Graff in January of 2003.

- On February 20, 2003, a draft of Julie Tamayori's workplace violence checklist to be completed in Defendant City's workplace violence investigation is left on Plaintiff's work chair.

- On February 21, 2003, Plaintiff was publicly ridiculed at a mandatory training seminar for Assessment Division employees put on by Defendant City.

- Thereafter, Defendant Gima states that Plaintiff is under investigation for alleged acts of insubordination occurring on February 19 and 25, 2003.

- On April 9, 2003, Defendant City notifies Plaintiff that they want to meet with him to discuss a substandard Performance Evaluation Report.

- By letter April 17, 2003, Defendant City sent Plaintiff the Notice of Substandard Performance Evaluation. The Notice of Substandard Performance Evaluation indicated that Plaintiff was being placed on a special three month performance evaluation, and that "if [Plaintiff] is unable to satisfactorily meet the performance expectations of [his] position, [it] may result in removal or discharge from [his] position."

- On April 22, 2003, Defendant City sent Plaintiff a Performance Evaluation Report rating Plaintiff's performance as substandard in most categories.

- January 24, 2004, Defendant City requires Plaintiff to resign in order to receive worker's compensation benefits through a settlement agreement.

Defendants fail to specifically produce any evidence with respect to each instance of adverse employment action. Instead, they make general allegations of an affirmative defense and appear to try to establish this affirmative defense by alleging the following reasons: (1) There Was No Reason For Retaliation; (2) Promotion Inconsistent With Retaliation; (3) Plaintiff Struggled With His Job; and (4) Plaintiff's Inappropriate Conduct. Because Defendants have failed to present specific evidence to support their affirmative defense for each and every allegation of an adverse employment action, the Motion for Partial Summary Judgment should be granted against all Defendants as to liability only as there is no genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law.

In the event that the Court considers the proffered affirmative defense, it is insufficient to raise a genuine issue of material fact warranting trial.

**1.    There Was Reason For Retaliation.**

Defendants argue that there was no reason for them to retaliate because the Defendant "City and Plaintiff both agree that City employees

should not be doing out-side work on City time." This argument is incredible. If defendants could avoid liability for violations of the HWPA by simply agreeing that illegal or unethical conduct should not occur, then the HWPA would be meaningless. The HWPA is designed to protect employees that are retaliated against for reporting such conduct.

Also, Defendants intentionally focus on that part of Plaintiff's reports of illegal or unethical conduct that relate to Plaintiff's fellow employee, Chris Graf. However, the reports were primarily directed towards the conduct of Defendant Kurokawa, the administrator of the assessment division.

Notwithstanding the foregoing, whether Defendants had any reason to retaliate against Plaintiff is irrelevant. The legal inquiry in a HWPA claim is whether Plaintiff engaged in protected conduct under the HWPA and whether Defendants retaliated against Plaintiff for such conduct.[2]

---

[2] It is unclear whether Defendants are trying to allege that Plaintiff knew his reports to be false. If that is what they are trying to do, they have failed to create a genuine issue of material fact, as they do not allege that Plaintiff knew his reports to be false. Further, with respect to Plaintiff's report in the January 22, 2003 Ethics Complaint where Plaintiff reported that he believed Defendant Kurokawa to be taking a real property tax exemption that he is not entitled to, the Deposition of Susan Bender supports Plaintiff's belief. Ms. Bender testifies that she told Plaintiff that Defendant Kurokawa told her that he had claimed a real property tax exemption to which he was no longer entitled. See Exhibit TT - Deposition of Susan Bender at p. 70:7-9 and 71:3-4. As to the fact the Plaintiff believed his claims to the Ethics Commission to be true, Defendants do not dispute that on February 28, 2003, Defendant City and County of Honolulu employee Thomas Riddle ("Riddle"), who was investigating Plaintiff's Worker's Compensation claim spoke with

### 2. The Promotion to Appraiser IV Was in Progress Prior to Plaintiff's Protected Reports.

Defendants argue that Plaintiff's promotion to Appraiser IV was inconsistent with retaliation. Defendants, however, fail to acknowledge that Plaintiff's promotion to Appraiser IV was in progress prior to his first protected reports in August and October of 2001. See Exhibits UU and VV. Thus, Defendants likely risked violating the HWPA if they did not promote Plaintiff.

Further, almost simultaneously with his promotion, Plaintiff began experiencing a number of adverse employment actions, such as a lowered performance evaluation such as the April 22, 2002 Employment Evaluation and other matters set forth above. Defendants' opposition has not disputed that these actions constituted adverse employment actions under HWPA.

---

Charles Totto ("Totto"), Executive Director and Legal Counsel for the City and County of Honolulu, Ethics Commission. Riddle's notes of his conversation with Totto stated:

> After meeting with [Plaintiff], I called Totto of the Ethics Commission to verify whether English had filed a complaint with them. Totto indicated that he had and that they were investigating his complaint. Although Totto could not discus the details of the complaint or his investigation, he seemed to be supportive of English (just my opinion from the tone of his voice). I did ask him if anything in his investigation so far had found any of English's complaints to be true. He acknowledged yes. I also ask [sic] if his investigation so far had found any of English's complaints to be false, and he answered no. So, it appears there is an element of truth to what [Plaintiff] is alleging.

