REAL PROPERTY TAX

## Chapter 8

## REAL PROPERTY TAX

**Articles:**
1.    Administration
2.    Notice of Assessments—Assessment Lists
3.    Tax Bills, Payments and Penalties
4.    Remissions
5.    Liens—Foreclosures
6.    Rate—Levy
7.    Valuations
8.    Wasteland Development
9.    Nontaxable Property—Assessment
10.   Exemptions
11.   Determination of Rates
12.   Appeals
13.   County Refund
14.   Reporting of Honolulu Real Property Interests Owned or Acquired by Foreign Persons
15.   Severability

## Article 1. Administration

**Sections:**
8-1.1    Legislative intent.
8-1.2    Definitions.
8-1.3    Duties and responsibilities of the director.
8-1.4    Oaths.
8-1.5    Hearings and subpoenas.
8-1.6    Timely mailing treated as timely filing and paying.
8-1.7    Tax collection—General duties, powers of director.
8-1.8    District court judges—Misdemeanors and actions for tax collections.
8-1.9    Director—Collection, records of delinquent taxes, uncollectible delinquent taxes.
8-1.10   Legal representative.
8-1.11   Abstracts of registered conveyances, copies of corporation exhibits furnished to director.
8-1.12   Notices—How given.
8-1.13   Federal or other tax officials permitted to inspect returns—Reciprocal provisions.
8-1.14   Records open to public.
8-1.15   Tax records as evidence.
8-1.16   Due date on Saturday, Sunday or holiday.
8-1.17   Changes in assessment lists.
8-1.18   Adjustments and refunds.
8-1.19   Partial payment of taxes.
8-1.20   Abetting misdemeanor.
8-1.21   Neglect of duty—Misdemeanor.
8-1.22   Penalty for misdemeanors.


DEFENDANT'S
EXHIBIT

PE 01868

REVISED ORDINANCES OF HONOLULU

**Sec. 8-1.1    Legislative intent.**

The purpose of this chapter is to implement the authority granted to the City and County of Honolulu to assess, impose and collect real property taxes based on an amendment to the Constitution of the State of Hawaii which was adopted on November 7, 1978, by the electorate. (Added by Ord. 80-72)

**Sec. 8-1.2    Definitions.**

Wherever used in this chapter:

"City" means the City and County of Honolulu.

"Director" means the director of finance of the City and County of Honolulu or the director's authorized subordinate.

"Property" or "real property" means and includes all land and appurtenances thereof and the buildings, structures, fences and improvements erected on or affixed to the same, and any fixture which is erected on or affixed to such land, buildings, structures, fences and improvements, including all machinery and other mechanical or other allied equipment and the foundations thereof, whose use thereof is necessary to the utility of such land, buildings, structures, fences and improvements, of whose removal therefrom cannot be accomplished without substantial damage to such land, buildings, structures, fences and improvements, excluding, however, any growing crops. (Sec. 8-1.1, R.O. 1978 (1983 Ed.))

**Sec. 8-1.3    Duties and responsibilities of the director.**

The director shall have the following duties and powers, in addition to any others prescribed or granted by this chapter:

(a)    Assessment. To assess, pursuant to law, all real property situated within the geographic boundary of the City and County of Honolulu for taxation of real property and to make any other assessment by law required to be made by the director.

(b)    Collections. To be responsible for the collection of all taxes imposed by this chapter and for such other duties as are provided by law.

(c)    Construction of Revenue Laws. To construe the provisions of this chapter, the administration of which is within the scope of the director's duties, whenever requested by any officer or employee of the city, or by any taxpayer.

(d)    Enforcement of Penalties. To see that penalties are enforced when prescribed by this chapter (the administration of which is within the scope of the director's duties) for disobedience or evasion of its provisions, and to see that complaint is made against persons violating any provisions of this chapter; in the execution of these powers and duties, the director may call upon the corporation counsel or prosecuting attorney, whose duties it shall be to assist in the institution and conduct of all proceedings or prosecutions for penalties and forfeitures, liabilities and punishments for violation of the provisions of this chapter in respect to the assessment and taxation of real property.

(e)    Forms. To prescribe forms to be used in or in connection with the provisions of this chapter, including forms to be used in the making of returns by taxpayers or in any other proceedings connected with the provisions of this chapter and to change the same from time to time as deemed necessary.

(f)    Maps.

(1)    The director shall provide for the City and County of Honolulu, maps drawn to appropriate scale, showing all parcels, blocks, lots or other divisions of land based upon ownership, and their areas or dimensions, numbered or otherwise designated in a systematic manner for convenience of identification, valuation and assessment. The maps, as far as possible, shall show the names of owners of each division of land, and shall be revised from time to time as ownership changes and as further divisions of parcels occur. The director shall also maintain, as and when such information is available, maps showing present use, zoning and physical use capabilities of land located within the City and County of Honolulu for the guidance of assessors and the information of various tax review tribunals and the general public.

(2)    The director shall charge fees for the use and other disposition of tracings of these maps, including copies or prints made therefrom, by private persons or firms as provided for by ordinance.

(g)    Inspection, Examination of Records and Property. The director shall have the authority to inspect and examine the records and property of all public officers without charge, and to examine the books and papers of account of any person for the purpose of enabling the director to obtain all information that could in any manner aid the director in discharging the director's duties under this chapter.

(h)    Inspection, Examination of Real Property. To inspect and examine the real property of any person for the purpose of enabling the director to attain all information that could in any manner aid the director in discharging the director's duties under this chapter.

(i)    Recommendations for Legislation. To recommend to the mayor such amendments, changes or modifications of the provisions of this chapter or any applicable state statutes as may seem proper or necessary to remedy injustice or irregularity, or to facilitate the assessment of property under this chapter.

PE 01869

REAL PROPERTY TAX

(j)  Report to Mayor. To report to the mayor annually, and at such other times and in such manner as the mayor may require, concerning the acts and doings and the administration of the director's department, and such other matters or information concerning real property taxation as may be deemed of general interest; the mayor shall transmit copies of such reports to the council within 30 days of receipt.

(k)  Rules and Regulations. To promulgate such rules and regulations as the director may deem proper, and to effectuate the purposes for which the director's department is constituted, and to regulate matters of procedure by or before the director pursuant to the provisions of HRS Chapter 91.

(l)  Compromises. With the approval of the corporation counsel, to compromise any claim arising under this chapter not exceeding $500.00 and if a claim exceeds $500.00, the director shall obtain the approval of the city council, the administration of which is within the scope of the director's duties; and in any such case, there shall be placed on file and in the director's department's office a statement of (1) the amount of tax assessed, or proposed to be, (2) the amount of penalties and interest imposed or proposed to be assessed, (3) the amount of penalties and interest imposed or which could have been imposed by law with respect to the item (1) as computed by the director, (4) the total amount of liability as determined by the terms of the compromise, and the actual payments made thereon with the dates thereof, and (5) the reasons for the compromise.

(m)  Retroactivity of Rulings. To prescribe the extent, if any, to which any ruling, regulations or construction of the provisions of this chapter shall be applied without retroactive effect.

(n)  Remission of Delinquency Penalties and Interest. Except in cases of fraud or wilful violation of the provisions of this chapter or wilful refusal to make a return setting forth the information required by this chapter (but inclusion in a return of a claim of nonliability for the tax shall not be deemed a refusal to make a return), the director may remit any amount of penalties or interest added, under this chapter, to any tax that is delinquent for not more than 90 days, in a case of excusable failure to file a return or pay a tax within the time required by this chapter, or in a case of uncollectibility of the whole amount due; and in any such case there shall be placed on file in the director's office a statement showing the names of the person receiving such remission, the principal amount of the tax, and the year or period involved.

(o)  Closing Agreements. To enter into an agreement in writing with any taxpayer or other person relating to the liability of such taxpayer or other person, under this chapter, the administration of which is within the scope of the director's duties, in respect of any taxable period, or in respect of one or more separate items affecting the liability for any taxable period; such agreement, signed by or on behalf of the taxpayer or other person concerned, and by or on behalf of the city, shall be final and conclusive, and except upon a showing of fraud or malfeasance, or misrepresentation of a material fact, (1) the matters agreed upon shall not be reopened, and the agreement shall not be modified, by any officer or employee of the city, and (2) in any suit, action or proceeding, such agreement, or any determination, assessment, collection, payment, refund or credit made in accordance therewith, shall not be annulled, modified, set aside or disregarded.

(p)  Other Powers and Duties. In addition to the powers and duties contained in this section, the assessing, collecting, receiving, and enforcing payments of the tax imposed hereunder, and otherwise relating thereto, shall be severally and respectively conferred, granted, practiced and exercised for levying, assessing, collecting and receiving and enforcing payment of the taxes imposed under the authority of this chapter. (Sec. 8-1.2, R.O. 1978 (1983 Ed.))

**Sec. 8-1.4  Oaths.**
    The director may administer all oaths or affirmations required to be taken or be administered under this chapter. (Sec. 8-1.3, R.O. 1978 (1983 Ed.))

**Sec. 8-1.5  Hearings and subpoenas.**
    The director may conduct any inquiry, investigation or hearing, relating to any assessment, or the amount of any tax, or the collection of any delinquent tax, including any inquiry or investigation into the financial resources of any delinquent taxpayer or the collectibility of any delinquent tax. The director may administer oaths and take testimony under oath relating to the matter of inquiry or investigation, and subpoena witnesses and require the production of books, papers, documents and records pertinent to such inquiry. If any person disobeys such process, or, having appeared in obedience thereto, refuses to answer pertinent questions put to such person by the director or to produce any books, papers, documents or records, pursuant thereto, the director may apply to the first circuit court setting forth such disobedience to process or refusal to answer, and such court or judge shall cite such person to appear before such court or judge to answer such questions or to produce such books, papers, documents, or records, and upon such person's refusal to do so, commit such person to jail until such person testifies but not for a longer period than 60 days. Notwithstanding the serving of the term of commitment by any person, the director may proceed in all respects as if the witness had not previously been called upon to testify. Witnesses (other than the taxpayer or the taxpayer's officers, directors, agents and employees) shall be allowed their fees and mileage as in cases in the circuit courts to be paid on vouchers of the city, from any moneys available for expenses of the director. (Sec. 8-1.4, R.O. 1978 (1983 Ed.))

PE 01870

REVISED ORDINANCES OF HONOLULU

**Sec. 8-1.6     Timely mailing treated as timely filing and paying.**

(a)     General Rule. Any report, claim, tax return, statement or other document required or authorized to be filed with or any payment made to the city which is:

  (1)     Transmitted through the United States mail, shall be deemed filed and received by the city on the date shown by the post office cancellation mark stamped upon the envelope or other appropriate wrapper containing it.

  (2)     Mailed but not received by the city or where received and the cancellation mark is illegible, erroneous or omitted, shall be deemed filed and received on the date it was mailed if the sender establishes by competent evidence that the report, claim, tax return, statement, remittance or other document was deposited in the United States mail on or before the date due for filing; and in cases of the nonreceipt of a report, tax return, statement, remittance or other document required by law to be filed, the sender files with the city a duplicate within 30 ·days after written notification is given to the sender by the city of its nonreceipt of the report, tax return, statement, remittance or other document.

(b)     Registered Mail, Certified Mail, Certificate of Mailing. If any report, claim, tax return, statement, remittance or other document is sent by United States registered mail, certified mail or certificate of mailing, a record authenticated by the United States Postal Service of the registration, certification or certificate shall be considered competent evidence that the report, claim, tax return, statement, remittance or other document was delivered to the director or department of finance, and the date of registration, certification, or certificate shall be deemed the postmarked date.

(Sec. 8-1.5, R.O. 1978 (1983 Ed.))

