REAL PROPERTY TAX

## Article 10. Exemptions

Sections:
8-10.1     Claims for certain exemptions.
8-10.2       Rules and regulations.
8-10.3       Reserved.
8-10.4       Homes.
8-10.5       Home, lease, lessees defined.
8-10.6       Exemption--Homes of totally disabled veterans.
8-10.7       Exemption--Persons affected with leprosy.
8-10.8       Exemption--Persons with impaired sight or hearing and persons totally disabled.
8-10.9       Exemption--Nonprofit medical, hospital indemnity association.
8-10.10    Exemption--Charitable purposes.
8-10.11    Exemption--Property used in manufacture of pulp and paper.
8-10.12    Exemption--Crop shelters.
8-10.13    Exemption--Dedicated lands in urban districts.
8-10.14    Exemption--Air pollution control facility.
8-10.15    Exemption--Alternate energy improvements.
8-10.16    Exemption--Fixtures used in manufacturing or producing tangible personal products.
8-10.17    Exemption--Public property.
8-10.18    Lessees of exempt real property.
8-10.19    Property of the United States leased under the National Housing Act.
8-10.20    Exemption--Low-income rental housing.
8-10.21    Claim for exemption.
8-10.22    Exemption--Historic residential real property dedicated for preservation.
8-10.23    Other exemptions.
8-10.24    Exemption--Credit union.
8-10.25    Exemption--Slaughterhouses.
8-10.26    Exemption—Qualifying construction work.
8-10.27    Exemption—Public service.
8-10.28    Additional terms and conditions for exemption of low-income rental housing projects on Hawaiian home lands.

**Sec. 8-10.1    Claims for certain exemptions.**
(a)   None of the exemptions from taxation granted in Sections 8-10.4, 8-10.6 through 8-10.11, and 8-10.27 shall be allowed in any case, unless the claimant shall have filed with the department of budget and fiscal services on or before September 30th preceding the tax year for which such exemption is claimed, a claim for exemption in such form as shall be prescribed by the department.
(b)   A claim for exemption, once allowed, shall have continuing effect until:
(1)     The exemption is disallowed;
(2)     The assessor voids the claim after first giving notice (either to the claimant or to all claimants in the manner provided for by this chapter) that the claim or claims on file will be voided on a certain date, not less than 30 days after such notice;
(3)     The five-year period for exemption, as allowed in Section 8-10.11, expires; or
(4)     The report required by subsection (d) is made.
(c)   A claimant may file a claim for exemption even though there is on file and in effect a claim covering the same premises, or a claim previously filed and disallowed or otherwise voided. However, no such claim shall be filed if it is identical with one already on file and having continuing effect. The report required by subsection (d) of this section may be accompanied by or combined with a new claim.
(d)   The owner of any property which has been allowed an exemption under Sections 8-10.4, 8-10.6 through 8-10.11, 8-10.24, or 8-10.27 has a duty to report to the assessor within 30 days after such owner or property ceases to qualify for such an exemption for, among others, the following reasons:
(1)     The ownership of the property has changed;
(2)     A change in the facts previously reported has occurred concerning the occupation, use or renting of the premises, buildings or other improvements thereon; or
(3)     A change in status has occurred which affects the owner's exemption.

PE 01898

REVISED ORDINANCES OF HONOLULU

Such report shall have the effect of voiding the claim for exemption previously filed, as provided in subsection (b)(4) of this section. The report shall be sufficient if it identifies the property involved, states the change in facts or status, and requests that the claim for exemption previously filed be voided.

In the event the property comes into the hands of a fiduciary who is answerable as provided for by this chapter, the fiduciary shall make the report required by this subsection within 30 days after the assumption of the fiduciary's duties or within the time otherwise required, whichever is later.

A penalty shall be imposed for the failure to make the report required by this subsection. The amount of the penalty shall be the lesser of: (A) $200.00 for each year that the change in facts remains unreported; or (B) the amount of the taxes due for the property computed without the claim for exemption as of October 1st immediately preceding the tax year in which the report was due. In addition to this penalty, the taxes due on the property plus any additional penalties and interest thereon shall be a paramount lien on the property as provided for by this chapter.

(e)   If the assessor is of the view that, for any tax year, the exemption should not be allowed, in whole or in part, the assessor may at any time within five years of October 1st of that year disallow the exemption for that year, in whole or in part, and may add to the assessment list for that year the amount of value involved, in the manner provided for by this chapter for the assessment of omitted property.

(Sec. 8-10.1, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 88-01, 89-129, 95-67, 96-15, 01-60)

**Sec. 8-10.2   Rules and regulations.**

The director of finance may promulgate rules and regulations as may be necessary to administer Sections 8-10.4 to 8-10.17. (Sec. 8-10.2, R.O. 1978 (1983 Ed.))

**(Sec. 8-10.3   Assignment of partial exemptions. Repealed by Ord. 02-45.)**

**Sec. 8-10.4   Homes.**

(a)   Real property owned and occupied only as the owner's principal home as of the date of assessment by an individual or individuals, shall be exempt only to the following extent from property taxes:

    (1)   Totally exempt where the value of a property is not in excess of $40,000.00;
    (2)   Where the value of the property is in excess of $40,000.00, the exemption shall be the amount of $40,000.00.
          Provided:
          (A)   That no such exemption shall be allowed to any corporation, copartnership or company;
          (B)   That the exemption shall not be allowed on more than one home for any one taxpayer;
          (C)   That where the taxpayer has acquired the taxpayer's home by a deed made on or after July 1, 1951, the deed shall have been recorded on or before September 30th immediately preceding the year for which the exemption is claimed;
          (D)   That a husband and wife shall not be permitted exemption of separate homes owned by each of them, unless they are living separate and apart, in which case they shall be entitled to one exemption, to be apportioned between each of their respective homes in proportion to the value thereof; and
          (E)   That a person living on premises, a portion of which is used for commercial purposes, shall not be entitled to an exemption with respect to such portion, but shall be entitled to an exemption with respect to the portion thereof used exclusively as a home.

          For the purposes of this section, "real property owned and occupied only as the owner's principal home" means occupancy of a home in the city with the intent to reside in the city.  Intent to reside in the city may be evidenced by, but not limited to, the following indicia:  occupancy of a home in the city for more than 270 calendar days of a calendar year; registering to vote in the city; being stationed in the city under military orders of the United States; and filing of an income tax return as a resident of the State of Hawaii, with a reported address in the city.  The director may demand documentation of the above or other indicia of intent to reside in the city from a property owner applying for an exemption or from an owner as evidence of continued qualification for an exemption.  Failure to respond to the director's request shall be grounds for denying a claim for an exemption or disallowing an existing exemption.

          In the event the director receives satisfactory evidence that an individual occupies a home outside the city and there is documented evidence of the individual's intent to reside outside the city, that individual shall not be qualified for an exemption or continued exemption under this section, as the case may be.

(b)   The use of a portion of any building or structure for the purpose of drying coffee and the use of a portion of real property, including structures, in connection with the planting and growing for commercial purposes, or

PE 01899

REAL PROPERTY TAX

the packing and processing for such purposes, of flowers, plants, or foliage, shall not affect the exemptions provided for by this section.

(c) Where two or more individuals jointly, by the entirety, or in common own or lease land on which their homes are located, each home, if otherwise qualified for the exemption granted by this section, shall receive the exemption. If a portion of land held jointly, by the entirety, or in common by two or more individuals is not qualified to receive an exemption, such disqualification shall not affect the eligibility for an exemption or exemptions of the remaining portion.

(d) A taxpayer who is 55 years of age or over on or before June 30th preceding the tax year for which the exemption is claimed and who qualifies under subsection (a) of this section shall be entitled to one of the following multiples of home exemption:

| Age of Taxpayer | Multiple to be Used in Computing Home Exemption Amount |
|---|---|
| 55 years of age or over but not 60 years of age or over | 1.5 |
| 60 years of age or over but not 65 years of age or over | 2.0 |
| 65 years of age or over but not 70 years of age or over | 2.5 |
| 70 years of age or over | 3.0 |

For the purpose of this subsection, a husband and wife who own property jointly, by the entirety, or in common, on which a home exemption under the provisions of subsection (a) of this section has been granted shall be entitled to the applicable multiple of home exemption set forth above when at least one of the spouses qualifies each year for the applicable multiple of home exemption.
(Sec. 8-10.4, R.O. 1978 (1983 Ed.); Am. Ord. 88-84, 89-132, 94-76, 96-15)

**Sec. 8-10.5 Home, lease, lessees defined.**
(a) For the purpose of Section 8-10.4, the word "home" includes:
  (1) The entire homestead when it is occupied by the taxpayer as such;
  (2) A residential building on land held by the lessee or the lessee's successor in interest under a lease for a term of five years or more for residential purposes and owned and used as a residence by the lessee or the lessee's successor in interest, where the lease and any extension, renewal, assignment or agreement to assign the lease, have been duly entered into and recorded prior to October 1st preceding the tax year for which the exemption is claimed, and whereby the lessee agrees to pay all taxes during the term of the lease;
  (3) A condominium unit, with its appertaining common interest, which is occupied as a residence by the owner of the unit. The "owner of a condominium unit" means the individual:
     (A) Owning the fee simple interest in the unit and its appertaining common interest; or
     (B) Holding the leasehold interest in the unit and its appertaining common interest under a lease:
        (i) For a term of five years or more for residential purposes;
        (ii) Duly entered into and recorded prior to October 1st preceding the tax year for which the exemption is claimed; and
        (iii) Requiring the holder of the leasehold interest to pay all real property taxes during the term of the lease.
  (4) An apartment which is a living unit (held under a proprietary lease by the tenant thereof) in a multi-unit residential building on land held by a cooperative apartment corporation (of which the proprietary lessee of such living unit is a stockholder) under a lease for a term of five years or more for residential purposes and which apartment is used as a residence by the lessee-stockholder, where the lease and any extension or renewal have been duly entered into and recorded prior to October 1st preceding the tax year for which the exemption is claimed, and whereby the lessee-stockholder agrees to pay all taxes during the term of the lease provided that:

PE 01900

REVISED ORDINANCES OF HONOLULU

(A)    The exemption shall not be allowed in respect to any cooperative apartment unit where the owner of the cooperative apartment unit claims exemption on a home or other cooperative apartment unit; and

(B)    The owner or owners of a cooperative apartment building or premises shall not be permitted exemptions where a husband and wife owner of a cooperative apartment unit own separate cooperative apartment units or separate homes owned by each of them, unless they are living separate and apart, in which case the owner of the cooperative apartment or premises shall be entitled to one-half of one exemption;

(5)    An apartment in a multi-unit apartment building which is occupied by the owner of the entire apartment building as such person's residence, provided that:

(A)    The exemption shall not be allowed in respect to any apartment owner who claims any other home exemption; and

(B)    A husband or wife owner of the aforementioned type of apartment shall not be allowed a full exemption where the husband and wife are living separate and apart and each is maintaining an apartment or home entitled to an exemption, in which case they shall be entitled to one exemption to be apportioned between each of their respective homes in proportion to the value thereof;

(6)    That portion of a residential duplex and that portion of land appurtenant to the duplex which are occupied by the owner of the duplex and land as the owner's residence, provided that:

(A)    The exemption shall not be allowed in respect to any duplex owner who claims any other home exemption;

(B)    The portion of the appurtenant land shall not be exempt unless owned in fee by the duplex owner; and

(C)    A husband or wife owner of the duplex shall not be allowed a full exemption where the husband and wife are living separate and apart and each is maintaining a duplex or home entitled to an exemption, in which case they shall be entitled to one exemption to be apportioned between each of their respective homes in proportion to the value thereof;

(7)    Premises held under an agreement to purchase the same for a home, where the agreement has been duly entered into and recorded prior to October 1st preceding the tax year for which the exemption is claimed, whereby the purchaser agrees to pay all taxes while purchasing the premises; and

(8)    An apartment which is a living unit (held under a lease by the tenant thereof) in a multi-unit residential building used for retirement purposes under a lease for a term to last during the lifetime of the lessee and the lessee's surviving spouse and which apartment is used as a residence by the lessee and the lessee's surviving spouse, and where the apartment unit reverts back to the lessor upon the death of the lessee and the lessee's surviving spouse, and where the lease has been duly entered into and recorded prior to October 1st preceding the tax year for which the exemption is claimed, and whereby the lessee agrees to pay all taxes during the term of the lease.

