MAR-11-2005 FRI 01:53 PM            FAX NO. 808 bz1 7847            P. 06

**CONFIDENTIAL**

## CASE BIGELOW & LOMBARDI
### A LAW CORPORATION

PACIFIC GUARDIAN CENTER, MAUKA TOWER
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

January 22, 2003

JAN 2 2 2003
**ETHICS COMMISSION**

HAND DELIVERED

**CONFIDENTIAL**

Charles Totto, Esq.
Executive Director and Legal Counsel
Honolulu Ethics Commission
715 South King Street, Suite 211
Honolulu, Hawaii 96813-3091

Re: Philip English / Complaint of ethics violations at Real Property Assessment Division

Dear Mr. Totto,

This firm represents Philip English in this matter. Mr. English is an employee of the City and County of Honolulu, Department of Budget and Fiscal Services, Real Property Assessment Division.

This request is being made pursuant to ROH Sec. 3-6.6, and alleges both the possibility of conflict of interest and unethical conduct on the part of certain employees and officers of the City and County of Honolulu under the provisions of ROH Sec. 3-6.3(b). Specifically this request alleges both the violation of ROH Chapter 3, Article 6, and the provisions of Article XI of the Revised Charter of the City and County of Honolulu.

**Specific Activities:**

**1. Use of City Employees, on City time, with City equipment, for outside private business.**

For approximately the first 18 months after Mr. English was employed by the City, he became gradually aware and then quite certain that an Appraiser working near to him, Chris Graff, was doing work for a private appraisal firm of which the Division Administrator, Gary Kurokawa, was an owner and/or an officer. The name of the appraisal firm is GK Appraisers, and Mr. English understands that it is a Big Island firm. It is unknown whether or not this firm does any appraisal work on the Island of Oahu, but that is a possibility. The work was allegedly being done through a former employee of the Assessment Division, David Matsunami, who, in turn, worked for GK Appraisers. This activity may be continuing to the present date. Mr. Graff has indicated that he is usually paid in cash and that his name does not appear on any appraisals (a violation of professional standards at least, and perhaps of state law). On some of

MEMBER OF LEX MUNDI, THE WORLD'S LEADING ASSOCIATION OF INDEPENDENT LAW FIRMS


DEFENDANTS EXHIBIT 318

Charles Totto, Esq.
January 22, 2003
Page 2

**CONFIDENTIAL**

the earliest outside projects it is believed that Mr. Graff received payments directly from GK Appraisers. Subsequently, it is believed, payments came through David Matsunami.

Mr. English initially brought the subject up in approximately mid-2001, orally with Chris Graff and his immediate supervisors Ann Gima and Robert Magota. Nothing at all was done about the situation and on February 15, 2002 Mr. English made a complaint in writing through e-mail to Robert Magota. Apparently, Chris Graff has been advised to be "more discrete", which seems to be a caution against getting caught, rather than an admonition to cease the activity. It also appears that Chris Graff was told that he could continue to conduct these activities on his lunch break, on City equipment. Mr. English has continued to dispute the use of City equipment and also believes that permitting such activities on a lunch break is essentially a carte blanche to continue altogether. Finally, it now appears that telephone contact about this work now goes through Mr. Kurokawa's secretary rather than directly to Chris Graff. This is probably because Mr. English shares a telephone line with Chris Graff and the new system would decrease Mr. English's awareness of the problem.

Despite an absolute absence of any training program, Mr. English's tenure with the Assessment Division was very pleasant and successful until the time he raised this issue. After that time, beginning in approximately October of 2001, Mr. English began receiving numerous conflicting directions and unwarranted criticisms. His application for promotion to Appraiser IV was delayed numerous times by causes such as "lost your paperwork". When he was finally promoted, the administration attempted to impose additional and unwarranted probation period. During the course of this whole ordeal, Mr. English has been ostracized and shunned by many of his co-workers and supervisors. The retaliation was and continues to be very unpleasant and almost unbearable at times.

In addition to the above-referenced outside private business activities, Chris Graff also appears to conduct private business for a bar in Waikiki called "Arnolds", in which Mr. Graff is a reputedly part owner. Mr. Graff's "partner" in this business is understood to be "Randy Spears" although Mr. English is not certain of the exact name. Apparently Mr. Spears owns the parking garage at the Hawaiian Monarch. Also it is believed that Mr. Spears recently was arrested for tax evasion by the IRS. The assessment of the Hawaiian Monarch parking garage should be thoroughly examined as well.

