01/25/2006  15:04  527-6936   ETHICS COMMISSION   PAGE 01

Orgl
To
Cal

**ETHICS COMMISSION**
# CITY AND COUNTY OF HONOLULU

715 SOUTH KING STREET, SUITE 211, HONOLULU, HAWAII 96813-3091
Phone: (808) 527-5573 • Fax: (808) 527-6936 • EMAIL: ethics@honolulu.gov
Internet: www.honolulu.gov/ethics

MULIUFI HANNEMANN
MAYOR



CHARLES W. TOTTO
EXECUTIVE DIRECTOR & LEGAL COUNSEL

January 25, 2006

Via Facsimile No. 527-5631

Carrie K.S. Okinaga
Corporation Counsel
530 S. King St., Room 110
Honolulu, HI 96813

Via Facsimile No. 534-0202

Roger S. Moseley, Esq.
Alakea Corporate Tower
1100 Alakea St., 23rd Fl.
Honolulu, HI 96813

Re: Comments on Ethics Commission's draft advisory opinion in EC No. 05-159(w)

Dear Ms. Okinaga and Mr. Moseley:

This informs you that the Honolulu Ethics Commission will accept written comments from your offices to the draft opinion. The submission must be filed by February 7, 2006. You may also submit oral comments to the Commission at its February 16, 2006 meeting. I have enclosed a copy of the draft opinion.

Because the draft opinion deals with facts that may be considered confidential, the Commission requests that your comments be kept confidential until the Commission renders its formal advisory opinion in this matter.

Should you have any questions, please contact me.

Sincerely,

CHARLES W. TOTTO
Executive Director and Legal Counsel

CWT:nnf

Enclosure

cc: Matthew J. Viola, Esq. (w/encl.)


PLAINTIFF'S EXHIBIT 1013

1  **DRAFT**

2  **CONFIDENTIAL**

3  Advisory Opinion No. 2006-___

4

5  **I.  Summary**

6  A former city employee intends to disclose confidential information, which he
7  obtained as a result of his city position, to a court in connection with litigation that he has
8  no direct personal interest in.  While the city's ethics laws, specifically Revised Charter
9  of Honolulu (RCH) § 11-102(b), ordinarily prohibit city employees from disclosing
10 confidential information, the disclosure in this case might be constitutionally and
11 statutorily protected.  Accordingly, the Commission analyzes whether the proposed
12 disclosure would violate city's ethics laws in light of these protections.  It adopts an
13 approach to analyzing potential violations of RCH § 11-102(b) that takes into account
14 public employees' constitutional and statutory free speech protections, which requires the
15 consideration of specific factors, including the subject matter and context of the speech.
16 In this instance, because the intended disclosures: (1) address a matter of public concern;
17 (2) arguably reveal a violation of law or court rules; and (3) are not knowingly false, the
18 disclosures would not constitute a violation of RCH § 11-102(b).

19 **II.  Background Facts**

20 Attorney Roger Moseley represents a number of apartment owners who have been
21 involved in long-standing litigation with the city regarding how the city classified their
22 property for tax purposes (the Litigation).  Mr. Moseley also represents Phil English, a
23 former appraiser in the city's Real Property Assessment Division (RPAD), in other unrelated
24 matters.
25
26 Mr. Moseley has requested advice from the Ethics Commission on behalf of Mr.
27 English related to the disclosure of information that Mr. English obtained in connection
28 with his city employment.  According to Mr. Moseley, Mr. English "was a percipient
29 witness as well as an expert witness" in many of the matters that comprised the Litigation
30 and may have information that he believes is relevant to the cases.  Specifically, Mr.
31 Moseley states that: (1) Mr. English observed one of his former supervisors "sanitizing
32 files" (including removing relevant documents) that were to be produced in the course of
33 the Litigation; and (2) his former supervisor told Mr. English that she was doing so at the
34 direction of a Corporation Counsel deputy attorney.  Mr. Moseley has provided us with
35 an affidavit in which Mr. English attests to these basic facts.
36
37 Mr. Moseley intends, as long as it does not cause Mr. English to be in violation of the
38 city's ethics laws, to submit Mr. English's affidavit to the tax appeals court, apparently in
39 support of a post-judgment motion he intends to file.

