ETHICS COMMISSION
# CITY AND COUNTY OF HONOLULU

715 SOUTH KING STREET, SUITE 211, HONOLULU, HAWAII 96813-3091
Phone: (808) 527-5573 • Fax: (808) 527-6936 • EMAIL: ethics@honolulu.gov
Internet: www.honolulu.gov/ethics



MUFI HANNEMANN
MAYOR

CHARLES W. TOTTO
EXECUTIVE DIRECTOR & LEGAL COUNSEL

July 6, 2006



Re:  Complaint regarding Susan Siu
     EC No. 05-154(w)

This is in response to the complaint you submitted to the Honolulu Ethics Commission (the Commission) by email on November 16, 2005, alleging that Susan Siu, Chief Investigator for the Honolulu Department of the Medical Examiner (DME), violated the city's ethics laws by disclosing confidential information to KITV4 reporter Keoki Kerr. You pointed to two instances, the first involving certain facts surrounding the death of a man who fell from his lanai, and the second involving the DME's document disposal practices.

I. Analysis

   A. Relevant Ethics Law

Revised Charter of Honolulu (RCH) § 11-102(b) prohibits the "[d]isclos[ure of] confidential information gained by reason of [an elected or appointed officer or employee]'s office or position or [the] use [of] such information for the personal gain or benefit of anyone." In its advisory opinions, the Commission has deemed any information that is not generally available to the public to be confidential. *See, e.g.*, Ad. Op. No. 2001-2 ("confidential information is information which is not readily available to the public"); Ad. Op. No. 127 (reports to a council committee chair are confidential until they become part of the public record); Ad. Op. 68.



7/6/2006
Page 2 of 5

### B. Death Investigation

Your complaint refers to a "television feature where Keoki showed on the air the address of the decedent and discussed specific details of the scene, including the position of the chair on a lanai." You state that "Ms. Siu may have divulged this and related confidential information to him for this story."

We have reviewed the report to which your complaint refers.[1] In the report, Ms. Siu made (or was attributed with making) the following statements:

- "We have only one chance, one chance to do this. And if we screw up, we're going to lose it."

- She said some sloppy and inexperienced investigators have botched recent death investigations.

- "In this case, it was a poor investigation. That's what she [Dr. De Alwis] based her findings on."

- Siu said the investigator from her office who handled the case, failed to take accurate measurements and didn't take enough photos of the death scene.

- "I agreed with the insurance agent. I agreed with the homicide detective. And (De Alwis) was very upset about that. And (De Alwis) told me to call the homicide detective and tell her how upset she was with her, and I refused to do that."

It is our conclusion that none of these statements involve the disclosure of specific factual information that would be deemed confidential under RCH § 11-102(b) and the Commission's precedent. Rather, they involve general opinions and non-specific information about the investigation. For instance, Ms. Siu's statement regarding her beliefs about the particular shortcomings of the investigation indicates that some death scene photographs and (allegedly) inaccurate measurements were taken. These statements, however, do not disclose any specific factual information about what the measurements were, why they were inaccurate, how many photographs were taken or what they depicted. Instead, they only reveal that certain investigatory steps (which we presume are standard) were taken and Ms. Siu's belief that they were inadequate.

---

[1] See http://www.thehawaiichannel.com/news/5282031/html.detail (*Investigator Says Examiner's Office "Botched Death Investigations"* (posted November 8, 2005)) for a printed version of the report.

▬▬▬▬▬▬

7/6/2006
Page 3 of 5

As a result, we have concluded that there is insufficient information for the Commission to conclude that there is probable cause to believe that Ms. Siu violated the city's ethics laws, including RCH § 11-102(b).[2]

C. <u>DME's Document Disposal Practices</u>

Your complaint also points to statements that Ms. Siu made to Mr. Kerr in connection with another KITV4 News report addressing the DME's disposal of potentially sensitive or confidential documents.[3]

In the story, Mr. Kerr reported that he had "found unshredded documents sitting in a trash bag on the street outside the medical examiner's office that contained sensitive, personal information about people who've recently died." The documents that Mr. Kerr found included information relating to a pending murder trial and death notices containing the names, addresses, social security numbers and dates of birth of recently deceased people.

Your complaint states that "Ms. Siu may have directed [Keoki Kerr] to search Medical Examiner garbage bags. If this is so, she would have known or would have had reason to suspect that he would find Medical Examiner documents."

