IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII
CIVIL NO. 04-00108 JMS KSC
ENGLISH v CITY & COUNTY OF HONOLULU

IN RE: DEPOSITION OF PHILIP E. ENGLISH, VOLUME I

CORRECTION SHEET - RETURN BY NOVEMBER 15, 2005

| PAGE | LINE | CORRECTION | REASON |
|------|------|------------|--------|
| 14 | 15 | add "lessons" after trumpet | clarity |
| 18 | 4-5 | add "more than" before "five years" | clarity |
| 23 | 19-20 | change "San Bernadino" to "San Marino" | accuracy |
| 27 | 9 | change "ago" to "before" | accuracy |
| 28 | 19 | change "marriage" to "maiden name" | accuracy |
| 29 | 13 | add "recollection" after "best" | clarity |
| 30 | 12 | change "yes" to "my best recollection" | clarity |
| 32 | 15 | change "Shawn" to "Sean" | incorrect spelling |
| 33 | 16 | change "another activity" to "other activities" | accuracy |
| 36 | 24 | change "1986" to "1996" | typo |
| 46 | 10 | add "or 2000" after "1999" | accuracy |
| 51 | 21 | change "got" to "have" | clarity |
| 55 | 11 | change "employee" to "employer" | accuracy |
| 58 | 2 | change "That's correct" to "Not exactly" | clarity |
| 59 | 16 | change "No" to "Not exactly" | clarity |
| 59 | 21 | change "That is correct" to "Not exactly" | clarity |
| 76 | 12 | change "No, I didn't" to "I don't think so" | clarity |
| 77 | 10 | add "Gary" before "Kurokawa" | accuracy |

SIGNED BY _[signature: Phil English]_   DATED: 11/4/05

**EXHIBIT "E"**

RECEIVED NOV 0 9 2005

COPY                                                                  1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PHILIP E. ENGLISH, | ) | CIVIL NO. CV04-00108 JMS/KSC |
| Plaintiff, | ) | |
| vs. | ) | |
| CITY AND COUNTY OF HONOLULU; GARY T. KUROKAWA; ROBERT MAGAOTA; ANN C. GIMA; and GK APPRAISALS, INC.; et al., | ) | VOLUME I PAGE 1 THROUGH 84 |
| Defendants. | ) | |

DEPOSITION OF PHILIP E. ENGLISH

Taken on behalf of Defendant City and County of Honolulu, Gary T. Kurokawa, Robert O. Magota and Ann C. Gima, at the law offices of Watanabe Ing Kawashima & Komeiji, 5th Floor, Hawaii Tower, 745 Fort Street, Honolulu, Hawaii 96813, commencing at 1:13 p.m., on Friday, September 30, 2005, pursuant to Notice.

BEFORE:

    Donna Kohls, CSR 146
    Notary Public, State of Hawaii

CARNAZZO COURT-REPORTING CO., LTD.
532-0222

```
 1   APPEARANCES:

 2   For Plaintiff:          ROGER S. MOSELEY, ESQ.
                             2300 Alakea Corporate Tower Corporate
 3                           1100 Alakea Street
                             1001 Bishop Street
 4                           Honolulu, Hawaii 96813

 5   For Defendant
     GK APPRAISALS,
 6   INC.:                   ANTHONY L. WONG, ESQ.
                             Matsui Chung
 7                           1400 Mauka Tower
                             737 Bishop Street
 8                           Honolulu, Hawaii 96813

 9   For Defendant
     City & County of
10   Honolulu; Gary T.
     Kurokawa; Robert
11   O. Magota; and
     Ann C. Gima:            MICHAEL A. LORUSSO, ESQ.
12                           Watanabe Ing Kawashima & Komeiji
                             23rd Floor, First Hawaiian Center
13                           999 Bishop Street
                             Honolulu, Hawaii 96813
14
15
16
17
18
19
20
21
22
23
24
25
```

