# COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PHILIP E. ENGLISH,                    )    CIVIL NO. CV04-00108 SCM KSC
                                      )
              Plaintiff,              )
                                      )
        vs.                           )    **VOLUME I**
                                      )
CITY AND COUNTY OF HONOLULU;          )
GARY T. KUROKAWA;                     )
ROBERT O. MAGOTA; ANN C. GIMA;        )
and GK APPRAISALS, INC.;              )
JOHN DOES 1-10; JANE DOES 1-10;       )
DOE PARTNERSHIPS;                     )
DOE CORPORATIONS 1-10; AND            )
DOE ENTITIES 1-10,                    )
                                      )
              Defendants.             )
_____)


DEPOSITION OF ROBERT L. K. YOSHIMURA

<u>RENEAU KENNEDY, Ed.D.</u>              RE: <u>PHILIP E. ENGLISH</u>

Taken upon written interrogatories for Defendants CITY AND

COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA,

and ANN C. GIMA; on Friday, June 03, 2005 commencing at

12:45 PM; at the offices of CARNAZZO COURT REPORTING COMPANY,

LTD., 888 Mililani Street, Suite 705, Honolulu, Hawaii 96813;

pursuant to Notice.

BEFORE:

KATHERINE Y. CHOO
Notary Public, State of Hawaii


Under the Direction and Control of:
Louis A. Carnazzo, C.S.R. #110



2

```
1                    ROBERT L. K. YOSHIMURA,

2      having been first duly sworn to testify to the truth, the

3      whole truth, and nothing but the truth in response to the

4      interrogatories, made the following answers to the

5      questions propounded by the notary:

6      Q  1   Please state your name.

7      A  1   Robert L. K. Yoshimura.

8      Q  2   What is your residence address?

9      A  2   1756-C Gulick Avenue, Honolulu, Hawaii, 96819.

10     Q  3   Are you employed?

11     A  3   Yes.

12     Q  4   What is your employer's name?

13     A  4   I am a Diagnostic Clinical Psychology Practicum

14     Student assisting Doctor Kennedy.

15     Q  5   What is your employer's address?

16     A  5   3001 Diamond Head Road, Honolulu, Hawaii, 96815.

17     Q  6   What is your job or position with your employer?

18     A  6   Diagnostic Practicum Student.

19     Q  7   In that position do you have under your care,

20     custody and control any and all medical records kept by

21     your employer pertaining to Plaintiff PHILIP E. ENGLISH,

22     Date of Birth: October 26, 1954, Social Security Number:

23     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, and last known mailing address is 720 South

24     Street, Apt. 170, Honolulu, Hawaii 69813 ("PLAINTIFF")?

25     A  7   Under the care, custody and control of
```

1    Doctor Kennedy.

2    Q 8    Among your employer's medical records under your

3    care, custody and control, are there medical records

4    pertaining to PLAINTIFF?

5    A 8    Yes.

6    Q 9    Were you or your employer served with a subpoena

7    requiring your appearance before the notary public for

8    the purpose of answering these questions and requiring

9    you to bring with you any and all of your employer's

10    medical records pertaining to PLAINTIFF?

11    A 9    Yes.

12    Q 10    Do you have all of those medical records with you?

13    A 10    Yes.

14    Q 11    Are those medical records complete?

15    A 11    Yes.

16    Q 12    Has any portion of those medical records ever been

17    removed from your care, custody and control prior to this

18    time?

19    A 12    No.

20    Q 13    If so, when and by whom?

21    A 13    (Not applicable.)

22    Q 14    Has any portion of those medical records ever been

23    altered prior to this time?

24    A 14    No.

25    Q 15    If so, when and by whom?

4

1    A 15   (Not applicable.)

2    Q 16   Would you please turn over to the notary public at

3    this time the originals or complete and legible copies of

4    any and all of your employer's medical records pertaining

5    to PLAINTIFF which you have brought with you pursuant to

6    the requirements of the subpoena with which you were

7    served.

8    A 16   Originals.

9    Q 17   Please describe briefly but completely so that

10   they may be readily identified the medical records which

11   you have turned over to the notary public.

12   A 17   Complete records and information pertaining to

13   patient Philip E. English.

14   Q 18   Please describe briefly but completely so that

15   they may be readily identified any of your employer's

16   medical records pertaining to PLAINTIFF which you have

17   not turned over to the notary public, including both

18   those medical records which you have brought with you and

19   those medical records which you have not brought with

20   you.

21   A 18   To my knowledge, this is his complete file.

22   Q 19   Have you turned over original records or copies?

23   A 19   Originals.

24   Q 20   Are you willing to waive the signing of this

25   deposition?

5

A 20   Yes.

     (12:50 p.m.   The deposition was concluded.   Copies of
the records produced by the deponent are made a part of
this deposition.   The sequential numbering and/or
entitlement appearing on the bottom portion of each page
of the records herein is not part of the original records
and is put on the copies going to Court and counsel by
the notary purely for their convenience.)

                    ----:----

```
 1    STATE OF HAWAII                      )                        6
                                           )SS.
 2    CITY & COUNTY OF HONOLULU            )
```

3    I, KATHERINE Y. CHOO, a Notary Public in and for the

4    State of Hawaii, do hereby certify:

5    That on _____June 3, 2005_____, at _____12:45 PM_____,

6    personally appeared before me ____Robert L. K. Yoshimura____

7    the witness whose deposition is contained herein; that prior

8    to being examined, the witness was by me duly sworn; that the

9    deposition was taken upon written interrogatories, a copy of

10   which was served upon opposing counsel pursuant to Court

11   rules; that the interrogatories were propounded to the witness

12   by me as hereinbefore noted, and that the witness made the

13   answers as contained herein.

14   That the witness was notified by the notary either

15   verbally, through counsel, by mail, or by telephone to appear

16   and sign; that if the deposition is not signed, either the

17   reading and signing of the deposition were waived by the

18   witness, by stipulation of all parties, or the deponent has

19   failed to appear and the original deposition is therefore

20   retained by noticing counsel without signature pursuant to

21   Court rules.

22   I further certify that I am not attorney for any of the

23   parties hereto, and that I am in no way interested in the

24   event of said action.

25   DATED: _____June 3, 2005_____

_Katherine Y. Choo_
KATHERINE Y. CHOO
NOTARY PUBLIC, State of Hawaii
My Commission Expires: February 15, 2008

1           **C E R T I F I C A T E**                    7

2

3           I, LOUIS A. CARNAZZO, a Certified Shorthand

4  Reporter in and for the State of Hawaii, do hereby certify:

5           That the deposition upon written interrogatories

6  contained herein was prepared under my direction and control.

7           I further certify that I am not attorney for any of

8  the parties hereto, and that I am in no way interested in the

9  event of said action.

10

11

12         _____
           LOUIS A. CARNAZZO, C.S.R. #110
13         Certified Shorthand Reporter

14

15

16

17

18

19

20

21

22

23

24

25

# CARNAZZO COURT REPORTING COMPANY, LTD.
## AGENCY DISCLOSURE

Pursuant to Rule 14 of the Rules Governing Court Reporting in Hawaii, the following disclosure is hereby made:

1. The agency represented here today was hired for this deposition by:

DAN KO OBUHANYCH, ESQ.

2. The complete financial arrangement between the agency and the person or organization named in paragraph 1 are:

*** ALL CHARGES SUBJECT TO 4.166% G.E./USE TAX ***

### ORAL DEPOSITIONS

| | |
|---|---|
| Appearance fee per half day | $ 50.00 |
| Appearance fee per half day (Outer Islands) | $ 60.00 |
| Reporting fee (if no transcript - 2 hr min) | $ 75.00 per hr |
| Original + one copy of transcript | $ 3.45 per page |
| *One copy of transcript | $ 2.70 per page |
| Two copies of exhibits (one for court) | $ .50 per page |
| *Copy of exhibits | $ .40 per page |
| Extra charge for medical/technical | 35% per page |
| Expedited copy charge-2 days 62.5%; 3 days 50%; 4 days 37.5%; 5 days 25% per page | (Weekends counted as one day) |
| Same Day Delivery or by 9am next day | 100% per page |
| Next Day Delivery | 75% per page |
| Signature fee | $ 25.00 per depo |
| Hard Copy/Electronic Retention Fee ($10.00 min.) | $ .05 per page |
| *Late Copy order surcharge - | $ .20 per page |

### WRITTEN INTERROGATORY DEPOSITIONS

| | |
|---|---|
| Appearance fee | $ 50.00 |
| Appearance fee (Outer Islands) | $ 60.00 |
| Original + one copy of transcript | $ 3.45 per page |
| *One copy of transcript | $ 2.70 per page |
| Pickup fee - in town - $20.00; other - $30.00 & up per depo | |
| Signature fee | $ 25.00 per depo |
| Hard Copy/Electronic Retention Fee ($10.00 min.) | $ .05 per page |
| Two copies records (one for court) | $ .50 per page |
| (Volume discounts for large productions) | |
| *Sold copies records | $ .40 per page |
| (Volume discounts for large productions) | |
| *Late Copy order surcharge - | $ .20 per page |

### OTHER

| | |
|---|---|
| Minimum fee O&1/copy (oral) | $ 150.00/35.00 |
| Outer-island | $ 250.00 |
| Outer-island Surcharge Fee | $ .50 per page |
| Minimum fee O&1/copy (written) | $ 75.00/35.00 |
| Outer-island | $ 85.00/45.00 |
| Litigation Support Diskettes – Summation - $15.00 | |
| Condensed Transcripts/Keyword Index - $10.00 first 100 pages of transcript, | |
| Additional $5.00 each 100 pages of transcript thereafter | |

3. The fees and charges specified in Paragraph 2 are the usual and customary charges made by the agency for like services to other persons.

4. If a financial or services discount for this or any future deposition will or might in any way be given to the person named in paragraph 1, after this deposition is completed, state what that discount will or may be. (If none, so state.) None.

I certify, until further notice, the foregoing to be a complete, true and correct disclosure to the best of my knowledge and information.



_____ CSR.#110    Rev 07/01/2004

Dated: Friday, June 03, 2005

LASER BOND FORM A    ⑧    PENGAD • 1-800-631-6389 • www.pengad.com

DUE TO THE POOR QUALITY OF CERTAIN OR

ALL OF THE DOCUMENTS FURNISHED AS

ORIGINALS, THE REPRODUCTION OF THOSE

PAGES ARE THE BEST THAT COULD BE

OBTAINED.

CARNAZZO COURT-REPORTING COMPANY, LTD.

jn:m:\wp\forms\orig

Philip English

RENEAU KENNEDY RE PHILIP ENGLISH

1

# DR. RENEAU KENNEDY

CLINICAL AND FORENSIC PSYCHOLOGY

3001 DIAMOND HEAD ROAD
HONOLULU, HI 96815
PHONE: (808) 923-2266
FAX: (808) 923-2299

April 20, 2003

VIA FACSIMILE: 527-6782
HARD COPY TO FOLLOW

CONFIDENTIAL
TO: SHARON MAEDA

Thomas Riddle
Workers' Compensation Administrator
Department of Human Resources
City and County of Honolulu
550 South King Street
Honolulu, HI 96813

Re:     *Claim of Philip E. English for Disability Payments*

Claimant:      Philip English
DOB:           10/26/54
Employer:      Department of Budget and Fiscal Service
Carrier:       Self Insured - Department of Human Resources
D/Injury:      2/2/03
D/Evaluation:  4/18/03

Dear Mr. Riddle,

On Friday, April 18, 2003, I spent the day evaluating Philip English. That nine-hour evaluation consisted of psychological testing, a clinical interview, and mental status examination. On April 19 and 20, 2003, I spent additional hours reviewing the collateral documentation provided to me in your March 18, 2003, packet, as well as a packet of documentation provided from Mr. English and his attorney, Roger Moseley.

The material thus far reviewed provides the basis for the preliminary findings I am presently communicating to you. I have yet to conduct collateral interviews and to obtain the medical records you have subpoenaed from Kaiser on Mr. English. I believe that document collection will take an additional period of time, which may be quite lengthy. There are other materials that I may need to garner in order to address the particular referral questions you may have, including apportionment and nexus issues.

I am of the opinion that Mr. English is in current severe mental distress. His condition warrants immediate attention and relief from your office. I have ruled out his malingering of these symptoms for secondary gain at this point. Mr. English is in acute need of assistance, both psychiatrically and financially.

I am of the opinion that Mr. English is totally unable to work at this time. His psychiatric needs override alternate temporary work relocation at this juncture. I will be contacting his treatment team at Kaiser concerning my initial findings.

RENEAU KENNEDY RE PHILIP ENGLISH

2

There is more than sufficient data to support that Mr. English's claim be immediately accepted in order for him to receive some form of financial assistance, whether this be provided in the form of temporary complete disability or workers' compensation benefits. Mr. English is presently without financial resources, which further complicates the baseline work injury. Immediate financial relief will help diminish some of the pressure Mr. English is living under.

Until the remainder of the material concerning Mr. English's case is provided to me, and I am able to complete my evaluation and full report to your office with a comprehensive analysis of the collateral portion of the claim, I recommend that Mr. English be assisted financially. I also recommend that any further contact from his employer to Mr. English come only through your office.

Please do not hesitate to contact me if you require any information to place the claim in motion, or if you have questions concerning my preliminary findings. Once I receive the remainder of the materials you have requested I will be able to complete my final report to you.

