DEPARTMENT OF HUMAN RESOURCES

# CITY AND COUNTY OF HONOLULU

550 SOUTH KING STREET
HONOLULU, HAWAII 96813

JEREMY HARRIS
MAYOR



CHERYL K. OKUMA-SEPE
DIRECTOR

May 5, 2003

Reneau Kennedy, Ph.D.
3001 Diamond Head Road
Honolulu, Hawaii   96815

Re:    Philip English

Dear Dr. Kennedy:

On the back of the workers' compensation claim form, which is attached, are specific
questions for the supervisor to answer.  The enclosed documents, which were received
today, provide their response.  You should ignore the first paragraph on page (2) of the
response which questions the use of January 2, 2003 at the date of injury.  This date was
arbitrarily assigned by me after speaking with Mr. English because he could not
provide a date when he felt his problems started, so we just used the first working day
in 2003.

Sincerely,

THOMAS RIDDLE
Workers' Compensation Administrator

# REPORT OF INDUSTRIAL INJURY OR ILLNESS

## SUPERVISOR'S RESPONSE FOR OSHA FORM 300 LOG NO. 030135

### EMPLOYEE:  PHILIP E. ENGLISH

- Does your knowledge of the facts about this injury agree with the statement of the employee?

  <u>Answer:</u>   No.  See Response #1.

- Was employee in performance of duty at time of injury?

  <u>Answer:</u>   No.  See Response #1.

- Was the injury caused by misconduct, negligence, intoxication or intent to injure self or another?

  <u>Answer:</u>   Yes.  See Responses #1 and #2.

- Was the injury caused by a third party?

  <u>Answer:</u>   No.

- Can you provide any additional information to help assess this claim?

  <u>Answer:</u>   See Response #1.

- How could accident have been prevented?  What action has been taken to prevent similar accidents in the future?

  <u>Answer:</u>   See Response #3.

1

## RESPONSE #1:

Mr. English claims the injury occurred on 1/2/03, 8:00 a.m., which is questionable. Mr. English was on vacation from Tuesday 12/31/02 through Friday 1/3/03. He filed his application for vacation leave the week before on Friday 12/27/02 (See Exhibit 1).

Mr. English's alleged injury, which he states is based on "stress associated with retaliation from internal investigation of wrongdoing in the department", is unfounded. He has been warned numerous times regarding his work performance, insubordination, behavior and attitude, which are not related to his claim. If Mr. English is suffering from an injury due to stress, it is because he brought it upon himself and not due to retaliation on the employer's part.

Mr. English has initiated two investigations into alleged wrongdoings by other employees. His first complaint resulted in an internal investigation in late 2001 and his second complaint was in January 2003 to the City's Ethics Commission. Both complaints are similar except that the Ethics Commission complaint includes additional allegations against other City employees, their family members and friends.

Mr. English retained an attorney for his Ethics Commission complaint. The attorney, Mr. Roger Moseley, has tax appeal cases pending against the City before the Board of Review, Tax Appeal Court, Circuit Court and Supreme Court. Mr. English was the City's main witness and was responsible for determining and defending the assessments that are the subject of these appeals. Recently, Mr. Moseley filed suit in Circuit Court and Tax Appeal Court alleging wrongdoing by City employees. Mr. Moseley is providing free legal services to Mr. English for his Ethics Commission complaint and it is quite evident that Mr. English has been providing information to Mr. Moseley in support of his recent Circuit Court and Tax Appeal Court filings. This obvious conflict of interest has not been resolved at this time.

## First Complaint - Internal Investigation

In late 2001, Mr. English raised allegations that another employee (and close personal friend), Mr. Christopher Graff, Real Property Appraiser IV, was involved in outside employment during City working hours and was doing this on instructions from Mr. Gary Kurokawa, Real Property Administrator. These allegations were brought to the attention of Mr. Robert Magota, Real Property Assessor.

Mr. English could provide no evidence to Mr. Magota to support his claim. Mr. Magota interviewed Mr. Graff regarding this matter and Mr. Graff denied the allegations. Mr. Magota then gave Mr. Graff a stern warning that no outside employment was to be conducted during City working hours and any future incidents would result in disciplinary action. Mr. Magota also interviewed Mr. Kurokawa and discussed the allegations raised by Mr. English. Mr. Kurokawa said that he had also given Mr. Graff a warning regarding this matter.

Mr. Magota's handling of this matter is consistent with another incident that occurred prior to Mr. English's complaint. Another employee was suspected of engaging in outside employment during City working hours. He was employed as a property manager at a condominium project where

2

he resides and the job required him to be on-call 24 hours a day. The employee was given a verbal warning that his outside employment could not interfere with his City job or City working hours and any future incidents would result in disciplinary action. Mr. Magota also told him that if there is a conflict, he must choose between his City job and his job as a property manager. The employee later resigned from his job as a property manager and a letter from the management company verifying his resignation is on file in his personnel record.

According to another employee, Mr. English was not satisfied with the actions taken by Mr. Magota. He expressed dissatisfaction and said that Mr. Kurokawa was going to reward Mr. Magota by promoting him when the division's reorganization plan is finalized. The division has been working on a reorganization plan for the past few years and the purpose was to improve efficiency and operations. The reorganization will give Mr. Magota additional responsibilities but his salary will remain the same.

**Second Complaint – Ethics Commission Investigation**

The employer was unaware of any Ethics Commission investigation initiated by Mr. English until 1/22/03, when Mr. Graff brought it to the attention of Ms. Gima, Supervising Real Property Appraiser, and Mr. Magota. According to Mr. Graff, Mr. English called him at work and said that he had filed a complaint with the Ethics Commission against him, Mr. Kurokawa, other employees, their family members and friends. Mr. Graff also said that Mr. English verbally threatened and intimidated him twice regarding his role as a potential witness in this investigation. The complaint to the Ethics Commission was filed on 1/22/03 and Mr. Charles Totto, Executive Director and Legal Counsel of the Ethics Commission, interviewed Mr. Graff on 1/24/03. According to Mr. Graff, during discussions with Mr. Totto he learned that Mr. English had lied to him in order to influence him and have him change his testimony. Mr. English had attributed statements to Mr. Totto that turned out to be false according to Mr. Graff.

Mr. English received a verbal reprimand for work related issues on 2/10/03, which included failure to follow his supervisor's instructions, insubordination, and inappropriate conduct towards his supervisor, which occurred on 10/25/02. In attendance at this meeting were Mr. English, Ms. Gima, Mr. Magota, and Mr. Kevin Mulligan, HGEA Union Agent. The issues addressed on 2/10/03 were discussed in detail at an earlier meeting on 1/15/03 with Mr. Michael Golojuch, Administrative Services Officer, Ms. Violet Lee, Personnel, and Mr. Magota. Since the employer was unaware of any Ethics Commission investigation at this 1/15/03 meeting and Mr. English's work performance and behavior were the only topics, retaliation is not an issue.

During this 2/10/03 meeting Mr. English started to discuss the Ethics Commission investigation even though the union agent tried to stop him. He admitted that he spoke to Mr. Graff, who was a witness in the investigation, and said that he was trying to "help him", which Mr. Graff interpreted as a threat and intimidation. He also admitted that he spoke to Mr. Graff before Mr. Graff was to be interviewed by Mr. Totto. Mr. English also said that if other employees don't come forward and tell the truth, their lifestyles are going to change. This statement can be interpreted as a threat and the truth according to Mr. English is not the truth according to other employees.

3

**Delays In Other Internal Investigations**

Mr. English may be using this claim of stress to delay other ongoing internal investigations by the employer.   The first investigation is based on Mr. English's threatening and abusive behavior towards other employees, and the second internal investigation is related to recent acts of insubordination and work performance issues.  It also appears he is trying to avoid completing current work assignments and has already missed two deadlines on 2/11/03 and 2/18/03 which he was aware of since 12/12/02.

Mr. English states in his workers' compensation claim that he started to lose time from work on 2/28/03, almost two months after the alleged date of injury of 1/2/03.  On 2/28/03 he filed for workers' compensation with Mr. Thomas Riddle, Workers' Compensation Branch, Department of Human Resources.

Mr. Golojuch notified Mr. English on 2/27/03, the day before he filed for workers' compensation, of an investigation based on complaints filed by other employees under the City's Workplace Violence Policy.  These complaints were based on Mr. English's threatening and abusive behavior towards coworkers and not retaliation on the part of the employer.  As part of this investigation a meeting with Mr. English, Mr. Golojuch, and Mr. Kevin Mulligan, HGEA Union Agent was scheduled for the following Monday (3/3/03) at the offices of HGEA.  Mr. English cancelled the meeting on the morning of 3/3/03 thus delaying this investigation.

On the morning of 2/28/03 Mr. English was required to attend a mandatory training class at the Neal Blaisdell Center for the appraisal staff.  Instead he showed up at the office and asked one of the secretaries for an application for workers' compensation.  When he was told the application had to be submitted to management for review, he became very upset with the secretary and gave her a glaring look, which frightened her.  He then went back to his work area and told another employee, who was not required to attend the training class, that someone had left a copy of a complaint filed against him on his chair.  He then asked why a particular employee would file a complaint against him since she was such a sweet person.  This employee then admitted to him that she too was one of those interviewed regarding the complaint, which Mr. English was unaware of.  When Mr. Magota heard of this incident, he contacted Mr. Golojuch to find out if a copy of the complaint was given to Mr. English.  Mr. Golojuch said that Mr. English was not given a copy of the complaint.  It appears that Mr. English had deceived this employee in order to identify those employees involved in the complaint.  Before the appraisal staff returned to the office around noon, Mr. English had already left the office to meet with Mr. Riddle.  Mr. English has not returned to work since this incident.

The second internal investigation is also ongoing and includes acts of insubordination and work performance issues.   These incidents occurred on February 11, 18, 19 and 25, 2003.  This investigation has also been delayed due to Mr. English's recent absence from work.

**Behavior, Personal Problems, And Work Performance**

Mr. English's claim of retaliation may also stem from delays in his promotion to the Real Property Appraiser IV position.  Mr. English felt he was being singled-out due to his complaint to Mr. Magota against Mr. Graff and Mr. Kurokawa.  The request to promote Mr. English was submitted

4

in November 2001 along with a request for another employee, Mr. Wilfred Martin, but was not approved until February 2002 by the director (See Exhibits 2 and 3). It should be noted that Mr. Martin, who was hired with Mr. English, was also being promoted to the Real Property Appraiser IV position at this time. Since both employees were promoted at the same time, Mr. English was not singled-out for retaliation. The promotion for both employees became effective on 3/1/02.

After being promoted to Real Property Appraiser IV, problems with Mr. English's work performance, behavior, and attitude became even more evident. Besides missing deadlines and failing to follow his supervisor's instructions that were clearly outlined in writing, he became more argumentative, insubordinate, and made excuses for his inability to complete assignments.

Excuses such as, "You never told me so" became more common and Ms. Gima had to give him instructions in writing (e-mails). Another excuse used frequently was that he did not receive proper training even though Ms. Gima and our technical staff were available to assist him. The division also provided classroom training to Mr. English. (See Exhibit 4). While still a Real Property Appraiser III, he applied for the Real Property Appraiser VI (supervisory) position in March 2001 and attached a letter to his application emphasizing his competency and capabilities in the assessment field, which contradicts his claim of lack of training (See Exhibit 5, fifth page).

He has problems planning ahead, scheduling his work, setting priorities, multi-tasking, and completing assignments. This is unusual for someone who operated his own appraisal company for 10 years, supervised a staff of 12 employees, and has been involved in the appraisal field for over 20 years (See Exhibit 5, second and fifth pages).

Last year he complained to management over a period of several days that certain work-related tasks, such as using the copying machine, are a clerical function and below him. He said that he shouldn't be required to do such menial tasks. When it was explained to him that the division is understaffed and management will even use the copying machine, he became even more upset. Mr. English expected to be treated differently and was always criticizing other employees and management.

Last year at a meeting with Mr. English and Ms. Gima, Mr. Magota advised Mr. English to seek counseling through the City's Employee Assistance Program. Mr. Magota was very concerned that Mr. English's personal problems were affecting his behavior, attitude and work performance. Mr. English then raised his voice at Mr. Magota and stated there was nothing wrong with him and he didn't need counseling. He also said that everyone was out to get him. When asked by Mr. Magota if he felt paranoid, Mr. English responded that he did.

Mr. English had been very open in discussing his personal problems with other employees and management. He would always initiate discussions related to his personal life to those who would listen or were sympathetic to his problems. He was constantly portraying himself as the victim and would blame others for his misfortunes.

- His second wife filed for divorce in 1999 and he blames her for the breakup of their marriage. Even though this was an uncontested divorce, he said that his wife knew the judge and his attorney did a poor job of representing him, which resulted in an unfavorable outcome for him. He would also complain that his second wife accused him of abusing her, which he says never happened. Even though he has openly

5

criticized his second wife while married to his third wife, he has stated on numerous occasions that if his second wife asks him to come back, he would return to her.

Mr. English was required to attend the Kids First II program (See Exhibit 6, NOTICE TO ATTEND KIDS FIRST II and following page) on March 24, 1999 with his wife and son before a divorce decree could be entered in the case. In a letter dated March 24, 1999 from his attorney, it states that Mr. English is unable to attend because he was out of the country. He had told other employees that during and after his divorce it was a very difficult time for him and he was traveling to Thailand to do some "soul searching".

- He was attempting to gain custody of his son and was planning on petitioning the court. He stated that his second wife was doing a poor job raising their son and he was concerned for the child's welfare.

- He had strong suspicions that his son was being molested at the Catholic school he is enrolled in. He was visibly upset and requested vacation leave to address this problem, which was granted by Ms. Gima and Mr. Magota.

- He was having marital problems with his third wife, whom he married in June 2000, and said that she needs to "grow up". His third wife, who was a former employee of his export business in Thailand, left him in late 2002.

He openly discussed his financial problems with other employees and management. One sympathetic employee offered to give him money and another employee offered him a loan.

- Mr. English was hired in June 2000 as a Real Property Appraiser II at an annual salary of $29,340. In 1999 he applied for the Real Property Administrator's position and the Real Property Assessor's position, but was not selected for either one. After he was hired as a Real Property Appraiser II, he expressed disappointment and displeasure to others at not being selected for the Administrator's position since he thought he was the best candidate based on his past accomplishments. Since his employment with the City he has openly criticized Mr. Kurokawa and management for the way the office was being run.

- When discussing the divorce from his second wife, he would blame her, the judge and his own attorney for many of his financial problems. This was an uncontested divorce (See Exhibit 6) and during this marriage there were financial problems prior to his illness in 1998. In his wife's INCOME AND EXPENSE STATEMENT (first and second pages), she states that her monthly income was $11,230 but she had to cash her IRA account, pay bills on credit card accounts, borrow money from her mother, flex line account, HR-10 Plan, and insurance policy to make ends meet. In the ASSET AND DEBT STATEMENT OF PHILIP EUGENE ENGLISH, Page 4, besides the mortgage balance of $619,167 for their Kahala house, other outstanding debt amounted to $213,013. In the INCOME AND EXPENSE STATEMENT OF PHILIP EUGENE ENGLISH, Page 4, he states that unless he receives spousal support, he will have to use his credit card to pay for his living expenses, which include child support of $370 per

6

month.  He has told other employees that he hasn't made child support payments to his second wife.

According to the AGREEMENT INCIDENT TO DIVORCE, Page 12, Property Settlement Payment, his wife agreed to pay him $25,000 for the division of property and allocation of responsibility for debts.   According to the QUALIFIED DOMESTIC RELATIONS ORDER, Page 3, he was also entitled to $77,000 from her 401K plan, which he withdrew in 1999 for a total settlement of $102,000.  The wife was awarded their Kahala house and is solely responsible for the mortgage payments.

• The following year in August 2000, he filed for Chapter 7 bankruptcy (See Exhibit 7) and the final decree was issued in February 2001.  He listed assets of $3,370, which consisted of $10 cash in hand, $100 in a bank account, $3,260 in personal property, and $0 remaining from his ex-wife's 401K plan that he withdrew in 1999.  Liabilities were listed at $215,035 of which $194,035 was outstanding debt and $21,000 owed to the IRS for the 1999 401K withdrawal (See Exhibit 7, Pages 3, 5, and 10 of 33).  Mr. English also owed money to his attorney for the legal services provided in his second divorce (See Exhibit 7, Page 16 of 33).

In his bankruptcy filing he stated that his occupation was in real estate appraisals from 1989 to 1996.  Then from 1996 to 1997 his new business was exporting personal care products to Thailand and the Philippines (See Exhibit 7, Page 25 of 33), but lost the business due to an inflated money exchange rate.  He then returned to real estate appraising in 1998 according to his bankruptcy filing.

Even though he claimed to have an annual salary of $40,000 to $45,000 as an owner/appraiser of an appraisal company for 10 years preceding his employment with the City (See Exhibit 5, second page), according to his bankruptcy filing he had not earned any money for a long time (See Exhibit 7, Page 19 of 33) and had used his retirement and divorce settlement to live on.  He also does not list or mention his failed export business he operated for two years (1996 to 1997) on his City job application and had not done much appraising since 1996.

• He would complain about his third wife sending money she earned to her family in Thailand.  He was very upset over this and expressed his displeasure to other employees.

• He was often behind in his rent for the Hawaii Kai condominium he was residing in since 1999.  In August 2002 he decided to buy a boat to live on.  He said he was having problems qualifying for a loan to purchase a boat and also had to borrow money from relatives.  He moved out of the Hawaii Kai condominium in September 2002 and currently resides at the Ala Wai Yacht Harbor.  Soon after moving onto the boat his third wife left him.

• Last year he was becoming more frustrated and outspoken about his salary.  He would tell other employees that he could earn just as much money working for City Mill.  He even posted a Help Wanted article dated September 2002 (See Exhibit 8) on

RENEAU KENNEDY RE PHILIP ENGLISH

the employee bulletin board showing mainland job opportunities to express his dissatisfaction at the salaries the City paid its employees.

- Last year he asked Mr. Magota if he could use the office fax machine to send documents to the IRS because he was trying to reach a settlement with them. Mr. Magota told him that the fax machine is for work-related purposes and not for personal business. Mr. English then became very upset, gave Mr. Magota a glaring look, and left the building slamming the door behind him.

