# Help Wanted

**Assistant Commissioner.** The NYC Department of Finance's Real Property Division is searching for an assistant commissioner who will be responsible for the operation, planning, and administration of the city's Real Property Assessment Division. The candidate will formulate and develop real property assessment methods based on real estate market changes affecting the taxation of real property and direct the planning and operation of the complex structure that supports the department's real estate assessing function. Requirements are a baccalaureate degree from an accredited college and five years of satisfactory, responsible, full-time paid experience in real estate appraisal, at least eighteen months of which must have been in supervisory, administrative, consultative, managerial, or executive capacity. Technical knowledge and skills in the valuation of real property and the management of field operations is preferable, with knowledge of state and city real property laws, rules, regulations, and policies. City residency is required within ninety days of appointment. Send resumes to New York City Department of Finance, 1 Centre Street, Room 500, New York, NY 10007, Attn: Yvonne-marie Hassan.

**International Volunteer Consultant Opportunities.** Since 1990, Citizens Democracy Corps (CDC), an international economic development nonprofit, has placed business experts in emerging countries worldwide to complete short-term assignments (two to six weeks) with private companies abroad. CDC is currently seeking an experienced property appraisal/valuation professional with ten or more years' industry experience. A strong knowledge of CAMA is required to provide training and consulting services to a private company in Thailand. Please visit http://www.cdc.org. Send resume to Citizen Democracy Corps, Attn: Dean Koulouris, 1400 I Street, NW, Suite 1125, Washington, DC 20005, or email info@cdc.org.

**Property Appraiser II.** The Town of West Hartford seeks candidates to assess and appraise real and personal property. Must have knowledge of real and personal property values throughout West Hartford, estimating and calculating property values, and accounting principles. Candidates must have a college diploma and a minimum of seven years of appraisal/assessment experience. Candidates also must possess a Certified Connecticut Municipal Assessor designation and a valid Connecticut driver's license. Membership in the Connecticut Association of Assessing Officers is required. Salary range: $57,250 - $69,976 plus benefits. Application materials may be obtained at Town of West Hartford, Employee Services Department, 50 S. Main Street, West Hartford, CT 06107; phone: 860/523-3220; www.westhartford.org. Application deadline is September 25, 2002. EOE/MF.

**Senior Property Tax Analyst.** St. Charles, Illinois. Advantax Management Corporation is seeking a senior property tax analyst to work on multistate projects. Duties include completing clients' personal property compliance and analyzing real and personal property tax assessments. Additional duties include personal property reverse audits, real property reviews, and negotiations with state and local assessors. Requirements are a BA or BS degree in a related field and three to five years of property tax consulting experience. Understanding of valuation methodology and analytical, research, organizational, and effective written and oral communication skills are essential. Candidate must have PC literacy, including spreadsheet, word processing, database, and property tax systems (preferred). Please forward resume with salary requirements to Human Resources, Advantax Management Corporation, 250 W. River Drive, St. Charles, IL 60174; email: tearnst@advantax.com.

**Residential Property Manager.** Cobb County, Georgia. Professional-level position for division manager of residential property for large metro county with approximately 200,000 real estate parcels. The qualified candidate must have a comprehensive knowledge of and extensive experience in the field of mass appraisal, management of major reassessment projects, and personnel. Must possess Georgia Department of Revenue certification as an Appraiser IV or obtain upon employment. Salary range: $55,000 - $72,000. Attractive benefits package available with health, dental and vision care insurance, life and long-term disability insurance, retirement plan, deferred compensation plan, and more. Job announcement and employment application available at www.cobbcounty.org. Please submit application to Cobb County Government Recruitment Office, Attn: Aleah Hawks, 100 Cherokee St., Marietta, GA 30090-9679, or call 770/528-2534. Information also available through Mr. P. Hogsed, director/chief appraiser, at 770/528-3100 or phogsed@cobbcounty.org.

September 15, 2002 • 5

EXHIBIT 9

**Magota, Robert**

| | |
|---|---|
| **From:** | English, Philip E. |
| **Sent:** | Thursday, August 15, 2002 4:08 PM |
| **To:** | Kurokawa, Gary |
| **Cc:** | Magota, Robert; Gima, Ann |
| **Subject:** | Extension of Probation |

Gary,

This morning you told me that you would talk to Ann and Bob and get back to me today whether or not the extension of my probation is going forward.  I have not heard back from you today and can only assume that the extension will proceed. As we discussed this morning I do not agree with the extension and believe it to be unwarranted and unjustified.

As I mentioned to you this morning in our meeting I feel the only option left to me is to seek legal counsel as to my alternatives.  I wish that it did not come to this but it seems you have left me with no other option.

Phil English

1


COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP E. ENGLISH, | ) CIVIL NO. CV04-00108 SCM KSC |
| Plaintiff, | ) |
| vs. | ) **VOLUME II** |
| CITY AND COUNTY OF HONOLULU; | ) |
| GARY T. KUROKAWA; | ) |
| ROBERT O. MAGOTA; ANN C. GIMA; | ) |
| and GK APPRAISALS, INC.; | ) |
| JOHN DOES 1-10; JANE DOES 1-10; | ) |
| DOE PARTNERSHIPS; | ) |
| DOE CORPORATIONS 1-10; AND | ) |
| DOE ENTITIES 1-10, | ) |
| Defendants. | ) |

DEPOSITION OF ROBERT L. K. YOSHIMURA

RENEAU KENNEDY, Ed.D.          RE: PHILIP E. ENGLISH

Taken upon written interrogatories for Defendants CITY AND

COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA,

and ANN C. GIMA; on Friday, June 03, 2005 commencing at

12:45 PM; at the offices of CARNAZZO COURT REPORTING COMPANY,

LTD., 888 Mililani Street, Suite 705, Honolulu, Hawaii 96813;

pursuant to Notice.

BEFORE:

KATHERINE Y. CHOO
Notary Public, State of Hawaii

Under the Direction and Control of:
Louis A. Carnazzo, C.S.R. #110

# CASE BIGELOW & LOMBARDI

A LAW CORPORATION

David F. Andrew
Michael L. Biehl
Daniel H. Case
James M. Cribley
Stacey W.E. Foy
Gregory M. Hansen
Frank T. Kanemitsu
Michael L. Lam
Alan K. Lau
Dennis M. Lombardi †

Michael R. Marsh
Roger S. Moseley
Ted N. Pettit, Ph.D.
Scott D. Radovich
Robert F. Schneider
Cathy Lee Sekiguchi
Steven E. Thomas
Eric H. Tsugawa
Gary L. Wixom

PACIFIC GUARDIAN CENTER, MAUKA TOWER
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

TELEPHONE: (808) 547-5400
FACSIMILE: (808) 523-1888
E-mail: info@casebigelow.com
http://www.casebigelow.com

Claire E. Bender
Christopher J. Muzzi
Leila Rothwell Sullivan
Cathy L. Takase
Nancy J. Youngren

Of Counsel:
Steven L. Rinesmith †
Counsel:
Gary S. Kerwood

Bruce C. Bigelow (1946-2001)

† A Law Corporation

April 19, 2003

HAND DELIVERY

Dr. Reneau Kennedy
3001 Diamond Head Road
Honolulu, HI 96815

  Re: Claim of Philip E. English for disability due to retaliation

Dear Dr. Kennedy,

  Enclosed please a selection of documents which I hope addresses your request for some verification of the events occurring at Mr. English's employment since sometime in 2001. You will find that Mr. English received very good performance evaluations and was rapidly promoted until he began to complain about the use of City employees and equipment, by the administrator of his division, in 2001. This complaint was apparently first memorialized in writing on or about February 15, 2002 by e-mail to Robert Magota, Mr. English's supervisor immediately below the administrator whose activities were questioned.

  Almost immediately after the written complaint, Mr. English began to experience problems in the processing of his application for the Appraiser IV position for which he had applied. The very next Evaluation Report, on April 22, 2002, his evaluation was drastically lowered. While Mr. English was promoted to Appraiser IV, his probation was extended, in August of 2002, for reasons which have never been clear. The division administrator (who had been accused of having the outside work done for him on City time) confirmed the extension of probation on August 15, 2002 by e-mail. Both the management and the union rep involved now maintain that there was never an extended probation. You will also note that on August 18, 2002 Mr. English was also evaluated to have an attitude toward work which was "below requirements". In an effort to make some sort of deal with Mr. English, the management agreed to revise this negative evaluation.

  Additionally, since February of 2002 Mr. English has had a whole series of other problems with other staff and the management of the Assessment Division. These problems have continued right up to the present date and are generally enclosed by e-mails to his union reps and by his contemporaneous notes, some of which we have enclosed. On January 14, 2003 Mr. English applied for yet another promotion, but it is

RENEAU KENNEDY RE PHILIP ENGLISH

Dr. Kennedy
April 19, 2003
Page 2

clear that he would not be given consideration for that job, even though he is probably the best qualified.

Eventually Mr. English's daily life at work became so unbearable he felt could not continue with his employment and his outside life fell apart, apparently also as a result of the treatment he was receiving at work. Mr. English then sought medical treatment and was advised by his doctors not to continue to go to work:

Please let me know whether these materials address your needs or whether I can provide any further information.

Thank you very much.

Very truly yours,

Roger S. Moseley

RSM/kmc
Encl.
cc. Phil English

27505\1\325366.1

City and County of Honolulu
Department of Human Resources

## NOTIFICATION OF PERSONNEL ACTION

DEC 26  3 01  '00

**Name:** ENGLISH,PHILIP E

**Dept:** BFS-REAL PROP

**Social Security:** 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

**Alternate Id:**

---

**PERSONNEL ACTIONS:** COMPLETION OF PROBATION

**EFFECTIVE DATE:** 12-01-2000

---

*CHANGES ARE UNDERLINED*

**Dept:** BFS-RP ASSMT          **Begin:** 06-01-2000          **End:**
**Position No.:** DF486
**Appt Type:** <u>PERMANENT</u>
**Class:** 020551  REAL PROPERTY APPRAISER II
**Bargaining Unit:** 13 B          **Schedule/Grade/Step:** SR 18 C
**Percent Fulltime:** 100.00          **Regular:**      2,445.00
                                      **Differentials:**


**Dept:**          **Begin:**          **End:**
**Position No.:**
**Appt Type:**
**Class:**
**Bargaining Unit:**          **Schedule/Grade/Step:**
**Percent Fulltime:**          **Regular:**
                              **Differentials:**


**Dept:**          **Begin:**          **End:**
**Position No.:**
**Appt Type:**
**Class:**
**Bargaining Unit:**          **Schedule/Grade/Step:**
**Percent Fulltime:**          **Regular:**
                              **Differentials:**



R E C E I V E D
DEC 29 2000
C&C DEPARTMENT OF FINANCE
REAL PROPERTY ASSESSMENT BRANCH

I certify that the personnel actions reported above have been audited  and found to
be in compliance with the provisions of the Civil Service and compensation laws and
the rules, regulations, and orders adopted thereunder.

