030135

m ISWC-1(1/1/2002)                                             OSHA Form 300 Log No:

# CITY AND COUNTY OF HONOLULU
# REPORT OF INDUSTRIAL INJURY OR ILLNESS
## EMPLOYEE'S REPORT

| Employee's name (first, initial, last)<br>Philip E. English | Date of birth<br>10/26/1954 | ☒ Married<br>☐ Single | Do not write in this space |
|---|---|---|---|
| Employee's home address (include City and Zip Code)<br>1741 Ala Moana Blvd., Unit 22<br>Honolulu, Hawaii 96815 | Office telephone<br>808 523-4719 | | Reg. Salary  3248 |
| | Home telephone<br>808 754-2136 | | Class No.  020553 |
| Department/Division<br>Budget and Fiscal Services/ Real Property Assessment | Social Security No.<br>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 | ☒ Male<br>☐ Female | Title Real Estate Appraiser |
| Any outside employment?   ☒ No   ☐ Yes  If yes, provide name and address of employer and job title: | | | BU  13 |

## COMPLETE FOR NEW INJURY OR ILLNESS ONLY

| Date of injury<br>1/2/2003 | Time of injury<br>08:00<br>☒ AM ☐ PM | Did employee lose any time?<br>☐ No<br>☒ Yes  From: 02/28/2003 | Place where injury occurred | |
|---|---|---|---|---|

Describe injury or illness (part of body and extent of injury)
Stress associated with retaliation from internal investigation of wrongdoing in department

Name of physician seen for this injury
Gerald Coffee, Ph.D., Kaiser Medical Center

☐ Did not see doctor
☐ Treated at emergency room only
☐ Hospitalized overnight

...t was employee doing when injury occurred and how did injury happen?
...e above

Date employee hired
6/1/2000

Time work shift began
07:45
☒ AM  ☐ PM

Has employee ever had a similar injury? If yes, explain.
☐ No  ☐ Yes

Witnesses to accident (give names and telephone numbers)

f this claim was not filed within two working days after injury, please explain the reason for delay.

## FOR RECURRENCE ONLY - DO NOT COMPLETE FOR NEW INJURY OR ILLNESS

| Date of original injury | Date of recurrence | Time of recurrence<br>☐ AM  ☐ PM | Did employee lose any time?<br>☐ No<br>☐ Yes  From | Place where injury recurred |
|---|---|---|---|---|

What was employee doing when injury recurred?

Describe injury (part of body and extent of injury)

Name of physician

## EMPLOYEE SIGNATURE

...gning below, I attest to the accuracy of the above information. I also authorize my physician, hospital and the City and County Physician to release any ...ealth records regarding this injury or related past medical history.

mployee's signature

Date
2/28/03

ATCH 17

RENEAU KENNEDY RE PHILIP ENGLISH

# DRAFT

## SUPERVISOR'S REPORT

| Supervisor's name and title | Telephone No. | Was employee receiving hazard pay? |
|---|---|---|
| ANN GIMA, SUPERVISING RP APPRAISER | 527-5513 | ☒ No ☐ Yes  Pay rate: |

Does your knowledge of the facts about this injury agree with the statement of the employee?
☐ Yes  ☒ No    If no, please explain.

SEE RESPONSE #1

Was employee on temporary assignment at a higher pay rate?
☒ No
☐ Yes   Pay rate:

TA Title:

Was employee in performance of duty at time of injury?  ☐ Yes  ☒ No   If no, please explain.

SEE RESPONSE #1 & ATTACHMENT

Was employee on special duty (HPD only) if yes, provide name of employer
☒ No
☐ Yes

Was the injury caused by misconduct, negligence, intoxication or intent to injure self or another?  ☐ No  ☒ Yes   If yes, please explain.

SEE RESPONSE #1 & #2

Was the injury caused by a third party?  ☒ No  ☐ Yes   If yes, furnish name and address of the party responsible.

Can you provide any additional information to help assess this claim? (employee smokes, not wearing respirator, has history of diabetes, etc.)

SEE RESPONSE #1

How could accident have been prevented?  What action has been taken to prevent similar accidents in the future?

SEE RESPONSE #3

## SUPERVISOR'S SIGNATURE

| Signature of Supervisor | Date |
|---|---|
|  |  |

## INSTRUCTIONS

The injured employee is responsible for completion of the front part of this report, with help from his supervisor as necessary. By signing this form, the employee is attesting to the accuracy of the information presented. The supervisor should complete the backside of the form (above) and forward the original and one copy to the Department of Human Resources. In no case should this form be held up longer than two working days. A copy of this report should be provided to the injured employee and a copy retained by the operating department. This form serves as a permanent record of the employee's injury for OSHA/HIOSH purposes and should be retained for five years after the date of injury.

If the employee had lost time, an Election of Compensation form (HRWC-14) should be submitted along with this report.

FORM: DF-44 (11/76)

# CITY AND COUNTY OF HONOLULU
## APPLICATION FOR LEAVE OF ABSENCE

IE: _Phil English_                                  AGENCY: _BFS - RPA_

REQUEST FOR:   [X] Vacation Leave     [ ] Leave Without Pay

[ ] Sick Leave - Less than five (5) days     [ ] Sick Leave - Five (5) or more days (physican's certificate attached)

[ ] Industrial Injury/Illness - Date of injury/illness: _____     [ ] Military Leave (attach order)     [ ] Jury Duty (attach order)

[ ] Funeral Leave _____     _____     _____
                          Name of Deceased                    Relationship                    Date Deceased

[ ] Other: Authorized by Civil Service Rule No.: _____ for the purpose of _____

DATES:

From _12/31/02_ To _1/3/03_  No. of Days _2_ Hours _4_     _Phil English_     _12/27/02_
         (inclusive)                                                    SIGNATURE OF EMPLOYEE                    Date

REMARKS: _12/31/02 - 4 Admin / 4 Vac_

APPROVAL

[ ] Recommend Approval     [ ] Disapproval        [ ] Approved subject to availability of earned leave     [ ] Disapproved

_Robert O. Magota_                    JAN 1 0 2003              _Jay Y___                    JAN 1 0 2003
AUTHORIZED SUPERVISOR                    Date                          AGENCY HEAD                          Date

**Response #1:**

Mr. English claims the date of injury occurred on 1/2/03, 8:00 a.m., which is questionable. Mr. English was on vacation from 12/31/02 (Tuesday) to 1/3/03 (Friday). He filed his application for leave the week before on 12/27/02 (Friday).

Mr. English's alleged injury is questionable since he continues to have problems with his work performance, insubordination, and behavior dating back to the beginning of 2002.

Mr. English claims he is suffering from stress due to retaliation from an investigation he initiated with the Ethics Commission against other employees. Mr. English may be using this claim of stress to delay other ongoing investigations by the employer for recent disciplinary problems and work performance issues. It also appears he is trying to avoid completing current assignments and has already missed two recent deadlines on 2/11/03 and 2/18/03 which he was aware of since 12/12/02.

The employer was unaware of any Ethics Commission investigation initiated by Mr. English until 1/22/03, when another employee brought it to the attention of his supervisor, Ms. Ann Gima, and Mr. Robert Magota, Real Property Assessor. The reason the employee brought it to their attention was because Mr. English called the employee at work and said that he had filed a complaint with the Ethics Commission. The employee also said that Mr. English threatened and intimidated him since he would be called as a potential witness in this investigation.

Mr. English received a verbal reprimand on 2/10/03 for failure to follow his supervisor's instructions, insubordination, and conduct towards his supervisor, which occurred on 10/25/02. In attendance at this meeting were Mr. English, Ms. Gima, Mr. Magota, and Mr. Kevin Mullgan, HGEA Union Agent. These issues addressed on 2/10/03 were discussed in detail at an earlier meeting on 1/15/03 with Mr. Michael Golojuch, Administrative Services Officer, Ms. Violet Lee, Personnel, and Mr. Magota. Since the employer was unaware of any investigation at this 1/15/03 meeting and Mr. English's work performance and behavior were the topics of this meeting, retaliation was neither an issue nor a cause for his alleged injury.

Mr. English states that he started to lose time from work on 2/28/03, almost two months after the alleged date of injury of 1/2/03. This is also the same date that he filed for workers' compensation with Mr. Thomas Riddle, Workers' Compensation Administrator, Department of Human Resources.

Mr. English was notified on 2/27/03, the day before he filed for workers' compensation, of an investigation based on complaints filed by other employees under the City's Workplace Violence Policy. These complaints were based upon Mr. English's threatening, abusive and aggressive behavior towards these employees and not retaliation on the part of the employer. As part of this investigation, a meeting with Mr.

English, Mr. Golojuch, and Mr. Kevin Mulligan (HGEA Union Agent) was scheduled for 3/3/03 (Monday) at the office of HGEA. Mr. English cancelled the meeting on the morning of 3/3/03 thus delaying the investigation.

It should be noted that there is another investigation ongoing for acts of insubordination. These incidents occurred on February 19 and 25, 2003. This investigation has also been delayed due to Mr. English's recent absence from work.

Since the beginning of 2002 Mr. English has had major problems with his work performance and behavior. Recent problems that still persist are:

- Failure to meet deadlines related to his work assignments (9/10/02, 10/11/02, 10/24/02, 12/17/02, 2/11/03, 2/18/03)

- Failure to follow instructions from his supervisor

- Acts of insubordination

- Argumentative and intimidating behavior towards others including his supervisor

Mr. English had been warned numerous times since the beginning of 2002 regarding his work performance, insubordination, failure to follow instructions, and behavior.

- Last year during a meeting attended by Mr. English, Ms. Gima, and Mr. Magota, he was advised by Mr. Magota to seek counseling through the City's Employee Assistance Program. Mr. Magota was concerned that Mr. English's personal problems may be affecting his behavior and work performance. Mr. English raised his voice at Mr. Magota and stated that there was nothing wrong with him and he doesn't need counseling. He also said he felt that everyone was out to get him. When asked by Mr. Magota if he felt paranoid, Mr. English responded that he did.

- Mr. English has been very open in discussing his problems with other employees including his failed first marriage, trying to gain custody of his son, bankruptcy, problems with the Internal Revenue Service, and recent problems with his second marriage. He has complained to others that he was underpaid and could make more money working elsewhere. He has also complained to management and other employees on numerous occasions that certain work-related tasks are below him and that he shouldn't be required to do it.

- At a meeting on 11/22/02, he was again given verbal warnings regarding his work performance, insubordination, hostility towards his supervisor, and failure to follow instructions. Present at this meeting were Mr. English, Ms. Gima, Mr. Gary Kurokawa (Real Property Administrator), and Mr. Waylon Toma (HGEA Union Agent).

- At a meeting on 2/10/03, he was given a verbal reprimand regarding an act of insubordination, hostility towards his supervisor, and failure to follow instructions for an incident on 10/25/02. There was also the issue of failing to meet a deadline of 10/24/02. Present at this meeting were Mr. English, Ms. Gima, Mr. Magota, and Mr. Kevin Mulligan (HGEA Union Agent).

Mr. Magota again advised Mr. English to seek counseling through the City's Employee Assistance Program. Mr. Magota said he was still concerned that personal problems may be affecting Mr. English's work performance. Mr. English responded that he has no problems.

