Investigators. Plaintiff was told that he had been identified as the only Investigator who was not corrupt and could provide information about the others.

23.     Prior to meeting with the FBI agent, Plaintiff told his immediate supervisor, Hiranaka, that he had been contacted by the FBI regarding corruption in the Liquor Commission. Hiranaka told him not to say anything and suggested that he not meet with the FBI. He then said maybe Plaintiff should see what information they might have. Hiranaka told Plaintiff to tell Weatherwax, because he would "watch out for us." Plaintiff subsequently told Weatherwax. Weatherwax promptly told all the Investigators of the situation. At that time and under those particular circumstances, Plaintiff felt it was not prudent to cooperate with the FBI.

24.     As he became more aware of the criminal activities in the Liquor Commission, Plaintiff approached Mina in approximately June 2000 because, at that time, Plaintiff thought Mr. Mina was not involved in the criminal activities. Plaintiff understood that Mina had a close relationship with Mayor Jeremy Harris and could command an audience to possibly discuss a solution to the problem. Mina said he would talk to the Mayor. Plaintiff heard nothing further about this.

25.     Thereafter, shortly before October 2000, Plaintiff approached the FBI because the Liquor Commission's criminal activities had escalated to a point where it was impossible to overlook. The FBI subsequently undertook an investigation of the Liquor Commission's criminal activities from the time period of October 2000 until May 22, 2002, which required the participation of Plaintiff at great risk to his health and safety.

26.     The FBI investigation resulted in a criminal indictment filed on May 22, 2002, in the United States District Court for the District of Hawaii against Lee, Hiranaka, Andres, Ho, Mina, Oshiro, Richardson, and Wright.

27.     During the time period of October 2000 until May 22, 2002, Plaintiff had conversations involving Lee, Hiranaka, Andres, Ho, Mina, Oshiro, Richardson, and Wright

where it was communicated to Plaintiff that anyone who dared inform on the corrupt practices of the Liquor Commission could expect to be killed.

28.    On or about December 27, 2001, Plaintiff filed a worker's compensation claim due to the enormous stress he was under. He provided this report to Daniel Arakaki, an administrative officer with the Liquor Commission. He told Mr. Arakaki that it was of a sensitive nature and asked him to forward it to Weatherwax.

29.    On or about December 28, 2001, Plaintiff was contacted by bar a owner who questioned him about his workers' compensation claim.

30.    On or about January 2, 2002, Plaintiff met with Weatherwax to discuss his worker's compensation claim. At this meeting, a representative of the City Corporation Counsel's office was present. Weatherwax pressed Plaintiff for details of the investigation. He wanted names. Plaintiff said he could not give names. Plaintiff the asked him if he would consider placing Plaintiff on administrative leave. Weatherwax again pressed him for names and details. Plaintiff told him that since Weatherwax had told investigators of the first investigation with the FBI, he did not feel safe telling Weatherwax about the details of the current investigation.

31.    In the second week of January, Plaintiff placed a call to Weatherwax and again asked about administrative leave. Plaintiff had heard that Liquor Commission Investigator William Leong had been placed on administrative leave with pay and also understood that the FBI had spoken with Weatherwax to confirm the nature of the investigation with which Plaintiff was involved. Plaintiff was informed that his second conversation with Weatherwax was in the presence of Anna Hirai, special assistant to Weatherwax. Weatherwax again pressed Plaintiff for information on the specifics of the investigation and said he would consider administrative leave depending on the outcome of Plaintiff's pending workers' compensation claim. Since this meeting, Plaintiff has heard nothing further from Weatherwax.

7

32.     On or about March 8, 2002, Riddle wrote a letter to Gary Hamada of the Disability Compensation Division ("DCD"), acknowledging that Plaintiff "did suffer from some emotional distress caused by his work injury of October 1, 2000."

33.     Meanwhile on or about March 7, 2002, Riddle wrote a letter to Dr. Lind requesting that he sign a letter to show his agreement that Plaintiff could safely return to work in the Honolulu Police Department ("HPD") with the Crime Stopper program.

34.     By letter dated March 11, 2002, Dr. Lind responded to Riddle's request by stating that:

> [I]t would be ill-advised to send him back to work in a structured setting, and in a specific location, such as HPD. It would not be appropriate for me to go into details in this particular letter, but Mr. Wiggins will be talking with you in person shortly, and he can more fully explain it. Suffice it to say that he is under a great deal of pressure as a cooperating witness in the current investigation, and this is inherently putting a great deal of pressure on him, as well as the risks to his safety attendant to the cooperation. Thus, I would recommend deferring return to work at this time.

35.     In fact, the day after Plaintiff was informed of this offer of a position with the Crime Stoppers program, Plaintiff was informed that Carroll and Liquor Commission already knew about the proposed job. This is evidence of the close ties among various City departments.

36.     By letter dated March 12, 2002, the Riddle terminated Plaintiff's temporary partial disability benefits effective March 16, 2002, apparently under the pretext that Plaintiff should return to work in the HPD with the Crime Stopper program.

37.     Plaintiff contested this denial of benefits and on April 17, 2002, a notice was issued of a hearing before Hearings Officer Padilla on May 2, 2002 at 10 am.

38.     A hearing was held on the City's denial of benefits before Hearings Officer Padilla on May 2, 2002. During the course of the hearing, the City presented no medical evidence to support its denial of benefits to Plaintiff. The City also never mentioned that it wanted or intended to have Plaintiff submit to a medical examination.

8

39.    On May 6, 2002, Riddle unsuccessfully moved the DCD for an order to compel Plaintiff to attend a medical examination in a transparent attempt to get some evidence to justify the denial of worker's compensation benefits.

40.    On May 21, 2002, in response to a request by Hearings Officer Padilla, Riddle reconfirmed the City's position that it was continuing to deny Plaintiff temporary disability payments from March 16, 2002 forward.

41.    On May 22, 2002 the federal criminal indictment was filed in the United States District Court for the District of Hawaii.  On or about May 20, 2002, Plaintiff had provided testimony before the federal grand jury that returned the indictment.  Though Plaintiff had taken necessary steps to process his workers' compensation claim, Plaintiff had otherwise sought to avoid any discussion of corruption in this Liquor Commission for his own safety and to avoid compromising the federal criminal investigation.

42.    By letter dated June 21, 2002, Hearings Officer Padilla issued his decision, which stated, in pertinent part that:

> Regarding employer's termination of temporary total disability as of 3/16/2002, the Director determines that termination was premature. Employer has not provided any evidence to persuasively rebut claimant's testimony and Dr. Lind's opinion that working at HPD would be dangerous for claimant in light of claimant's circumstance. The Director credits claimant and Dr. Lind's statements that placing claimant in a structured setting at a specific location would allow someone to put a "fix" on claimant. If this occurred, the Director concludes that this would create a hostile work environment. Therefore, such a position with Crime Stoppers would not be deemed suitable and gainful employment. Claimant's refusal to accept the Crime Stoppers position is properly justified.

## COUNT I – VIOLATION OF CIVIL RIGHTS

43.    Plaintiff repeats and realleges each and every allegation set forth above.

44.    Defendants, under color of statutes, ordinances, regulations, customs, or usages of the State of Hawaii, or the City & County of Hawaii, subjected Plaintiff, a citizen of the United

States, or caused Plaintiff to be subjected, to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.

45. Defendants are liable to Plaintiff for damages that he suffered as a result of the above-described unlawful acts, which were committed in violation of, inter alia, 42 U.S.C. §1983.

### COUNT II – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

46. Plaintiff repeats and realleges each and every allegation set forth above.

47. Defendants conspired together for the purpose of:

(a) deterring Plaintiff, directly or indirectly, by force, intimidation, or threat from attending federal court or testifying in a matter pending therein, freely, fully, and truthfully, and/or of injuring Plaintiff in his person or property on account of his having so attended or testified;

(b) impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in the State of Hawaii, with intent to deny to Plaintiff the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; and

(c) depriving Plaintiff, directly or indirectly, the equal protection of the laws, and/or the equal privileges and immunities under the laws; and/or of preventing or hindering the constituted authorities of the State of Hawaii from giving or securing Plaintiff the equal protection of the laws.