Thus, there is no evidence whatsoever before the Court that would even remotely suggest that Plaintiff believed his reports to be false.

10010/3/58026                                    8

Again, Defendants have utterly failed to assert an affirmative defense to each of the numerous acts of retaliation detailed in Plaintiff's Motion for Partial Summary Judgment. For these reasons, the Motion for Partial Summary Judgment should be granted.

### 3. Plaintiff Struggled With His Job.

Defendants seek to justify their some of their adverse employment actions with the general assertion that Plaintiff struggled with the performance of his job "[f]ollowing his promotion to Appraiser IV." Defendants' Memorandum In Opposition at p. 5. However, shortly after reporting Defendant Kurokawa and Graf's misconduct in writing to Defendant Magota on February 15, 2002, Plaintiff received an Annual Performance Evaluation for his position as an Appraiser III that reported Plaintiff's performance in every aspect as "Meets Expectations." This report was down markedly from his three prior Evaluation as an Appraiser III, where Plaintiff was rated as "Exceeding Expectations" in all aspects. See Exhibits G, H, I & J to Plaintiff's Concise Statement. When Plaintiff questioned this downgrade with Defendant Gima, his immediate supervisor, she agreed that his performance rating should be exceeds expectations in all categories for his work as an Appraiser III, see Exhibit WW, but no change was made.

In May of 2002, Plaintiff received a performance evaluation that rated him as "Meeting Expectations" for all categories as an Appraiser IV. See Exhibit XX. This report contained no indication that Plaintiff was "clearly struggl[ing] in the performance of his job" following his promotion to Appraiser IV as Defendants suggest.

In a draft letter of recommendation prepared in or around June 2002, Deputy Corporation Counsel Susan Bender wrote the following glowing comments about Plaintiff, which provide, in relevant part:

> I have known Phil English since _____, ____, when he became an appraiser with the City's Assessment Division. In the past year, I worked closely with Phil on a tax appeal matter involving the issue of condominium classification. In defense of the City's classification determination, Phil was deposed five times for over 20 hours. The depositions were grueling, but Phil kept his cool and always had a well-reasoned response. Phil also prepared an extensive expert's report in anticipation of trial and assisted me in drafting rules and regulations pertaining to condominium classification. Additionally, I consulted with Phil in preparing responsive legal memoranda covering topics ranging from appraisal methodology to highest and best use analysis. His thoughts and insights as we worked through the issues in this case were invaluable.
>
> In my experience, Phil is not only professional in manner and highly intelligent, but he is a reliable and conscientious individual who has a lot to offer the City in the area of appraisal. Phil is an excellent communicator. I cannot say this about just anyone in the RPAD. Phil really is a rare individual and an asset to any employer. I can unhesitatingly recommend him for employment in the area of real property appraisal.

See Exhibit TT.

In addition, Defendants acknowledged that Plaintiff was overburdened and that office practices were interfering with his job functions. See Exhibit YY. In addition, Defendants often failed to give Plaintiff timely assistance to allow him to carry out his job duties in a timely manner. See Exhibit ZZ.

### 4. Plaintiff's Conduct Was Not Inappropriate.

Defendants allege that Workplace Violence Reports were filed against Plaintiff because he (a) raised his voice and yelled; (b) pounded the table with his fists; and (c) slammed a banker's box down on a desk. These alleged acts of inappropriate conduct supposedly occurred in January 2002 (raised his voice and yelled and slammed a banker's box down on a desk); and mid-2002 (raised his voice and yelled); and pounded the table with his fists in January 2003 when Plaintiff met with Graf outside the office asking him to tell the truth to the Ethics Commission. Despite virtually all such events allegedly occurring between six months and one year prior to Defendant Gima's Workplace Violence Report in January of 2003, Defendant Gima, within a week after Plaintiff's written complaint to the Ethics Commission, filed her Workplace Violence Report. See Exhibits T and U to Plaintiff's Concise Statement. Not only are the alleged acts not workplace violence, as defined in Defendant City's Workplace Violence Policy, but, if Defendant Gima believed them to constitute workplace

violence, she was <u>required</u> to "act immediately and consistently." See Exhibit AAA. Thus, bringing such stale claims is nothing more than a pretext for the retaliation. In addition, with respect to the alleged raising of voice and yelling, witnesses have described the event as both Defendant Gima and Plaintiff as raising their voices louder at each other. See Exhibit X to Plaintiff's Concise Statement.

Further, it cannot be disputed that Defendant Gima admits that Plaintiff's Ethics Complaint precipitated her Workplace Violence Report against Plaintiff. Based on this admission, Defendants argument that the January 29, 2003 Workplace Violence Report would have occurred regardless of Plaintiff's protected conduct, the written Ethics Complaint on January 22, 2003, it simply implausible and incredible. See Exhibit U to Plaintiff's Concise Statement. Thus, liability as to Defendant City and Defendant Gima cannot be denied. One act of retaliation is all that is required for liability under HWPA.

## II.   CONCLUSION.

For the reasons set froth above, there is no dispute as to any material fact and Plaintiff is entitled to judgment as a matter of law on his HWPA claim as to liability only.

Dated: Honolulu, Hawaii, __SEP 2 5 2006_____.

_____
ROGER S. MOSELEY
CHRISTOPHER J. MUZZI
Attorneys for Plaintiff
PHILIP E. ENGLISH