**Sec. 8-1.7     Tax collection--General duties, powers of director.**

      The director shall collect all taxes under this chapter according to the assessments and shall be liable and responsible for the full amount of the taxes assessed, unless the director shall under oath account for the noncollection of the same, or shall be released from accountability as provided in Section 8-1.9. The corporation counsel shall assist the director in the collection of all taxes under this chapter. (Sec. 8-1.6, R.O. 1978 (1987 Supp. to 1983 Ed.))

**Sec. 8-1.8     District court judges--Misdemeanors and actions for tax collections.**

      Except as otherwise provided in this chapter, the district court judges for the first circuit court for the State of Hawaii as authorized in HRS Section 231-12, shall have jurisdiction to try misdemeanors arising under this chapter and all complaints for the violation of this chapter and to impose any of the penalties therein prescribed and shall also have the jurisdiction to hear and determine all civil actions and proceedings for the collection and enforcement of collection and payment of all taxes assessed thereunder, and all actions or judgments obtained in tax actions and proceedings, notwithstanding the amount claimed. (Sec. 8-1.7, R.O. 1978 (1983 Ed.))

**Sec. 8-1.9     Director--Collection, records of delinquent taxes, uncollectible delinquent taxes.**

(a)     The director shall be responsible for the collection and general administration of all delinquent taxes. The director shall duly and accurately account for all delinquent taxes collected.

(b)     The director of finance shall prepare and maintain a complete record, open to public inspection, of the amounts of taxes assessed which have become delinquent with the name of the delinquent taxpayer in each case, but it shall not be necessary to periodically compute on the records the amount of penalties and interest upon delinquent taxes.

(c)     The director may from time to time prepare lists of all taxes delinquent which in the director's judgment are uncollectible. Such taxes as the director finds to be uncollectible shall be entered in a special record and be deleted from the other books kept by the director, and the director shall thereupon be released from any further accountability for their collection; provided, that no account shall be so deleted until it shall  have been delinquent for at least two years. Any items so deleted may be transferred back to the delinquent tax roll if the director finds that the alleged facts as previously presented to the director were not true, or that such items are in fact collectible. (Sec. 8-1.8, R.O. 1978 (1987 Supp. to 1983 Ed.))

**Sec. 8-1.10     Legal representative.**

      The corporation counsel or the prosecuting attorney shall assign one of such persons' deputies as attorney and legal advisor and representative of the director. The corporation counsel or the prosecuting attorney may proceed to enforce payment of any delinquent taxes by any means provided by law. Any legal proceedings may be instituted in the name of the director or the deputy director. (Sec. 8-1.9, R.O. 1978 (1983 Ed.))

**Sec. 8-1.11     Abstracts of registered conveyances, copies of corporation exhibits furnished to director.**

PE 01871

REAL PROPERTY TAX

The director may request abstracts of titles. For the purpose of assisting the director in arriving at a correct valuation of the property within each district, the registrar of conveyances, or any other agency so requested by the department, shall furnish to the department, monthly, quarterly or as otherwise as required by the department, an abstract of the conveyances of, or other documents affecting title to, or assessment of, real property in each district, which have been entered for record at the bureau of conveyances, executed, or filed, as the case may be, during the period covered by such abstract. The director of regulatory agencies shall each year furnish the department as requested, copies of the annual corporation exhibits of any or all corporations owning real property in any district or any information contained in such exhibits. (Sec. 8-1.10, R.O. 1978 (1983 Ed.))

**Sec. 8-1.12   Notices—How given.**

Unless otherwise provided, every notice, the giving of which by the director is required or authorized, shall be deemed to have been given on the date when the notice was mailed properly addressed to the addressee at the addressee's last known address or place of business. (Sec. 8-1.15, R.O. 1978 (1983 Ed.))

**Sec. 8-1.13   Federal or other tax officials permitted to inspect returns—Reciprocal provisions.**

Notwithstanding the provisions of any law making it unlawful for any person, officer or employee of the city to make known information imparted by any tax return or permit any tax return to be seen or examined by any person, it shall be lawful to permit a duly accredited tax official of the United States or of any state or territory or the multi-state tax commission to inspect any tax return of any taxpayer, or to furnish to such official, commission, or the authorized representative thereof an abstract of the return or supply such person with information concerning any item contained in the return or disclosed by the report of any investigation of the return or of the subject matter of the return for tax purposes only. The multi-state tax commission may make such information available to a duly accredited tax official of the United States or to a duly accredited tax official of any state or territory, or the authorized representative thereof, for tax purposes only. (Sec. 8-1.16, R.O. 1978 (1983 Ed.))

**Sec. 8-1.14   Records - public and confidential.**
(a)   Except as provided in subsection (b), all maps and records compiled, made, obtained or received by the director or any of the director's subordinates, shall be public records, and in case of the death, removal or resignation of any such officers, shall immediately pass to the care and custody of their respective successors. The information and all maps and records connected with the assessment and collection of taxes under this chapter shall, during business hours, be open to the inspection of the public.

(b)   Real Property tax records stamped confidential and provided in a form separable from public tax records by a taxpayer containing trade secrets or confidential commercial or financial information of a taxpayer shall not be open to inspection by the public including, but not limited to:
(1)   Lease agreements not involving the use of government land;
(2)   Income statements; and
(3)   Income and general excise tax statements.
(c)   Nothing in subsection (b) shall be construed to preclude the city from using the records enumerated in subsection (b) in any proceeding before a board of review or a court in any appeal brought by a taxpayer. (Sec. 8-1.17, R.O. 1978 (1983 Ed.), Am. Ord 01-06)

**Sec. 8-1.15   Tax records as evidence.**

In respect of any tax imposed or assessed under this chapter, the administration of which is within the scope of the director's duties and except as otherwise specifically provided in the law imposing the tax, the notices of assessments, records of assessments, and lists or other records of payments and amounts unpaid prepared by or under the authority of the director, or copies thereof, shall be prima facie proof of the assessments of the property or person assessed, the amount due and unpaid, and the delinquency in payment and that all requirements of law in relation thereto have been complied with. (Sec. 8-1.18, R.O. 1978 (1983 Ed.))

**Sec. 8-1.16   Due date on Saturday, Sunday or holiday.**

When the due date for any remittance or document required by any ordinance imposing a tax falls on a Saturday, Sunday or legal holiday, the remittance or document shall not be due until the next succeeding day which is not a Saturday, Sunday or legal holiday. (Sec. 8-1.19, R.O. 1978 (1983 Ed.))

**Sec. 8-1.17   Changes in assessment lists.**

Except as specifically provided in this chapter, no changes in, additions to or deductions from, the real property tax assessments on the assessment lists prepared as provided in Section 8-2.2 shall be made except to add thereto property or assessments which may have been omitted therefrom, or to deduct therefrom adjustments on account of

PE 01872

REVISED ORDINANCES OF HONOLULU

duplicate assessments and clerical errors, such as transposition in figures, typographical errors and errors in calculation. (Sec. 8-1.20, R.O. 1978 (1983 Ed.))

**Sec. 8-1.18   Adjustments and refunds.**
(a)   This subsection shall apply to taxes assessed and collected under this chapter.
    (1)   In the event of adjustments on account of duplicate assessments and clerical errors, such as transposition in figures, typographical errors and errors in calculations, the adjustments may be entered upon the records although the full amount appearing on the records prior to such adjustment has been paid.
    (2)   There may be refunded in the manner provided in subsection (b) of this section any amount collected in excess of the amount appearing on the records as adjusted, or any amount constituting a duplication of payment in whole or in part.
    (3)   Whenever any real property is deemed by the director to be exempt from taxation under Section 8-10.20, if there has been paid prior to the effective date of the exemption any real property taxes applicable to the period following the effective date of the exemption, there shall be refunded to the nonprofit or limited distribution mortgagor owning the property in the manner provided in subsection (b) all amounts representing the real property taxes which have been paid on account of the property and attributable to the period following the effective date of the exemption.
    (4)   No such adjustment shall be entered on the records nor refund made except within two years after the end of the tax year in which the amount to be refunded was due and payable, unless a written application for the adjustment or refund has been filed within such period.
(b)   This subsection shall apply to all real property taxes.
    (1)   All refunds and adjustments shall be paid by voucher approved by the director, setting forth the details of each transaction. Payment of such refund or adjustment shall be made out of the real property tax refund account in the real property tax trust fund hereinafter created; provided, that if the person entitled to a refund or adjustment is delinquent in the payment of the tax, the director, after notice to the delinquent taxpayer, shall withhold the amount of the delinquent taxes together with penalties and interest thereon from the amount of the refund or adjustment and apply the same to the amount owed.
    (2)   There is created and established a fund known as the real property tax trust fund to be used for the purpose of making refunds and adjustments of taxes collected under this chapter. The director may, from time to time, deposit taxes collected under this chapter to the credit of real property tax refund account in the real property tax trust fund so that there may be maintained at all times an amount from which refunds may be paid.
(Sec. 8-1.21, R.O. 1978 (1983 Ed.), Am. Ord. 00-52)

**Sec. 8-1.19   Partial payment of taxes.**
    Whenever a taxpayer makes a partial payment of a particular assessment of taxes, the amount received by the director shall first be credited to interest, then to penalties, and then to principal. (Sec. 8-1.22, R.O. 1978 (1983 Ed.))

**Sec. 8-1.20   Abetting misdemeanor.**
    All persons wilfully aiding, abetting or assisting in any manner whatsoever any person to commit any act constituted a misdemeanor by this chapter, shall be deemed guilty of a misdemeanor. (Sec. 8-1.24, R.O. 1978 (1983 Ed.))

**Sec. 8-1.21   Neglect of duty—Misdemeanor.**
    Any officer or employee of the department of finance, any person duly authorized by the director, or any police officer, on whom duties are imposed under this chapter, who wilfully fails or refuses or neglects to perform faithfully any duty or duties of such person required by this chapter, shall be deemed guilty of a misdemeanor. (Sec. 8-1.25, R.O. 1978 (1983 Ed.))

**Sec. 8-1.22   Penalty for misdemeanors.**
    Any person convicted of any misdemeanor under this chapter, for which no punishment is otherwise prescribed, shall be fined not more than $500.00 or (if a natural person) imprisoned for not more than one year or both. (Sec. 8-1.26, R.O. 1978 (1983 Ed.))

PE 01873

REAL PROPERTY TAX

## Article 2. Notice of Assessments—Assessment Lists

**Sections:**
   **8-2.1   Notice of assessments—Addresses of persons entitled to notice.**
   **8-2.2   Assessment lists.**
   **8-2.3   Informalities or mistakes in names or notices not to invalidate assessments.**

**Sec. 8-2.1   Notice of assessments—Addresses of persons entitled to notice.**

(a)   On or before December 15th preceding the tax year, the director shall give notice of the assessment for the tax year against each known owner, by personal delivery to the owner or by mailing to the owner on or before such date postage prepaid and addressed to the owner at the owner's last known place of residence or address a written notice identifying the property involved by the tax key and the general class established in accordance with Section 8-7.1(c) and setting forth the valuation placed upon the real property, determined pursuant to Section 8-7.1(a), the exemption, if any, allowed or denied, as the case may be, and the net taxable value of the real property. The general class of the property shall be set forth in clear and descriptive language as used in Section 8-7.1(c) (1) without abbreviation and without reference to a code of any kind on the notice of assessment.

(b)   In addition to the foregoing, the director shall, in each year, give notice of the assessments for the upcoming tax year by public notice (by publication thereof at least three times on different days prior to December 31st of each year in a newspaper of general circulation, published in the English language) of a time when (which shall be not less than a period of 10 days prior to December 31st preceding the tax year) and of a place where the records of taxable properties maintained for the district may be inspected by any person for the purpose of enabling such person to ascertain what assessments have been made against such person or such person's property and to confer with the director so that any errors may be corrected before the filing of the assessment list.