(b)    The subletting by the taxpayer of not more than one room to a tenant shall not affect the exemption provided for by Section 8-10.4.

(c)    As used in Section 8-10.4, in the first paragraph of Section 8-6.3 and in Section 8-10.1, the word "lease" shall be deemed to include a sublease, and the word "lessee" shall be deemed to include a sublessee.

(Sec. 8-10.5, R.O. 1978 (1983 Ed.); Am. Ord. 92-63; Am. Ord. 96-15)

**Sec. 8-10.6    Exemption—Homes of totally disabled veterans.**

(a)    Real property:

(1)    Owned and occupied as a home by any person who is totally disabled due to injuries received while on duty with the armed forces of the United States;

(2)    Owned by any such person together with such person's spouse and occupied by either or both spouses as a home;

(3)    Owned and occupied by a widow or widower of such totally disabled veteran who shall remain unmarried and who shall continue to own and occupy the premises as a home,

is exempted from all property taxes, other than special assessments, subject to subsection (b).

(b)    The exemption provided for in subsection (a) shall be subject to the following:

(1)    That the total disability of the veteran was incurred while on duty as a member of the armed forces of the United States, and that the director may require proof of total disability.

(2)    That the home exemption shall be granted only as long as the veteran claiming exemption remains totally disabled.

(3)    That the exemption shall not be allowed on more than one house for any one person.

(4)    That a person living on premises, a portion of which is used for commercial purposes, shall not be entitled to an exemption with respect to such portion, but shall be entitled to an exemption with respect to the portion used exclusively as a home; provided, that this exemption shall not apply to any structure, including the land thereunder, which is used for commercial purposes.

(5)    That a widow or widower of a disabled veteran may apply for an exemption and the exemption may be granted even if the disabled veteran did not apply for and obtain the exemption provided for in subsection (a) during the veteran's lifetime, provided that the widow or widower submits proof

PE 01901

REAL PROPERTY TAX

satisfactory to the director that, at the time of the veteran's death, the veteran would have qualified for an exemption under this section.

(c)    For the purposes of this section, the word "home" includes the entire homestead when it is occupied by a qualified totally disabled veteran or the veteran's qualifying widow or widower as a residence; houses where the occupant disabled veteran owner or the qualifying widow or widower owner sublets not more than one room to a tenant; and premises held under an agreement by which the disabled veteran agrees to purchase the same for a residence, where the agreement has been duly entered into and recorded prior to October 1st preceding the tax year for which the exemption is claimed, whereby the purchaser agrees to pay all taxes while purchasing the premises.

(d)    The exemption shall take effect beginning with the next tax payment date, provided that the claimant shall have filed with the department a claim for a disability exemption along with a copy of a physician's certificate of disability on such form as the department shall prescribe on or before June 30 for the first payment or December 31 for the second payment.

(Sec. 8-10.6, R.O. 1978 (1983 Ed.); Am. Ord. 96-15, 00-63)

## Sec. 8-10.7   Exemption—Persons affected with leprosy.

Any person who has been declared by authority of law to be a person affected with leprosy in the communicable stage and is admitted to a hospital for isolation treatment shall, so long as such person is so hospitalized, and thereafter for so long as such person has been so declared to be therefrom temporarily released, and so long as such person remains or continues under temporary release, be exempted from real property taxes on all real property owned by such person on the date when such person was declared to be a person so affected with leprosy, up to, but not exceeding, a taxable value of $25,000.00. (Sec. 8-10.7, R.O. 1978 (1983 Ed.))

## Sec. 8-10.8   Exemption—Persons with impaired sight or hearing and persons totally disabled.

(a)    Any person who is blind or deaf, so long as the person's sight or hearing is so impaired, shall be exempt from real property taxes on all real property owned by the person up to, but not exceeding a taxable value of $25,000.00. The impairment of sight or hearing shall be certified to by a qualified ophthalmologist, optometrist or otolaryngologist, as the case may be, on forms prescribed by the department of finance.

(b)    Any person who is totally disabled, as long as the person is totally disabled, shall be exempt from real property taxes on all real property owned by the person up to, but not exceeding a taxable value of $25,000.00. The disability shall be certified to by a physician licensed under HRS, Chapter 453 or 460, or both, on forms prescribed by the department of finance.

(c)    When used in this section:

"Blind" means a person whose visual acuity does not exceed 20/200 in the better eye with correcting lenses, or whose visual acuity is greater than 20/200 but is accompanied by a limitation in the field of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees.

"Deaf" means a person whose average loss in speech frequencies (500-2000 Hertz) in the better ear is 82 decibels, A.S.A., or worse.

"Totally disabled" means a person who is totally and permanently disabled, either physically or mentally, which results in the person's inability to engage in any substantial gainful business or occupation.

(Sec. 8-10.8, R.O. 1978 (1983 Ed.); Am. Ord. 89-138)

## Sec. 8-10.9   Exemption—Nonprofit medical, hospital indemnity association.

Every association or society organized and operating under HRS Chapter 433, solely as a nonprofit medical indemnity or hospital service association or society or both shall be from the time of such organization, exempt from real property taxes on all real property owned by it. (Sec. 8-10.9, R.O. 1978 (1983 Ed.))

## Sec. 8-10.10   Exemption—Charitable purposes.

(a)    There shall be exempt from real property taxes real property designated in subsection (b) or (c) of this section and meeting the requirements stated therein, actually and (except as otherwise specifically provided) exclusively used for nonprofit purposes. If an exemption is claimed under one of these subsections (b) and (c), an exemption for the same property may not also be claimed under the other of these subsections.

(b)    This subsection applies to property owned in fee simple, leased or rented for a period of one year or more, by the person using the property for the exempt purposes, hereinafter referred to as the person claiming the exemption. If the property for which exemption is claimed is leased or rented, the lease or rental agreement shall be in force and recorded in the bureau of conveyances.

Exemption is allowed by this subsection to the following property:

(1)    Property used for school purposes including:

(A)    Kindergartens, grade schools, junior high schools and high schools, which carry on a program of instruction meeting the requirements of the compulsory school attendance law, HRS Section 298-9, or which are for preschool children who have attained or will attain the age of five years on or before December 31st of the school year; provided, that any claim for exemption based on

PE 01902

REVISED ORDINANCES OF HONOLULU

any of the foregoing uses shall be accompanied by a certificate issued by or under the authority of the department of education stating that the foregoing requirements are met.

    (B)    Junior colleges or colleges carrying on a general program of instruction of college level. The property exempt from taxation under this paragraph is limited to buildings for educational purposes (including dormitories), housing owned by the school or college and used as residence for personnel employed at the school or college, campus and athletic grounds, and realty used for vocational purposes incident to the school or college.

(2)    Property used for hospital and nursing home purposes, including housing for personnel employed at the hospital; in order to qualify under this paragraph the person claiming the exemption shall present with the claim a certificate issued by or under the authority of the state department of health that the property for which the exemption is claimed consists in, or is a part of, hospital or nursing home facilities which are properly constituted under the law and maintained to serve, and which do serve the public.

(3)    Property used for church purposes, including incidental activities, parsonages and church grounds, the property exempt from taxation being limited to realty exclusive of burying grounds (exemption for which may be claimed under paragraph (4) of this subsection).

(4)    Property used as cemeteries (excluding, however, property used for cremation purposes) maintained by a religious society, or by a corporation, association or trust organized for such purpose.

(5)    Property dedicated to public use by the owner, which dedication has been accepted by the state or county, reduced to writing, and recorded in the bureau of conveyances; and property which has been set aside for public use and actually used therefor for a period not less than five years.

(6)    Property owned by any nonprofit corporation, admission to membership of which is restricted by the corporate charter to members of a labor union; property owned by any government employees' association or organization, one of the primary purposes of which is to improve employment conditions of its members; property owned by any trust, the beneficiaries of which are restricted to members of a labor union; property owned by any association or league of federal credit unions chartered by the United States, the sole purpose of which is to promote the development of federal credit unions in the state.

Notwithstanding any provision in this section to the contrary, the exemption shall apply to property or any portion thereof which is leased, rented or otherwise let to another, if such leasing, renting or letting is to a nonprofit association, organization or corporation.

(c)    This subsection shall apply to property owned in fee simple or leased or rented for a period of one year or more, the lease or rental agreement being in force and recorded in the bureau of conveyances at the time the exemption is claimed, by either:

    (1)    A corporation, society, association or trust having a charter or other enabling act or governing instrument which contains a provision or has been construed by a court of competent jurisdiction as providing that in the event of dissolution or termination of the corporation, society, association or trust, or other cessation of use of the property for the exempt purpose, the real property shall be applied for another charitable purpose or shall be dedicated to the public, or

    (2)    A corporation chartered by the United States under Title 36, United States Code, as a patriotic society. Exemption is allowed by this subsection for property used for charitable purposes which are of a community, character building, social service or educational nature, including museums, libraries, art academies and senior citizen housing facilities qualifying for a loan under the laws of the United States as authorized by Section 202 of the Housing Act of 1959 as amended by the Housing Act of 1961, the Senior Citizens Housing Act of 1962, the Housing Act of 1964 and the Housing and Urban Development Act of 1965.

(d)    If any portion of the property which might otherwise be exempted under this section is used for commercial or other purposes not within the conditions necessary for exemption (including any use the primary purpose of which is to produce income even though such income is to be used for or in furtherance of the exempt purposes) that portion of the premises shall not be exempt but the remaining portion of the premises shall not be deprived of the exemption if the remaining portion is used exclusively for purposes within the conditions necessary for exemption. In the event of an exemption of a portion of a building, the tax shall be assessed upon so much of the value of the building (including the land thereunder and the appurtenant premises) as the proportion of the floor space of the nonexempt portion bears to the total floor space of the building.