**2.   Granting of improper property tax exemptions to Assessment Division Administrator.**

On this matter, Mr. English has no present direct evidence. However, Mr. English has been informed that, in the past, Gary Kurokawa has taken real property tax exemptions to which he was not entitled. Apparently when it was brought to Mr. Kurokawa's attention, he professed ignorance and the exemptions were removed. There are two bothersome things about this: first, there is no possible way that a person who has been with the Division as long as Gary Kurokawa could have been ignorant of the requirements for exemptions; and second, just removing the exemptions was not a proper remedy. The matter should have been investigated, any amounts owed to the City should have been reimbursed, and disciplinary action should have been taken.

MAR-11-2005 FRI 01:54 PM                    FAX NO. 808 ___ 7647          P. 07

CONFIDENT

Charles Totto, Esq.
January 22, 2003
Page 3

**3. It appears that a high level supervisor is being rewarded for his role in keeping the theft of City time and services quiet.**

Mr. Robert Magota is in the process of being promoted to a newly created position, directly beneath Mr. Kurokawa. Previously Mr. Magota was one of two supervisors directly beneath Mr. Kurokawa. The management structure has been changed and enlarged for no apparent reason to add the new position, which is being filled by Mr. Magota. There is widespread, if not near universal, concern among the rest of the staff that there is absolutely no purpose for the additional level of management. This additional expenditure is occurring at a time when the Division is seriously understaffed and there are not enough resources to properly do the job of assessing properties on Oahu.

When Mr. English reported the use of City personnel and equipment for Mr. Kurokawa's private business purposes to Mr. Magota, Mr. English was advised by Mr. Magota that if anything was going on it was Chris Graff's fault and not Gary Kurokawa's. Mr. Magota further told Mr. English that it would be just Mr. English's word against "his" and just because an employee makes a complaint does not mean something is going on. Mr. Magota could easily have searched Chris Graff's computer files and conducted an investigation, but he apparently did not do so. In fact, Mr. Magota has several times told Chris Graff to purge such files from his computer. In other words, Mr. Magota has specifically instructed Chris Graff to cover up the activity. It is our contention that Mr. Magota had an absolute duty to conduct a thorough investigation of this problem, because he was the highest level supervisor beneath Gary Kurokawa and Gary Kurokawa was obviously conflicted in dealing with this matter. The clear appearance is that Mr. Magota is now being rewarded for his part in keeping the improper activity quiet, again, a misuse of City funds for the administrator's personal benefit.

**4. Mr. English is being retaliated against, and his reputation in the community tarnished because of his questioning the improper use of City personnel and equipment and because of his questioning of the propriety and reliability of the methodology and systems used by the Assessment Division.**

Mr. English was informed by one of his co-workers, Julie Tamayori, in late May of 2002 that he was being "watched" by Mr. Magota. When this was brought up to his direct supervisor, Ann Gima, the almost immediate result was that someone apparently spoke to Ms. Tamayori and she no longer had such communications with Mr. English. Ms. Tamayori was apparently threatened or chastised for giving Mr. English such information.

Mr. English has been "dressed down" and belittled in front of his co-workers because he raised and asked questions about ethical and professional issues and because he has pointed out that some of the methodology (example in matters of depreciation) dictated by management was not accepted by the appraisal profession and could not be reliably used to value property.

Mr. English has reportedly been the subject of comments by Mr. Magota, that he is mentally unstable (actual term "wacko"). Mr. English has also reportedly been the subject of negative comments by Mr. Magota to the private appraisal profession, to the effect that Mr. English is a "troublemaker" (to an MAI named Jim Stanney who works for KPMG).

There has been some discussion (at least once in the November 22, 2001 meeting) about assigning Mr. English to Kapolei or to work directly under Mr. Magota's supervision. Mr. English believes that this has come up in the context of being a thinly veiled threat. Either

AUG-07-2006 11:48 AM    D VON GUENTHNER & ASSOC    808 395 1201    P.06

CONFIDEN[TIAL]

Charles Totto, Esq.
January 22, 2003
Page 4

action would also be severely retaliatory, as Mr. English would have great difficulty in traveling to Kapolei every morning and it is plain that Mr. Magota's "supervision" can only be a mechanism for making Mr. English's life miserable and building some sort of case against him.