### III. Specific Request for Advice

On behalf of Mr. English, Mr. Moseley has requested advice "as to whether Mr. English would violate any standards of conduct or code of ethics of the City, if his testimony (by written document/affidavit or otherwise) were used."[1]

### IV. Analysis

#### A. Applicable Ethics Provision

Our analysis starts with RCH § 11-102(b), which prohibits the "[d]isclos[ure of] confidential information gained by reason of [an elected or appointed officer or employee]'s office or position or [the] use [of] such information for the personal gain or benefit of anyone."

The critical inquiry under RCH § 11-102(b) is whether the information Mr. English wants to disclose – essentially his personal observations of his supervisor's alleged activities and her verbal statements to him – is "confidential." In our past advisory opinions, we have employed a broad definition of the term, deeming any information that is not generally available to the public to be confidential. *See, e.g.,* Ad. Op. No. 2001-2 ("confidential information is information which is not readily available to the public"); Ad. Op. No. 127 (reports to a council committee chair are confidential until they become part of the public record); Ad. Op. 68.

The information contained in Mr. English's affidavit, which we assume to be true for purposes of our analysis, falls within our broad definition of confidential. He made his observations in a setting that the general public does not have access to, and his supervisor allegedly made statements about ongoing litigation that she presumably would not have made to the general public. *Cf.* Ad. Op. No. 129 (describing as "confidential" a councilmember's non-public "reaction" to a proposed bill).

In addition to the information being confidential, the other elements of RCH § 11-102(b) are present. First, Mr. English was in a position to gain access to the information he intends to disclose as a result of his city position. Further, Mr. English intends to disclose the information to the tax appeals court, where it will presumably be used by Mr. Moseley to attempt to benefit his other clients in the Litigation.

Therefore, if we were to analyze this matter without reference to any other laws, our precedent and the plain language of RCH § 11-102(b) would lead us to conclude that Mr. English would be in violation of RCH § 11-102(b) were he to disclose the information in his affidavit.

---

[1] Mr. English no longer works for the city. Nevertheless, because Mr. English requested an opinion before he left the city and because his request raises an important issue that the Commission has not addressed, the Commission will respond to his request as if he were still a city employee.

We cannot apply our ethics laws, however, with blinders on. Rather, we must be mindful of the fact that our ethics laws often intersect with other laws, and we are obliged to avoid, where possible, interpretations and applications of our ethics laws that conflict with other laws. As we discuss below, we believe that finding a violation of RCH § 11-102(b) under the facts before us might conflict with Mr. English's constitutional and statutory rights.

B. Constitutional and Statutory Issues

1. First Amendment

City employees such as Mr. English clearly have First Amendment free speech rights, and the city's ability to impose discipline against employees who have legitimately exercised those rights is therefore limited. As we recently stated:

> The United States Supreme Court has long-recognized that an employee does not abandon his or her First Amendment rights simply by agreeing to work for a public entity. A city therefore may not discipline an "employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896 (1987)[.]

Advisory Opinion No. 2004-4 (other citations omitted). While the government may impose restrictions on the free speech rights of public employees, those restrictions must be limited when the speech involves matters of public concern.

> In general, the government's restrictions on a public employee's freedom of speech are subject to a balancing test: the employee's interest in commenting on matters of public concern is weighed against the interest of the government as an employer in promoting the efficiency of the public service it performs through its employees. *Pickering v. Board of Education, supra.* "The balancing test differs depending upon the type of expression, the nature of the agency, and the context in which the expression is made.'" Advisory Op. 2002-5 (Dec. 17, 2002) (quoting *Martin v. Lauer*, 686 F.2d 24, 31 (D.C. Cir. 1982)).

*Id.* (footnote omitted). A public employee therefore has a constitutional right to speak out on matters of public concern -- as opposed to matters of private concern, which are generally not constitutionally protected -- as long as his/her interest outweighs the government's interest in the efficient conduct of its operations. This right to speak about matters of public concern may even extend to the disclosure of otherwise confidential information.

Whether a matter is of "public" or "private" concern depends on the particular facts. The courts, however, have established certain criteria to distinguish the two. In general, the distinction between public and private speech can be characterized as "the difference between an employee complaining about matters private to himself, such as whether he was

3

being paid enough or given deserved promotions, as compared to an employee who is engaged in whistle blowing or otherwise going public with matters in which the public might be expected to take an interest." *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1349 (7th Cir.1995) (citing *Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir.1994)). The phrase "public concern," does "not mean matters of trancendent importance, such as the origins of the universe or the merits of constitutional monarchy; [it] mean[s] matters in which the public might be interested, as distinct from wholly personal grievances ⋯ and casual chit-chat." *Dishnow v. Sch. Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir.1996).