The documents that were the subject of the KITV4 story were, according

---

[2] Your complaint suggests that Ms. Siu may have disclosed more specific information regarding the investigation such as "the address of the decedent[,]"and "the position of the chair on a lanai." We do not have any information that Ms. Siu disclosed these specific details to Mr. Kerr. In addition, these facts appear to be included in the autopsy report and the death investigation report. The disclosure of information in these reports would only violate RCH § 11-102(b) if the reports were not generally available to the public. We note that the DME's "Release of Information" policy indicates that autopsy reports typically are publicly available, but investigative reports are not. As the policy notes, however, the availability to the public of government records, including the DME's autopsy and death investigation reports, is controlled by the Uniform Information Practices Act (UIPA), Hawaii Revised Statutes (HRS) chapter 92F. In general, the State of Hawaii Office of Information Practices (OIP) makes determinations as to whether government documents such as the autopsy and death investigation reports must be disclosed to the public. Thus, even if there were specific evidence that Ms. Siu disclosed facts that were in the autopsy and death investigation reports, that would constitute a violation of RCH § 11-102(b) only if the UIPA did not require the disclosure of those reports, which is a determination the Commission would ordinarily let the OIP make.

[3] See http://www.thehawaiichannel.com/news/5300198/html.detail (*Information Security Weaknesses Found at Medical Examiner's* (posted November 10, 2005, Updated November 11, 2005)) for a printed version of the report.



7/6/2006
Page 4 of 5

to Mr. Kerr, "found [in] trash bags in an unsecured area, on the public sidewalk outside the medical examiner's office." In other words, the documents were available to any member of the public who wanted to pick through the rubbish bags.[4]

As noted above, RCH § 11-102(b) prohibits only the disclosure of "confidential" information, which the Commission defines as "information which is not readily available to the public." Ad. Op. No. 2001-2. Because the documents Mr. Kerr found were "readily available to the public," *id.*, they were not "confidential" under RCH § 11-102(b).

The issue of whether the documents that Mr. Kerr retrieved from the DME's garbage *should have* been kept confidential or *should have* been discarded in a form that rendered them unreadable (*e.g.*, shredded) does not change that fact that they were left unshredded in garbage bags on a public sidewalk, available for anyone to pick through and read.

Even if Ms. Siu alerted Mr. Kerr to the location of the documents, as your complaint suggests, that would not constitute a violation of RCH § 11-102(b). Assuming Ms. Siu played a role in the documents' disclosure, the critical issue is whether the documents were confidential when Mr. Kerr went through the garbage bags. Because the documents were left unsecured in a public place, they were not confidential.[5]

As a result, we do not find that there is probable cause to believe that Ms. Siu's statements to Mr. Kerr constituted a violation of RCH § 11-102(b).

---

[4] Based on Ms. Siu's August 9, 2004 memo ▓▓▓▓▓▓▓▓▓▓, we understand that this was not the first time that someone rifled through documents in the DME's trash bags.

[5] Your complaint suggests that Ms. Siu was responsible for the documents being left out on the street, insofar as you say that "it is the primary responsibility of the Chief Medical Examiner Investigator to develop, maintain, and monitor DME garbage disposal practices." The Chief Investigator's job descriptions that we have reviewed, however, do not explicitly assign this responsibility to the Chief Investigator. Assuming, however, that it was her responsibility to develop and implement a garbage disposal practice for the DME, the information that we have (which was confirmed by Dr. De Alwis in Mr. Kerr's story) was that Ms. Siu frequently asked for money to buy a paper shredder, but was told by Dr. De Alwis that there were no funds available. Thus, we do not have any basis to conclude that Ms. Siu was personally responsible for the fact that the specific documents Mr. Kerr found were left unshredded in garbage bags outside of the DME's offices.

7/6/2006
Page 5 of 5

## II. Conclusion

In sum, we have concluded that there is insufficient information for the Commission to conclude that there is probable cause to believe that Ms. Siu violated the city's ethics laws, including RCH § 11-102(b). You should understand that the foregoing constitutes the opinion of the Commission's staff, and reflects its opinion as to how the Commission would rule were it presented with this issue. If you wish to have the Commission formally consider your inquiry, please submit your request in writing.

Thank you for bringing this matter to the attention of the Commission, and please contact us if you have any questions or wish to discuss this matter further.

Sincerely,

MATTHEW J. VIOLA
Attorney for the Honolulu Ethics Commission

cc: Susan Siu (with identity of complainant redacted)
Mark Beatty, counsel for Susan Siu (with identity of complainant redacted)