# I N D E X

EXAMINATION BY:                                                    PAGE

Mr. Lorusso


EXHIBITS MARKED FOR IDENTIFICATION:

1    Compromise, Settlement and Release Agreement    62

2    Chronology produced by deponent                 79

84

1  STATE OF HAWAII          )
                            )
2      I, DONNA KOHLS, C.S.R., a Notary Public in and for

3  the State of Hawaii, do hereby certify:

4      That on September 30, 2005, at 1:13 p.m., appeared

5  before me PHILIP ENGLISH, the witness whose testimony is

6  contained herein, that prior to being examined, the

7  witness was by me duly sworn; that the proceedings were

8  taken in computerized machine shorthand by me and were

9  reduced to print; that the foregoing represents to the

10 best of my ability, a correct transcript of the

11 proceedings had in the foregoing matter;

12     That the witness, if applicable, was notified through

13 counsel, by mail or by telephone to appear and sign; that

14 if the transcript is not signed, either the reading and

15 signing were waived by the witness and all parties, or the

16 witness failed to appear and the original is therefore

17 kept on file without signature pursuant to Court Rules.

18     I further certify that I am not counsel for any of

19 the parties hereto, nor in any way interested in the

20 outcome of the cause named in the caption.

21     Dated: __OCT 1 0 2005_____

22

23     _____
       Donna Kohls, C.S.R., No. 146
24     Notary Public, State of Hawaii
       My commission expires: 7-21-2010
25

1  Q    And so the depression begins and it continues on from
2  the point it starts into the future, correct?
3  A    Yes.
4  Q    And while you have the depression, again, just
5  depending on what circumstances are happening with your
6  life, that may affect the level of depression that you are
7  having at any given time, is that a fair statement?
8  A    No.
9  Q    And why isn't the depression affected by what is
10 going on in your life?
11 A    I think you have got it backwards.  I think things in
12 my life have caused me to be depressed.  There is events
13 that have occurred in my life that have caused me to have
14 depression.
15 Q    Since the time you have worked with the City, have
16 you had other employment?
17 A    Yes.
18 Q    And what other employment have you had?
19 A    I worked for a guard company.
20 Q    What guard company?
21 A    It's called Master Guard.
22 Q    And when did you start working for the guard company?
23 A    In April.
24 Q    Of what year?
25 A    Of this year, 2005.

1  Q    For how long a period of time before you started for
2  Master Guard company were you unemployed?
3  A    I guess from December 2003 until that time.
4  Q    Between December 2003 and up until April of 2005 when
5  you began working for the Master Guard company, did you
6  seek other employment?
7  A    Yes.
8  Q    What other employment did you seek?
9  A    I looked for jobs as a driver.  I looked for jobs as
10 wait help at conventions and that sort of thing.  Those
11 were the-- there were various places.  But those were the
12 types of jobs.  This was all part of therapy with Dr. Koff
13 in trying to get me back into the working situation.  And
14 so we decided that we would try to have some kind of job
15 like that.  The guard job has proved to be a good job for
16 that.
17 Q    Any other jobs that you sought in that December 2003
18 up until the April 2005 time period?
19 A    No.
20 Q    With regard to a job as a driver or wait help or as a
21 security guard, was it Dr. Koff who told you that was the
22 only type of job that you could work?
23 A    No.
24 Q    Did you apply for any jobs with regard to doing real
25 estate appraisal?

1   A   No, I didn't.

2   Q   Did you begin to do real estate appraisals on your

3   own?

4   A   No, I did not.

5   Q   Why not?

6   A   I'm trying to get jobs where I can go a little bit at

7   a time to make sure that I can function in them okay. If

8   I were to-- the idea is I don't want to start a job and

9   then fail. And that I don't want to experience similar

10  things that I experienced at the City. I mean, there is

11  no guarantee that an employee won't behave in a way that

12  causes someone to hurt them in a way. But through the

13  therapy with Dr. Koff, the approach was just to try and

14  get out there, see what kind of job I could get.