Sincerely,


Reneau Kennedy, Ed.D.
Clinical and Forensic Psychologist


2

RENEAU KENNEDY RE PHILIP ENGLISH

3

KAISER PERMANENTE   *HAWAII REGION*                MR #: *P3( 74)*   UC Loc:

### Consent for Release of Medical Information or Records

Name: *Philip English*
Sex/BD:

---

## I hereby authorize: ☙

Sender or institution: *Dr. Reneau Kennedy*
Address: *3001 Diamond Head Rd*
City: *Honolulu*          State: *Hi*          Zip Code: *96815*

---

## Release to: ☙

☐ **Kaiser Permanente Medical Center:** 3288 Moanalua Road, Honolulu, Hawaii, 96819:

**Attention Outpatient Medical Records for:** _____
   ↪ Upon receipt, forward to requester          Physician • Department • Location

☒ **Physician, receiving person, agency or institution:** Joan H. Roff, Ph.D.
Address: _____ Licensed Psychologist
                    Diplomate in Clinical Psychology, ABPP
City: _____ Senior Disability Analyst & Diplomate, ABDA   Zip Code: _____
           Kaiser Occupational Mental Health Services
Attention: _____ 1010 Pensacola                Dept: _____
           Honolulu, Hawaii 96814

---

## Pertaining to the care of:

Name: Last *English*          First *Philip*          M.I. _____
MR #: _____          or SS #: *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*

## For the purpose of: *Treatmer planning & communicat*

   ☙ Initial <u>one</u> only

_____ Disclosure is authorized for any and all information about medical history, mental and physical condition,
Initial  including HIV infection, AIDs, or ARC, drug and alcohol use, and other personal information.

*RK*
Initial  Disclosure is authorized for the following specific report(s) or information only:

*Psych Eval by Dr. R. Kennedy (2003)*
_____

A reasonable fee will be charged for duplication of records. An estimate of those charges will be provided
upon request prior to duplication. This authorization is valid for six(6) months from the date of signing unless
revoked in writing by the undersigned prior to six(6) months.

*'05 20 03*          *Paul Engl*                          *254-2136*
Date (M/D/Y)          Signature of patient or authorized representative          Phone #

If signed by other than patient or parent of minor child, please print name and indicate relationship. Submit
documents to show authority to request information on the patient.

_____                          _____
Authorized representative's name                          Relationship to patient

↪ *Please return a copy of this consent form with your report.*

4800 3566  10/01          White – Permits/Correspondence or Sender          Canary – Requester Copy

<u>AUTHORIZATION TO RELEASE MEDICAL INFORMATION</u>

To:    **Reneau Kennedy, Ed.D**

    I hereby authorize you to make verbal and written disclosure of information from my medical records as indicated below:

    PATIENT NAME:    _Philip E. English_

    DATE OF BIRTH:  _10/26/54_          SSAN:  _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_

to Reneau Kennedy, Ed.D, for the purpose of using the records and information for an independent psychological evaluation.

    The medical records to be released include:

_X_    Complete medical record, including, but not limited to, notes, charts, x-ray reports, ambulance reports.

___    Discharge summary, H&P consults, OP Note, pathology

___    Emergency Room record

___    Other: _____

    The types of information below cannot be released without my specific consent and knowledge. Therefore, I have initialed before each type of record that I authorize you to release:

___    Alcohol and/or Drug Abuse Treatment records

___    Mental Health Treatment records

___    AIDS, ARC or HIV Testing records

=======================================================================

    I hereby release Reneau Kennedy, Ed.D., from all liability and all claims of any nature pertaining to the disclosure of the information described above. This consent is subject to revocation at any time, upon receipt by written notice from me, except to the extent that action has already been taken in reliance on it. If not previously revoked, this consent will expire and terminate in one year or _____, whichever occurs first.

Name (Printed):    Phillip English

 Signature:

Witness Name (Printed):    Roger B. Moseley

Signature:

Date:    _4/25/03_

This information is contained in records whose confidentiality is protected by federal law. Federal regulations (42 CFR Part 2) prohibit any further disclosure of this information except with the specific written consent of the person to whom it pertains.

RENEAU KENNEDY RE PHILIP ENGLISH                    5

# CASE BIGELOW & LOMBARDI

A LAW CORPORATION

PACIFIC GUARDIAN CENTER, MAUKA TOWER
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

TELEPHONE: (808) 547-5400
FACSIMILE: (808) 523-1888
E-mail: Caselaw@aloha.net

David F. Andrew
Michael L. Biehl
Daniel H. Case
James M. Cribley
Stacey W.E. Foy
Gregory M. Hansen
Frank T. Kanemitzu
Michael L. Lam
Alan K. Lau
Dennis. M. Lombardi,†

Michael R. Marsh
Roger S. Moseley
Ted N. Pettit, Ph.D.
Scott D. Radovich
Robert F. Schneider
Cathy Lee Sekiguchi
Steven E. Thomas
Eric H. Tsugawa
Gary L. Wixom

Claire E. Bender
Christopher J. Muzzi
Leila Rothwell Sullivan
Lauren R. Sharkey
Cathy L. Takase
Nancy J. Youngren

Of Counsel:
Steven L. Rinesmith†
Counsel:
Gary S. Kenwood

Bruce C. Bigelow (1946-2001)

† A Law Corporation

June 10, 2003

BY FAX AND MAIL

Dr. Reneau Kennedy
3001 Diamond Head Road
Honolulu, HI 96815

Re: Claim of Philip E. English for disability due to retaliation

Dear Dr. Kennedy,

Just wanted to confirm what I informed your assistant Gavin Takenaka yesterday on the telephone when he called. My understanding is that one of the items which has delayed your report is the failure of Ann Gima to respond to your inquiries. Please be advised that Mrs. Gima, by all appearances, is one of the people heavily involved in the retaliation against Mr. English. Additionally, her husband, Harry Gima, is the City employee responsible for certain personnel actions affecting Mr. English. We received a report late last week that he had called Royal State, the entity providing medical insurance for Mr. English, and that Harry suggested to them that Mr. English's medical coverage should be cancelled. Particularly Ann and Harry Gima know the seriousness of Mr. English's financial condition and Harry Gima's actions reasonably seem to be an extension of the retaliation experienced by Mr. English.

Mr. English has actually had to borrow money from friends to pay past due medical premiums and has paid all of the amounts that Royal State has said were required to maintain coverage. Of course, TDI should have been covering these premiums in the first place, but the City has not been diligent in instituting the TDI payments either. This caused the delinquencies. The TDI payments, which only started on May 15, seem far short of the 58% of his compensation we understood to be the amount due Mr. English. We have requested an accounting of the two payments made so far, because the statements provided are totally inadequate to determine how the amounts were calculated, or for what period they covered. In light of these circumstances, the immediate commencement of Workers Compensation coverage is absolutely critical. Ann Gima, by failing to respond to your inquiries in, in fact, delaying any possible Workers Comp. and endangering the well-being of Mr. English. Again, this is consistent with the pattern of retaliation visited upon Mr. English by this City agency.

Thank you.

Very truly yours,

Roger S. Moseley

RSM\kmc
cc. Phil English

MEMBER OF LEX MUNDI, THE WORLD'S LEADING ASSOCIATION OF INDEPENDENT LAW FIRMS

27505\1\332308.1

RENEAU KENNEDY RE PHILIP ENGLISH

6

## CASE BIGELOW & LOMBARDI

A LAW CORPORATION

David F. Andrew
Michael L. Blahl
Daniel H. Case
James M. Cribley
Stacey W. E. Foy
Gregory M. Hanson
Frank T. Kanemitsu
Michael L. Lam
Alan K. Lau
Dennis. M. Lombardi, †

Michael R. Marsh
Roger S. Moseley
Ted H. Pettit, Ph.D.
Scott O. Redpath
Robert F. Schneider
Cathy Lee Sekiguchi
Steven E. Thomas
Eric N. Tsugawa
Gary L. Wixom

Claire E. Bender
Christopher J. Muzzi
Lisa Rothwell Sullivan
Lauren R. Sharkey
Cathy L. Takase
Nancy J. Youngren

Of Counsel:
Steven L. Rinesmith
Counsel:
Gary S. Kanwood

Bruce C. Bigelow (1946-2001)

† A Law Corporation

PACIFIC GUARDIAN CENTER, MAUKA TOWER
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

TELEPHONE: (808) 547-5400
FACSIMILE: (808) 523-1888
E-mail: CaseLaw@aloha.net

June 10, 2003

BY FAX AND MAIL

Dr. Reneau Kennedy
3001 Diamond Head Road
Honolulu, HI  96815

Re:  Claim of Philip E. English for disability due to retaliation

Dear Dr. Kennedy,

Just wanted to confirm what I informed your assistant Gavin Takenaka yesterday on the telephone when he called. My understanding is that one of the items which has delayed your report is the failure of Ann Gima to respond to your inquiries. Please be advised that Mrs. Gima, by all appearances, is one of the people heavily involved in the retaliation against Mr. English. Additionally, her husband, Harry Gima, is the City employee responsible for certain personnel actions affecting Mr. English. We received a report late last week that he had called Royal State, the entity providing medical insurance for Mr. English, and that Harry suggested to them that Mr. English's medical coverage should be cancelled. Particularly Ann and Harry Gima know the seriousness of Mr. English's financial condition and Harry Gima's actions reasonably seem to be an extension of the retaliation experienced by Mr. English.

Mr. English has actually had to borrow money from friends to pay past due medical premiums and has paid all of the amounts that Royal State has said were required to maintain coverage. Of course, TDI should have been covering these premiums in the first place, but the City has not been diligent in instituting the TDI payments either. This caused the delinquencies. The TDI payments, which only started on May 15, seem far short of the 58% of his compensation we understood to be the amount due Mr. English. We have requested an accounting of the two payments made so far, because the statements provided are totally inadequate to determine how the amounts were calculated, or for what period they covered. In light of these circumstances, the immediate commencement of Workers Compensation coverage is absolutely critical. Ann Gima, by failing to respond to your inquiries is, in fact, delaying any possible Workers Comp. and endangering the well-being of Mr. English. Again, this is consistent with the pattern of retaliation visited upon Mr. English by this City agency.

Thank you.

Very truly yours,

Roger S. Moseley

RSM\kmc
cc: Phil English

MEMBER OF LEX MUNDI, THE WORLD'S LEADING ASSOCIATION OF INDEPENDENT LAW FIRMS

27505\1\332308.1

RENEAU KENNEDY RE PHILIP ENGLISH

# CASE BIGELOW & LOMBARDI
# Fax Memorandum

737 BISHOP STREET
SUITE 2600
HONOLULU, HAWAII 96813
DIRECT LINE: (808) 547-5447

From:  **Roger S. Moseley**
(Kathleen Chrismer, Assistant)
Fax:    (808) 523-1888
File:    27505-1
Date:   June 10, 2003

To:     Dr. Reneau Kennedy
Fax:    923-2299
Pages:  __2__
Re:     Philip English

**This communication contains confidential and privileged information. It is exempt from disclosure under applicable law. If you receive it in error, please contact the Sender immediately to arrange for its return. No other use or dissemination of this communication is authorized.**

Transmitting correspondence of today's date.

Original will follow by U.S. Mail

RSM:kmc

27505/1/332363.1

**Reneau Kennedy**

| | |
|---|---|
| **From:** | Riddle, Thomas [TRiddle@co.honolulu.hi.us] |
| **Sent:** | Tuesday, June 10, 2003 10:46 AM |
| **To:** | 'Reneaukennedy@hawaii.rr.com' |
| **Subject:** | Philip English |

Good morning.  I just received a call from your new support person (Gavin?). He was
inquiring about records from Kaiser and some kind of report or records from Ann Gima.
Since he could not reach me yesterday, he call attorney Moseley, and was told that the
City is playing games and that you would have to do the report without these records.  I
did explain to Gavin that this is an adversarial type claim and that Mr. Moseley was the
attorney representing Mr. English and not the City.  He was unaware of that. However, I
said I would try to assist him because he was not sure what records were needed from Ann
Gima.  I did call her and she indicated that she has yet to speak with you and is unaware
of what you were requesting. Perhaps you could let me know and I will follow up with her.
As to Kaiser, we have never received anything other that the few paltry records I
previously forwarded to you.  I don't know if Mr. English is seeing anyone at Kaiser or if
they are just not providing copies of their records.  They have no knowledge of a
workers' compensation claim obviously because they are usually very good at providing
timely records because they want to get paid.  I have not heard from English or from his
attorney for some time, since Mr. English has been getting TTD payments.  So I assume his
situation is not as dire as it once was.

In any event, if you will let me know what you need from Ann Gima - and if you need to
speak with her, I can assist you in completing your report.  To be very honest, the more I
look into this claim, the more doubt I have as to his veracity.  At first I was greatly
concerning with this state of being, but it appears that he is now doing alright since I
have heard nothing else. As he moved up in his job, getting assigned more complex cases,
his work performance was slipping and he was in fact close to being disciplaned for
unsatisfactory work performance.  I can find no evidence that he was being singled out or
retailated against because he filed a complaint about a fellow worker. This, of course,
is the crux of his claim - that his problems all stem from his treatment at work.
However, since several of his fellow workers were complaining about him and his behavior
at work, whcih as getting more and more bizzare, I have to question his view of things.
In any event, I would like to help him move on with his life, but I don't want to have to
take responsibility for sending him back to college (as his attorney is requesting) and
paying large sums of taxpayer money to relocate him.

Anyway, I appreciate your assistance and please let me know what elese you need.  I asure
you, the City is not playing games, as Mr. Moseley suggests.

I received a good attorney joke today and am passing it along.  Hope you enjoy it.  Have a
nice day.

Tom Riddle

-------------------------------------------

A madam opened the brothel door to see a rather dignified, well-dressed good looking man
in his late 40s or early 50s.

"Can I help you?" she asked.