Mr. English has major problems with his work performance, attitude and behavior. When assignments were not properly completed and deadlines missed, he would blame others or make excuses. Work-related problems that have occurred recently are:

- Failure to meet deadlines related to his work assignments (9/10/02, 10/11/02, 10/24/02, 12/17/02, 2/11/03, 2/18/03)

- Failure to follow instructions from his supervisor

- Acts of insubordination (10/25/02, 2/19/03, 2/25/03)

- Argumentative and intimidating behavior towards others including his supervisor

Mr. English had been warned numerous times regarding his work performance, insubordination, failure to follow instructions, and behavior.

- At a meeting on 8/14/02 Mr. English's performance as a Real Property Appraiser IV was being reviewed. He was on a 6-month probation, which all employees are placed on when promoted, and the issue was if his probationary status should be extended due to his work performance. In an 8/15/02 e-mail to Mr. Kurokawa, Mr. English felt he was being treated unfairly and threatened to seek legal counsel and take action against the employer (See Exhibit 9). This is unusual since Mr. English, who became a union steward, should have known there are procedures to follow under the collective bargaining agreement for employee-employer disputes.

- At a meeting on 11/22/02 he was given verbal warnings regarding his work performance, insubordination, hostility towards his supervisor, and failure to follow instructions. Present at this meeting were Mr. English, Ms. Gima, Mr. Kurokawa, and Mr. Waylon Toma (HGEA Union Agent).

- At a meeting on 2/10/03 he was given a verbal reprimand regarding an act of insubordination, hostility towards his supervisor, and failure to follow instructions for an incident on 10/25/02. There was also the issue of failing to meet a deadline of 10/24/02. Present at this meeting were Mr. English, Ms. Gima, Mr. Magota, and Mr. Kevin Mulligan (HGEA Union Agent).

Mr. Magota again advised Mr. English to seek counseling through the City's Employee Assistance Program. Mr. Magota said he was still concerned that personal problems

8

may be affecting Mr. English's work performance, behavior and attitude. Mr. English responded that he has no problems.

When he was warned about raising his voice and hostility towards his supervisor, Ms. Gima, Mr. English said that he has never raised his voice at his supervisor, which contradicts what Ms. Gima and other witnesses have stated. Mr. English also said that on 10/25/02 Ms. Gima was the aggressor and charged at him. After the 10/25/02 incident he told another employee that he had gotten into an argument with Ms. Gima, admitted he yelled at her, and boasted that he had gotten the best of her in this confrontation.

When told by Mr. Magota that he must also control his temper at work, Mr. English stated that he has no temper. Mr. English has displayed his temper on numerous occasions in front of other employees and management.

Mr. English also said that he would consider counseling through his medical provider (Kaiser) since he could not trust anyone in the City. Throughout this meeting Mr. English did not mention anything about stress that was caused by retaliation or due to an investigation that he had initiated.

## RESPONSE #2:

Mr. English's claim of an injury, which he states is based on "stress associated with retaliation from internal investigation of wrongdoing in the department", is unfounded. If Mr. English is suffering from an injury due to stress, it is because he brought it upon himself and not due to retaliation on the employer's part. The employer has tried to be patient and work with him, identify performance problems that needed to be corrected, and encouraged him to seek counseling for his personal problems.

It appears that Mr. English is also trying to avoid ongoing investigations related to complaints filed by other employees and for his work performance and behavior. It also appears that he is trying to avoid completing assignments that he is well aware of.

## RESPONSE #3:

Because Mr. English's claim of an injury is unfounded, no action was taken to prevent similar accidents in the future.

9

O30135

Form ISWC-1(1/1/2002)                                              OSHA Form 300 Log No:

## CITY AND COUNTY OF HONOLULU
## REPORT OF INDUSTRIAL INJURY OR ILLNESS
### EMPLOYEE'S REPORT

| Employee's name (first, initial, last)<br>Philip E. English | | Date of birth<br>10/26/1954 | ☒ Married<br>☐ Single | Do not write in this space |
|---|---|---|---|---|
| Employee's home address (include City and Zip Code)<br>1741 Ala Moana Blvd., Unit 22<br>Honolulu, Hawaii 96815 | | Office telephone<br>808 523-4719 | | Reg. Salary  3248 |
| | | Home telephone<br>808 754-2136 | | Class No.  020553<br>Title  Real Estate |
| Department/Division<br>Budget and Fiscal Services/ Real Property Assessment | | Social Security No.<br>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 | ☒ Male<br>☐ Female | Appraiser |
| Any outside employment? ☒ No  ☐ Yes  If yes, provide name and address of employer and job title: | | | | BU  13 |

### COMPLETE FOR NEW INJURY OR ILLNESS ONLY

| Date of injury<br>1/2/2003 | Time of injury<br>08:00<br>☒ AM ☐ PM | Did employee lose any time?<br>☐ No<br>☒ Yes  From: 02/28/2003 | Place where injury occurred |
|---|---|---|---|

| Describe injury or illness (part of body and extent of injury)<br>Stress associated with retaliation from internal investigation of wrongdoing in department | Name of physician seen for this injury<br>Gerald Coffee, Ph.D., Kaiser Medical Center<br><br>☐ Did not see doctor<br>☐ Treated at emergency room only<br>☐ Hospitalized overnight |
|---|---|
| What was employee doing when injury occurred and how did injury happen?<br>See above | Date employee hired<br>6/1/2000 / Time work shift began<br>07:45<br>☒ AM ☐ PM |
| | Has employee ever had a similar injury?  If yes, explain.<br>☐ No ☐ Yes |
| Witnesses to accident (give names and telephone numbers) | |

If this claim was not filed within two working days after injury, please explain the reason for delay.

### FOR RECURRENCE ONLY  DO NOT COMPLETE FOR NEW INJURY OR ILLNESS

| Date of original injury | Date of recurrence | Time of recurrence<br>☐ AM ☐ PM | Did employee lose any time?<br>☐ No<br>☐ Yes  From | Place where injury recurred |
|---|---|---|---|---|

| What was employee doing when injury recurred? | |
|---|---|

| Describe injury (part of body and extent of injury) | Name of physician |
|---|---|

### EMPLOYEE SIGNATURE

By signing below, I attest to the accuracy of the above information. I also authorize my physician, hospital and the City and County Physician to release any health records regarding this injury or related past medical history.

| Employee's signature | Date<br>3/28/03 |
|---|---|

RENEAU KENNEDY RE PHILIP ENGLISH                                      65

## SUPERVISOR'S REPORT

| Supervisor's name and title | Telephone No. | Was employee receiving hazard pay?<br>☐ No<br>☐ Yes   Pay rate: |
|---|---|---|
| Does your knowledge of the facts about this injury agree with the statement of the employee?<br>☐ Yes   ☐ No    If no, please explain. | | Was employee on temporary assignment at a higher pay rate?<br>☐ No<br>☐ Yes   Pay rate: |
| Was employee in performance of duty at time of injury?   ☐ Yes   ☐ No    If no, please explain. | | TA Title:<br><br>Was employee on special duty (HPD only)<br>If yes, provide name of employer<br>☐ No<br>☐ Yes |

Was the injury caused by misconduct, negligence, intoxication or intent to injure self or another?   ☐ No   ☐ Yes    If yes, please explain.

Was the injury caused by a third party?   ☐ No   ☐ Yes    If yes, furnish name and address of the party responsible.

Can you provide any additional information to help assess this claim?   (employee smokes, not wearing respirator, has history of diabetes, etc.)

How could accident have been prevented?  What action has been taken to prevent similar accidents in the future?

## SUPERVISOR'S SIGNATURE

| Signature of Supervisor | Date |
|---|---|

## INSTRUCTIONS

The injured employee is responsible for completion of the front part of this report, with help from his supervisor as necessary. By signing this form, the employee is attesting to the accuracy of the information presented. The supervisor should complete the backside of the form (above) and forward the original and one copy to the Department of Human Resources. In no case should this form be held up longer than two working days. A copy of this report should be provided to the injured employee and a copy retained by the operating department. This form serves as a permanent record of the employee's injury for OSHA/HIOSH purposes and should be retained for five years after the date of injury.

If the employee had lost time, an Election of Compensation form (ISWC-14) should be submitted along with this report.

EXHIBIT 1

FORM DHRD-BFS-007 (Rev)

# CITY AND COUNTY OF HONOLULU
## APPLICATION FOR LEAVE OF ABSENCE

NAME: _Phil English_        AGENCY: _BFS  RPA_

REQUEST FOR: [X] Vacation Leave    [ ] Leave Without Pay

[ ] Sick Leave – less than five (5) days    [ ] Sick Leave – Five (5) or more days (physican's certificate attached)

[ ] Industrial Injury/Illness – Date of Injury/Illness ___    [ ] Military Leave (attach order)    [ ] Jury Duty (attach order)

[ ] Funeral Leave ___
        Name of Deceased            Relationship        Date Deceased

[ ] Other Authorized by Civil Service Rule No. ___ for the purpose of ___

DATES

From _12/31/02_ to _1/3/03_  No. of Days _2_  Hours _4_    _Phil English_   _12/2/02_
              Inclusive                                    SIGNATURE OF EMPLOYEE        Date

REMARKS: _12/31/02 – 4 Admin/4 Vac_

APPROVAL

[ ] Recommend Approval    [ ] Disapprove        [ ] Approved subject to availability of earned leave    [ ] Disapproved

_Roberta O. Mystro_        JAN 10 2003        _Jon_        JAN 10 2003
AUTHORIZED SUPERVISOR        Date            AGENCY HEAD            Date

EMPLOYMENT APPLICATION

**CITY AND COUNTY OF HONOLULU**
**DEPARTMENT OF PERSONNEL**
550 SOUTH KING STREET
HONOLULU, HI 96813, 523-4301

DEPARTMENT AND FISCAL SERVICES

| | |
|---|---|
| D.C. | **EXHIBIT 5** |
| No. | |

Personnel Dept. Use Only

| | |
|---|---|
| ID# | |
| Educ | |
| Suppl | Perm |

List examination numbers and titles for which you are applying. File a separate application for each examination except where two or more titles appear on the same announcement. Fill out all forms (pages 1-4) carefully. Use typewriter or print in ink. Application may be returned by mail.

| | EXAM NO. | TITLE | | | CLASS NO. | ACCEPT | REJECT |
|---|---|---|---|---|---|---|---|
| 1. | 020585 | REAL PROPERTY APPRAISER VE? SR-2c | MAR 30 | 8.40 | AH 01 | PAT 440 | |
| 2. | | | | | | | |
| 3. | | | | | | | |

1. Name  ENGLISH          PHILIP                    E
   (LAST)          (FIRST)                (MIDDLE INITIAL)

2. Social Security  ▉▉▉▉▉▉▉

3. Mailing Address  531 HAHAIONE ST #2-B          HONOLULU          HI          96825
   (NUMBER, STREET, APT. NO. OR P.O. BOX)          (CITY)          (STATE)          (ZIP CODE)

4. Phone No.  (808) 396-5309   (808)523-4275      Other Names Used:  ___
   (HOME)          (BUSINESS)      (Including Maiden Name)   (LAST)   (FIRST)   (MIDDLE INITIAL)

5. **CITIZENSHIP STATUS:** (Check one)
   - ☒ U.S. Citizen
   - ☐ U.S. National (Country ___ ).
   - ☐ Permanent Resident Alien
   - ☐ Non-Citizen authorized under federal law to work in the U.S.   Type of visa ___

*Notify us in writing of any changes in your address or telephone numbers or you may miss an examination or a job interview.*

*Application assistance and examination: Accommodation for the disabled available upon request.*

6. **RESIDENCY:**
   a. Are you a legal resident of the State of Hawaii?   Yes ☒   No ☐
   b. Within the past year have you:
      1) Filed a State of Hawaii income tax return OR
      2) Been claimed as a dependent on a State of Hawaii income tax return?
   My answer to Question b. is:   Yes ☒   No ☐

7. **VETERAN'S PREFERENCE:**
   (Veteran's preference not applicable for City promotional examinations)
   Do you claim veteran's preference: Yes ☐   No ☐
   Dates of Active Duty:   From ___ to ___
   Check the appropriate block(s): (COPIES MUST BE ATTACHED TO RECEIVE CREDIT FOR ELIGIBLE PERIODS)
   - ☐ Attached is a copy of my DD Form 214.
   - ☐ Attached is a copy of an official statement confirming service-connected disability.
   *If you wish to claim VP points, include a copy of your DD Form 214. Credit may be given for specified periods for service under honorable conditions. For service-connected disability, also attach official confirmation.*

8. **AVAILABILITY:   YOU WILL BE CONSIDERED FOR EMPLOYMENT ONLY IN THE AREAS YOU CHECK. NOTIFY US IN WRITING IF YOUR AVAILABILITY CHANGES.**
   I will accept: Permanent ☒ 0.   Temporary ☐ 1   Part-time ☐ 2   Shift Work ☐ 3
   I will accept work in the following areas: 0. Honolulu ☐   1. Kailua ☐   2. Waimanalo ☐   3. Kaneohe ☐   4. Hauula-Kahuku ☐
   5. Waialua ☐   6. Wahiawa ☐   7. Aiea-Pearl City-Ewa ☐   8. Waianae ☐

9. **CERTIFICATE OF APPLICANT:**
   I HEREBY CERTIFY that all statements made on or in connection with this application including those regarding my education and employment record are true and correct to the best of my knowledge. I agree and understand that any misstatements or omissions of material facts may cause forfeiture on my part of all rights to any employment in the service of the City and County of Honolulu. I understand that all information is subject to verification.

   3/30/2004                          *Phil English*
   (DATE)                             (SIGNATURE OF APPLICANT)

| Do Not Write In Space Below | | | | | | |
|---|---|---|---|---|---|---|
| WT | T&E | FT | FA | VP | FG | RK |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |

10C. ID
253 (REV. 9/11)
/IRL: http://www.co.honolulu.hi.us/Depts/per/cs3.pdf

AN EQUAL OPPORTUNITY EMPLOYER

RENEAU KENNEDY RE PHILIP ENGLISH                73

**AND SPECIAL TRAINING**

Did you graduated from high school or received a high school equivalent diploma? Yes ☒ No ☐

Name and location of high school: JOHN MUIR    PASADENA, CA

List below all college, university, business school or vocational school training received:

| NAME OF SCHOOL | ADDRESS (CITY, STATE) | DATE ATTENDED FROM MO / YR | DATE ATTENDED TO MO / YR | TOTAL CREDIT HOURS COMPLETED | MAJOR COURSE OF STUDY | GRADUATED YES | GRADUATED NO | DEGREE OR CERT. | VER. OF DIP. |
|---|---|---|---|---|---|---|---|---|---|
| PASADENA CITY COLLEGE | PASADENA, CA | 72 | 73 | | GENERAL | | ✓ | | |
| CAL STATE LOS ANGELES | LOS ANGELES, CA | 73 | 75 | | MUSIC | | ✓ | | |
| U.S.C. | LOS ANGELES, CA | 77 | 78 | | MUSIC | | ✓ | | |
| APPRAISAL INSTITUTE | | | | | R.E. APPRAISAL | | | SRA | |

Do you have a driver's license? Yes ☒ No ☐
Class: (circle one) ① 2 3 4 A B C
Expiration Date: 10/26/2005

Attach copy of diplomas, certificate or transcript, licenses, registrations required for this position. **(See job announcement.)**

**EMPLOYMENT RECORD** - *Include all previous work experience:* Full time, part-time, volunteer and military experience. Begin with your present or last job held. Describe in detail nature of work personally performed by you. Also, give dates and explain unemployed periods. If your duties and responsibilities changed while working for the same employer, list each separately.
May we check with your present employer? Yes ☒ No ☐

Employer Philip English + Assoc.
Address 450 King St. #201
Name & Title of immediate Supervisor NONE
Your Title OWNER / APPRAISER Duties Manage day to day operations of real estate appraisal firm. Review and perform appraisals on all kinds of real estate.

No. & Titles of employees you supervised: 12 APPRAISERS + STAFF

From mo. 11 /yr. 89
To mo. Present /yr.
Total 10 yrs (YEARS, MONTHS)
Full time ☒ Part time ☐
Av. hrs. per week 40+
Salary 40,000 (FIRST) 45000 (LAST)
Reasons for leaving Illness / Work for City

Personnel Dept. use only

Employer 1st Nationwide Bank
Address Pacific Tower #1400
Name & Title of immediate Supervisor Carol Johnson V.P.
Your Title Senior Appraiser-Hawaii Duties Manage day to day operation of the banks appraisal department statewide. Review, perform appraisals on all kinds of properties. Train staff.

No. & Titles of employees you supervised: 8 Appraisers + Staff

From mo. 4 /yr. 87
To mo. 10 /yr. 89
Total 2 yrs (YEARS, MONTHS)
Full time ☒ Part time ☐
Av. hrs. per week 40+
Salary 25000 (FIRST) 45000 (LAST)
Reasons for leaving To start my own business.

Employer Independent Appraiser
Address 3482 Greybern Rd.
Name & Title of immediate Supervisor None
Your Title Owner/Appraiser Duties Appraisal of all kinds of properties for various clients. Manage appraisal office, train.

No. & Titles of employees you supervised: 2 Secretary/Trainee

From mo. 4 /yr. 86
To mo. 3 /yr. 87
Total 1 yr. (YEARS, MONTHS)
Full time ☒ Part time ☐
Av. hrs. per week 40+
Salary 35000 (FIRST) 35000 (LAST)
Reasons for leaving Move to Honolulu

Employer 1st Interstate Mortgage
Address Los Robles Ave Pasadena
Name & Title of immediate Supervisor Rob Hervey M.A.I. V.P.
Your Title Appraiser Duties Perform narrative appraisals on all kinds of properties from residential to complex properties utilizing capitalization techniques.

No. & Titles of employees you supervised: Staff + Trainee

From mo. 1 /yr. 79
To mo. 3 /yr. 86
Total 5 yrs (YEARS, MONTHS)
Full time ☒ Part time ☐
Av. hrs. per week 40+
Salary 12000 (FIRST) 25000 (LAST)
Reasons for leaving Start Own business

*(Continue on another sheet of paper, using above format.)*

—2—

04/02/2001

Philip English

Application for RP Appraiser VI is rejected unless he amends his application to reflect at least two years experience in appraising the most difficult and complex types of property.