_Sandra H. McFarlane_          11-29-2000
**Director of Human Resources**          **Transaction Date**

**Form CS13**

RENEAU KENNEDY RE PHILIP ENGLISH

City and County of Honolulu
Department of Human Resources

# NOTIFICATION OF PERSONNEL ACTION

Name:  ENGLISH,PHILIP E                          Dept:  BFS-REAL PROP

Social Security:  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                    Alternate Id:

---

**PERSONNEL ACTIONS:**  REALLOCATION-PROBATIONARY - NEW

**EFFECTIVE DATE:**  02-01-2001        PROBATION END DATE:  07-31-2001

---

*CHANGES ARE UNDERLINED*

Dept:  BFS-RP ASSMT              Begin:  06-01-2000        End:  01-31-2001
Position No.:  DF486
Appt Type:  PERMANENT
Class:  020551  REAL PROPERTY APPRAISER II
Bargaining Unit:  13 B            Schedule/Grade/Step:  SR 18 C
Percent Fulltime:  100.00         Regular:     2,445.00
                                  Differentials:


Dept:  BFS-RP ASSMT              Begin:  02-01-2001        End:
Position No.:  DF486
Appt Type:  NEW PROBATION
Class:  020552  REAL PROPERTY APPRAISER III
Bargaining Unit:  13 B            Schedule/Grade/Step:  SR 20 C
Percent Fulltime:  100.00         Regular:     2,643.00
                                  Differentials:


Dept:                            Begin:                   End:
Position No.:
Appt Type:
Class:
Bargaining Unit:                 Schedule/Grade/Step:
Percent Fulltime:                Regular:
                                 Differentials:



RECEIVED
MAR 7 2001
C&C DEPARTMENT OF FINANCE
REAL PROPERTY ASSESSMENT BRANCH

I certify that the personnel actions reported above have been audited  and found to
be in compliance with the provisions of the Civil Service and compensation laws and
the rules, regulations, and orders adopted thereunder.

_____          01-25-2001
for Director of Human Resources    Transaction Date

Form CS13

RENEAU KENNEDY RE PHILIP ENGLISH

CITY AND COUNTY OF HONOLULU
DEPARTMENT OF PERSONNEL

**PROBATIONARY
PERFORMANCE
EVALUATION REPORT**

| DEPARTMENT/DIVISION | | |
|---|---|---|
| DEPARTMENT OF BUDGET AND FISCAL SERVICES | | 3 MON |
| NAME OF EMPLOYEE | RATING PERIOD | |
| ENGLISH, PHILIP E | NEW  02-01-01 to:04-30-01 | |
| POS. NO. | TITLE OF POSITION | |
| DF436 | REAL PROPERTY APPRAISER III | |

## PROBATIONARY PERFORMANCE EVALUATION REPORT

Civil Service Rule 11-2 (b) (2) requires the Appointing Authority to have the performance of each probationary employee evaluated in writing at the end of every three months during the probationary period including any extension thereof. A performance evaluation is not required when an employee is terminated prior to the completion of the three months or prior to the completion of a probationary period.

| PERFORMANCE FACTORS | EXCELLENT | EXCEEDS REQUIREMENTS | MEETS REQUIREMENTS | BELOW REQUIREMENTS |
|---|---|---|---|---|
| 1. QUANTITY OF WORK | | | X | |
| 2. QUALITY OF WORK | | | X | |
| 3. ATTITUDE TOWARD WORK | | | X | |
| 4. RELATIONSHIP WITH PEOPLE | | | X | |
| 5. SUPERVISION OF EMPLOYEES (To be used only in evaluating supervisory and/or administrative personnel) | | | | |

**COMMENTS**
Recognition for superior work; suggestions for improving performance.

During this initial probationary evaluation period, Philip has been in the process of preparing the presentation of appeals to the Board of Review for the Waikiki area condominiums. He is currently assisting in the review and preparation for cases at the Tax Appeal Court. He has a strong background and foundation in the real estate profession and has been able to apply his skills to the assessment area.

He has a good attitude toward his work and works well with his fellow employees and is tactful and courteous in his dealings with the public.

Philip's work meets the minimum requirement of the position and a satisfactory rating is recommended.

(No courses taken during this evaluation period)

**CERTIFICATE OF EMPLOYEE**
This performance evaluation report has been discussed with me.

_____ SIGNATURE   3/29/01 DATE

RECEIVED
APR 5 2001
C&C DEPARTMENT OF FINANCE
REAL PROPERTY ASSESSMENT BRANCH

**CERTIFICATE OF SUPERVISOR**
This report constitutes my best evaluation of this employee based on personal observation and knowledge of the employee's work during the probationary period.

_____ SIGNATURE   REAL PROPERTY APPRAISER VI   3/29/01
                                    TITLE OF POSITION              DATE

**CERTIFICATE OF APPOINTING AUTHORITY OR DESIGNATED REPRESENTATIVE**
I have reviewed the performance evaluation report of this employee, and I am: (check one)
☐ Continuing the probationary status for the established probationary period.
☐ Adjusting the probationary period for _____ month(s). (See CS Rule 3-36 (d) (4))
☐ Extending the probationary period for _____ month(s). (See CS Rule 3-36 (d) (3))
☐ Terminating the probationary appointment.

_____ SIGNATURE   REAL PROPERTY ADMINISTRATOR   4/5/01
                                   TITLE OF POSITION             DATE

FORM NO. 42 (REV. 4/91)   **EMPLOYEE COPY**

RENEAU KENNEDY RE PHILIP ENGLISH                              181

CITY AND COUNTY OF HONOLULU
DEPARTMENT OF HUMAN RESOURCES

**PERFORMANCE EVALUATION REPORT**

| DEPARTMENT DIVISION | |
| --- | --- |
| DEPARTMENT OF BUDGET AND FISCAL SERVICES | |
| NAME OF EMPLOYEE | EVALUATION PERIOD |
| ENGLISH, PHILIP E | 05-01-00  TO 05-31-01 |
| POS. NO.     TITLE OF POSITION | |
| 0F436  REAL PROPERTY APPRAISER III | |

**COMMENTS**

RECOGNITION FOR SUPERIOR WORK; SUGGESTIONS FOR IMPROVING PERFORMANCE

| PERFORMANCE FACTORS | EXCELLENT | EXCEEDS REQUIREMENTS | MEETS REQUIREMENTS | BELOW REQUIREMENTS |
| --- | --- | --- | --- | --- |
| 1. QUANTITY OF WORK | | X | | |
| 2. QUALITY OF WORK | | X | | |
| 3. ATTITUDE TOWARD WORK | | X | | |
| 4. RELATIONSHIP WITH PEOPLE | | X | | |
| 5. SUPERVISION OF EMPLOYEES (To be used only in evaluating supervisory and/or administrative personnel) | | | | |

During this evaluation period, Philip has been promoted from an Appraiser II to an Appraiser III position. He was involved in the review and preparation for a case at the Tax Appeal Court, which has since been settled and is currently in the process of preparing for another two appeals before the Tax Appeal Court. He is also responsible for researching and defending all 2001 appeals before the Board of Review as well as the analysis necessary for the 2002 assessment.

Philip's background and foundation in the real estate profession have been extremely valuable in all the court cases and at the Board of Review. He has displayed a good understanding and insight into the tax laws and has learned the basic office procedures.

He has a good attitude toward his work and is responsible and works well with his fellow employees. He has shown himself to be tactful and courteous in his dealings with the public.

Philip's work exceeds the minimum requirement of the position and a satisfactory rating is recommended.

(Please see attached list of courses taken)

RECEIVED
APR 23 2001
C&C DEPARTMENT OF FINANCE
REAL PROPERTY ASSESSMENT BRANCH

Employee's Performance Rating is:    ☒ Satisfactory    ☐ Substandard

**CERTIFICATE OF EMPLOYEE**

This performance evaluation report has been discussed with me.

_____  4/23/01
SIGNATURE                  DATE

**CERTIFICATE OF SUPERVISOR**

This report constitutes my best evaluation of this employee based on personal observation and knowledge of the employee's work during the evaluation period.

_____  REAL PROPERTY APPRAISER VI  4/23/01
SIGNATURE                  TITLE OF POSITION              DATE

**CERTIFICATE OF APPOINTING AUTHORITY OF DESIGNATED REPRESENTATIVE**

I have reviewed the performance evaluation report of this employee:

_____  REAL PROPERTY ADMINISTRATOR  4/23/01
SIGNATURE                  TITLE OF POSITION             DATE

RENEAU KENNEDY RE PHILIP ENGLISH

182

**English, Philip E.  DF-485**
**Real Property Appraiser III**
**Evaluation Period 06/01/00 thru 05/31/01**

**IAS – Integrated Assessment System**

| | |
|---|---|
| 06/22/00-<br>06/23/00 | Cama Data Entry Session I |
| 08/17/00 | Landisc |
| 08/22/00-<br>08/23/00 | Cost Valuation |
| 09/18/00 | Model Refinement |
| 12/13/00 | Hearing Tracking |

**IAAO**

| | |
|---|---|
| 07/10/00-<br>07/14/00 | Fundamentals of Mass Appraisal |
| 07/18/00 | Preventing Sexual Harassment |
| 07/25/00 | Mandatory Emergency Shelter Mgmt |
| 08/10/00 | Working Drug Free is Our Responsibility |

CITY AND COUNTY OF HONOLULU
DEPARTMENT OF PERSONNEL

| | | |
|---|---|---|
| **PROBATIONARY PERFORMANCE EVALUATION REPORT** | DEPARTMENT OR DIVISION<br>DEPARTMENT OF BUDGET AND FISCAL SERVICES | |
| | NAME OF EMPLOYEE<br>ENGLISH, PHILIP E | RATING PERIOD<br>NEW   05-01-01  TO 07-31-01 |
| | POS. NO.<br>DF436 | TITLE OF POSITION<br>REAL PROPERTY APPRAISER III |

## PROBATIONARY PERFORMANCE EVALUATION REPORT

Civil Service Rule 11-2 (b)(2) requires the Appointing Authority to have the performance of each probationary employee evaluated in writing at the end of every three months during the probationary period including any extension thereof. A performance evaluation is not required when an employee is terminated prior to the completion of the three months or prior to the completion of the probationary period.

**COMMENTS**
Recognition for superior work; suggestions for improving performance.

(PLEASE SEE ATTACHED)

| PERFORMANCE FACTORS | EXCELLENT | EXCEEDS REQUIREMENTS | MEETS REQUIREMENTS | BELOW REQUIREMENTS |
|---|---|---|---|---|
| 1. QUANTITY OF WORK | | X | | |
| 2. QUALITY OF WORK | | X | | |
| 3. ATTITUDE TOWARD WORK | | X | | |
| 4. RELATIONSHIP WITH PEOPLE | | X | | |
| 5. SUPERVISION OF EMPLOYEES (To be used only in evaluating supervisory and/or administrative personnel) | | | | |

R E C E I V E D
JUN 26 2001
C&C DEPARTMENT OF FINANCE
PROPERTY ASSESSMENT BRANCH

**CERTIFICATE OF EMPLOYEE**
This performance evaluation report has been discussed with me.

_Phil English_ SIGNATURE        6/25/01 DATE

**CERTIFICATE OF SUPERVISOR**
This report constitutes my best evaluation of this employee based on personal observation and knowledge of the employee's work during the probationary period.

_____ SIGNATURE        REAL PROPERTY APPRAISER VI TITLE OF POSITION        6/25/01 DATE

**CERTIFICATE OF APPOINTING AUTHORITY OR DESIGNATED REPRESENTATIVE**
I have reviewed the performance evaluation report of this employee, and I am: (check one)
- [X] Granting permanent status as the employee has performed at least satisfactorily during the established probationary period.
- [ ] Adjusting the probationary period for _____ month(s). (See CS Rule 3-36 (e)(4))
- [ ] Extending the probationary period for _____ month(s). (See CS Rule 3-36 (e)(3))
- [ ] Terminating the probationary appointment.