When he was warned about raising his voice and hostility towards his supervisor, Ms. Gima, Mr. English said that he never raised his voice at his supervisor, which contradicts what Ms. Gima and other witnesses have stated. Mr. English also said that on October 25, 2002 Ms. Gima was the aggressor and charged at him. When told that he must also control his temper at work, Mr. English stated that he has no temper.

Mr. English also said that he would be seeking counseling through his medical provider (Kaiser) since he could not trust anyone within the City. Throughout this meeting Mr. English did not mention anything about stress related to his employment or stress affecting his work performance.

During this meeting Mr. English started to discuss the Ethics Commission investigation even though the union agent tried to stop him. He admitted that he spoke to another employee who was a potential witness in the investigation and said that he was trying to help this employee, which the employee interpreted as a threat and intimidation. He also admitted that he spoke to this employee before the employee was to meet with Mr. Charles Totto, Executive Director and Legal Counsel of the Ethics Commission. Mr. English also said that if other employees don't come forward and tell the truth, their lifestyles are going to change. This statement was very disturbing because not only can it be interpreted as a threat, the truth according to Mr. English may not be the truth according to other employees.

**Response #2:**

Mr. English's claim of an injury is questionable.  If Mr. English is suffering from an injury due to stress, it is because he brought it upon himself and not due to the employer's actions.

It appears that Mr. English is also trying to avoid ongoing investigations related to complaints filed by other employees, his work performance and behavior.  It also appears that he is trying to avoid completing assignments that he is well aware of.

**Response #3:**

Mr. English's claim of an injury is questionable.  He was also on vacation leave as of the date of injury, therefore, no action was taken to prevent similar accidents in the future.

**Investigation Report for Workplace Violence – Treat as Confidential**
(This is an interim report because I have not been able to interview the alleged
perpetrator. Date: March 12, 2003)
Investigator: Mike Golojuch, Administrative Services Officer, Department of Budget
and Fiscal Services
Alleged Perpetrator: **Philip (Phil) English**, Real Property Appraiser IV
Division: Real Property Assessment
Hire Date: 06/01/2000
SR-22D
BU-13

## Background:

Ann Gima, Real Property Appraiser VI, had met with Robert Magota, Real Property
Assessor, Violet Lee, Personnel Assistant and Mike Golojuch, Administrative Services
Officer concerning the behavior of Philip English, Real Property Appraiser. (See
Attachment 1.) Ann was asked to review departmental policies and the City's Workplace
Violence Policy to determine if the Workplace Violence Incident Report was applicable.

Although Ann was not sure if the incident report itself was applicable, she did file a
written complaint on January 29, 2003 to the Administrator of the Real Property
Assessment Gary Kurokawa (Attachment 2). She believes that Philip English has
displayed unacceptable behaviors (raising his voice & other outbursts) for approximately
one year. Philip (Phil) has been verbally counseled about his behavior.

The Division Administrator brought her report to this office on February 4, 2003 and an
investigation was initiated. For informational purposes, the City's Employee Assistance
Program Counselor Ana Horne was left a telephone message about the situation. Later,
Ann Gima informed Mike Golojuch that she had spoken to Ana Horne about the
situation. Andre Lennon, Department of Human Resources (DHR) Training Division
was told about the situation because he works with Ana Horne on the Workplace
Violence training program for employees who are in HGEA collective bargaining units.
Alan Hiramasu, DHR Safety Office was also advised that an investigation was started for
allegations about workplace violence.

The first two initial interviews were with Ann Gima (Attachment 3) and Robert Magota
(Attachment 4). Phil English is assigned to Ann Gima's team. According to Robert
Magota, Philip challenges Ann's authority. Robert stated that Phil becomes defensive
when his work, attitude and/or behavior are questioned. Ann repeated that Phil has raised
his voice and his behavior is becoming more and more disruptive and counterproductive.
Robert recommended that Phil go visit the Employee Assistance Program (EAP) but Phil
said that didn't need it – nothing wrong with him. They both knew that Phil had filed
some Ethics allegations against a co-worker, Christopher Graff. This has also contributed
to the overall uneasy situation that exists within the work group.

1

Ann and Robert were asked who else needed to be interviewed beside Phil. The names mentioned were: Linda Knowles, Carole Kamisato, Susanne Foumai, Julie Tamer, and Chris Graff. Arrangements were made to meet with these individuals.

On February 10, 2003 Mike Golojuch interviewed Linda Knowles, Carole Kamisato, Julie Tamer and Susanne Foumai. Copies of their interviews are at Attachments 5, 6, 7, and 8. A summary of their concerns and comments are:

a. **Linda Knowles:** Phil is stressed. Tension between Phil and Ann Gima. Phil's e-mail replies are obnoxious in tone. Phil has filed some charges with the Ethics Commission against Chris (Christopher Graff). Phil acts like nothing has happen. She doesn't feel threaten but believes something could happen. She has not been to workplace violence training.

b. **Carole Kamisato:** Ann Gima and Phil English had two encounters in 2002. One – Phil was suppose to cover the counter for the public but he refused. There were loud voices from Phil and Ann. Phil was upset enough that he threw a box or object in his cubicle that was loud enough for others to hear. Another 2002 incident resulted in voices (Phil & Ann) getting louder and louder for at least 10 minutes. Carole left the area and stayed away. Carole had driven Phil home after a class. He talked about ex-wife telling stories and the court decree was wrong. He did not physically abuse his ex-wife. She does not feel threaten or scared. So many things going on in Phil's life that he may snap. Something might trigger him like the Bryon Uyesugi (Xerox) case. She understands that others do feel threaten. Attended a workplace violence program sometime in the 1990s.

c. **Julie Tamer:** Phil English is a nice guy, sweet and mild-manner in appearance. However, Phil has done some "back stabbing" to co-worker Chris (Christopher Graff). She has not witnessed any physical aggressiveness but there are times when he does get argumentative with his supervisor Ann Gima. She also mentioned that Phil talked about his ex-wife who made some allegations about Phil being abusive, which he denies. He talks about "we are ALL against him at the office." He feels "shunned and ostracized." Phil will lie about things, mostly minor things. Phil tells people he received "no training" despite the fact that there are numerous classes that he and others have attended. He also uses "I was never told." E-mails are sent to everyone in the office. Julie does not feel threaten but others do. Not sure if she is safe at work. She has not attended workplace violence training. Phil speaks of being a good Christian but his actions do not reflect it.

d. **Susanne Foumai:** Phil English started with the division on June 1, 2000. Within the first two weeks Phil was scheduled to attend mandatory training with Roy (Director). Susanne said she sent an e-mail to Phil and Willy giving them the date and start time of 8:30 a.m. She was called about 9:30 a.m. on the day of the session and Susanne was asked about Phil's whereabouts. He was at his desk. He claims that the start time was 11:30 a.m. Phil wanted Sue to call and let them know that he was not a "flake." She also talked about a

2

training situation. She doesn't feel threaten but believes that physical harm is possible. She attended workplace violence training on January 22, 2002.

**There was a general consensus that Phil should get some kind of EAP help.**

On Wednesday, February 12, 2003 Mike Golojuch interviewed Eugenie (Genie) Shito-Leong, Dwight A. Ishiguro and Christopher (Chris) Graff. Copies of their interviews are at Attachments 9, 10, and 11. Summaries of their concerns and/or comments are:

a. **Genie Shito-Leong:** She was helping Phil on a project. After dropping off sorted letters at Phil's desk, she had stopped to speak to another employee. Genie heard a loud noise from Phil's area. She also heard Phil talking to Ann Gima in a loud voice. Phil is under pressure. Phil is normally quiet and very nice person. When he gets loud, people want to get away from him. Genie does not feel threaten because she works at Kapolei. With the pressure Phil is under, he could snap with angry taxpayers. She does not remember attending any workplace violence training.

b. **Dwight A. Ishiguro:** Didn't know that anything specific was happening with Phil. Dwight has talked to Phil because Dwight is the HGEA steward for Unit 13. Dwight moved from the Bethel Street office to Kapolei in February 2002. He considers Phil a low-key individual and soft-spoken guy. Dwight said that Phil and he have had religious discussion. Dwight said that he is Buddhist and Phil is a Christian. They would exchange views but never got into any type of shouting/loud voices. Dwight has attended workplace violence training with Andre Lennon and Vince Goo.

c. **Christopher (Chris) Graff:** Chris spoke of an incident where Phil wanted to use the fax to send some data to the IRS. Robert Magota had denied the use of the fax machine to send a personal requirement to the IRS. Phil slammed down things and he was upset. This happen in November/December 2002 time frame. Phil had described the situation to Chris. Chris also spoke of the counter incident where Phil refused to go. Chris doesn't feel physically threaten but he does feel uneasy. Chris believes that Phil behavior has become more morose over the past few years. Chris has not attended any workplace violence training. At the end of the interview, Chris produced a **Confidential Workplace Violence Incident Report,** which he wanted to present and discuss.

d. **Chris Graff's Complaint of Workplace Violence.** (See Attachment 12). Chris believes that Phil English has been verbally intimidating and made verbal threats. Chris reports that the incidents occurred on January 17 and 22, 2003. The first incident occurred at Grilla's Restaurant where Phil and he were having lunch. The second incident occurred over the telephone. Chris said that he lost a couple of hours of work because of Phil's comments. The police were not involved.

The main thrust of complaint has to do with Phil trying to make Chris agree that he need to come clean to the Ethics Commission. If he didn't, they (Ethics Commission) would "hang Chris out to dry." Phil stated that Chris is on the "bad

3

list" for the FBI and City's Ethics Commission. Phil said that if Chris came clean he could be protected as a "whistle blower." Phil had already spoken to Chuck Totto of the Ethics Commission. Note: At least five of the witnesses have knowledge of some complaint that Phil has filed with the Ethics Commission.

Chris stated that Phil has lied about what the Ethics Commission is doing and Phil is verbally intimidating Chris.

Two additional employees were interviewed on Thursday, February 13, 2003. They are: Annette Kabasawa and Ryan Fujitani. Copies of their interviews are at Attachments 13 and 14. A summary of their concerns and comments are:

a.     **Annette Kabasawa:** She was not sure of any conflict. Annette has heard some other employees talking about Phil but she never witnessed anything herself. She does not know anything about allegations of workplace violence. Annette may have attended workplace violence training several years ago.

b..    **Ryan Fujitani:** He had heard from other workers about confrontations with Phil English. Ryan knows that Phil has filed some charges against another employee (Chris). Ryan does not know the details. However, Ryan thought that Chris was friendly with Phil. Ryan believes other employees in the office seem to be on edge because of Phil. Ryan believes he needs to be cautious because of Phil's attitude and behavior to act like nothing is going on but it is (Ethic complaint). Ryan knows about Phil's divorce. Phil speaks like he is the one victimized. Phil has had physical problems. He also has monetary/financial problems. Ryan doesn't feel threaten but is starting to think about the Bryon Uyesugi case. Phil's behavior is becoming weird. As far as physical harm, anything is possible. Ryan feels reasonably safe at work but not 100%. Ryan has not been to workplace violence training.