48. Defendants, who were engaged in the conspiracy, did, or caused to be done, acts in furtherance of the object of such conspiracy, whereby Plaintiff has suffered injuries and damages.

49. Defendants are liable to Plaintiff for damages that he suffered as a result of their above-described unlawful acts, which were committed in violation of, inter alia, 42 U.S.C. §1985.

### COUNT III – NEGLECT TO PREVENT INTERFERENCE WITH CIVIL RIGHTS

50. Plaintiff repeats and realleges each and every allegation set forth above.

51.    Defendants had a duty to protect Plaintiff' civil rights and/or to prevent or aid in preventing the commission of wrongs conspired to be done.

52.    Defendants breached this duty.

53.    Defendants breach caused injury and damages to Plaintiff.

54.    These unlawful actions or omissions of Defendants were in violation of, inter alia, 42 U.S.C. §1986.

## COUNT IV – UNLAWFUL DISCRIMINATION

55.    Plaintiff repeats and realleges each and every allegation set forth above.

56.    Defendants constructively discharged, threatened, retaliated or otherwise discriminated against Plaintiff regarding Plaintiff's compensation, terms, conditions, location or privileges of employment because of Plaintiff's unwillingness to condone criminal activities, Plaintiff's participation in a federal criminal investigation regarding Defendants and Plaintiff's presentation of testimony before a federal grand jury.

57.    Defendants' conduct has caused harm and damage to Plaintiff, in violation of, inter alia, H.R.S. §378-62.

## COUNT V – RETALIATION

58.    Plaintiff repeats and realleges each and every allegation set forth above.

59.    Defendants engaged in retaliatory acts and conduct against Plaintiff for his opposition to Defendants' unlawful and/or criminal activities.

60.    Defendants' conduct has caused harm and damage to Plaintiff, in violation of, inter alia, H.R.S. §378-62.

## COUNT VI – FAILURE TO INVESTIGATE

61.    Plaintiff repeats and realleges each and every allegation set forth above.

62. Defendants had a duty to Plaintiff to ensure that criminal conduct rampant in the Liquor Commission was investigated pursuant to state and federal law and City policy and procedure.

63. Defendants breached this duty.

64. Defendants' breach caused Plaintiff injury and damage.

## COUNT VII – WILFUL, WANTON, AND RECKLESS CONDUCT

65. Plaintiff repeats and realleges each and every allegation set forth above.

66. Defendants' above-described conduct was wilful and/or wanton, and/or reckless in nature.

67. Defendants unlawful and/or criminal conduct was a direct and proximate cause of Plaintiff's injuries and damages.

68. Pursuant to Iddings v. Mee-Lee, 82 Haw. 1 (1996), Defendants are liable for Plaintiff's injuries, and damages.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69. Plaintiff repeats and realleges each and every allegation set forth above.

70. By engaging in the above-described unlawful conduct, Defendants intentionally caused emotional distress to Plaintiff.

71. The City is responsible and liable for Defendants' above-described actions under the doctrine of respondeat superior because each of the Defendants were acting in the course and scope of his employment with City.

72. Defendants are liable to Plaintiff for damages that he suffered as a result of their unlawful conduct described above.

## COUNT IX – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff repeats and realleges each and every allegation set forth above.

74. By engaging in the above-described unlawful conduct, Defendants negligently caused emotional distress to Plaintiff.

75. City is responsible and liable for Defendants' above-described actions, because each of the Defendants were acting in the course and scope of his employment with City.

76. Defendants are liable to Plaintiff for damages that he suffered as a result of their unlawful conduct described above.

## COUNT X – PUNITIVE DAMAGES

77. Plaintiff incorporates by reference all preceding allegations herein.

78. Defendants Weatherwax, Carroll, Mendonca, Lee, Hiranaka, Andres, Ho, Mina, Oshiro, Richardson, Wright, Riddle, and Doe Defendants 1-25 have acted wantonly, willfully, and oppressively, with such malice as implies a spirit of mischief, and with conscious indifference to the consequences of their acts and are characterized by aggravating circumstances sufficient to justify imposition of punitive or exemplary damages.

79. Such willful misconduct warrants an award of punitive damages against Defendants Weatherwax, Carroll, Mendonca, Lee, Hiranaka, Andres, Ho, Mina, Oshiro, Richardson, Wright, Riddle and Doe Defendants 1-25 and in favor of Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the court enter judgment against Defendants on all causes of action and grant relief as follows:

A. General and special damages in amounts to be proven at the time of trial;

B. Punitive damages as to Defendants Weatherwax, Carroll, Mendonca, Lee Hiranaka, Andres, Ho, Mina, Oshiro, Richardson, Wright and Riddle;

C. Attorneys' fees, costs of suit and both pre-judgment and post-judgment interest to the extent allowed by law; and

D.     Such other and further relief as the Court deems just and proper under the circumstances.

DATED: Kailua, Hawaii, September 27, 2002.

THOMAS E. BUSH
Attorney for Plaintiff

14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHARLES J. WIGGINS,<br>Plaintiff,<br><br>vs.<br><br>CITY & COUNTY OF HONOLULU;<br>HONOLULU LIQUOR COMMISSION,<br>JOHN P. SPIERLING, in his official<br>capacity as Chair of the HONOLULU<br>LIQUOR COMMISSION; WALLACE W.<br>WEATHERWAX, individually and in his<br>capacity as an agent and employee of the<br>City & County of Honolulu; JOHN<br>CARROLL, individually and in his capacity<br>as an agent and employee of the City &<br>County of Honolulu; THOMAS<br>MENDONCA, individually and in his<br>capacity as an agent and employee of the<br>City & County of Honolulu; DAVID K.H.<br>LEE, individually and in his capacity as an<br>agent and employee of the City & County of<br>Honolulu; HARVEY T. HIRANAKA,<br>individually and in his capacity as an agent<br>and employee of the City & County of<br>Honolulu; ARTHUR M. ANDRES,<br>individually and in his capacity as an agent<br>and employee of the City & County of<br>Honolulu; SAMUEL K.Y. HO, individually<br>and in his capacity as an agent and<br>employee of the City & County of<br>Honolulu; EDUARDO C. MINA,<br>individually and in his capacity as an agent<br>and employee of the City & County of<br>Honolulu; COLLIN M. OSHIRO,<br>individually and in his capacity as an agent<br>and employee of the City & County of<br>Honolulu; WILLIAM B. RICHARDSON,<br>JR., individually and in his capacity as an<br>agent and employee of the City & County of<br>Honolulu; KENNETH L. WRIGHT,<br>individually and in his capacity as an agent<br>and employee of the City & County of<br>Honolulu; THOMAS RIDDLE, individually<br>and in his capacity as an agent and<br>employee of the City & County of<br>Honolulu; and DOE DEFENDANTS 1-25.<br><br>Defendants. | CIVIL NO. _____<br>(Other Non-Vehicle Tort)<br><br>DEMAND FOR JURY TRIAL |

L:\General Office\tebush\Complaint.doc

## DEMAND FOR JURY TRIAL

Plaintiff CHARLES J. WIGGINS, by and through his undersigned attorneys, hereby demands trial by jury on all issues triable herein.

Dated: Kailua, Hawaii, September 27, 2002.