(c)   On or before December 15 preceding the tax year, the director of finance shall notify by mail each known owner whose property has been assigned a different general class from the general class assigned the previous tax year, that the property has been reclassified for property tax assessment purposes for the ensuing tax year. Such notification shall state the property's general class immediately prior to the change, the new general class, and the effective date of the new general class.

(Sec. 8-2.1, R. O. 1978 (1983 Ed.); Am. Ord. 92-20, 93-95, 96-15, 02-45)

**Sec. 8-2.2   Assessment lists.**

On or before January 31st preceding the tax year, the director shall have prepared from the records of taxable properties a list, in duplicate, of all assessments made, which list shall be signed and sworn to by the person preparing it. The assessment list shall identify the property assessed by its tax key and shall set forth the general class of the property established in accordance with Section 8-7.1(c), the valuation of the real property, the amount of exemption allowed on the real property, and the net taxable value of the real property. The assessment list shall be the lists in accordance with which taxes shall be collected, subject only to change made by any court or other tribunal having jurisdiction, where appeals from assessments have been duly taken and prosecuted to final determination, and subject to Section 8-1.17. There shall be noted upon such lists all appeals taken pursuant to Section 8-12.1 and the amount involved in each case. The original of the assessment lists shall be retained by the person preparing it, and one copy shall be held by the city clerk.

(Sec. 8-2.2, R.O. 1978 (1983 Ed.); Am. Ord. 92-20, 96-15, 97-55, 02-45)

**Sec. 8-2.3   Informalities or mistakes in names or notices not to invalidate assessments.**

No assessment or act relating to the assessment or collection of taxes under this chapter shall be illegal or invalidate such assessment, levy, or collection on account of mere informality, nor because the same was not completed within the time required by law, nor, if the notice by publication provided for by Section 8-2.1 has been given, on account of a mistake in the name of the owner or supposed owner of the property assessed, or failure to name the owner, or failure to give the notice of assessment by personal delivery or mail provided for by Section 8-2.1. (Sec. 8-2.3, R.O. 1978 (1983 Ed.))

## Article 3. Tax Bills, Payments and Penalties

**Sections:**
   **8-3.1   Tax rolls—Tax bills.**
   **8-3.2   Taxes—Due when—Installment payments—Billing and delinquent dates.**

PE 01874

REVISED ORDINANCES OF HONOLULU

8-3.3   Penalty for delinquency.
8-3.4   Assessment of unreturned or omitted property—Review—Penalty.
8-3.5   Reassessments.

**Sec. 8-3.1    Tax rolls—Tax bills.**
(a)    The director shall prepare tax rolls from the assessment lists provided for by Section 8-2.2, showing thereon, in each case, names and addresses of the assessed and the amount of taxes which shall be not less than $100.00 as provided in Section 8-11.1(g).
(b)    The director shall mail, postage prepaid, or deliver, each year on or before the billing dates as provided for by Section 8-3.2, to all known persons assessed for real property taxes for such year, respectively, or to their agents, tax bills demanding payment of taxes due from each such person respectively, but no person shall be excused from the payment of any tax or delinquent penalties thereon by reason of failure on such person's part to receive, or failure on the part of the director so to mail or deliver such bill. The bill, if mailed, shall be addressed to the person concerned at such person's last known address or place of residence. Whenever any bill covers taxes for any real property owned, as joint tenants or as tenants in common or otherwise, by more than one person, the bill may be sent to any one co-owner and upon written request shall be sent to each known co-owner but shall, in any event, demand the full amount of the taxes due upon such real property.
(Sec. 8-3.1, R.O. 1978 (1983 Ed.); Am. Ord. 92-124)

**Sec. 8-3.2    Taxes—Due when—Installment payments—Billing and delinquent dates.**
      All real property taxes shall be due and payable on and after July 1st of each tax year and the payment thereof shall be determined in the following manner:
(a)    All known persons assessed for real property taxes shall be billed not later than the billing date designated in the schedule listed herein; subject however, to the limitations heretofore provided in Section 8-3.1. Each taxpayer shall pay the real property taxes due from such person for the year in which the taxes are assessed, in two equal installments on or before the dates designated in the following schedule:

Fiscal Year Schedule

| (Billing Date) | (1st Payment) | (2nd Payment) |
|---|---|---|
| July 20 | August 20 | February 20 |

(b)    All such taxes due on the first payment date of such year from each taxpayer, which remain unpaid after the date, shall thereupon become delinquent, and the balance of such taxes due on the second payment date of such year from each taxpayer, which remain unpaid after the date, shall thereupon become delinquent.
(Sec. 8-3.2, R.O. 1978 (1983 Ed.))

**Sec. 8-3.3    Penalty for delinquency.**
(a)    There shall be added to the amount of all delinquent taxes, a penalty of up to 10 percent of such delinquent taxes as determined by the director, which penalty shall be and become a part of the tax and be collected as a part thereof.
(b)    All delinquent taxes and penalties shall bear interest at the rate of one percent for each month or fraction thereof until paid, beginning with the first calendar month following the calendar month designated for payment in Section 8-3.2. The interest shall be and become a part of the tax and be collected as a part hereof.
(c)    No taxpayer shall be exempt from delinquent penalties by reason of having made an appeal on such taxpayer's assessment, but the tax paid, covered by an appeal duly taken, shall be held in a trust account as provided in Section 8-12.12.
(Sec. 8-3.3, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 89-147)

**Sec. 8-3.4    Assessment of unreturned or omitted property—Review—Penalty.**
(a)    If, when returns are required under this chapter, any person refuses or neglects to make such returns, or declines to authenticate the accuracy thereof, or omits any property from a return, the director shall make the assessment according to the best information available and shall add to the assessment or tax lists for the year or years during which it was not taxed, the property unreturned or omitted. Likewise, if for any other reason any real property has been omitted from the assessment lists for any year or years, the director shall add to the lists the omitted property. Notice shall be given the owner, if known, within 10 days after the assessment or addition, by mailing the same addressed to the owner at last known place of residence. Any owner desiring a review of the assessment or the addition may appeal to the board by filing with the director a written notice thereof in the manner prescribed in Section 8-12.9 at any time within 30 days after the date of

PE 01875

REAL PROPERTY TAX

mailing such notice, or may appeal to the tax appeal court by filing written notice of appeal with, and paying the necessary costs to, such court within the period and in the manner prescribed in Section 8-12.8.

(b) A penalty of 10 percent shall be added by the director to the amount of any assessment made by the director pursuant to this section, which penalty shall be and become a part of the assessment so made; but no such penalty shall be imposed where the failure to assess or tax the property was not due to the refusal or neglect of the owner to return the property or authenticate the accuracy of the owner's return.

(c) For the purpose of determining the date of delinquency of taxes pursuant to assessments under this section, such taxes shall be deemed delinquent if not paid within 30 days after the date of mailing of notice of assessment, or if assessed for the current assessment year, within 30 days after the date of mailing the notice or on or before the next installment payment date, if any, for such taxes, whichever is later.
(Sec. 8-3.4, R.O. 1978 (1983 Ed.))

## Sec. 8-3.5    Reassessments.

Any property assessed to a person or persons who did not have the record title upon October 1st preceding the tax year in which the assessment was made, may be, and in any case where the attempted assessment of property is void or so defective as to create no real property tax lien on the property and the taxes have not been fully collected, the property shall be assessed as omitted property in the manner provided in Section 8-3.4. (Sec. 8-3.5, R.O. 1978 (1983 Ed.); Am. Ord. 96-15)

PE 01876

REVISED ORDINANCES OF HONOLULU

## Article 4. Remissions

**Sections:**
    8-4.1    Remission of taxes on acquisition by government.
    8-4.2    Remission of taxes in cases of certain disasters.

**Sec. 8-4.1    Remission of taxes on acquisition by government.**
(a)    Whenever any real property is acquired for public purposes by the United States, the state or the city, and whenever any government lease or other tenancy shall terminate, the director is authorized to remit the taxes due thereon for the balance of the taxation period or year from and after the date of acquisition of the property, or the termination of the government lease or other tenancy, as the case may be.
(b)    In case the state or the city takes possession of real property which is the subject of eminent domain proceedings commenced for the acquisition of the fee simple estate in such land by the state or the city, taxes are authorized to be remitted as provided in HRS Sections 101-35 to 101-39, subject to HRS Section 101-39(I).
(c)    In case the owner of real property grants to the state or the city a right of entry with respect to such real property and the state or the city enters into possession under the authority of the right of entry with intention to acquire the fee simple estate therein and to devote the real property to public use, the state or the city shall certify to the director the date upon which it took possession, and upon receipt of the certificate, the director is authorized to remit the real property tax on the parcel of land or portion of a parcel of land so coming into the possession of the state or the city for the balance of the taxation period which is subsequent to the date of possession.
(d)    In case the United States takes possession of real property which is the subject of eminent domain proceedings commenced for the acquisition of the fee simple estate in such land, taxes are authorized to be remitted for the balance of the taxation period or year after such taking, as provided in this paragraph. The remission shall be allowed conditionally upon the presentation to the director of a written notice and agreement, signed by the person, or one or more of the persons, owning the land, stating the date of such taking of possession by the United States, and agreeing that out of the first funds received by such owner or owners from such condemnation there shall be paid sufficient moneys to discharge the lien for any real property taxes existing upon the land prorated up to and including the date of such taking possession of the property; provided, that the notice may be accompanied by payment of the prorated amount of taxes in lieu of such agreement. HRS Section 101-39 is made applicable to such land and the owner or owners thereof and to the conditional remission authorized by this paragraph. It is further provided that in the event the prorated taxes up to the time of such taking possession shall not be paid by the owner or by one or more of the owners of the land within 10 days after receipt by such owner or owners of the compensation for the condemnation, or within such additional time as shall be allowed by the director, then the conditional remission of taxes shall be void, and such owner or owners shall be liable for all taxes, penalties and interest which would have accrued had no such conditional remission been allowed.
(Sec. 8-4.1, R.O. 1978 (1983 Ed.))

**Sec. 8-4.2    Remission of taxes in cases of natural disasters.**
(a)    The director shall remit taxes due or paid for real property damaged or destroyed as a result of natural disaster, where the mayor has declared a natural disaster for purposes of real property tax relief, hereunder.  Remissions shall be granted:
    (1)    Of taxes on the damaged or destroyed real property for the tax year in which the natural disaster occurred; and
    (2)    To the extent and in the manner set forth in this section.
(b)    The director shall determine whether the real property was wholly destroyed or was partially destroyed or damaged from the natural disaster.  If the real property was partially destroyed or damaged, the director shall determine what percentage of the value of the whole property was destroyed or otherwise lost by reason of the natural disaster.
(c)    If the real property was wholly destroyed, the amount remitted shall be the lower of the following, but subject to subsection (e) of this section:
    (1)    The total tax on the property for the tax year in which the natural disaster occurred; or
    (2)    $25,000.00.
(d)    If the real property was partially destroyed or damaged, the amount remitted shall be the lower of the following, but subject to subsection (e) of this section:
    (1)    The amount derived by multiplying the total tax on the property for the tax year by the percentage of the value destroyed or otherwise lost, determined as provided in subsection (b) of this section; or
    (2)    $25,000.00.
(e)    The minimum tax of Section 8-11.1(g) shall apply to real property, the tax on which is remitted under this section.  In no case shall the amount remitted for a parcel of real property under this section cause the tax on that parcel to be less than the minimum.