(e)    The term "for nonprofit purposes," as used in this section requires that no monetary gain or economic benefit inure to the person claiming the exemption, or any private shareholder, member or trust beneficiary. "Monetary gain" includes, without limitation, any gain in the form of money or money's worth. "Economic benefit" includes, without limitation, any benefit to a person in the course of that person's business, trade, occupation or employment.

(Sec. 8-10.10, R.O. 1978 (1983 Ed.); Am. Ord. 88-01, 01-52)

PE 01903

REAL PROPERTY TAX

**Sec. 8-10.11 Exemption—Property used in manufacture of pulp and paper.**

All property in the state, both real and personal, actually and solely used or to be used, whether by the owner or lessee thereof, in connection with the manufacture of pulp and paper from bagasse fibre, shall be exempt from property taxes for a period of five years from the first day of October following commencement of construction of a plant or plants on the property for such purpose. (Sec. 8-10.11, R.O. 1978 (1983 Ed.); Am. Ord. 96-15)

**Sec. 8-10.12 Exemption—Crop shelters.**

Any other law to the contrary notwithstanding, any permanent structure constructed or installed on any taxable real property consisting of frames or supports and covered by rigid plastic, fiber glass or other rigid and semirigid transparent or translucent material, and including wooden laths, used primarily for the protection of crops shall be exempted in determining and assessing the value of such taxable real property for 10 years or for a period of 10 years from the first day of October following commencement of construction or installation of the structure on the property for such purpose; provided, that any temporary structure so constructed or installed and covered by flexible plastic or other flexible transparent or translucent material, used for such purpose, shall be so exempted not subject to the 10 year limitation; provided further, that such exemption shall continue only so long as the structure is maintained in good condition. Only structures used for commercial agricultural or horticultural purposes shall be included in the exemption. (Sec. 8-10.12, R.O. 1978 (1983 Ed.); Am. Ord. 96-15)

**Sec. 8-10.13 Exemption—Dedicated lands in urban districts.**

(a)    Portions of taxable real property which are dedicated and approved by the director of finance as provided for by this section shall be exempted in determining and assessing the value of such taxable real property.

(b)    Any owner of taxable real property in an urban district desiring to dedicate a portion or portions thereof for landscaping, open spaces, public recreation and other similar uses shall petition the director of finance stating the exact area of the land to be dedicated and that the land is not within the setback and open space requirements of applicable zoning and building code laws and ordinances, and that the land shall be used, improved and maintained in accordance with and for the sole purpose for which it was dedicated, except that land within a historic district may be so dedicated without regard to the setback and open space requirements of applicable zoning and building code laws and ordinances.

The director shall make a finding as to whether the use to which such land will be dedicated has a benefit to the public at least equal to the value of the real property taxes for such land. Such finding shall be measured by the cost of improvements, the continuing maintenance thereof, and such other factors as the director may deem pertinent. If the director finds that the public benefit is at least equal to the value of real property taxes for such land, the director shall approve the petition and declare such land to be dedicated land.

(c)    The approval of the petition by the director shall constitute a forfeiture on the part of the owner of any right to change the use of the owner's land for a minimum period of 10 years, automatically renewable indefinitely, subject to cancellation by either the owner or the director upon five years' notice at any time after the end of the fifth year.

(d)    Failure of the owner to observe the restrictions on the use, improvement, and maintenance of the owner's land shall cancel the special tax exemption privilege retroactive to the date of the original dedication, and all differences in the amount of taxes that were paid and those that would have been due from the assessment of the tax exempted portion of the owner's land shall be payable together with interest of five percent a year from the respective dates that these payments would have been due. Failure to observe the restrictions on the use means failure for a period of over 12 consecutive months to use, improve and maintain the land in the manner requested in the petition or any overt act changing the use for any period. Nothing in this paragraph shall preclude the county from pursuing any other remedy to enforce the covenant on the use of the land.

(e)    The director shall prescribe the form of the petition. The petition shall be filed with the director by September 1st of any calendar year and shall be approved or disapproved by October 31st of such year. If approved, the exemption based upon the use requested in the dedication shall be effective July 1st of the following tax year.

(f)    The owner may appeal any disapproved petition as in the case of an appeal from an assessment.

(g)    The director shall make and adopt necessary rules and regulations including such rules and regulations governing minimum areas which may be dedicated for the improvement and maintenance of such areas.

(h)    "Landscaping" means lands which are improved by landscape architecture, cultivated plantings or gardening.

(i)    "Open spaces" means lands which are open to the public for pedestrian use and momentary repose, relaxation and contemplation.

(j)    "Public recreation" refers to lands which may be used by the public as parks, playgrounds, historical sites, campgrounds, wildlife refuges, scenic sites, and other similar uses.

(k)    "Owner" includes lessees of real property whose lease term extends at least 10 years from January 1st following the filing of the petition.

(Sec. 8-10.13, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 96-15)

PE 01904

REVISED ORDINANCES OF HONOLULU

**Sec. 8-10.14 Exemption—Air pollution control facility.**

(a)   The value of all property in the county (not including a building and its structural components, other than a building which is exclusively a treatment facility) actually and solely used or to be used as an air pollution control facility as the term is defined in HRS Chapter 237, shall be exempted from the measure of the taxes imposed by this chapter; provided, however, the property exemption shall be applicable only with respect to a certified facility which is property (1) the construction, reconstruction or erection of which is completed by the taxpayer after June 30, 1969, or (2) acquired by the taxpayer after June 30, 1969, if the original use of the property commences with the taxpayer after June 30, 1969; provided, further, that the facility is placed in service by the taxpayer before July 1, 1975.

(b)   Application for the exemption provided herein shall first be made with the state director of health who shall, if satisfied that the facility meets the pollution emission criteria established by the state department of health, certify to that fact. Upon receipt of the certification from the department of health, the director of finance shall exempt the facility from the tax imposed by this chapter. A new certificate shall be obtained from the director of health and filed with the director of finance every two years certifying that the pollution control facility complies with the pollutant emission criteria established by the department of health. The director of finance shall furnish all forms required by this section.

(c)   The director of finance shall promulgate rules and regulations necessary to administer this section.
(Sec. 8-10.14, R.O. 1978 (1983 Ed.))

**Sec. 8-10.15 Exemption—Alternate energy improvements.**

(a)   The value of all improvements in the county (not including a building or its structural components, except where alternate energy improvements are incorporated into the building, and then only that part of the building necessary to such improvement) actually used for an alternate energy improvement shall be exempted from the measure of the taxes imposed by this article.

(b)   As used in this section "alternate energy improvement" means any construction or addition, alteration, modification, improvement or repair work undertaken upon or made to any building which results in:

  (1)   The production of energy from a source, or uses a process which does not use fossil fuels, nuclear fuels or geothermal source. Such energy source may include, but shall not be limited to, solid wastes, wind, solar or ocean waves, tides or currents; or

  (2)   An increased level of efficiency in the utilization of energy produced by fossil fuels or in the utilization of secondary forms of energy dependent upon fossil fuels for its generation.

(c)   Alternate energy production or energy by-products transferred, marketed or sold on a commercial basis shall not qualify for exemption under the provisions of this section. Provided further, that alternate energy improvements used primarily for personal consumption and producing excess energy incidental to personal consumption may transfer, market or sell such excess energy produced and continue to qualify for the exemption as provided for by the provisions of this section; however, the transfer, marketing or sale shall be limited to less than 25 percent of the total energy output produced by such improvements. Nuclear fission and geothermal energy sources shall be excluded from the provisions of this section.

(d)   Application for the exemption provided by this section shall be made with the director of finance on or before September 30th, preceding the tax year for which the exemption is claimed, except that no claim need be filed for the exemption of solar water collectors, heaters, heat pumps and similar devices. The director of finance may require the taxpayer to furnish reasonable information in order that the director may ascertain the validity of the claim for exemption made under this section and may adopt rules and regulations to implement this section.
(Sec. 8-10.15, R.O. 1978 (1983 Ed.); Am. Ord. 96-15)

**Sec. 8-10.16 Exemption—Fixtures used in manufacturing or producing tangible personal products.**

      There shall be exempted and excluded from the measure of the taxes imposed by this chapter, all fixtures which are categorized as machinery and other mechanical or other allied equipment which are primarily and substantially used in manufacturing or producing tangible personal products. (Sec. 8-10.16, R.O. 1978 (1983 Ed.))

**Sec. 8-10.17 Exemption—Public property.**

      The following real property shall be exempt from taxation:

(a)   Real property belonging to the United States, to the state or to the county; provided, that real property belonging to the United States shall be taxed upon the use or occupancy thereof as provided in Section 8-10.18, and there shall be a tax upon the property itself if and when the Congress of the United States so permits, to the extent so permitted and in accordance with any conditions or provisions prescribed in such act of Congress; provided, further, that real property belonging to the state or the county, or belonging to the United States and in the possession, use and control of the state, shall be taxed on the fee simple value

PE 01905

REAL PROPERTY TAX

thereof, and private persons shall pay the taxes thereon and shall be deemed the "owners" thereof for the purposes of this chapter, in the following cases:

(1)    Property held on October 1st preceding the tax year under an agreement for its conveyance by the government to private persons shall be deemed fully taxable, the same as if the conveyance had been made.

(2)    Property held on October 1st preceding the tax year under a government lease shall be entered in the assessment lists and such tax rolls for that year as fully taxable for the entire tax year, but adjustments of the taxes so assessed may be made as provided for by this chapter so that such tenants are required to pay only so much of the taxes as is proportionate to the portion of the tax year during which the real property is held or controlled by them.

(3)    Property held under a government lease commencing after October 1st preceding the tax year or under an agreement for its conveyance or a conveyance by the government, made after October 1st preceding the tax year, shall be assessed as omitted property as provided for by this chapter, but the taxes thereon shall be prorated so as to require the payment of only so much of the taxes as is proportionate to the remainder of the tax year.

(4)    Property where the occupancy by the tenant for commercial purposes has continued for a period of one year or more, whether the occupancy has been on a permit, license, month-to-month tenancy or otherwise, shall be fully taxable to the tenant after the first year of occupancy, and the property shall be assessed in the manner provided in subdivisions (2) and (3) of this subsection for the assessment of properties held under a government lease; provided, that the property occupied by the tenant solely for residential purposes on a month-to-month tenancy shall be excluded from this paragraph.

(5)    (A)    In any case of occupancy of a building or structure by two or more tenants, or by the government and a tenant, under a lease for a term of one year or more, the tax shall be assessed to the tenant upon so much of the value of the entire real property as the floor space occupied by the tenant proportionably bears to the total floor space of the structure or building.

    (B)    For the purposes of subdivisions (2) and (3) of this subsection: "lease" means any lease for a term of one year or more or which is renewable for such period as to constitute a total term of one year or more. A lease having a stated term shall, if it otherwise comes within the meaning of the term "lease," be deemed a lease notwithstanding any right of revocation, cancellation, or termination reserved therein or provided for thereby. Whenever a lease is such that the highest and best use cannot be made of the property by the lessee, the measure of the tax imposed on such property pursuant to subdivisions (2) and (3) of this subsection shall be its fee simple value upon consideration of the highest and best use which can be made of the property by the lessee.