A meeting, on Friday, November 22, 2002, with union representative and Gary Kurokawa was not anything more than an orchestrated attempt to cram a pre-planned "settlement" down Mr. English's throat. The "settlement" offered was that the improper probation would be ended, certain negative references would be taken out of Mr. English's file, and everything would be hunky dory. However, each time Mr. English tried to bring up the basic underlying issues, which caused the retaliation, i.e. his complaints about the use of City personnel and equipment for private purposes and the improper methodology and practices of the Division, he was directed not to discuss those issues. After the meeting Mr. English met separately with the union representative, who told him that he was a personal friend of Gary Kurokawa's and nothing else would be done.

All of these events occurred after Mr. English first complained about Chris Graff working on City time, with City equipment, for Gary Kurokawa's private appraisal company. The only reasonable conclusion is that Mr. English has suffered and continues to suffer from retaliation for his objections to illegal and improper practices in the Assessment Division.

**5.   The City has mailed out assessment notices, which are known to be inaccurate, and which will result in the collection of taxes, which the taxpayers do not owe.**

Mr. English has advised his supervisors that the assessments that are sent out are not reliable, and many are absolutely known to be erroneous, because, among many other reasons, inadequate resources are devoted to making the various valuation "models" reliable. Furthermore, for the most recent assessment notices, Mr. English was advised that the office policy, apparently set by Mr. Magota, maybe or maybe not with Mr. Kurokawa's approval, is, that even where the Division knows mistakes have been made, no corrections would be undertaken unless appeals were filed by the taxpayers on those assessment notices. There are numerous instances of known mistakes and incorrect assessment notices, which have been intentionally sent through the mail to property owners. Presumably the City will next be mailing out tax bills and collecting taxes the City knows it is not entitled to collect. This probably violates Federal mail fraud and racketeering laws.

Mr. English has also advised his supervisors that the workload of the City appraisers far exceeds the generally acceptable norm for assessment offices throughout the country. This information was initially obtained by Mr. English in an IAAO class attended by all of the appraisers in the office (sometime in 2001). Mr. English has advised his supervisors that this excessive workload has resulted in and will continue to result in assessments, which are known to be inaccurate and known to be in violation of law and professional standards. This office specifically believes this to be a violation of ROH Sec. 8-7.1(a)

Apparently at a recent hearing before the City Council, Mr. Magota and Mr. Kurokawa testified in a manner, which essentially misled the Council about, and covered-up, the serious deficiencies at the Assessment Division. One would think that the law required a truthful and frank revelation of what was happening and what was needed to remedy the problems. This opinion has specifically been voiced by Mr. English on earlier occasions to Mr. Magota.

03/11/2005 15:42 FAX 808 54463   WATANABE ING KAWASHIMA
FAX NO. 808 521 7847   P. 08
MAR-11-2005 FRI 01:55 PM

**CONFIDENTIAL**

Charles Totto, Esq.
January 22, 2003
Page 5

It is Mr. English's contention that the activities outlined above (which are not intended to be a complete list of every impropriety) are violative of the stated standards of conduct set forth in Article XI of the Revised Charter: "Elected and appointed officers shall demonstrate by their example the highest standards of ethical conduct, to the end that the public may justifiably have trust and confidence in the integrity of government."

Finally, as you are aware, this firm also represents more than one hundred taxpayers with appeals before the Board of Review. In this context, Mr. English is technically assigned to most of these cases. His authority to act in these cases has apparently been mostly or completely removed, and he now functions, and has functioned for quite some time, merely as a conduit for instructions from higher up, with essentially no discretionary powers. However, now that we have an attorney-client relationship with Mr. English, he and we believe that further communications on substantive matters in these cases may not have the appearance of propriety. For this reason, we would request that you inform the Assessment Division that Mr. English should be removed from any duties working on appeals in which this firm represents the taxpayers. Care needs to be taken, however, that the Assessment Division does not use this as an excuse to reassign Mr. English in some retaliatory manner.

Mr. English has already provided you with some documents reflecting the above-referenced issues. Mr. English remains committed to full cooperation with any investigation undertaken.

Thank you very much for your kind assistance.

Very truly yours,

Roger S. Moseley

I AGREE WITH THE CONTENTS OF THIS LETTER AND REQUEST THAT AN INVESTIGATION OF THESE MATTERS BE UNDERTAKEN AND I FURTHER REQUEST AN OPINION OF THE ETHICS COMMISSION ON THESE MATTERS.

Philip English

January 31, 2003
Dated

RSM/kno

AUG-07-2006 11:49 AM   D VON GUENTHNER & ASSOC   808 595 1201   P.08