Thus, matters of public concern include speech that "relat[es] to any matter of political, social, or other concern to the community[,]" *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684 (1983), and involve "'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983)). It includes speech informing the public that a governmental entity failed to "discharg[e] its governmental responsibilities" or "bring[ing] to light actual or potential wrongdoing or breach of public trust" by government officials. *Connick*, 461 U.S. at 148, 103 S.Ct. 1684. For example, the potential violation of the law by government and public organizations is a matter of public concern. *See, e.g., Charvat v. Eastern Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 617-18 (6th Cir.2001); *Perry v. McGinnis*, 209 F.3d 597, 605 (6th Cir.2000).

On the other hand, "internal personnel disputes or complaints about an employer's performance" do not touch upon a matter of public concern and therefore generally fall outside the scope of First Amendment-protected speech. *Brandenburg*, 253 F.3d at 898. For example, a state hospital employee's argument "that a letter be sent to the Board of Trustees declaring the lack of confidence with [the administrator] was nothing more than an example of the 'quintessential employee beef' of incompetent management." *Jackson v. Leighton*, 168 F.3d 903, 910-11 (6th Cir.1999)) (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir.1988) (internal citation in *Barnes* omitted)).

In our view, the information that Mr. English wants to disclose constitutes a matter of public concern, insofar as it involves alleged wrongdoing by city officials. Although his affidavit centers on alleged misconduct in a particular case, it could be fairly read to make the larger point about dishonesty in the RPAD and therefore the quality of tax assessments, which would involve an issue of general concern to the community. *See Finn v. New Mexico*, 249 F.3d 1241, 1247 (10th Cir. 2001) (quoting *Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir.1988)) (A government employee's "[s]peech that seeks to expose improper operations of the government or questions the integrity of government officials clearly concerns vital public interests."); *see also Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir. 1998) (internal citations omitted) (holding that "speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials ⋯ clearly concerns matters of public import.").

In addition, we seriously doubt that the city's interest in the efficient conduct of its operations necessarily outweighs Mr. English's interest in disclosing his observations. His

4

affidavit addresses alleged misconduct in connection with litigation, which arguably falls outside of the RPAD's core functions. Thus, we question whether Mr. English's disclosures would negatively affect or be disruptive to RPAD's ability to efficiently achieve its goals.[2]

Accordingly, there is a strong possibility that Mr. English's proposed disclosure of the information in his affidavit is constitutionally protected. To be clear, we are not making a definitive determination on that point; the fact, however, that Mr. English's speech *might* be protected is a sufficient basis for us to avoid a reflexive finding of a RCH § 11-102(b) violation. Stated otherwise, we are hesitant to conclude that Mr. English's submission of his affidavit to the tax appeals court constitutes a violation of RCH § 11-102(b) solely because it contained confidential (*i.e.*, non-public) information, because of our concerns that such a rigid interpretation might violate Mr. English's constitutional free speech rights.

2. <u>Whisteblowers' Protection Act</u>

We are also concerned that finding that Mr. English violated RCH § 11-102(b) might run counter to the State Whisteblowers' Protection Act, Hawaii Revised Statutes (HRS) § 368-61 *et seq.*, which generally protects employees (including public employees) who make reports of actual or suspected wrongdoing to their employers or government agencies. HRS § 378-62 provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>
> (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or
>
> (B) A contract executed by the State, a political subdivision of the State, or the United States,

---

[2] Factors that courts generally consider to be relevant to evaluating the strength of the government's interest in limiting an employee's speech include whether the speech would "meaningfully interfere with the performance of [the employee's] duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Williams v. Kentucky*, 24 F.3d 1526, 1536 (6th Cir.1994). In weighing the competing interests, courts have "given substantial weight to government employers' reasonable predictions of disruption." *Waters v. Churchill*, 511 U.S. 661, 673, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994).

5

1           unless the employee knows that the report is false; or

2       (2)    An employee is requested by a public body to
3       participate in an investigation, hearing, or inquiry held by that
4       public body, or a court action.

5      Mr. English's disclosure of the information in his affidavit is arguably protected activity under the Whistleblowers' Protection Act. First, Mr. English would be making his disclosure to a public body (the tax appeals court) and he would be reporting conduct that — if it were true — is arguably a violation of court rules and perhaps could even be characterized as fraud. In addition, we have no information that Mr. English knows his report is false.