15      The therapy from the beginning in fact was to first

16  get me to a point where I could feel comfortable going to

17  the market. So I mean, I have come a long way since that

18  time and I'm pretty grateful to Dr. Koff for that. In

19  fact, I really wish I could still have therapy with her.

20  But she has really helped me a lot in that regard.

21          MR. MOSELEY: I think we ought to take a little

22  break here.

23          MR. LORUSSO: Sure.

24          (Recess)

25  Q   (By Mr. Lorusso) Mr. English, as you just did in

```
 1  terms of taking a break, please feel free at any time that
 2  you want, as I told you at the beginning of the
 3  deposition, that if you need to take a break, we will take
 4  a break.  Do you understand that?
 5  A    Yes, thank you.
 6  Q    Going back now, in terms of working as a real estate
 7  appraiser from December 2003 up until the present time,
 8  did Dr. Koff ever say to you you should not work as a real
 9  estate appraiser?
10  A    No.
11  Q    Did any physician, psychologist, psychiatrist,
12  counselor ever tell you you cannot work as a real estate
13  appraiser from December 2003 until the present time?
14  A    Well, the only restriction that I'm aware of is that
15  they said that I could not work at the City & County as a
16  real estate appraiser.  That is the only restriction that
17  I'm aware of.
18  Q    In terms of my question, my question was, with regard
19  to working as a real estate appraiser, did anyone tell you
20  that you could not work in your capacity as a real estate
21  appraiser, any health care provider, physician,
22  psychologist, psychiatrist or counselor?
23  A    Maybe I don't understand the question.  But if I
24  could try to answer it--
25  Q    Let me try and rephrase it, then, if you don't
```

Case 1:04-cv-00108-KSC   Document 479-8   Filed 09/26/2006   Page 10 of 18

57

1  understand it. You worked with the City as a real estate
2  appraiser, correct?
3  A    Yes.
4  Q    And before the time you worked for the City, you
5  worked as a real estate appraiser at different times,
6  correct?
7  A    Yes.
8  Q    So now, just in terms of the profession of being a
9  real estate appraiser, that's all I'm referring to, not
10 whether you could or could not work or whether it's for
11 yourself or whether it's for someone else, just simply in
12 the capacity of a real estate appraiser, do you understand
13 that? Do you understand that is what I'm referring to?
14 A    I understand that. Maybe what I don't understand is
15 the time frame you are talking about. Because Dr. Koff
16 and I believe Dr. Kennedy have stated that, at least
17 certainly in the beginning of their treatment or analysis,
18 that I could not work at that time, and whether it's at
19 the City & County Real Estate Property Assessment Division
20 or any work, depending on which doctor it is.
21 Q    Okay. Let me go back and be clear. As I understood
22 your testimony a few minutes ago, with regard to December
23 of 2003, when you stopped working for the City, up until
24 the present time, you testified that Dr. Koff never told
25 you you could not work as a real estate appraiser, is that

Case 1:04-cv-00108-KSC    Document 479-8    Filed 09/26/2006    Page 11 of 18

58

1  correct?
2  A    That's correct. But what I'm trying to say is that
3  the entire treatment process that I've been going through,
4  the whole effort of that treatment process is to get me
5  back into a work environment, and that the types of jobs
6  that I applied for were part of the treatment plan with
7  Dr. Koff. I'm not really sure how I can answer your
8  question any other way. When I say no, that she didn't
9  say I couldn't work as a real estate appraiser, she wasn't
10 limiting me in that regard. What we are trying to do is
11 get me back into the work force at some level to start
12 with.
13 Q    Mr. English, we can talk about in terms of what was
14 trying to be done or not trying to be done with regard to
15 your therapy. But to my specific question, which is a yes
16 or no question, did Dr. Koff ever tell you you could not
17 work as a real estate appraiser from December 2003 up
18 until the present time?
19 A    I don't know how I can answer that question because
20 you are asking me to say that she didn't-- if I said she
21 didn't tell me that I couldn't work as a real estate
22 appraiser, it almost implies like she is saying I could,
23 and she didn't say that.
24 Q    I'm not implying anything, Mr. English. It's a
25 simple question--