"I want to see Natalie," the man replied.

"Sir, Natalie is one of our most expensive ladies.

Perhaps you would prefer someone else," said the madam.

"No, I must see Natalie" was the man's reply. Just then, Natalie appeared and announced to
the man that she charged $1,000 a visit.

i

Without hesitation, the man pulled out ten one-hundred dollar bills and gave them to Natalie and they went upstairs. After an hour, the man calmly left.

The next night the same man appeared again, demanding to see Natalie. Natalie explained that no one had ever come back two nights in a row-too expensive -- and there were no discounts. The price was still $1,000.

Again the man pulled out the money, gave it to Natalie and they went upstairs. After an hour, he left.

The following night the man was there again. Everyone was astounded that he had come for the third consecutive night, but he paid Natalie and they went upstairs. After their session, Natalie questioned the man.

"No one has ever used me three nights in a row.

Where are you from?" she asked.

The man replied, "South Carolina."

"Really?" she said. "I have family in South Carolina."

"I know," the man said. "Your father died and I am your sister's attorney. She asked me to give you your $3,000 inheritance."

The moral of the story is: Some things in life are certain ... 1. Death 2. Taxes 3. And being screwed by a lawyer

2

**Reneau Kennedy**

| | |
|---|---|
| **From:** | "Riddle, Thomas" <TRiddle@co.honolulu.hi.us> |
| **To:** | <reneaukennedy@hawaii.rr.com> |
| **Sent:** | Monday, May 19, 2003 7:59 AM |
| **Subject:** | Philip English |

Hi Nancy and Reneau. Just a quick update on Mr. English. He is now getting TDR and received his first payment last week. He was not evicted from his boat as he originally said and since he had some money to pay for his share of the premium, he still has his health insurance at Kaiser. A lady called last week expressing her concern for him (I referred her to English's attorney). So, he does have a group of people who care about him and are willing to help. He picked up his persopnal belongings from his desk last Friday also. At his request, I had gone over and packed every thing into four boxes and had them in my office so that he would not have to go back to his office to get his stuff. Hopefully, with the help of his Kaiser doctors and friends, he can get his life back together.

    Thomas Riddle

5/19/03

**Reneau Kennedy**

| | |
|---|---|
| **From:** | "Nancy Contrades" <ncontrades@yahoo.com> |
| **To:** | <reneaukennedy@hawaii.rr.com> |
| **Sent:** | Friday, May 16, 2003 7:04 AM |
| **Subject:** | Riddle numbers |

Riddle's numbers are:

523-4971 and
396-9166

Do you Yahoo!?
The New Yahoo! Search - Faster. Easier. Bingo.
http://search.yahoo.com

5/16/03

RENEAU KENNEDY RE PHILIP ENGLISH                    12

## Reneau Kennedy

| | |
|---|---|
| **From:** | "Riddle, Thomas" <TRiddle@co.honolulu.hi.us> |
| **To:** | <reneaukennedy@hawaii.rr.com> |
| **Sent:** | Thursday, May 08, 2003 2:34 PM |
| **Subject:** | Philip English |

FYI. English has TDI approved and will be getting approximatley $1,500 on May 15th.

Thomas Riddle

5/12/03

RENEAU KENNEDY RE PHILIP ENGLISH                    13

DEPARTMENT OF HUMAN RESOURCES

# CITY AND COUNTY OF HONOLULU

550 SOUTH KING STREET
HONOLULU, HAWAII 96813

JEREMY HARRIS
MAYOR



CHERYL K. OKUMA-SEPE
DIRECTOR

May 5, 2003

*Dr. Kennedy –*
*Copies of additional*
*information provided re:*
*recent "performance evaluation"*
*which was done despite*
*assurances it would be*
*put on hold. Then it*
*was mailed to Phil with*
*very devastating results!*
*R.*

Roger S. Moseley, Esq.
CASE BIGELOW & LOMBARDI
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813

Re:    Philip English

Dear Mr. Moseley:

Thank you for your letter of May 2nd requested that Dr. Kennedy provide a copy of her report to you upon completion.  Apparently, you are not familiar with the requirements of the workers' comepensation statute which requires that we provide to the claimant or his representative, at no cost, copies of all reports, documents and evaluations which we have obtained.  Upon receipt of any such report, we make copies and forward them as required.  Either Dr. Kennedy can send you a copy as you requeste, or we will provide a copy once the report is received.

The workers' compensation statute also places the same requirement on the claimant and his representative.  That is, you must provide to us, any records or reports that you obtain and plan to utilize in any legal proceeding.  Unless such reports are provided to each side, they cannot be presented during any hearing before the Department of Labor and Industrial Relations.

Hopefully, Dr. Kennedy can provide some useful guidelines that will assist Mr. English and his therapist in recovering from his current situation.

Sincerely,

THOMAS RIDDLE
Workers' Compensation Administrator

cc:    Reneau Kennedy, Ph.D.

RENEAU KENNEDY RE PHILIP ENGLISH

14

# CASE BIGELOW & LOMBARDI
### A LAW CORPORATION

| | | |
|---|---|---|
| David F. Andrew | Michael R. Marsh | Claire E. Bender |
| Michael L. Biehl | Roger S. Moseley | Christopher J. Muzzi |
| Daniel H. Case | Ted N. Pettit, Ph.D. | Lauren R. Sharkey |
| James M. Cribley | Scott D. Radovich | Leila Rothwell Sullivan |
| Stacey W.E. Foy | Robert F. Schneider | Cathy L. Takase |
| Gregory M. Hansen | Cathy Lee Sekiguchi | Nancy J. Youngren |
| Frank T. Kanemitsu | Steven E. Thomas | |
| Michael L. Lam | Eric H. Tsugawa | |
| Alan K. Lau | Gary L. Wixom | |
| Dennis M. Lombardi † | | |

**PACIFIC GUARDIAN CENTER, MAUKA TOWER**
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

TELEPHONE: (808) 547-5400
FACSIMILE: (808) 523-1888
E-mail: info@casebigelow.com
http://www.casebigelow.com

Of Counsel:
Steven L. Rinesmith †
Counsel:
Gary S. Kerwood

Bruce C. Bigelow (1946-2001)
† A Law Corporation

May 3, 2003

HAND DELIVERY

Dr. Reneau Kennedy
3001 Diamond Head Road
Honolulu, HI   96815

            Re:  Claim of Philip E. English for disability due to retaliation

Dear Dr. Kennedy,

        Enclosed please find several pages of standards from the IAAO (International Association of Assessing Officers).  The IAAO is the most widely recognized professional organization for government tax assessors.  We are providing most of this information in response to an inquiry from Nancy about workloads.

        Phil English was assigned approximately 20,000 condominium and co-op units in one of the most complicated real estate markets in the world - Waikiki.  Even if the co-op buildings were counted as single units, this would still probably be in excess of 18,000 properties.  You will note that, according to the IAAO standards, a load of greater than 5000 properties per assessor would be cause for considerable concern.

        I hope this is addresses the question raised.  Please let us know if we can provide any further information. We are very anxious to have these matters resolved as the situation is worsening daily, and seems unlikely to improve until Phil can at least pay his minimal living expenses.

        Thank you very much.

                            Very truly yours,

                            Roger S. Moseley

RSM/kmc
Encl.
cc. Phil English

27505\1\325366.1        MEMBER OF LEX MUNDI, THE WORLD'S LEADING ASSOCIATION OF INDEPENDENT LAW FIRMS

RENEAU KENNEDY RE PHILIP ENGLISH                    15

# STANDARD ON MASS APPRAISAL
# OF REAL PROPERTY

**Approved March 1984**

## International Association of Assessing Officers

The assessment standards set forth herein represent a consensus of thought in the assessing field and have been adopted by the Executive Board of the International Association of Assessing Officers. The objective of these standards is to provide a systematic means by which assessing officers can improve and standardize the operation of their offices. The standards presented here are advisory in nature, and the use of, or compliance with, such standards is purely voluntary.

RENEAU KENNEDY RE PHILIP ENGLISH

from assessment-ratio studies or other market analyses.

The analysis of assessment-ratio study data can suggest groups or strata of properties in need of physical review. In general, trending factors can be highly effective in maintaining equity when appraisals are uniform within strata. Physical reviews and individual reappraisals are required to correct lack of uniformity within strata.

While assessment trending can be effective for short periods, properties should be physically reviewed and individually reappraised at least every six years. This can be accomplished in at least three ways: (1) reappraising all properties at periodic intervals (e.g., every four to six years); (2) reappraising properties on a cyclical basis (e.g., one-fourth or one-sixth each year); and (3) reappraising on a priority basis as indicated by assessment-ratio studies or other considerations, while still ensuring that all properties are physically reviewed at least every sixth year.

## 5. Managerial Considerations

**5.1 Overview.** Mass appraisal requires that human, computing, and other resources be well managed and that appropriate appraisal and analytical methods be employed. In this section certain key managerial considerations are discussed.

**5.2 Staffing.** A successful internal mass appraisal program requires a sufficiently large staff composed of persons skilled in general administration and supervision; appraisal; mapping and drafting; data processing; and secretarial and clerical functions. While the development of numerical staffing standards requires knowledge of legal responsibilities, workloads, and other resources, parcels-per-*employee* ratios greater than 2,500 to one (1,500 to one in very small districts and 3,500 to one in very large districts) should be viewed with some concern. Similarly, a parcels-per-*appraiser* ratio greater than 5,000 to one may cause concern.[20]

Unless efficiency or practical concerns dictate otherwise, persons performing the various mass appraisal functions should report to the assessor. When these functions are not performed by the assessor's staff, it is imperative that they be adequately provided by other departments, a state-level agency, a service bureau, or another source. Strong lines of communication must be established between the assessor's staff and those outside support groups.

The assessor's staff members must be qualified to perform their respective duties.[21] They need a combination of education, experience, and ongoing training. Position descriptions should state the minimum and ideal qualifications for each position. Compensation should be competitive with comparable positions in private industry.

Given the importance of automation to the modern assessor's operations, virtually all offices should have at least one staff person familiar with data processing and statistical concepts to coordinate research and development with the data processing staff. Moreover, assessors who develop valuation equations based on multiple regression analysis or related statistical techniques should employ a staff person (or consultant) with strong statistical training and experience. Large jurisdictions and state agencies should concentrate statistical, research, and data processing skills in an assessment standards section of their agency.

Automation of the appraisal process tends to shift job responsibilities. Less time should be needed to file and retrieve records, make algebraic computations, calculate and post values, produce reports, and compile assessment rolls. Therefore, more time will be available for managing, data processing, monitoring the general pattern and equity of valuations, and making more complicated appraisals such as those of special-purpose properties. In general, automation should expand the valuation capabilities, productivity, and professionalism of the staff. At all times the staff should be actively involved in new developments and ongoing modifications of the system.

**5.3 Data Processing Support.** Mass appraisal systems require considerable data processing support. Computers and related equipment should be used to store and update records, perform mathematical computations, prepare assessment notices (and tax bills), and perform other repetitive activities.

**5.3.1 Hardware.** With respect to valuation, the hardware system should be powerful enough to permit computerization of appropriate applications of the cost, sales comparison, and income approaches. Other applications of data processing, such as word processing, data inquiry, and activity summaries, should also be considered.

Computer equipment can be purchased, leased, rented, or shared with other jurisdictions. If the purchase option is chosen, the equipment should be easy to upgrade so that technological developments can be taken advantage of without purchasing an entirely new system.

**5.3.2 Software.** Computer software can be developed internally, adapted from software developed by other public agencies, or purchased (in whole or in part) from private vendors. (Inevitably there will be some tailoring needed to adapt externally developed software to the requirements of the user's environment.) Each alternative has advantages and disadvantages. The software should be designed so that it can be easily modified; it should also be well documented, at both the appraiser/user and programmer levels.

Security measures should exist to prevent unauthorized use and to provide backup in the event of accidental loss or destruction of data.

**5.3.3 Centralized Data Processing Support.** State agencies can promote efficiency by providing data processing to local jurisdictions at low rates, priced set only to recover marginal costs. They can also help to standardize processing and valuation procedures among jurisdictions. In addition, states can sometimes help local jurisdictions obtain computer resources at reduced costs by coordinating contracts with vendors.

## 5.4 Contracting for Appraisal Services.

**5.4.1 Overview.** Reappraisal contracts can include mapping, data collection, data processing, and other services, as well as valuation. They offer the potential of acquiring professional skills and resources quickly. Often these skills and resources are simply not available internally; contracting for them can permit the jurisdiction to maintain a modest staff and to budget for reappraisals on a periodic basis.

On the other hand, contracting for reappraisals makes the assessor dependent on outside services and less likely to develop in-house expertise. The staff is likely to remain small and will probably fail to develop a strong understanding of the mass appraisal system or to have a strong commitment to it. Contracting for reappraisals can also be costly, unless costs are

10



# Course 300
# Fundamentals
# of
# Mass Appraisal

© Copyright 1997
International Association of Assessing Officers
130 East Randolph Street, Suite 850
Chicago, IL 60601-6217
web site: http://www.iaao.org

# ABOUT THE COURSE AND THE
## INTERNATIONAL ASSOCIATION OF ASSESSING OFFICERS

### About the Course

This course is presented by the Education Department of the International Association of Assessing Officers (IAAO). It was developed under the guidance of the Education Subcommittee as part of a curriculum of almost fifty programs on appraisal procedures and assessment administration offered throughout the world.

This course consists of thirty hours of classroom instruction and a final examination. A certified IAAO instructor will guide you through learning aids, which may include lectures, discussions, case problems, review quizzes, and demonstrations. If the final examination is completed successfully, this course may fulfill part of the requirements for an IAAO professional designation. See your instructor or contact IAAO for additional information about the Professional Designation Program.