He can do this by submitting a list of difficult and complex properties he has independently appraised and a brief description of the property if it is not on Oahu.

Deadline for response is 4:30 p.m., April 6, 2001, submitted to Violet Lee or Eileen Tengan.

April 4, 2001

Violet Lee
Budget and Fiscal Services

DEPARTMENT OF BUDGET
AND FISCAL SERVICES
PERSONNEL

Ref:     Addendum to Application for Real Property Appraiser VI

APR 4  3 06 PM '01

Dear Violet,

Thank you for your call regarding my application and giving me the opportunity to more fully explain the nature of my work experience. I am sure that after reviewing the additional information that you have asked for you will be able to determine that my work experience meets and/or exceeds the minimum requirements for the Appraiser VI position.

Minimum Qualifications Requirements for the Class include training and experience in real estate, business or public administration, economics or a related field and five years of professional experience in appraising real property, of which two shall have involved appraising the most difficult and complex types of real property.

As to the Training aspect of the qualification I would like to offer the following information. I have been associated with the Appraisal Institute since 1982 and achieved the SRA designation in 1993. At that time I also became an M.A.I. candidate. During this time I completed most of the course work required for the M.A.I. designation (Basic Valuation Procedures, Capitalization and Theory A & B as well as many seminars related to performing complex appraisal assignments). I have subsequently let my SRA Designation and my M.A.I. candidacy laps due to illness.

In 1993 I tested for the Certified General Appraisers License for the State of Hawaii and currently hold license number CGA-137. Certified General Appraiser License is given to those appraisers who have demonstrated their ability to appraise the most difficult and complex properties in the State of Hawaii utilizing advanced appraisal methods and techniques such as income capitalization, discounted cash flow analysis, band of investment techniques for developing overall rates as well as other techniques.

A limited list illustrating of my Experience appraising complex and difficult properties utilizing some of the techniques described above are as follows:

| Project Name | Type of Project | Location | Valuation | Date |
|---|---|---|---|---|
| Santa Barbara Cntry Club | 18 Whole Golf Crs | Santa Barbara, CA | $ 9,000,000 | Apr-84 |
| Country Place | Res. Subdivision | Redlands, CA | $ 3,500,000 | Dec-84 |
| Mira Vista Apts | 21 Luxury Apts | Montrose, CA | $ 1,500,000 | Apr-85 |
| Rosemont Medical Cntr | Medical Office | Los Angeles, CA | $ 3,300,000 | Apr-85 |
| Golden West Apts | 44 Apt Units | Victorville, CA | $ 3,800,000 | May-85 |
| Sun Village Retirement | Retirement Village | Sun Village, CA | $ 12,000,000 | May-85 |
| Del Pine Terrace | 112 Apt Units | Bakersfield, CA | $ 4,480,000 | Jun-85 |
| Mesa Verde Apts | 120 Apt Units | Bakersfield, CA | $ 4,800,000 | Jul-85 |
| River Park Project | Res. Sub/Golf | Visalia, CA | $ 7,900,000 | Aug-85 |
| Villas Cabarellos | Time Share Project | Palm Springs, CA | $ 2,900,000 | Sep-85 |
| 250 Condo Units | Proposed Condo | San Diego, CA | $ 12,500,000 | Sep-85 |
| 79 Unit Subdivision | 79 Single Family | Fontana, CA | $ 6,500,000 | Oct-85 |
| Sunset Palisades | Single Family Subd | Pismo Beach, CA | $ 3,500,000 | Oct-85 |
| Deer Creek North | Luxury Subdivision | Alta Loma, CA | $ 7,200,000 | Dec-85 |
| Sycamore Park | Res. Subdivision | Rialto, CA | $ 11,250,000 | Dec-85 |
| Country Club Village | Res. Sub/Golf | Santa Maria, CA | $ 7,200,000 | Jan-86 |
| 13 Com.Warehouse | Industrial Warehouse | Santa Maria, CA | $ 18,000,000 | Jan-86 |
| Honolulu Twr II | 600 Unit Apt | Honolulu, HI | $ 35,000,000 | Apr-86 |
| Woodridge Res Subd. | Res. Subdivision | Ahuimanu, HI | $ 4,900,000 | Aug-88 |

All of the above assignments were completed for First Interstate Mortgage or First Nationwide Bank. I was employed both as an employee and as an independent appraiser for these assignments.

In addition to the above difficult and complex assignments, and while employed by the City and County Real Property Tax Division, I have also been involved in and completed valuations on Hotel properties that would fall into this category. They are listed below:

| Project Name | Description | Type | Location | Valuation | Date |
|---|---|---|---|---|---|
| Imperial Hawaii Resort | 272 Units | Hotel/Resort | Waikiki | $ 20,417,800 | Oct-00 |
| Niihau Apt Hotel LTD | 43 Units | Hotel/Resort | Waikiki | $ 4,801,600 | Oct-00 |
| Waikiki Shore | 127 Units | Hotel/Resort | Waikiki | $ 50,786,100 | Oct-00 |
| Hawaiian Colony | 84 Units | Hotel/Resort | Waikiki | $ 2,783,000 | Oct-00 |
| Inn in the Park | 68 Units | Hotel/Resort | Waikiki | $ 3,718,000 | Oct-00 |
| Ilikai | 423 Units | Hotel/Resort | Waikiki | $ 83,220,900 | Oct-00 |
| Hawaiian Monarch | 222 Units | Hotel/Resort | Waikiki | $ 11,368,700 | Oct-00 |
| Marine Surf | 106 Units | Hotel/Resort | Waikiki | $ 10,133,000 | Oct-00 |
| Island Colony | 332 Units | Hotel/Resort | Waikiki | $ 28,523,100 | Oct-00 |
| Hawaiian King | 54 Units | Hotel/Resort | Waikiki | $ 3,627,600 | Oct-00 |
| Waikiki Beach Tower | 94 Units | Hotel/Resort | Waikiki | $ 77,301,000 | Oct-00 |
| Kuhio Village II | 165 Units | Hotel/Resort | Waikiki | $ 8,779,700 | Oct-00 |
| Pacific Monarch | 143 Units | Hotel/Resort | Waikiki | $ 19,001,000 | Oct-00 |
| Waikiki Beachside | 32 Units | Hotel/Resort | Waikiki | $ 1,488,200 | Oct-00 |
| Waikiki Grand | 89 Units | Hotel/Resort | Waikiki | $ 5,622,100 | Oct-00 |
| Diamond Head Bch Hotel | 61 Units | Hotel/Resort | Waikiki | $ 12,645,800 | Oct-00 |
| Total | | | | $ 344,217,600 | |

I have recently participated in the out of Tax Appeal Court settlement of the Ilikai Hotel and I am currently preparing for depositions and trial for the Waikiki Shore appeal of classification.

I believe all of the above will demonstrate that I have education and experience in regards to appraising the most difficult and complex types of real property.

Finally, I would like to also address one other area of experience that I think may be helpful for you in determining whether or not I meet the requirements to be considered for this position. In the City and Counties Real Property Appraiser VI Class Specification, it states that: "This class differs from the Real Property Appraiser V in that the Real Property Appraiser VI position plans, supervises and coordinates the work of a staff of real property appraisers...". This positions primary function is as an *administrator* of a staff of appraisers.

My experience since 1986 has been primarily administrative in nature. In 1986 I began my own appraisal company in Pasadena, California and in 1987 I was appointed as the Senior Appraiser of First Nationwide Bank in Hawaii. By 1989 I again began my own appraisal firm, Philip English and Associates, of 12 employees including 6 appraisers and 6 full time staff. Due to illness I was unable to continue.

In 1999, Eileen Tengan of the City and County contacted me and asked me to interview for the Assessor position, which is primarily an administrative position.

Thank you for the opportunity to amend my application and I hope that the additional information will be of assistance to you in determining whether or not I meet the requirements for the Real Property Appraiser VI position.

Respectfully submitted,

Philip English, CGA-137

REAL PROPERTY ASSESSMENT DIVISION
Department of Budget and Fiscal Services
City and County of Honolulu

## MEMORANDUM

Date:        November 7, 2001

To:          Ms. Caroll Takahashi, Director

Via:         Mr. Gary T. Kurokawa, Real Property Administrator

From:        Mr. Robert O. Magota, Real Property Assessor

Subject:     Request to Reallocate Position DF-485, Real Property Appraiser III to Real
             Property Appraiser IV

It is requested that Mr. Wilfred Martin, Real Property Appraiser III, who has fulfilled all requirements including training, education and experience be reallocated to the Real Property Appraiser IV position.

The Real Property Appraiser IV position is summarized as being able to independently perform difficult real property appraisals involving the full range of real property categories. This position differs from the Real Property Appraiser III position in that the Real Property Appraiser III performs moderately difficult real property appraisals with emphasis on residential properties.

Mr. Martin has over 19 years of appraisal experience in the private sector and government service.  Besides being self-employed, past employers include Bank of America (Hawaii) and the Real Property Assessment Division, Department of Finance, City and County of Honolulu.

Your cooperation in reallocating Mr. Martin to the Real Property Appraiser IV position will be greatly appreciated.

Sincerely,

Robert O. Magota
Real Property Assessor

CONCUR:                                    APPROVED:

GARY T. KUROKAWA                           CAROLL TAKAHASHI
Real Property Administrator                Acting Director
Real Property Assessment Division          Director of Budget and Fiscal Services
Date: 11/07/01                             Date: FEB 19 2002

FPA

RENEAU KENNEDY RE PHILIP ENGLISH                                    78

City and County of Honolulu
Department of Human Resources

# NOTIFICATION OF PERSONNEL ACTION

Name: MARTIN,WILFRED

Dept: BFS-REAL PROP

Social Security: ▓▓▓▓▓▓▓▓▓

Alternate Id:

---

PERSONNEL ACTIONS: REALLOCATION-PROBATIONARY - NEW

EFFECTIVE DATE: 03-01-2002        PROBATION END DATE: 08-31-2002

---

*CHANGES ARE UNDERLINED*

Dept: BFS-RP ASSMT                Begin:    07-02-2001          End:    02-28-2002
Position No.: DF485
Appt Type: PERMANENT
Class: 020552  REAL PROPERTY APPRAISER III
Bargaining Unit:  13 B                Schedule/Grade/Step:  SR 20 C
Percent Fulltime:  100.00             Regular:      2,749.00
                                      Differentials:


Dept: BFS-RP ASSMT                Begin:    03-01-2002          End:
Position No.: DF485
Appt Type: NEW PROBATION
Class: 020553  REAL PROPERTY APPRAISER IV
Bargaining Unit:   13 B               Schedule/Grade/Step:  SR 22 C
Percent Fulltime:  100.00             Regular:      2,973.00
                                      Differentials:


Dept:                             Begin:                       End:
Position No.:
Appt Type:
Class:
Bargaining Unit:                      Schedule/Grade/Step:
Percent Fulltime:                     Regular:
                                      Differentials:



I certify that the personnel actions reported above have been audited  and found to
be in compliance with the provisions of the Civil Service and compensation laws and
the rules, regulations, and orders adopted thereunder.

*Cheryl K. Okuna-Goe*                              03-11-2002
Director of Human Resources                        Transaction Date

Form CS13

RENEAU KENNEDY RE PHILIP ENGLISH                                    71

EXHIBIT 4

**ENGLISH, PHILIP E. DF-486**
START DATE: 06/01/00 (RPAD)

POSITION HISTORY:
06/01/00 REAL PROPERTY APPRAISER II, SR-18C
02/01/01 REAL PROPERTY APPRAISER III, SR-20C (Reallocation)
03/01/02 REAL PROPERTY APPRAISER IV, SR-22C (Reallocation)
06/01/02 REAL PROPERTY APPRAISER IV, SR-22D (Negotiated Step)

**Personnel Training Courses**
07/18/00        Preventing Sexual Harassment
07/25/00        Mandatory Emergency Shelter Management
08/10/00        Working Drug Free is our Responsibility
09/05/01        Mandatory Sexual Harassment Policy

**IAAO**
04/10/00        Fundamentals of Mass Appraisal
04/11/00        Fundamentals of Mass Appraisal
04/12/00        Fundamentals of Mass Appraisal
04/13/00        Fundamentals of Mass Appraisal
04/14/00        Fundamentals of Mass Appraisal
07/10/00        Residential Modeling Concepts
07/11/00        Residential Modeling Concepts
07/12/00        Residential Modeling Concepts
07/13/00        Residential Modeling Concepts
07/14/00        Residential Modeling Concepts
06/26/01        Instructor Training Workshop
06/27/01        Instructor Training Workshop
06/28/01        Instructor Training Workshop
12/11/01        Uniform Standards of Practice Professional Ethics Class Information
12/12/01        Uniform Standards of Practice Professional Ethics Class Information
12/13/01        Uniform Standards of Practice Professional Ethics Class Information

**IAS – Integrated Assessment System**
06/22/00        IAS Cama Data Entry for Appraisers
06/23/00        IAS Cama Data Entry for Appraisers
08/22/00        Cost Valuation
08/23/00        Cost Valuation
08/17/00        Landisc
09/18/00        Model Refinement
05/22/01        Calp/Land Pricing
05/29/01        IAS Income Valuation Overview
06/13/01        CDU Rating System
06/14/01        IAS Selected Sales Validation

RENEAU KENNEDY RE PHILIP ENGLISH                    72

EXHIBIT 2

**REAL PROPERTY ASSESSMENT DIVISION**
Department of Budget and Fiscal Services
City and County of Honolulu

## MEMORANDUM

Date:         November 7, 2001

To:           Ms. Caroll Takahashi, Director

Via:          Mr. Gary T. Kurokawa, Real Property Administrator

From:         Mr. Robert O. Magota, Real Property Assessor

Subject:      Request to Reallocate Position DF-486, Real Property Appraiser III to Real
              Property Appraiser IV

It is requested that Mr. Philip E. English, Real Property Appraiser III, who has fulfilled all requirements including training, education and experience be reallocated to the Real Property Appraiser IV position.

The Real Property Appraiser IV position is summarized as being able to independently perform difficult real property appraisals involving the full range of real property categories. This position differs from the Real Property Appraiser III position in that the Real Property Appraiser III performs moderately difficult real property appraisals with emphasis on residential properties.

Mr. English has over 22 years of appraisal experience in the private sector and government service. Besides being self-employed, past employers include First Nationwide Bank (Hawaii) and First Interstate Mortgage (California).

Your cooperation in reallocating Mr. Philip E. English to the Real Property Appraiser IV position will be greatly appreciated.

Sincerely,

Robert O. Magota
Real Property Assessor

CONCUR:                              APPROVED:

GARY T. KUROKAWA                     CAROLL TAKAHASHI
Real Property Administrator          Acting Director
Real Property Assessment Division    Director of Budget and Fiscal Services
Date:  11/07/01                      Date:    FEB 19 2002

PE94

RENEAU KENNEDY RE PHILIP ENGLISH                              68

City and County of Honolulu
Department of Human Resources

# NOTIFICATION OF PERSONNEL ACTION

Name:  ENGLISH,PHILIP E                          Dept:  BFS-REAL PROP

Social Security: ~~████████████~~                Alternate Id:

---

PERSONNEL ACTIONS:  REALLOCATION-PROBATIONARY - NEW

EFFECTIVE DATE:  03-01-2002;        PROBATION END DATE:  08-31-2002

---

*CHANGES ARE UNDERLINED*

Dept:  BFS-RP ASSMT                Begin:   07-02-2001           End:   <u>02-28-2002</u>
Position No.:  DF486
Appt Type:  PERMANENT
Class:  020552   REAL PROPERTY APPRAISER III
Bargaining Unit:  13 B               Schedule/Grade/Step:   SR 20 C
Percent Fulltime:  100.00            Regular:     2,749.00
                                     Differentials:


Dept:  <u>BFS-RP ASSMT</u>             Begin:  <u>03-01-2002</u>          End:
Position No.:  <u>DF486</u>
Appt Type:  <u>NEW PROBATION</u>
Class:  <u>020553   REAL PROPERTY APPRAISER IV</u>
Bargaining Unit:  <u>13 B</u>             Schedule/Grade/Step:   SR 22 C
Percent Fulltime:  <u>100.00</u>          Regular:     <u>2,973.00</u>
                                     Differentials:


Dept:                              Begin:                      End:
Position No.:
Appt Type:
Class:
Bargaining Unit:                   Schedule/Grade/Step:
Percent Fulltime:                  Regular:
   —                               Differentials:



R E C E I V E D
MAR 1 9 2002
CXC DEPARTMENT OF FINANCE
PROPERTY ASSESSMENT BRANCH

I certify that the personnel actions reported above have been audited  and found to
be in compliance with the provisions of the Civil Service and compensation laws and
the rules, regulations, and orders adopted thereunder.