_Gary T. K._ SIGNATURE        REAL PROPERTY ADMINISTRATOR TITLE OF POSITION        6/26/01 DATE

FORM NO. 43 (REV. 4/93)
**EMPLOYEE COPY**

RENEAU KENNEDY RE PHILIP ENGLISH                    184

**English, Philip E.  DF-486**
**Real Property Appraiser III**
**Evaluation Period  05/01/01 thru 07/31/01 (6 months)**

During this performance evaluation period, Philip has been working in an Appraiser III position.  He has continued to be assigned the responsibility for all of the Waikiki area condominiums.  He is involved in the review and preparation for two cases at the Tax Appeal Court.  He has completed researching and defending the majority of his assigned 2001 appeals before the Board of Review and has begun the necessary analysis for the 2002 assessments.

As previously noted in earlier reports, Philip's background and foundation the real estate profession have been extremely valuable.  He has continued to progress in his learning of office procedures and is developing the necessary skills needed to organize the many and varied tasks associated with his position.

He has developed a good working relationship with his fellow employees and has dealt effectively with many taxpayers and appellants.

Philip's work exceeds the minimum requirement of the position and a satisfactory rating is recommended.

**IAS – Integrated Assessment System**
| | |
|---|---|
| 05/22/01 | Calp/Land Pricing |
| 05/29/01 | Income Valuation |
| 06/13/01 | CDU Rating System |
| 06/14/01 | Sales Validation |

**IAAO**
| | |
|---|---|
| 06/26/01 | Instructor Training Workshop |

**English, Philip E.**

| | |
|---|---|
| **From:** | English, Philip E. |
| **Sent:** | Friday, February 15, 2002 2:15 PM |
| **To:** | Magota, Robert |
| **Subject:** | RE: COMPLAINT AGAINST THE ADMINISTRATOR |

Bob,

Chris came to talk to me and I told him that I had made the complaint. I explained it is due to Gary's position and their business relationship outside of the office that they must be very careful to protect Gary and the division. Chris said that when it was put in that light that it made a lot of sense.

I know that it is easy for Chris to say that he understands. It is another question if he can comply. But more importantly I hope that Gary understands. Frankly I have heard other things where Gary has crossed the line but I won't go there because I have no first hand knowledge like I did in this case. But I hope that Gary understands that there is more at stake and what he does reflects on the division. He has greater responsibility to us all.

Thank you Bob for handling this so quickly and thoughtfully. The rest will be up to Chris and Gary.

Thanks

Phil

> -----Original Message-----
> | | |
> |---|---|
> | **From:** | Magota, Robert |
> | **Sent:** | Friday, February 15, 2002 12:00 PM |
> | **To:** | English, Philip E. |
> | **Subject:** | RE: COMPLAINT AGAINST THE ADMINISTRATOR |
>
> Thanks Phil. I will be addressing the problem with both Chris and Gary. Bob.

> -----Original Message-----
> | | |
> |---|---|
> | **From:** | English, Philip E. |
> | **Sent:** | Friday, February 15, 2002 11:24 AM |
> | **To:** | Magota, Robert |
> | **Cc:** | Gima, Ann |
> | **Subject:** | COMPLAINT AGAINST THE ADMINISTRATOR |
>
> BOB,
>
> LAST WEEK I CAME TO YOUR OFFICE TO MAKE A COMPLAINT THAT THE ADMINISTRATOR IS HAVING ONE OF HIS EMPLOYEES WORK FOR HIM ON "OUTSIDE" WORK WHILE ON CITY AND COUNTY TIME. I BROUGHT THIS TO YOUR ATTENTION BECAUSE IT HAS BEEN AN ONGOING SITUATION FOR THE PAST 18 MONTHS OR SO SINCE I HAVE WORKED HERE. IT SEEMS OBVIOUS THAT IT HAS BEEN GOING ON FOR LONGER THAN THAT.
>
> MY COMPLAINT IS THAT IT IS IMPROPER THAT THE ADMINISTRATOR IS HAVING WORK DONE BY CITY EMPLOYEE WHILE ON CITY TIME. I UNDERSTAND THAT WARNINGS HAVE BEEN MADE TO THE EMPLOYEE BY HIS SUPERVISOR AND HE HAS EVEN BEEN ASKED TO BE MORE DISCRETE. BEING MORE DISCRETE IS NOT THE ISSUE AND IT IS NOT THE EMPLOYEE WHO I AM MAKING THE COMPLAINT AGAINST. THE ADMINISTRATOR SHOULD KNOW BETTER.
>
> OTHERS HAVE TOLD ME THAT THEY TOO ARE AWARE OF THE SITUATION BUT ARE HESITANT TO SAY ANYTHING FOR FEAR OF RETRIBUTION. THE POLITICAL NATURE OF THE SITUATION IS TO KEEP YOUR MOUTH SHUT AND DO YOUR JOB AND NOT MAKE WAVES.
>
> AS I MENTIONED TO YOU WHEN WE MET THAT I DO NOT BELIEVE THAT WE DO ONE ANOTHER IN FAVORS BY NOT BEING HONEST AND KEEPING EACH OTHER ACCOUNTABLE.
>
> MY HOPE IS THAT THE ADMINISTRATOR WILL UNDERSTAND THE LINES BETWEEN RIGHT AND WRONG AND THAT IF HE USES AN EMPLOYEE FROM THIS OFFICE FOR OUTSIDE WORK THAT HE MAKE IT CLEAR THAT THE EMPLOYEE MUST DO THE WORK OUTSIDE OF WORKING HOURS AND THAT ALL OF THEIR COMMUNICATIONS REGARDING OUTSIDE WORK WOULD BE DONE OUTSIDE OF WORKING HOURS.
>
> THIS GIVES ME NO PLEASURE TO MAKE THIS COMPLAINT.
>
> 1

PHIL ENGLISH

**English, Philip E.**

| | |
|---|---|
| **From:** | English, Philip E. |
| **Sent:** | Thursday, February 21, 2002 7:43 AM |
| **To:** | Magota, Robert |
| **Cc:** | Gima, Ann |
| **Subject:** | Advancement to Appraiser IV |

Bob,

Just a follow up on our conversation of a couple of weeks ago. Is it possible to have Sue follow up with Violet Lee on the paper work for the advancement to the Appraiser IV position? I think that it is worthy at this point to chronicle some of the facts related to this.

Last August it was my understanding that paper work had been submitted so that myself and Will would be advanced to the Appraiser IV positions. It was my understanding that the positions were already budgeted for and therefore no other approvals were needed.

In October I began to follow up with you even as often as weekly. I was told that the "paper work" was missing.

By December I was told that new all positions were frozen and it was unclear if that included positions that had previously been budgeted for.

In late January or early February I was told that the positions had been "re-approved" or that they were no longer frozen.

Two weeks ago I was told that the "paper work" was missing (again). Another two weeks have passed and that is why I am once again following up.

I know that you are busy and have many other very important things to be concerned with. This is very important to me and I am willing to do whatever it takes to actually see things actually get done.

Please let me know if there is anything that I can do and I will do it.

Thanks,

Phil

1

**English, Philip E.**

| | |
|---|---|
| **From:** | English, Philip E. |
| **Sent:** | Thursday, February 21, 2002 10:30 AM |
| **To:** | Gima, Ann |
| **Cc:** | Magota, Robert; Kurokawa, Gary |
| **Subject:** | RE: BOR March 20 |

Ann,

I have had no time to prepare for Board.  I have been spending my time organizing and checking appeal forms.  Haven't done any appraisal work towards appeals.  Just thought you should know how we have been told to use our time.

It seems to be starting again.  We are running around like chickens with our heads cut off.... again.

Let me be more specific:

- I am just completing the organization of the appeals to determine whether I have all of the appeal forms or if I have forms that are not in the system.
- I may need to follow up on more of the declarations
- I need to participate in determination of what buildings are hotels or not
- I need to write letters in response to questions/complaints
- Still answering or returning phone calls related to classification issue

I have approximately 850 appeals.  These include Waikiki Shore, The Imperial Hawaii Resort, and several other entire projects.  Also I have a Tax Appeal Court trial coming up in April which I will need to prepare for.

All of this needs to be done prior to reviewing models that need some adjustments and starting to attempt some sort of verification/validation of sales data which is essential in modeling.  There are nearly 20,000 condos in a very complex specialized market and the model needs to be looked at more closely.

I am not complaining about having work.  But it is clear there is more work than can be realistically done.  What I am asking for is some direction as to priority.  I have my own ideas what is a priority but I do not want to conflict with the offices priorities.

I also believe there remains a false sense of what the job is and what it will take to get it done.  Just doing the math on how long it would take to verify and validate the volume of sales that occur in the Waikiki area you can see that this process alone will take many, many man hours.

I often find myself getting into trouble because I am doing the things that "I" think are of greatest urgency and I also get extremely frustrated because I am asked to do many things that are of a priority to someone else (or that are not appraiser related functions; that is they are more clerical in nature).

As an ethical matter I feel responsible to say that something is going to suffer because there are not enough hours in the year for me to accomplish everything that "needs" to be done as well as all of the other things that we will be asked to do as seems the way here.  So I am going on notice to say that I am looking for direction and to also say that as things stand all that needs to be done will not get done.

I know that the office is short handed and there are others that are also over worked.  I am not sure what, if anything, is being done to remedy the situation or even if administration even has a realistic view of the tasks at hand and what it will take to get the job done adequately.

Let me know what you thoughts are, what can be done, and what I should do to prioritize my work.

Thank,

Phil

---

| | |
|---|---|
| ——Original Message—— | |
| **From:** | Gima, Ann |
| **Sent:** | Tuesday, February 19, 2002 8:14 AM |
| **To:** | BFS/RPA Group3 |
| **Subject:** | BOR March 20 |

I've had limited response regarding the March 20 hearing date.  Seems no one will have enough cases prepared  to take the entire day so let's combine everyone's

1

CITY AND COUNTY OF HONOLULU
DEPARTMENT OF HUMAN RESOURCES

## NOTIFICATION OF CLASSIFICATION ACTION

Date: March 6, 2002

Department: Budget & Fiscal Services

| | |
|---|---|
| Classification Action: | Reallocation |
| Position Number: | DF 485 & DF 486 |
| Incumbent: | Wilfred Martin; Philip E. English |
| From: | Real Property Appraiser III, SR 20 (BU 13-Included) |
| To: | Real Property Appraiser IV, SR 22 (BU 13-Included) |
| Effective: | March 1, 2002 |

Please let our Classification and Pay Division know by March 18, 2002, if you would like to meet with us in an administrative review to discuss this matter further. Such a meeting would provide an opportunity for us to explain the basis of our decision in more detail. If, however, you wish to appeal this action, the petition therefore must be filed with the Civil Service Commission, in writing, within twenty (20) calendar days after receipt of this notice. For your guidance, the Commission's Rules of Practice and Procedure, and our <u>Personnel Manual (Policies and Procedures)</u>, detail the procedures and necessary forms for filing appeals against classification actions.

for Director of Human Resources

cc:  EPS (Records)
     BFS (Budget Div)
     Incumbents



RECEIVED
MAR 1 1 2002
C&C DEPARTMENT OF FINANCE
REAL PROPERTY ASSESSMENT BRANCH

FORM CS-5SA (REV. 1/93).

**INSTRUCTIONS:**
1. Complete every item; if not applicable, so indicate. (See CS Circular No. 1150 for reference)
2. Be accurate. This is an official document upon which classification determinations will be based. In addition, it may be utilized for other personnel-related processes.