Because the Ethics Commission and Chuck Totto's name were brought up several times, attempts have been made to contact Chuck Totto. Several voice mail messages have been left between Mike Golojuch and Chuck Totto. On February 26, 2003, Mike Golojuch sent a confidential e-mail to Chuck Totto explaining that he was conducting a workplace violence investigation and the incidents that Chris Graff had reported. See Attachment 15 for a copy of the message sent to Totto.

Chuck Totto called and sent the attached (Attachment 16) response to my e-mail on February 28, 2003. He did say that his responses were restricted because of his ongoing Ethics investigation.

On Thursday, February 27, 2003 I contacted Phil English and stated that we needed to meet to discuss some allegations that had been filed against him. I told Phil that he could have his representative if he desired. I recommended that we meet on Monday, March 3, 2003 or Tuesday, March 4, 2003. Phil said that he would get back to me. His HGEA union representative Kevin Mulligan contacted me later in the day to make the

4

arrangements. It was decided that a meeting would be held on Monday, March 3, 2003 at the HGEA Building on Mililani Street at 9:00 a.m.

On Friday, February 28, 2003 Bob Magota told me that Phil English had filed a workers' compensation case for stress. I contacted Tom Riddle, Department of Human Resources/Industrial Safety & Workers' Compensation Division. He confirmed that he met with Phil English and Phil filed a workers' compensation claim for stress. Tom said that the form would be sent to the Department so page 2 of the Form ISWC-1 (1/1/2002), City & County of Honolulu Report of Industrial Injury or Illness, could be completed. The form was received and forwarded to Real Property Assessment Division to have page 2 completed. (Attachment 17)

On Monday, March 3, 2003 I received a call from Kevin Mulligan stating that Phil had called him. Phil said that he was under physician care and would not be at work. The scheduled meeting with Phil and Kevin was postponed. Mike briefed Kevin that he understood that Phil had filed a workers' compensation claim. Kevin said he would get back to Mike when he heard from Phil. Mike told Kevin he would like to either reschedule the meeting when Phil returns to work if he is not gone for an extended period of time (more than two weeks). The other option was to have a meeting while Phil is still out on sick leave if his medical condition allows.

The Department of Budget and Fiscal Services, Personnel Section, did receive the Report of Industrial Injury or Illness. It was forwarded to the Real Property Assessment Division to complete page 2. On Tuesday, March 11, 2003 I received a copy of an e-mail from Bob Magota stating that Workers' Compensation Division (DHR/ISWC) has denied the claim pending investigation. Since Tom Riddle had spoken to several people from BFS, there is no need to complete the back (page 2) of the claim. The claim is being referred to Corporation Counsel. (Attachment 18)

## FINDINGS:

1. There is a general concern about Phil English and his behavior over a period of time.

2. Although there was a safety concern from various employees, none of the employees stated anything about getting "rid" of Phil English. Rather, the main concern was that he gets some sort of Employee Assistance Program counseling.

3. Only one person admitted to feeling threaten by Phil's presence at the work site. However, four individuals did feel uneasy with Phil's current behavior.

4. The two previous incidents of loud voices and items being thrown down occurred over six months ago.

5. The most recent incident was a confrontations between Phil and Chris Graff on two occasions in January 2003. These had to do with Phil telling Christ that he needed to tell the Ethics Commission the truth. According to Chris, Phil had filed charges with the Ethics Commission

5

that included Chris as one of the people who were doing private work on City time and using City equipment.

6. Chris did speak with the Chuck Totto of the Ethics Commission. Although it is only Chris' side of the story, Chris stated that what he may have done was minor but Chuck told him that he should not do it again.

7. Only a partial number of the Real Property Assessment Division personnel have attended workplace violence training.

8. Phil's work performance has not always been at a satisfactory level.

9. Phil's has exhibited inappropriate behavior, which has resulted in disciplinary action and a pending investigation on additional alleged violations.

10. During this investigation the Phil English filed a Workers' Compensation claim. Refer to attachment 17.

## CONCLUSIONS:

1. There is a concern that Phil's behavior has upset several employees of the Real Property Assessment Division. They were upset sufficiently to file a written complaint and/or willing to discuss the matters during the investigation. In past years, most employees would have kept this type of information to themselves.

2. Although it is proper for the employees bring their concerns forward so they can be investigated, there does not appear to be sufficient evidence to conclude that Phil has actually verbally threaten or taken physical action against other employees in the context of workplace violence. However, this does not mean that his behavior is acceptable. In fact, other administrative actions maybe appropriate. Phil has been verbal warned for one incident that occurred in October 2002. Phil needs to be monitored and suggesting EAP is appropriate.

3. A majority of the Real Property Assessment Division employees have not attended workplace violence training.

4. Phil still needs to be encouraged to seek assistance through either the EAP or his private medical provider. In the event that actions or behavior on Phil's part require further administrative actions, it may be extremely appropriate to mandate that he has an appointment with the City's EAP.

5. There is some sort of friction between Phil English and his supervisor Ann Gima.

6. Phil's actions must be documented carefully. Since he has raised Ethics issues, he considers himself protected under the whistle blower provisions. This is true for any retaliation. However, nothing found during the investigation revealed that Phil is under retaliation. Instead, there is a concern that Phil's behavior may lead to something violent. He is soft-spoken and calm in appearance but has raised his voice and thrown things when confronted. Several people consider his behavior to be something like Bryon

RENEAU KENNEDY RE PHILIP ENGLISH                    334

Uyesugi and the Xerox case (shootings). Whether violent or not, his work performance may be less than satisfactory and his behavior inappropriate and/or insubordinate requiring administrative action.

## RECOMMENDATIONS:

1. The Division must continue to monitor Phil's behavior to help reduce the possibility of any possible violence.

2. The Division can continue to encourage Phil to seek EAP via Ana Horne and/or his own medical resources. Note: Ana Horne told the supervisor to let Phil know that he could call first and talk about confidentiality before making any appointment with Ana. Phil has stated that he doesn't trust anyone in the City. According to Mr. English, he is seeking assistance through his private medical provider, Kaiser.

3. The Division needs to continue to take appropriate administrative actions to help Phil correct and/or improve his work. There is a performance issue and Phil has not been keeping up with his workload. This may mean monthly documented sessions reviewing his work progress and follow the provisions of the newly released performance evaluation guidelines. Should additional adverse action be taken against Phil, part of that action is that he be directed to go to the City's EAP.

4. The Division may consider moving Phil to another team. This would include consideration of moving him to Kapolei.

5. The Division must ensure that no retaliation is taken against Phil for filing an Ethics complaint. There is no indication that any retaliation has taken place.

6. The Department will work with the Division and Ana Horne to conduct workplace violence training for the Real Property Assessment Division employees.

7. This investigator will submit an interim report until Phil English can be interviewed. Also any others that Phil may add to the interview list.

8. The investigator will continue to coordinate this case with DHR, Corporation Counsel and others as appropriate until the case can be closed.

Attachments

7

Workplace Violence Checklist

Name: Ann C. Gima
Job Title: Real Property Appraiser VI
Position Number: DF-628

On January 29, 2003, I filed a complaint with the Administrator of the Real Property
Assessment Division. In my complaint I briefly outlined an ongoing situation which I
believed merited an investigation and appropriate response.

On January 23, 2003, prior to my written complaint, I met with Mike Golojuch and
Violet Lee to seek their advice and recommendations as well as to apprise them of the
difficulties I was encountering with Philip English.

Upon first coming to work for the division, Phil voiced his willingness to work hard and
to learn the processes and procedures necessary for working at the Real Property
Assessment Division. His initial work was satisfactory and his attitude conveyed the
impression of a hard worker who had an appraisal background and experience that would
prove valuable to the division.

Over a period of time certain behaviors have led me to believe that he was becoming
more and more disruptive and counterproductive. The most recent occurrence that
precipitated my complaint was the threatening phone calls and ethics complaint he
initiated against Christopher Graff. Chris advised me as his supervisor that he had
received phone calls and had a conversation over lunch with Phil where Phil was
pressuring Chris to "tell the truth" and "come forward before it's too late". Chris was the
closest thing to a "friend" that Phil has within the office and for him to take this action
against Chris leads me to believe that Phil will stop at nothing to achieve his goal
whatever that goal may be.

I believe that he is trying to make the claim that management is retaliating against him for
making a complaint against the Adminstrator. Without any independent substantiation
for his claim, there is no retaliation.

I have observed other incidents in which Phil has had other outbursts of temper.
In January of 2002, when he was told that he needed to perform a regular assignment
required of the entire appraisal staff during the appeal period. He slammed down a box
containing documents yelled at me and walked off.

In July of 2002 he left a payroll verification request on my desk, I informed him that all
payroll verifications are not to be submitted to his supervisor but should be submitted to
personnel. In front of other co-workers, he accused me of obstructing his employment
verification. He apparently phoned Violet Lee and was informed that Harry Gima (my
husband) does the processing of verifications. He took an accusatory tone with me and
when I asked if the agency he was applying with had received the forms he replied that
he had not checked to see if they had.

ATCH-1

In October of 2002 when questioned as to his whereabouts after a prolonged absence from the office, he raised his voice when I pointed out to him that no vacation leave had been authorized for his absence. He was notified in writing that his leave was not approved since he had not completed his work assignments. He did not sign out or in on either the "board" or on the sign in sheets.

I have had numerous meetings with Phil to work on the communication and attitude issues. I believe that I am dealing with an individual who is deliberately behaving in a counterproductive manner and who is becoming increasingly argumentative and perhaps even delusional. He has voiced his beliefs that things are being "done to him" at work. He believes that he is being "harassed", "false claims" are being made about him, he believes that criticisms are "without merit" etc. He has made many statements (also in writing) that twist the truth and some that are just plain lies.

Admittedly I have been at a loss in dealing with him as his behavior is not typical. I believe that a strong message needs to be sent to him to avoid additional escalation to perhaps more "violent" actions.

DEPARTMENT OF BUDGET AND FISCAL SERVICES

# CITY AND COUNTY OF HONOLULU

REAL PROPERTY ASSESSMENT DIVISION
842 BETHEL STREET 2ND FLOOR • HONOLULU, HAWAII 96813
PHONE: (808) 527-5502 • FAX (808) 521-7647
WWW.CO.HONOLULU.HI.US

JEREMY HARRIS
MAYOR



IVAN M. LUI-KWAN
DIRECTOR

CHRIS A. DIEBLING
DEPUTY DIRECTOR

GARY T. KUROKAWA
ADMINISTRATOR

February 4, 2003

TO:        MICHAEL GOLOJUCH, ADMINISTRATIVE SERVICES OFFICER

FROM:      GARY T. KUROKAWA, ADMINISTRATOR
           REAL PROPERTY ASSESSMENT DIVISION

RE:        WORKPLACE VIOLENCE

     I have received a formal written filing of a workplace violence complaint under the City's workplace violence policies.

     As indicated in the complaint, due to the possible accusations of a perceived persecution or retaliatory nature of this complaint I am requesting the Department of Budget and Fiscal Services personnel officer and the Department of Human Resources directly address the employee's concerns.

     Attached is the original complaint. If you have any questions regarding this communication, please call me at 527-5502.

GARY T. KUROKAWA
Administrator
Real Property Assessment Division

GTK:dw

A-TCH# 2

RENEAU KENNEDY RE PHILIP ENGLISH                                    338

1/29/03

I have reviewed the City and departmental policies on workplace violence and would like to submit a report of a situation which I feel warrants attention.