THOMAS E. BUSH
Attorney for Plaintiff

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHARLES J. WIGGINS,<br>          Plaintiff, | ) | CIVIL NO. _____<br>(Other Non-Vehicle Tort) |
| | ) | |
| vs. | ) | SUMMONS |
| | ) | |
| CITY & COUNTY OF HONOLULU;<br>HONOLULU LIQUOR COMMISSION,<br>JOHN P. SPIERLING, in his official<br>capacity as Chair of the HONOLULU<br>LIQUOR COMMISSION; WALLACE W.<br>WEATHERWAX, individually and in his<br>capacity as an agent and employee of the<br>City & County of Honolulu; JOHN<br>CARROLL, individually and in his capacity<br>as an agent and employee of the City &<br>County of Honolulu; THOMAS<br>MENDONCA, individually and in his<br>capacity as an agent and employee of the<br>City & County of Honolulu; DAVID K.H.<br>LEE, individually and in his capacity as an<br>agent and employee of the City & County of<br>Honolulu; HARVEY T. HIRANAKA,<br>individually and in his capacity as an agent<br>and employee of the City & County of<br>Honolulu; ARTHUR M. ANDRES,<br>individually and in his capacity as an agent<br>and employee of the City & County of<br>Honolulu; SAMUEL K.Y. HO, individually<br>and in his capacity as an agent and<br>employee of the City & County of<br>Honolulu; EDUARDO C. MINA,<br>individually and in his capacity as an agent<br>and employee of the City & County of<br>Honolulu; COLLIN M. OSHIRO,<br>individually and in his capacity as an agent<br>and employee of the City & County of<br>Honolulu; WILLIAM B. RICHARDSON,<br>JR., individually and in his capacity as an<br>agent and employee of the City & County of<br>Honolulu; KENNETH L. WRIGHT,<br>individually and in his capacity as an agent<br>and employee of the City & County of<br>Honolulu; THOMAS RIDDLE, individually<br>and in his capacity as an agent and<br>employee of the City & County of<br>Honolulu; and DOE DEFENDANTS 1-25. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
|           Defendants. | ) | |

L:\General Office\tebush\Complaint.doc

## SUMMONS

To the above named Defendants:

You are hereby summoned and required to serve upon Plaintiff's attorney Thomas E. Bush, 970 N. Kalaheo Avenue, Suite A-300, Kailua, Hawaii 96734, an answer to the Complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the public, unless a judge of the above entitled court permits, in writing on this summons, personal delivery during those hours.

A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

DATED:        Honolulu, Hawaii, _____ SEP 2 7 2002 _____

WALTER A.Y.H. CHINN
_____
CLERK OF THE COURT

Deputy Clerk, United States
District Court, District of Hawaii

2

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 05 2004

at 12 o'clock and 05 min. P.M.
WALTER A.Y.H. CHINN, CLERK

**DENNIS W. POTTS**  (1121-0)
**ATTORNEY AT LAW**
**A LAW CORPORATION**
1001 Bishop Street
2755 Pacific Tower
Honolulu, Hawaii 96813
Telephone No. (808) 537-4575

Attorney for Plaintiff
**KERRY SHANNON**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KERRY SHANNON, | ) | CIVIL NO. _____ C V 04 00086 SF |
| | ) | |
| Plaintiff, | ) | **COMPLAINT; DEMAND FOR** |
| vs. | ) | **JURY TRIAL; SUMMONS** |
| | ) | |
| CITY AND COUNTY OF | ) | |
| HONOLULU; HONOLULU | ) | |
| LIQUOR COMMISSION; JOHN | ) | |
| SPIERLING; in his official capacity | ) | |
| as chairman of the Honolulu Liquor | ) | |
| Commission; WALLACE W. | ) | |
| WEATHERWAX, individually and | ) | |
| in his capacity as an agent and | ) | |
| employee of the Honolulu Liquor | ) | |
| Commission; JOHN CARROLL, | ) | |
| individually and in his capacity as | ) | |
| an employee of the Honolulu Liquor | ) | |
| Commission; ANNA HIRAI, | ) | |
| individually and in her capacity as | ) | |
| an employee of the Honolulu Liquor | ) | |
| Commission; ALLAN GAYLORD, | ) | |
| individually and in his capacity as an | ) | |
| employee of the Honolulu Liquor | ) | |

ATTEST: A True Copy
SUE BEITIA
Clerk, United States District
Court, District of Hawaii

By_____ Deputy

DEPOSITION
EXHIBIT
210

Commission; JOHN DOES 1-10,    )
JANE DOES 1-10; DOE            )
CORPORATIONS 1-10;            )
DOE PARTNERSHIPS 1-10; DOE    )
GOVERNMENTAL AGENCIES         )
1-10,                         )
             Defendants.    )
                                    )
                                    )

(C:\NEW-CLIENTS\SHANNON\complaint-1-26)

# COMPLAINT

      COMES NOW the Plaintiff above-named, by and through his attorney, Dennis W. Potts, and complaining of the Defendants above-named, alleges and avers as follows:

## NATURE OF THE CASE

      1.    This is an action under the Civil Rights Act of 1991, 42 U.S.C. §1983 and the Hawaii Whistleblowers' Protection Act, Hawaii Revised Statutes §378-62, the United States and Hawaii Constitutions, and common law theories of recovery to obtain full and complete relief for the illegal and tortious conduct described herein.

## JURISDICTION

2.    Jurisdiction exists under 28 U.S.C. §1331 and §1343, by virtue of the claims of deprivation of constitutional rights arising under 42 U.S.C. §1983, as alleged herein.

3.    This court has supplemental jurisdiction under 28 U.S.C. §1367(a) over Plaintiff's state law claims.

## VENUE

4.    The unlawful acts and employment practices alleged herein were committed within the District of Hawaii, and this action properly lies in the District of Hawaii.

## PARTIES

5.    Plaintiff was at all times material herein an investigator employed by the Honolulu Liquor Commission and a resident of the City and County of Honolulu, State of Hawaii.

6.    Defendant  City and County of Honolulu ("City and County") is and was at all times material herein a municipal corporation with the power to sue and be sued.

-3-

7.     Defendant Honolulu Liquor Commission ("Liquor Commission") is and was at all times material herein an agency of the Department of Budget and Fiscal Services of the City and County.

8.     Defendant Spierling is and was at all times material herein the chairman of the Liquor Commission and a resident of Honolulu aforesaid.

9.     Defendant Weatherwax is and was at all times material herein employed by the Liquor Commission as the liquor control administrator and a resident of Honolulu aforesaid.

10.     Defendant Carroll is and was at all times material herein employed by the Liquor Commission as its chief investigator and a resident of Honolulu aforesaid.

11.     Defendant Hirai is and was at all times material herein employed by the Liquor Commission in an administrative capacity and a resident of Honolulu aforesaid.

12.     Defendant Gaylord is and was at all times material herein employed by the Liquor Commission as a liquor inspector and supervisor and a resident of Honolulu aforesaid.

13.     The true names, identities or capacities, whether individual, corporate, associate, partnership, representative, or otherwise of Defendants John

-4-

Does 1-10, Jane Does 1-10, Doe Partnerships 1-10, Doe Corporations 1-10 and Doe

Governmental Agencies 1-10, and their involvement herein are unknown to

Plaintiff who therefore sues said Defendants by such fictitious names, and

Plaintiff will seek leave of Court to amend his pleadings to set forth the true

names and capacities of such fictitiously named Defendants when the same

become known to him.  Plaintiff is informed and believes, and thereon alleges,

that each of the Defendants designated herein by a fictitious name acted in some

manner negligently, intentionally, wantonly, wilfully, recklessly, maliciously and

with conscious disregard of the consequences of their acts and is in some manner

responsible and/or strictly liable to the Plaintiff for the acts, conduct, omissions

and failures as hereinafter alleged concerning the events and happenings herein

referred to, and that said acts, conduct, omissions and failures, whether

negligent, intentional, wanton, wilful, reckless, malicious, or with conscious

disregard of the consequences of their acts, directly and proximately caused

injury and damage to Plaintiff as herein alleged and otherwise.

Plaintiff has made a diligent and good-faith effort to ascertain the full

name, identity, and interest in this action of Defendants John Does 1-10, Jane

Does 1-10,  Doe Partnerships 1-10, Doe Corporations 1-10 and Doe

Governmental Agencies 1-10 including, but not limited to, investigative efforts to

-5-

locate witnesses and other persons who may have knowledge of, or contributed to causing this accident, and to identify their roles with respect to same.