PE 01877

REAL PROPERTY TAX

(f)    Application for a remission of taxes pursuant to this section shall be filed with the director on or before June 30th of the tax year involved, or within 60 days after the declaration by the mayor of the natural disaster, whichever is the later.  Any amount of taxes authorized to be remitted by this section, which has been paid, shall be refunded upon proper application therefor out of appropriated general funds.

(g)    For purposes of this section, the term "natural disaster" shall mean any disaster caused by seismic or tidal wave, tsunami, hurricane, volcanic eruption, typhoon, earthquake, or flood waters.

(Sec. 8-4.2, R.O. 1978 (1983 Ed.); Am. Ord. 92-38, 97-56)

PE 01878

REVISED ORDINANCES OF HONOLULU

## Article 5. Liens—Foreclosures

**Sections:**
- 8-5.1   Tax liens—Co-owners' rights—Foreclosure, limitation.
- 8-5.2   Tax liens—Foreclosure without suit, notice.
- 8-5.3   Tax liens—Registered land.
- 8-5.4   Tax liens—Notice—Form.
- 8-5.5   Tax liens—Postponement of sale.
- 8-5.6   Tax liens—Tax deed—Redemption.
- 8-5.7   Tax liens—Costs.
- 8-5.8   Tax deed as evidence.
- 8-5.9   Disposition of surplus moneys.
- 8-5.10  Tax debt due the county—Lien.
- 8-5.11  Enforcement of payment by assumpsit action or by levy and distraint upon all property and rights to property.

**Sec. 8-5.1    Tax liens—Co-owners' rights—Foreclosure, limitation.**

(a)  Every tax due upon real property, as defined by Section 8-1.2, shall be a paramount lien upon the property assessed, which lien shall attach as of July 1st in each tax year and shall continue for six years. If proceedings for the enforcement or foreclosure of the lien are brought within the applicable period hereinabove designated, the lien shall continue until the termination of said proceedings or the completion of such sale.

(b)  In case of cotenancy, if one cotenant pays, within the period of the aforesaid government lien, all of the real property taxes, interest, penalties and other additions to the tax, due and delinquent at the time of payment, the cotenant shall have, pro tanto, a lien on the interest of any noncontributing cotenant upon recording in the bureau of conveyances, within 90 days after the payment so made by the cotenant, a sworn notice setting forth the amount claimed, a brief description of the land affected by tax key or otherwise, sufficient to identify it, the tax year or years, and the name of the cotenant upon whose interest such lien is asserted. When a notice of such tax lien is recorded by a cotenant, the registrar shall forthwith cause the same to be indexed in the general indexes of the bureau of conveyances. In case the land affected is registered in the land court, the notice shall also contain a reference to the number of the certificate of title of such land and shall be filed and registered in the office of the assistant registrar of the land court, and the registrar, in the registrar's capacity as assistant registrar of the land court, shall make a notation of the filing thereof on each land court certificate of title so specified.

(c)  The cotenant's lien shall have the same priority as the lien or liens of the government for the taxes paid by the cotenant, and may be enforced by an action in the nature of a suit in equity. The lien shall continue for three years after recording or registering, or until termination of the proceedings for enforcement thereof if such proceedings are begun, and notice of the pendency thereof is recorded or filed and registered as provided by law, within the period.

(d)  The director or the director's subordinate, in case of a government lien, and the creditor cotenant, in a case of a cotenant's lien, shall, at the expense of the debtor, upon payment of the amount of the lien, execute and deliver to the debtor a sworn satisfaction thereof, including a reference to the name of the person assessed or cotenant affected as shown in the original notice, the date of filing of the original notice, a description of the land involved, and the number of the certificate of title of such land if registered in the land court, which, when recorded in the bureau of conveyances or filed and registered in the office of the assistant registrar of the land court, shall, in the case of a cotenant's lien which contains the reference to the book and page of the original lien, be entered in the general indexes of the bureau of conveyances, and if a notation of the original notice was made on any land court certificate of title, the filing of such satisfaction shall also be noted on the certificate.

(e)  This section as to cotenancy shall apply as well, in any case of ownership by more than one assessable person.

(f)  Upon enforcement or foreclosure by the government in any manner whatsoever, of any such real property tax lien, all taxes of whatsoever nature and howsoever accruing, due at the time of the foreclosure sale from the taxpayer against whose property such tax lien is so enforced or foreclosed, shall be satisfied as far as possible out of the proceeds of the sale remaining after payment of (1) the costs and expenses of the enforcement and foreclosure including a title search, if any, (2) the amount of subsisting real property tax liens, and (3) the amount of any recorded liens against the property, in the order of their priority.

(g)  The liens may be enforced by action of the director in the circuit court of the first circuit, and the proceedings had before the circuit court shall be conducted in the same manner and form as ordinary foreclosure proceedings as provided for in HRS Chapter 667. If the owners or claimants of the property against which a lien is sought to be foreclosed, are at the time out of the city or cannot be served within the city, or if the owners are unknown, and the fact shall be made to appear by affidavit to the satisfaction of the court, and it shall in like manner appear prima facie that a cause of action exists against such owners or claimants or against the property described in the complaint, or that such owners or claimants are necessary or proper parties to the action, the director may request the court that service be made in the manner provided by HRS Sections 634-23 through 634-29.

PE 01879

REAL PROPERTY TAX

(h)   In any such case, it shall not be necessary to obtain judgment and have execution issued and returned unsatisfied, before proceeding to foreclose the lien for taxes in the manner herein provided.
(Sec. 8-5.1, R.O. 1978 (1987 Supp. to 1983 Ed.))

**Sec. 8-5.2    Tax liens--Foreclosure without suit.**

All real property on which a lien for taxes exists may be sold by way of foreclosure without suit by the director, and in case any lien, or any part thereof, has existed thereon for three years, shall be sold by the director at public auction to the highest bidder, for cash, to satisfy the lien, together with all interest, penalties, costs and expenses due or incurred on account of the tax, lien and sale, the surplus, if any, to be rendered to the person thereto entitled. The sale shall be held at any public place proper for sales on execution, after notice published at least once a week for at least four successive weeks immediately prior thereto in any newspaper with a general circulation of at least 60,000 published in the state and any newspaper of general circulation published and distributed in the county. If the address of the owner is known or can be ascertained by due diligence, including an abstract of title or title search, the director shall send to each owner notice of the proposed sale by registered mail, with request for return receipt. If the address of the owner is unknown, the director shall send a notice to the owner at the owner's last known address as shown on the records of the department of finance. The notice shall be deposited in the mail at least 45 days prior to the date set for the sale. The notice shall also be posted for a like period in at least three conspicuous public places within the city, and if the land is improved, one of the three postings shall be on the land. (Sec. 8-5.2, R.O. 1978 (1983 Ed.))

**Sec. 8-5.3    Tax liens--Registered land.**

If the land has been registered in the land court, the director shall also send by registered mail a notice of the proposed sale to any person holding a mortgage or other lien registered in the office of the assistant registrar of the land court. The notice shall be sent to any such person at such person's last address as shown by the records in the office of the registrar, and shall be deposited in the mail at least 45 days prior to the date set for the sale. (Sec. 8-5.3, R.O. 1978 (1983 Ed.))

**Sec. 8-5.4    Tax liens--Notice--Form.**

The notice of sale shall contain the names of the persons assessed, the names of the present owners (so far as shown by the records of the director and the records, if any, in the office of the assistant registrar of the land court) the character and amount of the tax, and the tax year or years, with interest, penalties, costs, expenses and charges accrued or to accrue to the date appointed for the sale, a brief description of the property to be sold, and the time and place of sale, and shall warn the persons assessed, and all persons having or claiming to have any mortgage or other lien thereon or any legal or equitable right, title or other interest in the property, that unless the tax, with all interest, penalties, costs, expenses, and charges accrued to the date of payment, is paid before the time of sale appointed, the property advertised for sale will be sold as advertised. The director may include in one advertisement of notice of sale notice of foreclosure upon more than one parcel of real property, whether or not owned by the same person and whether or not the liens are for the same tax year or years. (Sec. 8-5.4, R.O. 1978 (1983 Ed.))

**Sec. 8-5.5    Tax liens--Postponement of sale.**

If at the time appointed for the sale, the director shall deem it expedient and for the interest of all persons concerned therein to postpone the sale of any property or properties for want of purchasers, or for other sufficient cause, the director may postpone it from time to time, until the sale shall be completed, giving notice of every such adjournment by a public declaration thereof at the time and place last appointed for the sale; provided, that the sale of any property may be abandoned at the time first appointed or any adjourned date, if no proper bid is received sufficient to satisfy the lien, together with all interest, penalties, costs, expenses, and charges. (Sec. 8-5.5, R.O. 1978 (1983 Ed.))

**Sec. 8-5.6    Tax liens--Tax deed--Redemption.**

The director or the director's subordinate shall, on payment of the purchase price, make, execute and deliver all proper conveyances necessary in the premises and the delivery of the conveyances shall vest in the purchaser the title to the property sold; provided, that the deed to the premises shall be recorded within 60 days after the sale; provided, further, that the taxpayer may redeem the property sold by payment to the purchaser at the sale, within one year from the date thereof, or if the deed shall not have been recorded within 60 days after the sale, then within one year from the date of recording of the deed, of the amount paid by the purchaser, together with all costs and expenses which the purchaser was required to pay, including the fee for recording the deed, and in addition thereto, interest on such amount at the rate of 12 percent a year, but in a case of redemption more than one year after the date of sale by reason of extension of the redemption period on account of late recording of the tax deed, interest shall not be added for the extended redemption period. (Sec. 8-5.6, R.O. 1978 (1983 Ed.))

**Sec. 8-5.7    Tax liens--Costs.**

The director by rules or regulations may prescribe a schedule of costs, expenses and charges and the manner in which they shall be apportioned between the various properties offered for sale and the time at which each cost, expense or charge shall be deemed to accrue; and such costs, expenses and charges shall be added to and become a

PE 01880

part of the lien on the property for the last year involved in the sale or proposed sale, the tax for which is delinquent. Such costs, expenses and charges may include provision for the making of and the securing of certificates of searches of any records to furnish information to be used in or in connection with the notice of sale or tax deed, or in any case where the director shall deem such advisable; provided, that the director shall not be required to make such searches or to cause them to be made except as provided by Section 8-5.3 with respect to mortgages or other liens registered in the office of the assistant registrar of the land court. (Sec. 8-5.7, R.O. 1978 (1983 Ed.))

### Sec. 8-5.8    Tax deed as evidence.

The tax deed referred to in Section 8-5.6 is prima facie evidence that:

(a)    The property described by the deed was duly assessed for taxes in the years stated in the deed and to the persons therein named.

(b)    The property described by the deed was subject on the date of the sale to a lien or liens for real property taxes, penalties and interest in the amount stated in the deed, for the tax years therein stated, and that the taxes, penalties and interest were due and unpaid on the date of sale.

(c)    Costs, expenses and charges due or incurred on account of the taxes, liens and sale had accrued at the date of the sale in the amount stated in the deed.

(d)    The person who executed the deed was the proper officer.

(e)    At a proper time and place the property was sold at public auction as prescribed by law, and by the proper officer.

(f)    The sale was made upon full compliance with Sections 8-5.2 to 8-5.7 and all laws relating thereto, and after giving notice as required by law.

(g)    The grantee named in the deed was the person entitled to receive the conveyance.

(Sec. 8-5.8, R.O. 1978 (1983 Ed.))