    (C)    Provided, further, that real property belonging to the United States, even though not in the possession, use and control of the state, shall be taxed on the fee simple value thereof, and private persons shall pay the taxes thereon and shall be deemed the "owners" thereof for the purposes of this chapter, in the following cases:

        (i)    Property held on October 1st preceding the tax year under an agreement for the conveyance of the same by the government to private persons shall be deemed fully taxable, the same as if the conveyance had been made, but the assessment thereof shall not impair and shall be so made as to not impair, any right, title, lien or interest of the United States.

        (ii)    Property held under an agreement for the conveyance of the same or a conveyance of the same by the government, made after October 1st preceding the tax year, shall be assessed as omitted property as provided for by this chapter, but the taxes thereon shall be prorated so as to require the payment of only so much of such taxes as is proportionate to the remainder of the tax year, and in the case of property held under an agreement for the conveyance of the same but not yet conveyed, the assessment thereof shall not impair, and shall be so made as to not impair, any right, title, lien or interest of the United States.

(b)    Subject to HRS Section 101-39(B), any real property in the possession of the state or county which is the subject of eminent domain proceedings commenced for the acquisition of the fee simple estate in such land by the state or county; provided the fact of such possession has been certified to the director as provided by HRS Section 101-36 or 101-38, or is certified not later than September 30th preceding the tax year for which such exemption is claimed.

(c)    Real property with respect to which the owner has granted to the state or county a right of entry and upon which the state or county has entered and taken possession under the authority of the right of entry with

PE 01906

REVISED ORDINANCES OF HONOLULU

intention to acquire the fee simple estate therein and to devote the real property to public use; provided the state or county shall have, prior to September 30th preceding the tax year for which the exemption is claimed, certified to the director the date upon which it took possession.

(d) Any portion of real property within the area upon which construction of buildings is restricted or prohibited and which is actually rendered useless and of no value to the owners thereof by virtue of any ordinance establishing setback lines thereon; provided, that in order to secure the exemption the person claiming it shall annually file between September 15th and September 30th preceding the applicable tax year a sworn written statement with the director describing the real property in detail and setting forth the facts upon which exemption is claimed, together with a written agreement that in consideration of the exemption from taxes the owner will not make use of the land in any way whatsoever during the ensuing year. Any person who has secured such exemption who violates the terms of the agreement shall be fined twice the amount of the tax which would be assessed upon the land but for such exemption.

(e) Real property exempted by any laws of the United States which exemption is not subject to repeal by the council.

(f) Any other real property exempt by law.

(Sec. 8-10.17, R.O. 1978 (1983 Ed.); Am. Ord. 95-67; Am. Ord. 96-15)

### Sec. 8-10.18 Lessees of exempt real property.

(a) When any real property which for any reason is exempt from taxation is leased to and used or occupied by a private person in connection with any business conducted for profit, such use or occupancy shall be assessed and taxed in the same amount and to the same extent as though the lessee were the owner of the property and as provided in subsection (b) of this section, provided that:

    (1) The foregoing shall not apply to the following:

        (A) Federal property for which payments are made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed.

        (B) Any property or portion thereof taxed under any other provision of this chapter to the extent and for the period so taxed.

    (2) The term "lease" means any lease for a term of one year or more, or which is renewable for such period as to constitute a total term of one year or more. A lease having a stated term shall, if it otherwise comes within the meaning of the term "lease," be deemed a lease notwithstanding any right of revocation, cancellation or termination reserved therein or provided for thereby.

    (3) The assessment of the use or occupancy shall be made in accordance with the highest and best use permitted under the terms and conditions of the lease.

(b) The tax shall be assessed to and collected from such lessee as nearly as possible in the same manner and time as the tax assessed to owners of real property, except that the tax shall not become a lien against the property. In case the use or occupancy is in effect on October 1st preceding the tax year, the lessee shall be assessed for the entire year but adjustments of the tax so assessed shall be made in the event of the termination of the use or occupancy during the year so that the lessee is required to pay only so much of the tax as is proportionate to the portion of the tax year during which the use or occupancy is in effect, and the director is authorized to remit the tax due for the balance of the tax year. In case the use or occupancy commences after October 1st preceding the tax year, the lessee shall be assessed for only so much of the tax as is proportionate to the period that the use or occupancy bears to the tax year.

(c) The assessment of the use or occupancy of real property made under this section shall not be included in the aggregate value of taxable realty for the purposes of Section 8-11.1 but the council, at the time that it is furnished with information as to the value of taxable real property, shall also be furnished with information as to the assessments made under this section, similarly determined but separately stated.

(d) If a use or occupancy is in effect on October 1st preceding the tax year, the assessment shall be made and listed for that year and the notice of assessment shall be given to the taxpayer in the manner and at the time prescribed as provided for by this chapter, and when so given, the taxpayer, if said taxpayer deems oneself aggrieved, may appeal as provided for by this chapter, if a use or occupancy commences after October 1st preceding the tax year or if for any reason an assessment is omitted for any tax year, the assessment shall be made and listed and notice thereof shall be given, and an appeal may be taken therefrom in the manner and at the time prescribed in Section 8-3.4.

(Sec. 8-10.18, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 96-15)

### Sec. 8-10.19 Property of the United States leased under the National Housing Act.

Real property belonging to the United States leased pursuant to Title VIII of the National Housing Act, as amended or supplemented from time to time:

(a) Shall not be taxed under this chapter upon the lessee's interest or any other interest therein, except as provided in subsection (b) of this section.

PE 01907

REAL PROPERTY TAX

(b)     Shall be taxed under this chapter to the extent of and measured by the value of the lessee's interest in any portion of the real property (including land and appurtenances thereof and the buildings and other improvements erected on or affixed on the same) used for, or in connection with, or consisting in, shops, restaurants, cleaning establishments, taxi stands, insurance offices, or other business or commercial facilities. The tax shall be assessed to and collected from the lessee. The assessment of such property shall not impair, and shall be so made as to not impair, any right, title, lien or interest of the United States.

(Sec. 8-10.19, R.O. 1978 (1983 Ed.))

**Sec. 8-10.20 Exemption  Low-income rental housing.**

(a)     For the purposes of this section:

"Dwelling unit" means a room or rooms connected together, constituting an independent living unit and containing a single kitchen and at least one bathroom.  A dwelling unit shall not include a unit used for time sharing or as a transient vacation unit.

"Housing project" means a rental housing project where at least 20 percent of the dwelling units are reserved for low-income residents.  The housing project must be situated on (i) a single parcel of land, (ii) multiple parcels of land that are contiguous, or (iii) noncontiguous multiple parcels of land which are separated from each other only by a road or roads.  If the housing project is comprised of multiple parcels of land, or is comprised of individual dwelling units, each situated upon a subdivided parcel of land, the regulatory agreement must specifically identify each such parcel of land or dwelling units as comprising the housing project.

"Kitchen" means a facility in a dwelling unit that exists when there are fixtures, appliances of devices for all of the following:  (1) heating or cooking of food, (2) washing of utensils used for dining and food preparation and/or for washing and preparing food, and (3) refrigeration of food.

"Low-income" means the annual income of a household that does not exceed 80 percent of the area median income for the county as determined by the United States Department of Housing and Urban Development.

"Nonprofit or limited distribution mortgagor" means a mortgagor who qualifies for and obtains mortgage insurance under Sections 202, 221(d)(3) or 236 of the National Housing Act as a nonprofit or limited distribution mortgagor.

"Owner" shall include a lessee of the property whose lease term extends at least as long as the regulated period.

"Regulatory agreement" means an agreement between an owner and the federal government, state government or a political subdivision of the state government, or agency of the federal government, agency of the state government or agency of the political subdivision of the state government, embodying provisions regulating rents, charges, profits, dividends, development costs, and methods of operation, in accordance with the laws, policies, or rules of the federal government, state government or of the political subdivision of the state government, or agency of the federal government, agency of the state government or agency of the political subdivision of the state government.

"Regulated period" means the period during which a housing project is subject to a regulatory agreement, which shall not be less than 15 years.

(b)     Real property which is owned and operated by (i) a nonprofit, limited distribution mortgagor, or (ii) a person, corporation, trust, partnership or association which is used for a housing project that is subject to a regulatory agreement shall be exempt from property taxes for the duration of the regulated period. This exemption shall be incorporated into any and all agreements, including regulatory and loan agreements as applicable.

(1)     If the qualifying housing project is comprised of multiple parcels of land, each parcel comprising the housing project shall be exempt from property taxes.

(2)     If the housing project fails to meet the requirements under this section at any time during the regulated period, the exemption shall be cancelled and the housing project shall be subject to taxes and penalties as determined in Section 8-10.21(c).

(3)     If any portion of the housing project that qualifies for an exemption under this section is transferred during the regulated period, the exemption shall be cancelled and the entire housing project, including the portion retained, if any, and the portion transferred, shall be subject to the taxes and penalties pursuant to Section 8-10.21(c)(3).  The taxes and penalties shall not apply to any portion of the housing project for which a new claim is filed for an exemption for low-income rental housing as described in this section within 30 days of the recordation or filing of the sale or transfer with the registrar of the bureau of conveyances or the assistant registrar of the land court, whichever is applicable, and the exemption is granted by the director.

PE 01908

REVISED ORDINANCES OF HONOLULU

(4)     If the entire housing project is sold or otherwise transferred during the regulated period, a new claim for exemption must be filed within 30 days of the recordation or filing of such sale or transfer with the registrar of the bureau of conveyances or the assistant registrar of the land court, whichever is applicable.  Failure to file a new claim for exemption or meet the qualifications under this section shall result in cancellation of the exemption and taxes and penalties imposed pursuant to Section 8-10.21(c).

(c)     The exemption provided in this section shall not apply to any commercial portion of the property that is used for commercial or other purposes, and not for the primary use of the tenants of the housing project.

(d)     Where a housing project is situated upon a single parcel of land, if any portion of the property is ineligible for the property tax exemption under this section:

(1)     The remaining eligible portion shall not be deprived of the exemption;

(2)     The ineligibility of a portion of the property for exemption under this section shall not disqualify that portion from exemption under any other law; and

(3)     The tax shall be assessed upon so much of the value of the building and land thereunder as the proportion of the nonexempt floor area bears to the total floor area of the building.

(e)     Exemptions claimed under this section shall disqualify the same property from receiving an exemption under HRS Section 53-38.

(Sec. 8-10.20, R.O. 1978 (1983 Ed.); Am. Ord. 90-31, 02-68)

**Sec. 8-10.21 Claim for exemption.**

(a)     Notwithstanding any provision in this chapter to the contrary, any real property determined by the director to be exempt from property taxes under Section 8-10.20 shall be exempt from property taxes effective as of the date the application is filed with the director; provided, that the initial application for exemption shall be filed with the director within 60 days of the qualification or in the failure thereof by September 30th preceding the tax year for which the exemption is claimed.  A copy of the regulatory agreement that has been recorded with the registrar of the bureau of conveyances or filed with the assistant registrar of the land court, whichever is applicable, shall be filed with the application along with any additional documents determined by the director to be necessary to supplement the application.  As used herein, the date of the qualification shall be the earlier of: (i) the date when the mortgage made by the nonprofit or limited distribution mortgagor and insured under Section 202, 221(d)(3) or 236 of the National Housing Act is recorded or (ii) the date the regulatory agreement is recorded with the registrar of the bureau of conveyances or the assistant registrar of the land court of the state, whichever is applicable.