10      Thus, if we were to find that Mr. English's disclosure to the tax appeals court of the information in his affidavit constituted a violation of RCH § 11-102(b), which would ordinarily subject him to discipline, he might have a claim under the Whistleblowers' Protection Act. Again, we are not making a definitive determination that he would have such a claim. The possibility that he *might*, however, persuades us that we need to take that possibility into account in analyzing whether Mr. English would be violating RCH § 11-102(b) by his disclosures.

17     C.    <u>Approach to Analyzing Possible Violations of RCH § 11-102(b)</u>

18      In order to avoid the potential conflicts outlined above, we adopt an approach to analyzing potential violations of RCH § 11-102(b) that takes into account public employees' constitutional and statutory free speech protections. Specifically, when considering whether an employee has violated RCH § 11-102(b) by disclosing confidential information (*i.e.*, information that is not generally available to the public), we will consider the following factors:

24       1.    <u>Does the disclosure address a matter of public concern?</u> If it does not, then finding a violation of RCH § 11-102(b) would very likely not be inconsistent with the employee's constitutional or statutory rights. If, however, the speech does address a matter of public concern, this factor should weigh heavily against finding a RCH § 11-102(b) violation.

30       2.    <u>Does the information relate to a violation or a suspected violation of a "law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or . . . [a] contract executed by the State, a political subdivision of the State, or the United States"?</u> HRS § 378-62. Again, the disclosure of this sort of information is likely to be constitutionally and statutorily protected.

37       3.    <u>Did the employee making the disclosure know the information was false?</u> Disclosing information known to be false is probably not a protected activity, and thus finding a violation of RCH § 11-102(b) would not be problematic.

6

4. <u>Does the employee's appointing authority consider the information to be confidential, or would it be required to be disclosed under applicable law?</u> As noted above, the Commission's definition of confidential is broad. Some city departments may have their own policies defining what sort of information is confidential and their definitions can be narrower than the Commission's. It would be anomalous for the Commission to find that an employee has violated RCH § 11-102(b) by disclosing information that his/her own appointing authority does not consider confidential. In addition, the Uniform Information Practices Act (Modified), HRS chapter 92F (the "UIPA") requires that many government records and other information be made generally available for public inspection and duplication, unless certain specified exceptions apply. Information that ordinarily would have been required to be disclosed under the UIPA would ordinarily not be deemed confidential under RCH § 11-102(b).

The consideration of the foregoing factors, of course, must be done on a case-by-case basis, and it may not be apt in certain cases (for example, cases in which the allegation is that a city employee has used, but not disclosed, confidential information). We recognize that the case-by-case approach may have drawbacks (*e.g.*, a lack of certainty). However, we do not believe that there is an acceptable alternative that adequately takes into account the constitutional and statutory concerns the Commission needs to consider.

V.  **Conclusion and Recommendation**

In applying the approach set forth above to the disclosures that Mr. English wants to make, we find that he would not be in violation of RCH § 11-102(b). As noted above, his disclosures, which are intended to be made to a public body: (1) address a matter of public concern; (2) arguably reveal a violation of law or court rules; and (3) are not knowingly false.[3]

Accordingly, we conclude that the disclosure of Mr. English's affidavit to the tax appeals court would not constitute a violation of RCH § 11-102(b). We wish, however, to be very clear about the limits of our opinion. First, our opinion does not mean that we necessarily believe that the allegations in Mr. English's affidavit are in fact true, nor does it mean that we believe that the subjects of his affidavit (his supervisor and the Corporation Counsel deputy attorney) have actually engaged in any wrongdoing. For the purposes of our analysis, and in the absence of information that the allegations are knowingly false, we have simply taken them at face value. As far as we are concerned, however, at this point they remain allegations.

Second, our opinion is limited only to the city's ethics laws. Mr. English should understand that the disclosure of the information in his affidavit might be prohibited by other

---

[3] We do not have any information that the RPAD has a confidentiality policy that would classify the information that Mr. English wants to disclose as confidential. Even if it did, however, that fact would not matter; we have assumed that the information is confidential.

7

1  laws. Finally, Mr. English should also understand that the Commission's opinion addresses
2  only the disclosure of the specific information contained in the affidavit and that the
3  disclosure of additional information or in other contexts is not necessarily permitted under
4  the ethics laws.
5

6  Dated: ____, 2006

7

8  _____, CHAIRPERSON
9  Ethics Commission

8