1  A    Let me answer the question--
2  Q    Wait.  Did Dr. Koff say to you you should go work as
3  a real estate appraiser?
4  A    Absolutely not.
5  Q    Did Dr. Koff say to you you should not work as a real
6  estate appraiser from December 2003 up until the present
7  time?
8  A    Up until the last time?
9  Q    Up until the present time.
10 A    I haven't seen her in a while because I'm not having
11 therapy.
12 Q    Mr. English, please listen to my question.  Just in
13 terms of a time period, December 2003 up until today
14 September 30, 2005, did Dr. Koff say to you you cannot
15 work as real estate appraiser?
16 A    No, she didn't say that to me.  What she said was, we
17 need to get you back in the work force and we need to try
18 and find these kinds of jobs, these entry level jobs where
19 you might be able to start working again.
20 Q    So the answer to my question is no, correct?
21 A    That is correct.
22      MR. MOSELEY:  I might suggest that we clarify
23 the time period.  I'm not sure when Phil was forced to
24 resign, I mean physically forced to resign.  But I think
25 after February 28th, 2004, I don't think he ever actually

1  worked, did any work for the City.
2          MR. LORUSSO:  Just so there is no
3  misunderstanding, I'm just making a record, counsel, that
4  in terms of forced to resign, obviously we disagree in
5  terms of forced to resign.
6          MR. MOSELEY:  I'm fine with that clarification.
7  There was a period of time at which he did resign.  I
8  think that may have been in December, but he was not
9  actually doing any work for the City, regardless of his
10 technical status as an employee.  I just wanted to make
11 sure that we are sort of clear on the record there.
12 Q    (By Mr. Lorusso)  Let's talk about that concept just
13 for a second, too.  With regard to your ending of
14 employment with the City, is it your testimony that you
15 were terminated by the City?
16 A    What I recall is that I was forced to resign.
17 Q    By forced to resign, what do you mean by that?
18 A    As I recall, it seems to me that, in order to-- well,
19 there is a couple situations.  We have a doctor's report
20 saying I should not go back to the Assessment Division.
21 My union agent was telling me I shouldn't go back to the
22 Assessment Division.  And in working with the City during
23 a worker's comp claim settlement, they essentially, this
24 is my understanding, said that if you want to settle this,
25 you have to quit or you have to resign your position.

```
 1        So I see that as, all of those things put together,
 2   they wanted me gone.  And if I wanted to resolve the issue
 3   with them, I had to resign my position.
 4   Q    With regard to your worker's compensation claim
 5   against the City, you were represented by counsel,
 6   correct?
 7   A    That's correct.
 8   Q    In fact, you were represented by Mr. Moseley,
 9   correct?
10   A    Yes.
11   Q    And with regard to that worker's compensation claim,
12   you signed a document entitled Compromise, Settlement and
13   Release Agreement, correct?  Is that correct?
14   A    I don't have it in front of me.  I don't recall.  So
15   whatever the document was.  I signed some document.
16   Q    With regard to any document that you would sign,
17   would it be fair to say what you would do is you would
18   read it first, correct?
19   A    Yes.
20   Q    With regard to any agreement that you signed with the
21   City for your worker's compensation claim, again that was
22   done with the advice of counsel, correct?
23   A    Yes.
24   Q    Let me show you what we'll have marked as Exhibit 1
25   to the deposition.
```