IAAO will send notification of the results of the final examination to you at the address indicated on the Education Record Form filled out the first day of class. You will be notified of the total score, and subtotal scores by category. Seventy percent is the minimum passing score. Please note, your examination pass/fail results will also be forwarded to the local sponsor and to the instructor. If you fail the final examination, you are permitted a reexamination for a fee. Information about this reexamination opportunity will accompany your exam results.

### About The International Association of Assessing Officers

The International Association of Assessing Officers (IAAO) is a nonprofit, educational association. Its mission is to provide leadership in accurate property valuation, property tax administration, and tax policy throughout the world. The IAAO offers courses, workshops, seminars and the Annual International Conference on Assessment Administration. It also performs research, produces publications and provides technical assistance.

IAAO members subscribe to our Code of Ethics and Standards of Professional Conduct and to the *Uniform Standards of Professional Appraisal Practice.*

The five internationally recognized designations offered by the IAAO represent the highest level of achievement in the field: the Certified Assessment Evaluator (CAE), the Assessment Administration Specialist (AAS), the Cadastral Mapping Specialist (CMS), the Personal Property Specialist (PPS), and the Residential Evaluation Specialist (RES).

Further information about publications, membership services, educational programs, professional designations, and requirements for membership may be obtained by writing IAAO, 130 East Randolph, Suite 850, Chicago, IL 60601 or calling 312/819-6100. We may also be reached by facsimile at 312/819-6149, by e-mail at webmaster@iaao.org or through our internet home page at http://www.iaao.org.

# International Association of Assessing Officers
## *Code of Ethics and Standards of Professional Conduct*

### Preamble

The purposes of this *Code of Ethics and Standards of Professional Conduct* are to establish professional guidelines for assessing officials and all members of the International Association of Assessing Officers (IAAO) and set forth standards by which to judge an IAAO member whose conduct is in question.

Members of IAAO shall conduct themselves in a manner that will reflect favorably upon themselves, the appraisal profession, the property tax system, and IAAO, and avoid any action that could discredit themselves or these entities.

### Definitions

As used in this *Code*:

**Appraisal** refers to an opinion of the value of specified interests in, or aspects of, identified real estate or personal property.

**Appraisal assignment** refers to those appraisal services in which the appraiser is employed or retained to act (or would be perceived by third parties or the public as acting) as a third disinterested party in rendering an unbiased estimate or opinion of the value of specified interests in or aspects of identified real estate or personal property. (Property tax consultants are not usually considered to be acting as disinterested third parties; therefore, property tax consulting assignments are not considered to be appraisal assignments within the meaning of the *Code*, unless an appraisal as defined by the *Uniform Standards of Professional Appraisal Practice* is made and expressed.)

**Appraisal report** means any communication, written or oral, of an opinion as to the value of specified interests in or aspects of identified real or personal property. In this context, the purpose of the appraisal of real estate is immaterial; therefore, valuation reports, real estate counseling reports, real estate tax counseling, real estate offering report memoranda, mortgage banking offers, highest and best use studies, market demand and economic feasibility studies, and all other reports communicating an opinion of value are appraisal reports, regardless of their title. The same is true with identified personal property; therefore, all valuation reports, financial statements, stockholders' equity statements, highest and best use studies, supply and demand studies, and all reports communicating an appraisal opinion are appraisal reports, regardless of their title.

**Assessment-related assignment** refers to the preparation of the assessed value of a single parcel of or an item of real or personal property, the total assessed value of all properties within the boundaries of the tax jurisdiction, or the assessed value of any group of properties. Although appraisal is an important aspect of ad valorem tax administration, other important aspects, including satisfying a variety of information needs, result in appraiser-client relationships that are unique.

**A file memorandum** is a record in the file of the appraiser setting forth the data, reasoning, and conclusions upon which an appraisal is based. Several of the *Code's* Canons and Ethical Rules require either the preparation of a written appraisal report containing data, reasoning, and conclusions, or the inclusion of a file memorandum in the appraiser's file. The file memorandum shall include a statement, outline or reference form, with work sheets, data sheets, and related material, containing sufficient information to demonstrate substantial compliance with the *Uniform Standards of Professional Appraisal Practice.* In most cases sufficient information should include: identification/brief description of real estate or personal property; real or personal property interest being appraised; purpose of the appraisal; definition of value being estimated; effective date of the appraisal; scope of the appraisal; all assumptions and limiting conditions; information considered, procedures followed, and reasoning in support of the analyses, opinion, and conclusion of any of the valuation approaches; any additional information required to demonstrate compliance with the *Uniform Standards of Professional Appraisal Practice;* and appraisal conclusions.

**Personal property** means identifiable, movable, and tangible and intangible items or objects that are not classified as real estate.

**Real estate** means an identified parcel or tract of land, including improvements, if any.

**Real property** refers to one or more defined rights, interests, and benefits in a parcel of real estate, whether the unencumbered fee or a lesser estate.

Since a clear understanding of defined terms is essential to a proper understanding of the *Code of Ethics and Standards of Professional Conduct,* it is the responsibility of each IAAO member to be familiar with and understand each defined term in the *Code* when following and applying the Canons and Ethical Rules set forth in the *Code.*

### Exceptions

If compliance with or adherence to any Canon or Ethical Rule set forth in the IAAO *Code of Ethics and Standards of Professional Conduct* would constitute a violation of the law of any jurisdiction, such Canon or Ethical Rule shall be void and of no force or effect in such jurisdiction.

In stating each individual Canon or Ethical Rule, no attempt has been made to enumerate all of the various circumstances and conditions that will excuse an IAAO member from strict observance; however, the IAAO recognizes that illness, acts of God, and various other events beyond the control of an IAAO member may make it inequitable to insist upon a strict observance in a particular case. When an IAAO member, in the exercise of reasonable care, commits a violation due to illness, acts of God, or other circumstances beyond his or her control, it is expected that the Ethics Committee will act in a manner that will avoid an inequitable result.

Inasmuch as there are other remedies under applicable federal, state/provincial, and local laws, nothing in this *Code* shall apply to the conduct of a member toward his or her employees and other workers in the member's assessment office or appraisal business, including, but not limited to, employment discrimination.

### Canon 1

Members shall conduct their professional duties and activities in a manner that reflects credit upon themselves and their profession.

### Ethical Rules

E.R. 1-1  It is unethical for members to conduct their professional duties in a manner that could reasonably be expected to create the appearance of impropriety.

E.R. 1-2  It is unethical for members to accept an appraisal or assessment-related assignment which they are not qualified to perform.

E.R. 1-3  It is unethical for members knowingly to fail in performance of their duties according to applicable laws and regulations or in the uniform application of such laws and regulations.

E.R. 1-4  It is unethical for members not to make available all public records in their custody

for public review, unless access to such records is specifically limited or prohibited by law, or the information has been obtained on a confidential basis and the law permits such information to be treated confidentially. Assessing officers must make every reasonable effort to inform the public about their rights and responsibilities under the law and the property tax system.

E.R. 1-5  It is unethical for members not to cooperate with public officials, to improve the efficiency and effectiveness of the property tax in particular and public administration in general.

E.R. 1-6  It is unethical to engage in misconduct of any kind that leads to a conviction for a crime involving fraud, dishonesty, false statements, or moral turpitude.

E.R. 1-7  It is unethical to perform any appraisal, assessment, or consulting service that is not in compliance with the IAAO Constitution or the *Uniform Standards of Professional Appraisal Practice*.

## Canon 2

Members shall not make public statements, written or oral, that are untrue or tend to mislead or deceive the public in the course of performing their professional duties.

### Ethical Rules

E.R. 2-1  It is unethical to use advertising or promotions that are not totally accurate and truthful to solicit assessment-related assignments or to use misleading claims or promises of relief that could lead to loss of confidence in appraisal or assessment professionals by the public.

E.R. 2-2  It is unethical to claim an IAAO professional designation unless authorized, whether the claim is verbal or written, or to claim qualifications that are not factual or may be misleading.

E.R. 2-3  It is unethical not to give full credit to the source(s) of any materials quoted or cited in writings or speeches.

## Canon 3

Members shall not engage in appraisal or assessment-related assignments in which they have, or may reasonably be considered by the public as having, a conflict of interest.

### Ethical Rules

E.R. 3-1  It is unethical for members to accept an appraisal or assessment-related assignment that can reasonably be construed as being in conflict with their responsibility to their jurisdiction, employer, or client, or in which they have an unrevealed personal interest or bias.

E.R. 3-2  It is unethical for assessment personnel to perform private appraisal assignments (moonlight) in their assessment jurisdictions.

*Comment A.* It is not unethical for assessment personnel to perform special appraisal assignments for other government agencies when such assignments are part of their duties as assessment professionals.

*Comment B.* It is not unethical for assessment personnel to perform private appraisal assignments (moonlight) outside of their assessment jurisdictions.

## Canon 4

Members shall accept no appraisal or assessment-related assignment which is contingent upon or influenced by any condition that could impair their objectivity.

### Ethical Rules

E.R. 4-1  It is unethical, in the performance of an appraisal or assessment-related assignment, to develop an appraisal, analysis, or opinion that is biased or to prepare, orally present, sign, or deliver an appraisal report that contains any biased analysis or opinion.

Further, it is unethical for a member knowingly to permit a business entity that is wholly owned, or wholly or partially controlled by such member, to prepare, orally present, sign, or deliver a biased report or an appraisal report that contains any biased analysis or opinion.

E.R. 4-2  It is unethical to accept or perform an appraisal assignment if the compensation to be paid for the assignment is contingent upon a reduction or increase in assessed value or taxes, or the consequences of such assignment.

*Comment.* Property tax consulting assignments are not considered to be appraisal assignments within the meaning of the *Code*, unless an appraisal as defined by the *Uniform Standards of Professional Appraisal Practice* is made. Therefore, unless an appraisal as defined by the *Uniform Standards of Professional Appraisal Practice* is made and expressed, it is not a violation of this E.R. for a member to accept or perform a property tax consulting assignment for which compensation is contingent upon a reduction or increase in assessed value or taxes. For further explanation, see Standards 4 and 5 of the *Uniform Standards of Professional Appraisal Practice*.

E.R. 4-3  It is unethical to accept or perform an appraisal assignment where the member has a personal interest in the subject property or personal bias toward the parties, unless certain conditions are met. Such conditions are:
(a) The member shall disclose such personal interest or bias to the client or employer prior to acceptance of the appraisal assignment, and
(b) The member shall disclose such personal interest or bias in each written or oral appraisal report resulting from such appraisal assignment.

E.R. 4-4  It is unethical to perform appraisal assignments without clear and full disclosure of the form of compensation as required by the *Uniform Standards of Professional Appraisal Practice*.

## Canon 5

Members shall abide by and support the provisions of the IAAO Constitution, Bylaws, and Procedural Rules.

### Ethical Rules

E.R. 5-1  It is unethical for an IAAO member:
(a) Knowingly to make false statements or submit misleading information when completing a membership application, or to refrain from promptly submitting any significant information in the possession of such member when requested to do so as part of an IAAO membership application.
(b) Knowingly to submit misleading information to the duly authorized Ethics Committee or subcommittee; to refrain from promptly submitting any significant information in the possession of the member as requested by the committee or subcommittee; to refuse to appear for a personal interview or participate in an interview conducted by telephone as scheduled by the committee or subcommittee; or to refuse to answer promptly all relevant questions concerning an appraisal or assessment-related assignment or related testimony being investigated by the committee or sub-committee. Any member who has submitted misleading information to the Ethics Committee may be subject to ethical charges filed by the committee.
(c) To fail or refuse to submit promptly to an authorized IAAO committee a written appraisal report or file memorandum containing data, reasoning, and conclusions, or to fail or refuse to permit an authorized committee to review an appraisal report, assessment-related assignment, or file memorandum when requested to do so by a person or persons authorized to review such material.
(d) To fail or refuse to submit promptly any significant information in the possession of a member concerning the status of litigation related to an ethics matter when requested to do so by the chair of the Ethics Committee; or knowingly to submit misleading information to the chair of the Ethics Committee concerning the status of litigation.

E.R. 5-2  It is unethical to fail to comply with the terms of a summons issued by the Ethics Committee.

E.R. 5-3  It is unethical not to cooperate fully with the IAAO Executive Board, Ethics Committee, and the staff of IAAO in all matters related to the enforcement of this *Code*, as set forth in the Ethics Commit-tee's Rules and Procedures, as amended from time to time.

E.R. 5-4  It is unethical to violate the IAAO Constitution, Bylaws, or Procedural Rules.

## Canon 6

Members shall comply with the requirements of the *Uniform Standards of Professional Appraisal Practice*.

### Ethical Rules

E.R. 6-1  It is unethical to fail to observe the requirements of the *Uniform Standards of Professional Appraisal Practice*.

# Uniform Standards of Professional Appraisal Practice
## of The Appraisal Foundation

The International Association of Assessing Officers has adopted standards 1 through 10 of the Uniform Standards of Professional Appraisal Practice. (The Preamble, Ethics Provision, Competency Provision, Departure Provision, Jurisdictional Exception, Supplementary Standards, Definitions, Standards Rules, and Explanatory Comments, although not included below, are incorporated by reference.)

**Standard 1.** In developing a real property appraisal, an appraiser must be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal.

**Standard 2.** In reporting the results of a real property appraisal, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.

**Standard 3.** In reviewing an appraisal and reporting the results of that review, an appraiser must form an opinion as to the adequacy and appropriateness of the report being reviewed and must clearly disclose the nature of the review process undertaken.