*Cheryl K. Okuma-Sepe*                    03-11-2002
Director of Human Resources              Transaction Date

RENEAU KENNEDY RE PHILIP ENGLISH                    69

**EXHIBIT 6**

| STATE OF HAWAI'I FAMILY COURT FIRST CIRCUIT | MATRIMONIAL ACTION INFORMATION | CASE NUMBER FC-D NO. 99-0680 |
|---|---|---|

| PLAINTIFF CORLIS JEAN CHANG | PREPARED: ☒ PLAINTIFF ☐ DEFENDANT ☐ ATTORNEY FOR PLAINTIFF ☐ ATTORNEY FOR DEFENDANT | DATE FILED MAR -5 1999 |
|---|---|---|

| DEFENDANT PHILIP EUGENE ENGLISH | | |
|---|---|---|

NATURE OF CASE
☒ DIVORCE   ☐ SEPARATION   ☐ ANNULMENT   ☐ OTHER

| ITEM | WIFE | | HUSBAND | |
|---|---|---|---|---|
| FULL NAME | CORLIS JEAN CHANG | | PHILIP EUGENE ENGLISH | |
| BIRTH OR MAIDEN NAME | Chang | | N/A | |
| ADDRESS STREET, APT. NO. | 4369 Aukai Avenue | | 4369 Aukai Avenue | |
| TOWN, STATE, ZIP COUNTY | Honolulu, HI 96816 | | Honolulu, HI 96816 | |
| PHONE | HOME (808) 732-1593 | WORK (808) 547-5677 | HOME (808) 732-1593 | WORK (808) 732-15 |
| SOCIAL SECURITY NUMBER | ▓▓▓▓▓▓▓ | | ▓▓▓▓▓▓▓ | |
| DATE OF BIRTH | March 2, 1957 | | October 26, 1954 | |
| PLACE OF BIRTH (State or Country) | Honolulu, HI | | Long Beach, CA | |
| RACE | Chinese | | Caucasian | |
| HIGHEST GRADE COMPLETED | 19 years (J.D.) | | 15 years | |
| HAWAII RESIDENT SINCE | 1957 | | 1987 | |
| CIRCUIT RESIDENT SINCE | 1957 | | 1987 | |
| PRIMARY EMPLOYER (Name and Address) | Goodsill Anderson Quinn & Stifel 1800 Alii Place 1099 Alakea St. Honolulu, HI 96813 | | Self | |
| JOB TITLE | Partner | | Self | |
| WORK SCHEDULE | 8:00 - 5:00 | | Flexible | |
| LENGTH OF SERVICE | 12 years | | 7 years | |

| GROSS MONTHLY INCOME (All Sources) | Primary | Secondary | Welfare | Primary | Secondary | Welfare |
|---|---|---|---|---|---|---|
| | 11,230 | 575 | N/A | 3,333 | N/A | N/A |

| DATE OF THIS MARRIAGE | DATE September 1, 1984 | COUNTY / STATE Honolulu, HI |
|---|---|---|
| DATE OF SEPARATION ☒ NOT SEPARATED | DATE | COUNTY / STATE |

Form No. 073105   R12/97                    (Continue on back page)                    MATRIMONIAL ACTION INFORMATION   1F-P-082

*RENEAU KENNEDY RE PHILIP ENGLISH*                    78

## MATRIMONIAL ACTION INFORMATION (Continued)

| | CASE NUMBER |
|---|---|
| | FC-D NO. |

| | FROM MONTH/YEAR | TO MONTH/YEAR | TERMINATED BY | | | STATE |
|---|---|---|---|---|---|---|
| | | | DIVORCE | ANNULMENT | DEATH | |
| WIFE'S PRIOR MARRIAGES | N/A | | | | | |
| | | | | | | |
| | | | | | | |
| HUSBAND'S PRIOR MARRIAGES | unknown | unknown | x | | | CALIFORNIA |
| | | | | | | |
| | | | | | | |

### CHILDREN: ALL CHILDREN OF EITHER PARTY FROM YOUNGEST TO OLDEST

| CHILD'S FULL NAME | M/F | BIRTHDATE | LEGAL PARENT (HUSBAND, WIFE OR OTHER) | PRESENT CUSTODY (HUSBAND, WIFE OR OTHER) | SCHOOL AND GRADE |
|---|---|---|---|---|---|
| Sean Michael Chang English | M | 11/30/89 | Husband & Wife | Husband & Wife | Kahala Elementary Grade 4 |

### INFORMATION REQUIRED FOR CUSTODY

CHILDREN'S PRESENT ADDRESS:
4369 Aukai Avenue, Honolulu, HI 96816

PLACES WHERE AND PERSONS WITH WHOM THE CHILDREN HAVE LIVED WITHIN THE LAST FIVE YEARS AND DATES

| ADDRESS | CARETAKERS | FROM MONTH/YEAR | TO MONTH/YEAR |
|---|---|---|---|
| 4369 Aukai Avenue Honolulu, HI 96816 | Parents | 10/92 | Present |
| 2177 Aha Niu Place Honolulu, HI 96816 | Parents | 11/89 | 10/92 |

WIFE ☐ IS ☒ IS NOT PREGNANT. EXPECTED DELIVERY DATE:

THE UNDERSIGNED SOLEMNLY AND SINCERELY DECLARES, UNDER PENALTY OF PERJURY, THAT THE STATEMENTS MADE HEREIN ARE TRUE AND CORRECT TO THE BEST OF HIS/HER KNOWLEDGE, INFORMATION AND BELIEF.

| DATE | SIGNATURE |
|---|---|
| March 5, 1999 | Delis J Chang |

| STATE OF HAWAI'I<br>FAMILY COURT<br>FIRST CIRCUIT | COMPLAINT FOR DIVORCE | CASE NUMBER<br>FC-D NO. **99-0680** |
|---|---|---|

CORLIS JEAN CHANG,
_____
PLAINTIFF
(Your Full Name)

VS.

PHILIP EUGENE ENGLISH,
_____
DEFENDANT
(Your Spouse's Full Name)

This document is prepared by
☒ Plaintiff  ☐ Attorney for Plaintiff
Corlis J. Chang          Pro Se
Name
1800 Alii Place
1099 Alakea Street
Address
Honolulu, HI 96813
City, State, Zip
547-5600
Phone

I, the Plaintiff, in support of this Complaint for Divorce, allege:

**1. Jurisdiction:**
I and/or my spouse, the Defendant, have lived or have been physically present in the State of Hawai'i for a continuous period of at least six (6) months _and_ I have lived and/or been physically present on the Island of O'ahu for a continuous period of at least three (3) months immediately preceding this application.

**2. Marriage:**
The parties (plaintiff and spouse) are lawfully married to each other.

**3. Children:**
a. ☐  The parties have no children together.
b. ☒  The parties have __1__ _(enter number)_ child(ren) under 18 together.
c. ☐  The parties have____ _(enter number)_ child(ren) 18 or older together, who are dependent on them for support.
d. ☐  The parties have____ _(enter number)_ child(ren) 18 or older together, who are _not_ dependent on them for support.
e. ☐  Wife has _____ _(enter number)_ child(ren) born during the marriage, not fathered by Husband.
f. ☐  Wife is pregnant.

**4. Custody and Visitation:**
a. Legal custody of the minor child(ren) should be awarded to:
☐ Me, Plaintiff      ☐ My spouse, Defendant      ☒ Both parties jointly
b. Physical custody of the minor child(ren) should be awarded to:
☒ Me, Plaintiff      ☐ My spouse, Defendant      ☐ Both parties jointly
c. The parent not awarded physical custody should have:
☒ Reasonable visitation      ☐ Supervised visitation      ☐ _____
d. Child support should be awarded in accordance with the child support guidelines.

**5. Division of Assets:**
All assets my spouse and I own should be divided in a just and equitable way.

**6. Division of Debts:**
All debts my spouse and I owe should be divided in a just and equitable way.

**7. Spousal Support (Alimony):**
a. ☐  I am entitled to an order that my spouse pay spousal support (alimony) to me.
b. ☒  My spouse ☐ is ☒ is not entitled to an order that I pay spousal support (alimony) to him/~~her~~.

**8. Grounds:**
Pursuant to HRS Section 580-41, I allege that the grounds for divorce are as follows (check one only):
a. ☒  The marriage is irretrievably broken.
b. ☐  The parties have lived separate and apart for a period of two (2) or more years under a decree of separation from bed and board or under a decree of separate maintenance.
c. ☐  The parties have lived separate and apart for a continuous period of two (2) or more years immediately preceding the application, there is no reasonable likelihood that cohabitation will be resumed, and it would not be harsh and oppressive to Defendant, or contrary to the public interest, to grant a divorce on this ground on the complaint of Plaintiff.

**It is requested of the Court:**
That a decree be entered granting a divorce from the bonds of matrimony and granting the relief requested above, all as alleged and as may be appropriate and in accordance with the evidence and the law, and other relief as the Court deems proper in this case.

I declare, under penalty of perjury, that the statements made herein are true and correct to the best of my knowledge, information and belief.

DATE
March 5, 1999

PLAINTIFF'S SIGNATURE
Corlis J. Chang

12/97

COMPLAINT FOR DIVORCE 1F-P-

*(stamp:)* 1999 MAR -5 PM 1:51  B. TING CLERK  1st CIRCUIT COURT STATE OF HAWAII FILED

| STATE OF HAWAI'I<br>FAMILY COURT<br>FIRST CIRCUIT | SUMMONS<br>TO ANSWER COMPLAINT | CASE NUMBER<br><br>FC-D  NO. |
|---|---|---|

| | This document is prepared by |
|---|---|
| CORLIS JEAN CHANG, | ☒ Plaintiff  ☐ Atty. for Plaintiff |
|                        PLAINTIFF<br>               (Full Name) | Corlis J. Chang        Pro Se<br>Name |
| VS. | 1800 Alii Place |
| PHILIP EUGENE ENGLISH, | 1099 Alakea Street<br>Address |
|                   DEFENDANT<br>       (Spouse's Full Name) | Honolulu, HI  96813<br>City, State, Zip<br>547-5600<br>Phone |

**TO THE DEFENDANT**

You are hereby summoned and required to serve a written answer to the attached Complaint within 20 days after service of this Summons upon you, exclusive of the date of service.

Your written answer must be filed with the Chief Clerk of this Circuit at the following location or address.

> Ka'ahumanu Hale
> 777 Punchbowl Street
> Honolulu, Hawai'i 96813

A copy of your answer should also be served upon the Plaintiff's attorney, or in the event Plaintiff is not represented by an attorney, upon the Plaintiff at the address shown on the Complaint.

If you fail to file your written answer within the 20-day time limit, further action may be taken in this case, including judgment for the relief demanded in the Complaint, without further notice to you.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE PUBLIC, UNLESS A JUDGE OF THE DISTRICT OR CIRCUIT COURTS PERMITS, IN WRITING ON THE SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**FAILURE TO OBEY THE SUMMONS MAY RESULT IN AN ENTRY OF A DEFAULT AND DEFAULT JUDGMENT AGAINST THE PERSON SUMMONED.**

DATE  MAR - 5 1999    CLERK OF COURT

FORM NO. 073921  12/97

SUMMONS TO ANSWER COMPLAINT 1F-P-064

RENEAU KENNEDY RE PHILIP ENGLISH    81

| STATE OF HAWAI'I FAMILY COURT FIRST CIRCUIT | INCOME AND EXPENSE STATEMENT ✓ Plaintiff ☐ Defendant | CASE NUMBER FC-D NO. **99-0680** |

CORLIS JEAN CHANG

_____ PLAINTIFF (Full Name)

VS.

PHILIP EUGENE ENGLISH,

_____ DEFENDANT (Full Name)

This document is prepared by
✓ Plaintiff  ☐ Defendant  ☐ Atty. For Plaintiff  ☐ Atty. for Defendant

CORLIS J. CHANG
Name
Alii Place, Suite 1800

1099 Alakea Street
Address
Honolulu, HI 96813
City, State, Zip
547-5600
Phone

Occupation: __Attorney__

*Job title*

Employer: __Goodsill Anderson Quinn & Stifel__

Address: __1800 Alii Place, 1099 Alakea Street, Honolulu, Hawaii  96813__

Length of service: ___11___ years.

Income Tax Withholding based on: ___1___ dependents.

### INCOME

Gross income. Paid: ✓ monthly,  ☐ 2 times per month,  ☐ every 2 weeks,  ☐ weekly  ☐ or other _____

Gross per pay period: .................................... $ 11,230    Per month .................................... $ 11,230

Payroll deductions per pay period:

Fed. income tax ........................................ $ 1,000
State income tax........................................ $ 208
FICA (Social Security) ............................ $ see above
Union dues ............................................... $ -0-
a) Net per pay period ............... $ _____    Per month ............. $ 10,022

Other:
HR-10 Loan ............................................. $ 1,071
HR-10 Contribution................................. $ 1,043
Direct Deposit ......................................... $ -0-
Income Assignments................................ $ -0-
Support Payments.................................... $ -0-
Medical Insurance.................................... $ 641
b) Take home per pay period.......... $ _____    Per month ............. $ 7,267

Other regular monthly income, (rental income, 2nd job, interest, child support, welfare, food stamps, and any other source.)
Gross monthly receipt............................ $ 600
Taxes paid IRS and State on above.............. $ 24
c) Total other income net........................... $ 576

Total Monthly Income (Add per month income from lines *a* and *c* above) $ 7,843

1999 MAR -5 PM 1: 52
B. TERAOKA
CLERK
1st CIRCUIT COURT
STATE OF HAWAII
FILED

FORM NO. 073917 R 12/97
General:219998.1
03/5/99 11:26 AM

INCOME & EXPENSE STATEMENT 1F-P-081

RENEAU KENNEDY RE PHILIP ENGLISH                    82

## EXPENSES

Do not list expenses which are paid by payroll deduction.

Housing, expenses per month:
Rent, Mortgage, Agreement of Sale ................................... $ 4,657
Insurance if not included above .......................................... $ 53
Real Property taxes (if paid separately) ............................. $ 178
Utilities, gas, water, elec., telephone etc. ......................... $ 543
Maintenance (repairs) ........................................................ $ 100
Transportation, expenses per month:
Car payment, lease, rental .................................................. $ N/A
Insurance on vehicle ........................................................... $ 73
Maintenance (repairs) ........................................................ $ 167
Operating (gas, oil & tires) ................................................ $ 77

Total Housing and Transportation expenses ........................................................... $ 5,848

Debt service (all monthly payments, eg. credit cards, charges, finance company, personal loans) ......... $ 2,125

| Personal Expenses per month: | Self & Child | Children No.( 1 ) |
|---|---|---|
| Food ........................................................... | $ 256 | $ |
| Clothing ...................................................... | $ 54 | $ |
| Medical and Dental ..................................... | $ 25 | $ |
| Laundry & Cleaning .................................... | $ | $ |
| Personal articles ......................................... | $ 15 | $ |
| Recreation (movies etc) .............................. | $ 112 | $ |
| School (include food) .................................. | $ | $ 12 |
| Household .................................................... | $ 100 | $ |
| Bus (on monthly basis) ................................ | $ | $ |
| Other (Charity) ........................................... | $ 110 | $ |
| Life Insurance ............................................. | $ 615 | $ |
| Payment to others for dependent care ......... | $ | $ 101 |
| Sub Totals ........................................... | $ 1,287 | $ 113 |

Total Personal expenses ....................................................................... $ 1,400

Grand Total expenses: Housing, Trans., Debt & personal ................................................ $9,373

Savings, <Deficiency>: Income minus Expenses ............................................................. $<1,530>

Explain in detail where savings are invested, or if there is a <deficiency>, who provides the funds to maintain the level of spending indicated in this income and expense statement.  (Use separate sheet if more space is needed.)

In order to make ends meet, I have cashed my IRA account, have paid bills on credit card accounts, and have borrowed funds from my mother (Irma K. Chang), from my flex line account, my HR-10 Plan and my insurance policy.

## CERTIFICATION

I hereby declare under the penalty of perjury that I have supplied the information used in this Income and Expense Statement and have reviewed this statement and I certify that the information is accurate, complete and correct.

DATE
March 5, 1999

✓ PLAINTIFF'S ☐ DEFENDANT'S SIGNATURE

*[signature]*

FORM NO. 073917 R 12/97

INCOME & EXPENSE STATEMENT 1F-P-081

RENEAU KENNEDY RE PHILIP ENGLISH                83

| STATE OF HAWAI'I FAMILY COURT FIRST CIRCUIT | ASSET AND DEBT STATEMENT ✓ Plaintiff ☐ Defendant ☐ Both Parties | CASE NUMBER FC-D NO. **99-0680** |
| --- | --- | --- |

CORLIS JEAN CHANG,

_____
**PLAINTIFF**
(Full Name)

VS.

PHILIP EUGENE ENGLISH,

_____
**DEFENDANT**
(Full Name)

This document is prepared by
✓ Plaintiff  ☐ Defendant  ☐ Atty. For Plaintiff  ☐ Atty. for Defendant

CORLIS J. CHANG
Name
Alii Place, Suite 1800

1099 Alakea Street
Address
Honolulu, HI 96813
City, State, Zip
547-5600
Phone

1. **Cash** (on hand or held by others for me)        $ 500

2. **CREDIT UNION ACCOUNTS:**

| Name | Title (H, W, J) | Credit Balance | Debt Balance |
| --- | --- | --- | --- |
| Hawaii State FCU | W & Son | $734 | -0- |

3. **BANK AND SAVINGS ACCOUNTS:** (Include Trustee Accounts)

| Company & Branch | Type of Account | Title (H, W, J) | Current Balance |
| --- | --- | --- | --- |
| Bank of Hawaii | Savings | W | $101 |
| Bank of Hawaii | Checking | W | $500 (after Jan. Bills) |
| Central Pacific Bank | Savings | W as Trustee for Sean English | $777 |

4. **SECURITIES:** (Stocks, Bonds, Mutual Funds, Certificates of Deposit, etc.)

| Company | Title (H, W, J) | Date of Acquisition | Cost | Market Value | Debt Owed Against |
| --- | --- | --- | --- | --- | --- |
| HEI | Son, wife Trustee | 11/90 | Gift | $1,105 | -0- |
| Pacific Century Investment | Son, wife Trustee | 1/96 | ? | $9,494 | -0- |

B. TERAOKA
CLERK

1999 MAR -5 PM 1:59
1ST CIRCUIT COURT
STATE OF HAWAII
FILED

Form No. 073925 R12/97
General:220047.1
03/5/99 11:16 AM

ASSET AND DEBT STATEMENT 1F-P-063

RENEAU KENNEDY RE PHILIP ENGLISH        84

## 5. VEHICLES: (Autos, ...cks, Motorcycles, Trailers, Campers, Boats, ...c.)

| Year | Make | Title (H, W, J) | Current Market Value | Debt Owed Against |
|---|---|---|---|---|
| 1989 | Honda | J | $2,500 | -0- |

## 6. REAL PROPERTY:

| Address | Fee or Lease | Title (H, W, J) | Date of Acquisition | Cost | Current Gross Value | Debt Owed |
|---|---|---|---|---|---|---|
| 4369 Aukai Ave. | Fee | J | 10/92 | $890,000 | $730,000 | $619,167 |

## 7. LIFE INSURANCE:

| Company | Person Insured | Face Amount | Beneficiary | Title (H, W, J) | Cash Value | Debt Owed Against |
|---|---|---|---|---|---|---|
| NW Mutual | Corlis Chang | $97,460 | Sean English | W | $1,036 | $5,000 |
| NW Mutual | Corlis Chang | $100,000 | Sean English | W | -0- | -0- |

## 8. RETIREMENT; PENSION; PROFIT SHARING ACCOUNTS:

| Employer or Company | Title (H, W, J) | Type of Plan | Years in Plan | Total Value |
|---|---|---|---|---|
| Goodsill Anderson Quinn & Stifel | W | HR-10 | 11 | $157,792 |
| (loan against fund totals $33,000.00) | | | | |

## 9. ALL OTHER MAJOR ASSETS: (Furniture, Household Effects, Art, Stamps, Coins, Tools, Equipment, Jewelry, Accounts Receivable, Investment Assets, Business Assets, Cemetery Plots or Niches, Tax Refunds Due, etc.)

| General Description | Title (H, W, J) | Estimated Gross Value | Debt Owed Against |
|---|---|---|---|
| Furniture, etc. | W | $5,000.00 | -0- |
| Tax Refund | J | $4,914.00 | |

*Tax refund proceeds were cashed by Husband alone and used for his sole personal benefit.