1. Position No. DF-486

**DEPARTMENT OF PERSONNEL**
City and County of Honolulu

**POSITION DESCRIPTION**

2. Present Class & Pay Range _____ REAL PROPERTY APPRAISER III, SR-20

3. Department _____ BUDGET & FISCAL SERVICES

   Division _____ REAL PROPERTY ASSESSMENT DIVISION

   Section _____

   Unit _____ BU-13

6. Action Requested:
   ☐ Initial Allocation
   ☒ Reallocation
   ☐ No Change
      (Revised Description Only)

4. Physical Location _____ 842 BETHEL STREET 2ND FLOOR

5. Incumbent _____ PHILIP E. ENGLISH

| 7. Description of major duties and responsibilities currently assigned or delegated to the position. List only those duties which are part of the regular work of the position throughout the year. List the duties in order of importance or frequency and combine related details. In the column at the right opposite each description of a duty or group of duties, enter the approximate percentage of time devoted to that work. | Percentage of time |
|---|---|

(PLEASE SEE ATTACHED)

(Continue on reverse side)

**FOR DEPARTMENT OF PERSONNEL USE ONLY**

Allocation: Class _____ Real Property Appraiser IV _____ Pay Range SR-22 _____ See Report _____

   (From _____ Real Property Appraiser III _____ )

   Approved On _12/02/94_ By _SEE MASTER POSITION DESCRIPTION ON FILE_ Effective Date _3/1/02_
                              Director of Personnel

BU _____ Incl. _____ Excl. _____ FLSA: C _____

RENEAU KENNEDY RE PHILIP ENGLISH

191

City and County of Honolulu
Department of Human Resources

# NOTIFICATION OF PERSONNEL ACTION

Name:  ENGLISH,PHILIP E                          Dept:  BFS-REAL PROP

Social Security:  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                     Alternate Id:

---

PERSONNEL ACTIONS:  REALLOCATION-PROBATIONARY - NEW

EFFECTIVE DATE:  03-01-2002          PROBATION END DATE:  08-31-2002

---

*CHANGES ARE UNDERLINED*

Dept:  BFS-RP ASSMT                 Begin:   07-02-2001          End:   02-28-2002
Position No.: DF486
Appt Type:  PERMANENT
Class:  020552  REAL PROPERTY APPRAISER III
Bargaining Unit:  13 B                Schedule/Grade/Step:   SR 20 C
Percent Fulltime:  100.00             Regular:        2,749.00
                                      Differentials:

Dept:  BFS-RP ASSMT                 Begin:   03-01-2002          End:
Position No.: DF486
Appt Type:  NEW PROBATION
Class:  020553  REAL PROPERTY APPRAISER IV
Bargaining Unit:  13 B                Schedule/Grade/Step:   SR 22 C
Percent Fulltime:  100.00             Regular:        2,973.00
                                      Differentials:

Dept:                               Begin:                       End:
Position No.:
Appt Type:
Class:
Bargaining Unit:                     Schedule/Grade/Step:
Percent Fulltime:                    Regular:
                                     Differentials:



I certify that the personnel actions reported above have been audited  and found to
be in compliance with the provisions of the Civil Service and compensation laws and
the rules, regulations, and orders adopted thereunder.

Cheryl K. Okuma-Sepe                                03-11-2002
Director of Human Resources                         Transaction Date

Form CS13

RENEAU KENNEDY RE PHILIP ENGLISH                                    192

| | DEPT / DIVISION |
|---|---|
| CITY AND COUNTY OF HONOLULU | DEPARTMENT OF BUDGET AND FISCAL SERVICES |
| DEPARTMENT OF HUMAN RESOURCES | NAME OF EMPLOYEE  EVALUATION PERIOD |
| **PERFORMANCE** | ENGLISH, PHILIP E |
| **EVALUATION REPORT** | 06-01-01   T005-31-02 |
| | POS. NO.  TITLE OF POSITION |
| | DF486 REAL PROPERTY APPRAISER III |

**COMMENTS**
RECOGNITION FOR SUPERIOR WORK: SUGGESTIONS FOR IMPROVING PERFORMANCE

| PERFORMANCE FACTORS | EXCELLENT | EXCEEDS REQUIREMENTS | MEETS REQUIREMENTS | BELOW REQUIREMENTS | |
|---|---|---|---|---|---|
| | | | | | (PLEASE SEE ATTACHED) |
| 1. QUANTITY OF WORK | | | X | | |
| 2. QUALITY OF WORK | | | X | | |
| 3. ATTITUDE TOWARD WORK | | | X | | |
| 4. RELATIONSHIP WITH PEOPLE | | | X | | |
| 5. SUPERVISION OF EMPLOYEES (To be used only in evaluating supervisory and/or administrative personnel) | | | | | |

Employee's Performance Rating is:  ☒ Satisfactory   ☐ Substandard

**CERTIFICATE OF EMPLOYEE**
This performance evaluation report has been discussed with me.

_____   4/12/02
SIGNATURE    DATE

**CERTIFICATE OF SUPERVISOR**
This report constitutes my best evaluation of this employee based on personal observation and knowledge of the employee's work during the evaluation period.

_____   REAL PROPERTY APPRAISER VI   4/12/02
SIGNATURE    TITLE OF POSITION    DATE

**CERTIFICATE OF APPOINTING AUTHORITY OF DESIGNATED REPRESENTATIVE**
I have reviewed the performance evaluation report of this employee:

_____   REAL PROPERTY ADMINISTRATOR   4/22/02
SIGNATURE    TITLE OF POSITION    DATE

FORM 44 REV. 9/00    DEPARTMENT COPY    (SEE REVERSE SIDE OF LAST COPY FOR INSTRUCTIONS)

**English, Philip E.  DF-486**
**Real Property Appraiser III**
**Evaluation Period 06/01/01-05/31/02**

During this performance evaluation period, Philip has been working in an Appraiser III position and has recently been reallocated to the Appraiser IV position commensurate with his assigned duties.  He has continued to be assigned the responsibility for all of the Waikiki area condominiums.  He is involved in the review and preparation for a case at the Tax Appeal Court.  He has completed the analysis for the 2002 assessments.  He currently has approximately 866 individual appeals to resolve.

As previously noted in earlier reports, Philip's background and foundation in the real estate profession have been valuable especially in preparation for court.  While he has continued to progress in his learning of office procedures, he seems to be having some difficulties in organizing and prioritizing the many and varied tasks associated with his position.  He often disagrees with established office work processes and has voiced his opinion as to how he believes things may better be accomplished and resists completing tasks in the prescribed manner.  While his opinions and input are appreciated and noted, he needs to appreciate that there are constraints we need to work within and that focusing his energies on accomplishing his assigned duties within these constraints is a more productive pursuit.

He gets along with his fellow employees and is polite in his dealings with taxpayers and appellants.

Philip's work meets the minimum requirement of the position, and a satisfactory rating is recommended.

**Other Personnel Training Courses**
09/05/01        Mandatory Sexual Harassment Policy

**IAS – Integrated Assessment System**
05/22/01        Calp/Land Pricing
05/29/01        IAS Income Valuation Overview
06/13/01        CDU Rating System
06/14/01        IAS Selected Sales Validation

**IAAO**
12/11/01-       Uniform Standards of Practice Professional Ethics Class Information
12/13/01

English, Philip E. DF-486
Real Property Appraiser III
Evaluation Period 06/01/01-05/31/02

**Response to comments**

Work "Exceeds Requirements"

The evaluation period is the one-year period beginning June 2001 through May 2002. During the year under evaluation I have been performing tasks over and above the Appraiser III level. Ann Gima my supervisor advised me to not continue to perform the tasks outside of my working class. Robert Magota the Assessor also acknowledged that I was working beyond my class.

It was due to this fact that effort was made for me to be reallocated to the Appraiser IV position. Therefore, I believe that it would be appropriate that the evaluation state that I have been working in a manner that "exceeds requirements".

"Resists Completing Assignments in the Prescribed Manner"

The second paragraph of the narrative begins by stating that my "background and foundation in the real estate profession have been valuable". It goes on to state that I am continuing to learn office procedures, having difficulty organizing and prioritizing tasks associated with the position, and resists completing tasks in the prescribed manner. It also states that I disagree with established office work processes and have voiced my opinion.

None of these have been brought to my attention by my supervisor. If they had been I would have an opportunity to make the appropriate adjustments. I feel disappointed that it is being written in a performance review without having the opportunity to find out about it sooner.

In fact the opposite has been the case. I have written e-mails requesting guidance on procedures and have often times been caught between efforts of trying to prepare for trial as well as carrying out other duties. I have yet to receive a response from those e-mails requesting guidance.

"Focus Energies on Accomplishing Assigned Duties"

One example of lack of guidance was while preparing for trial. An expert report was required by the court to be submitted by a certain date. At the same time I was responsible for "declaration" forms sent out to nearly 2,000 taxpayers. I was working long hours to accomplish both of these goals the best that I could.

I was called in to a meeting with Gary Kurokawa whereby Gary advised me that I was taking too much initiative and that I needed to work within the boundaries of my work class. This meant that I could not be an expert witness at trial and that I would not be

able to complete the required expert report. I asked Gary who would do it and he told me not to worry about it. The deadline was only a couple of weeks away. I did as I was told and stopped working on it.

Another week went by before Gary realized and was urged on by corporation counsel that a report had to be done. There was no one else who could do it. At this point it was determined that I should be reallocated to an Appraiser IV and that I would be given authorization to work over time so that I could complete the report.

I was ready and willing to do whatever job was required of me to do. But it was the lack of foresight, insight, and leadership on behalf of management that caused great confusion. I feel that it is inappropriate to state that I have lack of focus when this may be more of a management problem.

"Has Voiced His Opinions"

From the first day that I worked at this office it has been stated by the assessment administrator, and the assessor, that there is an open door policy to come into their offices at any time and to voice our opinions and views. This would be a positive policy in any office whereby management and employees have open communication.

It is known by the administrator, the assessor, and individuals within the office, that I have extensive appraisal experience and management experience. I have more management experience than the administrator, the assessor, and any of the supervisors (with the exception of Mike Okamoto).

I was interviewed for the administrator position, the assessor position, and to put it into one of the interviewers for the recent supervisor opening (Appraiser VI) that not one of the other applicants was even close in the interview.

During my interview for the administrator position the director impressed upon me that the office needs radical changes. During my interview for the assessor position Gary Kurokawa stated that there were exciting changes coming and that it would be an exciting time to be working at this office. Bob Magota stated to me that the office was looking for "outside" appraisers to bring in fresh new blood with market experience.

It is evident that there are serious problems in this office in terms of "established" office practices. I hoped to be part of positive change in this office. I believed that new ideas and comments were encouraged. I feel a great failure that I have not been able to be a more positive influence on this office.

I request that the performance standard be changed to "EXCEEDS REQUIREMENTS" and that the negative comments be removed from the record.

Respectfully,

Phil English

CITY AND COUNTY OF HONOLULU
DEPARTMENT OF CIVIL SERVICE

**PROBATIONARY
PERFORMANCE
EVALUATION REPORT**

| DEPARTMENT/DIVISION | | |
|---|---|---|
| DEPARTMENT OF BUDGET AND FISCAL SERVICES | | 1 MONTHS |
| NAME OF EMPLOYEE | RATING PERIOD | |
| ENGLISH PHILIP E | NEW   03/01/02 | TO: |
| POS. NO.   TITLE OF POSITION | | |
| DP-486   REAL PROPERTY APPRAISER IV | | |

## PROBATIONARY PERFORMANCE EVALUATION REPORT

Civil Service Rule 6.1(a) requires the Appointing Authority to have the performance of each probationary employee evaluated in writing at the end of every three months during the probationary period including any extension thereof. A performance evaluation is not required when an employee is terminated prior to the completion of the three months or prior to the completion of the probationary period.
Civil Service Rule 6.3(a) mandates all performance evaluation reports of probationary employees, including the three month evaluation(s), be transmitted to the Department of Civil Service for filing.