Over the course of approximately one year, Philip English has displayed unacceptable behaviors (raising his voice & other outbursts) for which he has been verbally counseled.

I believe that he has irrational beliefs of "persecution" / "retaliation" which have recently escalated into a situation where it has been brought to my attention that he has made intimidating/coercive phone calls to a fellow employee. This situation has reached a level where I am concerned that future behaviors and actions may become more "violent" in nature.

All of the above mentioned has been brought to the attention of my superiors.

Additionally, co-workers who are aware to varying degrees of the ongoing situation have expressed fears as to his behavior. They have been made aware of the option of individually filing a report.


Respectfully,

Ann C. Gima

**Workplace Violence Checklist, February 6, 2003**

1. Name:   Ann Gima
2. Job Title: Real Property Appraiser VI
3. Position Number: _DF-628
4. How long with the City/Department/Division: Current from 1995; previously between 1987 and 1993
5. Phone number: 527-5513
6. Confidentiality – The results of my investigation will be kept as confidential as possible. What I mean is that I will only release information and/or names of individuals when required by law and City requirements. There may be a requirement to provide your name in the future for "due process" requirements.
7. There have been allegations made that a possible condition exists that has resulted in non-physical threats and/or could lead to physically confrontations. What do you know about this and who is involved if you know?

   Phil (Philip) English is the alleged perpetrator. He had words with Chris (Christopher) Graff, Real Property Appraiser IV in the group that Phil is assigned to. Phil has brought some allegations against Chris, which has resulted in an Ethics investigation. Phil was pressuring Chris to "tell the truth" about Gary Kurokawa, Real Property Assessment Division Chief it is Phil's claim that Gary had Chris performing outside work during City time. This occurred in January 2003.

   Ann's concern is based upon a behavior pattern of outbursts by Phil starting back from January 2002. He was upset and threw a box down and his voice was raised when speaking to Ann. Phil also got upset and took an accusatory/belligerent tone when confronted Ann in July 2002 about payroll verification. In October 2002 Phil had asked for four hours vacation leave on a Friday, which was denied because his work was not considered satisfactory Thursday afternoon. He got upset and raised his voice.

   Although he appears to be a quiet person, he has raised his voice and attitude can be strained with other employees.

8. Who is the alleged assailant/ perpetrator?
   Philip English
9.
10. How long has this person been working at this location? Sometime since 2000 under my supervision since 2001.

11. Have they're been more than one incident? If so, how many and when? There have been several occasions where his voice is raised and he believes everyone is against him.

12. Do you feel threaten?

ATCH 3

*RENEAU KENNEDY RE PHILIP ENGLISH*                    348

Yes, Ann feels personally threaten; stress level is high. She is not really afraid of him but is concerned about his behavior.

13. Do you believe that physical harm is possible? She believes he is capable of physical violence; can't rule it out but she is not afraid or feel in imminent danger.

14. Have any of his/her patterns of behavior changed before this incident occurred? Normally soft spoken with other people but he raises his voice with me. During the first six months he worked closely with me. Afterwards his attitude took an about face (180 degrees). Before it was "what can I do/help?" He was capable and showed initiative; Now, it is we haven't taught him anything; makes own schedule without working it out with supervisor. Said he didn't know what the work hours are. His work quality and attitude have gone down. Everyone else is wrong. Makes mistakes but not responsible for errors because he wasn't taught or told how to do the task. He spends a lot of time sending emails and typing but this is typically not a requirement of his job.

15. Has an incident been reported to police and/or security? No.

16. Do others feel threaten? Yes – Chris Graff and Dawn who left the office. Her husband was concerned about her reporting to work after his outburst in October.

17. Can I have their names so I can interview them?
    Others that have information are: Linda Knowles, Carole Kamisato, Suzanne Foumai, Julie Tamayori, Bob Magota and Chris Graff. There is also Dawn who is no longer an employee.

18. Do you feel safe at work? Yes but would not like to be alone with Phil.

19. What would you recommend to prevent similar incidents? Have Phil get counseling.

20. Have you attended any workplace violence training? No.

21. Do you know if the alleged perpetrator has attended any workplace violence training? No.

22. Is there anything else that you would like to add? Not now. Note: Previously, had a long conversation with Bob Magota and Ann Gima concerning Phil.

**Workplace Violence Checklist, February 6, 2003**

1. Name: Bob (Robert) Magota
2. Job Title: Real Property Assessor
3. Position Number: DF-463
4. How long with the City/Department/Division: Since January 1982
5. Phone number: 527-6859
6. Confidentiality – The results of my investigation will be kept as confidential as possible. What I mean is that I will only release information and/or names of individuals when required by law and City requirements. There may be a requirement to provide your name in the future for "due process" requirements.
7. There have been allegations made that a possible condition exists that has resulted in non-physical threats and/or could lead to physically confrontations. What do you know about this and who is involved if you know?

   Phil (Philip) English is assigned to Ann Gima's group (team). There has been friction. Phil challenges Ann's authority. Phil has been with the City for a couple of years. Phil comes from the private sector. He is capable but does not always performing, as he should. He misses deadlines but states that he is never told. He didn't get training. See attached training list.

   Phil came on the same time as Willie (Wilfred Martin) and has received the same staff training. There are also Gary and Craig at Kapolei.

   Phil is defensive. He blames everyone else and/or he is not responsible. Ann has documentation in forms of emails. Ann and Bob talked with Phil that he can go far if he would do the job. He said he would try but it didn't last long.

   Because of his behavior and attitude, Bob recommended that Phil go to counseling/Employee Assistance Program (EAP). Phil said that he didn't need – nothing wrong with him.

   Bob knows that there was at least one incident with Ann and Phil but Bob didn't see it. Phil is told things and he misinterprets. Bob has told him that the Appraiser IV is not the supervisor.

   Others might see Phil as a quiet person. However, he is sometimes an irrational thinker and missing his deadlines. His language with Ann can be considered as abusive at times. He can be charming and then fly off the hammer.

8. Who is the alleged assailant/ perpetrator?
   Philip English

9. How long has this person been working at this location? Sometime since 2000 or 2001.

ᴵᵗᵉᵐ 4

10.   Have they're been more than one incident?  If so, how many and when?
       There have been several occasions where his voice is raised and he believes
       everyone is against him.

11.   Do you feel threaten?
       No.  Concerned about being misquoted about what I have I told him.

12.   Do you believe that physical harm is possible?  Yes, unpredictable behavior.

13.   Have any of his/her patterns of behavior changed before this incident
       occurred?  At first enthusiastic, what can he do.  Later, has trouble with the
       tasking; flies off handle.  He has problems with simple suggestions.  He makes
       mistakes.  He has the knowledge but is no applying.

14.   Has an incident been reported to police and/or security?  No.

15.   Do others feel threaten?  Yes – Dawn who left the office.  Her husband would
       not left her return to work one day (Monday) after one of Phil's outbursts on
       the previous Friday.  Note:  second person to mention this.

16.   Can I have their names so I can interview them?
       Others that have information are:  Linda Knowles, Carole Kamisato, Susanne
       Foumai, Julie Tamer, Bob Magota and Chris Graff.  There is also Dawn who
       is no longer an employee.

17.   Do you feel safe at work?  Yes but not sure about other employees.

18.   What would you recommend to prevent similar incidents?  Have Phil get
       counseling ASAP.  Phil appears lonely who has a problem with authority.

19.   Have you attended any workplace violence training?  Yes, but it turned out to
       be sexual harassment training.  No.  Did get a handout and went to recent
       Management Information Forum where they discussed workplace violence.

20.   Do you know if the alleged perpetrator has attended any workplace violence
       training?  Maybe.

21.   Is there anything else that you would like to add?  Not now.  Note:
       Previously, had a long conversation with Bob Magota and Ann Gima
       concerning Phil.

**ENGLISH, PHILIP E. DF-486**
START DATE: 06/01/00 (RPAD)

POSITION HISTORY:
06/01/00-REAL PROPERTY APPRAISER II, SR-18C
02/01/01-REAL PROPERTY APPRAISER III, SR-20C (Reallocation)
03/01/02-REAL PROPERTY APPRAISER IV, SR-22C (Reallocation)
06/01/02-REAL PROPERTY APPRAISER IV, SR-22D (Negotiated Step)

**Personnel Training Courses**
| | |
|---|---|
| 07/18/00 | Preventing Sexual Harassment |
| 07/25/00 | Mandatory Emergency Shelter Management |
| 08/10/00 | Working Drug Free is our Responsibility |
| 09/05/01 | Mandatory Sexual Harassment Policy |

**IAAO**
| | |
|---|---|
| 04/10/00 | Fundamentals of Mass Appraisal |
| 04/11/00 | Fundamentals of Mass Appraisal |
| 04/12/00 | Fundamentals of Mass Appraisal |
| 04/13/00 | Fundamentals of Mass Appraisal |
| 04/14/00 | Fundamentals of Mass Appraisal |
| 07/10/00 | Residential Modeling Concepts |
| 07/11/00 | Residential Modeling Concepts |
| 07/12/00 | Residential Modeling Concepts |
| 07/13/00 | Residential Modeling Concepts |
| 07/14/00 | Residential Modeling Concepts |
| 06/26/01 | Instructor Training Workshop |
| 06/27/01 | Instructor Training Workshop |
| 06/28/01 | Instructor Training Workshop |
| 12/11/01 | Uniform Standards of Practice Professional Ethics Class Information |
| 12/12/01 | Uniform Standards of Practice Professional Ethics Class Information |
| 12/13/01 | Uniform Standards of Practice Professional Ethics Class Information |

**IAS -- Integrated Assessment System**
| | |
|---|---|
| 06/22/00 | IAS Cama Data Entry for Appraisers |
| 06/23/00 | IAS Cama Data Entry for Appraisers |
| 08/22/00 | Cost Valuation |
| 08/23/00 | Cost Valuation |
| 08/17/00 | Landisc |
| 09/18/00 | Model Refinement |
| 05/22/01 | Calp/Land Pricing |
| 05/29/01 | IAS Income Valuation Overview |
| 06/13/01 | CDU Rating System |
| 06/14/01 | IAS Selected Sales Validation |

### Workplace Violence Checklist, February 10, 2003

1. Name: Linda Knowles
2. Job Title: Real Property Appraiser IV
3. Position Number: DF-479
4. How long with the City/Department/Division: Since 1987
5. Phone number: 523-4654
6. Confidentiality – The results of my investigation will be kept as confidential as possible. What I mean is that I will only release information and/or names of individuals when required by law and City requirements. There may be a requirement to provide your name in the future for "due process" requirements. Also the information discussed should not be discussed with others.
7. There have been allegations made that a possible condition exists that has resulted in non-physical threats and/or could lead to physically confrontations. What do you know about this and who is involved if you know?

   Phil (Philip) English is stressed. There is tension between Phil and Ann Gima, supervisor. His email replies to Ann are often obnoxious in tone.
   Phil states that he is not trained or no one told him how to do it. Even when e-mail messages have been sent out, he states that nobody told him.