FACTUAL ALLEGATIONS

14.   On or around June 1, 1999 Plaintiff was hired by the Liquor Commissioner as an investigator.

15.   Plaintiff was employed full-time as an investigator with the Liquor Commission from June 1, 1999 until his medical retirement on February 14, 2003.

16.   At all times during his employment with the Liquor Commission Plaintiff was a full-time employee in good standing and at all times performed his duties as a liquor inspector in satisfactory fashion.

17.   Plaintiff was never fired, suspended or otherwise disciplined during his employment with the Liquor Commission as aforesaid.

18.   Plaintiff's retirement from the Liquor Commission would normally have been expected to occur on July 15, 2015 on his 55th birthday had he not taken an early medical retirement as aforesaid.

19.   At all times during his employment as an investigator with the Liquor Commission, Plaintiff's immediate supervisor was Defendant Gaylord,

but Defendants Weatherwax, Hirai and Carroll also exercised supervisory powers

over Plaintiff from time to time.

20. In January of 2002 Plaintiff was approached by a special agent

of the Federal Bureau of Investigation ("FBI") and a representative of the

Honolulu Police Department ("HPD") and asked to cooperate in an investigation

which the FBI and HPD were conducting into alleged corruption within the

Liquor Commission.

21.    Plaintiff agreed to cooperate in the aforesaid investigation

and at the request of the FBI and HPD did not inform any of the other employees

of the Liquor Commission about this at that time.

22.    Shortly thereafter Plaintiff was subpoenaed to testify and did

testify on matters of utmost public concern before a Federal Grand Jury convened

in conjunction with said investigation.

23.    Defendants Weatherwax, Carroll, Hirai and Gaylord found out

about Plaintiff's cooperation and grand jury testimony in February of 2002.

24.    Plaintiff alleges on the basis of his information and belief that

after Defendants Weatherwax, Carroll, Hirai and Gaylord became aware of his

grand jury testimony, one or more of them informed certain of Plaintiff's fellow

liquor investigators that Plaintiff was cooperating with the FBI/HPD

investigation.

25.    Plaintiff further alleges on the basis of his information and

belief that Defendants Weatherwax, Carroll, Hirai and Gaylord informed

Plaintiff's fellow liquor investigators of this for the express purpose of bringing

pressure to bear on Plaintiff to cease cooperating with said investigation knowing

full well that they and the liquor investigators so informed were likely to be

potential targets of the FBI/HPD investigation.

26.    As a result of the conduct of said Defendants as set out in

paragraph 24, Plaintiff was subjected to a pattern of harassment and threats and

other types of hostility at work which was designed to intimidate Plaintiff, cause

him to fear for his safety and to make his working environment so unpleasant that

he would either cease cooperating with the investigation or resign.

27.    Plaintiff alleges on the basis of his information and belief that

the Defendants directly participated in the course of conduct described in the

preceding paragraph.

28.    During this period Plaintiff suffered a shoulder injury at work

and filed a worker's compensation claim which was delayed by one or more of

-8-

the Defendants without cause or explanation, thus subjecting Plaintiff to additional stress and anxiety.

29.    The pattern of harassment and hostility perpetrated on Plaintiff as described in above continued uninterrupted until the date of his medical retirement on February 14, 2003.

30.    Plaintiff's medical retirement as aforesaid was a direct and proximate result of the conduct of said Defendants as described in paragraphs 24-29 and amounted to a constructive discharge of Plaintiff.

31.    Prior to the conduct of said Defendants as described above, Plaintiff had intended to continue working an inspector for the Liquor Commission until July 15, 2015.

32.    Plaintiff is informed and believes and on that basis alleges that at all times material herein one or more of the Defendants was acting as the agent of one or more of the remaining Defendants, and at all times material herein said Defendants were acting within the course and scope of their employment with the Liquor Commission and under color of state law.

33.    As a direct and proximate result of the conduct of the Defendants herein, Plaintiff sustained special damages by way of medical/

rehabilitative expenses and loss of income and general damages by way of pain, suffering and emotional distress in amounts to be shown at time of trial herein.

## COUNT I (42 U.S.C. §1983)

34.    Plaintiff hereby realleges and incorporates herein by reference the allegations of paragraphs 1-33.

35.    The conduct of the Defendants set out hereinabove violated rights guaranteed to the Plaintiff by the First Amendment to the United States Constitution for which Plaintiff is entitled to relief under the Civil Rights Act of 1991, 42 U.S.C. §1983.

36.    As a direct and proximate result of the violation of Plaintiff's First Amendment Rights as described in the preceding paragraph, Plaintiff sustained the damages set out in paragraph 33 hereinabove and is entitled to the declaratory, legal and other relief prescribed in 42 U.S.C. §1983.

## COUNT II (HRS §378-62)

37.    Plaintiff hereby realleges and incorporates herein by reference the allegations of paragraphs 1-33.

38.    The conduct of the Defendants set out hereinabove is and was in violation of HRS §378-62, the direct and proximate result of which Plaintiff sustained the damages set out in paragraph 33 hereinabove.

-10-

## COUNT III (NEGLIGENT SUPERVISION)

39.    Plaintiff hereby realleges and incorporates herein by reference the allegations of paragraphs 1-33.

40.    The Defendants breached their duty of care by failing to supervise Plaintiff in such a way as to protect him from harassment and hostile conduct by other Liquor Commission employees, failing to investigate his reports to said Defendants concerning such conduct and allowing Plaintiff to suffer extreme emotional distress at the hands of his fellow liquor commission employees and therefore constituted negligent supervision, the direct and proximate result of which Plaintiff sustained the damages set out in paragraph 33 hereinabove.

## COUNT IV (CIVIL CONSPIRACY)

41.    Plaintiff hereby realleges and incorporates herein by reference the allegations of paragraphs 1-33.

42.    The conduct of the Defendants herein in entering into an agreement to cause Plaintiff's working environment to become so hostile and unpleasant that he would either cease cooperating with the aforesaid investigation or resign constituted and amounted to an actionable civil conspiracy, the direct

and proximate result of which Plaintiff sustained the damages set out in paragraph 33 hereinabove.

### COUNT V (WRONGFUL DISCHARGE)

43.    Plaintiff hereby realleges and incorporated herein by reference the allegations of paragraphs 1-33.

44.    The conduct of the Defendants herein caused Plaintiff's working environment to become so hostile and unpleasant that he was forced to resign.

45.    Said conduct described in the preceding paragraph was undertaken in retaliation for Plaintiff's cooperation with said investigation and constructed a wrongful discharge, the direct and proximate result of which Plaintiff sustained the damages set out in paragraph 33 hereinabove.

### COUNT VI (INFLICTION OF EMOTIONAL DISTRESS)

46.    Plaintiff hereby realleges and incorporates herein by reference the allegations of paragraphs 1-33.

47.    By virtue of their conduct as described herein hereinabove the Defendants intentionally inflicted emotional distress on Plaintiff during the course of his work with the Liquor Commission, the direct and proximate result of which Plaintiff sustained the damages as set out in paragraph 33 herein.

-12-

## COUNT VII (PUNITIVE DAMAGES)

48.     Plaintiff hereby realleges and incorporates herein by reference the allegations of paragraphs 1-47.

49.     The conduct of the Defendants above-named was of such a willful, wanton and malicious nature as to warrant an award of punitive damages against said Defendants in amounts to be shown at time of trial.

**WHEREFORE,** Plaintiff prays that the above-entitled Court enter judgment against the Defendants, jointly and severally, as follows:

1.     For special and general damages in amounts to be shown at time of trial.

2.     For punitive damages in amounts to be shown at time of trial.

3.     For declaratory, legal and other relief as prescribed in 42 U.S.C. §1983.

4.     For attorney's fees, taxable costs, prejudgment and post-judgment interest to the extent allowed by law and such other, further relief as the Court deems just in the premises.