### Sec. 8-5.9    Disposition of surplus moneys.

(a)    The director shall pay from the surplus all taxes, including interest and penalties, of whatsoever nature and howsoever accruing, as provided in Section 8-5.1, and further the director may pay from the surplus the cost of a search of any records where such search is deemed advisable by the director to ascertain the person or persons entitled to the surplus; provided, nothing herein contained shall be construed to require the director to make or cause any such search to be made. If the director is in doubt as to the person or persons entitled to the balance of the fund, the director may refuse to distribute the surplus and any claimant may sue the director in the first circuit court. The director may require the claimants to interplead, in which event the director shall state the names of all claimants known to the director, and shall cause them to be made parties to the action. If in the director's opinion there may be other claimants who are unknown, the director may apply for an order or orders joining all persons unknown having or claiming to have any legal or equitable right, title, or interest in the moneys or any part thereof or any lien or other claim with respect thereto.

(b)    Any orders of the court or summons in the matter may be served as provided by law or the rules of court, and all persons having any interest in the moneys who are known, including the guardians of such of them as are under legal age or under any other legal disability (and if any one or more of them is under legal age or under other legal disability and without a guardian, the court shall appoint a guardian ad litem to represent them therein) shall have notice of the action by personal service upon them. All persons having any interest in the moneys whose names are unknown or who if known do not reside within the state or for any reason cannot be served with process within the state shall have notice of the action as provided by HRS Sections 634-23 to 634-29, except that any publication of summons shall be in at least one newspaper of general circulation published in the state and having a general circulation in the city, and the form of notice to be published shall provide a brief description of the property which was sold.

(c)    All expenses incurred by the director shall be met out of the surplus moneys realized from the sale.

(Sec. 8-5.9, R.O. 1978 (1983 Ed.))

### Sec. 8-5.10    Tax debt due the county–Lien.

(a)    The director may record in the bureau of conveyances, department of land and natural resources, State of Hawaii, or in the case of a lien on a motor vehicle to file with the city director of finance, a certificate setting forth the amount of taxes due and unpaid, which have been assessed or as to which a notice of proposed assessment has been issued. The certificate shall identify the taxpayer, the taxpayer's last known address, and the tax or taxes involved. The certificate shall include such further information, if any, as may be required by HRS Chapter 501, to procure a lien on registered land. The recording or filing of the certificate creates a lien in favor of the city upon all property and rights to property, whether real or personal, belonging to any person liable for the tax. The lien for the tax, including penalties and interest thereon, arises at the time of filing by the director of the certificate of tax lien. From and after the time the lien arises, it shall be a paramount lien upon

PE 01881

REAL PROPERTY TAX

the property and rights to property against all parties. The certificate, if recorded or filed with the city director of finance shall be entered of record as provided by law, and if recorded or filed in the bureau of conveyances, department of land and natural resources, State of Hawaii, shall be recorded in the office of the registrar of conveyances. Any cost incurred in the filing of the certificate shall be a part of the lien for the tax therein set forth.

(b)    The lien imposed in subsection (a) of this section shall not be valid as against: (1) a mortgagee or purchaser of real property, or the lien of a judgment creditor upon real property, whose interest arose prior to the recording by the director of the certificate provided for herein; (2) a mortgagee or purchaser of a motor vehicle who becomes the legal owner or owner at a time when the tax lien and encumbrance record provided for by HRS Section 286-46 does not show the lien.

(c)    As to tangible personal property, possession of which is held by a person liable for tax for the purpose of sale to the public in the ordinary course of the person's business, the lien imposed in subsection (a) of this section is extinguished as to any such property sold in the ordinary course of the business by or under the direction of the person to any purchaser for valuable consideration. As to securities, negotiable instruments and money, the lien imposed in subsection (a) of this section is extinguished as to such property upon passage of title to a person without notice or knowledge of the existence of the lien, for an adequate and full consideration in money or money's worth.

(d)    The director may issue a certificate of discharge of any part of the property subject to the lien imposed by this section, upon payment in partial satisfaction of such lien, of an amount not less than the value as determined by the director of the lien on the part to be so discharged, or if the director determines that the lien on the part to be discharged has no value. Any such discharge so issued shall be conclusive evidence of the discharge of the lien as therein provided.

(e)    The lien imposed in this section may be foreclosed in a court proceeding or by distraint under Section 8-5.11.

(f)    Within the meaning of this section:

"Mortgagee" and "purchaser" do not mean or include any person to whom property or an interest in property is conveyed (A) as security for or in satisfaction of an antecedent or preexisting debt of a debtor who is insolvent within the meaning of the Bankruptcy Act, or (B) as trustee, assignee or agent for the benefit of one or more creditors, other than mortgage bondholders.

"Motor vehicle" means any self-propelled vehicle to be operated on the public highways.

"Real property" means and includes leasehold or other interest in real property and also any personal property sold or mortgaged with real property if affixed to the real property and described in the instrument of sale or mortgage.

(Added by Ord. 90-19)

**Sec. 8-5.11   Enforcement of payment by assumpsit action or by levy and distraint upon all property and rights to property.**

(a)    If any tax be unpaid when due, the director may proceed to enforce the payment of the same, with all penalties, as follows:

(1)    By action in assumpsit, in the director's own name, on behalf of the city for the amount of taxes and costs, or if the tax is delinquent for the amount of taxes, costs, penalties and interest, in any district court of the first circuit, State of Hawaii, irrespective of the amount claimed. Execution may issue upon any judgment rendered in any such action which may be satisfied out of any real or personal property of the defendant.

(2)    By levy upon all property and rights to property (except such property as is exempt under subsection (b)(5) of this section) belonging to such taxpayer or on which there is a lien, as the director may deem sufficient to satisfy the payment of taxes due, penalties and interest if any, and the costs and expenses of the levy.

(b)    The following rules are applicable to the levy as provided in subsection (a)(2) of this section:

(1)    Seizure and Sale of Property. The term "levy" as used in this section includes the power of distraint and seizure by any means. A levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the director or director's representative may levy upon property or rights to property, they may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(2)    Successive Seizures. Whenever any property or right to property upon which levy has been made is not sufficient to satisfy the claim of the city for which levy is made, the director or director's representative may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from such person, together with all expenses, is fully paid.

(3)    Surrender of Property Subject to Levy.

PE 01882

REVISED ORDINANCES OF HONOLULU

   (A)   Requirement. Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the director or director's representative, surrender such property or rights (or discharge such obligation) to the director or director's representative, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

   (B)   Extent of Personal Liability. Any person who fails or refuses to surrender property or rights of property, subject to levy, upon demand by the director or director's representative, shall thereby subject such person individually and such person's estate to liability to the city in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the rate of 12 percent a year from the date of such levy. Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

   (C)   Penalty for Violation. In addition to the personal liability imposed by subparagraph (B) of this paragraph, if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under subparagraph (B) of this paragraph. No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

   (D)   Effect of Honoring Levy. Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the director or director's representative, surrenders such property or rights to property (or discharges such obligation) to the director or to the director's representative shall be discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment.

   (E)   Person Defined. The term "person," as used in subparagraph (A) of this paragraph, includes an officer or employee of a corporation or a member or employee of a partnership, or a member or employee of any other type of organization, who as such officer, employee or member is under a duty to surrender the property or rights to property, or to discharge the obligation.

(4)   Production of Books. If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the director or director's representative, exhibit such books or records to the director or such representative.

(5)   Property Exempt from Levy. Notwithstanding any other law of the city, no property or rights to property shall be exempt from levy other than the following:

   (A)   Wearing apparel and school books. Such items of wearing apparel and such school books as are necessary for the taxpayer or for members of the taxpayer's family.

   (B)   Fuel, provisions, furniture and personal effects. If the taxpayer is the head of a family, so much of the fuel, provisions, furniture and personal effects in the taxpayer's household and of the arms for personal use, livestock and poultry of the taxpayer, as does not exceed $500.00 in value.

   (C)   Books and tools of a trade, business or profession. So many of the books and tools necessary for the trade, business or profession of the taxpayer as do not exceed in the aggregate $250.00 in value.

   (D)   Unemployment benefits. Any amount payable to an individual with respect to such individual's unemployment (including any portion thereof payable with respect to dependents) under an unemployment compensation law of the United States or the state.

   (E)   Undelivered mail. Mail, addressed to any person, which has not been delivered to the addressee.

(6)   Sale of the Seized Property.

   (A)   Notice of Sale. The director shall take possession and keep the levied property until the sale. After taking possession, the director shall sell the taxpayer's interest in the property at public auction after first giving 20 days' public notice of the time and place of the sale by publication at least once in the newspaper, published in the district, or by posting the notice in at least three public places in the district where the sale is to be held.

   (B)   Assistance in Seizure and Sale. The director may require the assistance of any sheriff or authorized police officer of any county to aid in the seizure and sale of the levied property. The director may further retain the services of any person competent and qualified to aid in the sale of the levied property. Any sheriff or the person so retained by the director shall be paid a fair

PE 01883

REAL PROPERTY TAX

and reasonable fee but in no case shall the fee exceed 10 percent of the gross proceeds of the sale. Any person other than a sheriff so retained by the director to assist the director may be required to furnish bond in an amount to be determined by the director. The fees and the cost of the bond shall constitute a part of the costs and expenses of the levy.

(C)    Time and Place of Sale. The sale shall take place within 45 days after seizure; provided, that by public announcement at the sale, or at the time and place previously set for the sale, it may be extended for not more than two weeks. The sale shall, in any event, be completed within 60 days after seizure of the property unless consent of the delinquent taxpayer is obtained for further extension of the sale.

(D)    Manner and Conditions of Sale. Sufficient property shall be sold to pay all taxes, penalties, interest, costs and expenses. On payment of the price bid for any property sold, the delivery thereof with a bill of sale from the director shall vest the title of the property in the purchaser. No charge shall be made for the bill of sale. All surplus received upon any sale after the payment of the taxes, penalties, interest, costs and expenses, shall be returned to the owner of the property sold, and until claimed shall be deposited with the department, subject to the order of owner. Any unsold portion of the property seized may be left at the place of sale at the risk of the owner.

(E)    Redemption of Property. If the owner of the property seized desires to retain or regain possession thereof, such owner may give a sufficient bond with surety to produce the property at the time and place of sale, or pay all taxes, penalties, interest, costs and expenses.
(Added by Ord. 90-19)

PE 01884

REVISED ORDINANCES OF HONOLULU

## Article 6. Rate—Levy

**Sections:**
8-6.1  Tax base and rate.
8-6.2  Tax year—Time of levy and assessment.
8-6.3  Assessment of property—To whom in general.
8-6.4  Imposition of real property taxes on reclassification.
8-6.5  Assessment of property of corporations or copartnerships.
8-6.6  Fiduciaries—Liability.
8-6.7  Assessment of property of unknown owners.

**Sec. 8-6.1     Tax base and rate.**

Except as exempted by ordinance or as otherwise provided for, all real property shall be subject to a tax upon 100 percent of its fair market value determined in the manner provided by ordinance, at such rate as shall be determined in the manner provided in Section 8-11.1. No taxpayer shall be deemed aggrieved by an assessment, nor shall an assessment be lowered, except as the result of a decision on an appeal as provided by law. For the purpose of this section, an exemption listed and recognized under section 8-10.23 shall be deemed an exemption granted by ordinance. (Sec. 8-6.1, R.O. 1978 (1983 Ed.); Am. Ord. 92-38, 00-64, 00-65)

**Sec. 8-6.2     Tax year—Time of levy and assessment.**

For real property tax purposes, "tax year" means the fiscal year beginning July 1st of each calendar year and ending June 30th of the following calendar year. Real property shall be assessed as of October 1st preceding each tax year and taxes shall be levied thereon in the manner and at the time provided in this chapter. (Sec. 8-6.2, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 96-15)

**Sec. 8-6.3     Assessment of property—To whom in general.**

(a)     Real property shall be assessed in its entirety to the owner thereof, provided that where improved residential land has been leased for a term of 15 years or more, the real property shall be assessed in its entirety to the lessee or the lessee's successor in interest holding the land for such term under such lease and the lessee or successor in interest shall be deemed the owner of the real property in its entirety for the purpose of this chapter; provided, however, that the lease and any extension, renewal, assignment or agreement to assign the lease (1) shall have been duly entered into and recorded in the bureau of conveyances or filed in the office of the assistant registrar of the land court prior to October 1st preceding the tax year for which the assessment is made, and (2) shall provide that the lessee shall pay all taxes levied on the property during the term of the lease.