For a housing project that qualified for an exemption from real property taxation under Section 8-10.20 before the effective date of this ordinance, the first application filed after the effective date of this ordinance shall be deemed the initial filing under this subsection.

After the initial year for which the real property has qualified for an exemption, a claim for an exemption shall be filed annually on or before September 30th, together with a document from the agency regulating the housing project certifying that the housing project continues to be in compliance with the initial regulatory agreements and is in compliance with the applicable low-income rental requirements in the manner provided by applicable law or rule.

(b)     In the event property taxes have been paid to the county in advance for real property that subsequently qualifies for the exemption, the director shall refund to the owner that portion of the taxes attributable to and paid for the period after the qualification.

(c)     Cancellation of Exemption-Penalties.

(1)     Notice by Director
        Following the initial year for which real property has qualified for an exemption, if an owner fails to file a claim for continued exemption by the September 30th deadline, the director shall promptly mail a notice to the owner at the owner's address of record stating that unless a claim for continued exemption and all the necessary documents are received by the director by November 15th of the same year, the exemption shall be cancelled.

(2)     Cancellation of Exemption
        An owner who has been sent a notice under paragraph (1) by the director and who fails to file for an exemption by the November 15th deadline shall have the exemption cancelled and the housing project shall be subject to taxes and penalties pursuant to paragraph (3).
        In the event the director finds that the initial or subsequent claim for exemption contains false or fraudulent information, the housing project fails to meet the requirements of Section 8-10.20 during the regulated period, or the owner fails to file annually during the regulated period as required under this section, the director shall cancel the exemption retroactive to the date the exemption was first granted pursuant to an initial filing under subsection (a), and the housing project shall be subject to the taxes and penalties determined in paragraph (3).

(3)     Back Taxes and Penalties

PE 01909

REAL PROPERTY TAX

In the event a housing project is subject to taxes and penalties as provided in paragraph (2), the differences in the amount of taxes that were paid and those that would have been due but for the exemption allowed shall be payable, together with interest at 10 percent per annum, from the respective dates that these payments would have been due. The taxes and penalties due shall be a paramount lien upon the real property.

In addition, in the event a claim for an exemption is submitted after the September 30th deadline but on or before the November 15th deadline, a late filing penalty of $500.00 shall be imposed.

(Sec. 8-10.21, R.O. 1978 (1983 Ed.); Am. Ord. 02-68)

**Sec. 8-10.22 Exemption–Historic residential real property dedicated for preservation.**
(a)   Portions of residential real property which are dedicated and approved by the director of budget and fiscal services as provided for by this section, shall be exempt from real property taxation except as provided by Section 8-9.1. The owners shall assure reasonable visual access to the public.
(b)   An owner of taxable real property, that is the site of a historic residential property that has been placed on the Hawaii Register of Historic Places after January 1, 1977, desiring to dedicate a portion or portions thereof for historic preservation, shall petition the director of budget and fiscal services.
(c)   The director of budget and fiscal services shall review the petition and determine what portion or portions of the real property shall be exempted from real property taxes. The director shall consult with the state historic preservation office in making this determination. The director may take into consideration whether the current level of taxation is a material factor which threatens the continued existence of the historic property, and may determine the total area or areas of real property that shall be exempted.
(d)   The approval of the petition by the director shall constitute a forfeiture on the part of the owner of any right to change the use of the owner's exempted property for a minimum period of 10 years, automatically renewable indefinitely, subject to cancellation by either the owner or the director upon five years' notice at any time after the end of the fifth year.
(e)   Failure of the owner to observe the restrictions of subsection (d) of this section shall cancel the tax exemption and privilege retroactive to the date of the dedication, and all differences in the amount of taxes that were paid and those that would have been due but for the exemption allowed by this section shall be payable together with interest at 12 percent per annum from the respective dates that these payments would have been due, provided the provision in this subsection shall not preclude the county from pursuing any other remedy to enforce the covenant on the use of the land.
(f)   Any person who becomes an owner of real property that is permitted an exemption under this section shall be subject to the restrictions and duties imposed under this section.
(g)   The director shall prescribe the form of the petition. The petition shall be filed with the director by September 1st of any calendar year and shall be approved or disapproved by October 31st of such year. The exemption provided for by this section shall be effective October 1st of the same calendar year.
(h)   An owner applicant may appeal any determination as in the case of an appeal from an assessment.
(i)   Subject to HRS Chapter 91, the director shall adopt rules and regulations decreed necessary to accomplish the foregoing.
(j)   The owner of a historic residential property that has received an exemption from real property taxation pursuant to this section shall place and maintain on that property a sign or plaque that has been approved by the director and the state historic preservation officer.  Subject to HRS Chapter 91, the director shall adopt rules prescribing the requirements for such a sign or plaque.

(Sec. 8-10.22, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 96-15, 01-23)

**Sec. 8-10.23 Other exemptions.**
Exemptions to real property taxes as set forth in HRS Chapter 53 "Urban Renewal Law" and Chapter 183 "Forest Reserves, Water Development, Zoning", and in Section 208 of the Hawaiian Homes Commission Act, 1920, and which were enacted prior to November 7, 1978, shall remain in effect and be recognized and implemented by the city in its administration of the real property tax system; provided that real property leased under homestead and not general lease pursuant to the authority granted the Department of Hawaiian Home Lands by Section 207 of the Hawaiian Homes Commission Act, 1920, shall be exempt from real property taxes, the seven-year limitation on the exemption afforded by Section 208 of the Hawaiian Homes Commission Act, 1920, notwithstanding. (Sec. 8-10.23, R.O. 1978 (1983 Ed.); Am. Ord. 92-38, 92-63, 93-13, 93-112, 97-56, 00-65)

**Sec. 8-10.24 Exemption–Credit union.**
(a)   Real property owned in fee simple or leased for a period of one year or more by a federal or state credit union which is actually and exclusively used for credit union purposes shall be exempt from real property taxes. If the property for which exemption is claimed is leased, the lease agreement shall be in force and recorded in the bureau of conveyances at the time the exemption is claimed. As used in this section, "federal credit union" means a credit union organized under the Federal Credit Union Act of 1934, 12 U.S.C. Chapter 14, as amended,

PE 01910

REVISED ORDINANCES OF HONOLULU

and "state credit union" means a credit union organized under the Hawaii Credit Union Act, HRS Chapter 410, as amended.

(b)    If any portion of the property which might otherwise be exempted under this section is used for commercial or other purposes not within the conditions necessary for exemption (including any use the primary purpose of which is to produce income even though such income is to be used for or in furtherance of the exempt purposes) that portion of the premises shall not be exempt but the remaining portion of the premises shall not be deprived of the exemption if the remaining portion is used exclusively for purposes within the conditions necessary for exemption. In the event of an exemption of a portion of a building, the tax shall be assessed upon so much of the value of the building (including the land thereunder and the appurtenant premises) as the proportion of the floor space of the nonexempt portion bears to the total floor space of the building. (Added by Ord. 88-01)

### Sec. 8-10.25  Exemption - Slaughterhouses.

All real property in the city used exclusively by the owner or lessee for purposes of slaughtering or butchering cattle, pigs, poultry animals or other domestic livestock for commercial slaughterhouse purposes shall be exempt from real property taxes for a period of ten years. In the case of newly constructed slaughterhouses, the exemption shall apply to the tax year following the first day of October following commencement of construction of such slaughterhouse. (Added by Ord. 93-6; Am. Ord. 96-15)

### Sec. 8-10.26  Exemption—Qualifying construction work.

(a)    Any incremental increase in the valuation of buildings primarily attributable to qualifying construction work shall be exempt from property taxes for a period of seven years following the completion of the qualifying construction work, provided that:

(1)    The qualifying construction work commences on or after January 1, 1999 as evidenced by the issuance date of the building permits;

(2)    The qualifying construction work is completed on or before June 30, 2003 unless extended pursuant to subsection (d); and

(3)    The laborers and mechanics who performed the qualifying construction work were paid at or above the rate of wages established by Hawaii Revised Statutes Chapter 104 and the applicable rules adopted thereunder.

(b)    As used in this section:

"Incremental increase in the valuation of buildings primarily attributable to qualifying construction work" shall be determined by subtracting the valuation of buildings on the property as determined in the real property tax assessment immediately preceding June 22, 1999 from the valuation of buildings following the completion of qualifying construction work as of June 22, 1999.

"Qualifying construction work" means work to construct new buildings, or to construct additions or renovations to existing buildings, located on land which is classified in accordance with Section 8-7.1 as hotel and resort, commercial, industrial, preservation, or agricultural."

(c)    The date of the completion of the construction shall be established by the date of the department of planning and permitting's inspection completion date, or the last of the inspection completion dates, where multiple inspections are required for the electrical, plumbing and/or architectural and structural work allowed under the building permit.

(d)    The claimant may request an extension of time of up to one year but no later than June 30, 2004 to complete construction, and only if a major change in circumstances beyond the control of the claimant has occurred since the issuance of the building permit which causes the delay. The request for an extension setting forth the claimant's justification for an extension shall be made in writing to the director of planning and permitting and either receipt-stamped by the department or U.S. postmarked. By either method, the request shall be receipt-stamped or U.S. postmarked no later than June 29, 2003. The decision of the director of planning and permitting on the request shall be final.

(e)    The claim for exemption shall be filed with the department of budget and fiscal services on or before September 30th preceding the first tax year for which such exemption is claimed on such form as shall be prescribed by the department, and shall be supported by documentation establishing the date of the issuance of the building permit, the department of planning and permitting's inspection completion date, and the director of planning and permitting's decision to grant an extension of time to complete construction, if applicable.

(f)    The claim for exemption, once allowed, shall continue for a period of seven years provided that where an extension has been granted under subsection (d) in no event shall such exemption be allowed beyond June 30, 2012.