1       (Exhibit 1 marked for identification.)
2  Q    (By Mr. Lorusso)  This is a document entitled
3  Compromise, Settlement and Release Agreement, Approval and
4  Order.  First of all, Mr. English, have you ever seen that
5  document before?
6  A    I don't recall.
7  Q    Why don't you take as much time as you want to look
8  at the document.  And I'm only going to ask you a few
9  questions with regard to it right at this moment.  But I
10 want you to be comfortable and, like I said, take as much
11 time as you want to look at this document.
12      Let's go off the record.
13         (Recess)
14 Q    (By Mr. Lorusso) Mr. English, with regard to Exhibit
15 1, the Compromise, Settlement and Release Agreement,
16 Approval and Order, have you had an opportunity to review
17 that document?
18 A    I just reviewed it.
19 Q    With regard to that document, on page 8 of that
20 document, is that your signature?
21 A    Yes, it is.
22 Q    And the document is dated January 20th, 2004,
23 correct?
24 A    Yes.
25 Q    And on the next page of that document, there appears

1  the names of a number of people, including your attorney
2  Mr. Moseley, is that correct?
3  A  Yes.
4  Q  If you look at Exhibit No. 1, can you look at
5  paragraph 11 which appears on page six of the document.
6  A  Yes.
7  Q  And with regard to paragraph 11, it indicates, and
8  please make sure I'm reading this, "In further
9  consideration for the agreements of Employer as set forth
10 herein, Claimant hereby voluntarily quits, resigns and
11 terminates his employment with Employer, fully, finally,
12 irrevocably and forever, effective January 31, 2004, and
13 Claimant hereby waives, releases and discharges the City &
14 County of Honolulu from any and all of the City & County
15 of Honolulu's obligations pursuant to any collective
16 bargaining agreement."
17     I read that correctly?
18 A  Yes.
19 Q  It further indicates in that paragraph, "Claimant
20 further waives any reemployment and priority placement
21 rights as part of this agreement."  Did I also read that
22 correctly?
23 A  Yes.
24 Q  With regard to Exhibit 1, based upon paragraph No.
25 Number 11, would you agree me that you signed a document

1  that indicated that you voluntarily quit, resigned and
2  terminated your employment with the City?
3  A    Based on No. 11?
4  Q    Yes, based on paragraph 11.
5  A    In context of the entire document, it's telling me,
6  the way I read it, is that the only way this agreement
7  will go forward is if I voluntarily sign this.
8  Q    Are you saying that you signed Exhibit 1 under
9  duress?
10 A    No. I'm saying that the only way that they would
11 agree to it is if I agreed to resign.
12 Q    And with regard to resigning, that was a choice that
13 you could make with the advice of counsel, correct?
14 A    I had the choice to resign or not, but I could only
15 do it in that context, because that was the only way that
16 they would settle the worker's comp claim.
17 Q    And with regard to paragraph 11, it indicates that
18 you voluntarily quit, correct?
19 A    Because that was the only way--
20 Q    That is not my question. I'm simply--
21 A    I voluntarily signed it because I had no other
22 choice. In order to settle this thing, I had to
23 voluntarily sign it.
24 Q    When you say that you had no other choice, I come
25 back again to make sure, Mr. English, are you saying that

1   you signed this agreement, Exhibit No. 1, under duress?
2   A   I'm saying exactly what I said before. I don't know
3   how else to say it. The only way that this agreement
4   would go forward is if I signed this. So I had no other
5   choice but to sign it.
6   Q   You signed it with advice of counsel, correct?
7   A   I did.
8   Q   And you signed it on your own free will and volition,
9   correct?
10  A   Under the circumstances of what was being discussed,
11  yes.
12  Q   Okay. We can put that aside, Mr. English.
13  A   Okay.
14          MR. MOSELEY: Before we go on, can we have an
15  exhibit convention agreed to here that we just start from
16  one, and with whatever deposition of whatever exhibit, we
17  just go next in order? Are you okay with that?
18          MR. LORUSSO: Yes.
19          MR. WONG: A single comprehensive set of
20  exhibits?
21          MR. MOSELEY: Yes.
22  Q   (By Mr. Lorusso) With regard to your employment with
23  the City, at least according to Exhibit 1, the Compromise,
24  Settlement and Release Agreement, it indicates that you
25  are no longer employed with the City as of January 31,