**Standard 4.** In performing real estate or real property consulting services, an appraiser must be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible result.

**Standard 5.** In reporting the results of a real estate or real property consulting service, an analyst must communicate each analysis, opinion, and conclusion in a manner that is not misleading.

**Standard 6.** In developing a mass appraisal, an appraiser must be aware of, understand, and correctly employ those generally accepted methods and techniques necessary to produce and communicate credible appraisals.

**Standard 7.** In developing a personal property appraisal, an appraiser must be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal.

**Standard 8.** In reporting the results of a personal property appraisal, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.

**Standard 9.** In developing a business or intangible asset appraisal, an appraiser must be aware of, understand, and correctly employ those recognized methods and procedures that are necessary to produce a credible appraisal.

**Standard 10.** In reporting the results of a business or intangible asset appraisal, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.

# CASE BIGELOW & LOMBARDI

### A LAW CORPORATION

David F. Andrew
Michael L. Biehl
Daniel H. Case
James M. Cribley
Stacey W.E. Foy
Gregory M. Hansen
Frank T. Kanemitsu
Michael L. Lam
Alan K. Lau
Dennis M. Lombardi †

Michael R. Marsh
Roger S. Moseley
Ted N. Pettit, Ph.D.
Scott D. Radovich
Robert F. Schneider
Cathy Lee Sekiguchi
Steven E. Thomas
Eric H. Tsugawa
Gary L. Wixom

PACIFIC GUARDIAN CENTER, MAUKA TOWER
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

TELEPHONE: (808) 547-5400
FACSIMILE: (808) 523-1888
E-mail: info@casebigelow.com
http://www.casebigelow.com

Claire E. Bender
Christopher J. Muzzi
Laila Rothwell Sullivan
Lauren R. Sharkey
Cathy L. Takase
Nancy J. Youngren

Of Counsel:
Steven L. Rinesmith †
Counsel:
Gary S. Kerwood

Bruce C. Bigelow (1946-2001)

† A Law Corporation

May 2, 2003

BY FAX AND MAIL

(808) 527-6782

Thomas Riddle
Workers' Compensation Administrator
City and County of Honolulu
550 South King Street
Honolulu, HI   96813

Re:  Claim of Philip E. English for disability due to retaliation

Dear Mr. Riddle,

I have asked Dr. Kennedy's assistant, Nancy, if it will be possible to obtain a copy of her report to you once it is completed.  It seems that there would be no objection on Dr. Kennedy's part, however, specific authorization is apparently needed from you for them to be able to provide the report to Phil.   Would you be so kind as to provide them with this authorization?

By all appearances Dr. Kennedy has gone to a great deal of effort and conducted a thorough investigation and analysis of Phil's condition, the background, and presumably his prognosis (although I must confess that I am speculating a bit here as to the scope of Dr. Kennedy's actual assignment).   It strikes me that Dr. Kennedy's analysis and conclusions, whatever they are, may be of considerable help to Phil in re-ordering his life and recovering from this ordeal.

Thank you for your continued assistance.

Very truly yours,

Roger S. Moseley

RSM/kmc
cc: Phil English
    Dr. Kennedy

27505\1\327408.1

MEMBER OF LEX MUNDI, THE WORLD'S LEADING ASSOCIATION OF INDEPENDENT LAW FIRMS

RENEAU KENNEDY RE PHILIP ENGLISH

23

**Reneau Kennedy**

| | |
|---|---|
| **From:** | "Riddle, Thomas" <TRiddle@co.honolulu.hi.us> |
| **To:** | <reneaukennedy@hawaii.rr.com> |
| **Sent:** | Wednesday, April 30, 2003 8:07 AM |
| **Subject:** | Philip English |

Thank you for allowing me to bring the Kaiser records to you last evening and for discussing Mr. English's claim.  This morning I provided the phone numbers for his church pastor and for the suicide crisis center to his attorney.  I didn't feel comfortable trying to contact Mr. English directly as most attorneys prefer that we communicate through their office rather than deal directly with their clients.  Hopefully, Mr. Moseley can get English into some treatment program or intervention if necessary.

This morning I spoke with Robert Magota, who heads the assessment division and is one of the people I suggested that you speak with.  I informed him that you would like to come down and speak with some of the people in the office and he is agreeable and will fully cooperate and provide whatever assistance you may require.  His phone number is 527-6859.  If you need any other assistance, you can call also call me.

Finally, I have made arrangements to go to his office and remove all of Mr. English's personal property from his desk.  His attorney asked if I could do this because English did not want to return to the office.

Thanks again for your assistance with this most difficult case.  It was a pleasure seeing you again.

    Thomas Riddle

4/30/03

RENEAU KENNEDY RE PHILIP ENGLISH                    24

**Reneau Kennedy**

| | |
|---|---|
| **From:** | "Riddle, Thomas" <TRiddle@co.honolulu.hi.us> |
| **To:** | <reneaukennedy@hawaii.rr.com> |
| **Sent:** | Tuesday, April 29, 2003 2:29 PM |
| **Subject:** | Philip English |

The records from Kaiser are supposed to be delivered today. I would like to get them to you as soon as possible. Should I bring them to your office on Queen Street? Or would you like me to drop them off at your home on Diamond Head Road. I will be down there around 7-7:30 this evening anyway.

Holpefully, you will get this e-mail before 4:30 when I will be leaving the office. I will take the records with me so if you get the e-mail after 4:30 but before 6:00 p.m. you can call me at home if you want me to deliver them to Diamond Head Road. My number is 396-9166.

Thomas Riddle

4/29/03

RENEAU KENNEDY RE PHILIP ENGLISH                    25

# CASE BIGELOW & LOMBARDI
### A LAW CORPORATION

Pacific Guardian Center
Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813

Tel: (808) 547-5400
Fax: (808) 547-5532

## FAX TRANSMITTAL

Date: ___4-30-03___

Time sent: _____ ☐ A.M. ☐ P.M.

To: Nancy

From: Roger Moseley
Direct Line:
Pages: 547 5447
File No.: 12

Fax No.: 923 2299
Re: Phil English

---

**PLEASE CALL THE DIRECT TELEPHONE NUMBER OF THE SENDER OR (808) 547-5400 FOR ANY MISSING OR ILLEGIBLE PAGES OR IN HAVING DIFFICULTY RECEIVING OUR TRANSMISSION.**

This communication contains confidential and privileged information. It is exempt from disclosure under applicable law. If you received it in error, please notify the sender immediately by telephone or fax and return the original by mail.

---

## MESSAGE

Nancy — A few additional items which may help Dr. Kennedy.

~ Thanks

R

**English, Philip E.**

| | |
|---|---|
| **From:** | English, Philip E. |
| **Sent:** | Friday, February 28, 2003 8:31 AM |
| **To:** | 'Mom and Dad' |

Dad,

I went to the Doctor yesterday. They are putting me on a two week work leave immediately. I will be seeing him in about 10 days and we will review the situation then.

On Monday I have a meeting with the Administrative Services Officer (top personnel guy for the department of Budget and Fiscal Services) regarding complaints made against me including workplace violence and sneaking around trying to gather info on people for a law suit. It has gone to the next higher level of government now.

My new union agent says something really stinks and he does not like what is happening. He says that it sounds to him like retaliation and harassment. It is actually one worse than that it is intimidation! He even went on to say that I probably won't be able to work in the assessment division in the future for fear of future retaliation. That is how it works here in the City and apparently there are a lot of people who are aware of the tactics. Others are watching now so we shall see how it all plays out.

I am pretty shook up about all of this. I have been carrying a big load for awhile. I have an ally that they do not know about and I am sure he is on my side. I have told only the truth and will continue to do so. They have lied repeatedly. I have urged them all to do the right thing. They have attempted to escalate the harassment and intimidation. I have prayed constantly on this issue.

Whatever the outcome I know that God is in control and the out come will be his.

I love you,

Phil

1

LINDA LINGLE
GOVERNOR



PETER T. YOUNG
CHAIRPERSON
BOARD OF LAND AND NATURAL RESOURCES

DAN R. DAVIDSON
DEPUTY DIRECTOR

DEPUTY DIRECTOR FOR
THE COMMISSION ON WATER
RESOURCE MANAGEMENT

W. MASON YOUNG
ACTING ADMINISTRATOR

## STATE OF HAWAII
### DEPARTMENT OF LAND AND NATURAL RESOURCES
### DIVISION OF BOATING AND OCEAN RECREATION
333 QUEEN STREET, SUITE 300
HONOLULU, HAWAII 96813

BOR 0551.03

*wrong address!*

PHILIP E ENGLISH
720 SOUTH STREET, #170
HONOLULU HI 96813

April 17, 2003

Dear PHILIP E ENGLISH

SUBJECT:  Notice of Default on Account No. 0832R001311
Mooring Permit No. 4053, Ala Wai Small Boat Harbor

A reminder notice was sent to you in March 2003 for the outstanding March monthly charge. Our records indicate that your account continues to be delinquent in payment to the Division of Boating and Ocean Recreation in the amount of $1235.72, including late charges as of March 31, 2003, of which $263.51 is delinquent in excess of thirty (30) days.

Accordingly, pursuant to Section 13-231-6, Hawaii Administrative Rules, you are hereby served a Notice of Default for failure to keep payments current on Account No. 0832R001311 at Ala Wai Small Boat Harbor.

Your immediate attention is requested for payment of the outstanding delinquent amount within fifteen (15) days from the date of receipt of this notice. Pursuant to Section 13-230-6(2), this letter is deemed delivered five (5) days after the date of mailing. Send your payment with your account number on your check to: Ala Wai Small Boat Harbor, 1651 Ala Moana Boulevard, Honolulu, Hawaii 96815

Failure to cure this default within fifteen (15) days of receipt of this notice, shall result in termination of your permit, cancellation of your account, require your vessel to leave the harbor or become subject to enforcement which may include a citation, higher fees for mooring without permit and impoundment of your vessel.

If you have any questions regarding the amount due, please call our District Office at (808) 973-9727.

Very truly yours,

W Mason Young

Mason Young
Acting Administrator

cc:  District Office
     Fiscal Office
     Harbor Office
     Post on Boat

SENT BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED

POST ON OR BOAT: *Meghan Statto*

DATE: 4/19/03  TIME 10:45 AM

# CASE BIGELOW & LOMBARDI
A LAW CORPORATION

David F. Andrew
Michael L. Bishl
Daniel K. Case
James M. Cribley
Stacey W. E. Foy
Gregory M. Meneken
Frank T. Kanemitsu
Michael L. Lam
Alan K. Lau
Dennis M. Lombardi †

Michael R. Marsh
Roger S. Mossley
Ted H. Pettit, Ph.D
Scott D. Raderich
Robert F. Schneeger
Cathy Lee Sekiguchi
Steven E. Thomas
Eric H. Tsugawa
Gary L. Wixom

Claus E. Bender
Christopher J. Muzzi
Laura Rashwall Sullivan
Lauren R. Sharkey
Cathy L. Takase
Nancy J. Youngren

Of Counsel
Steven L. Rinesmith †
Counsel
Gary S. Kerwood

Bruce C. Bigelow (1946-2001)

† A Law Corporation

PACIFIC GUARDIAN CENTER, MAUKA TOWER
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

TELEPHONE: (808) 547-5400
FACSIMILE: (808) 523-1888
E-mail: site@casebigelow.com
http://www.casebigelow.com

April 25, 2003

BY FAX AND HAND DELIVERY

Thomas Riddle
Workers' Compensation Administrator
City and County of Honolulu
550 South King Street
Honolulu, HI 96813

Re: Claim of Philip E. English for disability due to retaliation

Dear Mr. Riddle,

Please be advised that Phil English has been informed that he will lose his health insurance coverage on May 1, 2003 due to non-payment of the premiums. Mr. English has also been informed that he will be evicted from his boat, on which he is a legal live-aboard, and that his boat will be seized on Wednesday April 30, 2003. This is also due to non-payment of fees. Mr. English is unable to make these payments because he has no income and is disabled due to the retaliation conducted against him by the employees and management of the Assessment Division.

These events will likely have serious and far-reaching consequences if they are allowed to come to fruition.

Has the City's IME doctor, Dr. Kennedy, reported her conclusions to you?

If so, what action is the City prepared to take?

What about TDI?

Is there anything you can do to intercede in either of these impending problems?

In our view the City had a responsibility to move faster on this claim, before things got so desperate. We presently believe that under the present circumstances there is likely not much that you, Tom Riddle, could have done differently to expedite this process, but we also believe that the City should have provided you with adequate resources to process such claims in a timely manner.

27505\1\326216.1   MEMBER OF LEX MUNDI THE WORLD'S LEADING ASSOCIATION OF INDEPENDENT LAW FIRMS

RENEAU KENNEDY RE PHILIP ENGLISH                    29

Thomas Riddle
April 25, 2003
Page 2

    Please advise us as soon as possible of the City's intended course of action as well as the timetable for such action.

    Thank you for your continued consideration in this case.