Form No. 073925 R12/97

ASSET AND DEBT STATEMENT 1F-P-063

RENEAU KENNEDY RE PHILIP ENGLISH                85

**10. PROPERTY HELD IN TRUST FOR OR BY THIRD PERSON/S:** (Aside from Bank & Savings Accounts Noted in paragraph 3)

| Description | Trustee/s | Beneficiaries | Value | Debt Owed Against |
|---|---|---|---|---|
| N/A | | | | |
| | | | | |
| | | | | |
| | | | | |

**11. ALL OUTSTANDING DEBTS:** (Include those listed parts in 2, 4, 5, 6, 7, 9, and 10 above, in addition to all credit cards, charges, finance companies, and personal loans.)

| Creditor | Debtor (H, W, J or Other) | Security | Mo./Yr. Debt Incurred | Total Balance Owed | Minimum Monthly Payment |
|---|---|---|---|---|---|
| See attached | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Total Debt in Wife's Name Alone: _____ $6,257

Total Debt in Husband's Name Alone: _____ $7,987

Total Debt in Joint Names: _____ $771,403

## CERTIFICATION

I hereby declare under the penalty of perjury that I have supplied the information used in this Asset and Debt Statement and have reviewed this statement and I certify that the information is accurate, complete and correct.

| DATE | ☑ PLAINTIFF'S   ☐ DEFENDANT'S SIGNATURE |
|---|---|
| March 5, 1999 | *[signature]* |
| DATE | ☐ PLAINTIFF'S   ☐ DEFENDANT'S SIGNATURE |
| | |

Form No. 073925 R12/97

ASSET AND DEBT STATEMENT 1F-P-043

RENEAU KENNEDY RE PHILIP ENGLISH

86

Of Counsel:
STIRLING & KLEINTOP

CHARLES T. KLEINTOP 1320-0
DYAN M. MEDEIROS 6776-0
1100 Alakea Street, 20th Floor
Honolulu, Hawaii 96813
Telephone: 524-5183

Attorneys for Defendant

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

1999 MAR -8 PM 1:09
N. anaya
N. ANAYA
CLERK

IN THE FAMILY COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| CORLIS JEAN CHANG, | ) | FC-D No. 99-0680 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | INCOME AND EXPENSE STATEMENT |
| | ) | OF PHILIP EUGENE ENGLISH |
| PHILIP EUGENE ENGLISH, | ) | |
| | ) | |
| Defendant. | ) | |

INCOME AND EXPENSE
STATEMENT OF PHILIP EUGENE ENGLISH

Occupation:  Real Estate Appraiser

Employer:  Self-Employed                    Job Title

Address:  4369 Aukai Avenue, Honolulu, HI 96816

Length of service:  Planning to start work in March, 1999

Income Tax Withholding based on:  1  dependent.

**INCOME** (anticipated)

Gross income, Paid:  [X] monthly, [_] 2 times per month, [_] every 2 weeks,
[_] weekly, [_] or other: Based on an estimated $40,000.00 a year

Gross per pay period ...... $ _____ Per month ........ $  3,333.33

Payroll deductions per pay period:

Taxes & Union dues:
    Federal income tax........................ $  500.00
    State income tax.......................... $  233.00
    FICA (Social Security) ................... $  200.00
    Union dues................................ $  _____

Net per pay period .......... $ _____ Per month......... $  2,400.33

Other:
     Credit Union............................ $ _____
     Direct deposits........................ $ _____
     Income Assignments................... $ _____
     Support Payments..................... $ _____
     Medical Insurance..................... $ _____
Take home per pay period ..... $ _____ Per month ........ $     -0-

Other regular monthly income, (rental income, 2nd job, interest, child support, welfare, food stamps, and any other source.)

     Gross monthly receipt ................. $ _____
     Taxes paid IRS and State on above  $ _____
     Total other net income ................. $     -0-

Total Net Monthly Income (net pay plus other net) .................. $    2,400.33

## EXPENSES (anticipated)
### (Based on H. living on the Mainland)

Housing, expenses per month:
     Rent, mortgage, agreement of sale.. $    1,200.00
     Insurance if not included above ..... $     50.00
     Real property taxes (if paid separately) . $     -0-
     Utilities, gas, water, elec. etc ...... $    350.00    (incl. phone and fax)
Transportation, expenses per month:
     Car payment, lease, rental............ $    400.00
     Insurance on vehicle .................... $    200.00
     Maintenance (repairs).................. $     50.00
     Operating (gas, oil & tires)........... $    300.00

Total Housing and Transportation Expenses ............................ $    2,550.00

Debt service (all monthly payments, e.g.. credit cards, charges, finance company, personal loans) ............................ $    670.00 (a)

Personal Expenses Per Month:

| | Self | | Children No. (1) |
|---|---|---|---|
| Food ....................................... | $ 300.00 | $ | 20.00 |
| Clothing.................................. | $ 75.00 | $ | -0- |
| Medical and Dental (incl. premium) | $ 250.00 | $ | -0- |
| Laundry & Cleaning ................. | $ 10.00 | $ | -0- |
| Personal Articles .................... | $ 25.00 | $ | -0- |
| Recreation (movies, etc.)............. | $ 80.00 | $ | 20.00 |
| School (include food)................... | $ -0- | $ | 15.00 |
| Household................................ | $ 10.00 | $ | -0- |
| Bus (on monthly basis) ............. | $ -0- | $ | -0- |
| Other ( Miscellaneous ) .............. | $ 220.00 (b) | $ | -0- |
| Payment to other for dependent care ............................. | | $ | 370.00 (c) |

RENEAU KENNEDY RE PHILIP ENGLISH      88

(a)     Under H.'s proposed Agreement, he will assume and pay the debts to La Salle Bank, Citibank Visa, Sears, NML Insurance Company, Associates Capitol Bank, and Associates Financial Bank. This sum is the total of the average monthly payments.

(b)     $ 50.00     Professional subscriptions
      70.00     Professional dues and fees
    100.00     Life insurance
  $220.00

(c)     Per Child Support Guidelines based on W.'s income at $11,830.00 and H.'s income at $3,333.33.

-3-

RENEAU KENNEDY RE PHILIP ENGLISH

89

Subtotals: ................................................ $ ___970.00___          $ ___425.00___

Total Personal Expenses.......................................... $ ___1,395.00___

Grand Total Expenses:
    Housing, Transportation, Debt & Personal ........................ $ ___4,615.00___

Savings, <Deficiency>: Income minus Expenses ........................ $ ___<2,214.67>___

Explain in detail where savings are invested, or if there is a <deficiency>, who provides the funds to maintain the level of spending indicated in this income and expense statement.  (Use separate sheet if more space is needed.)

I will need to use my credit card to cover the deficit if I'm not receiving spousal support.

_____

_____

## CERTIFICATION

I hereby declare under penalty of perjury that I supplied the information used in the foregoing Income and Expense Statement and that I have reviewed the foregoing Income and Expense Statement and certify that the information is accurate, complete, and correct.

DATED:  Honolulu, Hawaii, _March 1, 1999_

_Philip Eugene English_
PHILIP EUGENE ENGLISH

-4-

Of Counsel:
STIRLING & KLEINTOP

CHARLES T. KLEINTOP  1320-0
DYAN M. MEDEIROS  6776-0
1100 Alakea Street, 20th Floor
Honolulu, Hawaii  96813
Telephone:  524-5183

Attorneys for Defendant

1st CIRCUIT COURT
STATE OF HAWAII
FILED

1999 MAR -8 PH 1:09
N. ANAYA
CLERK

## IN THE FAMILY COURT OF THE FIRST CIRCUIT

## STATE OF HAWAII

| | |
|---|---|
| CORLIS JEAN CHANG, ) | FC-D No.  99-0680 |
| Plaintiff, ) | |
| vs. ) | ASSET AND DEBT STATEMENT OF PHILIP EUGENE ENGLISH |
| PHILIP EUGENE ENGLISH, ) | |
| Defendant. ) | |

### ASSET AND DEBT
### STATEMENT OF PHILIP EUGENE ENGLISH

1.  **Cash** (on hand or held by others for me)        $  Nomimal

2.  **CREDIT UNION ACCOUNTS:**

| Name | Title | Credit Balance | Debt Balance |
|---|---|---|---|
| None. | | | |

3.  **BANK AND SAVINGS ACCOUNTS:**  (Include Trustee Accounts)

| Company & Branch | Type of Account | Title | Current Balance |
|---|---|---|---|
| First Hawaiian Bank (Downtown Branch) | Checking | H. | $150.00 |
| Bank of Hawaii (a) | Checking | W. | $101.00 |
| Bank of Hawaii (a) | Savings | W. | $500.00 |
| Central Pacific Bank (a) | Savings | W. as Tr for Son | $777.00 |

(a)  Per W.'s 01/29/99 Asset and Debt Statement.

**4.**    **SECURITIES:**  (Stocks, Bonds, Mutual Funds, Certificates of Deposit, etc.)

| Company | Title | Date of Acquisition | Cost | Market Value | Debt Owed Against |
|---|---|---|---|---|---|
| HEI (a) | Son and W. as Tr. | 11/90 | Gift | $1,105.00 | -0- |
| Pacific Century Investment (a) | Son and W. as Tr. | 01/96 | Unknown | $9,494.00 | -0- |

H. has none.

(a)  Per W.'s 01/29/99 Asset and Debt Statement.

**5.**    **VEHICLES:**  (Autos, Trucks, Motorcycles, Trailers, Campers, Boats, etc.)

| Year | Make | Title | Current Market Value | Debt Owed Against |
|---|---|---|---|---|
| 1991 | Jeep Cherokee | H. | $4,500.00 | $4,500.00 |
| 1989 | Honda Accord (LX) | W. | $4,000.00 | -0- |

**6.**    **REAL PROPERTY:**

| Address | Fee or Lease | Title | Date of Acquisition | Cost | Current Gross Value | Total Debt Owed |
|---|---|---|---|---|---|---|
| 4369 Aukai Avenue | Fee | J. | 10/92 | $890,000.00 | $790,000.00 | $619,167.00 |

**7.**    **LIFE INSURANCE:**

| Company | Person Insured | Face Amount | Bene-ficiary | Title | Cash Value | Debt Owed Against |
|---|---|---|---|---|---|---|
| Northwestern Mutual Life | H. | $600,000.00 | W. | H. | $1,184.00 (as of 10/4/98) | $4,300.00 |
| Northwestern Mutual Life (a) | W. | $100,000.00 | Sean | W. | -0- | -0- |
| Northwestern Mutual Life (a) | W. | $97,460.00 | Sean | W. | $1,036.00 | $5,000.00 |

(a)  Per W.'s 01/29/99 Asset and Debt Statement.

-2-

8.    **RETIREMENT; PENSION; PROFIT-SHARING ACCOUNTS:**

| Employer or Company | Type of Plan | Yrs. in Plan | Total Present Vest Value | Benefits Payable When |
|---|---|---|---|---|
| Goodsill, Anderson, Quinn & Stifel (W.) | HR-10 | Unknown | $149,997.76 (net) (as of 12/31/98) | Upon retirement |
| H. has none. | | | | |

9.    **ALL OTHER MAJOR ASSETS:** (Furniture, Household Effects, Art, Stamps, Coins, Tools, Equipment, Jewelry, Accounts Receivable, Investment Assets, Business Assets, Cemetery Plots or Niches, Tax Refunds due, etc.)

| General Description | Title | Estimated Gross Value | Debt Owed Against |
|---|---|---|---|
| Bed, Dresser, Chairs | H. | $1,000.00 | -0- |
| Tool Equipment | H. | $500.00 | -0- |
| Stereos, TV | H. | $1,500.00 | -0- |
| Law Partnership Interest | W. | $10,000.00 (est.) | -0- |
| Personal | W. | Unknown | -0- |
| Furniture | W. | Unknown | -0- |
| Jewelry | W. | Unknown | -0- |
| Silver | W. | Unknown | -0- |
| Crystal | W. | Unknown | -0- |
| Appliances | W. | Unknown | -0- |

10.    **PROPERTY HELD IN TRUST FOR OR BY THIRD PERSON/S:**
(Aside from Bank and Savings Accounts Noted in Paragraph 3)

| Description | Trustee(s) | Beneficiaries | Value | Debt Owed Against |
|---|---|---|---|---|
| None. | | | | |

-3-

RENEAU KENNEDY RE PHILIP ENGLISH                    93

11.  **ALL OUTSTANDING DEBTS:**  (Include those listed above)

| Creditor | Debtor (H.W.J.) | Security | Mo/Yr Debt Incurred | Total Balance Owed | Minimum Monthly Payment |
|---|---|---|---|---|---|
| First Nationwide Bank | J. | Aukai Pl. | 10/92 | $619,167.00 | $4,657.00 |
| Bank of Hawaii P-flex | J. | NA | Unknown | $5,000.00 | $230.00 |
| Bank of Hawaii P-flex | H. | NA | 1995 | $10,000.00 | $200.00 |
| Bank of Hawaii P-flex | J. | NA | Unknown | $20,000.00 | $525.00 |
| MBNA | J. | NA | Various | $40,215.00 | $825.00 |
| First Card Visa | J. | NA | Various | $13,689.00 | $300.00 |
| Fleet Advanta | J. | NA | Various | $8,613.00 | $175.00 |
| Discover | J. | NA | Various | $7,906.00 | $175.00 |
| Household Bank (Prime Option) | J. | NA | Various | $7,127.00 | $175.00 |
| Office Max | J. | Computer | 4/98 | $2,155.00 | $75.00 |
| Computer City | J. | NA | Various | $3,073.00 | $75.00 |
| La Salle Bank | H. | Jeep | 4/98 | $4,500.00 | $150.00 |
| Citibank Visa | H. | NA | Various | $2,600.00 | $75.00 |
| Sears | H. | NA | 1998 | $3,000.00 | $125.00 |
| NML Insurance Co. | H. | NA | 4/98 | $4,300.00 | $20.00 |
| Assoc. Capitol Bank | H. | NA | 1995 | $11,900.00 | $100.00 |
| Assoc. Financial Bank | H. | Personal property | 4/98 | $7,000.00 | $200.00 |
| Personal Friend | H. | NA | 10/98 | $5,000.00 | Balance Due |
| GAQS HR-10 loan | W. | NA | 1996 | $31,193.01 | $1,071.00 |
| Student loan (a) | W. | NA | 1983 | $5,991.00 | $220.00 |
| MBNA Gold Option (a) | W. | NA | '97-'98 | $5,137.00 | $139.00 |
| NML Insurance Co. (a) | W. | NA | 1998 | $5,000.00 | |
| Capitol One (a) | W. | NA | 1998 | $631.00 | $50.00 |
| Chevron (a) | W. | NA | 1998 | $507.00 | |
| Irma Chang (a) | J. | NA | 1998 | $5,040.00 | |
| Loan from Sean (a) | J. | NA | 1998 | $2,050.00 | |
| Wendell Lee, CPA (a) | J. | NA | 1998 | $700.00 | |
| Wendell Lee, CPA (a) | J. | NA | 1997 | $400.00 | |
| Wendell Lee, CPA (a) | J. | NA | 1998 | $286.00 | |

(a)  Per W.'s 01/29/99 Asset and Debt Statement

I hereby declare, under penalty of perjury, that I have examined the foregoing statement and to the best of my knowledge and belief, it is true, correct, and complete.

DATED:  Honolulu, Hawaii, _____March 1, 1999_____

_Philip Eugene English_
PHILIP EUGENE ENGLISH

-4-

| STATE OF HAWAI'I<br>FAMILY COURT<br>FIRST CIRCUIT | AFFIDAVIT OF PLAINTIFF<br>(FOR UNCONTESTED DIVORCE) | CASE NUMBER<br>FC-D NO. 99-0680 |
|---|---|---|

CORLIS JEAN CHANG,

_____ PLAINTIFF
(Your Full Name)

VS.

PHILIP EUGENE ENGLISH,

_____ DEFENDANT
(Your Spouse's Full Name)

This document is prepared by
☒ Plaintiff  ☐ Atty. for Plaintiff

Corlis J. Chang          Pro Se
Name
1800 Alii Place
1099 Alakea Street
Address
Honolulu, HI  96813
City, State, Zip
547-5600
Phone

STATE OF HAWAI'I                    )
                                    )  SS.
CITY AND COUNTY OF HONOLULU         )

Plaintiff in the above-entitled action, being first duly sworn on oath, deposes and says that:

1. Plaintiff's full name and address is:
   Corlis Jean Chang
   4369 Aukai Avenue
   Honolulu, HI  96816

2. <u>Legal Representation</u>:
   2a. ☒ Plaintiff is representing him/herself.
   2b. ☐ Plaintiff is represented by the attorney named above.