**COMMENTS**
Recognition for superior work; suggestions for improving performance.

| PERFORMANCE FACTORS | EXCELLENT | EXCEEDS REQUIREMENTS | MEETS REQUIREMENTS | BELOW REQUIREMENTS |
|---|---|---|---|---|
| 1.   QUANTITY OF WORK | | | X | |
| 2.   QUALITY OF WORK | | | X | |
| 3.   ATTITUDE TOWARD WORK | | | X | |
| 4.   RELATIONSHIP WITH PEOPLE | | | X | |
| 5.   SUPERVISION OF EMPLOYEES (To be used only in evaluating supervisory and/or administrative personnel) | | | | |

During this probationary performance evaluation period as an Appraiser IV, Phil has continued to be assigned the responsibility for the Waikiki area condominiums. At present, he has approximately 866 individual appeals to process to resolution. With a caseload of this size, he will need to manage his time well in order to meet deadlines and perform all the required duties of the Appraiser IV position.

As previously noted in earlier reports, Philip's background and foundation in the real estate profession have been valuable especially in his past assistance in preparation for court. He will benefit from review and familiarization of the IAS/CAMA system and materials and other instructional handouts.

He gets along with his fellow employees and is polite in his dealings with taxpayers and appellants.

Philip's work meets the minimum requirement of the position and a satisfactory rating is recommended.

(Please see attached list of courses taken)

RECEIVED
MAY 16 2002
C&C DEPARTMENT OF FINANCE
REAL PROPERTY ASSESSMENT BRANCH

**CERTIFICATE OF EMPLOYEE**
This performance evaluation report has been discussed with me.

_____    5/13/02
SIGNATURE                          DATE

**CERTIFICATE OF SUPERVISOR**
This report constitutes my best evaluation of this employee based on personal observation and knowledge of the employee's work during the probationary period.

_____    REAL PROPERTY APPRAISER VI    5/13/02
SIGNATURE                          TITLE OF POSITION                DATE

**CERTIFICATE OF APPOINTING AUTHORITY OR DESIGNATED REPRESENTATIVE**
I have reviewed the performance evaluation report of this employee, and I am: (check one)
☑ Continuing the probationary status for the established probationary period.
☐ Adjusting the probationary period for _____ month(s). (See CS Rule 5.3C)
☐ Extending the probationary period for _____ month(s). (See CS Rules 5.3A & B)
☐ Terminating the probationary appointment.

_____    REAL PROPERTY ADMINISTRATOR    5/14/02
SIGNATURE                          TITLE OF POSITION                DATE

FORM NO. 42 (REV. 1/86)    **EMPLOYEE COPY**

English, Philip E.  DF-486
Real Property Appraiser IV
Evaluation Period 03/01/02-05/31/02
Three Months Evaluation

**Other Personnel Training Courses**
09/05/01      Mandatory Sexual Harassment Policy

**IAS – Integrated Assessment System**
05/22/01      Calp/Land Pricing
05/29/01      IAS Income Valuation Overview
06/13/01      CDU Rating System
06/14/01      IAS Selected Sales Validation

**IAAO**
12/11/01-     Uniform Standards of Practice Professional
12/13/01      Ethics Class Information

City and County of Honolulu
Department of Human Resources

# NOTIFICATION OF PERSONNEL ACTION

Name: ENGLISH, PHILIP E                    Dept: BFS-REAL PROP

Social Security: 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               Alternate Id:

---

**PERSONNEL ACTIONS:** DATA CHANGE-NEGOTIATED STEP READJ (SHRED)

**EFFECTIVE DATE:** 06-01-2002          PROBATION END DATE: 08-31-2002

---

*CHANGES ARE UNDERLINED*

Dept: BFS-RP ASSMT              Begin: 03-01-2002         End: 05-31-2002
Position No.: DF486
Appt Type: NEW PROBATION
Class: 020553 REAL PROPERTY APPRAISER IV
Bargaining Unit: 13 B              Schedule/Grade/Step: SR 22 C
Percent Fulltime: 100.00          Regular: 2,973.00
                                  Differentials:


Dept: BFS-RP ASSMT              Begin: 06-01-2002         End:
Position No.: DF486
Appt Type: NEW PROBATION
Class: 020553 REAL PROPERTY APPRAISER IV
Bargaining Unit: 13 B              Schedule/Grade/Step: SR 22 D
Percent Fulltime: 100.00          Regular: 3,093.00
                                  Differentials:


Dept:                          Begin:                    End:
Position No.:
Appt Type:
Class:
Bargaining Unit:                  Schedule/Grade/Step:
Percent Fulltime:                 Regular:
                                  Differentials:



I certify that the personnel actions reported above have been audited and found to
be in compliance with the provisions of the Civil Service and compensation laws and
the rules, regulations, and orders adopted thereunder.

_Cheryl K. Okuma-Sepe_                     05-27-2002
Director of Human Resources                Transaction Date

Form CS13

RENEAU KENNEDY RE PHILIP ENGLISH                    199

**English, Philip E.**

**From:** Ishiguro, Dwight
**Sent:** Tuesday, May 28, 2002 9:12 AM
**To:** English, Philip E.
**Subject:** RE:

Phil:
Your are right that Gary needs to be more careful on how he does things. It could get them into a lot of trouble. Bob is a funny kind of guy. I've learned through the years that he is a bit flaky. Sometimes he does things seemingly with no thought given to the situation. Maybe talking to Chris might help. If anything comes down, he will be the one screwed. Evidence by Bob's determination that Chris is the one responsible. Talk to him. He may want to give it some thought. If shit happens, who gets blamed? They blaming him now...right?

-----Original Message-----
**From:** English, Phillip E.
**Sent:** Tuesday, May 28, 2002 8:56 AM
**To:** Ishiguro, Dwight
**Subject:** RE:

Dwight,

Thanks for your advice. As always I know that I can count on you for sound advice. I realize that Bob and Gary and even Ann to some degree are there by default and I know that they are trying hard to do the best they can under very difficult circumstances. I believe I have tried to offer constructive advice and even criticism in the past but it has fallen on deaf ears. But they are in charge and they have the responsibility, not me. So it is up to them.

When it comes to the issue of Chris doing work, he has been told and he is making an effort. It is wrong and bad that Chris is doing outside work while at the office. He shouldn't do that. But what disturbs me most of all is that Chris is doing outside work for GK Appraisals which is Gary's (the administrator's) personal appraisal firm. This is the real serious part of the issue. The veiled logic is that he is doing work for Dave Matsunami but the truth is that Dave is doing work for Gary and that Chris is doing work for Gary!

Furthermore, it is upsetting that when I mentioned it to Ann that she pretended that she knew nothing of it. Dwight you sat across from Chris and you know as well as I do that he was spending many hours on certain days doing outside work. How could Ann not know? I believe she did not want to acknowledge it to me. In fact I heard later that she did speak to Bob about it.

But even more, when I went to Bob he missed the point. They all point at Chris and say he is a bad guy and shouldn't be doing that! But no one, not one person (save you) has suggested that Gary has any responsibility in this. Gary carries the greatest responsibility because he is the one in authority! Yet when I pointed this out directly to Bob, he then said that it was just my word that it happened and it can not be relied on.

Just show you know the facts, I was been standing at Chris' desk when Gary called and asked Chris to complete something right then because the client needed it. Chris even acknowledged after the phone conversation that it was Gary and that he had to do something right away for a client. And he worked the rest of the afternoon and delivered it that afternoon (per Chris).

I only mention this much detail because it bothers me a great deal that the people in charge seem to push it under the rug or deflect responsibility to Chris. Gary is the responsible party and he has requested that Chris complete assignments while on C&C time. That is a fact.

Now I know that I have only worked here for two years. But who knows how long this has been going on. I suspect since Dave left this office. Maybe even while Dave worked here too. I do not know. I am sure others do know but at this office no one seems to want to come forward.

I have come forward and now I have been subject to scrutiny and complaints against me. I have always had reviews whereby my rating "exceeded minimum requirements". This time my review stated that I only meet requirements but even more I had a one page attachment written by Ann that stated that I give "my onion" too much. This looks and sounds bad. There is no doubt that I have voiced my opinion and I have been told by many who work here that it is a futile effort. But it was only after my complaint about Gary (not Chris) that I received such a review. This is of concern to me.

What is even worse is that they do not recognize that I could have chosen another direction. I could have gone to the Chuck Tato of the ethics board who is an acquaintance. I could have gone to the prosecutors office. I could have gone to the media. I didn't want to do any of those things primarily because I wanted to protect the division.

I actually spent many hours and days praying about this. This was clearly wrong and I could see it happening right

1

before me. What should I do,   seemed to me that the right thing to do was,   ing to the attention of my supervisor and then if no response was to bring to the attention of the assessor. But I never thought or believed that I would get the response that I got from them. Basically denial of the main issue and that is that the administrator was having an employee do work for his personal company while on C&C time.

I have done what I believe was the right thing to do and have no intentions of taking it further. I even expected to receive some kind of backlash for coming forward and saying something when no one else would. This apparently has come to pass.

Now I am being scrutinized. Prior to this Bob encouraged me to apply for the supervisor positions. After coming forward he said that if I keep my nose clean, maybe in 3 to 5 years I might have a chance to become a supervisor. He even later dressed me down in front of group 3 saying that I am an appraiser with only the fundamentals in R.E. appraising and that I am having a difficult time making the transition from the private sector to government work.

The truth is that I am the only appraiser in the office to have obtained a professional designation with the Appraisal Institute. I have as much real estate appraisal experience as anyone in the office and have more supervisory experience than both Gary and Bob (I have been a supervisor with major lending institutions or an owner of an appraisal firm since 1986) let alone Ann or any other supervisor candidate. Those are simple facts. The truth is that I wish that I could be of more assistance to them and be of help to them and assistance to the division as a whole. But if they do not see that they need help and even more they do not need my help, there is not much that I can do.

Please excuse my whining a bit. I feel better now and you can send the bill. Seriously, thanks for listening. As it is now I may have a chance to move out of this division to the Kona office. I am not sure if that will happen or not. In the meantime I will do my job, keep learning whatever I can, and make every effort to comply with the wishes of management.

Thanks again for listening. Hope you are feeling better.

Phil

-----Original Message-----
**From:** Ishiguro, Dwight
**Sent:** Tuesday, May 28, 2002 8:09 AM
**To:** English, Philip E.
**Subject:** RE:

Phil:
Just got back to work. I was out since the 15th. I went to the general assembly from the 15th thru the 17th. On Monday I went to see a Dr. because I couldn't clear my chest out. I ended up staying home till today. Sorry I could respond to your questions till now. I think the letter was to get you to attend the Genera Assembly at Waikaloa. We were trying to fill the delegate positions. Anyhoo, maybe next time.

Our Oahu Island Division (OID) meetings are held on the fourth Wednesday of each month. This is the important meeting for all delegates as this is where information and feedback is gathered and distributed. This is where the work is done for our unit. You may bring Sean if he is willing to come. But then it will take away time for you both. He may find it boring too.