   Phil has even gone after the one person, Chris, who is the nicest to Phil. Chris has invited Phil for dinner over the holidays and has treated him as a friend. Phil filed some charges with the Ethics Commission against Chris (and Gary). Phil told Chris that he better turn in Gary or Chris would lose his job. It makes you scared that if he would do this to Chris, what would he do to you if it fits his agenda.

   Phil also charged that he has been ostracized by our group -- when in fact he is always invited to participate when we have food to share etc. If he is excluded then it is by his own choice.

8. Who is the alleged assailant/ perpetrator?
   Philip English

9. How long has this person been working at this location? Not sure – maybe 2 to 3 years, not sure.

10. Have they're been more than one incident? If so, how many and when? Phil has been reprimanded by the bosses on several occasions, then comes out and acts like nothing has happen. Have heard of incidents of temper but have not witnessed any.

11. Do you feel threaten?
    Not eminently, but feel that Phil could "stab anyone in the back."

ATCH 5

RENEAU KENNEDY RE PHILIP ENGLISH

345

12. Do you believe that physical harm is possible? Yes, it is.

13. Have any of his/her patterns of behavior changed before this incident occurred? When he first started, he was different. Phil would do anything to help out or learn. He would talk a lot about the job and he appeared to be happy. Now he complains about not being trained on one hand, but applies for supervisor job on the other.

14. Has an incident been reported to police and/or security? No.

15. Do others feel threaten? Yes – Carole, Julie and Dawn who left. Dawn witnessed an incident between Phil and Ann.

16. Can I have their names so I can interview them? See above.

17. Do you feel safe at work? Don't think about it too much. But in the back of my mind, Phil may do something.

18. What would you recommend to prevent similar incidents? Phil should go to counseling. He spends periods of time not working, and when work is not done— someone one else is at fault – does not take responsibility.

19. Have you attended any workplace violence training? Handout but no training.

20. Do you know if the alleged perpetrator has attended any workplace violence training? No.

21. Is there anything else that you would like to add? The group is happier when Phil doesn't come to work when he is out sick or on vacation. No tension. Others seem to get upset with Phil in the background because something might happen. Phil looks innocent and quiet – but who knows what might happen. Might be a good idea if he were to transfer to another group, since the dynamics in our current group have deteriorated.

When his work isn't done – it's someone else's fault. He has been scolded for not doing his work. He says he hasn't been trained for what he needs to do, yet applies for a supervisor position. He has had problems with his first and second wives and that may be affecting his mental/emotional state. Luckily he has his son, who I think has kept him from going over the edge.

## Workplace Violence Checklist, February 10, 2003

1. Name: Carole Kamisato
2. Job Title: Real Property Appraiser Assistant
3. Position Number: DF-560
4. How long with the City/Department/Division: Moved to City in 1981, prior with State from 1971
5. Phone number: 527-5530
6. Confidentiality – The results of my investigation will be kept as confidential as possible. What I mean is that I will only release information and/or names of individuals when required by law and City requirements. There may be a requirement to provide your name in the future for "due process" requirements. Also the information discussed should not be discussed with others.
7. There have been allegations made that a possible condition exists that has resulted in non-physical threats and/or could lead to physically confrontations. What do you know about this and who is involved if you know?

    Supervisor Ann Gima and Phil (Philip) English have had encounters on at least two occasions that Carole is aware of.

    a. Phil was supposed to go downstairs to be at the counter for the public but he refused. Ann and Phil exchanged words that got loud. The requirement is that the appraisers take turns going to the basement to be at the counter. They are assigned specific days. Phil didn't want to go because he was working on something to do with Condos but it was his day to be at the counter. This happen in 2002 – it was during the last appeal period. Voices got loud on both sides. Phil got upset. She heard a loud noise. Phil had thrown or dropped a box.

    b. Another incident in 2002 after the one above were voices got louder and louder. It started at his desk. She left and went to her desk. He followed and Phil was talking so loud that it scared Carole and she walked away from the area. It was going on for at least 10 minutes. She stayed away from the area for at least 20 minutes. She said at least one other girl remained in the area also who sat next to Ann. This was Dawn. This is the lady whose husband told her not to go back to work the next workday. Dawn was scared and afraid of some type of workplace violence.

    c. Carole mentioned that they had gone to some Real Property classes near Kapiolani Park. She offered him a ride home. She said that when they got to his residence he would not get out of the car, which was running. Instead Phil talked for about 20 minutes about his ex-wife (first wife) and mother-in-law. He was justifying the divorce. He mentioned that his ex-wife was telling stories and the court decree was wrong. He did not physically abuse his ex-wife. She finally told him that she needed to get home. She has kept her distance from him since that incident.

8. Who is the alleged assailant/ perpetrator?
    Philip English

ATC# 6

RENEAU KENNEDY RE PHILIP ENGLISH

9.    How long has this person been working at this location? Sometime since 2000 or 2001.

10.   Have they're been more than one incident? If so, how many and when? See above.

11.   Do you feel threaten? Not threaten but scared because so much is going on in Phil's life. He might snap – his divorce. His son is still adjusting to the divorce – things are hard at school. His second wife (from Thailand) just moved out. He invested in a boat that he lives on at the Ala Wai. No bathroom on board and no electricity or running water. Phil is being pushed to the limits financially and emotionally. A lot going on and he may explode. Something may trigger him. The Brian (Xerox) case comes to mind.

12.   Do you believe that physical harm is possible? Yes, he can only take so much – snaps; things are compounding in his life.

13.   Have any of his/her patterns of behavior changed before this incident occurred? He is on the email a lot – doing lots of writing. He is not as vocal as he was in the past. He is by himself more. Phil is on computer email more than is required for the job he does. Carole can feel the tension with Phil and his supervisor Ann Gima. Last week Ann brought in left over birthday cake to share with the office. When Phil first saw the cake, he asked if it was ok to take some. Carole said it was for anyone in the office. Phil started to get a piece until he realized it had something to do with Ann and he didn't take anything. He said that he was going to get a donut and would be right back.

14.   Has an incident been reported to police and/or security? No.

15.   Do others feel threaten? Yes – others do. They have stated that they feel threaten and something will happen (physical). Terrified was another word used.

16.   Can I have their names so I can interview them? No one new.

17.   Do you feel safe at work? Before yes but recently feel more tense – afraid he may snap because a normal person can only take so much. The answer would be no.

18.   What would you recommend to prevent similar incidents? She thinks that there is a personality clash between Phil and Ann. Phil defensive. Put Phil in another group.

19.   Have you attended any workplace violence training?  Yes, longer ago, sometime in the 1990s.

20.   Do you know if the alleged perpetrator has attended any workplace violence training?  Not sure

21.   Is there anything else that you would like to add?  No but there are 10 people in the group and all appear to feel uncomfortable.

Workplace Violence Checklist, February 10, 2003

1. Name: Julie Tamayori
2. Job Title: Real Property Appraiser IV
3. Position Number: DF-475
4. How long with the City/Department/Division: With Real Property since 1989; prior with Motor Vehicles 1985 -1989
5. Phone number: 527-5530
6. Confidentiality – The results of my investigation will be kept as confidential as possible. What I mean is that I will only release information and/or names of individuals when required by law and City requirements. There may be a requirement to provide your name in the future for "due process" requirements. Also the information discussed should not be discussed with others.
7. There have been allegations made that a possible condition exists that has resulted in non-physical threats and/or could lead to physically confrontations. What do you know about this and who is involved if you know?

Phil (Philip) English is a nice guy, sweet and mild-mannered in appearance. However, Phil has recently done some "back stabbing" to co-worker Chris (Christopher) Graff. What is disturbing is that although Phil has filed a complaint that could possibly lead to Chris being fired, his behavior towards Chris is as if nothing has happened. He speaks to Chris as if he were "a friend".

I have never witnessed Phil being physically aggressive but there are times when he does get argumentative with the supervisor Ann. On one occasion, their discussion seemed to be getting especially loud and he seemed to be getting very angry. To avoid the unpleasantness of the situation, several of us left the scene to get away from that. One co-worker who was sitting at her desk (right next to Ann's desk) witnessed the whole incident. Apparently it scared her (the co-worker) enough so that her husband did not want her to come into the office the next day as he thought Phil might do something crazy.

Phil has talked about his ex-wife who made some allegations about Phil being abusive although he denies it. Phil said something like "Do I look like the kind of person who would be abusive?". At the time Phil was telling me about his ex-wife, I was very sympathetic to his side because as I said, he has a very mild-mannered appearance.

What is unnerving is that when he talked about how he got the bad end of the divorce because his ex-wife is an attorney and all the attorneys and the judge were on her side, it seems to parallel what he's claiming here at our office that "everyone" is siding with administration. As in his divorce when ALL the attorneys and judge were against him, we here are ALL against him at this office. He made a claim that he is being "shunned and ostracized" by

ATCH 7

everyone here. That claim came as a surprise to me; I wasn't aware that anyone was "shunning" him. In my opinion, these 'everyone against me' theme seems a bit paranoid. His perception of reality seems a little bit distorted.

Phil will lie about things, maybe it's minor things but I'm wondering why he feels he needs to lie. One example, he said he had to take the day off because he had a parent – teacher conference. I found out that his son's school had the day off so obviously there was no parent–teacher conference scheduled for that day.

Phil tells people that he received "no training" despite the fact that we have had numerous classes, meetings, and a lot of written instructions via handouts and e-mail. And although he goes to those classes and gets the same things the rest of the group gets, he still denies receiving any sort of training or direction. He'll say, "I was never told". He'll even deny getting notified by e-mail even though I see his name listed as one of the recipients. I don't know if he's lying or if his problem is forgetfulness and he really feels that he is not being provided information; I don't know.

8.    Who is the alleged assailant/ perpetrator?
       Philip English

9.    How long has this person been working at this location? Not sure – maybe 2 to 3 years.

10.   Have they're been more than one incident? If so, how many and when? Chris incident and Phil's lies.

11.   Do you feel threatened?
       Not threatened.

12.   Do you believe that physical harm is possible? Not sure

13.   Have any of his/her patterns of behavior changed before this incident occurred? Sometimes more agitated.

14.   Has an incident been reported to police and/or security? No.

15.   Do others feel threaten? Yes – others do. Think of other violent stories.

16.   Can I have their names so I can interview them?
       No one new.

17.   Do you feel safe at work? Not sure.

18.   What would you recommend to prevent similar incidents?  Possible psychology evaluation for Phil to see if he is ok.

19.   Have you attended any workplace violence training?  No class, just a handout.

20.   Do you know if the alleged perpetrator has attended any workplace violence training?  Don't know.

21.   Is there anything else that you would like to add?  Phil will engage in long conversations regarding Christianity with co-worker Marvin.  If he feels he is living in a good "Christian" and moral manner, some of his actions surely don't reflect that.  I was told that Phil has hired as his personal attorney, the very same attorney that is representing the appellant in a tax appeal court case that Phil is the appraiser for.  Is this ethical?

**Workplace Violence Checklist, February 10, 2003**
1.     Name: Susanne Foumai
2.     Job Title: Secretary
3.     Position Number: DF-464
4.     How long with the City/Department/Division: 9 years
5.     Phone number: 527-5507
6.     Confidentiality – The results of my investigation will be kept as confidential as possible. What I mean is that I will only release information and/or names of individuals when required by law and City requirements. There may be a requirement to provide your name in the future for "due process" requirements. Also the information discussed should not be discussed with others.
7.     There have been allegations made that a possible condition exists that has resulted in non-physical threats and/or could lead to physically confrontations. What do you know about this and who is involved if you know?