DATED: Honolulu, Hawaii, _____

_____

DENNIS W. POTTS
Attorney for Plaintiff
**KERRY SHANNON**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KERRY SHANNON, | CIVIL NO._____ |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| CITY AND COUNTY OF HONOLULU; HONOLULU LIQUOR COMMISSION; JOHN Spierling; in his official capacity as chairman of the Honolulu Liquor Commission; WALLACE W. WEATHERWAX, individually and in his capacity as an agent and employee of the Honolulu Liquor Commission; JOHN CARROLL, individually and in his capacity as an employee of the Honolulu Liquor Commission; ANNA HIRAI, individually and in her capacity as an employee of the Honolulu Liquor Commission; ALLAN GAYLORD, individually and in his capacity as an employee of the Honolulu Liquor | |

Commission; JOHN DOES 1-10,        )
JANE DOES 1-10; DOE                )
CORPORATIONS 1-10;                 )
DOE PARTNERSHIPS 1-10; DOE         )
GOVERNMENTAL AGENCIES              )
1-10,                              )
                  Defendants.      )
                                   )
_____)

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues triable herein.

DATED: Honolulu, Hawaii, _____2/4/04_____.

_____
**DENNIS W. POTTS**

Attorney for Plaintiff
**KERRY SHANNON**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

KERRY SHANNON,                              )        CIVIL NO._____
                                            )
                    Plaintiff,              )        **SUMMONS**
        vs.                                 )
                                            )
CITY AND COUNTY OF                          )
 HONOLULU; HONOLULU                         )
LIQUOR COMMISSION; JOHN                     )
Spierling; in his official capacity         )
as chairman of the Honolulu Liquor          )
Commission; WALLACE W.                      )
WEATHERWAX, individually and                )
in his capacity as an agent and             )
employee of the Honolulu Liquor             )
Commission; JOHN CARROLL,                   )
individually and in his capacity as         )
an employee of the Honolulu Liquor          )
Commission; ANNA HIRAI,                     )
individually and in her capacity as         )
an employee of the Honolulu Liquor          )
Commission; ALLAN GAYLORD,                  )
individually and in his capacity as an      )
employee of the Honolulu Liquor             )

```
Commission; JOHN DOES 1-10,      )
JANE DOES 1-10; DOE              )
CORPORATIONS 1-10;               )
DOE PARTNERSHIPS 1-10; DOE       )
GOVERNMENTAL AGENCIES            )
1-10,                            )
                Defendants.      )
                                 )
_____)
```

## SUMMONS

**STATE OF HAWAII**

**TO THE ABOVE-NAMED DEFENDANT(S):**

   **YOU ARE HEREBY SUMMONED** and required to serve upon

Plaintiff's attorney, DENNIS W. POTTS, whose address is 1001 Bishop Street,

Suite 2755 Pacific Tower, Honolulu, Hawaii 96813, an answer to the Complaint

which is herewith served upon you, within (twenty) 20 days after service of this

summons upon you, exclusive of the day of service. If you fail to do so, judgment

by default will be taken against you for the relief demanded in Complaint.

   This summons shall not be personally delivered between 10:00 p.m. and

6:00 a.m. on premises not open to the general public, unless a judge of the above-

entitled court permits, in writing on this summons, personal delivery during those

hours.

A failure to obey this summons may result in an entry of default and

default judgment against the disobeying person or party.

DATED: Honolulu, Hawaii, _____ FEB 0 5 2004 _____.

WALTER A.Y.H. CHINN

_____

CLERK OF THE ABOVE-ENTITLED COURT

Deputy Clerk, United States
District Court, District of Hawaii

-3-

ORIGINAL

MICHAEL JAY GREEN  4451
345 Queen Street
Second Floor
Honolulu, Hawaii  96813
Telephone:  (808) 521-3336

DEBRA A. KAGAWA   6169
345 Queen Street
Second Floor
Honolulu, Hawaii  96813
Telephone:  (808) 521-3336

DENISE M.  HEVICON   7428
345 Queen Street
Second Floor
Honolulu, Hawaii  96813
Telephone:  (808) 521-3336

Attorneys for Plaintiff
CRAIG WHANG

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2004 MAY 17  PM 4: 04

N. ANAYA
CLERK

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

CRAIG WHANG,

                Plaintiff,

    vs.

CITY AND COUNTY OF HONOLULU,
PETER CARLISLE, in his official capacity as
Prosecuting Attorney for the Department of
the Prosecuting Attorney, City and County of
Honolulu,  IWALANI WHITE, individually
and in her official capacity as First Deputy
Prosecuting Attorney for the Department of
the Prosecuting Attorney, City and County
of Honolulu, ROBERT K. W. LEE, JR.,
individually and in his official capacity as
Chief Investigator for the Department of the
Prosecuting Attorney, City and County of
Honolulu, and DOE DEFENDANTS 1-10,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL NO.  04 - 1 - 0 9 10 - 05  (DDD )
[Other Civil Action]

COMPLAINT; DEMAND FOR JURY
TRIAL; SUMMONS

DEPOSITION
EXHIBIT
211

RECEIVED
$ 400.00

PAID
SURCHARGE
$25.50

RECEIVED
CIVIL ADM. COST
$   50.00

I do hereby certify that this is a full, true and
correct copy of the original on file in this office.

Clerk, Circuit Court, First Circuit

## COMPLAINT

Plaintiff CRAIG WHANG, for his Complaint against Defendant CITY AND COUNTY OF HONOLULU; Defendant PETER CARLISLE, in his official capacity as Prosecuting Attorney for the Department of the Prosecuting Attorney, City and County of Honolulu; Defendant IWALANI WHITE, individually and in her official capacity as First Deputy Prosecuting Attorney for the Department of the Prosecuting Attorney, City and County of Honolulu; Defendant ROBERT K. W. LEE, JR., individually and in his official capacity as Chief Investigator for the Department of the Prosecuting Attorney, City and County of Honolulu, and DOE DEFENDANTS 1 through 10, alleges and avers as follows.

## PARTIES

1.    Plaintiff CRAIG WHANG ("Plaintiff" or "Mr. Whang") is and was at all times relevant a resident of the City and County of Honolulu, State of Hawaii.

2.    Defendant City and County of Honolulu ("Defendant City" or "City") is and was at all times relevant herein a municipal corporation and a political subdivision of the State of Hawaii, and is organized and existing under the laws of the State of Hawaii.

3.    At all times relevant herein, the Department of the Prosecuting Attorney is a subdivision of the City and County of Honolulu. Accordingly, the City and County of Honolulu is liable for the wrongful and/or tortious and/or negligent conduct of the Department of the Prosecuting Attorney as described herein.

4.    Defendant Peter Carlisle is and was at all times relevant the Prosecuting Attorney for the Department of the Prosecuting Attorney, City and County of Honolulu, and a resident of the City and County of Honolulu, State of Hawaii, and is sued herein in his official capacity as Prosecuting Attorney only.

2

5.    Defendant Iwalani White is and was at all times relevant the First Deputy Prosecuting Attorney for the Department of the Prosecuting Attorney, City and County of Honolulu, and a resident of the City and County of Honolulu, State of Hawaii, and is sued herein individually and in her official capacity as First Deputy Prosecuting Attorney.

6.    Defendant Robert K. W. Lee, Jr. is and was at all times relevant the Chief Investigator for the Department of the Prosecuting Attorney, City and County of Honolulu, and a resident of the City and County of Honolulu, State of Hawaii, and is sued herein individually and in his official capacity as Chief Investigator.