(b)     "Improved residential land" as used herein means land improved with a single-family dwelling on it.

(c)     For the purposes of this chapter, life tenants, personal representatives, trustees, guardians or other fiduciaries may be, and persons holding government property under an agreement for the conveyance of the same to such persons shall be considered as owners during the time any real property is held or controlled by them as such. Lessees holding under any government lease shall be considered as owners during the time any real property is held or controlled by them as such, as more fully provided in Section 8-10.17 and further, notwithstanding any provisions to the contrary in this chapter, any tenant occupying government land, whether such occupancy has continued for a period of one year or more, as more fully provided in Section 8-10.17. Persons holding any real property under an agreement to purchase the same, shall be considered as owners during the time the real property is held or controlled by them as such; provided the agreement to purchase (1) shall have been recorded in the bureau of conveyances, and (2) shall provide that the purchasers shall pay the real property taxes levied on the property. Persons holding any real property under a lease for a term to last during the lifetime of the lessee, shall be considered as owners during the time the real property is held or controlled by them as such; provided, that the lease (1) shall have been duly entered into and recorded in the bureau of conveyances or filed in the office of the assistant registrar of the land court prior to October 1st preceding the tax year for which the assessment is made, and (2) shall provide that the lessee shall pay all taxes levied on the property during the term of the lease.

(Sec. 8-6.3, R.O. 1978 (1983 Ed.); Am. Ord. 96-15)

**Sec. 8-6.4     Imposition of real property taxes on reclassification.**

(a)     A portion of real property taxes shall be imposed upon and paid by the owner or owners thereof when:

(1)     The property of the owner has been leased for a term of 15 years or more;

(2)     The classification of the property has been changed to a classification of a higher use during the life of the lease; and

PE 01885

REAL PROPERTY TAX

      (3)    The classification to a higher use has occurred without the lessee, who occupies the property, petitioning for such higher classification.

(b)    Taxes which are imposed upon the owners of property under this section shall be paid by the owner of such property without being transferred to the lessee who occupies the property and such tax shall be the difference between the assessed valuation of the property after the classification change times the applicable tax rate less the assessed valuation of the property as it existed prior to the classification change times the applicable tax rate.

(Sec. 8-6.4, R.O. 1978 (1983 Ed.))

## Sec. 8-6.5    Assessment of property of corporations or copartnerships.

Property of a corporation or copartnership shall be assessed to it under its corporate or firm name. (Sec. 8-6.5, R.O. 1978 (1983 Ed.))

## Sec. 8-6.6    Fiduciaries—Liability.

Every personal representative, trustee, guardian or other fiduciary shall be answerable as such for the performance of all such acts, matters or things as are required to be done by this chapter in respect to the assessment of the real property such person represents in such person's fiduciary capacity, and such person shall be liable as such fiduciary for the payment of taxes thereon up to the amount of the available property held by such person in such capacity, but such person shall not be personally liable. Such person may retain, out of the money or other property which such person may hold or which may come to such person in such person's fiduciary capacity, so much as may be necessary to pay the taxes or to recoup oneself for the payment thereof, or such person may recover the amount thereof paid by such person from the beneficiary to whom the property shall have been distributed. (Sec. 8-6.6, R.O. 1978 (1983 Ed.))

## Sec. 8-6.7    Assessment of property of unknown owners.

The taxable property of persons unknown, or some of whom are unknown, shall be assessed to "unknown owners," or to named persons and "unknown owners," as the case may be. The taxable property of persons not having record title on October 1st, preceding the tax year for which the assessment is made, may be assessed to "unknown owners," or to named persons and "unknown owners," as the case may be. Such property may be levied upon for unpaid taxes. (Sec. 8-6.7, R.O. 1978 (1983 Ed.); Am. Ord. 96-15)

PE 01886

REVISED ORDINANCES OF HONOLULU

## Article 7. Valuations

**Sections:**
    8-7.1   Valuation—Considerations in fixing.
    8-7.2   Water tanks.
    8-7.3   Dedicated lands.
    8-7.4   Golf course assessment.
    8-7.5   Certain lands dedicated for residential use.

**Sec. 8-7.1   Valuation—Considerations in fixing.**
(a)   The director of budget and fiscal services shall cause the fair market value of all taxable real property to be determined and annually assessed by the market data and cost approaches to value using appropriate systematic methods suitable for mass valuation of properties for taxation purposes, so selected and applied to obtain, as far as possible, uniform and equalized assessments throughout the county.
(b)   So far as practicable, records shall be compiled and kept which shall show the methods established by or under the authority of the director, for the determination of values.
(c)   (1)   Land shall be classified, upon consideration of its highest and best use, into the following general classes:
          (A)   Improved residential;
          (B)   Unimproved residential;
          (C)   Apartment;
          (D)   Hotel and resort;
          (E)   Commercial;
          (F)   Industrial;
          (G)   Agricultural;
          (H)   Preservation; and
          (I)   Public service.

     (2)   In assigning land to one of the general classes, the director shall give major consideration to the districting established by the city in its general plan and zoning ordinance, and such other factors which influence highest and best use.
          Notwithstanding the city's zoning district classification, the director shall assign to the agricultural class any land classified as tree farm property under HRS Chapter 186.
     (3)   When property is subdivided into condominium units, each unit and its appertaining common interest:
          (A)   Shall be classified upon consideration of the unit's actual use into one of the general classes in the same manner as land; and
          (B)   Shall be deemed a parcel and assessed separately from other units.
     (4)   "Improved residential" means land which is classified as residential by the director upon consideration of its highest and best use, and is property which fulfills the provisions of at least one of the following paragraphs:
          (A)   Land which has been subdivided prior to any assessment year as a lot for single- or two-family residential use in conformity with the then existing county zoning ordinances, and has been approved for sale or approved as being in conformity with all of the subdivision requirements of the city; or
          (B)   Land which is in actual single- or two-family residential use at a density of at least a single- or a two-family residential building per acre; or
          (C)   Land which is sufficiently developed with necessary land improvements to support a use density of at least a single- or two-family residential building per acre.
     (5)   "Unimproved residential" means all residential class lands not classified as "improved residential."
     (6)   Notwithstanding any provision contained in this subsection, all lands actually used by a public service company in its public service business shall be classified public service. For purposes of this subsection, a public service company is defined as a public utility, except airlines, motor carriers, common carriers by water, and contract carriers, where:
          (A)   "Public utility" means and includes every person who may own, control, operate, or manage as owner, lessee, trustee, receiver, or otherwise, whether under a franchise, charter, license, articles of association, or otherwise, any plant or equipment, or any part thereof, directly or indirectly for public use, for the transportation of passengers or freight, or the conveyance or transmission of telecommunications messages, or the furnishing of facilities for the transmission of intelligence by

PE 01887

REAL PROPERTY TAX

electricity by land or water or air within the state, or between points within the state, or for the production, conveyance, transmission, delivery, or furnishing of light, power, heat, cold, water, gas, or oil, or for the storage or warehousing of goods, or the disposal of sewage; provided that the term:

- (i)     Shall include any person insofar as that person owns or operates a private sewer company or sewer facility;
- (ii)    Shall include telecommunications carrier or telecommunications common carrier;
- (iii)   Shall not include any person insofar as that person owns or operates an aerial transportation enterprise;
- (iv)    Shall not include persons owning or operating taxicabs, as defined in this subsection;
- (v)     Shall not include common carriers transporting only freight on the public highways, unless operating within localities or along routes or between points that the public utilities commission of the State of Hawaii finds to be inadequately serviced without regulation under this chapter;
- (vi)    Shall not include persons engaged in the business of warehousing or storage unless the public utilities commission of the State of Hawaii finds that regulation thereof is necessary in the public interest;
- (vii)   Shall not include:
  - (aa)    The business of any carrier by water to the extent that the carrier enters into private contracts for towage, salvage, hauling, or carriage between points within the state and the carriage is not pursuant to either an established schedule or an undertaking to perform carriage services on behalf of the public generally; and
  - (bb)    The business of any carrier by water, substantially engaged in interstate or foreign commerce, transporting passengers on luxury cruises between points within the State or on luxury round-trip cruises returning to the point of departure;
- (viii)  Shall not include any person who:
  - (aa)    Controls, operates, or manages plants or facilities for the production, transmission, or furnishing of power primarily or entirely from nonfossil fuel sources; and
  - (bb)    Provides, sells, or transmits all of that power, except such power as is used in its own internal operations, directly to a public utility for transmission to the public;
- (ix)    Shall not include a telecommunications provider only to the extent determined by the public utilities commission of the State of Hawaii, pursuant to applicable state law.
- (x)     Shall not include any person who controls, operates, or manages plants or facilities developed pursuant to applicable state law for conveying, distributing, and transmitting water for irrigation and such other purposes that shall be held for public use and purpose; and
- (xi)    Shall not include any person who owns, controls, operates, or manages plants or facilities for the reclamation of wastewater; provided that:
  - (aa)    The services of the facility shall be provided pursuant to a service contract between the person and a state or county agency and at least 10 per cent of the wastewater processed is used directly by the state or county which has entered into the service contract;
  - (bb)    The primary function of the facility shall be the processing of secondary treated wastewater that has been produced by a municipal wastewater treatment facility that is owned by a state or county agency;
  - (cc)    The facility shall not make sales of water to residential customers;
  - (dd)    The facility may distribute and sell recycled or reclaimed water to entities not covered by a state or county service contract; provided that, in the absence of regulatory oversight and direct competition, the distribution and sale of recycled or reclaimed water shall be voluntary and its pricing fair and reasonable. For purposes of this subparagraph xi, "recycled water" and "reclaimed water" mean treated wastewater that by design is intended or used for a beneficial purpose; and
  - (ee)    The facility shall not be engaged, either directly or indirectly, in the processing of food wastes.
- (B)    "Motor carrier" means a common carrier or contract carrier transporting freight or other property on the public highways, other than a public utility or taxicab

PE 01888

REVISED ORDINANCES OF HONOLULU .

    (C)    "Contract carrier" means a person other than a public utility or taxicab which, under contracts or agreements, engages in the transportation of persons or property for compensation, by land, water, or air.

    (D)    "Carrier" means a person who engages in transportation, and does not include a person such as a freight forwarder or tour packager who provides transportation by contracting with others, except to the extent that such person oneself engages in transportation.

    (E)    "Taxicab" means and includes:

        (i)    Any motor vehicle used in the movement of passengers on the public highways under the following circumstances, namely, the passenger hires the vehicle on call or at a fixed stand, with or without baggage for transportation, and controls the vehicle to the passenger's destination; and

        (ii)    Any motor vehicle having seating accommodations for eight or less passengers used in the movement of passengers on the public highways between a terminal, i.e., a fixed stand, in the city of Honolulu, and a terminal in a geographical district outside the limits of the city of Honolulu, and vice versa, without picking up passengers other than at the terminals or fixed stands; provided that passengers may be unloaded at any point between terminals; and provided further that this definition relating to motor vehicles operating between terminals shall pertain only to those motor vehicles whose operators or owners were duly licensed under any applicable provision of law or ordinance and doing business between such terminals on January 1, 1957.