(g)    In order to confirm that the laborers and mechanics who performed the qualifying construction work were paid at or above the applicable rate of wages, every claim for exemption filed with the department of budget and

PE 01911

REAL PROPERTY TAX

fiscal services shall include documentation in a form satisfactory to the director of budget and fiscal services which establishes that the wage rates for the laborers and mechanics who performed the qualifying construction work were not less than the wage rates established by HRS Chapter 104 and the applicable rules adopted thereunder. This documentation shall include, but not be limited to, a notarized affidavit from the claimant establishing that the wage rates for the laborers and mechanics who performed the qualifying construction work were not less than the wage rates established by HRS Chapter 104 and the applicable rules adopted thereunder.
(Sec. 8-10.26, R.O. 1990; Am. Ord. 99-42, 00-45, 02-39)

**Sec. 8-10.27  Exemption—Public Service.**
(a)    Real Property which is owned, or leased and actually used by a public service company shall be exempt from real property taxes.
(b)    If the property for which exemption is claimed is leased by the public service company for a period of one year or more, the lease agreement shall be in force and recorded in the bureau of conveyances at the time the exemption is claimed.
(c)    The exemption provided in this section shall not apply to any portion of the property that is not used for the primary purpose of the public service company.
(d)    If any portion of the property is ineligible for the property tax exemption under this section:
     (1)    The remaining eligible portion shall not be deprived of the exemption;
     (2)    The ineligibility for exemption under this section shall not disqualify that portion for an exemption under any other law; and
     (3)    The tax shall be assessed upon so much of the value of the building and land thereunder as the proportion of the nonexempt floor area bears to the total floor area of the building.
(e)    "Public service company" shall be as defined under Section 8-7.1(c)(6).
     (Added by Ord. 01-60)

**Sec. 8-10.28  Additional terms and conditions for exemption of low-income rental housing projects on Hawaiian home lands.**
(a)    For the purposes of this section:
     "Hawaiian home lands" means the lands described in the Hawaiian Homes Commission Act, Hawaii Revised Statutes, Section 201.
     The definitions provided in Section 8-10.20(a) shall also apply to this section.
(b)    A low-income rental housing project that occupies Hawaiian home lands and qualifies for an exemption from real property taxes pursuant to Section 8-10-20 shall be subject to the following additional terms and conditions:
     (1)    The exemption shall be for the duration of the regulated period, provided that the lease remains in force and effect for the duration of said regulated period. This exemption shall be incorporated into any and all agreements, including regulatory and loan agreements as applicable.
     (2)    If the qualifying housing project is comprised of multiple parcels of land, each parcel comprising the housing project shall be:
          (A)    Exempt from property taxes; and
          (B)    Subject to the assessment of the minimum tax under Section 8-11.1; provided that for an exempt rental housing project consisting of no more than one hundred (100) parcels of land, in the event full payment of the annual minimum tax is received on or before June 30th prior to the tax year for any one of the parcels comprising the exempt rental housing project, no minimum tax shall be due and owing for the tax year for any of the other parcels comprising the exempt rental housing project; provided further, that no tax bill shall be issued for the June 30th full minimum tax payment.
(Added by Ord. 02-68)

**Article 11. Determination of Rates**

**Sections:**
     **8-11.1  Real property tax—Determination of rates.**

**Sec. 8-11.1  Real property tax—Determination of rates.**
(a)    Unless a different meaning is clearly indicated by the context, as used in this section, "net taxable real property" means the fair market value of property determined pursuant to this chapter which the director of

PE 01912

REVISED ORDINANCES OF HONOLULU

budget and fiscal services certifies as the tax base as provided by ordinance less exemptions as provided by ordinance and, in all cases where appeals from the director's assessment are then unsettled, less 50 percent of the value in dispute.

(b)   The council shall annually set the tax rate or rates for the classes of real property established in accordance with subsection 8-7.1(c). A resolution setting the tax rate or rates shall be adopted by the council during the same meeting at which the applicable legislative and executive budget bills are passed on third reading. The tax rate or rates shall be set according to the following procedures:

    (1)   The council shall advertise its intention to set the tax rate or rates and the date, time and place of a public hearing in accordance with law. The date of the public hearing shall be not less than 10 days after the advertisement is first published and shall set forth the proposed tax rate or rates to be considered by the council.

    (2)   After the public hearing provided for in subdivision (1) of this subsection, the council shall readvertise and reconvene to adopt a resolution setting the tax rate or rates for the tax year for which property tax revenues are to be raised. The advertisement shall state the rate or rates proposed to be set and the date, time and place of the meeting scheduled for setting the rate or rates. The date, time and place of the meeting shall also be announced at the public hearing required by subdivision (1) of this subsection.

    (3)   If, after adopting an increase or decrease in the tax rates as provided by subdivisions (1) and (2) of this subsection, the council determines that it requires a further increase or decrease in tax rates, the council shall readvertise and follow the requirements of subdivisions (1) and (2) of this subsection.

(c)   The council shall set the tax rate for each class of real property for a tax year by using the following method:

    (1)   Net taxable real property within each class shall be assigned a percentage of the total revenue to be derived from all real property.

    (2)   The percentage of revenue to be raised from net taxable real property within each class shall be multiplied by the total revenue to be raised from all real property in order to determine the amount of revenue to be derived from that class.

    (3)   The amount of revenue to be raised from each class shall be divided by the net taxable real property of that class to determine the applicable tax rate. The tax rate shall be expressed as a dollar amount per $1,000.00 of net taxable real property.

(d)   The council shall notify the director of budget and fiscal services of the tax rate or rates set for a tax year before the commencement of that tax year. Upon receipt of the notification, the director shall use the rate or rates in the levying of property taxes as provided by this chapter.

(e)   The director of budget and fiscal services shall, on or before February 1st preceding the tax year, furnish the council with a calculation certified by the director as being as nearly accurate as may be, of the net taxable real property within the county, separately stated for each class established in accordance with subsection 8-7.1(c) plus such additional data relating to the property tax base as may be necessary. The director shall include the sum of the value of all claims granted under Article 13 of this chapter and the amount of all such claims appealed during the current tax year as part of the information required by this subsection.

(f)   Insofar as the validity of any tax rate is concerned, the provisions of subsection (e) of this section as to dates shall be deemed directory; provided, that all other provisions of this section shall be deemed mandatory.

(g)   Notwithstanding any provision to the contrary, there shall be levied upon each individual parcel of real property taxable under this chapter a minimum real property tax of $100.00 a year, except for properties exempt under Section 8-10.27 and except as provided in Section 8-10.__(b)(2).

(Sec. 8-11.1, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 92-75, 96-15, 01-60, 02-45, 02-68)

PE 01913

REAL PROPERTY TAX

## Article 12. Appeals

Sections:

| | |
|---|---|
| 8-12.1 | Generally. |
| 8-12.2 | Appeals by persons under contractual obligations. |
| 8-12.3 | Grounds of appeal--Real property taxes. |
| 8-12.4 | Second appeal. |
| 8-12.5 | Small claims. |
| 8-12.6 | Boards of Review — Appointment, removal, compensation. |
| 8-12.7 | Boards of review--Duties, powers, procedure before. |
| 8-12.8 | Appeal to tax appeal court. |
| 8-12.9 | Appeal to board of review. |
| 8-12.10 | Costs--Deposit for an appeal. |
| 8-12.11 | Costs--Taxation. |
| 8-12.12 | Taxes paid pending appeal. |
| 8-12.13 | Amendment of assessment list to conform to decision. |

### Sec. 8-12.1   Generally.

Any taxpayer or owner who may deem himself or herself aggrieved by an assessment made by the director or by the director's refusal to allow any exemption, may appeal from the assessment or from such refusal to the board of review or the tax appeal court pursuant to HRS Section 232-16 on or before January 15th preceding the tax year, as provided in this article. Where such an appeal is based upon the ground that the assessed value of the real property for tax purposes is excessive, the valuation claimed by the taxpayer or owner in the appeal shall be admissible in evidence, in any subsequent condemnation action involving the property, as an admission that the fair market value of the real property as of the date of assessment is no more than the value arrived at when the assessed value from which the taxpayer or owner appealed is adjusted to 100 percent fair market value; provided, that such evidence shall not in any way affect the right of the taxpayer or owner to any severance damages to which the taxpayer or owner may be entitled. (Sec. 8-12.1, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 96-15, 97-55)

### Sec. 8-12.2   Appeals by persons under contractual obligations.

Whenever any person is under a contractual obligation to pay a tax assessed against another, the person shall have the same rights of appeal to the board of review and the tax appeal court and the Supreme Court, in such person's own name, as if the tax were assessed against such person. The person against whom the tax is assessed shall also have a right to appear and be heard on any such application or appeal. (Sec. 8-12.2, R.O. 1978 (1983 Ed.))

### Sec. 8-12.3   Grounds of appeal--Real property taxes.

In the case of a real property tax appeal, no taxpayer shall be deemed aggrieved by an assessment, nor shall an assessment be lowered or an exemption allowed, unless there is shown (1) assessment of the property exceeds by more than 10 percent of the market value of the property, or (2) lack of uniformity or inequality, brought about by illegality of the methods used or error in the application of the methods to the property involved, or (3) denial of an exemption to which the taxpayer is entitled and for which such person has qualified, or (4) illegality, on any ground arising under the Constitution or laws of the United States or the laws of the state or the ordinances of the city in addition to the ground of illegality of the methods used, mentioned in clause (2). (Sec. 8-12.3, R.O. 1978 (1987 Supp. to 1983 Ed.))

### Sec. 8-12.4   Second appeal.

In every case in which a taxpayer appeals a real property tax assessment to the board of review or to the tax appeal court and there is pending an appeal of the assessment, the taxpayer shall not be required to file a notice of the second appeal; provided, the first appeal has not been decided prior to January 15th preceding the tax year of the second appeal; and provided further, the director gives notice that the tax assessment has not been changed from the assessment which is the subject of the appeal. (Sec. 8-12.4, R.O. 1978 (1983 Ed.); Am. Ord. 96-15, 97-55)

### Sec. 8-12.5   Small claims.

Any protesting taxpayer who would incur a total tax liability, not including penalties and interest, of less than $1,000.00 by reason of the protested assessment or payment in question, may elect to employ the small claims procedures of the tax appeal court as set out in HRS Section 232-5. (Sec. 8-12.5, R.O. 1978 (1983 Ed.))

PE 01914

REVISED ORDINANCES OF HONOLULU

...s of Review--Appointment, removal, compensation.

...t be two boards of review for the City and County of Honolulu, each of which shall consist of five ... . In addition to meeting the requirements established in RCH Section 13-103, the members shall have in the state for at least three years at the time of their appointments. The appointment of a member ...,e to serve on one of the boards of review for the duration of the member's appointment and, in ...rdance with section 8-12.7(c), to serve, temporarily, as a substitute member of the other board of review meetings for which such other board is unable to establish a quorum, but not due to a vacancy on such ...,ard. Any vacancy in either of the boards shall be filled for the unexpired term as provided for in the charter.

A chair and vice-chair of each board shall be elected annually from among the board's membership by its respective members. The vice-chair shall serve as the chair of the board during the chair's temporary absence from the city, illness, or disqualification. Each member may receive and be paid out of the treasury compensation for such member's services for each day's actual attendance and the member's actual traveling expenses. (Sec. 8-12.6, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 96-16)

**Sec. 8-12.7  Boards of review--Duties, powers, procedure before.**

(a) Each board for the City and County of Honolulu shall hear disputes between the director and any taxpayer in all cases in which appeals have been duly taken. The fact that a notice of appeal has been duly filed by a taxpayer shall be conclusive evidence of the existence of a dispute. However, this provision shall not be construed to permit a taxpayer to dispute an assessment to the extent that it is in accordance with the taxpayer's return, as may be required pursuant to this chapter, unless the taxpayer shows lack of uniformity or inequality as set forth in Section 8-12.3.

(b) The assignment of particular tax appeals to one or the other of the boards of review shall be made by the director.