Very truly yours,

Roger S. Moseley

RSM/kmc
cc. Phil English

27505\1\326216.1

# CASE BIGELOW & LOMBARDI

## A LAW CORPORATION

David F. Andrew
Michael L. Ewart
Daniel M. Case
James M. Crabley
Stacey W. E. Fay
Gregory M. Hansen
Frank Y. Kanemitsu
Michael L. Lam
Alan K. Lau
Dennis M. Lombardi †

Michael R. Marsh
Roger S. Moseley
Ted N. Pettit, Ph.D.
Scott O. Radovich
Robert F. Schneider
Cathy Lee Sakaguchi
Steven E. Thomas
Eric H. Tsugawa
Gary L. Wilson

Clare E. Bandai
Christopher J. Muzzi
Lana Rathwell Sullivan
Lauren R. Sharkey
Cathy L. Takase
Nancy J. Youngren

Of Counsel
Steven L. Roensmith †
Counsel
Gary S. Kerwood

PACIFIC GUARDIAN CENTER, MAUKA TOWER
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

TELEPHONE (808) 547-5400
FACSIMILE: (808) 523-1888
E-mail: info@casebigelow.com
http://www.casebigelow.com

Bruce C. Bigelow (1946-2001)

† A Law Corporation

April 28, 2003

BY FAX AND HAND DELIVERY

Thomas Riddle                                                    (808) 527-6782
Workers' Compensation Administrator
City and County of Honolulu
550 South King Street
Honolulu, HI 96813

Re: Claim of Philip E. English for disability due to retaliation

Dear Mr. Riddle,

Further to our April 25, 2003 letter with respect to the impending loss of Phil English's health insurance and the boat on which he lives: Please be advised that The Harbors Division has confirmed that if Mr. English does not pay them the amount of $785 prior to April 30, 2003, they will be removing him from his boat and seizing it.

Mr. English has also been advised that, unless he pays $107.50 by April 30, 2003 and an additional $107.50 by May 15, 2003, he will lose his health insurance coverage. Thereafter he apparently will be required to make the same payments on the 15th and 30th of each month to preserve his coverage.

Mr. English does not have enough money to make either of these payments, as he has not been receiving a paycheck, he has not been receiving TDI, and he has not been receiving Worker's Compensation.

We have repeatedly requested information from the City on potential additional sources of income for Mr. English. These requests began early in this process, but it was not until April 25, 2003 that we ever received any acknowledgment that TDI was a potential source of income. This acknowledgement came only after someone at the State Department of Labor suggested this as a possibility. You were kind enough to get the TDI claim form to us by mid-day on the 25th and Mr. English completed, signed and delivered the form to Kaiser for his doctor's completion on that very same afternoon. Mr. English has followed up several times this morning with Kaiser, but has been unable to obtain the completed form from them as yet.

27505\1\326487.1       MEMBER OF LEX MUNDI, THE WORLD'S LEADING ASSOCIATION OF INDEPENDENT LAW FIRMS

RENEAU KENNEDY RE PHILIP ENGLISH                                    31

Thomas Riddle
April 28, 2003
Page 2

Also on Friday, April 25, 2003, we obtained a medical records authorization from Dr. Kennedy's office. Mr. English filled that form out, signed it and turned it in to Kaiser that same afternoon. As you are aware, Mr. English provided you with an authorization early on in this process, and apparently you have not yet been able to obtain the necessary records. Mr. English has also expended considerable efforts to obtain his records on his own, so that he could provide them to Dr. Kennedy. To date, Mr. English has not been able to pry his records out of Kaiser personally either. The reason we obtained a form from Dr. Kennedy was that her office informed us that her report could not be completed without those records and we determined to make yet another effort to obtain the records.

As you yourself have acknowledged, Mr. English has immediately done everything he could to cooperate with whatever has been required. It is difficult to believe that he will now lose his medical coverage and his place of abode because of the various administrative problems between the City and Kaiser. Certainly the prospect of these developments cannot possibly be beneficial to his present state of mind.

We would respectfully request that you do the following at a minimum:

1.    Please call Kaiser and follow up on your attempts to obtain the medical records in question.

2.    Please call the Harbors Division and try to obtain an extension of time for Mr. English to pay his fees. The Oahu District Manager is Steve Thompson and his telephone number is 587 1973. The Acting Administrator is Mason Young and his telephone number is 587 1966.

3.    Please call Royal State Group with respect to Mr. English's Kaiser coverage. Their telephone number is 539 1600. You will probably need Mr. English's Social Security Number for that call, it is 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.

4.    Please explore whatever other action you might possibly take to assist Mr. English in paying these bills. For example, can you waive the physician's form for TDI? Can payroll "advance" funds?

We fully realize that you are receiving conflicting stories from the Assessment Division, such as - they have been trying to get Mr. English to seek "help" for a year. If you will examine the records I sent you last week you will see that it was in February of 2002 that Mr. English finally made a written complaint about the illegal use of City personnel and equipment for the Administrator's private business. Does it not seem strange to you that this is about the same time, according to them, that they began to ask Mr. English to seek "help"? Any urging of Mr. English to seek "help" was plainly nothing more than part of the concentrated and coordinated effort to wall him off, discredit him, and to make it impossible to continue with his employment. This is a very

27505\1\326216.1

RENEAU KENNEDY RE PHILIP ENGLISH                    32

Thomas Riddle
April 28, 2003
Page 3

severe case of retaliation and the delays in processing Mr. English's worker's comp. and now TDI claims is playing right into the hands of those responsible for the theft from the City and the following retaliation.

Mr. English has consistently tried to take the appropriate actions and to protect himself as best he could from further damage. He has consistently tried to focus on positive measures to avoid further damage to himself, to repair the damage that has been done, and to fulfill his duty to the citizens of this City by putting a stop to the illegal activity in the Assessment Division. He has tried very hard to avoid having to take any of these matters to the courts. Please redouble your efforts to assist him in his efforts.

Could advise us as soon as possible of anything you are able to accomplish or, conversely, if you are unable to help with the two immediately pressing problems?

Thank you very much.

Very truly yours,

Roger S. Moseley



RSM/kmc
cc. Phil English

27505\1\326216.1

RENEAU KENNEDY RE PHILIP ENGLISH                    33

DEPARTMENT OF HUMAN RESOURCES

# CITY AND COUNTY OF HONOLULU

550 SOUTH KING STREET
HONOLULU, HAWAII 96813

JEREMY HARRIS
MAYOR



CHERYL K. OKUMA-SEPE
DIRECTOR

April 29, 2003

Roger S. Moseley, Esq.
CASE BIGELOW & LOMBARDI
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813

Re:     Philip English

Dear Mr. Moseley:

Thank you for your letter of April 28th concerning the dire financial condition that your
client now finds himself. Unfortunately, at this time, there is little that can be done
under workers' compensation that would help him. As I explained to Mr. English
when I first saw him, these types of claims take some time to process. I was able to
secure an early appointment with Dr. Kennedy for an evaluation and, like you, we have
been trying to obtain the records from Kaiser for some time. We have called them
several times and we only get a response of "we are working in it." I think with the
recent HIPA regulations that recently went into effect, Kaiser is being ultra cautious and
is most likely reviewing the records page by page before releasing them. In any event,
they promised they would be available in the next couple of days when we inquired
yesterday.

You asked me to do four things to assist your client. I did call Kaiser again, as I
mentioned above, and was told the records would be available shortly (in fact, they are
supposed to be delivered this afternoon). You also asked me to call the Harbors
Division concerning an extension for payment of his boat rental fees, which must be
several months in arrears, and to call Royal State Group in respect to his health
insurance. Unfortunately, I have no contacts or influence with either of those agencies.
I feel this type of call should properly be made by his attorney and not his insurance
adjuster.

RENEAU KENNEDY RE PHILIP ENGLISH                                    34

Roger S. Moseley, Esq.
April 29, 2003
Page 2

Finally, you asked if the physician's form could be waived for TDI or if the city could advance funds to Mr. English. This office only handles workers' compensation and I cannot address TDI requirements. However, since the form has to first be approved by his department and then by the payroll section, I don't think they can process this benefit without the completed form.

Hopefully, once the records are received by Dr. Kennedy, she can complete her report and we can make a decision concerning his claim. I know this does not help with Mr. English's pressing financial condition. However, it is the best that I can do.

Sincerely,

THOMAS RIDDLE
Workers' Compensation Administrator

RENEAU KENNEDY RE PHILIP ENGLISH                    35

DEPARTMENT OF HUMAN RESOURCES

# CITY AND COUNTY OF HONOLULU

550 SOUTH KING STREET
HONOLULU, HAWAII 96813

JEREMY HARRIS
MAYOR



CHERYL K. OKUMA-SEPE
DIRECTOR

April 30, 2003

Roger S. Moseley, Esq.
CASE BIGELOW & LOMBARDI
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813

Re:   Philip English

Dear Mr. Moseley:

Last evening I delivered the records from Kaiser to Dr. Kennedy. It was somewhat disappointing that there was so little information in the records – but then that is Kaiser. In any event, Dr. Kennedy now has them now and can work toward completion of her report.

Like you, both Dr. Kennedy and I are concerned with Mr. English's mental state, especially considering his past history of multiple suicide attempts or ideation. His stress has reached a crisis level and only seems to be getting worse. Since he seems to have a strong religious beliefs, it may be advisable to contact his pastor, who has assisted him during past times of crisis. His phone number is 841-2376, although I am not sure of his name. I got this number from Dr. Kennedy and she felt it might be appropriate to contact him regarding Mr. English.

Also available is the Crisis Hotline at 531-4555 or the Suicide Prevention Hotline at 1-800-784-2433. These organizations are staffed with professionals who can assist if the need arises. Also, the state operates several mental health clinics where Mr. English can go for help.

I hesitate to intercede personally with your client, as most attorneys prefer that we direct all communication through their office. Therefore, I am passing along these numbers and suggestions for you to use, as you deem appropriate.

Sincerely,

THOMAS RIDDLE
Workers' Compensation Administrator

TOTAL P.01

RENEAU KENNEDY RE PHILIP ENGLISH                    36

DEPARTMENT OF HUMAN RESOURCES

# CITY AND COUNTY OF HONOLULU

550 SOUTH KING STREET
HONOLULU, HAWAII 96813

JEREMY HARRIS
MAYOR



CHERYL K. OKUMA-SEPE
DIRECTOR

April 30, 2003

Roger S. Moseley, Esq.
CASE BIGELOW & LOMBARDI
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813

Re:   Philip English

Dear Mr. Moseley:

Per your request, I have recovered the personal property of Mr. English from his desk and office. It is in four boxes (like copy paper comes in) and is presently sitting in the corner of my office. I would appreciate if you could arrange for someone to pick these items up as soon as possible.

Thank you for your assistance.

Sincerely,

THOMAS RIDDLE
Workers' Compensation Administrator

TOTAL P.01

# CASE BIGELOW & LOMBARDI
## A LAW CORPORATION

Pacific Guardian Center
Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813

Tel: (808) 547-5400
Fax: (808) 547-5532

## FAX TRANSMITTAL

Date: _4-30-03_

Time sent: _____ ☐ A.M. ☐ P.M.

To: Nancy

From: Roger Mosely
Direct Line: _5475447_

Fax No.: 923 2299

Pages:

Re:

File No.: 11

---

**PLEASE CALL THE DIRECT TELEPHONE NUMBER OF THE SENDER OR (808) 547-5400 FOR ANY MISSING OR ILLEGIBLE PAGES OR IN HAVING DIFFICULTY RECEIVING OUR TRANSMISSION.**

This communication contains confidential and privileged information. It is exempt from disclosure under applicable law. If you received it in error, please notify the sender immediately by telephone or fax and return the original by mail.

---

## MESSAGE

Re: Phil English Performance Evaluation.

DEPARTMENT OF BUDGET AND FISCAL SERVICES

# CITY AND COUNTY OF HONOLULU

REAL PROPERTY ASSESSMENT DIVISION
842 BETHEL STREET 2ND FLOOR * HONOLULU, HAWAII 96813
PHONE: (808) 527-5502 * FAX (808) 521-7647
WWW.CO.HONOLULU.HI.US

JEREMY HARRIS
MAYOR



IVAN M. LUI-KWAN
DIRECTOR

CHRIS A. DIEBLING
DEPUTY DIRECTOR

GARY T. KUROKAWA
ADMINISTRATOR

April 9, 2003

Mr. Philip E. English
1741 Ala Moana Blvd, Unit 22
Honolulu, Hawaii 96815

Dear Mr. English:

Subject: Annual Performance Evaluation Review

We are requesting your attendance at a meeting to discuss your annual performance evaluation report. The purpose of the evaluation is to assess the performance of an employee during the rating period to ensure the employee meets the requirements of the position. This evaluation report covers the rating period from June 1, 2002 to May 31, 2003.

This meeting will be held on April 17, 2003, Thursday, at 10:00 a.m., on the third floor of the Bethel Street office.

Sincerely,

Robert O. Magota
Real Property Assessor

cc: Ms. Ann Gima
Mr. Michael Golojuch

# CASE BIGELOW & LOMBARDI

A LAW CORPORATION

David F. Andrew
Michael L. Biehl
Daniel H. Case
James M. Cribley
Stacey W.E. Foy
Gregory M. Hansen
Frank T. Kanemitsu
Michael L. Lam
Alan K. Lau
Denise M. Lombard †

Michael R. Marsh
Roger S. Moseley
Ted N. Pettit, Ph.D
Scott D. Rasovich
Robert F. Schneidel
Cathy Lee Sekiguchi
Steven E. Thomas
Eric H. Tsugawa
Gary L. Wixom

Claire E. Benzer
Christopher J. Muzzi
Lele Rothwell Sullivan
Lauren R. Sharkey
Cathy L. Takase
Nancy J. Youngren

Of Counsel
Steven L. Ancsmun †
Counsel
Gary S. Karwood

Bruce C. Bigelow (1945-2001)
† A Law Corporation

PACIFIC GUARDIAN CENTER, MAUKA TOWER
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

TELEPHONE (808) 547-5400
FACSIMILE (808) 523-1888
E-mail: info@casebigelow.com
http://www.casebigelow.com

April 16, 2003

BY FAX AND HAND DELIVERY

Thomas Riddle
Workers' Compensation Administrator
City and County of Honolulu
550 South King Street
Honolulu, HI  96813

        Re:  Claim of Philip E. English for disability due to retaliation

Dear Mr. Riddle,

        Thank you for speaking with me on the telephone this morning. We did want to confirm, or ask questions about, the following matters:

        1.    Mr. English is planning to attend the examination by Dr. Kennedy on April 18, 2003 and planned to provide his Kaiser records at the same time. He will still attend, but will not be able to obtain copies of the records in time for the examination. We understand you anticipate the results of the examination and evaluation in approximately three weeks.