3. Service of process on Defendant was made by:
   3a. ☐ <u>Personal Service</u>:   A Proof of Service or Affidavit of Service has been filed showing that the Defendant was personally served with the Complaint and Summons on _____ by a person authorized to serve of legal documents.
       (Mo/Day/Yr)
   3b. ☐ <u>Certified or Registered Mail</u>:  The Complaint and Summons was served upon Defendant by certified or registered mail. A Statement of Mailing or Affidavit of Mailing and an original return receipt signed by the Defendant on _____ have been filed. Plaintiff recognizes Defendant's signature on the return receipt.
       (Mo/Day/Yr)
   3c. ☒ <u>Appearance and Waiver</u>: Defendant acknowledged receipt of a filed copy of the Complaint and Summons and signed an Appearance and Waiver on  March 5, 1999 . Plaintiff recognizes Defendant's signature on the Appearance and Waiver.
       (Mo/Day/Yr)
   3d. ☐ <u>Publication</u>: The Affidavit of Publication was filed on _____
       (Mo/Day/Yr)

4. ☐ **Default**.
   4a. ☐ More than twenty (20) days have passed since the service of the Complaint and Summons on the Defendant. No responsive pleading has been filed. Neither Plaintiff nor Plaintiff's attorney has received any communication from Defendant or Defendant's attorney concerning this case since the Complaint was served.
   4b. ☐ An order granting the Motion for Entry of Default was filed on_____
       (Mo/Day/Yr)

1999 MAR 17 PM 3:10
M. TANAKA
CLERK
1ST CIRCUIT COURT
STATE OF HAWAII
FILED

4/98

AFFIDAVIT OF PLAINTIFF (UDA) 1F-P-

RENEAU KENNEDY RE PHILIP ENGLISH                    95

| STATE OF HAWAI'I<br>FAMILY COURT<br>FIRST CIRCUIT | AFFIDAVIT OF PLAINTIFF<br>(FOR UNCONTESTED DIVORCE)<br>PAGE TWO | CASE NUMBER<br><br>FC-D NO. 99-0680 |
| --- | --- | --- |

5. Jurisdiction: (Check all that apply)
  5a. ☒ Plaintiff had been domiciled or physically present on the Island of O'ahu for a continuous period of at least 3 months prior to the filing of the Complaint for Divorce.
  5b. ☒ Plaintiff had been domiciled or physically present in the State of Hawai'i for a continuous period of at least 6 months prior to the filing of the Complaint for Divorce.
  5c. ☒ Defendant had been domiciled or physically present in the State of Hawai'i for a continuous period of at least 6 months prior to the filing of the Complaint for Divorce.

6. Defendant resides in (city, state)   Honolulu  (City)  ,   Hawaii  (State)

7. The parties were married on   September 1, 1984  (Mo/Day/Yr)

8. The parties last lived together in (city, state)   Honolulu  (City)  ,   Hawaii  (State) on   March 8, 1999  (Mo/Day/Yr)

9. Plaintiff believes that the marriage is irretrievably broken because:
  the parties have grown apart and can no longer live harmoniously together

10. Financial statements:

  10a. Plaintiff signed Income and Expense and Asset and Debt Statements on March 5, 1999 (Mo/Day/Yr). To the best of Plaintiff's knowledge there have been no substantial changes in Plaintiff's financial circumstances since that date.

  10b. ☒ Defendant signed Income and Expense and Asset and Debt Statements on March 1, 1999 (Mo/Day/Yr) Plaintiff recognizes Defendant's signature on said documents.

  10c. ☐ Defendant's Income and Expense Statement and Asset and Debt Statement are not filed because:

11. Plaintiff has carefully reviewed the proposed decree and agrees to the alimony, division of property and other provisions as provided in the proposed decree.

12. Plaintiff signed the proposed decree. ☒ Plaintiff recognizes Defendant's signature on the decree.

13. Wife wishes to resume the use of her ☐ birth surname ☐ former married name and be known as:

14. Husband wishes to resume the use of his ☐ birth surname ☐ former married name and be known as:

15. Language Comprehension:
  15a. ☒ Plaintiff fully understands the English language.
  15b. ☐ Although Plaintiff does not fully comprehend written English, this document has been explained to him/her by _____ and based on that explanation Plaintiff understands this document.

16. Plaintiff requests that the court grant this divorce and enter the decree without his/her appearance in court.

17. Plaintiff has read this document and signs it voluntarily and without coercion and duress and not because he/she was told to sign it.

RENEAU KENNEDY RE PHILIP ENGLISH     96

| STATE OF HAWAI'I<br>FAMILY COURT<br>FIRST CIRCUIT | AFFIDAVIT OF PLAINTIFF<br>(FOR UNCONTESTED DIVORCE)<br>PAGE THREE | CASE NUMBER<br><br>FC-D NO.  99-0680 |
|---|---|---|

18. Underline{Pregnancy:}
   18a. ☒ Wife is not pregnant.
   18b. ☐ Wife is pregnant and her expected date of delivery is _____ Husband ☐ is ☐ is not the father
        of said child. (Mo/Day/Yr)

19. Underline{Child(ren):}
   19a. ☐ Plaintiff and Defendant have no children together.
   20b. ☒ The parties have ___1___ children together. The complete name and birthdate of each are listed as follows
        from the oldest to the youngest child (including adult child(ren)):

   Name                                                    Date of Birth

   Sean Michael Chang English                              Nov. 30, 1989 (Mo/Day/Yr)
                                                                          (Mo/Day/Yr)
                                                                          (Mo/Day/Yr)
                                                                          (Mo/Day/Yr)
                                                                          (Mo/Day/Yr)

   19c. ☐ There is/are child(ren) conceived during the marriage fathered by someone other than husband. Their
        name(s) and date of birth is/are listed as follows:

   Name                        Date of Birth        Judgment of Paternity entered

                               _____ (Mo/Day/Yr)   ☐ Yes      ☐ No
                               _____ (Mo/Day/Yr)   ☐ Yes      ☐ No

20. Underline{Prior or Pending Custody Proceedings:}
   20a. ☒ I have not participated in any capacity in any law suit or proceeding in any state concerning custody of any
        of the minor children of the Plaintiff and Defendant together. I have no information of any pending custody
        proceeding or of any person not a party to this proceeding who has physical custody or claims to have
        custody or visitation rights concerning any minor children of the Plaintiff and Defendant together.
   20b. ☐ Prior court case involving the subject children:
        Case Name: _____
        Case Number: _____
        Location of Court: _____
        Date Filed: (Mo/Day/Yr) _____
        Date Concluded: (Mo/Day/Yr) _____
        Type of Case: _____
   20c. ☐ Other court case involving the subject children which is still pending:
        Case Name: _____
        Case Number: _____
        Location of Court: _____
        Date Filed: (Mo/Day/Yr) _____
        Date Concluded: (Mo/Day/Yr) _____
        Type of Case: _____

4/98

AFFIDAVIT OF PLAINTIFF (UDA) 1F-P-333

RENEAU KENNEDY RE PHILIP ENGLISH                                    97

| STATE OF HAWAI'I<br>FAMILY COURT<br>FIRST CIRCUIT | AFFIDAVIT OF PLAINTIFF<br>(FOR UNCONTESTED DIVORCE)<br>PAGE FOUR | CASE NUMBER<br><br>FC-D    NO.   99-0680 |
|---|---|---|

21. ☒  Plaintiff agrees to the custody arrangement and child support amounts as provided in the proposed divorce decree.

22. Child Support:
    22a. ☒  Plaintiff believes that the information provided in the completed Child Support Guildelines Worksheet is accurate, to the best of the Plaintiff's knowledge and proposed child support is consistent with the Child Support Guidelines Worksheet.
    22b. ☐  Proposed child support varies from the Child Support Guidelines Worksheet because of the following exceptional circumstances:

23. Kids First:
    23a. ☐  I attended the Kids First II Program (Wednesday Night) on _____ (Mo/Day/Yr).
    23b. ☐  I was excused by Judge _____ from attending the Kids First II Program.

24. ☐  Other:

_____

Plaintiff declares that he/she understands that his/her signature under oath before a notary public is his/her solemn statement that he/she read this Affidavit and knows and understands the contents and that these statements are true, correct and complete to the best of his/her knowledge and belief.

PLAINTIFF'S SIGNATURE   _Corlis J. Alex_

| SUBSCRIBED AND SWORN TO<br>BEFORE ME THIS DATE:<br>_March 9, 1999_<br><br>IN _HONOLULU_ , Hawai'i | NOTARY PUBLIC'S SIGNATURE<br>_Edwina S._<br>Edwina S. HOFeB<br>STATE OF HAWAI'I | MY COMMISSION EXPIRES:<br>_01/24/2002_ |
|---|---|---|

4/98

Page 4 of 4

AFFIDAVIT OF PLAINTIFF (UOA) 1F-P-333

RENEAU KENNEDY RE PHILIP ENGLISH                    98

| STATE OF HAWAI'I<br>FAMILY COURT OF THE<br>FIRST CIRCUIT | CHILD SUPPORT<br>GUIDELINES WORKSHEET | CASE NUMBER<br>FC- D NO. 99-0680 |
|---|---|---|

| | |
|---|---|
| CORLIS JEAN CHANG<br>_____<br>PLAINTIFF/PETITIONER ☒ Mother ☐ Father<br><br>VS.<br><br>PHILIP EUGENE ENGLISH<br>_____<br>DEFENDANT/RESPONDENT ☐ Mother ☒ Father | This document was prepared by<br>☐ Plaintiff ☐ Defendant ☐ Atty. for Plaintiff ☒ Atty. for Defendant<br>Name CHARLES T. KLEINTOP    1320-0<br>Address 1100 Alakea Street, 20th Floor<br>City, State, Zip Honolulu, Hawaii 96813<br>Telephone 524-5183 |

| Line 1 | BASE PRIMARY SUPPORT  $250 x _____ (# of children) | | | 250.00 |
|---|---|---|---|---|
| 2 | Plus Monthly Child Care Expenses | | + | -0- |
| 3 | Plus Monthly Health/Dental Insurance for the Child(ren) | | + | 213.67 |
| 4 | PRIMARY SUPPORT NEED (add lines 1, 2 and 3) | | = | 463.67 |

| | | FATHER (A) | MOTHER (B) | TOTAL (C) |
|---|---|---|---|---|
| 5 | Parents' SOLA Income (from Table) | 2,582.00 | + 11,087.00 | 13,669.00 |
| 6 | Less PRIMARY SUPPORT NEED (from line 4) | | | - 463.67 |
| 7 | Parents' Net SOLA Income (line 5 - line 6) | | | 13,205.33 |
| 8 | SOLA Percentage, 10% per child, up to 30% | | | x 10 % |
| 9 | SOLA OBLIGATION (line 7 x line 8) | | | 1,320.53 |
| 10 | TOTAL SUPPORT NEED (line 4 + line 9) | | | 1,784.20 |

| | | FATHER (A) | MOTHER (B) | TOTAL (C) |
|---|---|---|---|---|
| 11 | Monthly Gross Income | 3,333.33 | +11,830.00 | =15,163.33 |
| 12 | Monthly Net Income (from Table) | 1,692.00 | + 6,303.84 | =7,995.84 |
| 13 | Income Percentage (line 12(A) ÷ line 12(C)) or (line 12(B) ÷ line 12(C)) | 21 % | 79 % | |
| 14 | Support Payable By Each Parent (line 10) x Parent's (line 13) % | 374.68 | 1,409.52 | |
| 15 | Less Monthly Child Care Expense for Parent Who Pays | - -0- | -0- | |
| 16 | Less Monthly Health Insurance Cost for Parent Who Pays | - | 213.67 | |
| 17 | REMAINING CHILD SUPPORT PAYABLE BY EACH PARENT<br>(Round to nearest $10.00) | 370.00 | 1,200.00 | |
| 18 | ☐ Mother ☒ Father pays to ☒ Mother ☐ Father in child support for a total of $ 370.00 per month ($ 370.00 per child per month).  ☐ Mother ☐ Father pays health insurance.  ☐ Mother ☐ Father pays child care expenses. | | | |

I ACKNOWLEDGE THAT THE ABOVE INFORMATION IS CORRECT.

_Philip Eugene English_    3-5-99
Father                     Date

_Corlis Jean Chang_        3/5/99
Mother                     Date

☐ For exceptional circumstances see attached Exceptional Circumstance Form.
☐ For joint physical custody calculations or visitation 143 days or over per year, see Child Support
Guidelines Worksheet For Joint Custody/Extensive Visitation and enter amounts on line 18.

CSG.11/98

For Court Use Only
M. TANAKA
1ST FRK

1ST CIRCUIT COURT
STATE OF HAWAII
FILED
MAR 17 PM 3 10

Of Counsel:
STIRLING & KLEINTOP

CHARLES T. KLEINTOP  1320-0
DYAN M. MEDEIROS  6776-0
20th Floor
1100 Alakea Street
Honolulu, Hawaii  96813
Telephone:  524-5183

Attorneys for Defendant

CIRCUIT COURT
STATE OF HAWAII
FILED

1999 MAR 17  PM 3: 10

M. TANAKA
CLERK

IN THE FAMILY COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| CORLIS JEAN CHANG, | ) | FC-D No. 99-0680 |
| Plaintiff, | ) | |
| | ) | AGREEMENT INCIDENT |
| vs. | ) | TO DIVORCE |
| | ) | |
| PHILIP EUGENE ENGLISH, | ) | |
| | ) | |
| Defendant. | ) | |

AGREEMENT INCIDENT TO DIVORCE

THIS AGREEMENT made and entered into this $5th$ day of
March, 1999, by and between PHILIP EUGENE ENGLISH, hereinafter called
"Husband", and CORLIS JEAN CHANG, hereinafter called "Wife";

WITNESSETH THAT:

WHEREAS, the parties were lawfully married on September 1, 1984
in Honolulu and ever since have been and now are husband and wife; and

WHEREAS, there was one (1) child born of the marriage:  SEAN
MICHAEL ENGLISH, born November 30, 1989; and

WHEREAS, differences have arisen between the parties and they no longer live together as husband and wife; and

WHEREAS, it is the mutual wish and desire of the parties to effect, in contemplation of divorce, a final and complete settlement of claims for support, division of property interests, allocation of responsibility for existing and contingent liabilities, and such other matters as may be relevant to the dissolution of their marriage and to each other;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in this Agreement, it is agreed as follows:

1. <u>Custody and Visitation</u>.  Husband and Wife understand that they control the custody of SEAN only to the extent that their wishes coincide with such order as the Court may make after consideration of the best interests of SEAN; provided, however, subject to these premises of law, it is the parties' desire, in anticipation of Husband relocating to and residing on the Mainland and Wife continuing to reside in Honolulu, that they be awarded joint legal custody of SEAN and that Wife be awarded physical custody of SEAN, subject to Husband's rights of reasonable visitation.

Husband's rights of reasonable visitation shall include but not be limited to the following:

(a) <u>Correspondence and Telephone Contact</u>.  Unlimited correspondence and up to daily telephone contacts at reasonable hours.  Reasonable hours shall be determined by SEAN's age and his usual daily activities schedule.

(b) <u>Christmas/New Year Vacation</u>.  One-half (1/2) of the Christmas/New Year vacation period, alternating the first and second half.  The first half shall always include Christmas Eve

-2-

and Day. The second half shall always include New Year's Eve and Day. If the calendar doesn't allow for these inclusions a particular year, the parties shall adjust their days to allow for the inclusions while still maintaining an equal division of the vacation. Husband shall have the first half of the Christmas/New Year vacation period in 1999.

(c) <u>Spring Break Vacation</u>. The entire spring break vacation in even-numbered years, starting in the year 2000.

(d) <u>Summer Vacation</u>. The summer vacation period commencing one (1) week after the end of the school year and continuing until two (2) weeks prior to the start of the school year, or as the parties hereafter shall mutually agree.

(e) <u>Special Accessibility</u>. If Husband comes to Honolulu for any reason, he shall give Wife at least two (2) weeks notice that he would like to visit with SEAN. The visitation shall take into account SEAN's usual school activity schedule, if any. At a minimum, Husband's visitation while he is in Honolulu shall be the weekends and one (1) day during the week from afterschool to a reasonable time of return the same day.

(f) <u>No Removal from Country</u>. Neither party shall temporarily remove SEAN from his or her residence to any jurisdiction outside of the United States of America without first (1) advising the other party at least thirty (30) days in advance of the intended date of such removal, and (2) obtaining a Court order allowing such removal with specified dates of removal and return to the United States of America.

-3-

(g) <u>Health Reports</u>. The parties will share medical and dental reports at appropriate times. Whoever receives the reports will share the reports with the other party.

(h) <u>Reciprocal Access</u>. During the periods that SEAN is with Husband, Wife shall have telephone and correspondence rights similar to Husband's and Husband shall cooperate with Wife in facilitating those rights.

As joint legal custodians, the parties shall confer on major decisions affecting SEAN, including but not limited to his elementary and secondary education, his higher education, major medical or dental care required by him, his school and after school activities of note, military service requiring consent of the parties, and marriage requiring consent of the parties. Additionally, each party shall keep the other apprised of SEAN's general health, school progress (i.e. report cards and the like), school activities, afterschool activities, and general whereabouts when SEAN is with him or her. It is the parties' intent and each of them will communicate openly and freely with each other regarding SEAN and those matters which affect his well-being. Each party shall keep the other party informed of his or her residence address and telephone number during SEAN's minority.

Husband shall pay all of SEAN'S transportation expenses incident to his visitation with SEAN.

All of the foregoing shall be subject to further order of the Court.

2. <u>Child Support</u>. Husband shall pay directly to Wife as and for the support, maintenance, and education of SEAN the sum of <u>$370.00</u> per month. Said sum shall be payable in one (1) monthly installment on the fifth day of each month, commencing on the fifth day of April, 1999.

-4-

child support for SEAN shall continue until he attains the age of 18 years or graduates from or discontinues high school, whichever occurs last.

All of the foregoing shall be subject to further order of the Court.

3. <u>Medical and Dental Care for SEAN</u>.  Wife shall maintain medical and dental insurance coverage for SEAN to the extent and for so long as SEAN is eligible under her medical and dental insurance plans. Any uninsured expenses for medical care, dental care, prescription drugs, and vision care for SEAN shall be paid by Wife up to a cumulative total of $300.00 per year.  Any uninsured expenses for medical care, dental care, prescription drugs, and vision care for SEAN in excess of the cumulative total of $300.00 per year shall be paid equally by the parties.