I surprised to hear that Ann is taking the kind of stand she is. I think Chris' been doing work outside of his duties and Bob should at least talk to Gary about it. Contrary to popular opinion, using C & C equipment is not ok. Even if you are doing it during your lunch hour. Your lunch hour is your own time but the equipment is not. Gary, Bob and Ann can get into trouble if this is brought to light. Given the recent items in the news they should be more discrete. Chris should be told to do the work at home...period. Bob is right that one complaint is not going to do too much. BUT, he needs to follow up and check it out!

I'm not sure what is meant by your being not up to par on your work. Have you been coming in late? As far as responsibilities, the supervisor should have a schedule of all the BOR dates their section has. It should be up to them to check with the appraiser on the appeals. Usually we go over appeals one or two days before the hearing. I'm not sure what they mean by "its the appraisers responsibility."

Keep track of the events that occur as they occur. Date, time, subject matter etc. If this continues to happen we may have to file a formal complaint. It is really shocking to me that these things are happening. We need to be careful and start documenting events. Try to be punctual or if not at least call to notify Ann of your situation. Sometimes it may not be convenient but we do need to follow procedures. I think you are getting to know the people (management) a little better now. Some of them do not have the necessary skills. But then again, they got there by default. Let me know if you need me to talk with Gary or Ann. Hang in there and keep your nose clean.

dwight

-----Original Message-----
**From:**   English, Philip E.
**Sent:**   Thursday, May 23, 2002 7:08 AM

2

RENEAU KENNEDY RE PHILIP ENGLISH                    201

To: Ishiguro, Dwight
Subject:

Dwight,

Have not heard back from you. I hope everything is OK for you. If you do get this message can you please let me know about this delegate letter.

Things at this office are slipping from bad to worse. I seem to have gotten on the bad side of management. I suppose that is not a surprise. They do not like people who ask too many questions or rather question too much what they do.

Also I am not sure if you knew about this but I complained to Ann about the fact that Chris was doing work for Gary while on C&C time. My complaint was not so much at Chris but at Gary. He is the administrator and if he is told to do something the Chris must do it.

Ann told me that she knew nothing about it and had never noticed. You and I both know that is B.S. She would not go any further (or at least told me that she wouldn't because she had not personally seen it. But I think she did take it to Bob later).

But I did go to Bob. The response may seem to those who have worked here predictable but to me it was surprising. He blamed it all on Chris and totally shielded Gary. I told Bob that I wanted to be clear that my complaint was not against Christ but against Gary because he is the one in charge, he is the one who has the responsibility, and he was the one who was directing Chris to do the work.

Next Bob said that just because one employee makes a complaint doesn't mean something was going on and it would just be my word against his. Can you believe it.

Nothing happened and Chris continued to do work for GK Appraisals during C&C time. I later put it my complaint in writing in the form of an e-mail and only after that did something happen. Apparently Gary called Chris into his office and told him not to do anything during working hours but that he do what ever he wanted during lunch. And to just in general be more discrete. I only know this because Chris told me these things.

Chris continues to do work for GK Appraisals during office hours. However, I seem to be on someone's sh_t list now. Yesterday I was called into Bob's office with Ann so that I could be told that I was not complying with scheduled office hours and that I had a bad attitude. They even implied that it was my responsibility to tell a supervisor when to go to a BOR hearing and that I didn't do because "I didn't want to!"

They made several baseless claims and I asked them to give me an example whereby such things occurred. They could not. Furthermore Ann's attitude towards me has been very poor.

It seems they are out to get certain people. Maybe those who they have decided are trouble makers. We know there are some who cross the line frequently and they need to be rehabilitated or removed. But at this point it appears to be a witch hunt.

The thing that concerns me most of all is their tactics. At least for me. They can not call you in and then make several baseless claims without evidence. I told them show me where I have gone wrong and I will correct it. But they could not. None the less if they are out to get They will have to try really hard. But there is no doubt that if they wanted to set someone up they could.

These are very dangerous practices for management. I wish they would not go in this direction. There is a much more positive and productive way to go about these kinds of things. It seems they are going in the opposite direction.

Do you have any advice?

RENEAU KENNEDY RE PHILIP ENGLISH

English, Philip E.

| | |
|---|---|
| From: | English, Philip E. |
| Sent: | Friday, May 31, 2002 10:40 AM |
| To: | Gima, Ann |
| Cc: | Magota, Robert |
| Subject: | RE: "Being Watched" |

Ann,

So it is safe to conclude that there is no specific deficiency in what I am doing and if there was it would be brought to my attention. Is that correct? The reason for my concern is that there is no training for office policies and procedures or even past practices. You kind of have to learn as you go. You told me the best place to learn is from others who have worked here longer. My experience is that it is the worst place to learn because the answers you get are different from one appraiser to the other and are different from one supervisor to another.

The bottom line is that I am doing the best that I know how and as I stated in the meeting with you and Bob that I am anxious and desiring to get some direction and leadership. It is difficult to come by in this office. I am frequently told that I should already know things.

I have been a Real Estate Appraiser for 23 years. I have worked for large banking institutions and had my own successful appraisal firms. I have achieved designations and I am a Certified General Appraiser in the State of Hawaii. I do know some things. But when I try to apply my knowledge and experience to this office I am often at odds with past practices of this office. It seems that there is a right way and a wrong way and the RPA way of doing things.

That is where I seem to be falling short and that is learning the RPA way. Since there is no training (and often no logic) to the RPA way, if I am doing something wrong or if I am out of line please help me so that I can perform the tasks the way this office likes it done. As I said in the meeting we had, you and Bob are in charge and responsible for how this office performs and functions. I will carry out all that is asked of me if I know what that is.

It is my understanding and it was given to me in writing that my start time is 7am and that my ending time is 3:45pm. I think that you and Bob will both be satisfied to see that since I have been informed of this I have complied. And that the only past deviation was that on Wednesdays and Fridays I had come in at 6:30am and was leaving at 3:30 pm. This was our understanding that I continued and can easily be confirmed through the sign in sheets.

Again I would be happy to assist you in any further monitoring efforts that you need from me. But it is unnecessary for Bob to skulk around and check up or for rumors to be spread (I think more of the both of you than that and there are more that I have heard about me being watched and singled out). I am happy to do whatever it is you need and is necessary for you or Bob to monitor employees start times, ending times, work status, whatever. Please let me know if I can do anything more.

Frankly it is not my desire to be an employee that "Meets the Requirements" of my job. I have never been that kind of employee. I want to be an employee who "Exceeds Requirements". But it is difficult to know and understand how to do that in this office. I appreciate any and all assistance that you might be able to give me so that I might achieve my goals.

**Phil English**
Appraiser
Real Property Tax Division
City and County of Honolulu
penglish.co.honolulu.hi.us

-----Original Message-----

| | |
|---|---|
| From: | Gima, Ann |
| Sent: | Friday, May 31, 2002 10:05 AM |
| To: | English, Philip E. |
| Subject: | RE: "Being Watched" |

No you are not being "watched" any more than anyone else is being monitored for their work performance. The only situation I can account for to explain Julie's comment was when she had inquired as to why Bob seemed to be checking out time sheet log where my explanation was that he was concerned because he noted that you had been varying your start times. This was prior to our discussion which has been resolved with the official revision of your start time.

1

# Annie

——Original Message——
**From:** English, Philip E.
**Sent:** Friday, May 31, 2002 9:52 AM
**To:** Gima, Ann
**Cc:** Magota, Robert
**Subject:** "Being Watched"

Ann,

I was just informed by Julie Tamayori that I am being "watched" by Bob. In fact, she said that is what you told her. If I am being "watched" for some reason could you please let me know what that reason is otherwise this kind of thing only makes for a hostile working environment where rumors are allowed to be spread that someone is being singled out and "watched"!

If I have done something wrong please let me know what it is and I will correct it. That is what I have stated in the past and that is what I have every desire to do. But if I am doing something wrong and being "watched" for something and I am not made aware of except by rumors then this is how a hostile work environment is created.

I do not believe that is what you or Bob intend.

If you have a concern about my starting time or stopping time I would be happy to e-mail to you or Bob when I start and stop. If you are concerned about my lunch breaks or how I use my time, again I am happy to e-mail and give even a daily status report if you believe that is warranted.

But at this point I do not know why I would be "watched" and if this is true then I am being singled out and watched without any notice that there is something wrong. This is "not" appropriate and it "is" hostile. This is my second complaint of a hostile work environment. It is interesting to me that all of this including the narrative on my review have come after my complaint about the administrator using C&C employees to do work for his private company while on C&C time. I hope these are not related.

Please let me know what is up.

Respectfully submitted,

**Phil English**
Appraiser IV
Real Property Tax Division
City and County of Honolulu
*penglish.co.honolulu.hi.us*

RENEAU KENNEDY RE PHILIP ENGLISH                    204

**English, Philip E.**

| | |
|---|---|
| **From:** | Ishiguro, Dwight |
| **Sent:** | Friday, May 31, 2002 12:08 PM |
| **To:** | English, Philip E. |
| **Subject:** | RE: Re: Memo to Ann |

Phil:

I'm pretty disturbed by Bob suggesting to not have any loyalty to the Division and to do what's best for Phil. I have never approached any of my jobs from that standpoint nor have I ever heard of any manger tell their employees that. Whenever I join an organization, whether its for a job or anything else, I go in with a sense of loyalty to the organization. My main goal is to be an asset and to advance the goals of the organization. I can't say that I agree with that statement.
I have experienced the situation of being on the "wrong side" and the reasons why has escaped me also. It seems a little situation can and will put you on the s— list. Not sure what the cure for that is.
The main thing is that we continue to do what is required of us and in this situation make note of the incidents as they happen. I hate doing things like this but it may prove to be the prudent thing to do. We must also remember that management has the right to manage..no matter how idiotic we think it is, we can only do what is asked of us. We use guidelines to check if we are within the scope of our duties. Right now, management is trying to increase their ability to direct us into different responsibilities without any input. But that situation will be for another discussion.
The situation with your start time must be cleared up with Ann or Bob. Contract language has specific start times and can be referred back to if any conflict arises. If you have permission and there is mutual agreement that a start time other than what's in the contract is acceptable, then you may go to that schedule. Get a written or oral agreement from either people. Make it clear that it was agreed upon.
A organization needs feedback from their employees in order to achieve efficiency. Managers don't know all the answers and input from employees can be valuable. We should not be discouraging feedback and criticisms. Maybe the way it was presented might be the problem. In any case whether is accepted or rejected, it was addressed and somewhere it gets logged in. We may see it surface in the future as their own idea. Sometimes it happens that way. Anyhoo, I'll want to speak with you, if not today maybe next week. My typing sucks! LOL!

dwight

-----Original Message-----

| | |
|---|---|
| **From:** | English, Philip E. |
| **Sent:** | Friday, May 31, 2002 11:19 AM |
| **To:** | Ishiguro, Dwight |
| **Subject:** | RE: Re: Memo to Ann |

Dwight,

Thank you again for your council. I truly appreciate it with a capital "T"! All I want to do is my job and to figure out how to do it the way that they want it done. My complaint about the administrator is clear (and it is not against employees who do the work). I hope that you understand this as well. I also believe that Gary is a smart enough guy to do the right thing (I think, or maybe I hope).