    Phil (Philip) English started on June 1, 2000. Within the first two weeks Phil had some mandatory training with Roy (Director). Susanne had sent a email to Phil and Willy giving them the date and time of the training. Sue was called and asked "where is Phil?" Phil was at his desk , approximately 9:30 a.m. and the training start time was 8:30 a.m. It was an orientation type training.

    Phil said that he showed the start time at 11:30 a.m. Sue said her computer records 8:30 a.m. as start. Phil wanted Sue to call and let them know that he was "not a flake." Sue checked her computer again and the email showed 8:30 a.m. Willy also confirmed that the start time was 8:30 a.m. Sue wondered why Phil would state such a thing about the time.

    Another time Sue was explaining a process to Phil. He kept asking why, how and to explain it to him – it was about copying computer files. How to clean and save files. Phil said he couldn't do it. Sue must do it or lose the files. He wants an explanation on why it is done.

8.     Who is the alleged assailant/ perpetrator?
    Philip English

9.     How long has this person been working at this location? June 2000.

10.     Have they're been more than one incident? If so, how many and when? See above.

11.     Do you feel threaten?
    No.

12.     Do you believe that physical harm is possible? Physical maybe..

ATCH 8

13. Have any of his/her patterns of behavior changed before this incident occurred?   Still the same.

14. Has an incident been reported to police and/or security?  No.

15. Do others feel threaten?  Yes in Group 3.

16. Can I have their names so I can interview them?

17. Do you feel safe at work?  Yes

18. What would you recommend to prevent similar incidents?  Anger management to control temper.

19. Have you attended any workplace violence training?  January 22, 2002.

20. Do you know if the alleged perpetrator has attended any workplace violence training?  No.

21. Is there anything else that you would like to add?  Everyone is happy when Phil doesn't come to work because he is out sick or on vacation.  Others seem to get upset with Phil in the background because something might happen.  Phil looks innocent and quiet.

When things happen, it is always someone else's fault.  He has been scolded for not doing his work.  He applies for supervisor jobs but says he doesn't understand.  He has had problems with his first and second wives.  Also there have been some situations with his son.

RENEAU KENNEDY RE PHILIP ENGLISH                          354

**Workplace Violence Checklist, Wednesday, February 12, 2003**

1. Name: Eugenie (Genie) Shito-Leong
2. Job Title: Real Property Appraiser I
3. Position Number: DF-488
4. How long with the City/Department/Division: 9 ½ years
5. Phone number: 692-5523
6. Confidentiality – The results of my investigation will be kept as confidential as possible. What I mean is that I will only release information and/or names of individuals when required by law and City requirements. There may be a requirement to provide your name in the future for "due process" requirements. Also the information discussed should not be discussed with others.

7. There have been allegations made that a possible condition exists that has resulted in non-physical threats and/or could lead to physically confrontations. What do you know about this and who is involved if you know?

   One day I was helping Phil (Philip) English put some documents that were received in the mail in order. I had sorted the letters and came by to drop it off at his desk, on my way back to my desk I must have stopped to talk to someone. Genie heard a loud noise like something being slammed down like a box. She heard Phil talking to Ann in a loud voice.

   Genie left the area because she did not feel comfortable about what was going on. This happen in the Fall 2001. It was during the appeals time frame.

   Ann and Phil's voices were loud but she didn't hear what they were talking about. Was worried about him getting violent so she left.

   Phil under pressure. He was getting a lot of calls from taxpayers about a letter they received regarding their property classification. Maybe he had a short temper because of the situation. She has heard loud talking.

   Genie said that Phil is normally quiet and very nice person. When he gets loud, people want to get away from him.

8. Who is the alleged assailant/ perpetrator?
   Philip English

9. How long has this person been working at this location? Don't know.

10. Have they're been more than one incident? If so, how many and when? Not to her knowledge.

11. Do you feel threaten?
    No because I am at Kapolei.

*ATCH 9*

12. Do you believe that physical harm is possible?  It is possible.  He is under stress.  Maybe he would snap with the angry taxpayers.

13. Have any of his/her patterns of behavior changed before this incident occurred?  No because I rarely see him.

14. Has an incident been reported to police and/or security?  No.

15. Do others feel threaten?  Don't know.

16. Can I have their names so I can interview them?
Others that might have additional information are Dwight Ishiguro and Wilfred Martin who were sitting in that area

17. Do you feel safe at work?  Yes

18. What would you recommend to prevent similar incidents?  Maybe a course in how to handle people (taxpayers) especially when they are upset.  Some come into the office yelling and screaming.

19. Have you attended any workplace violence training?  Can't remember.

20. Do you know if the alleged perpetrator has attended any workplace violence training?  No.

21. Is there anything else that you would like to add?  No but after the incident with Phil, I am almost certain that he came to me and apologized.

RENEAU KENNEDY RE PHILIP ENGLISH

**Workplace Violence Checklist, Wednesday, February 12, 2003**

1. Name: Dwight A. Ishiguro
2. Job Title: Real Property Appraiser IV
3. Position Number: DF-519
4. How long with the City/Department/Division: Since 1981
5. Phone number: 692-5517
6. Confidentiality – The results of my investigation will be kept as confidential as possible. What I mean is that I will only release information and/or names of individuals when required by law and City requirements. There may be a requirement to provide your name in the future for "due process" requirements. Also the information discussed should not be discussed with others.
7. There have been allegations made that a possible condition exists that has resulted in non-physical threats and/or could lead to physically confrontations. What do you know about this and who is involved if you know?

   When Phil first came to the division, we sat behind one another. Phil is a low-key individual and soft-spoken guy. He is religious (Christian) and I am Buddhist and we would have discussions.

   Never heard him get upset. We moved to Kapolei in February 2002.

   I have had some discussions with Phil because I am a HGEA steward for BU13.

8. Who is the alleged assailant/ perpetrator?
   Does not know.

9. How long has this person been working at this location? About 2 years, 6 months.

10. Have they're been more than one incident? If so, how many and when? No incidents to his knowledge. Never saw any outward displays. Phil seems cordial.

11. Do you feel threaten?
    No.

12. Do you believe that physical harm is possible? Don't know. Anyone can be pushed beyond his or her limits.

13. Have any of his/her patterns of behavior changed before this incident occurred? Probably more stressed now but not sure of the reason.

14. Has an incident been reported to police and/or security? No.

ATT H 10

RENEAU KENNEDY RE PHILIP ENGLISH                      357

15.  Do others feel threaten?  No.

16.  Can I have their names so I can interview them?
     N/A

17.  Do you feel safe at work?  Yes

18.  What would you recommend to prevent similar incidents?  Prevention by
     hearing both sides of the story.  People need to stay on track.
     Communications between managers and employees need improvement.

19.  Have you attended any workplace violence training?  Yes.  Maybe twice with
     Andre Lennon and with Vince Goo.

20.  Do you know if the alleged perpetrator has attended any workplace violence
     training?  Not sure.

21.  Is there anything else that you would like to add?  Dwight sat in front of Phil
     at Bethel Street.

<u>Workplace Violence Checklist,  Wednesday, February 12, 2003</u>

1.   Name: Christopher Graff
2.   Job Title: Real Property Appraiser IV
3.   Position Number: DF-472
4.   How long with the City/Department/Division:  From 1996 to present; previously prior to 1985
5.   Phone number: 523-4719
6.   Confidentiality – The results of my investigation will be kept as confidential as possible.  What I mean is that I will only release information and/or names of individuals when required by law and City requirements.  There may be a requirement to provide your name in the future for "due process" requirements.  Also the information discussed should not be discussed with others.
7.   There have been allegations made that a possible condition exists that has resulted in non-physical threats and/or could lead to physically confrontations.  What do you know about this and who is involved if you know?

There is currently a rule at the Real Property Assessment Office, (RPA) about not using the fax machine for private use.  It is spelled out in an email from Robert Magota, RPA Assessor.  Mr. Magota or the supervisor (Ann Gima) must approve exceptions.  Phil had some problems or dealings with the IRS and Phil needed to contact them about a settlement.  Phil asked to fax the IRS and it was not approved.  Phil slammed down things and was upset.  Phil left the office and slammed the door.  Dawn Kim (Murakami) was present and she felt trapped and afraid to move.  After explaining the situation to her husband, he told her not to go back to work the next workday.

This happen in November/December 2002 time frame.  Although Chris did not witness this incident, Phil English described it to him as a major "blow-out/yelling match".

Chris did witness an incident during the period when tax assessments go out between December 15 and January 16.  Each Real Property Appraiser is assigned counter duty in the basement of the Bethel Street office.  The Appraiser is assigned to take taxpayer questions.  The job is rotated between the Appraisers and you must be there from 7:45 a.m. to 4:30 p.m.  Phil was scheduled on the day in question but he didn't report to the counter.  He was called to go but didn't want to go.  He said he was working on something else.  Phil was forced to go to counter duty.  Phil slammed boxes on desk   Chris heard that Ann and Phil had words.

8.   Who is the alleged assailant/ perpetrator?
Philip English

9.   How long has this person been working at this location? Between 2 and 3 years.

*ATCH 11*

10.   Have they're been more than one incident?  If so, how many and when?
      One witness one of the three incidents mentioned above.  However, Phil made
      mention of having a shouting match between Ann and himself.

11.   Do you feel threaten?
      Not physically threaten but I do feel uneasy.

12.   Do you believe that physical harm is possible?  Yes (based on slamming
      boxes and door).

13.   Have any of his/her patterns of behavior changed before this incident
      occurred?  Has become more morose over the years.  Phil gives the
      comments and suggests that people are out to get him. He seems paranoid.
      Phil is always acting as the victim.  Phil has some job problems that he needs
      to correct.

14.   Has an incident been reported to police and/or security?  No.

15.   Do others feel threaten?  Yes, ladies in the office.

16.   Can I have their names so I can interview them?
      Other not spoken to:  Ann Kabasawa and Ryan Fujitani
      Carole, Julie and Linda.

17.   Do you feel safe at work?  Feels uneasy.  Doesn't think anything will happen
      but not 100% sure.

18.   What would you recommend to prevent similar incidents? Provide counseling
      for Phil.

19.

20.   Have you attended any workplace violence training?  No.

21.   Do you know if the alleged perpetrator has attended any workplace violence
      training?  Don't know.

22.   Is there anything else that you would like to add?  No for this interview but
      had another related issue to address.

Chris provided me with a Confidential Workplace Violence Incident Report Form.
Incident information:  Believes "Other" is applicable.   He accuses Phil of verbal
intimidation, threats.  There are no injuries.
Date of incident:  1/17/03 and 1/2/03 at Grilla's Restaurant and telephone conversation
(1/18/03).  Chris did notify his supervisor Ann Gima.  Chris said a lost a couple of hours

RENEAU KENNEDY RE PHILIP ENGLISH                                          360

of work because he could not concentrate on work.  He could only think of the comments made by Phil English.

Chris states that there is prior history of violence, which he mentioned in his statement above.  Chris stated that assailant has thrown temper tantrums in past.  Threw boxes around, etc.