7.    DOE DEFENDANTS 1-10 (hereinafter "DOE Defendants") are INDIVIDUALS, CORPORATIONS, PARTNERSHIPS, LIMITED PARTNERSHIPS, JOINT VENTURES and/or OTHER ENTITIES named here under fictitious names for the reason that, after reasonable investigation and inquiry, their true names and identities are presently unknown to Plaintiff, except that they are persons and/or entities who were in some manner presently unknown to Plaintiff engaged in activities alleged in the Complaint filed herein; and/or who are in some manner responsible for damages to Plaintiff; and/or who conducted some activity in a negligent and/or intentional manner, which negligent and/or intentional conduct was a proximate cause of the injuries or damages to Plaintiff; and Plaintiff prays leave to insert herein their true names and capacities, activities, and/or responsibilities when the same are ascertained. Reference hereinafter to a named Defendant and/or to any person or entity other than the Plaintiff are also allegations against all DOE Defendants. Plaintiff prays for leave to amend this Complaint to allege the identities, capacities, activities, and/or responsibilities of the DOE Defendants described in this paragraph when the same are ascertained.

8.    All events described herein occurred in the City and County of Honolulu, State of Hawaii.

## FACTS

9.    At all times relevant, Plaintiff is and was employed with the Department of the Prosecuting Attorney, City and County of Honolulu as an Investigator IV, Supervising Investigator. Plaintiff was hired by the City on December 4, 1992 as an Investigator I.  Thereafter, Plaintiff received several promotions, and was promoted to the rank of Investigator IV, Supervising Investigator, in or around April 2000.

10.    As a Supervising Investigator, Plaintiff was the immediate supervisor for the Investigator Services Division staff, White-Collar Investigation Division, which included investigators, messengers, and the front desk staff. Plaintiff conducted internal investigations for the Department of the Prosecuting Attorney and provided technical support and research and development for the Investigator Services Division, White-Collar Investigation Division ("ISD").

11.    In or around 1997-1998, Plaintiff created a training program on firearms and use of force for ISD. Plaintiff expended hundreds of hours performing research, creating lesson plans, and developing training manuals for the program. From the time of the program's inception, Plaintiff was responsible for training and testing all Investigators in ISD on firearms and use of force. Plaintiff was responsible for determining which Investigators passed or failed the respective tests. Plaintiff performed these important functions for the Department of the Prosecuting Attorney for approximately five (5) years, until he was reassigned by Defendants on or about September 5, 2003. At all times relevant, Plaintiff performed his duties and responsibilities as a Supervising Investigator satisfactorily.

4

12.     In or around November of 2002, the Department of the Prosecuting Attorney was in the process of hiring for an Investigator position.  Chief Investigator Defendant Lee told Plaintiff that the Department of Human Resources told him about a priority hire.  Defendant Lee told Plaintiff that he called the priority hire's current employer and found out that she was out on stress leave.  Defendant Lee ordered Plaintiff to fail the priority hire in the firearms and use of force tests because "she's a female with mental problems" and he did not want her on his staff.  Plaintiff refused, and told Defendant Lee that he would not fail her unless she actually failed the tests.

13.     On August 27, 2003, Plaintiff sent a "confidential" written "complaint of workplace violence" to Defendant Carlisle.  In his complaint, Plaintiff informed Defendant Carlisle about his concerns regarding actions of workplace violence created and/or caused by Defendant Lee. Plaintiff told Defendant Carlisle that he noticed a pattern of increasingly violent behavior by Defendant Lee.  Plaintiff provided detailed examples of Defendant Lee's violent behavior during the period of January 2002 to August 18, 2003, including a meeting that occurred several months prior in which a Deputy Prosecuting Attorney stated that she felt that Defendant Lee was potentially "going postal." Another Deputy Prosecuting Attorney stated that she was afraid that Defendant Lee was going to shoot her as well as other Deputies.  Plaintiff also advised Defendant Carlisle that during a meeting he had with Defendant Lee on August 18, 2003, Defendant Lee became visibly enraged, and exposed a holstered weapon on his ankle.  Plaintiff told Mr. Carlisle that due to Defendant Lee's increasingly violent behavior, Plaintiff was fearful for his life and the safety of all employees.  Plaintiff requested that a formal investigation be conducted on the basis of workplace violence, and that an evaluation be conducted to determine whether Defendant Lee was fit to carry a firearm.  Plaintiff noted that Defendant Lee had access to the entire inventory of firearms and ammunition located in the office.

5

14.     On September 5, 2003, Defendant Lee informed Plaintiff that he was being reassigned from his present duties to Penal Summons effective immediately.

15.     On September 5, 2003, Plaintiff received a message from Defendant White stating that they were conducting an investigation regarding his workplace violence complaint against Defendant Lee.

16.     On September 8, 2003, Plaintiff informed Defendant White that an additional concern he had regarding Defendant Lee's violent propensity was that he had learned from a Honolulu Police Department ("HPD") Officer that Defendant Lee was under investigation for the death of a family member at the time of his departure from the HPD. Plaintiff told Defendant White that he became very concerned because Defendant Lee had previously told him that the person's death was a suicide involving Defendant Lee's work weapon. Plaintiff provided this additional information to Defendant White verbally and in a written memorandum.

17.     On September 8, 2003, Defendant White told Plaintiff that he should have known the repercussions for filing such a complaint. Defendant White told Plaintiff that he was being reassigned to Penal Summons, and that he would be under her direct supervision. Upon information and belief, this reassignment was one of the "repercussions."

18.     On or about September 16, 2003, Plaintiff learned that Defendant Lee and Defendant White authorized Supervising Investigator Peter Nakagawa to attend an out of state training session regarding weapon retention and low-light firearms. Mr. Nakagawa was only recently promoted to the rank of Supervising Investigator. Plaintiff was precluded from attending the class even though he was the training officer, and had more seniority than Mr. Nakagawa.

19.     On September 22, 2003, Defendant Lee issued an Administrative Notice limiting Plaintiff's duties and responsibilities.

6

20.    On September 25, 2003, Defendant Carlisle informed Plaintiff that Defendant White and Deputy Prosecuting Attorney Jean Ireton had completed their investigation of his complaint against Defendant Lee, and that the disposition of his complaint was "unfounded." Prior to Plaintiff being informed that his complaint was "unfounded," Defendant White told Plaintiff that the completed investigation report was referred to the Attorney General for the State of Hawaii for a second opinion.

21.    On or about September 29, 2003, Plaintiff's former supervisory duties regarding front desk staff and messengers were taken away from him and assigned to Administrative Services Officer Milton Young, Defendant White and Defendant Lee.

22.    On or about October 8, 2003, Defendant Lee assigned Supervising Investigator Peter Nakagawa temporary assignment to Defendant Lee's Chief Investigator position during Defendant Lee's absence. Mr. Nakagawa was still on probation for the Investigator IV position at the time. Previously, whenever Defendant Lee went out on leave, Plaintiff was the one who was always given temporary assignment to Defendant Lee's Chief Investigator position.

23.    Defendant Lee also instructed a clerk in the office to deactivate Plaintiff's internet/cell phone connection because the data connection was allegedly determined by Defendant Carlisle to be unauthorized, and continued data connection created a "security breech [sic] concern." Defendant Lee indicated that the cancellation/deactivation of Plaintiff's internet/cell phone was verified with Defendant White. Plaintiff was ordered to turn in his cell phone to a clerk in the office. Plaintiff's cell phone was the only one being recalled at the time.

24.    On October 10, 2003, Plaintiff met with Defendant Carlisle regarding the deactivation of his internet/cell phone connection due to an alleged security breach concern. Defendant Carlisle told Plaintiff that he did not know anything about the matter. Plaintiff showed him the e-mail from

Defendant Lee which stated that Defendant Carlisle knew about the matter. Defendant Carlisle told Plaintiff that he needed to talk to Defendant White and Defendant Lee.

25.    On October 14, 2003, Defendant Lee issued a written notice to Plaintiff advising him that he was scheduled to attend a training on October 21, 2003 under the supervision of Supervising Investigator Peter Nakagawa relating to reduced light arrest, control tactics, and use of force. Previously, Plaintiff was the primary instructor in firearms, tactics and use of force for the Department, and certified the satisfactory completion of training for all of the staff from ISD.