    (F)    "Telecommunications carrier" or "telecommunications common carrier" means any person that owns, operates, manages, or controls any facility used to furnish telecommunications services for profit to the public, or to classes of users as to be effectively available to the public, engaged in the provision of services, such as voice, data, image, graphics, and video services, that make use of all or part of their transmission facilities, switches, broadcast equipment, signalling, or control devices.

    (G)    "Telecommunications service" or "telecommunications" means the offering of transmission between or among points specified by a user, of information of the user's choosing, including voice, data, image, graphics, and video without change in the form or content of the information, as sent and received, by means of electromagnetic transmission, or other similarly capable means of transmission, with or without benefit of any closed transmission medium, and does not include cable service as defined under applicable state law.

(d)    Whenever land has been divided into lots or parcels as provided by law, each such lot or parcel shall be separately assessed.

(e)    When a parcel of land which has been classified as agricultural is improved with a single-family dwelling and has qualified for a home exemption for the tax year, that portion of the parcel which is used for residential purposes shall be classified as improved residential. This classification shall:

    (1)    Apply only to that portion used for residential purposes;

    (2)    Not exceed 5,000 square feet of land and the buildings and improvements on that land; and

    (3)    Remain in effect only so long as the property qualifies for a home exemption.

(f)    When a parcel of land which has been classified as preservation is improved with a single-family dwelling and has qualified for a home exemption for the tax year, that portion of the parcel which is used for residential purposes shall be classified as improved residential. This classification shall:

    (1)    Apply only to that portion used for residential purposes;

    (2)    Not exceed 5,000 square feet of land and the buildings and improvements on that land; and

    (3)    Remain in effect only so long as the property qualifies for a home exemption.

(g)    (1)    In determining the value of buildings, consideration shall be given to any additions, alterations, remodeling, modifications or other new construction, improvement or repair work undertaken upon or made to existing buildings as the same may result in a higher assessable valuation of said buildings; provided, however, that any increase in value resulting from any additions, alterations, modifications or other new construction, improvement or repair work to buildings undertaken or made by the owner-occupant thereof pursuant to the requirements of any urban redevelopment, rehabilitation or conservation project under the provisions of Part II of HRS Chapter 53, shall not increase the assessable valuation of any building for a period of seven years from the date of certification as hereinafter provided.

        (2)    It is further provided that the owner-occupant shall file with the director, in the manner and place which the director may designate, a statement of the details of the improvements certified in the following manner:

        (A)    In the case of additions, alterations, modifications or other new construction, improvement or repair work to a building that are undertaken pursuant to any urban redevelopment,

PE 01889

REAL PROPERTY TAX

rehabilitation or conservation project as hereinabove mentioned, the statement shall be certified by the mayor or any governmental official designated by the mayor and approved by the council, that the additions, alterations, modifications, or other new construction, improvement or repair work to the buildings were made and satisfactorily comply with the particular urban development, rehabilitation or conservation act provision; or

(B)    In the case of maintenance or repairs to a residential building undertaken pursuant to any health, safety, sanitation or other governmental code provision, the statement shall be certified by the mayor or any governmental official designated by the mayor and approved by the council, that (i) the building was inspected by them and found to be substandard when the owner-occupant made the claim, and (ii) the maintenance or repairs to the buildings were made and satisfactorily comply with the particular code provision.

(h)    Notwithstanding the provisions of subsection (c)(2), properties operating as transient vacation units in accordance with Section 21-4.110-1, and which have a valid nonconforming use certificate, shall be classified based on their underlying zoning.

(Sec. 8-7.1, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 84-98, 91-84, 92-63, 94-08, 94-79, 00-66, 02-39, 02-45)

### Sec. 8-7.2    Water tanks.

Any provision to the contrary notwithstanding, any tank or other storage receptacle required by any government agency to be constructed or installed on any taxable real property before water for home and farm use is supplied, and any other water tank, owned and used by a real property taxpayer for storing water solely for the taxpayer's own domestic use, shall be exempted in determining and assessing the value of such taxable real property. (Sec. 8-7.2, R.O. 1978 (1983 Ed.))

### Sec. 8-7.3    Dedication of Lands for Agricultural Use.

(a)    Lands that have been dedicated by the property owner for a period of 1 year, 5 years, or 10 years for a specific agricultural use shall be classified and assessed for real property tax purposes at a percentage of the land's fair market value as established in subdivision (2) and be subject to the following:

(1)    The land dedicated must be substantially and continuously used for the business of raising and producing agricultural products in their natural state.

(2)    Dedicated land shall be assessed as follows:

(A)    For land dedicated for a period of 1 year, the land shall be assessed at 10 percent of its fair market value.

(B)    For land dedicated for a period of 5 years, the land shall be assessed at 5 percent of its fair market value.

(C)    For land dedicated for a period of 10 years, the land shall be assessed at 1 percent of its fair market value.

(D)    That portion of dedicated land that is not used for a specific agricultural use shall be assessed at 100 percent of its fair market value.

(3)    The land dedicated shall be substantially and continuously in a use specified under subdivision (1) for the duration of the dedication period.

(b)    If any owner desires to dedicate said person's land for a specific agricultural use and to have the owner's land assessed for real property tax purposes at the applicable percentage of the land's fair market value, the owner shall so petition the director and declare in the owner's petition that if the owner's petition is approved the owner will use the owner's land for this specific agricultural purpose. The petition shall be accompanied by an agricultural plan which may include:

(1)    A description of the specific agricultural use;

(2)    A tax map identification of the owner's land;

(3)    A description of the total acreage of the land;

(4)    A description of the acreage to be utilized for the specific agricultural use;

(5)    A timetable for implementation of the plan; and

(6)    A copy of a valid State of Hawaii general excise tax license.

The director shall prescribe the form of the agricultural plan.

(c)    Upon receipt of a petition as provided in subsection (b), the director shall make a finding of fact as to whether the land in the petition area is reasonably well suited for the designated specific agricultural use. The finding shall include and be based upon the productivity ratings of the land in those uses for which it is best suited, a study of the ownership, size of operating unit, the present use of surrounding similar lands and other criteria as may be appropriate. The director shall also make a finding of fact as to whether the designated specific agricultural use conforms to the development plan for the area. The director shall also make a finding of fact as to the economic feasibility of the designated specific agricultural use of the land. If all three findings are favorable, the director shall approve the petition and declare the land to be dedicated for the designated

PE 01890

REVISED ORDINANCES OF HONOLULU

specific agricultural use. For 5 and 10 year dedications, in order to place prospective buyers on notice of the dedication, the petitioner shall within 30 days of notice of approval record the dedication in accordance with the procedures of the bureau of conveyances and/or the land court, as is appropriate. Upon the expiration of the dedication and receipt of the notice of cancellation from the director, the owner shall record the notice of cancellation with the bureau of conveyances and/or the land court, as is appropriate.

(d)   The approval by the director of the petition to dedicate shall constitute a forfeiture on the part of the owner of any right to change the use of the owner's land to a use other than agriculture for a minimum period of 1 year, 5 years, or 10 years, as the case may be.

(e)   The director shall prescribe the form of the petition. The petition shall be filed with the director by September 1st of any calendar year and shall be approved or disapproved by October 31. If approved, the assessment based upon the use requested in the dedication shall be effective on July 1st of the following tax year.

(f)   The owner may appeal any disapproved petition as in the case of an appeal from assessment.

(g)   The owner of any parcel of land dedicated for a specific agricultural use shall, annually, no later than September 1st following each tax year of the dedication, submit a report to the director which may include but not be limited to:

(1)   An updated description of the agricultural use of the land during the immediately preceding and current tax years;

(2)   A copy of all state general excise tax returns for the immediately preceding tax year concerning activities conducted on the parcel of land dedicated for a specific agricultural use;

(3)   A description of the acreage and percentage of the area of the parcel of land utilized for the specified agricultural use during the immediately preceding and current tax years; and

(4)   A declaration, if applicable, that the owner will keep the land in substantial and continuous agricultural use through the remaining period of the dedication.

Any part of the report containing confidential commercial or financial information, including income statements or tax statements, shall be clearly labelled by the owner as such and shall not be open to inspection by the public.

The director shall prescribe the form of the report. The report may be rejected by the director in the event the report is incomplete or contains erroneous or incorrect information. The report shall be accepted or rejected by the director by October 31 of the year in which it is submitted.

(h)   If land dedicated for agricultural use undergoes a change in land use classification which is not a result of a petition by any property owner or lessee such that the owner's land which was initially classified in the agricultural or preservation zoning district is placed within a zoning district other than agricultural or preservation, the dedication shall continue unless the owner files a written notice of cancellation with the director within 60 days of the change. Such cancellation shall be effective on the next July 1st which is at least nine months after the filing.

(i)   In the event that a dedication is cancelled or expires, the director shall execute and record an expiration or cancellation of the dedication. Any required fees and charges associated with the recordation shall be charged to the property owner.

(j)   In the event the director, upon inspection, finds that dedicated agricultural land is not in substantial and continuous agricultural use, that the property owner failed to file the required report in a timely manner, or that the required report must be rejected, the owner shall be notified of the finding and the owner shall have 60 days to address the finding. In the event the owner fails to satisfactorily address the finding, the dedication shall be canceled and the property owner shall be subject to a rollback tax and penalty. The roll-back tax shall be the difference between the taxes owed for the land at 100 percent of the land's assessed value at the fair market value and the taxes actually imposed on the land, retroactive to the date of the dedication. The penalty shall be 10 percent of the roll-back tax per annum. The roll-back tax and penalty shall be a paramount lien upon the property.

(k)   The owner may appeal any rejection of the report, cancellation of the dedication, or imposition of a rollback tax and penalty in the same manner as an appeal from an assessment.

(l)   Notwithstanding any provision in this section to the contrary, the occurrence of any of the following events shall cause the dedication to be canceled without the imposition of any roll-back taxes or penalties whatsoever.

(1)   The death of any owner; or

(2)   Events beyond the owner's control make it unfeasible to continue the agricultural use of the dedicated property, including, but not limited to:

(A)   A serious or debilitating long-term illness or injury suffered by the owner;

(B)   A natural disaster such as a windstorm, flood, disease, or infestation that destroys the crop or livestock on the dedicated parcel; or

PE 01891

REAL PROPERTY TAX

    (C)    The taking of the dedicated parcel or any portion thereof by a governmental entity, provided that where only a portion of the parcel is taken, the cancellation shall be effective only as to the portion taken.

(m)    Notwithstanding any provisions in this section to the contrary, for 5 and 10 year dedications, the director may grant an owner a grace period which may be granted subject to the following conditions:

    (1)    A grace period may be granted only if one of the following events occurs:

        (A)    A bank or other lending institution acquires possession of a property as a result of a default of a mortgage on the property; or

        (B)    The agricultural use of a dedicated parcel is terminated because a lessee has abandoned or terminated a lease prior to the end of the term of the lease, the owner of the parcel has not found another lessee, and the lease has a term of five years or longer.

    (2)    During the grace period, the owner is not required to use the land for the business of raising and producing agricultural products.

    (3)    At the end of the grace period, the owner shall use the land for the business of raising and producing agricultural products for the entire remaining period of the owner's dedication. The grace period shall not be counted in determining the owner's compliance with the dedication.

    (4)    The grace period shall not exceed two years.

    (5)    During the grace period, the land shall be assessed at 100% of market value.

    (6)    No grace period shall be granted for a parcel of land within 5 years following the expiration of a previous grace period.

(n)    As used in this section:

"Agricultural products" include floricultural, horticultural, viticultural, aquacultural, forestry, nut, coffee, dairy, livestock, poultry, bee, animal, tree farm, animals raised by grazing and pasturing, and any other farm, agronomic, or plantation products.