(c) Upon the request of the chair of one board, the chair of the other board may administratively, and without requirement of formal action of that chair's board, temporarily assign a member of that board to serve as a substitute member of the first board for purposes of establishing a quorum at a designated meeting or designated meetings of the first board. The substitute member temporarily assigned under this subsection shall serve only for the particular board meeting or meetings for which the assignment is made and only so long as a quorum may not be maintained by the board to which the substitute member is assigned. During the period of the substitute member's assignment, the substitute member may participate in the discussion of and vote on all appeals before the board. Nothing herein shall prevent a member from again being assigned under this subsection.

(d) Each board shall hold public meetings at some central location in the city commencing not later than January 15th of each year and shall hear, as expeditiously as possible, all appeals assigned to it for each year. With the exception of questions involving the Constitution or laws of the United States, each board shall have the authority to decide all questions of fact and all questions of law necessary to the determination of the objections raised by the taxpayer in the notice of appeal; provided, that the board shall not have the authority to determine or declare an assessment illegal or void. Each board shall have the authority to allow or disallow exemptions pursuant to law, whether or not previously allowed or disallowed by the director, and to increase or lower any assessment.

(e) Each board shall base each of its decisions on the evidence before it and, as provided in Section 8-1.18, the assessment made by the director shall be deemed prima facie correct. Assessments for the year upon other similar property situated in the city shall be received in evidence upon the hearing. In increasing or lowering any real property assessment, the board shall be governed by this chapter. Each board shall file with the director its written decision on each appeal, and a certified copy thereof shall be delivered or mailed by the director forthwith to the taxpayer concerned at the taxpayer's last known place of residence or business.

(f) Upon completion of its review of the property tax appeals for the current year, each board shall compile and submit to the mayor and the council, and shall file with the director for the use of the public, copies of a report detailing the work of the board, which is directed at meeting the objectives of this chapter. The board additionally shall report on instances in which the director, in the application of the valuation methods selected by the director, erred as to the assessment of a particular property or particular properties not brought before the board by any appeal. Before commencing this phase of its work, each board shall publish, during the first week of September, a notice specifying a period of at least 10 days within which complaints may be filed by any taxpayer. Each complaint shall be in writing, shall identify the particular property involved, shall state the valuation claimed by the taxpayer and the grounds of objection to the assessment, and shall be filed with the director who shall transmit the same to the appropriate board. Not earlier than one week after the close of the period allowed for filing complaints, the appropriate board shall hear the same, after first giving reasonable notice of the hearing to all interested taxpayers and the director. Like notice and hearing shall be

PE 01915

REAL PROPERTY TAX

given in order for the board to include in its report any other property not brought before it by an appeal. The board may proceed by districts designated by their tax map designation, and may from time to time publish the notice above provided for as the work proceeds by districts.

(g)   The director, in the making of assessments for the succeeding year, shall give due consideration to the reports of the boards made pursuant to subsection (f).

(h)   Each board, in addition to all other powers, also shall have the authority to subpoena witnesses, administer oaths, examine books and records, and hear and take evidence in relation to any subject pending before the board. It may request the tax appeal court to order the attendance of witnesses and the giving of testimony by them, and the production of books, records and papers at the hearings of the board.

(Sec. 8-12.7, R.O. 1978 (1987 Supp. to 1983 Ed.); Am. Ord. 96-15, 96-16, 97-55))

### Sec. 8-12.8   Appeal to tax appeal court.

(a)   An appeal to the tax appeal court may be filed by a taxpayer or the director as provided in HRS Sections 232-8 through 232-14 and Sections 232-16 through 232-18.

(b)   Appeals to the state supreme court shall conform to HRS Sections 232-19 through 232-21.

(Sec. 8-12.8, R.O. 1978 (1983 Ed.))

### Sec. 8-12.9   Appeal to board of review.

(a)   A notice of appeal to the board of review must be lodged with the director on or before the date fixed by law for the taking of the appeal.  Notwithstanding any other provision to the contrary, a notice of appeal deposited in the mail, postage prepaid, and properly addressed to the director, shall be deemed to have been lodged with the director on the date shown by the post office cancellation mark stamped upon the envelope or other appropriate wrapper containing the notice of appeal.

(b)   The notice of appeal must be in writing and any such notice, however informal it may be, identifying the assessment involved in the appeal, stating the valuation claimed by the taxpayer and the grounds of objection to the assessment shall be sufficient. Upon the necessary information being furnished by the taxpayer to the director, the director shall prepare the notice of appeal upon request of the taxpayer or county and any notice so prepared by the director shall be deemed sufficient as to its form.

(c)   The appeal shall be considered and treated for all purposes as a general appeal and shall bring up for determination all questions of fact and all questions of law, excepting questions involving the Constitution or laws of the United States, necessary for the determination of the objections raised by the taxpayer in the notice of appeal. Any objection involving the Constitution or laws of the United States may be included by the taxpayer in the notice of appeal and in such case the objections may be heard and determined by the tax appeal from a decision of the board of review; but this provision shall not be construed to confer upon the board of review the power to hear or determine such objections. Any notice of appeal may be amended at any time prior to the board's decision; provided, the amendment does not substantially change the dispute or lower the valuation claimed.

(Sec. 8-12.9, R.O. 1978 (1983 Ed.); Am. Ord. 93-20)

### Sec. 8-12.10   Costs—Deposit for an appeal.

(a)   The costs to be deposited by the taxpayer on appeal to the board of review shall be twenty-five dollars for each real property tax appeal.

(b)   The cost to be deposited by the taxpayer on any appeal to the tax court or the state supreme court shall be as provided in HRS Sections 232-22 and 232-23.

(Sec. 8-12.10, R.O. 1978 (1983 Ed., Am. Ord. 96-02))

### Sec. 8-12.11   Costs—Taxation.

In the event of an appeal by a taxpayer to the board of review, if the appeal is compromised, or sustained as to 50 percent or more of the valuation in dispute, the costs deposited shall be returned to the appellant. Otherwise the entire amount of costs deposited shall be retained by the city. (Sec. 8-12.11, R.O. 1978 (1983 Ed.))

### Sec. 8-12.12   Taxes paid pending appeal.

(a)   In any case of any appeal to the tax appeal court, 50 percent of the tax paid upon the amount of the assessment actually in dispute and in excess of that admitted by the taxpayer shall, pending the final determination of the appeal, be paid by the director into the "litigated claims account." If the final determination is in whole or in part in favor of the appealing taxpayer, the director shall repay to the taxpayer out of the account, or if there is a deficit in the account, out of the general fund of the city, the amount of the tax paid upon the amount held by the court to have been excessive or nontaxable, together with interest at the rate of eight percent a year from the date of each payment into the litigated claims account, the interest to be paid from the general fund of the city. The balance, if any, of the payment made by the appealing taxpayer and paid into the litigated claims fund, or the whole of the payment paid into the litigated claims fund, in case the

PE 01916

REVISED ORDINANCES OF HONOLULU

decision is wholly in favor of the assessor, shall, upon the final determination become a realization of the general fund.

(b)     In case of an appeal to the board of review, 50 percent of the tax paid upon the amount of the assessment actually in dispute and in excess of that admitted by the taxpayer, shall during the pendency of the appeal and until and unless an appeal is taken to the tax appeal court, be held by the director in a special deposit. In the event of final determination of the appeal in the board of review, the director shall repay to the appealing taxpayer out of the deposit, or if there is a deficit in the account, out of the general fund of the city, the amount of the tax paid upon the amount held by the board to have been excessive or nontaxable, if any, the balance, if any, or the whole of the deposit, in case the decision is wholly in favor of the director to become a realization of the general fund.

(Sec. 8-12.12, R.O. 1978 (1987 Supp. to 1983 Ed.))

**Sec. 8-12.13 Amendment of assessment list to conform to decision.**

The director shall alter or amend the assessment and the assessment list in conformity with the decision or judgment of the last board or court to which an appeal may have been taken. (Sec. 8-12.13, R.O. 1978 (1983 Ed.))

PE 01917

REAL PROPERTY TAX

## Article 13. County Refund

**Sections:**
> 8-13.1 **Definitions.**
> 8-13.2 **Refund established.**
> 8-13.3 **Administration.**
> 8-13.4 **Appeal.**
> 8-13.5 **Penalties.**

**Sec. 8-13.1   Definitions.**

When used in this article:

"City" means the City and County of Honolulu.

"Director" means the director of finance.

"Household" means the association of persons who live in the same dwelling, sharing its furnishings, facilities, accommodations and expenses. The term does not include bona fide lessees, tenants, or roomers and boarders on contract.

"Household income" means the total income of all members of a household combined.

"Income" means the sum of federal adjusted gross income as defined in the Internal Revenue Code of the United States of 1954, as amended, and all nontaxable income, including but not limited to the amount of capital gains excluded from adjusted gross income, alimony, support money, nontaxable strike benefits, cash public assistance and relief (not including relief granted under this article), the gross amount of any pension or annuity benefits received (including Railroad Retirement Act benefits and veterans disability pensions), all payments received under the federal Social Security and state unemployment insurance laws, nontaxable interest received from the federal government or any of its instrumentalities, workers' compensation, the gross amount of "loss of time" insurance, nontaxable contributions to public or private pension, annuity or deferred compensation plans, federal cost of living allowances, and the deduction allowed for two-earner married couples under Section 221 of the Internal Revenue Code of the United States of 1954, as amended.  "Income" does not include nonmonetary gifts from private sources, or surplus foods or other relief in kind provided by public or private agencies.

"Property owner" shall be as defined in Section 8-6.3.

(Sec. 8-13.1, R.O. 1978 (1987 Supp. to 1983 Ed.))

**Sec. 8-13.2   Refund established.**

A property owner, upon proper application, shall be entitled to a refund from the city for each calendar year in which the real property tax due for the tax year commencing July 1st of such year on the owner's property for which a multiple home exemption has been granted pursuant to Section 8-10.4(d), equals more than five percent of the total household income for such calendar year.  The refund shall equal the amount by which the tax due for the tax year exceeds five percent of the household income; provided, that the refund shall not be granted if the total household income for the respective calendar year exceeds $20,000.00.  No refund shall be granted for an amount less than $10.00, and in no case shall the refund exceed $500.00.  The refunds established in this article shall be funded, by annual appropriation, from general revenues other than real property tax collections. (Sec. 8-13.2, R.O. 1978 (1987 Supp. to 1983 Ed.))

**Sec. 8-13.3   Administration.**

(a)   Except as otherwise provided herein, a claim for refund shall be filed on or before October 30th of each year upon household income for the immediately preceding calendar year and upon tax bills, for which a multiple home exemption has been granted, for the immediately preceding tax year.

> (1)   The director shall prescribe the appropriate form or forms for refund claims.  The director shall require proof of total household income which may include but is not limited to true copies of personal income tax returns, bank statements or other financial records to verify information.  The director may require proof of nonreceipt of income from relief programs such as social security, welfare, unemployment compensation, etc., and may require such authorization from the household to enable the director to fully verify the household income.