        2.    We also understand that if the results of Dr. Kennedy's examination are favorable to Mr. English's claim, the City's intent is to approve the claim and not to proceed to hearing. We further understand that if Dr. Kennedy's report is unfavorable, the hearing process would then be available to resolve any disputed matters.

        3.    As you may surmise, Mr. English's financial condition is nearing desperation and it is imperative that this claim be processed as rapidly as humanly possible. It appears to us the additional pressure caused by his deteriorating financial condition is significantly and adversely affecting his well-being and ability to recover from the retaliatory actions he has endured. If you can suggest any other source of financial assistance, which could be of some interim assistance to him, we would be most appreciative.

        4.    We are concerned that Mr. English's medical insurance premiums may not be getting paid, as his income from the City has effectively stopped. Could you please advise us of what needs to be done, if anything, to keep his medical coverage in place prior to the eventual decision in this case?

Thomas Riddle
April 16, 2003
Page 2

5.     Mr. English received a notice from Robert Magota requesting his attendance at a meeting to discuss an "annual performance evaluation report" on April 17, 2003. Mr. English is obviously unable to attend due to his condition which has been caused by the retaliation of the very people involved in this proposed evaluation. Would you please advise Mr. Magota of the status of the claim and the impropriety of the continuation of this activity in the light of the present circumstances? This senseless exacerbation of the damage being done to Mr. English is unconscionable.

6.     Is there some way of arranging for Mr. English to recover some of his personal effects from his desk without contact with the perpetrators of the retaliation he has experienced?  He would very much like to recover these possessions, but, as you may imagine, it appears the potential contact would be highly undesirable from many perspectives.

7.     Is there someone to whom Mr. English should be sending physician's "off work slips", or is that even necessary since he has made the workers' comp claim?

8.     Are there any other requirements or details in this process, which are being or may be overlooked?  Mr. English is very serious about providing everything necessary for processing this claim and intends to cooperate fully. Mr. English needs to be fully informed of any pitfalls or problems which can reasonably be anticipated and addressed.

Thank you for your kind assistance.

Very truly yours,

Roger S. Moseley

RSM/kmc
cc. Phil English

27505\1\324736.1

DEPARTMENT OF HUMAN RESOURCES

# CITY AND COUNTY OF HONOLULU

550 SOUTH KING STREET
HONOLULU, HAWAII 96813

JEREMY HARRIS
MAYOR



CHERYL K. OKUMA-SEPE
DIRECTOR

April 17, 2003

Mr. Roger S. Moseley
CASE BIGELOW & LOMBARDI
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813

Re:    Philip English

Dear Mr. Moseley:

Thanks for your letter of April 16, 2003 regarding Philip English. Following are answers to the questions posed in your letter:

1. We are pleased Mr. English will be attending the evaluation with Dr. Kennedy tomorrow. We have obtained a subpoena for his Kaiser records and will forward them to Dr. Kennedy upon receipt. Hopefully, her report will be available within a few days of her evaluation.

2. Our decision on compensability will depend heavily on Dr. Kennedy's report. Hopefully, her findings will be clear and all parties can understand any decision that is made.

3. The workers' compensation process is painfully slow, especially in claims such as Mr. English's. However, because of his cooperation, we were able to fast tract his claim and obtain a rather quick appointment for his evaluation. This usually takes several weeks, or even months. Unfortunately, I am not aware of any resources within the City that could assist Mr. English financially at this time.

Mr. Roger S. Moseley
April 17, 2003
Page 2

4.   Mr. English will need to pay his portion of his health insurance plan, which usually comes out of his paycheck. If he fails to do this, and there are no funds available, such as accumulated vacation or sick leave benefits, Kaiser will terminate his coverage. Mr. English should check with the payroll clerk in his department to arrange for this payment.

5.   I spoke with Robert Magota regarding the annual performance evaluation. He will put this on hold until after the workers' compensation matter is addressed.

6.   With your permission, I will go over to Mr. English's desk and place all of his personal belongings into a box that he can pick up in my office.

7.   Mr. English should forward all doctor reports and "off-work slips" to me in the Department of Human Resources.

8.   Although this is an adversarial claim with the City, Mr. English has fully cooperated with the workers' compensation process and has done all he needs to do for the moment.

I will be out of the office until next Friday, April 25th. I will check with Dr. Kennedy at that time regarding the status of her report.

Thank you for your assistance in this matter.

Sincerely

THOMAS RIDDLE
Workers' Compensation Administrator

RENEAU KENNEDY RE PHILIP ENGLISH                    43

# CASE BIGELOW & LOMBARDI

### A LAW CORPORATION

David F. Andrew
Michael L. Bohl
David H. Case
James M. Cribley
Stacey W E. Foy
Gregory M. Hansen
Frank T. Kanemitsu
Michael L. Lam
Alan K. Lau
Dennis M. Lombardi †

Michael R. Marsh
Roger S. Moseley
Ted N. Pettit, Ph.D.
Scott D. Raedorch
Robert F. Schneider
Cathy Lee Sekiguchi
Steven E. Thomas
Eric H. Tsugawa
Gary L. Wilson

PACIFIC GUARDIAN CENTER, MAUKA TOWER
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

TELEPHONE (808) 547-5400
FACSIMILE (808) 523-1888
E-mail info@caselombard.com
http //www.caselombard.com

Clyde E. Bender
Christopher J. Muzzi
Leto Rothwell Sullivan
Lauren R. Sharkey
Cathy L. Takase
Nancy J. Youngren

Of Counsel
Steven L. Ainsmith †
Counsel
Gary S. Karwood

Bruce C. Bigelow (1946-2001)

† A Law Corporation

April 18, 2003

BY FAX AND HAND DELIVERY

Thomas Riddle
Workers' Compensation Administrator
City and County of Honolulu
550 South King Street
Honolulu, HI 96813

Re:  Claim of Philip E. English for disability due to retaliation

Dear Mr. Riddle,

Thank you for responding so quickly to my April 16, 2003 letter.

Enclosed please find two original "Work Slips" showing Mr. English's continued disability from work to April 22, 2003.  For your reference, Mr. English has an appointment with an additional person at Kaiser for further evaluation on April 23. Presumably being warranted, a further work slip will be issued at that time.  We will keep you posted.

It has been suggested to us by staff of the Department of Labor, that Mr. English should have been receiving TDI payments during the processing of his Workers Compensation claim. Would you please explain?

An additional thank you is merited for your contact with Mr. Magota.  Your effort is appreciated.  Mr. Magota's actions were bewildering in light of the retaliation Mr. English has already endured on Mr. Magota's watch and at his hand.  It appears that your effort has forestalled at least some further damage to Mr. English.  Mahalo again.

Hopefully by the time you return from vacation, Mr. English will have instructed me to give you authorization to recover his personal possessions.

Thank you for your continued consideration in this case.

Very truly yours,

Roger S. Moseley

RSM/kmc
cc. Phil English

27505\1\325263.1      MEMBER OF LEX MUNDI, THE WORLD'S LEADING ASSOCIATION OF INDEPENDENT LAW FIRMS



**KAISER PERMANENTE**
*Good People. Good Medicine.*

# WORK SLIP

MAR 1 3 2003

Date of Visit/Telephone Advice: _____    Location of Visit/Telephone Advice: _____    Kaiser Honolulu Clinic
1010 Pensacola Street
Honolulu, Hawaii 96814

Diagnosis (if required): _____

Date(s) of scheduled Recheck(s): _____

This patient states that he/she was disabled and unable to work/attend school from  2-27-03    to _____

MAY RESUME work/school on: 4-2-03    ☒ Full duty  ☐ Limited duty ▶  IF LIMITED DUTY (describe): ☐ Driving ☐ Pushing

☐ Climbing  ☐ Standing  ☐ Sports  ☐ Pulling  ☐ Lifting  ☐ Walking  ☐ Hand Tools  ☐ Other: _____

IF LIMITED, is capable of returning to full duty on: 4-2-03    Further Description/Remarks: _____

_Janet E. Love, MD_
Provider's Signature

**J.E. LOVE INTERNAL MEDICINE**
Provider's Name (print)

I hereby authorize the Kaiser Permanente Medical Care Program to release information relating to this illness to my employer/school.
This authorization shall be valid for 90 days.

92328  Rev. 07/92    Signature of Patient/Responsible Party    Relationship to Patient

---

**KAISER PERMANENTE**
*Good People. Good Medicine.*

# WORK SLIP

033194
english, philip
10-20-54

Date of Visit/Telephone Advice: APR 2 3 2003    Location of Visit/Telephone Advice: _____    Kaiser Honolulu Clinic
1010 Pensacola Street
Honolulu, Hawaii 96814

Diagnosis (if required): _____

Date(s) of scheduled Recheck(s): as needed

This patient states that he/she was disabled and unable to work/attend school from  APR 0 2 2003    to  APR 2 2 2003
APR 2 3 2003

MAY RESUME work/school on: _____    ☐ Full duty  ☐ Limited duty ▶  IF LIMITED DUTY (describe): ☐ Driving ☐ Pushing

☐ Climbing  ☐ Standing  ☐ Sports  ☐ Pulling  ☐ Lifting  ☐ Walking  ☐ Hand Tools  ☐ Other: _____

IF LIMITED, is capable of returning to full duty on: _____    Further Description/Remarks: _____

**J.E. LOVE INTERNAL MEDICINE**

_Janet E. Love, MD_
Provider's Signature

Provider's Name (print)

I hereby authorize the Kaiser Permanente Medical Care Program to release information relating to this illness to my employer/school.
This authorization shall be valid for 90 days.

RENEAU KENNEDY RE PHILIP ENGLISH

45

APR. 30. 2003   5:28PM   C.M.B.&L./1  (808) 523-1888      No.5631   P. 9/11

| City and County of Honolulu<br><br>Annual Performance Evaluation Report | Department/Division<br>Budget & Fiscal Services - Real Pr | BUDGET & FISCAL |
|---|---|---|
| | Name of Employee<br>English, Philip E. | 9019-72H      CLS: 020553      BU: 13<br>ENGLISH,PHILIP E<br>DF486 REAL PROPERTY APPRAISER IV<br>FR: 06-01-02  TO: 05-31-03 |
| | Position No<br>DF-486 | Position Title<br>Real Property |
| | Rating Period:<br>From: 06/01/02   To: |

Annual ☒    Other ☐

Use the following rating factors to determine overall performance. Mark each factor SAT (satisfactory), SUBSTD (substandard) or NA (not applicable). Use only those factors that apply. Note some factors may not apply to specific positions.

| Factor | Rating | Comments |
|---|---|---|
| Quality of work | SAT ☐  SUBSTD ☒  NA ☐ | (Please see attached evaluation) |
| Quantity of work | SAT ☐  SUBSTD ☒  NA ☐ | Mr. English has been on leave |
| Reliability and Initiative | SAT ☒  SUBSTD ☐  NA ☐ | since February 28, 2003. Upon |
| Safety and use of equipment | SAT ☒  SUBSTD ☐  NA ☐ | his return, his job performance |
| Relationship with others | SAT ☐  SUBSTD ☒  NA ☐ | evaluation will be discussed with |
| Job knowledge | SAT ☐  SUBSTD ☒  NA ☐ | him. |
| | SAT ☐  SUBSTD ☐  NA ☐ | |

The following factors apply to supervisors only. Note some factors may not apply to specific positions.

| | | |
|---|---|---|
| Communication | SAT ☐  SUBSTD ☐  NA ☐ | |
| Problem solving and decision making | SAT ☐  SUBSTD ☐  NA ☐ | |
| Creativity and innovation | SAT ☐  SUBSTD ☐  NA ☐ | |
| Supervision | SAT ☐  SUBSTD ☐  NA ☐ | |
| Appraising subordinates | SAT ☐  SUBSTD ☐  NA ☐ | |
| Planning, organizing and setting priorities | SAT ☐  SUBSTD ☐  NA ☐ | |
| | SAT ☐  SUBSTD ☐  NA ☐ | |

Employee's overall evaluation      Satisfactory ☐      Substandard ☒

This evaluation has been reviewed and discussed with the employee. If the employee disagrees with this evaluation, the employee may attach comments that will become a part of the evaluation.

Employee's signature
On leave since Feburary 28, 2003 - upon return for discussion.    Date

Supervisor's signature    Date 4/22/03

Appointing authority's signature    Date 4/22/03

Distribution: Original to personnel file
Copy to employee
Copy to Department of Human Resources (for substandard evaluation only)

RENEAU KENNEDY RE PHILIP ENGLISH      46

## COMMENTS FOR ANNUAL PERFORMANCE EVALUATION REPORT

**Employee:**          Philip E. English, Real Property Appraiser IV, DF-486

**Supervisor:**       Ann C. Gima, Real Property Appraiser IV

**Rating Period:**   June 1, 2002 To May 31, 2003

During this performance evaluation period as an Appraiser IV, Phil has continued to be assigned the responsibility for the Waikiki area condominiums.