All of the foregoing shall be subject to further order of the Court.

4. <u>Pre-College Private Education Expenses</u>.  As joint legal custodians, should the parties decide to enroll SEAN in a particular pre-college private school, each party shall assume and pay that proportion of SEAN's private education expenses that his or her monthly gross income bears to the combined monthly gross income of both parties.  [<u>Mark v. Mark</u>, 9 Haw. App. 184, 828 P.2d 1291 (1992)].  Private education expenses shall include tuition, fees, book expenses, and school lunch expenses.

All of the foregoing shall be subject to further order of the Court.

5. <u>Post High School, Higher Education Expenses</u>.  As joint legal custodians, the parties, with input from SEAN, shall decide where SEAN obtains his post high school, higher education.  To pay SEAN's post high school, higher education expenses, the parties shall first utilize the trust accounts for SEAN [as identified in paragraph 10(b) of this Agreement].  There-

and assuming the parties are still in agreement as to where SEAN shall obtain his post high school, higher education, each party shall assume and pay that proportion of SEAN's post high school, higher education expenses that his or her monthly gross income bears to the combined monthly gross income of both parties. All of the foregoing presumes that SEAN is pursuing his education post high school on a fulltime basis at an accredited college or university, or in a vocational or trade school. If he isn't, none of the foregoing shall apply. The obligations in this paragraph shall continue until SEAN graduates or attains the age of 23 years, whichever occurs first.

Post high school, higher education expenses shall include tuition, fees, book expenses, room and board (assuming SEAN is not living with Wife), transportation, and a reasonable allowance.

All of the foregoing shall be subject to further order of the Court.

6. <u>Life Insurance</u>. Each party shall maintain unencumbered life insurance on his or her life in a face amount of no less than $200,000.00 as and for the primary benefit of SEAN. Each party's obligation to maintain this insurance for SEAN shall continue until such time as he or she no longer has a duty to support SEAN in any way under this Agreement.

Each party shall be awarded the life insurance policy(ies) titled in his or her name alone, including any cash value therein and subject to any encumbrance thereon. Each party also waives all of his or her right, title, claim, and interest in and to the life insurance policy(ies) being awarded to the other party.

7. <u>Alimony</u>. Neither Husband nor Wife requests alimony from the other party and there shall be no order for alimony.

-6-

RENEAU KENNEDY RE PHILIP ENGLISH                    105

8.  Medical and Dental Insurance Coverage for Husband.  If Husband elects COBRA health insurance coverage through Wife's employer, Wife shall take all necessary steps to ensure that medical and/or dental insurance coverage is made available for Husband through her employer in accordance with and subject to the provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA).  Husband shall then pay any fees, premiums, or payments necessary to secure this medical and/or dental insurance coverage for himself for so long as he is eligible for such coverage.

9.  Real Property.

(a)  4369 Aukai Avenue.  Wife shall be awarded the real property at 4369 Aukai Avenue, Honolulu and she shall assume and pay all obligations and liabilities associated with this property, including but not limited to the mortgage balance owing to 1st Nationwide Bank mortgage.

Husband waives all of his right, title, claim, and interest in and to the Aukai Avenue property.

10.  Personal Property.

(a)  Deposit Accounts.  Each party shall be awarded any deposit account(s) titled in his or her name alone.  Each party waives all of his or her right, title, claim, and interest in and to the deposit account(s) being awarded to the other party.

(b)  Trust Accounts.  Wife shall maintain for SEAN the Central Pacific Bank trust account, the Hawaiian Electric Industries (HEI) trust account, and the Pacific Century Investment trust account, all of which are presently titled in Wife's name as trustee for SEAN.  These trust accounts shall then be utilized as stated in

-7-

paragraph 5 of this Agreement.  Should there be any balances left in any of these accounts at such time as SEAN completes his post high school, higher education, he shall be awarded these balances. Wife shall send copies of all of the statements she receives for these accounts to Husband on a regular (but no less than quarterly) basis.

(c)  Securities.  Each party shall be awarded any security account(s) titled in his or her name alone.  Each party waives all of his or her right, title, claim, and interest in and to the security account(s) being awarded to the other party.

(d)  Vehicles.  Husband shall be awarded his 1991 Jeep Cherokee and he shall assume and pay all obligations and liabilities associated with this vehicle, including but not limited to the debt owed to La Salle Bank.  Wife shall be awarded her 1989 Honda Accord LX.  Each party waives all of his or her right, title, claim, and interest in and to the vehicle being awarded to the other party.

(e)  Retirement Interests.  Husband shall be awarded one-half (1/2) of the net value of Wife's HR-10 Plan with Goodsill, Anderson, Quinn & Stifel ("the Plan") as of the date of the transfer of his one-half (1/2).  (Net value means the value of the Plan less the debt balance.  For example, the value of the Plan as of December 31, 1998 was $181,190.77 and the debt balance of the Plan as of December 31, 1998 was $31,193.01.  Therefore, the net value of the Plan as of December 31, 1998 was $149,997.76.)  Wife

-8-

shall be awarded the remainder of the Plan and shall assume and pay the debt balance thereon.

After his receipt of one-half (1/2) of the net value of the Plan, Husband waives all of his right, title, claim, and interest in and to the Plan. Wife waives all of her right, title, claim and interest in and to the one-half (1/2) of the net value of the Plan being awarded to Husband.

The award to Husband of one-half (1/2) of the net value of the Plan shall be implemented by means of a Qualified Domestic Relations Order (hereinafter "QDRO") as defined in Section 414(p) of the Internal Revenue Code of 1986, as amended, and the Retirement Equity Act of 1984, Pub. L. No. 98-397 (hereinafter "REA"). Such a QDRO is made a part hereof by reference. The Court shall have continuing jurisdiction to enter such a QDRO and to make appropriate modifications thereto for the purpose of establishing or maintaining its qualification as a QDRO. Wife shall cooperate by providing Husband (or his representatives) with any and all information necessary for the preparation of such a QDRO, including but not limited to the signing of Authorizations to enable Husband (or his representatives) to correspond and otherwise communicate directly with the Plan Administrator.

(f) Law Partnership Interest. Wife shall be awarded her law partnership interest in Goodsill, Anderson, Quinn & Stifel. Husband waives all of his right, title, claim, and interest in and to Wife's law partnership interest.

-9-

g) <u>Household Furniture, Furnishings, and Effects</u>. The household furniture, furnishings, and effects have been divided by the parties to their mutual satisfaction. Each party shall therefore be awarded the household furniture, furnishings and effects presently in his or her possession or control or, as agreed upon, will be awarded to him or her. Each party waives all of his or her right, title, claim, and interest in and to the household furniture, furnishings, and effects being awarded to the other party.

(h) <u>Personal Effects</u>. Each party shall be awarded his or her own personal effects, clothing, and jewelry. Each party waives all of his or her right, title, claim, and interest in and to the personal effects being awarded to the other party.

11. <u>Debts</u>. As stated in paragraph 9(a) of this Agreement, Wife shall assume and pay the mortgage balance to 1st Nationwide Bank. As stated in paragraph 10(e) of this Agreement, Wife shall assume and pay the balance of her HR-10 loan from her Goodsill, Anderson, Quinn & Stifel retirement plan. Wife shall also assume and pay the balance of the following debts:

(a) Bank of Hawaii P-flex ($5,000.00).

(b) Bank of Hawaii P-flex ($20,000.00).

(c) MBNA.

(d) First Card Visa.

(e) Fleet Advanta.

(f) Discover.

(g) Household Bank (Prime Option)

(h) Office Max.

-10-

    (i)  Computer City.

    (j)  Her student loan.

    (k)  MBNA Gold Option.

    (l)  NML Insurance Company (Wife's policy).

    (m)  Capital One.

    (n)  Chevron.

    (o)  Irma K. Chang.

    (p)  The loan from SEAN.

    (q)  Wendell Lee, CPA.

As stated in paragraph 10(d) of this Agreement, Husband shall assume and pay the debt balance to La Salle Bank.  Husband shall also assume and pay the balance of the following debts:

    (r)  Bank of Hawaii P-flex (<u>$10,000.00</u>).

    (s)  Citibank Visa.

    (t)  Sears.

    (u)  NML Insurance Company (Husband's policy).

    (v)  Associates Capitol Bank.

    (w)  Associates Financial Bank.

    (x)  His personal friend.

Each party shall indemnify and hold harmless the other party from any claims made against the non-responsible party.  The above indemnification shall include reasonable attorney's fees and costs incurred in the defense of any such claim.

    12.  <u>Attorney's Fees and Costs</u>.  Each party shall assume and pay the balance of his or her own attorney's fees and costs.

-11-

Property Settlement Payment. In consideration of the fore-going division of property and allocation of responsibility for debts, Wife shall pay to Husband as and for a property settlement payment the sum of TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00).

The first $15,000.00 of this sum shall be paid directly to Husband upon the parties' signing of this Agreement.

The second $10,000.00 of this sum shall be paid to Husband no later than twelve (12) months following the parties' signing of this Agreement in the following manner. Wife, following the parties' signing of this Agreement, shall pay the premiums for Husband's health insurance coverage (see para-graph 8 of this Agreement) for a twelve (12) month period. Similarly, Wife, following the parties' signing of this Agreement, shall pay the premiums for Husband's term life insurance coverage (see paragraph 6 of this Agreement) for a twelve (12) month period. All of the foregoing premium payments shall be a credit against the second $10,000.00 payment and Wife shall then pay the balance of the $10,000.00 in one (1) lump sum at the end of the twelve (12) month period. If, due to financial circumstances, she is unable to pay the lump sum payment then due, Wife shall pay the remaining amount over time, on terms to be agreed upon by the parties, with interest at the statutory rate of ten percent (10%) per annum.

14. Tax Matters.

(a) Tax Returns. The parties shall file joint income tax returns for 1998. Each party shall receive the proportion of any resulting tax refund that his or her 1998 gross income bears to the combined 1998 gross income of both parties. Or, each party shall assume and pay that the proportion of any resulting tax

-12-

liability that his or her 1998 gross income bears to the combined 1998 gross income of both parties.

The parties shall file separate income tax returns for 1999 and all subsequent tax years.

(b) Tax Exemption. Wife shall be entitled to claim SEAN as an exemption on her personal income tax returns for 1999 and thereafter.

(c) Audit or Review. In the event of an audit or review of any of the parties' joint income tax returns, Wife shall be responsible for the audit or review defense. Each party shall then receive that proportion of any resulting tax refund that his or her gross income for the year being audited bears to the combined gross income of both parties for the year being audited. Or, each party shall assume and pay that proportion of any resulting tax assessment(s), interest, or penalty(ies) imposed that his or her gross income for the year being audited bears to the combined gross income of both parties for the year being audited.

(d) Communication of Tax-Related Information. Each party shall take all reasonable steps to immediately and fully inform the other of any future communication from the Internal Revenue Service or any other taxing authority that is addressed to both of them or may involve both of them or may involve the other party. If, as a result of any failure by the other party to so inform him or her, a party is unable to timely challenge an assessment of tax liability, the party who failed to so inform shall be liable to the other for all such assessment and shall indemnify and hold the

-13-

other party harmless from all such additional tax, penalties, or other liabilities. To facilitate the terms of this paragraph, each party shall give the other a mailing address to which any such communication shall be sent and shall, for at least four (4) years, inform the other in writing of any change in such address.

15. <u>Execution of Necessary Documents</u>. Each party shall, at the request of the other, execute, acknowledge, and deliver any documents which may be reasonably necessary to give full effect to this Agreement. In the event that either of the parties refuses or is unable to comply with such request within thirty (30) days following the request, the parties agree that the Chief Clerk of the First Circuit Court shall do all acts and sign all documents on behalf of the failing party necessary to give full force and effect to the provisions of this Agreement. The costs of preparation of any documents necessary to effect transfer of title shall be paid by the party receiving the property.

16. <u>Failure to Perform</u>. If either party shall fail to perform any obligation(s) which he or she has agreed to perform under the provisions of this Agreement and enforcement becomes necessary, the failing party shall be responsible for all attorney's fees and costs incurred by the other party to the extent that such fees and costs were reasonably necessary to enforce performance by the failing party.

17. <u>Release</u>. Except as otherwise secured to Husband or Wife in this Agreement, Husband and Wife do hereby release, relinquish, and waive all rights to administer upon the estate of the other after the death of such other and do hereby release, relinquish, and waive unto such other party, his or her successors, and next of kin or heirs at law, any and all rights or otherwise

-14-

other's estate and agree not to hereafter claim any interest in or raise any claim to the other's property or income.

18. <u>Modification and Waiver</u>.  No modification or waiver of any of the terms of this Agreement shall be valid unless in writing over the signature of each of the parties hereto and executed in the same manner as this Agreement.

IN WITNESS WHEREOF, the parties hereto have hand dated and signed their names below.

DATED:  Honolulu, Hawaii, _March 5, 1999_

_Philip Eugene English_
PHILIP EUGENE ENGLISH
SSN #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

DATED:  Honolulu, Hawaii, _March 5, 1999_

_Corlis Jean Chang_
CORLIS JEAN CHANG
SSN #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

-15-

STATE OF HAWAII                          )
                                         )  SS:
CITY AND COUNTY OF HONOLULU              )

On this _5th_ day of _March_____, 1999, before me personally appeared PHILIP EUGENE ENGLISH, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

_____  L.S.
Notary Public, State of Hawaii
My commission expires: 1/20/2003

STATE OF HAWAII                          )
                                         )  SS:
CITY AND COUNTY OF HONOLULU              )

On this _5th_ day of _March_____, 1999, before me personally appeared CORLIS JEAN CHANG, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed.

_____
Notary Public, State of Hawaii    Edwina S. H. Lee
My commission expires: 01/24/2002

EDWINA S. H. LEE
NOTARY
PUBLIC
★       ★
STATE OF HAWAII

-16-

RENEAU KENNEDY RE PHILIP ENGLISH                    115

| STATE OF HAWAI'I FAMILY COURT FIRST CIRCUIT | NOTICE TO ATTEND KIDS FIRST II | CASE NUMBER FC-D NO. 99-0680 |
|---|---|---|

| PLAINTIFF'S | Attorney's Name, Address and Telephone Number/ |
|---|---|
| Name: Corlis Jean Chang | ☒ Plaintiff Pro Se |
| Address: 1099 Alakea Street, #1800 | |
| Honolulu, HI. 96813 | |
| Telephone : (H) 732-1593 | |
| (W) 547-5600 Staff Use: 3/24/99 | |
| Cellular/Pager: 371-3205  Date Attended: ✍ | |

| DEFENDANT'S | Attorney's Name, Address and Telephone Number/ |
|---|---|
| Name: Philip English | ☐ Defendant Pro Se |
| Address: 4369 Aukai Avenue | Charles T. Kleintop, Esq. |
| Honolulu, HI 96816 | Stirling & Kleintop |
| Telephone: (H) 732-1593 | 20th Floor, Alakea Place |
| (W) 732-1593 Staff Use: | 1100 Alakea Street |
| Cellular/Pager:     Date Attended: _____ | Honolulu, Hawaii 96813 |

CHILDREN:

|  | | (Staff Use Only) |
|---|---|---|
| NAME | DATE OF BIRTH/AGE   LIVING WITH: | Date Attended: |
| Sean Michael Chang English | 11/30/89/ Age 9  ☒Mother ☐Father ☐Other | 3/24/99 ✍ |
| _____ | _____  ☐Mother ☐Father ☐Other | _____ |
| _____ | _____  ☐Mother ☐Father ☐Other | _____ |
| _____ | _____  ☐Mother ☐Father ☐Other | _____ |
| _____ | _____  ☐Mother ☐Father ☐Other | _____ |
| _____ | _____  ☐Mother ☐Father ☐Other | _____ |
| _____ | _____  ☐Mother ☐Father ☐Other | _____ |

Plaintiff, Defendant and all children of the Plaintiff and Defendant, ages 6-17 <u>MUST ATTEND</u> this Program on:

**WEDNESDAY** March 24, 1999 _____

REGISTRATION 4:45 P.M.
PROGRAM 5:00 TO 7:30 P.M.
Jury Pool Lounge, First Floor, Kaahumanu Hale
777 Punchbowl Street, Honolulu, Hawaii

<u>*IMPORTANT*</u>: **READ THE INSTRUCTIONS** on the next page. Both parents, unless excused by a judge, must attend this program before a Divorce Decree can be entered in this case. Failure to attend may cause you to be brought before the Court to explain your non-attendance and may be considered as a factor in custody decisions.

| DATE | CLERK'S SIGNATURE |
|---|---|
| | |

1999 MAR 25 PM 1:29
F. DIANE CLERK

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

RENEAU KENNEDY RE PHILIP ENGLISH

**STIRLING & KLEINTOP**

THOMAS L. STIRLING, JR.
CHARLES T. KLEINTOP

ATTORNEYS AT LAW
1100 ALAKEA PLAZA
20th FLOOR
1100 ALAKEA STREET
HONOLULU, HAWAII 96813

STEVEN L. HARTLEY
DYAN M. MEDEIROS
RENEE M. YOSHIMURA
JEN-L WONG LYMAN

TELEPHONE:
(808) 524-5183
FAX:
(808) 528-0261

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

1999 MAR 31  AM 8: 32

*H. Ching*
H. CHING
CLERK

March 24, 1999

The Honorable Diana L. Warrington
Lead Judge, Domestic Division
Family Court of the First Circuit
777 Punchbowl Street, 2nd Floor
Honolulu, Hawai'i 96813

**HAND DELIVER
(FOR KIDS FIRST)**

Re:  Chang v. English
     FC-D No. 99-0680

Dear Judge Warrington:

I represent Mr. Philip English (Defendant) in the above-entitled action. Mr. English and his wife, Corlis J. Chang, Esq. (Plaintiff Pro Se), have settled all of the issues in their divorce and Ms. Chang has submitted all the uncontested divorce documents to the Court for an uncontested divorce by affidavit.

On March 23, 1999, I received a copy of the Notice to Attend Kids First II which indicated that the parties were to attend the program on March 24, 1999. Unfortunately, Mr. English is presently out of the country and is scheduled to move to the Mainland immediately after his return to Hawaii next month.