But why am I all of the sudden being targeted? When I was once told I had a shot at being a supervisor (which by the way I am more qualified for the job than any of the other candidates). Now I am being told if I keep my nose clean maybe in 3 to 5 years I might have a chance to apply. Why am I now being told that I am having a problem making the adjustment to mass appraising from the outside (which clearly is not the case since I have been in Waikiki I have come across many things that were done wrong by Stan who being a great guy was not an appraiser) and now I have people watching over my shoulder and checking my start and stop times and even claiming that I was doing something wrong by coming in at 6:30 am and leaving at 3:30 am two days a week when it had been approved by Ann and I have been doing it for more than a year with no complaints.

Something doesn't smell right. Things have changed since I made my complaint against the administrator (not employees) and so far it does not seem to be getting better, but worse. Bob told me that I should feel no loyalty to this division and that I should do what is best for me. So far I have not taken him up on that advice. But I am not sure how much I should take on myself if this is the way it is going to go.

I am counting on you Dwight for advice. At this point I do not trust Gary, Bob or Ann. I am sorry to say that. I hope things will change.

***Phil English***
Appraiser
Real Property Tax Division
City and County of Honolulu
*penglish.co.honolulu.hi.us*

1

RENEAU KENNEDY RE PHILIP ENGLISH                    285

-----Original Message-----
**From:**     Ishiguro, Dwight
**Sent:**     Friday, May 31, 2002 11:04 AM
**To:**       English, Philip E.
**Subject:**  RE: Re: Memo to Ann

Phil:

Thanks for consulting with me. If you want me to, I can make inquiries to Gary/Bob or Ann. It seems that there is a lot of misunderstanding going on. I agree with you that the "rumors" that circulate can be perceived as "hostile" to the person that it is directed at. Management will need to address this and correct the situation.
I know your attitude towards the work that we do is great. I think having you in the department is an asset. Evidenced by your willingness to take on the Waikiki Shores project and the amount of things you needed to get up on, QUICKLY. I'm not sure what creates this kinds of atmosphere for our employees but it is something that needs to be addressed.
Do not feel "sorry" about approaching me with so called "playground politics." I feel it can be counter-productive and destructive and you can see how it affects morale. It may be a sign of immaturity. I don't know.
Would you let me approach Gary with this situation? There should be no repercussions on your bringing to their attention, the actions of employees doing business on city time. I think other employees have been talked to about that very same situation. If this is brought to the ethic commissions' attention, there could be serious consequences.
Keep me informed.

dwight

-----Original Message-----
**From:**     English, Philip E.
**Sent:**     Friday, May 31, 2002 10:46 AM
**To:** Ishiguro, Dwight
**Subject:**      Re: Memo to Ann

Dwight,

Sorry to bother you with the "playground politics" of the Honolulu office of the RPA. I need to know at this point who to go to and what to do. I am tired already of this stuff. Bob and Ann too should knock it off and grow up! I still have a hope that they can become professional managers and not the typical middle management that we find in city government. Maybe I am just hopeless when it come to holding out hope. They call that longsuffering by the way.

But I need to know where to go if things continue like this. I am beginning to feel the harassment because I have said things perhaps that I shouldn't have (at least in their minds). And I am talking about the stuff about Gary.

So do I go to Violet Lee or should I go directly to Chuck Tato of the ethics board or the prosecutor? What do you think?

**Phil English**
Appraiser
Real Property Tax Division
City and County of Honolulu
penglish.co.honolulu.hi.us

2.

CITY AND COUNTY OF HONOLULU
DEPARTMENT OF PERSONNEL

**PROBATIONARY PERFORMANCE EVALUATION REPORT**

| DEPARTMENT/DIVISION | | |
|---|---|---|
| DEPARTMENT OF BUDGET AND FISCAL SERVICES | | 6 MON |
| NAME OF EMPLOYEE | RATING PERIOD | |
| ENGLISH, PHILIP E | NEW   06-01-02   TO: 08-31-02 | |
| POS. NO. | TITLE OF POSITION | |
| DF486 | ~~REAL PROPERTY APPRAISER~~ | |

## PROBATIONARY PERFORMANCE EVALUATION REPORT

Civil Service Rule 11-2 (b)(2) requires the Appointing Authority to have the performance of each probationary employee evaluated in writing at the end of every three months during the probationary period including any extension thereof. A performance evaluation is not required when an employee is terminated prior to the completion of the three months or prior to the completion of the probationary period.

**COMMENTS**
Recognition for superior work; suggestions for improving performance.

| PERFORMANCE FACTORS | EXCELLENT | EXCEEDS REQUIREMENTS | MEETS REQUIREMENTS | BELOW REQUIREMENTS |
|---|---|---|---|---|
| 1. QUANTITY OF WORK | | | X | |
| 2. QUALITY OF WORK | | | X | |
| 3. ATTITUDE TOWARD WORK | | | | X |
| 4. RELATIONSHIP WITH PEOPLE | | | X | |
| 5. SUPERVISION OF EMPLOYEES (To be used only in evaluating supervisory and/or administrative personnel) | | | | |

(PLEASE SEE ATTACHED)

### CERTIFICATE OF EMPLOYEE
This performance evaluation report has been discussed with me.

_____     8/14/02
SIGNATURE                                      DATE

### CERTIFICATE OF SUPERVISOR
This report constitutes my best evaluation of this employee based on personal observation and knowledge of the employee's work during the probationary period.

_____     REAL PROPERTY APPRAISER VI     _____
SIGNATURE                              TITLE OF POSITION                        DATE

### CERTIFICATE OF APPOINTING AUTHORITY OR DESIGNATED REPRESENTATIVE
I have reviewed the performance evaluation report of this employee, and I am: (check one)
☐ Granting permanent status as the employee has performed at least satisfactorily during the established probationary period.
☐ Adjusting the probationary period for ____month(s). (See CS Rule 3-36 (e)(4))
☐ Extending the probationary period for ____month(s). (See CS Rule 3-36 (e)(3))
☐ Terminating the probationary appointment.

_____     REAL PROPERTY ADMINISTRATOR     _____
SIGNATURE                              TITLE OF POSITION                        DATE

FORM NO. 43 (REV. 4/93)
DEPARTMENT COPY

RENEAU KENNEDY RE PHILIP ENGLISH                    287

**English, Philip E. DF-486**
**Real Property Appraiser IV**
**Evaluation Period 06/01/02 – 08/31/02**

During this probationary performance evaluation period as an Appraiser IV, Phil has continued to be assigned the responsibility for the Waikiki area condominiums.  As noted in his last performance evaluation report, the volume of appeals and number of units in this area necessitates the use of good time management skills in order to meet deadlines and perform all the required duties.

Over the course of the past two months, Philip has been encountering some difficulties in independently performing all of the responsibilities of the Appraiser IV position.  His performance has been discussed with him on at least three occasions and efforts have been made toward addressing various issues and problems including misunderstandings and miscommunications.  Some items that have been addressed include work hours, timely submission and prior approval of leaves from work, and directions for processing various job tasks.  At the present time there are some issues that are affecting his attitude and subsequently his work performance.

Phil will benefit from an additional 3-month probationary period of review for further training and instruction to clarify his duties and responsibilities and ensure his understanding and ability to implement the various job functions.

He is polite in his dealings with taxpayers and appellants.

No classes taken since last evaluation period.

**Response to the Review**
**6/1/02 to 8/31/02**

English, Philip E. DF-486
Real Property Appraiser IV

I do not agree with the review. Additionally, I do not agree with the 3-month extension of probation. It is unwarranted and unjustified.

Phil English

Gary k                           9/15/02

Comments on Meeting

Gary said that it seems to him that
what I am saying and what they are
saying is 180° different.

He said that he knows that it takes
a while to get into the Mass appraisal
system and that he did not expect me
to get everything done in a year.
He said it is a two year process.

I told him I understand the process.

He asked what I thought he should
do. I told him that he should not
extend the probation that things do
not add up. That they did not
explain to me specifically what I
was deficient in and specifically what
things they wanted me to do so that
I could show them that I can do it.
They were not specific and in fact
were inconsistent.

(over)

RENEAU KENNEDY RE PHILIP ENGLISH

I told Gary that they rated me
as meeting the requirements in every category
regarding my work. But that they
said the problem was that I needed
to "show" them I could do the work?

I am confused about it and do not
understand. I believe there are
other motives at play.

**English, Philip E.**

To:  Kurokawa, Gary
Subject:  RE: Extension of Probation

Gary,

Thanks for the reply. I am always open for discussion. I am eager to my job. I hope that any defeciencies in my performance will be made clear so that I will have an opportunity to correct them. Whatever goals and objectives set before me I will do the best that I can to achieve them.

I remain disappointed that the probation is being extended. It is still very unclear as to why. I am seeking legal counsel as a last resort. I have notes from our meeting and look forward to getting the written copy of the revised review.

**Phil English**
Appraiser
Real Property Tax Division
City and County of Honolulu
penglish.co.honolulu.hi.us

-----Original Message-----
From:  Kurokawa, Gary
Sent:  Thursday, August 15, 2002 5:57 PM
To:  English, Philip E.
Cc:  Magota, Robert; Gima, Ann; Ishiguro, Dwight
Subject:  RE: Extension of Probation

Phil,

As mentioned, I have discussed with Bob Magota and Ann Gima concerns regarding your job performance evaluation. Unfortunately, the discussion exceeded well into the end of the workday and my response to you is therefore delayed.

I have reviewed the performance evaluation report and I am extending the probationary period for 3 months. The performance evaluation will be amended listing goals and objectives that if meet, will lead to establishing a satisfactory performance rating. My greatest concern is that we all have a clear understanding of what is expected. As we previously discussed, not enough of an emphasis is placed on clear communications. I have instructed the management staff involved to provide a plan of action to accomplish this goal.

It is unfortunate that you see yourself with no options. My goal is to provide each employee with the necessary tools for success. As you mentioned in your email, after my decision you will not be interested in any further discussion on this matter and will seek legal counsel. However, it is imperative that you are aware that your probationary and evaluation will continue as amended and outlined in your job performance rating. It is my hope that all goals and objectives can be met to have a successful resolution to this matter.

Gary Kurokawa, Administrator
Real Property Assessment Division
842 Bethel Street
Honolulu, Hawaii 96813
(808) 527-5502
gkurokawa@co.honolulu.hi.us <mailto:gkurokawa@co.honolulu.hi.us>

-----Original Message-----
From:  English, Philip E.
Sent:  Thursday, August 15, 2002 4:08 PM
To:  Kurokawa, Gary
Cc:  Magota, Robert; Gima, Ann
Subject:  Extension of Probation

Gary,

This morning you told me that you would talk to Ann and Bob and get back to me today whether or not the extension of my probation is going forward. I have not heard back from you today and can only assume that the extension will proceed. As we discussed this morning I do not agree with the extension and believe it to be unwarranted and unjustified.

1

RENEAU KENNEDY RE PHILIP ENGLISH                    213

As I mentioned to you this morning in our meeting I feel the only option left to me is to seek legal counsel as to my alternatives.  I wish that it did not come to this but it seems you have left me with no other option.

Phil English

2

Bob Magota                          8/14/02
Ann Gima                            JPR

Bob said there is a problem, "I don't seem to care about my job." ??

I told him I don't understand that everything they have asked me to do I have done.

I also reminded him that now and in our JPR review meeting in May (?) that I stated that I really like my job!!! That I find the work very interesting (and that I want to do everything they tell me to do) and that I further do not understand why he believes I do not like my job.

He stated that that I was waiting until Ann went on break and was "sneaking" in my leave papers ( He was accusing me and his voice was raised, I was really surprised and felt attacked)

I explained that there were 2 times this happened and it did not happen like he described I was not "sneaking" it in —

over

The first time that was at BOR
and I did not want to bother her. I
thought it would be rude! to interrupt
a hearing for my leave paper. I didn't
know what to do so I left it on her
desk.