Chris has provided a page and half of a type written statement.  Phil English was attempting to coerce Chris to make a statement against Gary Kurokawa, Division Chief about during private work for Gary on City time.  Phil stated that the FBI was investigating the Real Property Assessment Division as well as the City Corporation Counsel and Ethics Commission.

Chris states that Mr. English's lies amount to verbal intimidation.

RENEAU KENNEDY RE PHILIP ENGLISH

361

**Golojuch, Michael**

| | |
|---|---|
| From: | Graff, Chris |
| Sent: | Wednesday, February 19, 2003 3:51 PM |
| To: | Golojuch, Michael |
| Subject: | RE: statement |

Friday January 24 at 10:00 am

————Original Message————
| | |
|---|---|
| From: | Golojuch, Michael |
| Sent: | Wednesday, February 19, 2003 3:21 PM |
| To: | Graff, Chris |
| Subject: | RE: statement |

Chris,
What was the date that you visited Chuck Toda? Mike

————Original Message————
| | |
|---|---|
| From: | Graff, Chris |
| Sent: | Wednesday, February 19, 2003 2:39 PM |
| To: | Golojuch, Michael |
| Cc: | Gima, Ann |
| Subject: | statement |

<< File: com.doc >>

1

RENEAU KENNEDY RE PHILIP ENGLISH                    362

CONFIDENTIAL WORKPLACE VIOLENCE INCIDENT REPORT - Page 1

To: _____  Date of Incident: 1/7/03 AND 1/8/03

Location of Incident: GRILLA'S RESTAURANT AND Telephone conversation (1/8/03)

Time of Incident: 1:00 (GRILLA'S RESTAURANT) AM/PM    Day of the week: _____

From: _____    Phone: _____

Number of persons affected: MYSELF (CHRIS GRAFF)

        (Name of the victim(s)/affected person(s))

Position: CHRIS GRAFF    Bargaining Unit: 13

Supervisor: ANN GIMA    Supervisor notified? Yes X   No ____

Family Notified? Yes X   No ____

Was there third party/non-employee involvement? Yes ____  No X

Lost work time? Yes X   No ____  Anticipated return to work date: LOST ONLY A COUPLE OF HOURS

Alleged Assailant/Perpetrator Information:    (CHRIS GRAFF)

Violence was directed towards: Staff X   Customer/Client ____
        Visitor ____   Other _____

Assailant(s) is/were: Staff X   Customer/Client ____  Visitor ____
        Other _____
            Name of Assailant(s) or Alleged Perpetrator(s), if known

Position or Job Title of the Assailant(s): REAL PROPERTY APPRAISER IV

Was the assailant ARMED?   Yes ____  No X
If assailant was ARMED, describe the weapon: _____

Have there been previous incidents of this type in the workplace? Yes ____  No X

Have there been previous incidents of this type by this person?  Yes ____  No X

Incident Information:

Type of incident: PHYSICAL Abuse ____  VERBAL Abuse ____

        OTHER (describe) verbal intimidation, THREATS

Injuries? Yes ____  No X

IF YES, what were extent of the injuries? _____

Risk factors applicable to the incident:

____ Working with money          ____ Working alone
____ Working early morning       ____ Working at night
____ Dissatisfied with customer service    ____ Domestic
X  Prior history of violence     ____ Gang related
____ Work in a high crime area   ____ Intoxicants/drugs
X  Other (describe): ASSAILANT has THROWN Temper TANTRUMS in PAST. THREW hArd
AROUND etc...

ATCH 12

CONFIDENTIAL WORKPLACE VIOLENCE INCIDENT REPORT - Page 2

Description of the incident:

( SEE ATTACHED )

Present at the time of the incident: POLICE __N?__    SECURITY __NO__

Police notified?   YES ____   NO ____

Did anyone leave the area because of the incident?
YES ____   NO __X__   Not determined _____

The status of the incident:

Incident diffused:  YES ____   NO ____
Explain outcome
_____
_____
_____

Assailant/perpetrator: _PHIL ENGLISH_____

Arrested?          YES ____   NO __X__   Escorted off premises?  YES ____   NO __X__

Remained on premises?  YES ____   NO ____   Left on own?   YES ____   NO ____

Other (describe)
_____
_____

Recommendations that would prevent a similar incident:
_____
_____
_____

Report completed by: _Chris GRAFF_____   Title: _REAl property Appraiser IV_

Witnesses: _____   Date: _____

Supervisor notified by: _Chris GRAFF_   Time: _TUESDAY 1/7/03 & FRIDAY 1/10/03_

RENEAU KENNEDY RE PHILIP ENGLISH                    364

To Whom It May Concern:

On or about January 10th to 12th 2003, Mr. Phil English left several telephone messages on my cell phone asking me to call him. He stated, "There is something I need to talk to you about". I did not return the calls. Upon returning to work on Friday January 17th, I asked Mr. English what he wanted to speak with me about. Mr. English indicated that we should talk outside of the office.

We met for lunch at Grilla's Restaurant. During lunch Mr. English told me that the Real Property Assessment Office (RPA) has been under investigation for a long time by the F.B.I. and the City and County of Honolulu, Corp Counsel Ethics Commission. Mr. English further stated that the F.B.I. had a list of people from RPA, which was called the "bad list". I was shocked when Mr. English claimed that my name was on this so called "bad list", along with Gary Kurokawa, head of RPA, Steve Yee, an RPA supervisor, and others I can not remember.

Mr. English also stated that the City and County Department of Information Technology (DIT) had been helping with the alleged investigation and had accessed my computer records at the request of Charles Totto, head of the Ethics Commission, and the F.B.I. He also said that two other people from RPA had already gone forward to Ethics and are "of record" saying that I had been doing private appraisal work with Gary Kurokawa's approval while on City time. Mr. English also claimed that DIT had "hard evidence" to support these allegations.

Mr. English warned me that the Ethics Commission was "nobody to mess around with" because by the time they got around to questioning me about this "they would already know the answers". If I lied to them, they would know and "hang me out to dry" At this point in our conversation, because I knew I had done nothing wrong, I felt Mr. English was attempting to intimidate me.

To intimidate me further, Mr. English related a tale to me about some guy who worked for the State of Hawaii who was put in jail for doing private work on State time. But this person was a mechanic doing "outside" work on State time with State equipment.

Mr. English further claimed that the Ethics Commission investigation had progressed so far that Charles Totto said "the best thing Gary Kurokawa could do right now was resign" because in addition to the allegations of private work being done on City time, they had allegedly found some irregularities with other properties held by Gary and his family.

Mr. English then told me that if I went forward to the Ethics Commission right now, i.e. prior to a complaint being filed, that I would be "moved off of the bad list" and placed into "whistle blower" status and therefore I could not be fired. Mr. English claimed that if I did not got to the Ethics Commission I would be fired and go to jail.

Mr. English contended that he was already protected as a so-called "whistle blower"

and that he wanted the same for me. Mr. English claimed that Robert Magota, RPA Assessor, said to him that "Chris is going down" for doing private appraisal work on City time, and insinuated that Mr. Magota was working with DIT and Ethics Commission.

When I informed Mr. English that the accusations alleged against me were false, Mr. English shouted, while slamming his fists into the tabletop, "Oh come on Chris, that's a lie!"

On Wednesday January 22, 2003 I received a phone call around 12:30 pm from Mr. English. He said that he had copy of an "official complaint" from Ethics and that my name was "all over it man." He then told me again that if I was to "save myself" that I needed to speak with Charles Totto at Ethics and "tell him everything" because they already knew and were going to "get me."

After meeting with the Ethics Commission, at the request of Charles Totto, I have since learned that the office is currently <u>not</u> under investigation by the F.B.I or the Ethics Commission, that there is no "bad list", that DIT has no "hard evidence" of wrongdoing, and most of Mr. English's statements were false.

Mr. English's lies amount to verbal intimidation. Mr. English has lodged several complaints against RPA and the Hawaii Government Employee's Association (HGEA). I believe his motivation was to intimidate me and scare me coming forth to the Ethics Commission with any information, which might in some way substantiate his complaints.

Sincerely,

Chris Graff

RENEAU KENNEDY RE PHILIP ENGLISH

366

**Workplace Violence Checklist, Thursday, February 13, 2003**

1.  Name: Annette Kabasawa
2.  Job Title: Real Property Appraiser IV
3.  Position Number: DF-469
4.  How long with the City/Department/Division: 23 years.
5.  Phone number: 523-4654
6.  Confidentiality – The results of my investigation will be kept as confidential as possible. What I mean is that I will only release information and/or names of individuals when required by law and City requirements. There may be a requirement to provide your name in the future for "due process" requirements. Also the information discussed should not be discussed with others.
7.  There have been allegations made that a possible condition exists that has resulted in non-physical threats and/or could lead to physically confrontations. What do you know about this and who is involved if you know?

    Not sure of any conflict. Annette has heard some others talking but she never witness anything herself. Does not know anything about allegations

8.  Who is the alleged assailant/ perpetrator?
    She has heard others say that it is Philip English.

9.  How long has this person been working at this location? No. She know groups changed last year (2002).

10. Have they're been more than one incident? If so, how many and when? Don't know.

11. Do you feel threaten?
    No.

12. Do you believe that physical harm is possible? No.

13. Have any of his/her patterns of behavior changed before this incident occurred? He will say good morning and maybe asks a question once in a while about work but that is it.

14. Has an incident been reported to police and/or security? Not applicable.

15. Do others feel threaten? She has heard others state that they feel uncomfortable about Phil.

16. Can I have their names so I can interview them? No.

17. Do you feel safe at work? Yes.

ATCH 13

*RENEAU KENNEDY RE PHILIP ENGLISH*

367

18.  What would you recommend to prevent similar incidents? Not applicable.

19.  Have you attended any workplace violence training? Maybe, several years ago.

20.  Do you know if the alleged perpetrator has attended any workplace violence training? No idea.

21.  Is there anything else that you would like to add? Nothing.

RENEAU KENNEDY RE PHILIP ENGLISH

**Workplace Violence Checklist, Thursday, February 13, 2003**

1. Name: Ryan Fujitani
2. Job Title: Real Property Appraiser IV
3. Position Number: DF-518
4. How long with the City/Department/Division:  Since Oct 1994, 8 going on 9 years.
5. Phone number: 523-4051
6. Confidentiality -- The results of my investigation will be kept as confidential as possible.  What I mean is that I will only release information and/or names of individuals when required by law and City requirements.  There may be a requirement to provide your name in the future for "due process" requirements. Also the information discussed should not be discussed with others.
7. There have been allegations made that a possible condition exists that has resulted in non-physical threats and/or could lead to physically confrontations.  What do you know about this and who is involved if you know?

   Heard from other workers about confrontations with Phil English.  He did not have any direct confrontations with Phil.  Ryan knows that Phil has filed some charges against another employee (Chris).  Ryan does not know the details.  However, Ryan believes that Chris was friendly with Phil.  He said that Chris is more of a friend with Phil than he is.  Ryan said that other employees in the office seem to be on edge.

   Ryan worried about Phil being stable.  Ryan stated that Phil's behavior reflects as if nothing has happened or is going on, even though he allegedly filed the charges/complaints against Chris.  Ryan and Chris sit near Phil.