26.    On October 18, 2003, Defendant Lee advised Plaintiff and all Investigators for ISD that "in consultation with" Defendant White, Supervising Investigator Peter Nakagawa had assumed exclusively, until further notice, the duties, functions, and responsibilities of the Department's Firearms Training Officer. Defendant Lee also instructed Plaintiff to transfer all reference materials, equipment, tools, and devices relating to firearms training to Supervising Investigator Nakagawa. Defendant Lee also advised Plaintiff that he would continue to be detailed to Defendant White, the First Deputy Prosecuting Attorney, as a "project manager" of the Department's penal summons project, but that Plaintiff would still be required to undergo qualifications and training as scheduled. Plaintiff's duties and responsibilities as "project manager" of the penal summons project consisted of serving penal summons on criminal defendants.

27.    On October 22, 2003, Defendant Lee informed Investigator Lori Kurisaki that Plaintiff had been detailed to Defendant White, and was no longer available to her. Previously, Plaintiff was Investigator Kurisaki's, and other Investigators', immediate supervisor.

28.    Upon information and belief, after Plaintiff filed a complaint for workplace violence against Defendant Lee with Defendant Carlisle, Defendants began "fishing" for, and instigating grounds to discipline and/or take other adverse actions against Plaintiff and his family.

8

29.    After Plaintiff filed his complaint of workplace violence against Defendant Lee with Defendant Carlisle, the Department of the Prosecuting Attorney conducted an inventory of all equipment relating to the Department's firearms training.

30.    On October 23, 2003, Defendant White sent a letter to the City's Director of Budget and Fiscal Services authorizing Supervising Investigator Peter Nakagawa to review invoices of purchases relating to firearms arsenal and training that were made by the Department of the Prosecuting Attorney during the last 24 months.

31.    On October 28, 2003, Defendant Lee advised Plaintiff that until further notice, Plaintiff's Use-of-Force training responsibilities had also been transferred to Supervising Investigator Peter Nakagawa.

32.    On November 5, 2003, Plaintiff was called into a meeting with Defendant White and Deputy Prosecuting Attorney Jean Ireton. During this meeting, Plaintiff was interrogated by Defendant White and Ms. Ireton regarding allegations that Plaintiff allegedly told Mr. Nakagawa that he could arrange for him to be a Supervising Investigator, but that he would owe Plaintiff.

33.    By November 14, 2003, Plaintiff could no longer endure the retaliatory, unequal terms and conditions of employment at the Department. Plaintiff went out on work-related stress leave on November 14, 2003, and has not returned to the Department since.

34.    On or about January 23 and 24, 2004, and February 6, 2004, information about Plaintiff allegedly stealing property from the Department of the Prosecuting Attorney was released to the news media. Equipment and property that Plaintiff had stored in his garage for years were confiscated from his home. Stories about Plaintiff allegedly stealing property from the Department were reported in the newspapers and broadcasted on television. Upon information and belief, the allegations and/or information that formed the basis for the news stories that characterized Plaintiff

9

as a thief was "confidential" and should have been protected from disclosure by the Defendants, but was not.

35.    In or around 1997, Defendant Lee specifically asked Plaintiff to store ammunition that was previously kept at the Department in Plaintiff's garage because Defendant Lee had expressed concerns about possible OSHA violations and building violations. Plaintiff interpreted Defendant Lee's request as an order, and complied.

36.    Department personnel knew that Plaintiff had been storing equipment and property in his garage long before Plaintiff opposed Defendant Lee's discriminatory request, and filed a workplace violence complaint against Defendant Lee. Department personnel knew for years that Plaintiff was bringing ammunition from his home to the firing range for training. Notwithstanding said knowledge, no one from the Department ever told Plaintiff that the practice of storing firearms equipment and property was wrong, or that it should stop, until after Plaintiff opposed Defendant Lee's discriminatory request, and filed a workplace violence complaint against Defendant Lee.

37.    Plaintiff filed a timely Charge of Discrimination based on retaliation by the City and County of Honolulu, Department of the Prosecuting Attorney with the Hawaii Civil Rights Commission ("HCRC") on February 18, 2004. On March 4, 2004, the HCRC issued Plaintiff a Notice of Dismissal and Right to Sue. This Complaint is timely filed.

## COUNT I - RETALIATION

38.    Plaintiff hereby incorporates by reference and realleges as if set forth fully herein the allegations contained in paragraphs 1 through 37 above.

39.    The above stated actions of Defendants discriminated/retaliated against Plaintiff in violation of Section 378-2 of the Hawaii Revised Statutes.

10

40.    As a result of Defendants' acts of discrimination/retaliation as described above, Plaintiff sustained substantial general and special damages in an amount to be proved at trial.

## COUNT II - VIOLATION OF WHISTLE BLOWERS' PROTECTION ACT

41.    Plaintiff hereby incorporates by reference and realleges as if set forth fully herein the allegations contained in paragraphs 1 through 40 above.

42.    The above stated actions of Defendants discriminated against Plaintiff in violation of Section 378-62 of the Hawaii Revised Statutes.  Plaintiff's workplace violence complaint to Defendant Carlisle reported a violation or suspected violation of City and County of Honolulu rules, regulations, policies and procedures regarding workplace violence, State of Hawaii rules, regulations, and laws, including but not limited to laws requiring employers to provide employees with safe and healthful working conditions.

43.    As a result of Defendants' acts of discrimination/retaliation as described above, Plaintiff sustained substantial general and special damages in an amount to be proved at trial.

## COUNT III - WILFUL AND WANTON MISCONDUCT (HRS SECTION 386-8)

44.    Plaintiff hereby incorporates by reference and realleges as if set forth fully herein the allegations contained in paragraphs 1 through 43 above.

45.    Based on the acts alleged herein, Defendants Lee, White and other DOE employees from the Department of the Prosecuting Attorney engaged in wilful, wanton, and/or reckless conduct by recklessly creating an unsafe work environment for Plaintiff and other employees in the Department, retaliating against Plaintiff for refusing to comply with Defendant Lee's discriminatory request and/or for filing a workplace violence complaint against Defendant Lee by stripping Plaintiff of his duties and responsibilities and assigning him to tasks for which he was over-qualified and which were unsuitable for someone of Plaintiff's education, training, and

11

experience.  Further, Defendants engaged in wilful, wanton and/or reckless conduct by wrongfully accusing Plaintiff of criminal activity, causing Plaintiff and his home to be reported on the TV news and in newspapers.

46.    As a direct and proximate result of Defendants' wilful, wanton and/or reckless conduct, Plaintiff sustained substantial general and special damages in an amount to be proved at trial.

## COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47.    Plaintiff hereby incorporates by reference and realleges as if set forth fully herein the allegations contained in paragraphs 1 through 46 above.

48.    In doing all of the acts described above, Defendants White, Lee and DOE employees of the Department of the Prosecuting Attorney intentionally caused Plaintiff to suffer severe emotional distress, and as a direct and proximate result, Plaintiff sustained substantial general and special damages in an amount to be proved at trial.

## V - PUNITIVE DAMAGES

49.    Plaintiff hereby incorporates by reference and realleges as if set forth fully herein the allegations contained in paragraphs 1 through 48 above.

50.    The conduct of Defendants White, Lee and DOE employees of the Department of the Prosecuting Attorney was willful, wanton and in callous disregard of the rights and sensibilities of Plaintiff, and Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants White, Lee and DOE employees of the Department of the Prosecuting Attorney, and to deter others from engaging in similar behavior.

WHEREFORE, Plaintiff respectfully prays the following:

1.    That he be awarded judgment in his favor and against Defendants on each Count of the Complaint;

2.    That he be awarded general and special damages in an amount to be proved at trial;

3.    That he be awarded punitive damages in an amount to be determined at trial;

4.    That he be awarded statutory attorneys' fees and costs of this action;

5.    That he be awarded prejudgment and postjudgment interest in the maximum amount provided by law; and

6.    That he be awarded such other and further relief as this Court deems just and proper.

DATED: Honolulu, Hawaii, May 17, 2004.