"Owner" includes a lessee of real property whose lease term extends at least through the time period of the dedication from the date of the petition.

"Substantial and continuous agricultural use" means no less than 75 percent of the area of the dedicated land is in active, continuous and revenue-generating agricultural use throughout the subject time period. For lands dedicated for a period of 5 years or 10 years, substantial and continuous agricultural use shall include necessary and customary fallowing periods.

"Tree farm property" and "tree farm" mean land classified as tree farm property under HRS Chapter 186.

(Sec. 8-7.3, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 84-98, 92-94, 94-79, 96-15, 02-39)

## Sec. 8-7.4    Lands dedicated for golf course use.

(a)    The following definitions shall apply for purposes of this section.

"Cost of development" means the actual or estimated costs to improve the land into an operating golf course.

"Golf course" means property that has been developed for the sport of golf, including its related and incidental activities.

"Golf course use" means the actual use of property for the sport of golf and its related and incidental activities.

"Owner" means a fee owner or any lessee of real property whose lease term extends at least ten years effective from the date of the petition. Such lease must be duly entered into and recorded at the Bureau of Conveyances or filed in the Office of the Assistant Registrar of the Land Court, on or before the date of the petition.

"Rental income" means land rent based on golf course use.

"Rollback tax" means the difference between the amount of taxes that a dedicated golf course owner paid and the higher amount of taxes, if any, that would have been due from the owner if the golf course had not been dedicated under this section.

"Sale Price" means the sale price of a property operated and used as a golf course and land acquired for golf course use.

(b)    In order to qualify in having land assessed in valuation as a golf course, the owner of any parcel of land desiring to use or presently using such person's land for a golf course shall as a condition precedent qualify as follows:

    (1)    Dedication of Land.

        (A)    The owner of any parcel of land for a golf course shall petition the director and declare in the owner's petition that the owner will dedicate the owner's parcel of land for golf course use.

        (B)    The approval by the director of the petition to dedicate the land shall constitute a forfeiture on the part of the owner of any right to change the use of the land for a minimum period of 10 years, automatically renewable indefinitely, subject to cancellation by either the owner or the director upon five years' notice at any time.

PE 01892

(C)   The failure of the owner to observe the restrictions on the use of the land as a golf course shall cancel the land assessment based on golf course use retroactive to the date of the dedication but not more than 10 years prior to the tax year in which the dedication is canceled; and all differences in the amount of taxes that were paid and those that would have been due from assessment in the higher use shall be payable with a six percent a year penalty from the respective dates that these payments would have been due. Failure to observe the restrictions on the use means failure for a period of over 12 consecutive months to use the land in that manner requested in the petition as a golf course by the overt act of changing the use for any period. Nothing in this paragraph shall preclude the county from pursuing any other remedy to enforce the covenant on the use of that land as a golf course.

(D)   The director shall prescribe the form of the petition. The petition shall be filed by September 1st of any calendar year and shall be approved or disapproved by October 31st of such year. If approved, the assessment based upon the use requested in the dedication shall be effective on October 1st of the same calendar year.

(E)   The owner may appeal any disapproved petition as in the case of an appeal from an assessment.

(F)   When the owner has failed to observe the dedication restriction on golf course use, and at which time the dedication is canceled, the amount of additional taxes due and owing shall attach to the property as a paramount lien in favor of the county.

(c)   Dedicated property operated and used as a golf course shall be valued and assessed for property tax purposes on the following basis:
(1)   The value to be assessed by the director shall be on the basis of its actual use as a golf course rather than on the valuation based on the highest and best use of the land.
(2)   In determining the value of actual use, the factors to be considered shall include, among others, rental income, cost of development, and sale price.

(d)   Covenant Not to Engage in Discrimination. The owner shall covenant in the owner's petition with the director of finance that the owner will not discriminate against any individual in the use of the golf course facilities because of the individual's race, sex, religion, color or ancestry.

(Secs. 8-7.4, 8-7.5, R.O. 1978 (1983 Ed.); Sec. 8-7.4, R.O. 1987 Supp.; Am. Ord. 96-15, 00-64)

**Sec. 8-7.5   Certain lands dedicated for residential use.**

(a)   The term "owner" as used in this section means a person who is the fee simple owner of real property, or who is the lessee of real property whose lease term extends at least 10 years from the date of the petition.

(b)   A special land reserve is established to enable the owner of any parcel of land within a hotel, apartment, resort, commercial or industrial district to dedicate such person's land for residential use and to have such person's land assessed at its value in residential use; provided, that (1) the land dedicated shall be limited to a parcel used only for single family dwelling residential use; (2) the owner of the land dedicated shall use it as the owner's home; and (3) not more than one parcel of land shall be dedicated for residential use by any owner.

(c)   (1)   If any owner desires to use such person's land for residential use and to have such person's land assessed at its value in this use, the owner shall so petition the director of finance and declare in such person's petition that if such person's petition is approved, the owner will use such person's land for single family dwelling residential use only and that such person's land so dedicated will be used as such person's home.
(2)   Upon receipt of any such petition, the director of finance shall make a finding of fact as to whether the land described in the petition is being used by the owner for single-family dwelling residential use only and as the owner's home. If the finding is favorable to the owner, the director of finance shall approve the petition and declare the land to be dedicated.

(d)   The approval of the petition by the director of finance to dedicate shall constitute a forfeiture on the part of the owner of any right to change the use of such person's land for a minimum period of 10 years, automatically renewable thereafter for additional periods of 10 years subject to cancellation by either the owner or the director of finance.

(e)   (1)   Failure of the owner to observe the restrictions on the use of such person's land or the sale of the property shall cancel the special tax assessment privilege retroactive to the date of the dedication, or the latest renewal-10-year period, and all differences in the amount of taxes that were paid and those that would have been due from assessment in the higher use shall be payable with a 10 percent per year penalty from the respective dates that these payments would have been due. Failure to observe the restrictions on the use means failure for a period of over 12 consecutive months to use the land in the manner requested in the petition or the overt act of changing the use for any period, or the sale of

PE 01893

REAL PROPERTY TAX

the real property. Nothing in this subsection shall preclude the county from pursuing any other remedy to enforce the covenant on the use of the land.

   (2)    The additional taxes and penalties, due and owing as a result of failure to use or any other breach of the dedication shall be a paramount lien upon the property as provided for by this chapter.

(f)    The director of finance shall prescribe the form of the petition. The petition shall be filed with the director of finance by September 1st of any calendar year and shall be approved or disapproved by October 31st of that calendar year. If the petition is approved, the assessment based upon the use requested in the dedication shall be effective on October 1st of the same calendar year.

(g)    The owner may appeal any disapproved petition as in the case of an appeal from an assessment.

(Sec. 8-7.6, R.O. 1978 (1983 Ed.); Sec. 8-7.5, R.O. 1987 Supp.; Am. Ord. 96-15)

PE 01894

REVISED ORDINANCES OF HONOLULU

## Article 8. Wasteland Development

Sections:
8-8.1   Definitions.
8-8.2   Eligibility.
8-8.3   Application.
8-8.4   Classification.
8-8.5   Development and maintenance of wasteland development property.
8-8.6   Special tax assessment.
8-8.7   Declassification.
8-8.8   Appeals.

**Sec. 8-8.1   Definitions.**
When used in this article:
"Department" means the department of finance.
"Director" means the director of the department of finance.
The term "owner" includes any person leasing the real property of another under a lease having a stated term of not less than 30 years.
"Wasteland" means land which is classified as such by the director of the department of finance. (Sec. 8-8.1, R.O. 1978 (1983 Ed.))

**Sec. 8-8.2   Eligibility.**
Any property of not less than 25 acres in area is eligible for classification as wasteland development property if it meets the classification requirements of wasteland property as established by the director of finance. No real property under a lease having an unexpired term of less than 30 years shall be eligible for classification as wasteland development property. (Sec. 8-8.2, R.O. 1978 (1983 Ed.))

**Sec. 8-8.3   Application.**
The owner of any property may apply to the director of finance for classification of the owner's land as wasteland development property. The application shall include a description of the property, the manner in which the property will be developed, and such additional information as may be required by the director. The application shall state that all persons having any interest in or holding any encumbrance upon the property have joined in making the application and that all of them will comply with the laws and regulations relating to the use, building requirements, and development of real property. (Sec. 8-8.3, R.O. 1978 (1983 Ed.))

**Sec. 8-8.4   Classification.**
(a)   Within four months after the filing of the application with the director of finance, the director shall make a finding of fact as to the eligibility of such land for classification as wasteland development property, whether it can be developed in the manner specified by the owner,  whether the development will add to the development of the economy of the state, and whether the development will broaden the tax base of the state. The determination shall be based upon all available information on soils, climate, land use trends, watershed values, present use of surrounding similar lands, and other criteria as may be appropriate.
(b)   Upon the finding by the director that the property is eligible for classification as wasteland development property, that it can be developed in the manner specified by the owner, that the development will add to the economy of the state, and that it will broaden the tax base of the state, the property shall be classified as wasteland development property. If the director finds it otherwise for any one of the above criteria, the application shall be disapproved.
(c)   The applicant may appeal any disapproved application as in the case of an appeal from an assessment.
(d)   Land classified as wasteland development property shall be administered by the department of finance and the department may from time to time make rules and regulations for their administration pursuant to HRS Chapter 91.
(Sec. 8-8.4, R.O. 1978 (1983 Ed.))

**Sec. 8-8.5   Development and maintenance of wasteland development property.**
Within one year following the approval of the application, the owner shall develop that portion of the owner's land as specified in the owner's application and as approved by the director of finance. Additional areas shall be developed each year as prescribed by the director. (Sec. 8-8.5, R.O. 1978 (1983 Ed.))

PE 01895

REAL PROPERTY TAX

**Sec. 8-8.6    Special tax assessment.**

Any property classified as wasteland development property by the director of finance shall be, for a period of five years, assessed for real property tax purposes at its value as wasteland. The five-year period shall commence from July 1st of the tax year following the approval of the application. (Sec. 8-8.6, R.O. 1978 (1987 Supp. to 1983 Ed.))

**Sec. 8-8.7    Declassification.**

Thirty days after notification to the owner by the department of finance for noncompliance of any law, ordinance, rule or regulation, the director of finance may declassify any land classified as wasteland development property. The department shall notify the owner of the declassification and in that event, the director shall cancel the special tax assessment provided in Section 8-8.6 retroactive to the date that the property qualified for special tax assessment and the difference between the real property taxes that would have become due and payable but for such classification for all the years the land was classified as wasteland development property and the real property taxes paid by the owner during such period shall become immediately due and payable together with a five percent a year penalty from the respective dates that such additional tax would otherwise have been due. (Sec. 8-8.7, R.O. 1978 (1983 Ed.))

**Sec. 8-8.8    Appeals.**

Any person aggrieved by the additional assessment for any year may appeal from such assessment in the manner provided in the case of real property tax appeals. (Sec. 8-8.8, R.O. 1978 (1983 Ed.))

PE 01896

REVISED ORDINANCES OF HONOLULU

## Article 9. Nontaxable Property—Assessment

**Sections:**
    8-9.1   Nontaxable property.

**Sec. 8-9.1    Nontaxable property.**
(a)    For purposes of accountability, the director of budget and fiscal services shall prepare a notice of property assessment for each parcel of nontaxable real property within the city.
(b)    The notice shall contain the valuation of the real property and an exemption in the full amount of the valuation.
(Sec. 8-9.1, R.O. 1978 (1983 Ed.); Am. Ord. 92-124, 02-45)

PE 01897