> (2)   The applicant may refuse to provide such records.  However, upon such refusal, the director may deny the claim.  Notwithstanding any other provision to the contrary, there shall be no appeal from such a decision of the director due to such refusal by an applicant.

(b)   Except as otherwise provided herein, the refund shall be made by warrant in the name of the applicant and shall be issued on or before August 20th in the year immediately following the application for refund.  The warrant shall be issued subject to audit.

PE 01918

REVISED ORDINANCES OF HONOLULU

(c)   The director shall determine eligibility for refund upon review and verification of each claim.  The director shall notify each applicant whose claim has been denied, of such ineligibility, within 30 days of such determination.

(d)   For calendar year 1983, claims for refund shall be filed on or before June 30, 1984 upon household income for calendar year 1982 and upon real property tax bills for which a multiple home exemption has been granted, for tax year 1982-83.  Warrants for such refund claims shall be issued on or before February 10, 1985.  On or before March 1, 1985, the director shall provide the council with the sum of the value of all claims granted under this article and the amount of all such claims appealed to date.  Except as specifically provided by this subsection, all other provisions of this article shall be in full force and effect for calendar year 1984.

(Sec. 8-13.3, R.O. 1978 (1987 Supp. to 1983 Ed.))

**Sec. 8-13.4   Appeal.**

The director shall pursuant to the provisions of HRS Chapter 91, establish appeals procedures for denied claims.  (Sec. 8-13.4, R.O. 1978 (1987 Supp. to 1983 Ed.))

**Sec. 8-13.5   Penalties.**

Any person who files a fraudulent claim or attests to any false statement, with intent to defraud or to evade the payment of taxes or any part thereof, or who in any manner intentionally deceives or attempts to deceive the department of finance, shall be fined not more than $1,000.00 or imprisoned for not more than one year or both.  (Sec. 8-13.5, R.O. 1978 (1987 Supp. to 1983 Ed.))

PE 01919

REAL PROPERTY TAX

**Article 14. Reporting of Honolulu Real Property Interests Owned or Acquired by Foreign Persons**

Sections:
    **8-14.1 Definitions.**
    **8-14.2 Reporting requirement.**
    **8-14.3 Director's duties and authority.**
    **8-14.4 Penalties.**

**Sec. 8-14.1   Definitions.**
    For the purposes of this article, the following words and terms shall have the following meanings unless the context clearly dictates otherwise:
    "Director" means the director of finance of the city.
    "Foreign person" means:
    (1)    Any individual who is neither a citizen of the United States nor an alien resident thereof;
    (2)    Any business enterprise that is organized under the laws of a foreign government or which has its principal place of business outside of the United States;
    (3)    Any foreign government or any agency or instrumentality of a foreign government; and
    (4)    Any two or more person action as a group for the purpose of acquiring or holding any real property or any interest therein in the city (and each foreign person in such group), if any foreign person or persons described in subdivisions (1), (2) or (3) of this subsection hold an equity or ownership interest in such group of 25 percent or more, or the equivalent of such an interest.
    "Long-term lease" means a lease for a period exceeding 10 years, including any period for which the lessee has a right, whether or not conditional, to extend the lease.
    "Ownership of real property or an interest in real property" means and includes ownership of any long-term lease of real property, but shall not include ownership or any note, bond or other evidence of indebtedness, any put, call, straddle, option or privilege on any debt, or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase any debt; nor shall it include ownership of any mineral right or interest or any mere license.
    "Real property" means any land and any building, structure or other improvement upon any land. (Added by Ord. 90-68)

**Sec. 8-14.2   Reporting requirement.**
(a)    Any foreign person acquiring or transferring real property or an interest in real property in the city shall file, within 30 days of the acquisition or transfer, a report with the director on a form prescribed by the director pursuant to Section 8-14.3.
(b)    Any foreign person owning or holding real property in the city, or any interest therein on January 1st, shall file with the director, on or prior to April 30th of the same calendar year, a report on a form prescribed by the director pursuant to Section 8-14.3.
(c)    The report required to be filed pursuant to subsection (a) of this section shall state the following:
    (1)    The tax map key designation of the property.
    (2)    The identity, address, legal nature and nationality of each foreign person acquiring or transferring the real property or interest therein.
    (3)    The date of the acquisition or transfer.
    (4)    The consideration, if any, paid for the acquisition or transfer.
    (5)    The nature and percentage of the interest acquired or transferred.
(d)    The report required to be filed pursuant to subsection (b) of this section shall state the following with respect to the real property or any interest therein owned or held on January 1st:
    (1)    The tax map key designation of the property.
    (2)    The identity, address, legal nature and nationality of each foreign owner or holder of the real property or of any interest therein.
    (3)    When an owner or holder of real property or an interest therein in the city becomes a foreign person:
        (A)    The date upon which the owner or holder became a foreign person;

PE 01920

REVISED ORDINANCES OF HONOLULU

      (B)    The means by which the owner or holder became a foreign person;
      (C)    The date upon which the owner or holder initially acquired the real property or an interest therein; and
      (D)    The initial consideration, if any, paid by or on behalf of the owner or holder for the acquisition of the property or interest therein.
    (4)    The estimated market value of the real property and of the foreign person's interest therein.
    (5)    The nature and percentage of the interest of each foreign owner or holder.
(e)    In addition to the information provided pursuant to subsections (c) and (d) of this section, if any foreign person owning, holding, acquiring or transferring real property in the city or any interest therein is a corporation, the following shall be provided in the report:
    (1)    The state or nation of incorporation of the corporation.
    (2)    The name, address and nationality of the officers, directors and any foreign person holding 25 percent or more of any class of the capital stock of the corporation.
(f)    In addition to the information provided pursuant to subsection (c) or (d) of this section, if any foreign person owning, holding, acquiring or transferring real property in the city or any interest therein is a partnership, the name, address and nationality of any general partner and of any foreign person who is a limited partner owning or holding 25 percent or more of the equity in the partnership shall be provided in the report.
(g)    In addition to the information provided pursuant to subsection (c) or (d) of this section, if the foreign person owning, holding, acquiring or transferring the property or any interest therein is a trust, the name, address and nationality of all trustees thereof and of any foreign persons who are beneficiaries thereof owning or holding an interest of 25 percent or more of the income or res of the trust shall be provided in the report.
(h)    The term "hold," when used with respect to an interest, shall refer to the holding of that interest by the ultimate beneficial owner of that interest regardless of whether such interest is held directly or through a nominee or other financial intermediary.
(I)    The failure to receive a notice of assessment or a form prescribed pursuant to Section 8-14.3 shall not be an excuse for failure to comply with this section.
(Added by Ord. 90-68)

**Sec. 8-14.3   Director's duties and authority.**
(a)    The director of finance shall prescribe the forms for compliance with the reporting requirements of this article.
(b)    The director of finance shall provide the appropriate form to every person or entity to whom a notice of assessment is given pursuant to Section 8-2.1 and, upon request, to any other person.
(c)    The director of finance shall prepare, for every tax year, a report to the city council relating to the extent of foreign ownership of real property within the city within each class of property enumerated in Section 8-7.1. The report shall include information relating to the nationality of the owners of real property and interests therein in the city.
(Added by Ord. 90-68)

**Sec. 8-14.4   Penalties.**
    Any person failing to file a report required by this article or filing a false or fraudulent report shall be guilty of an offense and shall be fined not less than $50.00 nor more than $1,000.00 for each offense, or be imprisoned for a term not exceeding 30 days, or both. (Added by Ord. 90-68)

PE 01921

REAL PROPERTY TAX

## Article 15. Severability

**Sections:**
    **8-15.1 Severability.**

**Sec. 8-15.1   Severability.**
    The provisions of this chapter are declared to be severable. In accordance therewith, if any portion of said chapter is held invalid for any reason, the validity of any other portion of this chapter shall not be affected and if the application of any portion of this chapter to any person, property or circumstance is held invalid, the application hereof to any other person, property or circumstance shall not be affected. (Sec. 8-13.1, R.O. 1978 (1983 Ed.); Sec. 8-14.1, R.O. 1987 Supp.)

PE 01922

Revised Ordinances of Honolulu

### TABLE OF SECTIONS AFFECTED

| Section Affected: | AMENDING ORDINANCES: |
|---|---|
| 8-1.1 | Added by Ord. 80-72 |
| 8-1.14 | 01-06 |
| 8-2.1 | 92-20, 93-95, 96-15, 02-45 |
| 8-2.2 | 92-20, 96-15, 97-55, 02-45 |
| 8-3.1 | 92-124 |
| 8-3.3 | 89-147 |
| 8-3.5 | 96-15 |
| 8-4.2 | 92-38, 97-56 |
| 8-5.10 | Added by Ord. 90-19 |
| 8-5.11 | Added by Ord. 90-19 |
| 8-6.1 | 92-38, 00-64, 00-65 |
| 8-6.2 | 96-15 |
| 8-6.3 | 96-15 |
| 8-6.7 | 96-15 |
| 8-7.1 | 84-98, 91-84, 92-63, 94-8, 94-79, 00-66, 02-39, 02-45 |
| 8-7.3 | 84-98, 92-94, 94-79, 96-15, 02-39 |
| 8-7.4 | 96-15, 00-64 |
| 8-7.5 | 96-15 |
| 8-9.1 | 92-124, 02-45 |
| 8-10.1 | 88-01, 89-129, 95-67,96-15 |
| 8-10.1 | Added by Ord. 01-60 |
| 8-10.4 | 88-84, 89-132, 94-76, 96-15 |
| 8-10.5 | 92-63, 96-15 |
| 8-10.6 | 96-15, 00-63 |
| 8-10.8 | 89-138 |
| 8-10.10 | 88-01 |
| 8-10.11 | 96-15 |
| 8-10.12 | 96-15 |
| 8-10.13 | 96-15 |
| 8-10.15 | 96-15 |
| 8-10.17 | 95-67, 96-15 |
| 8-10.18 | 96-15 |
| 8-10.20 | 90-31, 02-68 |
| 8-10.21 | 02-68 |
| 8-10.22 | 96-15, 01-23 |
| 8-10.23 | 92-38, 92-63, 93-13, 93-112, 97-56, 00-65 |
| 8-10.24 | Added by Ord. 88-01 |
| 8-10.25 | Added by Ord. 93-6; 96-15 |
| 8-10.26 | Added by Ord. 99-42; 00-45, 02-39 |
| 8-10.27 | Added by Ord. 01-60 |
| 8-10.28 | Added by Ord. 02-68 |
| 8-11.1 | 92-75, 96-15, 01-60, 02-45, 02-68 |
| 8-12.1 | 96-15, 97-55 |
| 8-12.4 | 97-55 |
| 8-12.6 | 96-16 |
| 8-12.7 | 96-15, 96-16, 97-55 |
| 8-12.9 | 93-20 |
| 8-12.10 | 96-02 |
| 8-14.1 | Added by Ord. 90-68 |
| 8-14.2 | Added by Ord. 90-68 |
| 8-14.3 | Added by Ord. 90-68 |
| 8-14.4 | Added by Ord. 90-68 |

Ordinance 96-15 (Bill 10, 1996) amended various deadlines throughout ROH 8.

PE 01923