Over the course of the past nine months, Philip has been encountering numerous difficulties in independently performing all of the responsibilities of his position. His performance has been discussed with him on several occasions including two meetings conducted with union agents in attendance. Job duties and responsibilities as well as performance expectations were reviewed with him in the presence of a union agent.
Some specific issues that have been addressed include acts of insubordination, meeting stated deadlines, following written and verbal directions, correct methods for processing various job tasks, utilizing good judgment and repeated errors.

He has been absent from the workplace since February 28, 2003. Prior to his absence, he was made aware of numerous incomplete assignments. At the present time there are several outstanding issues regarding work performance and conduct still to be addressed upon his return to work. In his absence he has missed several mandatory training sessions.

Rating factors for Quantity of Work, Quality of Work, Reliability and Initiative, Relationship with others, and Job Knowledge are considered to be substandard.

Specific Areas of Evaluation where satisfactory performance needs to be demonstrated include:
1. Meeting deadlines
2. Knowledge and understanding of processes and procedures for routine job functions.
3. Demonstrate the ability to follow written and verbal instructions.
4. Perform complete and thorough and accurate preparation for BOR hearing presentations by stated deadlines.
5. Exercising good and appropriate judgment in work related matters including all types of correspondence with taxpayers and their representatives.
6. Following through to completion for all job functions. Including such areas as returning telephone calls, written correspondence, processing BOR recommendations for deferrals and decisions, corrections etc.

RENEAU KENNEDY RE PHILIP ENGLISH                                    47

Philip E. English
Real Property Appraiser IV, DF-486
Rating Period: June 1, 2002 To May 31, 2003
Page 2

Suggestions and recommendations for improving performance
  1. Develop a method of organizing work files to facilitate retrieval and tracking of information
  2. Set up work plan to schedule assignments and prioritize to meet deadlines
  3. Thoroughly review all written instructions
  4. File and organize written instructions for reference purposes
  5. Follow written and verbal instructions
  6. Reread Revised Ordinances of Honolulu
  7. Create a "to do" list to track completion and status of ongoing jobs/tasks
  8. Accept responsibility for work product

**Appraisal Training**
02/21/03      Mass Appraisal & ROH Chapter 8 – Staff
02/21/03      Market Modeling – Staff

On leave since February 28, 2003. Upon his return, a discussion will be held with him.

Philip E. English                                                    Date
Real Property Appraiser IV, DF-486

_____                    _____
Ann C. Gima                                                          4/22/03
Real Property Appraiser IV                                   Date

may. 1. 2003  12:03AM   C. M. B. & L. /1  (808) 523-1898              No. 5639  P. 1/6

# CASE BIGELOW & LOMBARDI
A LAW CORPORATION

Pacific Guardian Center
Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813

Tel: (808) 547-5400
Fax: (808) 547-5532

## FAX TRANSMITTAL

Date: _4-30-03_

Time sent: _____ ☐ A.M. ☐ P.M.

To: Nancy

From: Roger Moseley
Direct Line: 547 5447
Pages: 6
File No.:

Fax No.: 923 2299
Re:
Phil English

---

**PLEASE CALL THE DIRECT TELEPHONE NUMBER OF THE SENDER OR (808) 547-5400 FOR ANY MISSING OR ILLEGIBLE PAGES OR IN HAVING DIFFICULTY RECEIVING OUR TRANSMISSION.**

This communication contains confidential and privileged information. It is exempt from disclosure under applicable law. If you received it in error, please notify the sender immediately by telephone or fax and return the original by mail.

---

## MESSAGE

Nancy—

Further for Dr. Kennedy's info.

Thanks
R

RENEAU KENNEDY RE PHILIP ENGLISH

49

# CASE BIGELOW & LOMBARDI

## A LAW CORPORATION

PACIFIC GUARDIAN CENTER, MAUKA TOWER
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

TELEPHONE: (808) 547-5400
FACSIMILE: (808) 523-1888
E-mail: Info@casebigelow.com
http://www.casebigelow.com

David F. Andrew
Michael L. Biehl
David H. Case
James M. Cretney
Stacey W.E. Foy
Gregory M. Hanson
Frank T. Kanemitsu
Michael L. Lam
Alan K. Lau
Dennis M. Lombardi †

Michael R. Marsh
Roger S. Moseley
Ted N. Pettit, Ph.D.
Scott D. Rastovich
Robert P. Schreiber
Carly Lee Sakaguchi
Steven E. Thomas
Eric H. Tsugawa
Gary L. Wixom

Clare E. Bender
Christopher J. Muzzi
Leila Rothwell Sullivan
Lauren R. Sharkey
Cathy L. Takase
Nancy J. Youngren

Of Counsel:
Steven L. Kreszmith †
Counsel:
Gary S. Kerwood

Bruce C. Bigelow (1948-2001)
† A Law Corporation

April 30, 2003

<u>BY FAX AND HAND DELIVERY</u>

(808) 527-6782

Thomas Riddle
Workers' Compensation Administrator
City and County of Honolulu
550 South King Street
Honolulu, HI 96813

Re: Claim of Philip E. English for disability due to retaliation

Dear Mr. Riddle,

After receiving your April 17, 2003 letter, I was left with the clear and distinct understanding that the "annual performance evaluation" would be put "on hold until after the workers' compensation matter was addressed." I somehow have faith that you conveyed the same message to me that you received from Mr. Magota. I also believe you conveyed to Mr. Magota the seriousness of the situation and that you were grossly and intentionally misled by him as to his intentions.

On April 22, 2003 both Robert Magota and Ann Gima signed a very negative annual performance evaluation of Mr. English's performance (I presume they also prepared the document, but I cannot be certain yet). Not only did they sign this document, but they mailed it to Mr. English. These are the very people who have claimed to you that they, out of their concern for the well-being of Mr. English, had advised him to "get help" for the year since he complained about the theft of City employees' time and equipment use. (Although it is certainly beginning to appear that anyone complaining about crimes against the City, by City employees, really may have lost a grip on the reality that crime does pay when you work for the City.) It seems unlikely, after you specifically spoke to the Mr. Magota himself about this matter, that this could have been anything but an intentional, crass and calculated attempt to do severe harm to Mr. English.

I am sending you a copy of this "performance evaluation".

The evaluation is completely undeserved and is nothing more than a continuation of the efforts to fraudulently discredit and destroy Mr. English in retaliation for his efforts to correct the unprofessional and illegal practices and activities at the Assessment Division.

27505\1\327103.1    MEMBER OF LEX MUNDI, THE WORLD'S LEADING ASSOCIATION OF INDEPENDENT LAW FIRMS

RENEAU KENNEDY RE PHILIP ENGLISH

50

Thomas Riddle
April 30, 2003
Page 2

To my best observation, this performance evaluation has resulted in considerable deterioration in Mr. English's present condition and outlook for the future. Mr. English has been apparently able to think of little more than this evaluation, with the sole exception of losing his place of abode and losing his health insurance tomorrow.

This is perhaps the most despicable act, among the many so far in this unsavory episode. The City must take full responsibility. **Our expectation is that you will immediately seek the most severe disciplinary action against the two perpetrators of this monstrous act, at the highest level necessary to accomplish this objective.** It is my personal belief that these two individuals should be discharged immediately.

We would also appreciate any direction you may give as to where to take these issues next, short of the courts or the press. Someone working for the City must care that seemingly the only person who wants to do the right thing at the Assessment Division, is about to be thrown out on the street, with no home, no health insurance, and no money, in a very despondent, uncertain, and fragile state. This is a man who previously enjoyed an excellent reputation as a professional appraiser, and who continues to try to be the best father and example of proper behavior to his young son.

Mr. English has been called "naïve" by friends, co-workers, and even physicians. Frankly, that word is nothing but a pejorative form of the word "honest". It is my view that we need more of these guys and it is damned well time that other City officers and employees step forward to intercede in his behalf to prevent the events that are about to befall him as a result of his being "naïve". "Not my job" is not a legitimate excuse for failure to act.

**This matter is not going to go away, no matter how big it gets or how long it takes. Every City officer or employee should realize that there is only one choice... that is to be proactive in assisting and defending Mr. English and eradicating the improper activities at the Assessment Division.**

Would you care to share your plan of action with me?

Thank you.

Very truly yours,

Roger S. Moseley

RSM/kmc
Enclosure
cc. Phil English

27505\1\327103.1

RENEAU KENNEDY RE PHILIP ENGLISH                    51

| City and County of Honolulu | Department/Division Budget & Fiscal Services - Real P | BUDGET & FISCAL 9019-72H   CLS: 020553   BU: 13 ENGLISH,PHILIP E DF486 REAL PROPERTY APPRAISER IV FR: 06-01-02  TO: 05-31-03 |
|---|---|---|
| **Annual Performance Evaluation Report** | Name of Employee English, Philip E. | |
| | Position No DF-486 / Position Title Real Property | |
| | Rating Period: From: 06/01/02   To: | |

Annual ☒    Other ☐

Use the following rating factors to determine overall performance. Mark each factor SAT (satisfactory), SUBSTD (substandard) or NA (not applicable). Use only those factors that apply. Note some factors may not apply to specific positions.

| Factor | Rating | Comments |
|---|---|---|
| Quality of work | SAT ☐ SUBSTD ☒ NA ☐ | (Please see attached evaluation) |
| Quantity of work | SAT ☐ SUBSTD ☒ NA ☐ | Mr. English has been on leave |
| Reliability and Initiative | SAT ☒ SUBSTD ☐ NA ☐ | since February 28, 2003. Upon |
| Safety and use of equipment | SAT ☒ SUBSTD ☐ NA ☐ | his return, his job performance |
| Relationship with others | SAT ☐ SUBSTD ☒ NA ☐ | evaluation will be discussed with |
| Job knowledge | SAT ☐ SUBSTD ☒ NA ☐ | him. |
| | SAT ☐ SUBSTD ☐ NA ☐ | |

The following factors apply to supervisors only. Note some factors may not apply to specific positions.

| | | |
|---|---|---|
| Communication | SAT ☐ SUBSTD ☐ NA ☐ | |
| Problem solving and decision making | SAT ☐ SUBSTD ☐ NA ☐ | |
| Creativity and innovation | SAT ☐ SUBSTD ☐ NA ☐ | |
| Supervision | SAT ☐ SUBSTD ☐ NA ☐ | |
| Appraising subordinates | SAT ☐ SUBSTD ☐ NA ☐ | |
| Planning, organizing and setting priorities | SAT ☐ SUBSTD ☐ NA ☐ | |
| | SAT ☐ SUBSTD ☐ NA ☐ | |

Employee's overall evaluation    Satisfactory ☐    Substandard ☒

This evaluation has been reviewed and discussed with the employee. If the employee disagrees with this evaluation, the employee may attach comments that will become a part of the evaluation.

Employee's signature
On leave since Feburary 28, 2003 - upon return for discussion.   Date

Supervisor's signature   Date 4/22/03

Appointing authority's signature   Date 4/22/03

Distribution:  Original to personnel file
Copy to employee
Copy to Department of Human Resources (for substandard evaluation only)

# COMMENTS FOR ANNUAL PERFORMANCE EVALUATION REPORT

**Employee:**     Philip E. English, Real Property Appraiser IV, DF-486

**Supervisor:**     Ann C. Gima, Real Property Appraiser IV

**Rating Period:**     June 1, 2002 To May 31, 2003

During this performance evaluation period as an Appraiser IV, Phil has continued to be assigned the responsibility for the Waikiki area condominiums.

Over the course of the past nine months, Philip has been encountering numerous difficulties in independently performing all of the responsibilities of his position. His performance has been discussed with him on several occasions including two meetings conducted with union agents in attendance. Job duties and responsibilities as well as performance expectations were reviewed with him in the presence of a union agent.
Some specific issues that have been addressed include acts of insubordination, meeting stated deadlines, following written and verbal directions, correct methods for processing various job tasks, utilizing good judgment and repeated errors.

He has been absent from the workplace since February 28, 2003. Prior to his absence, he was made aware of numerous incomplete assignments. At the present time there are several outstanding issues regarding work performance and conduct still to be addressed upon his return to work. In his absence he has missed several mandatory training sessions.

Rating factors for Quantity of Work, Quality of Work, Reliability and Initiative, Relationship with others, and Job Knowledge are considered to be substandard.

Specific Areas of Evaluation where satisfactory performance needs to be demonstrated include:
1. Meeting deadlines
2. Knowledge and understanding of processes and procedures for routine job functions.
3. Demonstrate the ability to follow written and verbal instructions.
4. Perform complete and thorough and accurate preparation for BOR hearing presentations by stated deadlines.
5. Exercising good and appropriate judgment in work related matters including all types of correspondence with taxpayers and their representatives.
6. Following through to completion for all job functions. Including such areas as returning telephone calls, written correspondence, processing BOR recommendations for deferrals and decisions, corrections etc.

Philip E. English
Real Property Appraiser IV, DF-486
Rating Period: June 1, 2002 To May 31, 2003
Page 2


Suggestions and recommendations for improving performance

1. Develop a method of organizing work files to facilitate retrieval and tracking of information
2. Set up work plan to schedule assignments and prioritize to meet deadlines
3. Thoroughly review all written instructions
4. File and organize written instructions for reference purposes
5. Follow written and verbal instructions
6. Reread Revised Ordinances of Honolulu
7. Create a "to do" list to track completion and status of ongoing jobs/tasks
8. Accept responsibility for work product

**Appraisal Training**
02/21/03      Mass Appraisal & ROH Chapter 8 – Staff
02/21/03.     Market Modeling – Staff


On leave since February 28, 2003. Upon his return, a discussion will be held with him.

Philip E. English                                        Date
Real Property Appraiser IV, DF-486



Ann C. Gima                                              4/22/03
Real Property Appraiser IV                               Date