Under the circumstances, Mr. English is unable to attend the Kids First program on March 24, 1999 or any other time. Upon information and belief, Ms. Chang and the parties' son will be attending the Kids First program on March 24, 1999.

I would therefore respectfully request that Mr. English be excused from attendance at the Kids First program and that the Divorce Decree, if approved by the Court, be entered in this case. Hearing on the Divorce Decree is now scheduled for April 1, 1999.

Thank you for your consideration.

*allowed*

APPROVED AND SO ...

3/??/99

Respectfully,

CHARLES T. KLEINTOP

CTK:dlo
cc: Mr. English
    Ms. Chang

| FAMILY COURT<br>FIRST CIRCUIT<br>STATE OF HAWAII | SUPPLEMENTAL AFFIDAVIT<br>RE: DIRECT PAYMENT<br>CHILD SUPPORT | CASE NUMBER<br>FC-D NO. 99-0680 |
|---|---|---|

| CORLIS JEAN CHANG<br><br>                                    PLAINTIFF,<br><br>              vs.<br><br>PHILIP EUGENE ENGLISH<br><br>                                    DEFENDANT. | Preparer's Name, Address and Telephone Number<br><br>CHARLES T. KLEINTOP 1320-0<br>DYAN M. MEDEIROS 6776-0<br>1100 Alakea Street, 20th Floor<br>Honolulu, Hawaii 96813<br>Telephone: 524-5183 |
|---|---|

1.    My spouse and I have agreed that I shall pay child support directly to my spouse and **not** through the Child Support Enforcement Agency (CSEA).

2.    Such an arrangement is in the best interest of our child(ren) because:
<u>I am in the process of relocating to the Mainland. Paying Plaintiff directly will ensure she</u>
<u>receives my child support payments in a timely manner to help pay our child's expenses.</u>
<u>I am committed to ensuring the payments are made in a timely manner.</u>

3.    [ ]    I affirm that all prior child support, ordered by the court or administratively, has been paid in a timely fashion.

      [ ]    I have not been previously ordered to pay child support.

4.    Our child(ren) do/does not receive public assistance, welfare, foster care, Social Security or other governmental assistance.

5.    There are no outstanding debts owed to the Department of Human Services or other public assistance agencies by myself or my spouse.

6.    I understand that at any time after the entry of our Divorce Decree, either party may void the direct payment arrangement and apply for services from the Child Support Enforcement Agency (CSEA) to receive payment through the agency.

7.    I further understand that if our child(ren) receive(s) public assistance from the Department of Human Services, foster care payments or Social Security or if either parent applies to the CSEA for services, CSEA may immediately void the direct payment arrangement by sending written notice by regular mail to both parents at their last known addresses as set forth in our Divorce Decree or subsequent child support order.

8.    Based upon the facts set forth herein, I ask this Court to approve direct payments of child support rather than requiring that child support payments be made through the CSEA.

I declare that I understand that my signature under oath before a notary public is my solemn statement that I have read this affidavit and I know and understand the contents and that the statements are true, correct and complete to the best of my knowledge and belief.

SIGNATURE

| SUBSCRIBED AND SWORN TO<br>BEFORE ME ON THIS DATE:<br>4/12/99 | NOTARY PUBLIC'S SIGNATURE<br><br>STATE OF HAWAII | MY COMMISSION<br>EXPIRES:<br>4/16/0_ | |
|---|---|---|---|

dirpay.aff  11/98

RENEAU KENNEDY RE PHILIP ENGLISH                    118

| FAMILY COURT<br>FIRST CIRCUIT<br>STATE OF HAWAII | SUPPLEMENTAL AFFIDAVIT<br>RE: DIRECT PAYMENT<br>CHILD SUPPORT | CASE NUMBER<br>FC-D NO. 99-0680 |
|---|---|---|

| | |
|---|---|
| CORLIS JEAN CHANG<br><br>          PLAINTIFF,<br><br>vs.<br><br>PHILIP EUGENE ENGLISH<br><br>          DEFENDANT. | Preparer's Name, Address and Telephone Number<br>OF COUNSEL:<br>STIRLING & KLEINTOP<br><br>CHARLES T. KLEINTOP  1320-0<br>DYAN M. MEDEIROS  6776-0<br>1100 Alakea Street, 20th Floor<br>Honolulu, Hawaii  96813<br>Telephone:  524-5183 |

1. My spouse and I have agreed that I shall pay child support directly to my spouse and **not** through the Child Support Enforcement Agency (CSEA).

2. Such an arrangement is in the best interest of our child(ren) because:
   Paying Plaintiff directly will ensure she receives my child support payments in a timely manner to help pay our child's expenses. I am committed to ensuring the payments are made in a timely manner.

3. [  ]    I affirm that all prior child support, ordered by the court or administratively, has been paid in a timely fashion.

   [x]    I have not  been previously ordered to pay child support.

4. Our child(ren) do/does not receive  public assistance, welfare, foster care, Social Security or other governmental assistance.

5. There are no outstanding debts owed to the Department of Human Services or other public assistance agencies by myself or my spouse.

6. I understand that at any time after the entry of our Divorce Decree, either party may void the direct payment arrangement and apply for services from the Child Support Enforcement Agency (CSEA) to receive payment through the agency.

7. I further understand that if our child(ren) receive(s)  public assistance from the Department of Human Services, foster care payments or Social Security or if either parent applies to the CSEA for services, CSEA may immediately void the direct payment arrangement by sending written notice by regular mail to both parents at their last known addresses as set forth in our Divorce Decree or subsequent child support order.

8. Based upon the facts set forth herein, I ask this Court to approve direct payments of child support rather than requiring that child support payments be made through the CSEA.

I declare  that I understand that my signature under oath before a notary public is my solemn statement that I have read this affidavit and I know and understand the contents and that the statements are true, correct and complete to the best of my knowledge and belief.

| SIGNATURE | |
|---|---|
| SUBSCRIBED AND SWORN TO<br>BEFORE ME ON THIS DATE:<br><br>4/23/99 | NOTARY PUBLIC'S SIGNATURE<br><br>STATE OF HAWAII |
| MY COMMISSION<br>EXPIRES:<br><br>4/16/02 | FOR COURT USE ONLY |

| FAMILY COURT FIRST CIRCUIT STATE OF HAWAII | SUPPLEMENTAL AFFIDAVIT RE: DIRECT PAYMENT CHILD SUPPORT | CASE NUMBER FC-D NO. 99-0680 |
|---|---|---|

| | |
|---|---|
| CORLIS JEAN CHANG<br><br>PLAINTIFF,<br><br>vs.<br><br>PHILIP EUGENE ENGLISH<br><br>DEFENDANT. | Preparer's Name, Address and Telephone Number Of Counsel:<br>STIRLING & KLEINTOP<br><br>CHARLES T. KLEINTOP  1320-0<br>DYAN M. MEDEIROS  6776-0<br>1100 Alakea Street, 20th Floor<br>Honolulu, Hawaii  96813<br>Telephone:  524-5183 |

1.  My spouse and I have agreed that I shall pay child support directly to my spouse me and not through the Child Support Enforcement Agency (CSEA).

2.  Such an arrangement is in the best interest of our child(ren) because:
Payment to me directly will ensure I receive the child support payments in a timely manner to help pay our child's expenses.  I know Defendant is committed to ensuring the payments are made in a timely manner.  Defendant and I have agreed to this manner of payment.

3.  [  ]    I affirm that all prior child support, ordered by the court or administratively, has been paid in a timely fashion.
    [X]    I have not been previously ordered to pay child support.
           My spouse has

4.  Our child(ren) do/does not receive  public assistance, welfare, foster care, Social Security or other governmental assistance.

5.  There are no outstanding debts owed to the Department of Human Services or other public assistance agencies by myself or my spouse.

6.  I understand that at any time after the entry of our Divorce Decree, either party may void the direct payment arrangement and apply for services from the Child Support Enforcement Agency (CSEA) to receive payment through the agency.

7.  I further understand that if our child(ren) receive(s) public assistance from the Department of Human Services, foster care payments or Social Security or if either parent applies to the CSEA for services, CSEA may immediately void the direct payment arrangement by sending written notice by regular mail to both parents at their last known addresses as set forth in our Divorce Decree or subsequent child support order.

8.  Based upon the facts set forth herein, I ask this Court to approve direct payments of child support rather than requiring that child support payments be made through the CSEA.

I declare that I understand that my signature under oath before a notary public is my solemn statement that I have read this affidavit and I know and understand the contents and that the statements are true, correct and complete to the best of my knowledge and belief.

| SIGNATURE<br>*Corlis* | | | | FILED<br>99 APR 26  PM 3: 26<br>1ST CIRCUIT COURT STATE OF HAWAII<br>B. CHO<br>CLERK |
|---|---|---|---|---|
| SUBSCRIBED AND SWORN TO BEFORE ME ON THIS DATE:<br>*April 26, 1999* | NOTARY PUBLIC'S SIGNATURE<br>*Diane S.H. Lee* | MY COMMISSION EXPIRES:<br>01/24/2002 | | |
| | | FOR COURT USE ONLY | | |

dirpay.aff  11/08

Of Counsel:
STIRLING & KLEINTOP

CHARLES T. KLEINTOP  1320-0
DYAN M. MEDEIROS  6776-0
20th Floor
1100 Alakea Street
Honolulu, Hawaii  96813
Telephone: 524-5183

Attorneys for Defendant

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

1999 APR 29  PM 2: 27

F. OTAKE
CLERK

IN THE FAMILY COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

CORLIS JEAN CHANG,                    )    FC-D No.  99-0680
                                      )
                    Plaintiff,        )    DIVORCE DECREE
                                      )
        vs.                           )
                                      )
PHILIP EUGENE ENGLISH,                )    Hearing:   APR 0 1 1999
                                      )
                    Defendant.        )    Judge:   CHRISTINE E. KURIYAMA
                                      )

<u>DIVORCE DECREE</u>

        This action came on for hearing on _____ APR 0 1 1999 _____

before the Honorable _____ CHRISTINE E. KURIYAMA _____, Judge of the above-entitled

Court.

        Following the hearing and after full consideration of the evidence,

the Court found the material allegations of the complaint for divorce to be

true, Plaintiff to be entitled to a divorce from the bonds of matrimony on

the ground that the marriage is irretrievably broken, and the Court to have

jurisdiction to enter this decree.

        Now, therefore,

        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. A decree of absolute divorce is hereby granted to Plaintiff. The bonds of matrimony between Plaintiff and Defendant are hereby dissolved and the parties hereto are restored to the status of single persons. Either party is permitted to marry from and after the effective date of this decree.

2. This decree is effective after it is signed and filed.

3. There was one (1) child born of the marriage: SEAN MICHAEL ENGLISH, born November 30, 1989.

4. <u>Custody and Visitation</u>. In anticipation of Defendant relocating to and residing on the Mainland, Plaintiff and Defendant shall be awarded joint legal custody of SEAN and Plaintiff be awarded physical custody of SEAN, subject to Defendant's rights of reasonable visitation.

Defendant's rights of reasonable visitation shall include but not be limited to the following:

(a) <u>Correspondence and Telephone Contact</u>. Unlimited correspondence and up to daily telephone contacts at reasonable hours. Reasonable hours shall be determined by SEAN's age and his usual daily activities schedule.

(b) <u>Christmas/New Year Vacation</u>. One-half (1/2) of the Christmas/New Year vacation period, alternating the first and second half. The first half shall always include Christmas Eve and Day. The second half shall always include New Year's Eve and Day. If the calendar doesn't allow for these inclusions a particular year, the parties shall adjust their days to allow for the inclusions while still maintaining an equal division of the vacation. Defendant shall have the first half of the Christmas/ New Year vacation period in 1999.

(c) <u>Spring Break Vacation</u>. The entire spring break vacation in even-numbered years, starting in the year 2000.

-2-

RENEAU KENNEDY RE PHILIP ENGLISH 122

(d) <u>Summer Vacation</u>.  The summer vacation period commencing one (1) week after the end of the school year and continuing until two (2) weeks prior to the start of the school year, or as the parties hereafter shall mutually agree.

(e) <u>Special Accessibility</u>.  If Defendant comes to Honolulu for any reason, he shall give Plaintiff at least two (2) weeks notice that he would like to visit with SEAN.  The visitation shall take into account SEAN's usual school activity schedule, if any.  At a minimum, Defendant's visitation while he is in Honolulu shall be the weekends and one (1) day during the week from afterschool to a reasonable time of return the same day.

(f) <u>No Removal from Country</u>.  Neither party shall temporarily remove SEAN from his or her residence to any jurisdiction outside of the United States of America without first (1) advising the other party at least thirty (30) days in advance of the intended date of such removal, and (2) obtaining a Court order allowing such removal with specified dates of removal and return to the United States of America.

(g) <u>Health Reports</u>.   The parties will share medical and dental reports at appropriate times.  Whoever receives the reports will share the reports with the other party.

(h) <u>Reciprocal Access</u>.  During the periods that SEAN is with Defendant, Plaintiff shall have telephone and correspondence rights similar to Defendant's and Defendant shall cooperate with Plaintiff in facilitating those rights.

As joint legal custodians, the parties shall confer on major decisions affecting SEAN, including but not limited to his elementary and secondary education, his higher education, major medical or dental care

-3-

RENEAU KENNEDY RE PHILIP ENGLISH

required by him, his school and after school activities of note, military service requiring consent of the parties, and marriage requiring consent of the parties. Additionally, each party shall keep the other apprised of SEAN's general health, school progress (i.e. report cards and the like), school activities, afterschool activities, and general whereabouts when SEAN is with him or her. The parties will communicate openly and freely with each other regarding SEAN and those matters which affect his well-being. Each party shall keep the other party informed of his or her residence address and telephone number during SEAN's minority.

Defendant shall pay all of SEAN'S transportation expenses incident to his visitation with SEAN.

All of the foregoing shall be subject to further order of the Court.

5. Other matters covered by this decree are as follows:

(a) Child Support. Defendant shall pay directly to Plaintiff as and for the support, maintenance, and education of SEAN the sum of $370.00 per month. Said sum shall be payable in one (1) monthly installment on the fifth day of each month, commencing on the fifth day of April, 1999.

Child support for SEAN shall continue until he attains the age of 18 years or graduates from or discontinues high school, whichever occurs last.

All of the foregoing shall be subject to further order of the Court.

(b) Medical and Dental Care for SEAN. Plaintiff shall maintain medical and dental insurance coverage for SEAN to the extent and for so long as SEAN is eligible under her medical and dental insurance plans. Any uninsured expenses for medical care, dental care, prescription drugs, and vision care for SEAN shall be

-4-

paid by Plaintiff up to a cumulative total of $300.00 per year. Any uninsured expenses for medical care, dental care, prescription drugs, and vision care for SEAN in excess of the cumulative total of $300.00 per year shall be paid equally by the parties.

All of the foregoing shall be subject to further order of the Court..

(c) <u>Pre-College Private Education Expenses</u>.  As joint legal custodians, should the parties decide to enroll SEAN in a particular pre-college private school, each party shall assume and pay that proportion of SEAN's private education expenses that his or her monthly gross income bears to the combined monthly gross income of both parties. [<u>Mark v. Mark</u>, 9 Haw. App. 184, 828 P.2d 1291 (1992)].  Private education expenses shall include tuition, fees, book expenses, and school lunch expenses.

All of the foregoing shall be subject to further order of the Court.

(d) <u>Post High School, Higher Education Expenses</u>.  As joint legal custodians, the parties, with input from SEAN, shall decide where SEAN obtains his post high school, higher education.  To pay SEAN's post high school, higher education expenses, the parties shall first utilize the trust accounts for SEAN [as identified in paragraph 10(b) of the parties' Agreement Incident to Divorce].  Thereafter, and assuming the parties are still in agreement as to where SEAN shall obtain his post high school, higher education, each party shall assume and pay that proportion of SEAN's post high school, higher education expenses that his or her monthly gross income bears to the combined monthly gross income of both parties.  All of the foregoing presumes that SEAN is pursuing his

-5-

education post high school on a fulltime basis at an accredited college or university, or in a vocational or trade school. If he isn't, none of the foregoing shall apply. The obligations in this paragraph shall continue until SEAN graduates or attains the age of 23 years, whichever occurs first.

Post high school, higher education expenses shall include tuition, fees, book expenses, room and board (assuming SEAN is not living with Plaintiff), transportation, and a reasonable allowance.

All of the foregoing shall be subject to further order of the Court.

(e) <u>Alimony</u>. Neither Defendant nor Plaintiff requests alimony from the other party and there shall be no order for alimony.

(f) <u>Medical and Dental Insurance Coverage for Defendant</u>. If Defendant elects COBRA health insurance coverage through Plaintiff's employer, Plaintiff shall take all necessary steps to ensure that medical and/or dental insurance coverage is made available for Defendant through her employer in accordance with and subject to the provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). Defendant shall then pay any fees, premiums, or payments necessary to secure this medical and/or dental insurance coverage for himself for so long as he is eligible for such coverage.

All of the foregoing shall be subject to further order of the Court.

(g) <u>Incorporation of Agreement Incident to Divorce</u>. The Agreement Incident to Divorce entered into by and between

-6-

the parties on March 5, 1999 is approved by the Court and incorporated herein by reference.

DATED:  Honolulu, Hawaii, _____ APR 29 1999

_____
Judge of the above-entitled Court

APPROVED AS TO FORM AND CONTENT:

_____        March 5, 1999
CORLIS JEAN CHANG                              _____
Plaintiff                                                   Date
SSN #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
Address:      4369 Aukai Avenue
                    Honolulu, Hawaii  96816
Employer's Name and Address:
                    Goodsill, Anderson, Quinn & Stifel
                    1099 Alakea Street, Suite 1800
                    Honolulu, Hawaii  96813


_____        March 5, 1999
PHILIP EUGENE ENGLISH                        _____
Defendant                                                Date
SSN #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
Address:      4369 Aukai Avenue
                    Honolulu, Hawaii  96816

Employer's Name and Address:
                    Self-employed


APPROVED AS TO FORM:

_____        _____
PETER T. KASHIWA                              CHARLES T. KLEINTOP
Attorney for Plaintiff                            DYAN M. MEDEIROS
                                                          Attorneys for Defendant


-7-