The second time was similar she was
not around, in a meeting or on a break
I don't know for sure. But I asked
around to the other appraisers in the
group and they said just leave it
on her desk and that should be OK

Both AM

They told me that it was not ok in
the last review. (May) They even said that
I should interrupt the hearing!

So since that time I have complied
this can be verified by Keith Yamashita
Supervisor

Bob continued to raise his voice
and say that I didn't care about my
job. He said that he asked me
why I didn't apply for the appraiser I
position and I told him "I forgot!"
He said it seems I don't care about
my job.

I told him I do not even remember
the conversation. That it did not occur

He asked me if I felt paranoid and I told him yes and that wanted to explain. He kept interrupting me and would not let me explain.

I told him that it was difficult for me because I can not ask Ann questions without getting blasted.

I reminded him of our previous meeting when I asked Ann if it is OK if I ask a question that may seem stupid sometimes. And Ann said "NO" Go and ask the other appraisers "they have worked here longer than you"!

Bob recanted the conversation and stated that Ann said I could ask a "stupid" question (That is not TRUE!)

I told him that I would because I am in fear with Ann & Bob and they can say anything. They can change what they said and make up conversations with me

over

They can also be confusing because I did begin to ask these appraisers in my group many questions

I try to explain to Bob that since I started here I have felt like an outsider because that is how I am treated.

Example:

Even Bob dressed me down in front of the group when I asked him about an ethical question on our work he said "I've seen this kind of thing before where an outside ~~is~~ appraiser can not make the transition to mass appraising" He went on to say

that I was an appraiser with "just the fundamentals" of appraising

I tried to explain these things in the meeting but he kept on interrupting so I stopped trying to explain

But it is that they have made assertions that are not factual and can not be backed up.

I also explained to Ann + Bob that all of this started after I made my complaint about Gary.

They (Bob) became very defensive Bob raised his voice and said it was nothing to do with it!

I am not sure because I don't understand the attacks and the Hostile work environment when I am really trying to do my best.

Ann said something that really disturbed me

I told them that I do not believe that an extension of my probation was warranted

Ann said that "I" have complained that there are some appraiser IV who may not be qualified to be appraiser IV's! That it would only be fair since I made the complaint that "they be sure" that I can perform all of my duties.

It sounds like some sort of (We'll show you) or payback for what "they" said I said...

(over)

RENEAU KENNEDY RE PHILIP ENGLISH                    218

The truth is that it is well known
in our office that there are appraiser
IVs + Vs that are probably not
qualified to be in these positions
(probably VIs too). In fact, Gary K
and I have spoken about it!

Why they want to make me some
kind of example I do not know.

It doesn't all add up.

Bob said many times "are you overwhelmed
with the work!?"

I kept telling him that I am not "overwhelmed"
but that there is more work to be done than
can get done in one year!

I told them I understand what needs to be
done and I have as far as the appraisal
problem goes and I can do it, but it
will take more than one year.

**English, Philip E.**

| | |
|---|---|
| **From:** | Ishiguro, Dwight |
| **Sent:** | Monday, August 19, 2002 7:40 AM |
| **To:** | English, Philip E. |
| **Subject:** | RE: |

Phil:
Yes, I think you should ask to meet with Wayland. He can guide you on what needs to be done. I take it that the meeting did not go very well. Be sure you have info. on what has been going on. Check with your contract book on things that my be covered in the contract. Other things that are not covered may be in the civil services rules.
Call Wayland and let him know you want to meet, 543-0044.
Let me know Wayland wants me to be there too.
Mahalo
dwight

-----Original Message-----
**From:**       English, Philip E.
**Sent:**       Monday, August 19, 2002 6:52 AM
**To:**          Ishiguro, Dwight
**Subject:**   RE:

Dwight,

It is time to go formal!  I think there is more going on here.  Should I contact Wayland?

Phil

-----Original Message-----
**From:**   Ishiguro, Dwight
**Sent:**    Thursday, August 15, 2002 8:19 AM
**To:**      English, Philip E.
**Subject:** RE:

Phil:
Just focus on what is being said and recognize their right to manage. If we can do what is asked, there should be no problems. When it starts to get unreasonable, we should try to address it. Hopefully, through discussion, but if they continue to be unreasonable, then we go the formal route.
Keep notes when you go into the meeting. Make sure that they know that you are writing everything down. Stop discussion to clarify statements and directives. It may drive them nuts but just tell them that it is so you understand exactly what they want from you.
dwight

-----Original Message-----
**From:**       English, Philip E.
**Sent:**       Thursday, August 15, 2002 8:13 AM
**To:**  Ishiguro, Dwight
**Subject:**   RE:

Dwight,

Thank you for your continued support and guidance.  I wish you were at the meeting yesterday.  Maybe it would have turned out differently.  Who knows.

Phil

-----Original Message-----
**From:**       Ishiguro, Dwight
**Sent:**       Thursday, August 15, 2002 8:09 AM
**To:**          English, Philip E.
**Subject:**   RE:

Phil:
You told me about the meeting in your first email yesterday afternoon. I have not been requested to sit in the meeting. If you can find out what the meeting will be about and if there are things that may require a representative being there, I can sit in. Usually if there is an action that might result in a notification of any action against any employee, we can sit in. The Weingarten Rule, provides representation to any employee who feels a discussion may result in disciplinary action being taken against them. In that

1

RENEAU KENNEDY RE PHILIP ENGLISH                              220

situation, th[...] ay stop any meeting and request "reasonabl[...] me to get a representative to sit in the meeting. If you feel at any time that this is where it's going, call me and I'll get someone over there. I need to think about the situation over there a bit more. I feel frustrated that this atmosphere has come over the office.
dwight

———Original Message———
**From:** English, Philip E.
**Sent:** Thursday, August 15, 2002 6:46 AM
**To:** Ishiguro, Dwight
**Subject:** RE:

Dwight,

There are other issues at stake here. I have written to you before about them. There is more to yesterdays meeting with Bob and Ann. There was clear attempt at intimidation. Bob was starring me down. . This may be an issue that needs to go beyond the union. I wish that it was not so. I have been made to feel very uncomfortable by Bob and Ann while all I am trying to do is my job. There are many things that I do not know about. But I do know that something is really out of wack here. By the way how did you know about the meeting with Gary? I just found out about it myself yesterday afternoon. Will you be here?

Phil

*see previous email by Phil*

———Original Message———
**From:** Ishiguro, Dwight
**Sent:** Wednesday, August 14, 2002 4:13 PM
**To:** English, Philip E.
**Subject:** RE:

Phil:

Keep a record of the meetings and tomorrows meeting with Gary. It seems that they should be specific on what they perceive is the reason for your "attitude". Be it your not being responsive to instructions or whatever it is that they want you to do. The question of whether you "intentionally" waited till Ann was away before you submitted leave papers is questionable at best. Can they prove it? Usually the procedure is to pull Ann out of any meeting and ask her for permission, since it is an emergency. You should be able to do that or ask another supervisor. The issue with mistakes being made is not grounds for extension of the probation period, in my opinion. I'm not sure if "attitude" is a good reason to extend a probation. I'll ask around tonight to see if staff has experienced anything like this.

Phil, I know it is hard working through the situation you have described to me. Keep a "cool" head and make sure you understand any directives they give you. We need to give them the space to manage. At the same time we comply with any orders and then grieve if we have reasons to.

It's good that you wrote a response to the JPR. Make sure it's attached to the JPR. You do not need to sign it but can put in a rebuttal. Will check tonight if by not signing it and including a rebuttal, constitutes an acceptance.

Hang in there buddy. All things come full circle some time or another.
Mahalo
dwight

No worry about "bothering" me. That's what I here for. You need to attend our grievance classes. Thursday 22 is the next meeting. After consult with Stuart McKinnley, who is a really knowledgeable guy.

———Original Message———
**From:** English, Philip E.
**Sent:** Wednesday, August 14, 2002 3:46 PM
**To:** Ishiguro, Dwight
**Subject:**

Dwight,

I am very sorry to have to write to you and bother you with dumb stuff again. I just received my JPR and had a meeting this morning with both Ann and Bob. The review was overall good but they rated me below requirements when it comes to my attitude and extended my probation for another three months.

2

RENEAU KENNEDY RE PHILIP ENGLISH                    331

They made a number of vague accusations as to what they perceived were actions by me that constituted a bad attitude. They also seem to have a different recollection about our previous meetings than I do. I explained to them that in each and every case that they have told me that I was doing something wrong that I have corrected it. Many of the accusations made were prior instances where I didn't even know that I was doing something wrong. But when it has been brought to my attention I have corrected it.

I also told them this time as well as before that I have every desire to do exactly as they have instructed me. That I want to perform in a way that will be pleasing to them. But that I do not always have clear instructions always. I ask them to please be specific about what my deficiencies were and what they expected of me while on probation and they only responded by saying that they wanted to see that I could do "everything" that an appraiser IV should be able to do. That was it.

Three incidents that were mentioned in the two meetings with Bob were these:

1. The BOR where Mike Okamoto was supposed to come. He never showed and Bob said that I didn't call him because I didn't want to. In a later meeting with Ann she agreed that she didn't understand why Bob made that accusation. In the meeting today he denied making the accusation.

2. The second incident that they claim was recurring was that I "intentionally" waited until Ann was on her break and then submitted leave papers. The only incident that I recall was when Ann was at BOR and I had to leave for an emergency to get my son and I left the leave papers on her desk so as to not bother her while she was in BOR.

3. The third incident was that while we have been working on corrected notices for classification issues I inadvertently submitted a couple twice. This was an error on my behalf and I admitted to them that I made that mistake. But is this grounds for extending probation?

I am deeply disturbed by this action. I wrote a response which simply stated that I do not agree with the assessment and that the extension of probation is unwarranted and unjustified. While writing this e-mail I was contacted by Donnie, Gary's secretary and told that Gary wants to see me at 9am tomorrow.

You know about the things that happened before. At this point there appears to be something that is really not right. I explained to both Ann and Bob that I felt that these things have happened only since I brought to Ann and Bob's attention that Gary way having Chris do work while at the office.

Something does not smell right and I feel that there is some kind of retaliation. What is the next step?

I am feeling a great deal of hostility and oppression here.

Phil

3

9/9/02  Informed Ann that I have been
coming in a bit late (10 minute or so)
because I just moved and I am having
trouble with the bus schedule.
    She e-mailed back and told be to
log out the time.

    The reason I am writing this down is
that it is not consistent with what Bob
said in my reviews ("I don't care if your
10 minutes late") and what Gary has
said in the past.

    I will log the time in.


Note - Last Friday we began to run our MS-30.
I asked Ann "What we should be looking for"
She kintly said that I went to the same Market
Modeling class as everyone else and that I
should know.
    I told her I was looking for outliers
to delete or by-pass. She said (angrily)
that there were many other things we need
to look for. I asked her what and she
refused to tell me.

        (over)

RENEAU KENNEDY RE PHILIP ENGLISH                223

She remains very kind with me. It is very hostile. ~~I still do not know or understand why she treats me this way. It is very st... thing and upsetting to be singled out and to not know why~~

As I am writing Chris is asking Marvin what we should be doing. Marvin has his idea. There is no clear direction or leadership. How can we know

Ann spends most of the day talking with Linda and Ann (her clear favorites) often times she tells them things she does not tell us. I am frustrated. What can I do