   Ryan believes he needs to be cautious because of Phil's attitude and behavior to act like nothing is going on but it is.  Phil filing a complaint is an eye opener and a surprise.

8. Who is the alleged assailant/ perpetrator?
   Philip (Phil) English.

9. How long has this person been working at this location? Maybe  2 to 3 years max.

10. Have they're been more than one incident?  If so, how many and when?
    Ryan has heard:  Phil's divorce -- his ex-wife took everything.  Phil is often the one victimized.  Phil has had physical problems.  He had to have something removed like a kidney.  Phil has monetary/financial problems.  He finally got a loan to buy a boat, which he lives on at the Ala Wai Boat Harbor.  Has also mentioned in conversations that he sometimes borrows money from his son.

ATCH 14

RENEAU KENNEDY RE PHILIP ENGLISH

369

Yesterday, Phil acted strange. Phil stated that he had to leave his desk to go to the bathroom. Phil has never said anything to Ryan before about going to the bathroom. Ryan felt it was weird.

11.    Do you feel threatened?
Not really, however, Ryan is starting to think about the Byron Uyesugi case. Phil's behavior is becoming weird, a little psycho in that he can call on consultation and representation from attorney, Roger Mosely. The same guy he is defending assessments against, who also has the reputation of degrading our office. He is thinking that Phil may snap, certainly not out of the realm of possibility, even more so if he acts if nothing is going on. Heard that Phil had stated that co-workers have shunned and ostracized him but doesn't know why he would make such a statement. He is always invited in group activities like birthday lunches/ snacks etc.

12.    Do you believe that physical harm is possible? Anything is possible.

13.    Have any of his/her patterns of behavior changed before this incident occurred? Sometimes he looks angry but does not say anything. Ryan tries not to say anything to Phil if he doesn't have to. Cordial.

14.    Has an incident been reported to police and/or security? No.

15.    Do others feel threaten? People working around Phil are concerned. People have looked at their escape routes.

16.    Can I have their names so I can interview them? N/A.

17.    Do you feel safe at work? Reasonably but not 100%.

18.    What would you recommend to prevent similar incidents? Open the lines of communication better with everyone, if at all possible.

19.    Have you attended any workplace violence training? No.

20.    Do you know if the alleged perpetrator has attended any workplace violence training? No idea.

21.    Is there anything else that you would like to add? Phil states that he is a Christian as he talks a lot about reading the bible. How can he talk about God and still file charges against what appears to be a good friend, Chris? Have heard the level of his voice escalate in conversations with his supervisor Ann Gima, but don't really know the details of what was being said. Phil has stated before that he is not getting the same emails that everyone is getting about office procedures.

## Golojuch, Michael

From:            Golojuch, Michael
Sent:            Wednesday, February 26, 2003 4:12 PM
To:              Totto, Charles W.
Subject:         Investigation

Sensitivity:            Confidential

Confidential message
Chuck,
I know we have been playing telephone tag so I thought I would e-mail you. I am conducting an investigation concerning allegations of possible workplace violence via harassment and threats by Phillip English, Real Property Appraiser, Real Property Assessment Division, BFS.

The reason for contacting you is that one of the complainants, Christopher Graff, states in his complaint that Phillip English is    verbal intimidating and making threats against him. He states that on Tuesday, 1/7/03 and Friday, 1/10/03, Phillip English told    him that he was on the "bad list" with the FBI and Corp Counsel Ethics Commission. Mr. English told Christopher that    Charles Totto, head of the Ethics Commission, had access to Christopher's computer records concerning doing private    appraisal work with Gary Kurokawa's approval while on City time.

Mr. English warned Christopher that the Ethics Commission was "nobody to mess around with" and he should not lie when    the Commission got around to questioning Christopher. If he lied to them (Ethics), they would know and "hang him out to    dry." Christopher felt Mr. English was attempting to intimidate him.

Mr. English also said that the Ethics Commission investigation had progressed so far that Charles Totto said "the best thing    Gary Kurokawa could do right now was resign."

Mr. English then told Christopher that if he went forward to the Ethics Commission right now, i.e., prior to a complaint being    filed, that Christopher would be "moved off the bad list" and place into "whistle blower" status and therefore I could not be fired.    Mr. English claimed that if I did not got to the Ethics Commission I would be fired and go to jail.

I know that you are conducting your own investigation but I would like to know what you can confirm or deny of the comments made in the complaint.

Further, I would like to know the date that you met with Mr. Graff.
When did Phillip English formally file an Ethics complaint?
I have been told that Phillip English has an attorney, Roger Mosely, who is helping him out. The complainant and several witnesses believe that this attorney's presence helps keep the environment in an unstable situation.
Should Mr. English be speaking to other employees directly about Ethics violations? Five of the witnesses have mentioned that they understand that Mr. English has filed a complaint naming Christopher Graff.
In any discussion that you may have had with Phillip English, has he every become obnoxious, belligerent, yells, and/or any physical aggression such as throwing items down?
Is there any other information that you can add, which would be useful in my workplace violence investigation?

Thank you, Mike

**Mike Golojuch**
**Administrative Services Officer**
**Department of Budget and Fiscal Services**
mgolojuch@co.honolulu.hi.us
523-4765, fax: 527-5801

1

COPY

1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF HAWAII

3    PHILIP E. ENGLISH,              )   CIVIL NO. CV04-00108 SCM KSC
                                     )
4              Plaintiff,            )
                                     )
5              vs.                   )   **VOLUME III**
                                     )
6    CITY AND COUNTY OF HONOLULU;    )
     GARY T. KUROKAWA;              )
7    ROBERT O. MAGOTA; ANN C. GIMA;  )
     and GK APPRAISALS, INC.;        )
8    JOHN DOES 1-10; JANE DOES 1-10; )
     DOE PARTNERSHIPS;               )
9    DOE CORPORATIONS 1-10; AND      )
     DOE ENTITIES 1-10,              )
10                                   )
               Defendants.           )
11   _____  )

12

             DEPOSITION OF ROBERT L. K. YOSHIMURA
13

14   RENEAU KENNEDY, Ed.D.           RE: PHILIP E. ENGLISH

     Taken upon written interrogatories for Defendants CITY AND
15
     COUNTY OF HONOLULU, GARY T. KUROKAWA, ROBERT O. MAGOTA,
16
     and ANN C. GIMA; on Friday, June 03, 2005 commencing at
17
     12:45 PM; at the offices of CARNAZZO COURT REPORTING COMPANY,
18
     LTD., 888 Mililani Street, Suite 705, Honolulu, Hawaii 96813;
19
     pursuant to Notice.
20

     BEFORE:
21
     KATHERINE Y. CHOO
22   Notary Public, State of Hawaii

23
     Under the Direction and Control of:
24   Louis A. Carnazzo, C.S.R. #110

25

**Golojuch, Michael**

From:           Totto, Charles W.
Sent:           Friday, February 28, 2003 3:29 PM
To:             Golojuch, Michael
Subject:        RE: Investigation

Sensitivity:            Confidential

Hi Mike:

Because Phil's complaint to the Ethics Commission is under investigation, I am not at liberty to answer all your questions thoroughly. State and city law prevent the disclosure of information obtained while an investigation is pending in our office. Having said that, let me respond whether the statements attributed to me are accurate without going into the nature of the discussion of the complaint.

I told Phil that, assuming the information provided by Phil directly or through his attorney was accurate, Chris and Gary may have violated the ethics laws regarding the use of city resources to benefit private businesses. I added that I would have to conduct an investigation to determine whether a violation may have occurred.

I also mentioned to Phil and his attorney that there is a means by which DIT can review a city employee's computer files and data bases.

I do not recall saying anything about a "bad list" and would not characterize subjects of an investigation in that manner. I talked with Phil and his attorney about strategic approaches to the witnesses in the investigation, but I can not say more about that at this time.

I did not say anything to the effect that Gary should resign.

I was not privy to any discussion between Chris and Phil about going to the Ethics Commission. In interviewing Chris, I emphasized the need for him to tell the truth. Failure to tell the truth can result in more serious discipline being recommended by the Commission to the employee's appointing authority. Chris asked about issues dealing with "whistle blowing" and about penalties associated with ethics violations. Chris also discussed his feelings toward Phil and the nature of some of their past discussions about the issues stated in the complaint.

Phil filed his complaint with the Commission on January 22, 2003.

I interviewed Chris on January 24.

We do not take a position on whether an employee should or should not talk to others about a ethics complaint unless the employee's actions would undermine our ability to investigate the case.

I have had one (extended) meeting with Phil in person in this case and he showed none of the indicators you ask about and was calm about the case.

I hope this information helps. I will add that Chris's interview was taped, but my interview with Phil was not. I am not able to release the tape to you while the investigation is pending.

Chuck

        -----Original Message-----
        From:           Golojuch, Michael
        Sent:           Wednesday, February 26, 2003 4:12 PM
        To:             Totto, Charles W.
        Subject:        Investigation
        Sensitivity:    Confidential

        Confidential message
        Chuck,
        I know we have been playing telephone tag so I thought I would e-mail you. I am conducting an investigation concerning allegations of possible workplace violence via harassment and threats by Phillip English, Real Property Appraiser, Real Property Assessment Division, BFS.

1

ATCH 16

The reason for contacting           that one of the complainants, Christopher      f, states in his complaint that Phillip English is    verbal intimidating and making threats against him. He states that on Tuesday, 1/7/03 and Friday, 1/10/03, Phillip English told  him that he was on the "bad list" with the FBI and Corp Counsel Ethics Commission. Mr. English told Christopher that           Charles Totto, head of the Ethics Commission, had access to Christopher's computer records concerning doing private   appraisal work with Gary Kurokawa's approval while on City time.

Mr. English warned Christopher that the Ethics Commission was "nobody to mess around with" and he should not lie when     the Commission got around to questioning Christopher. If he lied to them (Ethics), they would know and "hang him out to    dry." Christopher felt Mr. English was attempting to intimidate him.

Mr. English also said that the Ethics Commission investigation had progressed so far that Charles Totto said "the best thing    Gary Kurokawa could do right now was resign."

Mr. English then told Christopher that if he went forward to the Ethics Commission right now, i.e., prior to a complaint being     filed, that Christopher would be "moved off the bad list" and place into "whistle blower" status and therefore I could not be fired.         Mr. English claimed that if I did not got to the Ethics Commission I would be fired and go to jail.

I know that you are conducting your own investigation but I would like to know what you can confirm or deny of the comments made in the complaint.

Further, I would like to know the date that you met with Mr. Graff.
When did Phillip English formally file an Ethics complaint?
I have been told that Phillip English has an attorney, Roger Mosely, who is helping him out. The complainant and several witnesses believe that this attorney's presence helps keep the environment in an unstable situation. Should Mr. English be speaking to other employees directly about Ethics violations? Five of the witnesses have mentioned that they understand that Mr. English has filed a complaint naming Christopher Graff.
In any discussion that you may have had with Phillip English, has he every become obnoxious, belligerent, yells, and/or any physical aggression such as throwing items down?
Is there any other information that you can add, which would be useful in my workplace violence investigation?

Thank you, Mike


**Mike Golojuch** .
Administrative Services Officer
Department of Budget and Fiscal Services
mgolojuch@co.honolulu.hi.us
523-4765, fax: 527-5801