MICHAEL JAY GREEN
DEBRA A. KAGAWA
DENISE HEVICON
Attorneys for Plaintiff
CRAIG WHANG

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| CRAIG WHANG, | ) | CIVIL NO._____ |
| | ) | [Other Civil Action] |
| Plaintiff, | ) | |
| | ) | DEMAND FOR JURY TRIAL |
| vs. | ) | |
| | ) | |
| CITY AND COUNTY OF HONOLULU, | ) | |
| PETER CARLISLE, in his official capacity as | ) | |
| Prosecuting Attorney for the Department of | ) | |
| the Prosecuting Attorney, City and County of | ) | |
| Honolulu, IWALANI WHITE, individually | ) | |
| and in her official capacity as First Deputy | ) | |
| Prosecuting Attorney for the Department of | ) | |
| the Prosecuting Attorney, City and County | ) | |
| of Honolulu, ROBERT K. W. LEE, JR., | ) | |
| individually and in his official capacity as | ) | |
| Chief Investigator for the Department of the | ) | |
| Prosecuting Attorney, City and County of | ) | |
| Honolulu, and DOE DEFENDANTS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

DATED: Honolulu, Hawaii, May 17, 2004.


_____
MICHAEL JAY GREEN
DEBRA A. KAGAWA
DENISE M. HEVICON
Attorneys for Plaintiff
CRAIG WHANG

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| CRAIG WHANG, | ) | CIVIL NO._____ |
| | ) | [Other Civil Action] |
| Plaintiff, | ) | |
| | ) | SUMMONS |
| vs. | ) | |
| | ) | |
| CITY AND COUNTY OF HONOLULU, | ) | |
| PETER CARLISLE, in his official capacity as | ) | |
| Prosecuting Attorney for the Department of | ) | |
| the Prosecuting Attorney, City and County of | ) | |
| Honolulu, IWALANI WHITE, individually | ) | |
| and in her official capacity as First Deputy | ) | |
| Prosecuting Attorney for the Department of | ) | |
| the Prosecuting Attorney, City and County | ) | |
| of Honolulu, ROBERT K. W. LEE, JR., | ) | |
| individually and in his official capacity as | ) | |
| Chief Investigator for the Department of the | ) | |
| Prosecuting Attorney, City and County of | ) | |
| Honolulu, and DOE DEFENDANTS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

<u>SUMMONS</u>

STATE OF HAWAII

TO:    THE DEFENDANTS

YOU ARE HEREBY SUMMONED and required to serve upon Plaintiff's attorneys, whose

addresses are stated above, an answer to the Complaint which is attached. This action must be taken

within twenty (20) days after service of this summons upon you, exclusive of the day of service.

If you fail to make your answer within the twenty day time limit, judgment by default will

be taken against you for the relief demanded in the Complaint.

This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled Court permits, in writing on this summons, personal delivery during those hours.

A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

DATED: Honolulu, Hawaii, _MAY 1 7 2004_____.


_____
CLERK OF THE ABOVE-ENTITLED COURT

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2005 SEP 27  AM 9: 29

N. ANAYA
CLERK

LAW OFFICES OF
DAVID F. SIMONS

DAVID F. SIMONS    2179-0
Ocean View Center, PH-1
707 Richards Street
Honolulu, Hawaii 96813
Telephone: (808) 536-3255
Facsimile: (808) 524-5593

Attorney for Plaintiff
NANCY OLIPARES

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| NANCY OLIPARES, | CIVIL NO. **05-1-1721-09  B I A** |
| Plaintiff, | (Other Civil Matter) |
| vs. | COMPLAINT;  SUMMONS |
| THE  CITY AND COUNTY OF HONOLULU, and DOE DEFENDANTS 1-25, | |
| Defendants. | |

## COMPLAINT

Plaintiff NANCY OLIPARES, by and through her attorney, DAVID F. SIMONS,

hereby Complains against the above-mentioned Defendants and alleges and avers as

follows:

**DEPOSITION
EXHIBIT
212**

I do hereby certify that this is a full, true and
correct copy of the original on file in this office.

D. Hile

Clerk, Circuit Court, First Circuit

RECEIVED
$200.00

PAID
SURCHARGE
$25.00



RECEIVED
CIVIL ADM. COST.
$  50.00

I.    PARTIES

1.    Plaintiff NANCY OLIPARES, ("Plaintiff") is, and at all times material herein was, a resident of the City and County of Honolulu, State of Hawaii.

2.    Defendant THE CITY AND COUNTY OF HONOLULU, ("Defendant C&C"), is a municipal corporation in the State of Hawaii and a county duly and legally organized, created, and established under the laws of the State of Hawaii, and is charged with control over all City employee activities, including the Director of the Department of Community Services, and all employees of the Department of Community Services.

3.    DOE DEFENDANTS 1-25 are individuals, corporations, partnerships, limited partnerships, joint ventures and/or other entities named hereunder fictitious names for the reason that their true identities are presently unknown to Plaintiff, except that they are persons and/or entities who are subsidiaries, agents, associates, masters, servants, employees and/or who were in some manner presently unknown to Plaintiff engaged in activities alleged in the Complaint filed herein; and/or who are in some manner responsible for the damages to Plaintiff; and/or who conducted some activity in a negligent and/or intentional manner, which negligent and/or intentional conduct was a proximate cause of the injuries or damages to Plaintiff; and/or who are in some manner related to the named Defendants; and Plaintiff prays leave to insert herein their true names and capacities, activities, and/or responsibilities when the same are ascertained. Plaintiff has conducted research through third-parties in order to identify the persons and/or entities liable for the damages to Plaintiff complained of herein.  Plaintiff has conducted independent research through a third party to ascertain the corporate identities

of Defendants. The Plaintiff at this time is unable to identify the names and identities of the persons and/or entities until Plaintiff proceeds with discovery.

4.     At all times material herein, all employees or agents of Defendant C&C, were acting in the course and scope of their employment and/or agency and as employees and/or agents when engaging in the conduct alleged herein. Therefore, Defendant C&C is directly liable for the conduct of its employees and/or agents, and Defendant C&C is also liable under the rules and regulations of the doctrines of strict liability, respondeat superior, vicarious liability, and/or agency.

II.    PREDICATE FACTS

5.     Plaintiff was employed with Defendant C&C from November 1985. She held the position of Strategic Marketing Manager in the Community Services Department, which was a civil service position, from the early 1990's.

6.     In September 2000 Plaintiff was offered the position of Executive Director of the Oahu Workforce Investment Board, which was considered a contract position with The City & County of Honolulu. She was officially hired for this position in December 2000.

7.     In order to accept the Oahu Workforce Investment Board Executive Director position, Plaintiff had to take a leave of absence from her civil service position, which she did in December 2000.

8.     The leave of absence from her civil service job could be extended up to two years.

3

9.    Michael Amii, the Director of the Department of Community Services, was the "designated authority" who held the authority to grant Plaintiff's leave of absence, up to two years.

10.    The federal government provided allocation of funds for the Workforce Investment Act to the State of Hawai'i, which was then allocated, per law, to the Local Elected Official in the City and County of Honolulu, Mayor Jeremy Harris. Mayor Harris designated the City and County of Honolulu, as part of a consortium, to operate the program in partnership with the Oahu Workforce Investment Board.

11.    The Oahu Workforce Investment Board was supposed to be, pursuant to federal statue, a policy-making board charged with among other things, oversight of the City's administration of and spending of training dollars for workforce development.

12.    As Executive Director of the Workforce Investment Board, Plaintiff raised concerns about Defendant C&C improperly interfering and trying to influence decisions made by the Oahu Workforce Investment Board.

13.    Plaintiff frequently reminded the Oahu Workforce Investment Board that federal law required it to maintain independence from the City and County in order to properly perform its oversight functions.

14.    Defendant C&C objected to Plaintiff's efforts to have the Board fulfill their obligation under federal law to perform its oversight function and to maintain independence from the City and County of Honolulu.

15.    Defendant C&C interfered with Plaintiff's ability to successfully execute her statutory and regulatory job responsibilities as the Executive Director.